James A. Quadra (SBN 131084)
Email: jquadra@calvoclark.com
Rebecca M. Coll (SBN 184468)
Email: rcoll@calvoclark.com
**CALVO & CLARK, LLP**
One Lombard Street, Second Floor
San Francisco, California 94111
Telephone: (415) 374-8370
Facsimile: (415) 374-8373

Rosemary M. Rivas (SBN 209147)
Email: rrivas@finkelsteinthompson.com
Tracy Tien (SBN 253930)
Email: ttien@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, California 94115
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

James Pizzirusso (*Pro hac vice*)
Email: jpizzirusso@hausfeldllp.com
**HAUSFELD LLP**
1700 K. Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

*Interim Co-Lead Counsel and Counsel for Plaintiffs*

[Additional Counsel Listed On Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SONY PS3 "OTHER OS" LITIGATION | CASE NO. CV-10-1811-RS<br><br>**CONSOLIDATED  CLASS ACTION COMPLAINT**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiffs Anthony Ventura, Jonathan Huber, Antal Herz, Jason Baker, and Elton Stovell, on behalf of themselves and all others similarly situated, based on personal knowledge, the investigation of their counsel, and on information and belief, allege the following against Defendant Sony Computer Entertainment America LLC:

1

**NATURE OF ACTION**

1.      Defendant Sony Computer Entertainment America LLC, formerly Sony Computer Entertainment America, Inc. ("Defendant" or "SCEA"), is one of the world's leading manufacturers of advanced video gaming and computer entertainment systems.  Defendant's Sony PlayStation® 3 video game console (hereinafter referred to as the "PS3") has been purchased by approximately 35.7 million consumers across the globe.

2.      Since it first introduced the PS3 in 2006, Defendant has engaged in an extensive advertising campaign in an effort to beat out competitors in the game console and video game markets.  Defendant has advertised, promoted, marketed, warranted, and sold the PS3 as more than just a video game console.  It specifically advertised the PS3's "Other OS" feature as an essential and important characteristic, which enabled users to install Linux or other operating systems on the PS3 and use the PS3 as a personal computer.  Defendant also specifically advertised the unified online gaming service called the PlayStation Network ("PSN"). The PSN enables online gaming, access to the PlayStation Store, PlayStation Home and other services.  Defendant has consistently used the PS3's ability to serve as a personal computer, in addition to its other advanced features such as the PSN and the capability of playing Blu-ray discs, to market the PS3 and distinguish it from its competitors, such as Microsoft's X-box 360 and Nintendo's Wii.

3.      The ability to run other operating systems, such as Linux, allowed PS3 users to operate the PS3 not simply as a gaming console, but also as a personal computer.  For example, if PS3 users install other operating systems like Linux, they have the ability to browse the Internet, install media unsupported by the PS3's native operating system, and make their own computer programs.

CONSOLIDATED CLASS ACTION COMPLAINT

4.      On April 1, 2010, Defendant released a Firmware version 3.21 software update (hereinafter referred to as the "Update 3.21") for the PS3, intentionally disabling the entire "Other OS" feature that enabled the PS3 to be operated as a personal computer.  Defendant offered this firmware update for purported "security reasons."  Defendant could have taken other less intrusive or extreme measures, other than disabling the "Other OS" feature, to address its purported "security" concerns.  Defendant's removal of the "Other OS" feature eviscerated one of the PS3's primary purposes, *i.e.*, its use as a personal computer, and constitutes breaches of Defendant's express and implied warranties, conversion, and violations of California and federal consumer protection laws as alleged herein.

5.      Defendant's decision to implement Update 3.21 placed Plaintiffs and Class members in an untenable position.  PS3 owners who did not install Update 3.21 could no longer access many of the important PS3 features including the PSN, play games online, access online features, or play PS3 games and/or Blu-ray discs that require Update 3.21.  On the other hand, PS3 owners who did install Update 3.21 lost all access to the "Other OS" feature and were effectively locked out from accessing a substantial portion of the memory on their PS3's internal hard drive, as well as information and data that users installed on that portion of the hard drive.

6.      Plaintiffs and other purchasers paid for the advertised features of the PS3, including the "Other OS" feature, but Update 3.21 prevents such purchasers from using all of these advertised features.

7.      Defendant intentionally accessed PS3 systems and intentionally transmitted Update 3.21 with the knowledge and intent of disabling its advertised "Other OS" feature.

CONSOLIDATED CLASS ACTION COMPLAINT

8.  Plaintiffs paid for PS3 features and functions that Defendant has rendered inoperable as a result of Update 3.21.  Plaintiffs have suffered injury in fact and have lost money and property as a direct result of Defendant's acts.

9.  Plaintiffs bring this action on behalf of a nationwide class of all similarly situated individuals and entities who purchased any new PS3 model containing the "Other OS" feature. Plaintiffs, on behalf of themselves and the proposed Class, hereby seek damages and other relief the Court deems just.

## PARTIES

10.  Plaintiff ANTHONY VENTURA is a citizen of California and resides in Santa Clara, California.  Mr. Ventura purchased a PS3 in or around July 2007 for $499.00 plus tax. He uses the PS3 for personal, family and household uses.  Before purchasing the PS3, Mr. Ventura performed extensive research on the Internet.  Among other things, Mr. Ventura reviewed and relied on the statements on Defendant's website with regard to the PS3's "Other OS" feature, as well as the PS3's other advertised features such as the ability to access the PSN, play video games, watch movies, and listen to music, among other things.  Defendant's representations about the PS3's features, including the "Other OS" feature, played a substantial factor in influencing Plaintiff's decision to purchase a PS3 over the Xbox 360 and Wii.  Prior to the release of Update 3.21, Mr. Ventura not only used his PS3 to play games, watch Blu-ray discs and access the PSN, but he also extensively used his PS3 as a computer, including browsing the Internet, using the Blu-ray data drive, and playing Linux-specific games.

11.  Mr. Ventura has not installed Update 3.21 so that he can continue to use the "Other OS" functions.  As a result, he is no longer able to play online games, access the PSN, or play new

CONSOLIDATED CLASS ACTION COMPLAINT

games or Blu-ray discs.  As a result of Defendant's actions, Mr. Ventura has suffered injury in fact and has lost money and property.

12.     Plaintiff JONATHAN HUBER is a citizen of Tennessee and resides in Knoxville, Tennessee.  Mr. Huber purchased a PS3 on or around December 26, 2006 for $599.00 plus tax. He uses the PS3 for personal, family and household uses.  Before purchasing the PS3, Mr. Huber performed extensive research on the differences between PS3 and Xbox 360.  Among other things, Mr. Huber reviewed and relied on Defendant's statements with regard to the PS3's "Other OS" feature, as well as the PS3's other advertised features such as the ability to access the PSN, play video games, watch movies, and listen to music, among other things.  Defendant's representations about the PS3's features, including the "Other OS" feature, played a substantial factor in influencing Plaintiff's decision to purchase a PS3 over the Xbox 360 and Wii  Prior to the release of Update 3.21, Mr. Huber not only used his PS3 to play games, watch Blu-ray discs and access the PSN, but he also extensively used his PS3 as a computer, including by browsing the Internet on his main television.

13.     Mr. Huber downloaded and installed the Update 3.21 as he was not able to play games online or otherwise access PSN unless he did so.  This installation, as was Defendant's intention, caused him to be unable to access the "Other OS" feature and the Linux operating system he had installed.  As a result of Defendant's actions, Mr. Huber has suffered injury in fact and has lost money and property.

14.     Plaintiff ANTAL HERZ is a citizen of California and resides in San Francisco, California.  Mr. Herz purchased a PS3 on October 11, 2008 for $399 plus tax. He uses the PS3 for personal, family and household uses.  Before purchasing the PS3, Mr. Herz performed extensive research on the Internet.  Among other things, Mr. Herz reviewed and relied on the statements on

5

Defendant's website with regard to the PS3's "Other OS" feature, as well as the PS3's other advertised features such as the ability to access the PSN, play video games, watch movies, and listen to music, among other things.  Defendant's representations about the PS3's features, including the "Other OS" feature, played a substantial factor in influencing Plaintiff's decision to purchase a PS3 over the Xbox 360 and Wii.  Prior to the release of Update 3.21, Mr. Herz not only used his PS3 to play games, watch Blu-ray discs and access the PSN, but he also extensively used his PS3 as a computer, including to browse the Internet, run word processor software, spreadsheet software, email software, other productivity applications, and make his own programs.

15.     Mr. Herz downloaded and installed the Update 3.21 as he was not able to play games online or otherwise access PSN unless he did so.  This installation, as was Defendant's intention, caused him to be unable to access the "Other OS" feature and the Linux operating system he had installed.  As a result of Defendant's actions, Mr. Herz has suffered injury in fact and lost money and property.

16.     Plaintiff JASON BAKER is a citizen of North Dakota and resides in Grand Forks, North Dakota.  Mr. Baker purchased a PS3 the weekend of March 15-16, 2007 for $599.99 plus tax. He uses the PS3 for personal, family and household uses.  Before purchasing the PS3, Mr. Baker performed extensive research on the Internet.  Among other things, Mr. Baker reviewed and relied on the statements on Defendant's website with regard to the PS3's "Other OS" feature, as well as the PS3's other advertised features such as the ability to access the PSN, play video games, watch movies, and listen to music, among other things.  Defendant's representations about the PS3's features, including the "Other OS" feature, played a substantial factor in influencing Plaintiff's decision to purchase a PS3 over the Xbox 360 and Wii.  Prior to the release of Update

CONSOLIDATED CLASS ACTION COMPLAINT

3.21, Mr. Baker not only used his PS3 to play games, watch Blu-ray discs and access the PSN, but he also extensively used his PS3 as a computer, including browsing the Internet.

17.    Mr. Baker has not installed Update 3.21 so that he can continue to use the Other OS functions.  As a result, he is no longer able to play online games, access the PSN, play new games or Blu-ray discs that require Update 3.21, nor can he access any of the funds that he has deposited into his PSN wallet, among other things.  As a result of Defendant's actions, Mr. Baker has suffered injury in fact and lost money and property.

18.    Plaintiff ELTON STOVELL is a citizen of California and resides in Springs Valley, California.  Mr. Stovell purchased a PS3 on November 24, 2007 for $499 plus tax. He used the PS3 for personal, family and household uses.  Before purchasing the PS3, Mr. Stovell performed extensive research on the Internet.  Among other things, Mr. Stovell reviewed and relied on the statements on Defendant's website with regard to the PS3's "Other OS" feature, as well as the PS3's other advertised features such as the ability to access the PSN, play video games, watch movies, and listen to music, among other things.  Defendant's representations about the PS3's features, including the "Other OS" feature, played a substantial factor in influencing Plaintiff's decision to purchase a PS3 over the Xbox 360 and Wii.  Prior to the release of Update 3.21, Mr. Stovell used his PS3 to play games, watch Blu-ray discs and access the PSN.  While Mr. Stovell did not use the "Other OS" feature at the time of the release of Update 3.21, he bought it for the purpose of doing so.

19.    Mr. Stovell downloaded and installed the Update 3.21 as he was not able to play games online or otherwise access PSN unless he did so.  This installation, as was Defendant's intention, caused him to be unable to access the "Other OS" feature.  As a result of Defendant's actions, Mr. Stovell has suffered injury in fact and lost money and property.

7

CONSOLIDATED CLASS ACTION COMPLAINT

20.     Defendant Sony Computer Entertainment America, LLC is a wholly-owned subsidiary of Sony Computer Entertainment, Inc.  Defendant designs, markets, and sells PlayStation video game consoles throughout the United States, including the PS3 at issue here. Defendant is a Delaware entity with its principal place of business in Foster City, California.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from the Defendant; there are more than 100 Class members nationwide; and the aggregate amount in controversy exceeds $5,000,000.  This court has personal jurisdiction over the parties because Defendant conducts substantial business in this State, has had systematic and continuous contacts with this State, and has agents and representatives that can be found in this State.

22.     Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred within this District, Defendant has caused harm to Class members residing within this District, and Defendant maintains its headquarters in this District.

## INTRADISTRICT ASSIGNMENT

23.     Pursuant to Local Rules 3-2(c) and 3-5(b), this action should be assigned to the San Francisco Division of California because Defendant resides in the County of San Mateo.

## CHOICE OF LAW

24.     California law governs the state law claims asserted herein by Plaintiffs and the Class Members.

25.     Upon information and belief, SCEA's acts and omissions alleged herein were

CONSOLIDATED CLASS ACTION COMPLAINT

orchestrated and implemented at Defendant's headquarters in California.

26.     California has a substantial interest in protecting the rights and interests of California and other U.S. residents against wrongdoing by a company based business in California, which interest is greater than that of any other State.

27.     Application of California law with respect to Plaintiffs' and the Class Members' claims is neither arbitrary nor fundamentally unfair because California has significant contacts and a significant aggregation of contacts that give California a substantial interest in the claims of the Plaintiffs and the Nationwide Class.

## FACTUAL ALLEGATIONS

### SCEA and PS3 Background

28.     Defendant, Sony Computer Entertainment America LLC, was founded in 1994 as the North American division of Sony Computer Entertainment Inc. ("SCEI") and according to its website, is responsible for the "continued growth of the PlayStation® market in the United States and Canada."

29.     In 1995, the original PlayStation game console was introduced in the United States. More than 100,000 units were sold during its debut weekend and more than one million units were sold within the first six months.

30.     On November 17, 2006, Defendant introduced the PS3, touting it as "the most advanced computer system that serves as a platform to enjoy next generation computer entertainment."  Defendant advertised, marketed, and sold PS3 systems as including a built-in Blu-

9

ray disc player, the ability to go online to access the PSN and play against other players, and the ability to install other operating systems.[1]

31.     The manufacturer's suggested retail price for the PS3 has ranged from approximately $300 to $600, considerably higher than many of its competitors.  Defendant has reportedly sold approximately 23 million PS3 systems in the United States.

32.     The video game console and game industry is a multi-billion dollar market. Game console manufacturers such as Defendant fiercely compete with one another to market their game consoles with the latest features to consumers and to bring lucrative games to the market.  The PS3 competes with other video game consoles such as Microsoft's Xbox 360 and the Nintendo Wii. The ability to install other operating systems is unique to the PS3 among other video game consoles.

33.     Defendant periodically releases software updates to the PS3, called "firmware."  On Defendant's website, it represents that system software updates add new features "so you don't have to worry about your PlayStation®3 system becoming outdated or missing out on cool new features."

**SCEA Markets PS3 and Its "Install Other OS" Feature**

34.     From the time Defendant introduced the PS3 in November 2006 through 2010, it has consistently and aggressively advertised the PS3 as the most advanced computer entertainment system in the industry.  Indeed, Defendant advertised, promoted, marketed, warranted, and sold the PS3 as more than just a video game console.  Ken Kutaragi, former President of SCEI, stated

---

[1] Open Platform for PLAYSTATION®3, http://www.playstation.com/ps3-openplatform/index.html

CONSOLIDATED CLASS ACTION COMPLAINT

1    before the PS3's release, "Speaking about the PS3, we never said we will release a game console.

2    It [the PS3] is radically different from the previous PlayStation.  It is clearly a computer."[2]

3          35.     In remarks made to Japanese website Impress Watch, Ken Kutaragi has commented

4    in more detail on the concept that the PlayStation 3 is a computer, rather than a game console.

5    Kutaragi pointedly commented, "We don't say it's a game console (*laugh*) - PlayStation 3 is

6    clearly a computer, unlike the PlayStations [released] so far."  He went on to outline a scenario

7    where many parts of the PS3 were upgradable, much more like a PC, noting, "[s]ince PS3 is a

8    computer, there are no 'models' but 'configurations.'"  The Sony CEO gave another example in

9    the interview: "As PS3 is a computer . . . it also wants to evolve."[3]

10         36.     An important feature of the PS3 was its "Open Platform" or "Install Other OS"

11   feature.  As Defendant's website provides, "[t]here is more to the PLAYSTATION®3 (PS3™)

12   computer entertainment system than you may have assumed.  In addition to playing games,

13   watching movies, listening to music, and viewing photos, you can use the PS3™ system to run the

14   Linux operating system.  By installing the Linux operating system, you can use the PS3™ system

15   not only as an entry-level personal computer with hundreds of familiar applications for home and

16   office use, but also as a complete development environment for the Cell Broadband Engine™

17   (Cell/B.E.)."[4]

18         37.     The "Other OS" feature allowed Plaintiffs and other PS3 users to run a number of

19   web browsers, which provide more functionality than the one browser Defendant has in its native

20   PS3 operating system.  For example, users could also run word processor software, spreadsheet

---

[2] http://playstationlifestyle.net/2010/04/17/sony-refuses-ps3-linux-reimbursment/

[3] http://www.gamasutra.com/php-bin/news_index.php?story=9642

[4] http://www.playstation.com/ps3-openplatform/index.html

CONSOLIDATED CLASS ACTION COMPLAINT

software, and email software on other operating systems, and media programs.  The "Other OS" feature also allowed Cell programming and the operation of supercomputer clusters.[5]  The "Other OS" feature essentially allowed users to operate the PS3 like a computer rather than simply a gaming console.

38.     Defendant touted this as a major feature of the PS3.  In June 2006, Ken Kutaragi, Sony's CEO, stated that "[the PS3] is radically different from the previous PlayStation.  It is clearly a computer.  Indeed, with a game console, you need to take out any unnecessary elements inside the console in order to decrease its cost. . . . This will of course apply to the PS3 as well."[6] He also stated that while ""[l]owering costs is important but more important is its capacity to evolve."  Id.  "Everything has been planned and designed so it will become a computer.  The previous PlayStation had a memory slot as its unique interface.  In contrast, the PS3 features PC standard interfaces.  Because they are standard, they are open."  Id

39.     In February 2007, Phil Harrison, the President of Sony Computer Entertainment Worldwide Studios at the time, stated in an interview with *Newsweek* videogame journalist, N'Gai Croal, that "[o]ne of the most powerful things about the PS3 is the 'install Other OS' option."[7]

40.     The ability to install other operating systems was a built-in component of the core functionality of the PS3 system and users were able to use this feature out of the box.

---

[5] Cell is a microprocessor which facilitates software development.  The PS3 is the most accessible Cell platform.

[6] Kutaragi Details PS3 'Computer' Claim, http://www.edge-online.com/news/kutaragi-details-ps3-computer-claim

[7] 20 Questions With Phil Harrison At DICE, http://kotaku.com/235049/20-questions-with-phil-harrison-at-dice; DICE 2007 Phil Harrison Keynote Pt. 4, http://www.gametrailers.com/video/dice-2007-sony/17006.

CONSOLIDATED CLASS ACTION COMPLAINT

41.     Defendant's affirmative representations about the PS3's features, including the "Other OS" function, triggered Defendant's duty to disclose or adequately disclose that it reserved the right to disable or remove advertised functions. At the point of sale, however, Defendant failed to disclose, and/or adequately disclose, to Plaintiffs or Class members that it reserved the right to remove an advertised, built-in feature, like the ability to run other operating systems through a remote firmware update.  Defendant's right to remove the "Install Other OS" feature is not specifically disclosed in Defendant's Terms of Service or System Software License Agreement.

42.     The "Install Other OS" feature was an important and material tool that many consumers valued when purchasing a PS3.  It gave consumers all of the functions of a personal computer, including web browsing, storage, video and media entertainment, and word processing capabilities.

43.     Defendant's promises, representations, warranties and advertising regarding the various features available with the PS3, including the "Other OS", were material to consumers in deciding to purchase the PS3.  The falsity of SCEA's promises, representations, warranties, and advertising were material to Plaintiffs and Class members and have injured Plaintiffs and the Class.

44.     Defendant knew that the ability to run other operating systems was considered to be important and material to users.  On or around August 18, 2009, Defendant announced the release of the PS3 "slim" model available on September 1, 2009.  The PS3 slim did not include the ability to install other operating systems.  However, Defendant's PS3-Linux maintainer, Geoffrey Levand, assured users via email that "SCE [Sony Computer Entertainment] is committed to continue the

CONSOLIDATED CLASS ACTION COMPLAINT

support for previously sold models that have the 'Install Other OS' feature and that this feature will not be disabled in future firmware releases."[8]

### SCEA Consistently Advertises and Promotes the PS3's Unique Attributes

45.    Since introducing the PS3 in November 2006, Defendant (through its agents, employees, subsidiaries, parent and sister companies and other representatives acting on its behalf) has made numerous public statements promoting the "Other OS" feature as well as the PS3's other unique attributes:

- PS3 Open Platform, 2006-2010: "In addition to playing games, watching movies, listening to music, and viewing photos, you can use the PS3™ system to run the Linux operating system.  By installing the Linux operating system, you can use the PS3™ system not only as an entry-level personal computer with hundreds of familiar applications for home and office use, but also as a complete development environment for the Cell Broadband Engine™ (Cell/B.E.)." http://www.playstation.com/ps3-openplatform/index.html

- PS3 Manual, 2006-2010: "Install other system software on the hard disk.  For information on types of compatible system software and obtaining the installer, visit Open Platform for PlayStation®3." http://manuals.playstation.net/document/de/ps3/current/settings/osinstall

- PS3 Knowledge Center, 2006-2010: "The PlayStation 3 provides an option for third-party system software to be installed on the PS3™ system instead of the system software

---

[8] Levand's email, as posted by a user on Defendant's blog: Posting of jayyy91, to http://blog.us.playstation.com/2010/03/28/ps3-firmware-v3-21-update/comment-page-33/ (March 29, 2010, 2:50 pm).

CONSOLIDATED CLASS ACTION COMPLAINT

provided by Sony Computer Entertainment Inc.  Such third-party system software is referred to as an 'Other OS'." http://us.playstation.com/support/answer/index.htm?a_id=469

- On the PS3's product packaging, Defendant also touted the PS3's features through affirmative representations and symbols.  Defendant represented that the PS3 had a built-in Blu-ray Disk drive for high-definition games and entertainment, and broadband connectivity with access to the PSN, among other things.

- Ken Kutaragi, June 2006: "Speaking about the PS3, we never said we will release a game console.  It is radically different from the previous PlayStation.  It is clearly a computer." http://www.edge-online.com/news/kutaragi-details-ps3-computer-claim

- Phil Harrison, President of Sony Computer Entertainment Worldwide Studios 2005-2008, May 2006: "We believe that the PS3 will be the place where our users play games, watch films, browse the Web, and use other computer functions.  The PlayStation 3 is a computer.  We do not need the PC." http://www.gamasutra.com/view/news/9547/Harrison_We_Do_Not_Need_The_PC.php

- Phil Harrison, February 2007: "One of the most powerful things about the PS3 is the 'Install Other OS' option." http://kotaku.com/235049/20-questions-with-phil-harrison-at-dice

- PS3 Linux Distributor's Starter Kit, 2006-2009: "The Linux Distributor's Starter Kit provides information, binary and source codes to Linux Distribution developers who wants to make their distro support PS3."  http://www.kernel.org/pub/linux/kernel/people/geoff/cell/ps3-linux-docs/ps3-linux-docs-08.06.09

- Izumi Kawanishi, head of Sony's Network System Development Section, May 2006: "Because we have plans for having Linux on board [the PS3], we also recognize Linux programming activities . . . Other than game studios tied to official developer licenses, we'd like to

15

see various individuals participate in content creation for the PS3."

http://www.gamasutra.com/php-bin/news_index.php?story=9290

- Geoffrey Levand, Principal Software Engineer at Sony Corporation, August 2009: "Please be assured that SCE is committed to continue the support for previously sold models that have the 'Install Other OS' feature and that this feature will not be disabled in future firmware releases."  Mailing list to PS3 customers using Linux.

- Even when it decided to remove the "Other OS" functionality from the new Slim PS3, Defendant reiterated its commitment to supporting the "Other OS" function in existing PS3 models.  In an interview with arstechnica.com in August, 2009, John Koller, SCEA's director of hardware marketing, stated that "[i]f anyone wants to use previous models and change the OS, they can do so."

46.    Unlike an Xbox or Wii, the PS3 offered the "Other OS" feature as well as the unique PS3 features (such as the ability to play Blu-ray discs and access the PlayStation Network).  As a result, the PS3 was substantially more expensive than these other gaming consoles.

**The Other OS Function Is A Valuable PS3 Feature.**

47.    When running the Linux software system, the PS3 can serve as a fully functional home computer, loaded with more than 1,000 applications.  But instead of having a suite of applications, the computer offers users a choice of multiple mail clients, word processing programs, spreadsheets, office applications, music and video players and games.

48.    As a result, the "Other OS" function was extremely valuable to PS3 purchasers.   As Kai Staats, CEO of Terra Soft, a third party that developed Linux applications for the PS3, stated, "[t]he PlayStation 3 places a supercomputer in the home . . . Yellow Dog Linux provides a complete Linux OS for the PlayStation 3 resulting in a very powerful computing platform.  We are

16

---

CONSOLIDATED CLASS ACTION COMPLAINT

thrilled to be working with RapidMind to make this platform more accessible for professional developers and hobbyists alike . . . With our operating system, the Playstation could very easily be your home CD player, DVD player, MP3 player and home computer, as well as a great game box . . . This is not an application-limited appliance. This is a full-blown computer. There is no issue of 'can it do this or that?' It can do everything."

49.    Moreover, the ability to run Linux on the PS3 provides users with an excellent platform to develop applications for the PS3 or as a jumping off point for deployments to other products, including those from IBM, Sony, or Mercury.

50.    Perhaps more important, the ability to use Linux on a PS3 saves consumers money. Consumers who load a Linux operating system do not need to buy many additional electronic devices or applications.

51.    Many consumers utilized the "Other OS" feature in order to use their PS3s as computers, including browsing the Internet, using the Blu-ray data drive, and playing Linux-specific games.

**Defendant Disables the "Install Other OS" Feature And Other PS3 Functions**

52.    On or around March 28, 2010, Patrick Sebold, Defendant's Senior Director of Corporate Communications and Social Media, announced on Defendant's blog that Update 3.21 would be released on April 1, 2010 and its installation would disable the "Install Other OS" feature that was available on the PS3 systems prior to the current slimmer models, launched in September 2009.

53.    On or about April 1, 2010, Defendant released Update 3.21. Defendant stated that Update 3.21 would disable the "Install Other OS" feature. PS3 owners were not "required" to install Update 3.21, but were essentially forced to do so or they would risk losing other important

17

features of the PS3.  For example, if a user failed to download Update 3.21, he or she would lose

the following features: (1) the ability to sign in to the PSN; (2) the ability to use online features

that require a user to sign in to the PSN, such as chat; (3) the ability to use the online features of

PS3 format software; (4) playback of new PS3 software or Blu-ray discs that require Update 3.21

or later; (5) playback of copyright-protected videos that are stored on a media server; (6) use of

new features and improvements that are available on PS3 Update 3.21 or later.[9]

54.     Since the ability to play Blu-ray discs and play games online through the PSN were

features unique to the PS3 console and important to users, installing Update 3.21 was not optional

for users wishing to retain those features.  Even Defendant's console games are increasingly reliant

on online updates, online content, and online play.  Defendant did not present PS3 users with a

choice.  Rather, users would either lose the ability to use other operating systems, an advertised

and important feature if they installed Update 3.21, or they would lose the ability to access online,

Blu-ray, and gaming features if they did not install Update 3.21.  In other words, installing Update

3.21 renders the PS3 inoperable for its use as a computer; on the other hand, the failure to install

Update 3.21 renders a users' PS3 inoperable for its intended purpose as a gaming and Blu-ray disc

console.

55.     Moreover, when consumers send a defective PS3 console to Defendant for repair,

Defendant's repair service automatically installs Update 3.21.  As Defendant states on its website:

Q: "I was using Linux and now my PS3 needs service.  Can I use Linux after it comes back
from repair?

A: No, we repair the PS3 system with the latest system software.  Users will not be able to
use Linux after the repair."

---

[9] http://us.playstation.com/support/systemupdates/ps3/ps3_321_update1/index.htm

CONSOLIDATED CLASS ACTION COMPLAINT

http://us.playstation.com/support/answer/index.htm?a_id=469

**Additional Injuries Caused By the Release of Update 3.21**

56.     Users that chose to install Update 3.21 lost any data stored in the "Other OS" partition if they do not back up that data on another medium.  Defendant did not adequately notify its customers that all such data would be lost once they installed the update.

57.     In addition, when Defendant originally sold the PS3s, the hard drive was partitioned such that part of the hard drive was dedicated to the "Other OS" function.  When consumers installed Update 3.21, they not only lost whatever data was stored in that partition, they lost access to that portion of the hard drive originally partitioned for the "Other OS" function.  In other words, an additional consequence of Defendant's disablement of the "Other OS" function was to reduce the hard drive space available on the PS3 for which users had originally paid.

58.     Many users purchased peripheral devices specifically for use with the "Other OS" function, such as wireless keyboards and mice and external hard drives.  Such devices are rendered superfluous to users that install Update 3.21.

59.     Users who chose not to install Update 3.21 were also damaged in that they lost access to many attributes of PS3 including their PSN purchases other than gaming.  For example, Defendant offers Qore, an online service that offers a variety of content and news concerning PS3 functions.  Users pay $24.99 for an annual subscription.  However, users that purchased Qore prior to the release of Update 3.21 and who did not install the update are denied the benefit of their annual subscription.  Similarly, users who do not install Update 3.21 lose access to any prepaid PSN account balances.

CONSOLIDATED CLASS ACTION COMPLAINT

60.     Similarly, many consumers use their PS3 to watch streaming video from Netflix, and they often pre-pay for an annual subscription.  However, those users that do not install Update 3.21 are no longer able to stream Netflix using their PS3, and therefore they are damaged in the amount of their pre-paid Netflix subscription.

61.     Many users who do not install Update 3.21 purchase new games for their PS3, unaware that new games cannot be played without the update.  Users only become aware of that fact when they open the package and try to play the game.  Retailers do not accept returns on games that are not in their original packaging, and thus users are damaged in the amount they paid for such games.

62.     Since Defendant released Update 3.21, thousands of users have written complaints on Internet websites and message boards, including the message board Defendant maintains on its website, regarding Update 3.21 and its removal of the "Install Other OS" feature.  Users complain that Defendant's actions are similar to a bait and switch, where users purchased a product with a specific feature and later had it taken away.  Simply put, PS3 users paid for a product that included certain features and regardless of whether they install Update 3.21, they will lose advertised and paid-for features and full functionality of their PS3 consoles.  Typical of those numerous complaints are the following:

> I bought a PlayStation 3 for $600 US Dollars on November 17, 2006 advertised as a Computer Entertainment System with a feature that allowed consumers to install Linux as an operating system. This feature was called Other OS from system menu which allowed users to use the machine not just as a console but also as a computer. On April 1, 2010 Sony updated the console's firmware and removed this feature and no longer can the console be used as a computer. The console which I bought for 600 US dollars has now the same features as the newer cheaper low end models. . . .I am seeking a new firmware which will put back the promised feature that was once advertised as being part of the product or a refund.[10]

_____

[10] http://forums.gametrailers.com/thread/why-are-people-so-pissed-about/1045716?page=4

_____

CONSOLIDATED CLASS ACTION COMPLAINT

I'll start by saying I have been a loyal sony customer and have bought all their systems at launch since the ps1. they have done a few dirty things but it wasn't until today until my eyes finally opened to see what an evil company full of liars sony really is. i mean this isn't the first time sony has lied to us, but to me this is the same as theivery. i bought a ps3, waited a week in freezing rain and paid 600 dollars for it under the impression i would have a system that could use linux, i've spent YEARS learning and playing with linux on my ps3, and 3 years later sony steals it back. A FEATURE THAT THEY ADVERTISED. I feel like I've been stabbed in the back by my best friend. i was the one who was defending the ps3 from all the haters during its first couple years when it had pretty much no games. I hope sony realizes they have pulled a benedict arnold and have betrayed the most loyal of their consumers with this move. now i have to buy a new ps3 to keep the feature? HA! no more, sony. enough is enough. I'm contacting the better business bureau today to see what can be done about this treason. also I'm not updating my system and i plan on selling it in the very near future if something isn't done.[11]

* * *

I don't know how you figure. It absolutely entered my cost benefit analysis when choosing between PS3 and Xbox360. The PS3 needed every advantage it could get at launch and running linux was something the others could not claim. Remember, at the time there was no reason to believe that Blu Ray was going to be the standard. The only real advantage the PS3 had over the Xbox was Other OS. Xbox had more gamers and more games, still does. Xbox was already established in the market and many people had friends who were already using it. Both do High def 720p vs 1080p big deal, regardless image quality has been proven exactly the same time and again at all the review sites.Both have online features, Xbox is paid but the PS3 cost twice as much for the machine. Xbox had and still has the advantage with developers, see Carmack's latest statement on PS3 development. PS3 could run Linux, Xbox had no answer.

It factored into my decision and you'd be silly to think that it didn't factor into other people's decision as well since the PS3 had many disadvantages.[12]

---

[11]http://boardsus.playstation.com/t5/PlayStation-3-Updates/Former-Sony-supporters/tdp/45468864/page/9;jsessionid=5CDBFE6684B1F4FE71318BCE7D0D7352

[12]http://boardsus.playstation.com/t5/PlayStation-3-Updates/conclusion-about-Other-OS-removal/td-p/45482145/page/4;jsessionid=C4EA02F5E4DC23A3D2BE40112FC6E8D7 (message 36; at 04-05-2010 01:30 PM)

CONSOLIDATED CLASS ACTION COMPLAINT

63.     Defendant originally informed users that the release of Update 3.21 – in particular, the disabling of the "Other OS" feature – was intended to protect the "security" of users systems. In emails to PS3 users, Defendant later admitted that the update was released in order to "protect the intellectual property of the content offered on the PS3 system."  This is an admission that Update 3.21 was released for Defendant's benefit at the expense of its customers.

### RULE 9(b) ALLEGATIONS

64.     WHO:  Defendant made material misrepresentations and failed to disclose, or adequately disclose, material facts as alleged herein.  Except as provided herein, Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those individuals at SCEA who are responsible for such material misrepresentations and omissions.

65.     WHAT: Defendant made affirmative material representations that the PS3 could be used as a computer and that users could install other operating systems such as Linux.  Defendant also made affirmative, material representatives that the PS3 could be used to access the PSN, play video games, watch movies, and listen to music, among other things. Defendant further represented that firmware updates were for the purposes of providing new features.  Defendant's representations were untrue by virtue of Defendant's implementation of Update 3.21.  Defendant knew and intentionally failed to disclose or adequately disclose, the material facts as alleged herein, such as that it reserved the right to unilaterally disable or remove the advertised PS3 features, including the "Other OS" feature to protect its intellectual property.   Based on Defendant's affirmative representations about the PS3's functions and firmware updates, Defendant had a duty to disclose the material information alleged herein.

66.     WHEN:  Defendant made the affirmative material misrepresentations and non-disclosures beginning in November 2006 through sometime around April 2010.

67.     WHERE:  Defendant's affirmative, material misrepresentations and non-disclosures were made on the Internet, including on its website at www.usplaystation.com, in press releases, on the product's packaging, in the PS3 owner's manual, and in its email communications with PS3 users, among other places.

68.     HOW:  Defendant heavily marketed the PS3's features, including the ability to install other operating systems such as Linux, and the ability to access the PSN, play video games, watch movies, and listen to music, among other things.  Defendant, however, failed to disclose or adequately disclose material information to Plaintiffs and Class members. Defendant failed to disclose or adequately disclose in its advertising and marketing that it retained the unilateral right to disable or remove the PS3's advertised functions.  Defendant did not make adequate disclosures sometime around April 2010 when Plaintiffs and Class members were already locked into their PS3 purchases.

69.     WHY:  Defendant made the affirmative material misrepresentations and omissions for purposes of inducing Plaintiffs and Class members to purchase the PS3 and its video games over the game consoles and video games of its competitors.

## CLASS ACTION ALLEGATIONS

70.     Plaintiffs bring this suit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all other similarly situated persons.  The Class is initially defined as follows:

**All persons who purchased, in the United States and its territories, a new PS3 with the Open Platform feature for personal use and not for resale and continued to own the PS3 on March 27, 2010.**

CONSOLIDATED CLASS ACTION COMPLAINT

71.     Excluded from the class are Defendant and its subsidiaries and affiliates, as well as Defendant's executives, board members, legal counsel, and their immediate families.  Also excluded are all governmental entities and any judicial officers assigned to hear any aspect of this case.

72.     Plaintiffs reserve the right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues.

73.     <u>Numerosity</u>.  The proposed Class is sufficiently numerous, as Defendant has sold millions of PS3 systems to consumers and required those consumers to download the update at issue or forego the other advertised features.  The members of the Class are so numerous and dispersed throughout the United States that joinder of all members is impracticable.  The Class members can be identified through Defendant's and/or Class members' records.

74.     <u>Common Questions of Fact and Law</u>.  Common questions of fact and law exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class, pursuant to Federal Rule of Civil Procedure 23(b)(3).  Questions of fact and law that predominate over any individual issues include:

a.   Whether Defendant breached its express warranties when it removed the "Install Other OS" feature;

b.   Whether Defendant advertised the PS3 as a computer and as having the ability to install and use other operating systems such as Linux, among other things;

c.   Whether Defendant had a duty to disclose material facts, such as that it reserved the right to disable or remove the PS3's advertised features, such as the "Other OS" feature;

CONSOLIDATED CLASS ACTION COMPLAINT

d. Whether Defendant failed to disclose or adequately disclose material facts to users, such as that it reserved the right to disable or remove the PS3's advertised features, such as the "Other OS" feature;

e. Whether Defendant represented that firmware updates would not disable the "Install Other OS" feature;

f. Whether Defendant knowingly transmitted Update 3.21 with the specific intent of disabling the "Other OS" feature;

g. Whether Defendant's conduct violated the Consumers Legal Remedies Act, California Civil Code sections 1750, *et seq*. ("CLRA");

h. Whether Defendant's conduct violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

i. Whether Defendant's conduct violated California's Unfair Competition Law, California Business and Professions Code sections 17200, *et seq.* ("UCL");

j. Whether Defendant's actions violated other common law and statutory duties;

k. Whether Plaintiffs and the members of the Class sustained damage and ascertainable loss as a result of Defendant's conduct as alleged herein;

l. The amount of relief to which the Class is entitled; and

m. The amount of attorneys' fees, prejudgment interest, and costs of suit to which the Class is entitled.

75. <u>Typicality</u>.  Plaintiffs' claims are typical of the claims of Class members because Plaintiffs and the Class bought PS3s and sustained damages arising out of the Defendant's wrongful conduct as detailed herein.  Specifically, Plaintiffs and Class members' claims arise from

CONSOLIDATED CLASS ACTION COMPLAINT

Defendant taking away advertised features of the PS3, such as the "Other OS" feature, through

Update 3.21.

76.     Adequacy.  Plaintiffs will fairly and adequately protect the interests of the Class and

has retained counsel competent and experienced in class action lawsuits.  Plaintiffs have no

interests antagonistic to or in conflict with those of Class members and therefore will be adequate

as representatives for the Class.

77.     Superiority.  A class action is superior to other available methods for the fair and

efficient adjudication of this controversy since joinder of all the members of the Class is

impracticable.  Furthermore, the adjudication of this controversy through a class action will avoid

the potentially inconsistent and conflicting adjudications of the claims asserted herein.  There will

be no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

## COUNT I

## Breach of Express Warranty

78.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged

herein.

79.     Defendant expressly warranted via its advertising, statements, brochures, website

information, public statements, owner's manuals, and other representations that the functionality of

the PS3 would include both the "Other OS" and the various other advertised functions.

Specifically, Defendant disseminated information to the general public, including Plaintiffs and the

Class, that the PS3 could be used as a personal computer using the "Other OS" function.  The

statements made by Defendant are affirmations of fact that became part of the basis of the bargain

and created an express warranty that the goods would conform to the stated promise.  Plaintiffs

26

placed importance on Defendant's representations.

80.     Upon application of the Update 3.21 and the disabling of the "Other OS" feature, the PS3 no longer conformed to these express representations of Defendant. Defendant produced and sold the PS3 based upon the representations that it was capable of performing both specified gaming and "Other OS" functions.  Defendant currently maintains, by contrast, that the product cannot perform all functions and the user must choose between gaming on the PSN or the "Other OS" function. The inability of the PS3 to perform the PSN gaming and "Other OS" functions promised by Defendant constitutes a breach of warranty.

81.     As a result of SCEA's breach of the express warranty, Plaintiffs and the Class were injured.

## COUNT II

## Breach of the Implied Warranty of Merchantability

82.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

83.     Defendant is a merchant as defined by applicable Uniform Commercial Code ("U.C.C.") provisions and sold PS3 consoles to Plaintiffs and members of the Class.

84.     Defendant impliedly warranted to Plaintiffs and members of the Class that the PS3 was merchantable and fit for personal or business computing.  Specifically, Defendant impliedly warranted that the PS3 could utilize other operating systems (such as Linux) and be used as personal computer.

85.     Plaintiffs and the Class were in privity with Defendant as a result of Defendant's express written warranties, or by Defendant acting in concert with other agents, servants, partners, aiders and abettors, co-conspirators and/or joint venturers that were direct sellers, such as sister

company Sony Electronics, Inc. and Defendant's authorized retail stores.

86.     As alleged herein, Defendant's Update 3.21 breached the implied warranty of merchantability because it eliminated the "Other OS" feature and the ability to use the PS3 as a personal computer.  In addition, without Update 3.21, Plaintiffs and the Class lose access to the PSN which includes playing online games and access to other online features.  Defendant's actions have rendered the PS3 unmerchantable and unfit for its intended purpose.

87.     Defendant's conduct in eliminating the "Other OS" functionality and failure to adequately disclose to the Plaintiff and the Class that the Update 3.21 would eliminate the "Other OS" feature, is a breach of SCEA's obligation of good faith and fair dealing.

88.     Defendant knew or should have known that the Update 3.21 had the aforesaid properties and would render the PS3 unmerchantable and unfit for its intended use or purpose.

89.     Defendant had reasonable and adequate notice of the Plaintiff and the Class Members' claims for breach of implied warranty of merchantability via the publicly available consumer complaints predating the filing of this pleading, and failed to cure.

90.     As a result of Defendant's breaches of implied warranty, Plaintiff and members of the Class have been injured and are entitled to equitable/injunctive relief and/or damages in a measure and amount which are to be determined at trial.

**COUNT III**
**Breach of the Implied Warranty of Fitness for a Particular Purpose**

91.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

92.     Defendant is a merchant as defined by applicable Uniform Commercial Code ("U.C.C.") provisions and sold PS3 consoles to Plaintiffs and members of the Class.

93.     Defendant impliedly warranted to Plaintiffs and members of the Class that the PS3

28

fit for personal or business computing.  Specifically, Defendant impliedly warranted that the PS3 could utilize other operating systems (such as Linux) and be used as personal computer.

94.     Plaintiffs and the Class were in privity with Defendant as a result of Defendant's express written warranties, or by Defendant acting in concert with other agents, servants, partners, aiders and abettors, co-conspirators and/or joint venturers that were direct sellers, such as sister company Sony Electronics, Inc. and Defendwant's authorized retail stores.

95.     As alleged herein, Defendant's Update 3.21 breached the implied warranty of fitness for particular purpose because it eliminated the "Other OS" feature and the ability to use the PS3 as a personal computer. In addition without Update 3.21, Plaintiffs and the Class lose access to the PSN which includes playing online games and access to other online features.  Defendant's actions have rendered the PS3 unmerchantable and unfit for its intended purpose.

96.     Defendant's conduct in eliminating the "Other OS" functionality and failure to adequately disclose to the Plaintiffs and the Class that Update 3.21 would eliminate the "Other OS" feature, is a breach of Defendant's obligation of good faith and fair dealing.

97.     Defendant knew or should have known that the Update 3.21 had the aforesaid properties and would render the PS3 unmerchantable and unfit for its intended use or purpose.

98.     Defendant had reasonable and adequate notice of the Plaintiffs and the Class Members' claims for breach of implied warranty of merchantability via the publicly available consumer complaints predating the filing of this pleading, and failed to cure.

99.     As a result of Defendant's breaches of implied warranty, Plaintiffs and members of the Class have been injured and are entitled to equitable/injunctive relief and/or damages in a measure and amount which are to be determined at trial.

CONSOLIDATED CLASS ACTION COMPLAINT

## COUNT IV

### Violation of the California Consumers Legal Remedies Act

100.    Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

101.    Defendant is a "person," as defined by Cal. Civil Code § 1761(c).

102.    Plaintiffs and the Class members are "consumers," within the meaning of Cal. Civil Code § 1761(d).

103.    The PS3 is a "good," within the meaning of Cal. Civil Code § 1761(a).

104.    Each Plaintiffs' purchase of the PS3 constituted a "transaction," as that term is defined in Cal. Civil Code § 1761(e).

105.    Before purchasing the PS3, Plaintiffs each reviewed and relied on Defendant's affirmative representations about the PS3's features and omissions of material facts, including that Defendant would disable the "Other OS" feature.  Defendant's acts and omissions, as alleged herein, violated the California Consumers Legal Remedies Act ("CLRA") and Cal. Civ. Code § 1770(a)(5)'s proscription against representing that goods have uses, characteristics, or benefits they do not actually have; Cal. Civ. Code § 1770(a)(7)'s proscription against representing that goods are of a particular standard, quality, or grade when they are of another; and Cal. Civ. Code § 1770(a)(9)'s proscription against advertising goods with an intent not to sell them as advertised.

106.    Since the 2006 introduction of the PS3 by Defendant, it advertised, promoted, marketed, warranted, and sold this system as a personal computer.  This practice continued up to the release of the Update 3.21 which disabled the "Other OS" feature and the ability to use the PS3 as a personal computer.

107.    Further, Defendant failed to adequately disclose, at the time of purchase, that it

30

might disable the "Other OS" feature.  Defendant also failed to adequately disclose that the Update 3.21 would disable the "Other OS" feature when installed on a PS3, or give consumers a viable option of not installing the Update 3.21.

108.   For those Class members who became aware of the crippling effect of the Update 3.21, and had the ability to choose whether or not to install the update, Defendant left them without much of a choice.  If the PS3 is not updated, many of the other promoted PS3 features are disabled, such as: (1) the ability to sign into the PSN to play games online and use other online features; (2) playback of PS3 software titles or Blu-ray discs that require version 3.21 or later; (3) playback of the copyrighted protected videos that are stored on a media server; and (4) use of new features and improvements that are available on version 3.21 or later.

109.   The facts that Defendant had a duty to disclose but failed to disclose or adequately disclose, concealed, and/or misrepresented are material in that reasonable consumers would consider them important in deciding whether or not to purchase (and/or pay the same price for) the PS3.  Had Plaintiffs and the Class known that Defendant was going to disable the "Other OS" feature and thereby preclude the PS3's use as a personal computer, they would not have purchased the PS3 or would have paid less for it.

110.   In failing to disclose this information, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

111.   Defendant knew that it might disable the "Other OS" feature and that Update 3.21 would cripple the PS3.

112.   Defendant's concealment and deceptive practices, in violation of the CLRA, were designed to and did induce Plaintiffs and the Class to purchase the PS3.

113.   Defendant performed the acts herein alleged in connection with the design,

CONSOLIDATED CLASS ACTION COMPLAINT

marketing, advertising, warranty, and/or sale of the PS3 with a knowledge and intent to defraud and deceive Plaintiffs and the Class.

114.    Defendant also violated Civil Code §1770(19) by inserting one or more unconscionable provisions into a contract.  Defendant's insertion of the following clauses into the System Software License Agreement was unconscionable to the extent that SCEA attempts to use this provision as a basis upon which to remove core features of the PS3s at issue:

- "Some services may change your current settings, cause a loss of data or content, or cause some loss of functionality."

- "SCE, at its sole discretion, may modify the terms of this Agreement at any time, including any terms in the PS3TM system documentation or manual, or at http://www.scei.co.jp/ps3-license/index.html.  Please check back on this website from time to time for changes to this Agreement.  Your continued access to or use of the System Software will signify your acceptance of any changes to this Agreement."

115.    Defendant used its superior bargaining strength to impose those terms upon customers, and customers had no meaningful choice whether to accept or reject these provisions. Thus, the System Software License Agreement was the product of oppression and the lack of negotiation, not any meaningful choice.  SCEA's use of this provision to justify its removal of the "Other OS" feature would be similar to SCEA stating that it was removing the feature that allowed consumers to play PS3 games on the PS3.

116.    After entering into the contract for the purchase and sale of a PS3, Plaintiffs and other Class members had no ability to negotiate the System Software License Agreement's terms, which was only provided to them after they purchased their PS3s, including the terms allowing Defendant to remove functions at will, allowing it to unilaterally change the System Software License Agreement at will and forcing customers to either accept any changes in the System Software License Agreement or cease their use of their PS3.

32

CONSOLIDATED CLASS ACTION COMPLAINT

117.   In addition, Defendant included these provisions within its small-type, prolix form; disguised them under nebulous headings; and buried them among sundry other unrelated contractual terms.

118.   These provisions are, accordingly, procedurally unconscionable.

119.   In imposing these terms, Defendant sought to create for itself an unlimited ability to alter the System Software License Agreement and the functions of the PS3 as it saw fit and without any consideration to Plaintiffs or other Class members.

120.   These provisions are one-sided and unreasonably favorable to Defendant.  It uniquely favors Defendant at the expense of customers, and Defendant clearly hid these terms in its standard-form contract to gain unfair advantage over its consumers.

121.   These terms are, as outlined above, substantively oppressive because they reallocate risk between consumers and Defendant in an objectively unreasonable and unexpected manner by permitting Defendant to change the System Software License Agreement and the PS3 functionalities to protect its interests in complete derogation of the rights of consumers.

122.   Both procedurally and substantively, therefore, these provisions are unduly oppressive and unconscionable.

123.   Therefore, if Defendant asserts in this action a defense related to these provisions, by reason of the foregoing, Plaintiffs and other Class members seek injunctive relief requiring Defendant to cease enforcement of the foregoing unconscionable contract provisions.

124.   Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendant under the CLRA for injunctive relief, restitution and/or disgorgement of funds paid to Defendant to purchase the PS3, and/or an injunction requiring Defendant to enable the "Other OS" feature of the PS3, free of charge, and an award of attorneys' fees and costs.

125.    Plaintiffs' counsel put Defendant on notice that it was in violation of the Consumers Legal Remedies Act.  Attached hereto as Exhibit A are true and correct copies of demand letters from Plaintiffs Ventura, Huber, and Herz.  As the thirty (30) day period has expired and Defendant failed to cure, Plaintiffs Ventura, Huber, and Herz seek actual and statutory damages on behalf of themselves and the Class.  Plaintiffs Stovell and Baker will serve notice on Defendant and therefore do not seek damages at this time, but will do so and amend the complaint as appropriate.

## COUNT V

### Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*

126.    Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

127.    The PS3 is a "computer" within the meaning of 18 U.S.C. § 1030(e)(1).

128.    Plaintiffs' and Class members' PS3 consoles are used in interstate commerce or communication, and are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2)(B).

129.    Defendant knowingly caused the transmission of software and intentionally caused damage without authorization to Plaintiffs' and Class members' PS3 consoles; and/or intentionally accessed Plaintiffs' and Class members' PS3 consoles without authorization and recklessly caused damage; and/or intentionally accessed Plaintiffs' and Class members' PS3 consoles without authorization and caused damage and loss.  Defendant's purpose was to protect its intellectual property although it informed Plaintiffs and Class members that the purpose was for security reasons.

130.    Defendant knowingly caused the transmission of software code and intentionally caused damage without Plaintiffs' authorization to Plaintiffs' and Class members' PS3 consoles.

34

Defendant knowingly and admittedly released Update 3.21 for the specific purpose of removing the "Install Other OS" feature – a feature that Defendant had advertised as part of the console and for which Plaintiffs and Class members had paid.  As a result of this knowing transmission, Defendant intentionally caused damage by disabling the "Install Other OS" feature.  The damage was unauthorized because a failure to download Update 3.21 resulted in the loss of other features, as described herein.  Further, Defendant's stated purpose was for security reasons although in reality it was to protect its intellectual property.

131.    Defendant intentionally accessed Plaintiffs' and the Class' PS3 systems and transmitted software without authorization and recklessly caused damage.

132.    Defendant intentionally accessed Plaintiffs and the Class' PS3 systems without authorization and caused damage and loss.  Although Plaintiffs and Class members may have authorized a firmware update for security reasons, they did not authorize the disabling of the "Install Other OS" feature.  Defendant did not present Plaintiffs and Class members with any actual choice because either downloading Update 3.21 or not downloading the update would both result in disabling certain advertised features.  Defendant's unauthorized access caused damage to Plaintiffs' and Class members' PS3 consoles and caused Plaintiffs and Class members to suffer losses, including, but not limited to, the ability use other operating systems and the money paid for this feature.  Plaintiffs' and Class members' consoles were reduced in value by Defendant's conduct because a gaming console that allows Defendant to remove and disable advertised and material features is worth less than a gaming console that does not allow these unconsented-to removals.

CONSOLIDATED CLASS ACTION COMPLAINT

133.    Through Defendant's intentional transmission of the software and the unauthorized access of Plaintiffs' and Class members' PS3 systems, Defendant impaired the integrity of Plaintiffs' and other individual Class members' systems and removed a feature that Plaintiffs and Class members had paid for.  As a direct result of engaging in such acts, Defendant caused damage exceeding an aggregate of $5,000 in value during a one-year period.

## COUNT VI

### Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

134.    Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

135.    The Magnuson-Moss Warranty Act ("Magnuson-Moss"), 15 U.S.C. § 2301, *et seq.*, provides a private right of action for purchasers of consumer products against manufacturers or retailers who, *inter alia*, fail to comply with the terms of a written or implied warranty.  15 U.S.C. § 2310(d)(1).  As demonstrated above, Defendant has failed to comply with the terms of its written and implied warranties with regard to the sale of its PS3s.

136.    Defendant's PS3s are "consumer products," as that term is defined in § 2301(1) of Magnuson-Moss.

137.    Defendant is a "warrantor," as that term is defined in § 2301(5) of Magnuson-Moss.

138.    Plaintiffs and each member of the Class are "consumers," as that term is defined in § 2301(3) of Magnuson-Moss.

139.    Defendant had reasonable and adequate notice of Plaintiffs' and the Class's claims of breach of Defendant's express written and implied warranties from the sale of its PS3s, and was given a reasonable opportunity to cure its failure to comply with those warranties.  However, Defendant never cured.  As a result of Defendant's breach of its written and implied warranties

36

through Magnuson-Moss, Plaintiffs and members of the Class have been injured and are entitled to equitable/injunctive relief and/or damages in a measure and amount to be determined at trial.

### COUNT VII

### Violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.* (False Advertising)

140.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

141.     Defendant has engaged in false advertising as it disseminated false and/or misleading statements regarding the PS3.

142.     Defendant knew or should have known by exercising reasonable care that its representations were false and/or misleading.  Beginning in 2006 and continuing through sometime around April 2010, Defendant engaged in false advertising in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*, by misrepresenting in its advertising, marketing, and other communications disseminated to Plaintiffs, the Class, and the consuming public that the PS3 was capable of being used as a personal computer via the "Other OS" feature.

143.     Beginning in or about 2006 and continuing up to April 2010, Defendant engaged in false advertising in violation of Bus. & Prof. Code §§ 17500, *et seq.*, by omitting, failing to disclose, and/or concealing the material fact that it could disable the "Other OS" feature and that it intended to do so via Update 3.21.  The Update 3.21 disabled the ability of Plaintiff and the Class to utilize the "Other OS" feature and utilize the PS3 as a personal computer.

144.     By disseminating and publishing these statements in connection with the sale of its goods, Defendant has engaged in and continues to engage in false advertising in violation of Bus. & Prof. Code §§ 17500, *et seq.*

145.     As a direct and proximate result of Defendant's conduct, as set forth herein,

1    Defendant has received ill-gotten gains and/or profits, including, but not limited to money.

2    Therefore, Defendant has been unjustly enriched.  Pursuant to Cal. Bus. & Prof. Code § 17535,

3    Plaintiffs and members of the Class request restitution and restitutionary engorgement for all sums

4    obtained in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

5
6        146.    Plaintiffs and the Class seek injunctive relief, restitution, and restitutionary

7    disgorgement of Defendant's ill-gotten gains as specifically provided in Cal. Bus. & Prof. Code §

8    17535.

9        147.    Plaintiffs and the Class seek to enjoin Defendant from engaging in these wrongful

10   practices, as alleged herein, in the future, including but not limited to disabling other features of

11   the PS3.  There is no adequate remedy at law and if an injunction is not ordered, Plaintiffs and the

12   Class will suffer irreparable harm and/or injury.

13
14                                    **COUNT VIII**

15        **Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.* (Unfair Competition)**

16       148.    Plaintiffs incorporate by reference and reallege all paragraphs previously alleged

17   herein.

18       149.    Cal. Bus. & Prof. Code § 17200 prohibits acts of "unfair competition."  As used in

19   this section, "unfair competition" encompasses three distinct types of misconduct: (a) "any

20
21   unlawful . . . business act or practice;" (b) "any . . . unfair or fraudulent business act or practice;"

22   and (c) "any . . . unfair, deceptive, untrue or misleading advertising."

23       150.    Defendant knew or should have known by exercising reasonable care that its

24   representations were false and/or misleading.  Beginning in 2006 and continuing through sometime

25   around April 2010, Defendant engaged in practices which violate Cal. Bus. & Prof. Code §§

26   17200, *et seq.*, by misrepresenting in its advertising, marketing, and other communications

27
28

                                         38

1   disseminated to Plaintiffs, the Class, and the consuming public that the PS3 was capable of being

2   used as a personal computer via the "Other OS" feature.

3       151.    Beginning in or about 2006 and continuing through sometime around April 2010,

4   Defendant engaged in practices which violate Bus. & Prof. Code §§ 17200, *et seq.* by omitting,

5   failing to disclose or adequately disclose, and/or concealing the material fact that it could disable

6   the PS3's advertised features, including the "Other OS" feature, and that it intended to do so via

7   Update 3.21.  Update 3.21 disabled the ability of Plaintiffs and the Class to utilize the "Other OS"

8

9   feature and utilize the PS3 as a personal computer.

10      152.    Defendant disseminated unfair, deceptive, untrue, and/or misleading advertising in

11  violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, when it

12  misrepresented, failed to disclose, and/or concealed the true defective nature of the PS3 in its

13

14  advertising, marketing, and other broadly disseminated representations.

15      153.    Defendant's above-described conduct is unlawful because it constitutes a breach of

16  express warranty, breach of implied warranties, conversion, and unjust enrichment.  Defendant's

17  conduct is further unlawful because it violates the Consumers Legal Remedies Act (Cal. Civ. Code

18
    §§ 1750, *et seq.*), the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301, *et seq.*), the Computer
19
    Fraud and Abuse Act (18 U.S.C. § 1030), and the False Advertising Law (Cal. Bus. & Prof. Code
20

21  §§ 17500, *et seq.*).

22      154.    Defendant's above-described conduct constitutes "unfair" business practices within

23  the meaning of the Unfair Competition Law insofar as the justification for Defendant's conduct is

24  outweighed by the gravity of the consequences to Plaintiffs and Class members and Defendant's

25
    conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.
26

27  Defendant's conduct is further unfair because it violates the legislative policies and spirit of the

28

laws discussed in Paragraph 153, *supra*.

155.    Defendant's above-described conduct constitutes "fraudulent" business practices within the meaning of the Unfair Competition Law insofar as SCEA's business practices alleged herein are likely to deceive members of the public.

156.    These above-described unlawful, unfair and fraudulent business practices and false and misleading advertising by Defendant present an ongoing threat to Plaintiffs and the Class. Plaintiffs are informed and believe and thereon allege that Defendant has systematically perpetrated deceptive and unfair practices upon members of the public and has intentionally deceived Plaintiffs and the Class.

157.    In addition, the use of media to promote the sale of PS3 through false and deceptive representations constitutes unfair competition and unfair, deceptive, untrue, or misleading advertising within the meaning of the Unfair Competition Law.

158.    As a direct and proximate result of Defendant's violation of the Unfair Competition Law, Plaintiffs and the Class members have suffered injury in fact and lost money and property. They would not have purchased or would have paid less for the PS3 if Plaintiffs and the Class had known that Defendant reserved the right to disable or remove advertised features of the PS3, including the "Other OS" feature, and that Defendant would, in fact, disable the "Other OS" feature.

159.    As a direct and proximate result of Defendant's violation of the Unfair Competition Law, Plaintiffs and the Class members have suffered injury in fact and lost money and property in that they purchased a PS3 that no longer works as a personal computer or no longer has the advertised features, and have incurred or will be required to incur costs to replace or repair their PS3 with a personal computer.

40

CONSOLIDATED CLASS ACTION COMPLAINT

160.     As a direct and proximate result of Defendant's violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiffs and the Class and should be required to make restitution to Plaintiffs and the Class members or make restitutionary disgorgement of its ill-gotten profits pursuant to Cal. Bus. & Prof. Code § 17203.

161.     The refusal to reverse Update 3.21 and the threat of future modifications to the specifications as represented, advertised, and disseminated to the class constitute ongoing violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and justify an issuance of an injunction requiring Defendant to act in accordance with the law.  All remedies are cumulative pursuant to Cal. Bus. & Prof. Code § 17205.

162.     Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendant for injunctive relief in the form of restitution, and/or restitutionary disgorgement, and/or injunctive relief in the form of enabling the "Other OS" function of the PS3, and an award of attorneys' fees.

163.     Plaintiffs and the Class seek to enjoin Defendant from engaging in these wrongful practices as alleged herein, in the future.  There is no other adequate remedy at law and if an injunction is not ordered, Plaintiffs and the Class will suffer irreparable harm and/or injury.

<u>**COUNT IX**</u>

<u>**Conversion**</u>

164.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

165.     By purchasing a PS3, Plaintiffs and each member of the Class became owners of their PS3 and all of their PS3's features.  Thus, the PS3's features, including the "Other OS" feature, which was designed, marketed, and built-in to the PS3, were Plaintiffs' and the Class's

property.

166.    By releasing Update 3.21 and thereby removing the PS3's advertised features, including the "Other OS" feature, Defendant intentionally and wrongfully exercised control over, took, damaged, and/or interfered with Plaintiffs and the Class's property.

167.    Plaintiffs are informed and believe, and thereon allege that Defendant's aforementioned wrongful acts were willful and malicious in that Defendant intended to wrongfully exercise control over, take, damage, and/or interfere with Plaintiffs' the Class's property.

168.    As a direct and proximate result of Defendant's conversion of Plaintiffs' and the Class's property, Plaintiffs and each member of the Class have been injured and have suffered damages in a measure and amount to be determined at trial.

## COUNT X

## Unjust Enrichment

169.    Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

170.    Plaintiffs and the Class have conferred benefits on Defendant by paying value for the "Other OS" function, as well as the other advertised functions, that they reasonably expected Defendant to support for the life of the PS3s they purchased.  In purchasing the PS3, Plaintiffs and each member of the Class paid for the ability to use the "Install Other OS" feature, the ability to Blu-ray discs, and the ability to access the PSN for online gaming and network features.  By issuing Update 3.21, regardless of whether a user downloads the software, he or she will lose complete functionality of his or her PS3 console as it was advertised.

171.    Defendant knowingly and willingly accepted monetary benefits from Plaintiffs and the Class, but Defendant did not honor its obligations.  Rather, Defendant benefited from the sales

42

of PS3s with the "Other OS" function which it then forced purchasers to either disable or forgo other important PS3 functions.

172.    Under the circumstances described herein, it is inequitable for Defendant to retain the full monetary benefit at the expenses of Plaintiffs and the Class.

173.    By engaging in the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiffs and the Class and is required, in equity and good conscience, to compensate Plaintiffs and the Class for harm suffered as a result of its actions.

174.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement by Defendant of the benefit conferred by Plaintiffs and the Class.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against Defendant, as follows:

A.    An order certifying the proposed Class, designating Plaintiffs as the named representatives of the Class, and designating the undersigned as Class Counsel;

B.    An order enjoining Defendant from further deceptive advertising, marketing, distribution, and sales practices with respect to the PS3 and to enable the "Other OS" feature on the PS3;

C.    An award to Plaintiffs and the Class of compensatory, consequential, punitive and statutory damages, including interest thereon, in an amount to be proven at trial;

D.    An order requiring the restitution and restitutionary disgorgement to the Class of all profits unlawfully obtained by Defendant;

43

E. An award of attorneys' fees and costs, as allowed by law;

F. An award of pre-judgment and post-judgment interest, as provided by law;

G. For leave to amend the Complaint to conform to the evidence produced at trial; and

H. Such other or further relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and all others similarly situated, demand a trial by jury of any and all issues in this action so triable.

Dated: July 30, 2010

**CALVO & CLARK, LLP**

/s/ James A. Quadra
James A. Quadra

Rebecca Coll
One Lombard Street
San Francisco, California 94111
Telephone: 415-374-8370
Facsimile: 415-374-8373

Dated: July 30, 2010

**FINKELSTEIN THOMPSON LLP**

/s/ Rosemary M. Rivas
Rosemary M. Rivas

Tracy Tien
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: 415-398-8700
Facsimile: 415-398-8704

Dated: July 30, 2010

**HAUSFELD LLP**

/s/ James Pizzirusso
James Pizzirusso (*Pro hac vice*)

1700 K St., NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200

44

Facsimile: 202-540-7201

*Co-Interim Lead Counsel for Plaintiffs*

Douglas G. Thompson
**FINKELSTEIN THOMPSON LLP**
1050 30th Street, NW
Washington, DC 20007
Telephone: 202-337-8000
Facsimile: 202-337-8090

Michael P. Lehmann
**HAUSFELD LLP**
44 Montgomery Street, Suite 3400
San Francisco, California 94104
Telephone: 415-633-1908
Facsimile: 415-358-4980

Bruce L. Simon
**PEARSON, SIMON, WARSHAW &
PENNY, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone: 415-433-9000
Facsimile: 415-433-9008

Daniel L. Warshaw
**PEARSON, SIMON, WARSHAW &
PENNY, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: 818-788-8300
Facsimile: 818-788-8104

Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns (*Pro hac vice*)
**CHIMICLES & TIKELIS LLP**
361 W. Lancaster Ave.
Haverford, Pennsylvania 19041
Telephone: 610-642-8500
Facsimile: 610-649-3633

45

Ralph B. Kalfayan
**KRAUSE, KALFAYAN, BENINK & SLAVENS, LLP**
625 Broadway, Suite 635
San Diego, California  92101
Telephone: 619-232-0331
Facsimile: 619-232-4019

Jeffrey Carton (*Pro hac vice*)
D. Greg Blankinship (*Pro hac vice*)
**MEISELMAN, DENLEA, PACKMAN, CARTON & EBERZ P.C.**
1311 Mamaroneck Avenue
White Plains, New York 10605
Telephone: 914-517-5000
Facsimile: 914-517-5055

John R. Fabry (*Pro hac vice*)
**WILLIAMS KHERKHER HART BOUNDAS, LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
Telephone: 713-230-2200
Facsimile: 713-643-6226

Rosemary Farrales Luzon
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
401 West A. Street, Suite 2350
San Diego, California 92101
Telephone: 619-235-2416
Facsimile: 619-234-7334

*Counsel for Plaintiffs*

I, Rosemary M. Rivas, am the ECF user whose ID and password are being used to file this CONSOLIDATED CLASS ACTION COMPLAINT.  In compliance with General Order 45, X.B., I hereby attest that James A. Quadra and James Pizzirusso have concurred in this filing.

46

CONSOLIDATED CLASS ACTION COMPLAINT

## AFFIDAVIT OF TRACY TIEN

I, Tracy Tien, declare as follows:

1. I am an associate with the law firm Finkelstein Thompson LLP, one of the firms appointed as Co-Interim Lead Counsel for Plaintiffs in this consolidated action. I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California. This declaration is made pursuant to California Civil Code section 1780(c). I make this declaration based on my law firm's research of public records and also upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2. Public records indicate that Defendant's principal place of business is within this District, as alleged in the accompanying Consolidated Class Action Complaint.

I declare under penalty of perjury under the laws of the United States on this 30th day of July 2010 in San Francisco, California that the foregoing is true and correct.

_____
TRACY TIEN

State of California
County of _San Francisco_
Subscribed and sworn to (or affirmed)
before me on this _30th_ day of _July_ ,
20 _10_  by _Tracy Tien_ ,
proved to me on the basis of satisfactory
evidence to be the person(s) who
appeared before me.
_Ubio_
Signature _____

MARLYN ANO
COMM. # 1840288
NOTARY PUBLIC - CALIFORNIA
SAN FRANCISCO COUNTY
My Commission Expires March 21, 2013

47

CONSOLIDATED CLASS ACTION COMPLAINT

# EXHIBIT A

## MEISELMAN, DENLEA, PACKMAN, CARTON & EBERZ P.C.

### Attorneys at Law

1311 MAMARONECK AVENUE, WHITE PLAINS, NY 10605
TEL: (914)517-5000  |  FAX: (914)517-5055

April 29, 2010

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUIRED**

Sony Computer Entertainment America, Inc.
919 East Hillsdale Boulevard
Foster City, CA 94404-4249

Re:     *Ventura v. Sony Corporation of America, Inc.*

Dear Sir or Madam:

This office represents Anthony Ventura, on behalf of himself and all those similarly situated, in the matter of *Ventura v. Sony Computer Entertainment America, Inc.* This letter constitutes a notification to you pursuant to California Civil Code § 1782.

As set forth in detail in the enclosed Complaint, Sony Computer Entertainment America, Inc. ("Sony") has violated, and continues to violate California Civil Code § 1770.

Background

The Sony Playstation®3 video game console (the "PS3"), which competes with Microsoft's Xbox 360 and Nintendo's Wii as part of the newest generation of video game consoles, was released in the United States with great fanfare on November 17, 2006.

At the time of its launch, the PS3 was the most expensive gaming console available, retailing for $599.00 in part because it is capable of far more than merely playing games at home. With the growing homogenization of consumer technology and increased competition, Sony looked to market the additional features available in the PS3, such as the "Other OS" feature and the inclusion of Blu-ray technology, to distinguish its product from the others.

MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.

*Ventura v. Sony Computer Entertainment America*
April 29, 2010

In fact, Sony's marketing and advertising of the PS3 highlighted the major features that distinguish the PS3 from other gaming consoles, including its unified online gaming service, the PlayStation Network, its robust multimedia capabilities, its use of a high-definition optical Blu-ray Disc as its primary storage medium, and the Blu-ray 2.0-compliant Blu-ray player.

An important PS3 feature Sony advertised was the Other OS function, which provides users with the unique ability to install another operating system, such as a Linux operating system, alongside the main PS3 system software.

Until recently, Sony promoted the Other OS feature in its marketing of the PS3. Indeed, Sony stated on its website "playstation.com" that when it designed the PS3, "it was fully intended that you, a PS3 owner, could play games, watch movies, view photos, listen to music, and run a full-featured Linux operating system that transforms your PS3 into a home computer."

Sony used a marketing strategy that persuaded consumers that the PS3 could be used as a home personal computer with a direct connection to the Internet, while retaining its other gaming and multimedia features.

On March 28, 2010, Sony announced that it would no longer honor its obligation to support the Other OS feature. On its playstation.com website, Sony announced that it would release software updated 3.21 ("Update 3.21"), which would disable the Other OS feature. PS3 owners are not technically required to install Update 3.21. However, Sony has built a vast and sticky web of restrictions that will prevent users from accessing many of the PS3's other features for anyone who declines the "upgrade." In particular, for users who do not install firmware 3.21:

- It will be impossible for users to access the Playstation Network;
- It will be impossible to play PS3 games online;
- It will be impossible to play new PS3 games;
- It will be impossible to watch new Blu-ray videos;
- New Blu-ray discs could disable the Blu-ray drive entirely if they contain an AACS Host Revocation List that affects the old software version; and
- Videos on DTCP-IP media servers will be disabled.

By forcing users to choose between these features, collectively referred to as "Other Advertised Features," and the Other OS feature, Sony is effectively downgrading PS3s already sold and in the hands of consumers — when consumers purchased the console, the console could play games, play Blu-ray discs, and run Linux. After April 1, it is an inferior product.

2

MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.

*Ventura v. Sony Computer Entertainment America*
April 29, 2010

Provisions of Consumer Legal Remedies Act Violated

In representing that the product would carry the foregoing features, including the Other OS feature and the Other Advertised Features, and failing to advise consumers such features would be removed, Sony violated California's Consumer Legal Remedies Act.

Specifically, Sony represented that the PS3 had characteristics, uses, or benefits which it did not have in violation of Civil Code § 1770(5) when it represented that the PS3 would have both the Other OS feature and the Other Advertised Features, while simultaneously omitting the material fact that users would be forced to choose between them.

To the extent Sony claims its licensing agreement is enforceable, Sony also violated Civil Code §1770(19) by inserting one or more unconscionable provisions into the licensing agreement, including the following clauses:

- "Some services may change your current settings, cause a loss of data or content, or cause some loss of functionality."

- "SCE, at its sole discretion, may modify the terms of this Agreement at any time, including any terms in the PS3TM system documentation or manual, or at http://www.scei.co.jp/ps3-license/index.html. Please check back on this website from time to time for changes to this Agreement. Your continued access to or use of the System Software will signify your acceptance of any changes to this Agreement."

Request That Sony Remedy its Wrongful Conduct

Plaintiff Anthony Ventura, on behalf of himself and all those similarly situated, demands that Sony rectify the foregoing violations by (1) making the Other OS feature, together with the Other Advertised Features, available to all purchasers of the PS3 and/or arranging for a refund of all or part of the purchase price of the product to all owners of the PS3 system, and (2) removing the above-identified unconscionable provisions from PS3 license agreements, and agreeing not to seek the enforcement of these provisions under any circumstances.

3

MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.

*Ventura v. Sony Computer Entertainment America*
April 29, 2010

Please provide a response within thirty days.

Very truly yours,

MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.

Rebecca Coll
(914) 517-5025
rcoll@mdpcelaw.com

RC/bls
00229685.doc

4



U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

File # 1703-7
RC

| | |
|---|---|
| Postage | $ 1.56 |
| Certified Fee | 2.80 |
| Return Receipt Fee (Endorsement Required) | 2.30 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.66 |

Postmark Here
APR 29 2010

Sent To Sony Computer Entertainment America, Inc
Street, Apt. No.; or PO Box No. 919 East Hillsdale Blvd.
City, State, ZIP+4 Foster City, CA 94404-4248

PS Form 3800, August 2006          See Reverse for Instructions

7006 2150 0000 2521 1758



HAUSFELD LLP

202.540.7200 ph
202.540.7201 fax

1700 K Street, NW
Suite 650
Washington, DC 20006

James Pizzirusso
jpizzirusso@hausfeldllp.com

May 21, 2010
**FOR SETTLEMENT PURPOSES ONLY**

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Sony Computer Entertainment of America, LLC
Office of General Counsel
919 East Hillsdale Blvd.
Foster City, CA 94404

      Re:  Playstation 3 - Removal of "Other OS" function - Notice of Breach and Opportunity
      to Cure

To Whom It May Concern:

      My firm, Hausfeld LLP, along with Pearson, Simon, Warshaw & Penny, LLP, represent
Jonathan Huber of Knoxville, Tennessee, with regard to the PlayStation 3 ("PS3") that he
purchased from Wal-Mart in December 2007 for $599 plus tax.  The PS3 was advertised,
promoted, marketed, warranted and sold as containing an "Other OS" function that allowed users
to install Linux and utilize the PS3 as a computer.  This was a key feature distinguishing this
product from competitors such as the Nintendo Wii and X-Box 360.  Our client purchased his
PS3, in part, for this reason and installed Linux on his system.  SCEA's most recent firmware
update, which our client installed in order to be able to continue playing games online, removed
this important feature.

      Our research and investigation have led us to the conclusion that there are numerous
other PS3 customers who are also experiencing this same problem.  Given that this issue has not
been resolved, please be advised that we are filing a nationwide class action complaint on behalf
of similar PS3 purchasers.  We are bringing claims for breach of express and implied warranty;
violations of the Magnuson-Moss Warranty Act; Violations of Cal. Bus. and Prof. Code, §§
17200 and 17500; Violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750; and
conversion.

      Pursuant to the California Consumer Legal Remedies Act ("CLRA"), California Civil
Code §§ 1750, et seq. (specifically, §§ 1782(a)(1) and (2)), Jonathan Huber, on behalf of himself
and all other similarly situated consumers nationwide (collectively, the "Class"), through their
undersigned counsel, hereby notify you that Sony Computer Entertainment of America, LLC

HAUSFELD LLP

Sony Computer Entertainment of America, LLC
5/21/2010
Page 2
("SCEA") is alleged to have violated the CLRA by warranting, marketing, advertising, and promoting PS3s with the intent not to sell them as advertised.

SCEA's misrepresentations in warranting, marketing, advertising, promoting, and selling PS3s constitute the following violations of the CLRA:

1.      SCEA has represented that its goods have characteristics, uses or benefits that they do not have (§ 1770(a)(5));
2.      SCEA has falsely represented that its goods are of a particular standard, quality or grade when they are of another (§ 1770(a)(7)); and
3.      SCEA has advertised its goods with the intent not to sell them as advertised (§ 1770(a)(9)).

Pursuant to Section 1782 of the CLRA, and based on the foregoing, we hereby demand that within thirty (30) days of receiving this letter, SCEA agree to refund our client his entire purchase price, or, at the very least, provide our client with a firmware update that would allow him to maintain his use of the "Other OS" function, as well as all of the other advertised features of the PS3 (including online gaming). Our client further requests that SCEA provide a corrective advertising and notice campaign and pay all related attorneys' fees and costs.

If you have any questions, please contact my office. I look forward to hearing from you soon.

Sincerely,

/S/
James Pizzirusso

HAUSFELD LLP
1700 K STREET, NW
SUITE 650
WASHINGTON, DC 20006





7009 1680 0000 8955 7966

Sony Computer Entertainment of America, LLC
Office of General Counsel
919 East Hillsdale Blvd.
Foster City, CA 94404

NMH


**UNITED STATES**
**POSTAL SERVICE**®

Home | Help |
Sign In

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7009 1680 0000 8955 7966**
Service(s): **Certified Mail**™
Status: **Delivered**

Your item was delivered at 9:49 AM on May 24, 2010 in SAN MATEO,
CA 94402.

Track & Confirm

Enter Label/Receipt Number.

( Go > )

Site Map     Customer Service     Forms     Gov't Services     Careers     Privacy Policy     Terms of Use     Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.     No FEAR Act EEO Data     FOIA



June 14, 2010

Reply to San Francisco, California
Writer's Direct E-mail: ttien@finkelsteinthompson.com

**VIA CERTIFIED MAIL**

Sony Computer Entertainment America, Inc.
919 East Hillsdale Boulevard
Foster City CA, 94404

     Re:    *Todd Densmore et. al. v. Sony Computer Entertainment America, Inc.* CV-10-1945 RS
              United States District Court, Northern District of California

To Whom It May Concern:

       On behalf of Plaintiffs Todd Densmore and Antal Herz and all others similarly situated, this letter is to notify Sony Computer Entertainment America, Inc. ("Sony") that it has violated the California Consumers Legal Remedies Act ("CLRA") by employing or committing methods, acts, or practices declared unlawful by California Civil Code section 1770 as alleged in the complaint enclosed with this letter. *See* Cal. Civ. Code § 1782(a) and (b). Pursuant to California Civil Code section 1782(d), Plaintiffs Densmore and Herz have initiated an action in the United States District Court, Northern District of California for injunctive relief against Sony. Under the CLRA, Sony may provide an appropriate remedy or agree to provide an appropriate remedy within a reasonable time, within thirty (30) days after receipt of this notice. If Sony does not provide or agree to provide an appropriate remedy within 30 days after receipt of this notice, Plaintiffs Densmore and Herz will amend their complaint to include a request for damages.

       The unlawful acts committed by Sony, in violation of the CLRA, include removing the "Install Other OS" function through dissemination of software update, Firmware 3.21 on April 1, 2010; failing to adequately disclose before the point of sale that Sony would remove the "Install Other OS," a function advertised by Sony and paid for by Plaintiffs and Class members; and requiring users to install Firmware 3.21 and lose the "Install Other OS" function or lose other advertised functions (such as the ability to ability to play Blu-ray discs and the ability to play games online).

       Sony's actions violate California Civil Code sections 1770(a)(5), 1770(a)(7), and 1770(a)(9), which prohibit representing that goods or services have characteristics, uses, benefits or quantities which they do not have; representing that goods or services are of a particular standard, quality or grade when they are another; and advertising goods with the intent not to sell them as advertised. As a direct and

1050 30TH STREET, NW · WASHINGTON, DC 20007 · PHONE: 202.337.8000 · FAX: 202.337.8090 · TOLL-FREE: 877.337.1050

100 BUSH STREET · SUITE 1450 · SAN FRANCISCO, CA 94104 · PHONE: 415.398.8700 · FAX: 415.398.8704 · TOLL-FREE: 877.800.1450
WWW.FINKELSTEINTHOMPSON.COM



proximate result of Sony's violations of the CLRA, Plaintiffs Densmore and Herz and members of the proposed Class have suffered damages.

Pursuant to California Civil Code section 1782(b), Sony may, within thirty (30) days after receipt of this letter, avoid a potential action for damages under the CLRA by agreeing to correct, repair and rectify its unlawful acts by: (1) providing all members of the proposed Class as defined in Paragraph 33 of the Complaint with notice of this action and the name of the attorneys for Plaintiffs Densmore and Herz; (2) restoring Plaintiffs' and Class members' PS3 consoles with the "Install Other OS" function; and (3) terminating its practice of requiring users to download firmware updates that remove paid-for and advertised functions.

Sincerely,

Tracy Tien

Enclosure:     Class Action Complaint

CC:
Sony Computer Entertainment America, Inc.
989 East Hillsdale Boulevard
Foster City CA, 94404

Sony Computer Entertainment America, Inc.
950 Tower Lane
Foster City CA, 94404

**U.S. Postal Service**
**CERTIFIED MAIL.. RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com.

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $1.39 |
| Certified Fee | | $2.80 |
| Return Receipt Fee (Endorsement Required) | | $2.30 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.49 |

SAN MATEO CA 94404   0052
SAN FRANCISCO CA SUTTER ST.
Postmark Here
2010
USPS
06/14/2010

Sent To Sony Comp. Entert. America, Inc.
Street, Apt. No.; or PO Box No. 919 East Hilsdale Blvd
City, State, ZIP+4 Foster City CA 94404

PS Form 3800, August 2006          See Reverse for Instructions

7008 1830 0002 6109 9042

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Sony Comp Entertainment
America, Inc.
919 East Hilsdale Blvd.
Foster City, CA 94404

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent  ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☒ No

JUN 15 2010

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. A
   (T

PS F

102595-02-M-1540