James A. Quadra (SBN 131084)
Email: jquadra@calvoclark.com
Rebecca M. Coll (SBN 184468)
Email: rcoll@calvoclark.com
**CALVO & CLARK, LLP**
One Lombard Street, Second Floor
San Francisco, CA 94111
Tel: (415) 374-8370
Fax: (415) 374-8373

Rosemary M. Rivas (SBN 209147)
Email: rrivas@finkelsteinthompson.com
Tracy Tien (SBN 253930)
Email: ttien@@finkelsteinthompson.com
**FINKELSTEIN THOMPSON, LLP**
100 Bush St., Suite 1450
San Francisco, CA 94115
Tel: (415) 398-8700
Fax: (415) 398-8704

James Pizzirusso (*Pro hac vice*)
Email: jpizzirusso@hausfeldllp.com
**HAUSFELD, LLP**
1700 K. St. NW, Suite 650
Washington, D.C. 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

*Interim Co-Lead Counsel and Counsel for Plaintiffs*
[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re Sony PS3 "Other OS" Litigation | Case No. CV-10-1811-RS |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS** |
| | Date: November 4, 2010 |
| | Time: 1:30 p.m. |
| | Judge: Hon. Richard Seeborg |
| | Courtroom: 3 |

# TABLE OF CONTENTS

INTRODUCTION………………………………………………………………………………1

ARGUMENT.............................................................................................................…....2

I.   SCEA'S MOTION IS IMPROPER ..............................................................................2

    A.   Motions to Strike Class Allegations Are Disfavored.......................................2

    B.   SCEA's Cited Authority Is Inapplicable..........................................................6

    C.   This Court Should Not Consider Any Factual Matters Outside the Four Corners of the Consolidated Complaint in Deciding SCEA's Motion to Strike ......................................7

II.   IN THE ALTERNATIVE, THE COMPLAINT ADEQUATELY PLEADS CLASS ALLEGATIONS .......................................................................................8

    A.   The Complaint Adequately Alleges A Readily Ascertainable Class................................8

    B.   The Complaint Adequately Alleges A Class That Meets The Requirements Of Rule 23(a)………….. ..........................................................................................12

    C.   The Complaint Adequately Alleges A Class That Meets The Requirements Of Rule 23(b) ............................................................................................15

        1.   The Class Can Be Certified Under Rule 23(b)(1)(A)...........................................15

        2.   The Class Can Be Certified Under Rule 23(b)(2). ...............................................16

        3.   The Class can be certified under Rule 23(b)(3). .................................................18

            (a).   A Rule 23(b)(3) Class Should Be Certified Where Common Issues Predominate ...............................................................................18

            (b).   Common Questions Predominate Over Individual Questions. ..............18

            (c).   This Court Can Certify The Fraud Based Claims Under 23(b)(3) .........19

            (d).   This Court Can Certify An Express Warranty Class Under 23(b)(3) ....22

            (e).   Damages Issues Do Not Preclude Certification Under Rule 23(b)(3) ...22

CONCLUSION……………………………………………………………………………23

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3

*Affiliated Ute Citizens of Utah v. United States*
    406 U.S. 128 (1972)..............................................................................20

*Arcilla v. Adidas Promotional Retail Operations, Inc.*
    488 F. Supp. 2d 965 (C.D. Cal. 2007) .................................................5

*Baas v. Dollar Tree Stores, Inc.*
    No. C 07-03108 JSW, 2007 WL 2462150 (N.D. Cal. Aug. 29, 2007)................................4

*Baba v. Hewlett-Packard Co.*
    No. 09-05946, 2010 WL 2486353 (N.D. Cal. June 16, 2010)..........................21

*Ballard v. Equifax Check Serv., Inc.*
    186 F.R.D. 589 (E.D. Cal. 1999) ........................................................10

*Blackie v. Barrack*
    524 F.2d 891 (9th Cir. 1975) ..............................................................23

*Brazil v. Dell Inc.*
    No. C-07-01700, 2008 WL 4912050 (N.D. Cal. Nov. 14, 2008) ......................4

*Bureerong v. Uvawas*
    922 F. Supp. 1450 (C.D. Cal. 1996) .....................................................7

*Chavez v. Blue Sky Natural Beverage Company*
    268 F.R.D. 365 (N.D.Cal. 2010)...........................................................13

*Chisolm v. TranSouth Fin. Corp.*
    194 F.R.D. 538 (E.D. Va. 2000) ...........................................................10

*Clark v. State Farm Mut. Auto. Ins. Co.*
    231 F.R.D. 405 (C.D. Cal. 2005)....................................................2, 3, 4

*Colaprico v. Sun Microsystems, Inc.*
    758 F. Supp. 1335 (N.D. Cal. 1991) .....................................................2

*Collins v. Gamestop Corp.*
    No. C10-1210, 2010 WL 3077671 (N.D. Cal. Aug. 6, 2010).....................4, 20

*Defazio v. Hollister, Inc.*
    No. S-04-1358, 2008 WL 958185 (E.D. Cal. Apr. 8, 2008)............................2

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Dodd-Owens v. Kyphon, Inc.*
   No. C 06-3988 JF (HRL), 2007 WL 3010560 (N.D. Cal. Oct. 12, 2007) ........................................... 7

*Dukes v. Wal-Mart Stores, Inc.*
   603 F.3d 571 (9th Cir. 2010) ........................................................................... 3, 14, 15, 17

*Edwards v. The First American Corp.*
   No. 08-56536, 2010 WL 2617588 (9th Cir. June 21, 2010) ............................................. 3

*Emcore Corp. v. PriceWaterhouseCoopers LLP*
   102 F.Supp.2d 237 (D.N.J. 2000) .............................................................................. 8

*Estrella v. Freedom Fin. Network, LLC*
   No. 09-3156, 2010 WL 2231790 (N.D. Cal. June 2, 2010) .......................................... 20, 21

*General Telephone Co. of Southwest v. Falcon*
   457 U.S. 147 (1982) ..................................................................................................... 6

*Grays Harbor Adventist Christian School v. Carrier Corp.*
   242 F.R.D. 568 (W.D. Wash. 2007) ....................................................................... 22

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) .......................................................................... 13, 18

*Hibbs-Rines v. Seagate Tech., LLC*
   No. C08-05430 SL, 2009 WL 513496 (N.D. Cal. Mar. 2, 2009) ................................. 5

*Hovsepian v. Apple, Inc.*
   No. 08-5788, 2009 WL 2591445 (N.D. Cal. Aug. 21, 2009) ..................................... 22

*In re 2TheMart.com, Inc. Sec. Litig.*
   114 F. Supp. 2d 955 (C.D. Cal. 2000) .......................................................................... 2

*In re Charles Schwab Corp. Secur. Litig.*
   257 F.R.D. 534 (N.D. Cal. 2009) ............................................................................ 5

*In re Commercial Tissue Products*
   183 F.R.D. 589 (N.D. Fla. 1998) ......................................................................... 8

*In re Tobacco II Cases*
   46 Cal. 4th 298 (Cal. 2009) ............................................................................. 13, 21

*In re U. S. Fin. Sec. Litig.*
   69 F.R.D. 24 (S.D. Cal. 1975) ................................................................................ 11

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*
  505 F.Supp.2d 609 (N.D. Cal. 2007) ........................................................................4, 5

*In re Prudential Ins. Co. Am. Sales Practices Litig.*
  148 F.3d 283 (3rd Cir. 1998) .............................................................................19

*Jones v. Diamond*
  519 F.2d 1090 (5th Cir. 1975) ...........................................................................5

*Keele v. Wexler*
  149 F.3d 589 (7th Cir. 1998) .............................................................................19

*Kilby v. CVS Pharmacy, Inc.*
  No. 09-2051, 2010 WL 3339464 (S.D. Cal. Aug. 23, 2010) ...........................12

*Korman v. The Walking Co.*
  503 F. Supp 2d 755 (E.D. Pa. 2007) .................................................................4

*La Mar v. H & B Novelty & Loan Co.*
  489 F.2d 461 (9th Cir. 1973) .............................................................................16

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
  244 F.3d 1152 (9th Cir. 2001) ...........................................................................18

*Misra v. Decision One Mortgage Co., LLC*
  673 F.Supp.2d 987 (C.D. Cal. 2008) .................................................................3

*Naton v. Bank of California*
  72 F.R.D. 550 (N.D. Cal. 1976) .........................................................................3

*O'Connor v. Boeing N. Am., Inc.*
  184 F.R.D. 311 (C.D. Cal. 1998) .......................................................................8

*Parkinson v. Hyundai Motor America*
  258 F.R.D. 580 (C.D. Cal. 2008) .......................................................................11

*Plascencia v. Lending 1st Mortgage*
  259 F.R.D. 437 (N.D. Cal. 2009) ..........................................................19, 20, 21

*Powell v. Advanta Nat. Bank*
  No. 7234, 2001 WL 1035715 (N.D. Ill. Sept. 10, 2001) ..................................10

*Randolph v. Crown Asset Mgmt., LLC*
  254 F.R.D. 513 (N.D. Ill. 2008) .........................................................................19

*Ruiz v. Gap, Inc.*
  540 F. Supp. 2d 1121 (N.D. Cal. 2008) ..................................................................3

*Saltzman v. Pella Corp.*
  257 F.R.D. 471 (N.D. Ill. 2009)...........................................................................11

*Sanders v. Apple, Inc.*
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................7, 20

*Shabaz v. Polo Ralph Lauren Corp*
  586 F. Supp. 2d 1205 (C.D. Cal. 2008) ................................................................5

*Shein v. Canon U.S.A., Inc.*
  No. 08-7323, 2010 WL 3170788 (C.D. Cal. Aug. 10, 2010) ...............................9

*Snyder v. Pascack Valley Hosp.*
  303 F.3d 271 (3d Cir. 2002)..................................................................................8

*Stubbs v. McDonald's Corp.*
  224 F.R.D. 668 (D. Kan 2004)...............................................................................7

*Sullivan v. Kelly Services, Inc.*
  No. 08-3893, 2010 WL 1729174 (N.D. Cal. April 27, 2010)...............................11

*Thompson v. Merck & Co, Inc.*
  No. C.A. 01-1004, 2004 WL 62710 (E.D. Pa. Jan. 6, 2004) ...............................7

*Thorpe v. Abbott Lab, Inc.*
  534 F. Supp. 2d 1120 (N.D. Cal. 2008) ................................................................3

*Tibble v. Edison Int'l*
  No. 07-5359, 2009 WL 6764541 (C.D. Cal. June 30, 2009) .............................16

*Tietsworth v. Sears, Roebuck and Co.*
  No. 09-00288, 2010 WL 1268093 (N.D. Cal. March 31, 2010)..........................20

*Velasquez v. HSBC Fin. Corp.*
  No. 08-4592 SC, 2009 WL 112919 (N.D. Cal. Jan. 16, 2009) ............................5

*Vinole v. Countrywide Home Loans, Inc.*
  571 F.3d 935 (9th Cir. 2009) ................................................................................6

*Walco Invs., Inc. v. Thenen*
  168 F.R.D. 315 (S.D. Fla. 1996)..........................................................................18

*Williams v. City of Antioch*
   No. 08-02301, 2010 WL 3632197 (N.D. Cal. Sept. 2, 2010) ...............................................8

*Williams v. Sinclair*
   529 F.2d 1383 (9th Cir. 1975) ......................................................................................22

*Wolin v. Jaguar Land Rover North Am., LLC*
   No. 07-00627, 2010 U.S. App. LEXIS 17132 (9th Cir. August 17, 2010).......................13

*Yokoyama v. Midland Nat'l Life Ins. Co.*
   No. 07-16825, 2009 WL 2634770 (9th Cir. Aug. 28, 2009) ...........................................23

**Statutes**

Cal. Civil Code
   § 1752......................................................................................................................11
   § 1760(a) ..............................................................................................................9, 11

**Other Authorities**

2 William B. Rubenstein, Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* (4th ed.
2010)
   § 4:8 .......................................................................................................................16
   § 4:25 .....................................................................................................................18

**Rules**

Fed. R. Civ. P.
   Rule 12(f) ...............................................................................................................2, 3
   Rule 23(a) .........................................................................................2, 3, 4, 8, 12, 14
   Rule 23(b) .......................................................................................................*passim*

**INTRODUCTION**

As detailed more fully in Plaintiffs' Opposition to Defendant's Motion to Dismiss, before April 1, 2010, Defendant Sony Computer Entertainment America LLC's ("SCEA") PlayStation3 ("PS3") consoles were capable of performing two sets of functions, in addition to simply playing video games. Consolidated Class Action Complaint, Docket No. 76 ("Complaint") ¶2. With the "Other OS" function, users were able to install Linux or other operating systems on the PS3 and use it as a personal computer. *Id.* In addition, users could take advantage of a number of other functions that depended on access to SCEA's unified online gaming service called the PlayStation Network ("PSN"), such as the ability to play on-line games or access on-line content, as well as functions that required up-to-date software updates, such as the ability to play new Blu-ray DVD discs (the "On-Line Features"). Complaint ¶¶ 2, 53. Relying on these features, SCEA was able to charge more for its product than other gaming consoles on the market. However, on April 1, 2010, SCEA unilaterally released its latest software update, version 3.21 ("Update 3.21"), which rendered every PS3 incapable of running both the Other OS function and also the On-Line Features. Complaint ¶¶ 52-53. Thus, every single PS3 user was forced to choose between retaining their ability to utilize the "Other OS" function, or retaining their ability to access the PSN and using the On-Line Features. *Id.* Because SCEA's actions uniformly affected all class members, this case is exemplary for class treatment.

The Court has set deadlines for Plaintiffs to file their class certification motion after discovery has taken place. Nonetheless, despite Plaintiffs' suggestions that such a motion would be premature and improper at this stage of the litigation, SCEA has also filed a motion to strike Plaintiffs' class certification allegations. SCEA's motion is a delay tactic and an effort to force determinations relating to class certification without the opportunity to conduct discovery, or properly brief the issue through a Motion to Certify the Class. Motions to strike class allegations are heavily disfavored, and with good reason—there is no provision for them in the Federal Rules, they are prejudicial to consumers who have not yet had the opportunity to conduct discovery, and they are contrary to well-established procedural safeguards that provide plaintiffs and the Court a full opportunity to hear all arguments and evidence relevant to the important determination of certification.

Moreover, even if the Court were to consider whether Plaintiffs have adequately pled the

1  elements of Rules 23, it is clear from the face of the Complaint (which is the only material relevant to

2  SCEA's motion to strike) that Plaintiffs have more than done so.  The resolution of the appropriateness

3  of SCEA's uniform act of releasing Update 3.21 in the face of its uniform advertising campaign that the

4  PS3 was capable of operating as a personal computer (or playing games online if a user chose not to

5  download Update 3.21) presents an overwhelming common issue of fact and law that substantially

6  predominates over any minor individual differences.  Thus, the Court should deny SCEA's motion to

7  strike and allow the Plaintiffs to conduct discovery.

8  **ARGUMENT**

9  **I.  SCEA'S MOTION IS IMPROPER**

10      **A.  Motions to Strike Class Allegations Are Disfavored**

11         The purpose of Rule 12(f) is to strike from the pleading, "redundant, immaterial, impertinent, or

12  scandalous matter."  Fed. R. Civ. P. 12(f).  The party moving to strike bears the burden of proof and the

13  duty of the court is to "view the pleading in the light more favorable to the pleader."  *Clark v. State*

14  *Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 406 (C.D. Cal. 2005) (citation omitted)[1]; *In re*

15  *2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000); *see also Colaprico v. Sun*

16  *Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) (motion to strike should only be granted

17  if it is clear that the matter to be stricken "could have no possible bearing on the subject matter of the

18  litigation.").

19         When the class action allegations "'address each of the elements of Rule 23, relate to the subject

20  matter of the litigation, and are not redundant, immaterial, or impertinent,' the court must find that the

21  allegations-viewed in the light most favorable to plaintiffs-are sufficient to survive a motion to strike."

22  *Defazio v. Hollister, Inc.,* No. S-04-1358, 2008 WL 958185, at *8 (E.D. Cal. Apr. 8, 2008) (citing

23

---

24  [1] In *Clark,* the district court denied the defendant's motion to strike class action allegations because the

25  motion was premature.  *Clark*, 231 F.R.D. at 407.  The court held that although the plaintiff's
   complaint contained conclusory class action allegations, "the allegations address each of the elements

26  of Rule 23, relate to the subject matter of the litigation, and are not redundant, immaterial, or

27  impertinent" and "[v]iewing the complaint in the light most favorable to Plaintiff," the plaintiff's class
   allegations were sufficient to withstand a motion to strike.  *Id.*

28

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**

*Clark*, 231 F.R.D. at 407). SCEA fails to argue much less show that Plaintiffs' class action allegations are "redundant, immaterial, impertinent, or scandalous." Likewise, SCEA fails to point out any allegations bearing no essential or important relationship to a claim. Finally, SCEA failed to show that any of the allegations against SCEA that are "scandalous." Instead, SCEA attempts to brief the *merits* of Plaintiffs' ability to obtain class certification prior to any discovery having taken place and prior to Plaintiffs ability to file a motion seeking certification. Thus, the Court should deny SCEA's motion to strike.

While SCEA argues that a defendant may move to strike class allegations, SCEA fails to mention that Rule 12(f) motions to strike class allegations are regarded with *disfavor* and are *rarely granted*. Defendant's Memorandum of Points and Authorities ("Def. Mem.") at 3:23-25; *see Clark*, 231 F.R.D. at 406; *see also Ruiz v. Gap, Inc.,* 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) (denying motion to strike class allegations at the pleading stage); *Ruiz v. Gap, Inc.,* No. 07-5739, 2008 WL 4449599, at *2 (N.D. Cal. Oct. 2, 2008) (denying subsequent motion to strike class definition as a reiteration of the initial motion to strike); *Misra v. Decision One Mortgage Co., LLC*, 673 F.Supp.2d 987, 994 (C.D. Cal. 2008) (denying motion to strike and holding that "there is little, if any, authority in the Ninth Circuit or its district courts to support striking the Rule 23 class claims at this stage of the litigation in a motion to strike."); *Thorpe v. Abbott Lab, Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008) ("[m]otions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for the arguments ...."); *Naton v. Bank of California*, 72 F.R.D. 550, 552 n.4 (N.D. Cal. 1976) (motions to strike class allegations "disfavored").

One reason for such disfavor is that to allow class certification issues to be decided before discovery has been conducted would be improper and inequitable. Courts must afford plaintiffs an adequate opportunity to conduct discovery necessary to support a motion for class certification. *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir. 2010); *see also Edwards v. The First American Corp.,* No. 08-56536, 2010 WL 2617588, at *1 (9th Cir. June 21, 2010) (finding that district court abused its discretion in denying nationwide discovery and holding that the plaintiffs could renew their motion for nationwide certification).

"[T]he better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery." *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F.Supp.2d 609, 615-16 (N.D. Cal. 2007) (denying motion to strike class allegations and holding that "[w]hile plaintiffs' class definitions are suspicious and may in fact be improper, plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery"); *see also Collins v. Gamestop Corp.*, No. C10-1210, 2010 WL 3077671, at **2-3 (N.D. Cal. Aug. 6, 2010) (denying motion to strike UCL and CLRA allegations as to California class as the motion was premature); *Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108 JSW, 2007 WL 2462150, at *3 (N.D. Cal. Aug. 29, 2007) (denying defendant's motion to strike as premature, and noting that "[c]ourts generally 'review class allegations through a motion for class certification'"); *Korman v. The Walking Co.*, 503 F. Supp 2d 755, 762-63 (E.D. Pa. 2007) (holding that "[i]t would be improper to allow Defendants to slip through the backdoor what is essentially an opposition to a motion for class certification before Plaintiffs have made such a motion and when discovery on the issue is still on-going); *Brazil v. Dell Inc.*, No. C-07-01700, 2008 WL 4912050, at *3 (N.D. Cal. Nov. 14, 2008) ("Discovery helps parties clarify the legal and factual predicates of the class action, and thus dismissal at the pleading stage is unusual."). Thus, the vast majority of courts to examine this have concluded that whether a plaintiff may succeed on a motion for class certification should be decided at the point such a motion is filed, not at the pleadings stage. *See Clark,* 231 F.R.D. at 407.

The need for some discovery is supported by the 2003 amendments to Rule 23 which replaced "as soon as practicable after the commencement of an action," with "at an early practicable time." This change was not cosmetic as the Advisory Committee explained:

> Time may be needed to gather information necessary to make the certification decision. Although an evaluation for the probable outcome on the merits is not properly part of the certification decision, discovery in aid of the certification decision often includes information required to identify the nature of the issues that actually will be presented at trial. In this sense it is appropriate to conduct controlled discovery into the "merits," limited to those aspects relevant to making the certification decision on an informed basis …. A critical need is to determine how the case will be tried.

1    Fed. R. Civ. P. 23(c)(1)(A) Advisory Committee Notes.  It is thus also clear from the Committee's

2    notes that the purpose of the amendment was to provide courts with more time and flexibility to permit

3    discovery and make informed decisions regarding class certification.  Thus, Defendant's instant motion

4    runs counter not only to language of the Rule, but to the Notes advising of their purpose, as well.

5          As such, courts faced with motion to strike class allegations at the pleading stage have

6    repeatedly counseled that "the better course is to deny such a motion because 'the shape and form of a

7    class action evolves only through the process of discovery.'"  *In re Wal-Mart Stores, Inc.*, 505 F. Supp.

8    2d at 615; *see also Shabaz v. Polo Ralph Lauren Corp*, 586 F. Supp. 2d 1205, 1211 (C.D. Cal. 2008);

9    *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965, 973 (C.D. Cal. 2007).

10   Even where courts have expressed serious concerns about the propriety of a class action, they have still

11   refused to address class certification at the pleading stage on the grounds that discovery and a fully

12   briefed record are necessary to make a fully informed decision.  *See, e.g., Velasquez v. HSBC Fin.*

13   *Corp.*, No. 08-4592 SC, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009) (court refused to address

14   class certification a the pleading stage even though court finds class definitions "troubling"); *Hibbs-*

15   *Rines v. Seagate Tech., LLC*, No. C08-05430 SL, 2009 WL 513496, at *3 (N.D. Cal. Mar. 2, 2009); *In*

16   *re Wal-Mart Stores*, 505 F. Supp. 2d at 615; *Brazil*, 2008 WL 4912050, at *4 (court did "not pre-judge"

17   whether a workable class definition could be proposed "before sufficient discovery has been taken.")

18   In the instant case, it is clear that Plaintiffs' class allegations are sufficient to meet the threshold burden

19   necessary to defeat a motion to strike.  *See,* Section II, *infra.*  The striking of Plaintiffs' class allegations

20   without the benefit of discovery would be unfair, prejudicial and improper.

21          Finally, any doubts as to whether the class allegations should be stricken must be resolved in

22   Plaintiffs' favor.  *See In re Charles Schwab Corp. Secur. Litig.*, 257 F.R.D. 534, 562 (N.D. Cal. 2009).

23   (denying motion to strike class allegations and holding that "[i]f there is any doubt whether the portion

24   to be stricken might bear on an issue in the litigation, the court should deny the motion."); *see also*

25   *Jones v. Diamond*, 519 F.2d 1090, 1098 (5th Cir. 1975) (reversing dismissal of class allegations as an

26   abuse of discretion and holding that ("[i]f the court does choose to rule on class certification at an early

27   stage of the litigation before the supporting facts are fully developed, then it should err in favor and not

28   against the maintenance of the class action, for (the decision) is always subject to modification.")

(citations and quotation omitted).

**B.     SCEA's Cited Authority Is Inapplicable**

None of SCEA's case citations are applicable to this case, and should therefore be disregarded. First, SCEA's dependence on *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) is not only erroneous but is misleading to the Court.  *See* Def. Mem. at 4:1-3.  In *Falcon*, the district court certified a class consisting of Mexican-American employees and Mexican-American applicants who had not been hired.  *Id*. at 152.  On appeal from findings against both parties on the class definition and scope, the Supreme Court, as SCEA argues, noted that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim[s]."  Def. Mem. at 4:1-3 (citing *Falcon*, 457 U.S. at 160).  However, immediately after, the Supreme Court noted that it is often "necessary for the court to probe behind the pleadings before coming to rest on the certification question."  *Falcon*, 457 U.S. at 160.  Thus, the *Falcon* Court was not considering a Motion to Strike at the pleadings stage.  Moreover, the decision supports plaintiffs' argument that a class certification decision requires a factual record.  *Id.* (class determination "generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'").

While SCEA cites *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-40 (9th Cir. 2009) for the notion that there is no "per se rule" that precludes defense motions to deny certification, the facts are inapposite to the present case.  Def. Mem. at 4:4-9.  *Vinole* was not a motion to strike class certification allegations.  *Vinole, 571 F.3d.* at 938-39.  Moreover, the Ninth Circuit found in that case that the district court provided plaintiffs with adequate time in which to conduct discovery related to class certification, and that plaintiffs did not intend to propound additional discovery seeking information from the defendants regarding propriety of class certifications.  *Id*. at 943-44.  Thus, *Vinole* is inapplicable here.

SCEA also relies on a number of trial court decisions in support of its argument that federal courts have used motions to strike to test the viability of a class at the earliest stages of the litigation. *See* Def. Mem. 3: 27-28, 4:19-24.  Even the cases cited by Defendant recognize that such motions are regarded with disfavor and will generally only be granted in <u>atypical</u> circumstances.  *See, e.g.*

1   *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996) ("Rule 12(f) motions are generally

2   'disfavored' because they are 'often used as delaying tactics, and because of the limited importance of

3   pleadings in federal practice'"); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) ("Before

4   a motion to strike is granted, the court must be convinced that any questions of law are clear and not in

5   dispute, and that under no set of circumstances could the claim or defense succeed"); *Dodd-Owens v.*

6   *Kyphon, Inc.*, No. C 06-3988 JF (HRL), 2007 WL 3010560, at *2 (N.D. Cal. Oct. 12, 2007) ("Motions

7   to strike generally will not be granted unless it is clear that the matter to be stricken could not have any

8   possible bearing on the subject matter of the litigation").  Moreover, *Thompson v. Merck & Co, Inc.*,

9   No. C.A. 01-1004, 2004 WL 62710 (E.D. Pa. Jan. 6, 2004) and *Stubbs v. McDonald's Corp.*, 224

10  F.R.D. 668 (D. Kan 2004), both non-California authority, are *de minimus* given the great weight of

11  California authority disfavoring such motions.

12          Thus, SCEA's authority is inapplicable and in many cases actually support Plaintiffs' position

13  that this motion is premature and improper.  Therefore, the Court should deny SCEA's motion.

14          **C.     This Court Should Not Consider Any Factual Matters Outside the Four Corners of
                the Consolidated Complaint in Deciding SCEA's Motion to Strike**

15

16          Likely realizing that it cannot sustain its burden of showing that the class allegations in the

17  Complaint should be striken, SCEA attempts to support its arguments by relying on factual matters

18  arising outside the four corners of the Complaint.  In particular, SCEA relies on allegations made in the

19  pre-consolidation complaints and on cherry-picked postings from a small selection of the numerous

20  blogs and Internet chat sites that include discussion of PS3s and this case. Def. Mem. at 5-14;

21  Declarations of Carter Ott Exhibits I-Q.  Defendant's attempts to have this Court take judicial notice of

22  materials outside of the Complaint are addressed in Plaintiffs' Memorandum of Points and Authorities

23  in Opposition to SCEA's Request for Judicial Notice, filed concurrently herewith.

24          Even if the Court does not deny SCEA's motion as premature, the Court's analysis must be

25  limited to the four corners of the operative Complaint.  SCEA's submission of materials outside the

26  scope of the operative Complaint is in direct violation of this Court's June 30, 2010 Order that

27  "Plaintiffs shall file a Consolidated Class Action Complaint ('Complaint') . . . which shall be deemed

28  the operative complaint, superseding all complaints filed in this action."  Docket No. 65 (emphasis

added).  It is well settled that parties may not rely on allegations made in a complaint that is superseded by a consolidated complaint, and in fact, courts routinely reject defendants' arguments based on prior, superseded complaints.  *See Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2002) ("An amended complaint supersedes the original version in providing the blueprint for the future course of a lawsuit."); *Emcore Corp. v. PriceWaterhouseCoopers LLP*, 102 F.Supp.2d 237, 264 (D.N.J. 2000) (denying motion to dismiss where defendant's argument relied on allegations contained in original complaint but deleted from amended complaint).  This is especially true when considering allegations in the context of determining whether a class is certifiable.  *See In re Commercial Tissue Products*, 183 F.R.D. 589, 591 (N.D. Fla. 1998) (holding that "in ruling upon a motion for class certification . . . the court will consider the allegations of the plaintiffs' consolidated amended complaint, rather than the allegations found in superseded pleadings, or pleadings of non-class members, to determine the nature of the claims the putative class plaintiffs are now presenting to this court.") (citations omitted).

## II.   IN THE ALTERNATIVE, THE COMPLAINT ADEQUATELY PLEADS CLASS ALLEGATIONS

Even if this Court were to entertain the merits of SCEA's procedurally premature effort to defeat class certification, SCEA's motion to strike should still be denied because the Complaint contains sufficient allegations that a class can be certified.  A class is certifiable when it is "identifiable and ascertainable," and meets the requirements of Rule 23.  *Williams v. City of Antioch*, No. 08-02301, 2010 WL 3632197, at *7 (N.D. Cal. Sept. 2, 2010) (certifying class).  Here, Plaintiffs have alleged that the class is ascertainable and that they meet each of the elements of Rule 23, as set forth below.

### A.   The Complaint Adequately Alleges A Readily Ascertainable Class

"A class definition should be precise, objective, and presently ascertainable.  The class definition must be sufficiently definite so that its members can be ascertained by reference to objective criteria."  *Williams*, 2010 WL 3632197, at *7.  However, it is not necessary that the "the Court must be able to identify every potential member . . . at the commencement of the action.  As long as the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist."  *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (certifying class) (internal citations omitted).  Plaintiffs have alleged such a class.

Plaintiffs' proposed class definition includes: "All persons who purchased, in the United States and its territories, a new PS3 with the Open Platform feature for personal use and not for resale and continued to own the PS3 on March 27, 2010." Complaint ¶ 70. This definition readily identifies a specific class, namely consumers that purchased a specific product, the PS3, and who still owned the PS3 on a specific date (March 27, 2010). Consistent with the California Consumers Legal Remedies Act ("CLRA") definitional limitations,[2] the class excludes commercial retailers that resell PS3s purchased from SCEA as well as individuals that did not purchase the PS3 for personal, as opposed to business use. This class can be ascertained by simple objective criteria, namely those persons who actually possessed a PS3 on a date certain and who purchased that PS3 for personal use. Thus, the Complaint adequately alleges an ascertainable class, and this Court should reject SCEA's ascertainability objections. *See Shein v. Canon U.S.A., Inc.*, No. 08-7323, 2010 WL 3170788, at *6 n. 13 (C.D. Cal. Aug. 10, 2010) (rejecting defendant's ascertainability claim "given that the identity of class members is ascertainable by reference to an objective criteria -- namely ownership of certain Canon brand printers.").

SCEA proffers two reasons the class is not ascertainable: first, because it is not possible to determine which class members purchased their PS3s for personal as opposed to business reasons; and second, because the Court would have no means of determining who still owned their PS3 as of March 27, 2010. Def. Mem. at 15. Neither of these claimed ascertainability issues justify striking the class allegations.

First, SCEA's argument that the class is not ascertainable because it will be difficult to identify persons who made purchases for business reasons need not be credited. In alleging that the class is comprised of consumers that purchased PS3s for personal use and not for resale, Plaintiffs merely exclude retailers and persons that purchased their PS3s for business purposes and who thus have no

---

[2]Cal. Civil Code § 1760(a) ("'Goods' means tangible chattels bought or leased for use primarily for personal, family, or household purposes"); Cal. Civil Code § 1760(d) ("'Consumer' means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes.")

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**

CLRA claim.  There is no need to investigate the state of mind of the purchaser; rather, the question is an objective one – did a particular person purchase a PS3 for use in a business.

Moreover, it is unlikely that any significant number of consumers purchased the PS3 for business purposes.[3]  Such a claim is not only a question of fact, and therefore not an appropriate basis for granting a motion to strike class allegations, but it is farfetched.  The PS3 is a gaming console and, until the release of Update 3.21, a computer capable of running an Other OS like Linux.  There is no basis for SCEA's claim that there are any significant numbers of PS3 business purchasers.  The fact that SCEA is not able to cherry-pick any web postings indicating that there are business users of PS3s is a strong indication that there are few if any.

Indeed, courts routinely reject objections to class certification based on the claim that some consumers' use of a particular product for business purposes, which would otherwise render certain consumer protection claims inapplicable, makes a class definition unmanageable or unascertainable. *See Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 551 (E.D. Va. 2000) (rejecting defendant's claim that certification is inappropriate because "the Court will need to ascertain whether . . . each class member's automobile was used for personal or business use" and holding that "the distinction between personal and business purchases [is not] a bar to class certification."); *see also Ballard v. Equifax Check Serv., Inc.*, 186 F.R.D. 589, 598 (E.D. Cal. 1999) (granting motion for certification and holding that "determinations of whether each transaction involved a 'consumer debt' [as opposed to a business debt] do not predominate over issues common to the class.").  Moreover, excluding business purchasers is easily manageable.  *See, e.g.*, *Powell v. Advanta Nat. Bank*, No. 7234, 2001 WL 1035715, at *2 (N.D. Ill. Sept. 10, 2001) (certifying class and holding that "some class members whose loans contained the 1-4 Family Rider were borrowing for a business purpose . . . this problem can be resolved

---

[3]SCEA's citation to Complaint ¶¶ 10, 12, 14, 16, 18, 70 & 84 for the proposition that "Plaintiffs concede [that] individuals purchased PS3s for various reasons, including personal and/or business reasons," Def. Mem. at 15, is, to be kind, misleading.  In fact, each of the Plaintiffs expressly allege that they purchased their PS3s "for personal, family and household uses."  Complaint ¶¶ 10, 12, 14, 16, 18.  Paragraph 70 states the class definition, specifically including only users that purchased PS3s for personal use.  The mere fact that SCEA's warranty of merchantability covered both "personal and business" use, Complaint ¶ 84, does not infer that Plaintiffs purchased it for other than personal use.

1   simply by defining the class so as not to include those who were borrowing for a business purpose.  To

2   determine who should be excluded from the class on this basis . . . the parties can create a questionnaire

3   to be sent to potential class members along with the class notification materials.").

4         To prohibit a class from being certified because the class definition refers to the product in

5   question being purchased for personal purposes would essentially eliminate any certification under the

6   Consumer Legal Remedies Act, which limits its application to individuals who purchase goods "for

7   personal, family, or household purposes."  Cal. Civil Code § 1760(d).  Given that the CLRA expressly

8   contemplates the use of class actions to vindicate consumers' rights, Cal. Civil Code § 1752, this

9   position is untenable.  Indeed, numerous courts have certified claims for violation of the CLRA.  *See,*

10  *e.g., Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 600 (C.D. Cal. 2008) (certifying CLRA

11  claim of consumers who purchase certain vehicle).

12        Sony's second argument that consumers may have disposed of their consoles is a red herring.

13  Def. Mem. at 15.  Courts routinely manage consumer fraud class actions involving the purchase of

14  consumer products where the ownership of a particular product at a particular time is an element of the

15  class definition, and they do so through a variety of readily available mechanisms.  *See*, *e.g.*, *Sullivan v.*

16  *Kelly Services, Inc.*, No. 08-3893, 2010 WL 1729174, at *5 (N.D. Cal. April 27, 2010) (certifying class

17  and holding that "[a]s for any class members who cannot be identified through defendant's records,

18  plaintiff's definition provides objective criteria by which prospective plaintiffs can identify themselves

19  as class members."); *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 476 (N.D. Ill. 2009) (certifying class of

20  purchasers of a specific window model where defendant could not readily identify purchasers and

21  holding that "[t]he notice to class members can include information necessary to conduct a self-

22  inspection, whereby a homeowner could identify his windows as the Pella variety at issue here.").

23        As a result, "many cases have held that the inability to identify all class members is not a

24  ground for denying class certification."  *In re U. S. Fin. Sec. Litig.*, 69 F.R.D. 24, 46 (S.D. Cal. 1975)

25  (certifying class).  Indeed, under SCEA's reasoning, there could never be an ascertainable class

26  comprised of individual purchasers of a product because of difficulties determining when consumers

27  purchased that product; that is clearly not the case.

28  ///

1     Ultimately, SCEA has proffered only speculation that Plaintiffs' proposed class definition is not

2 ascertainable.  Because the class definition may be modified after discovery and at the appropriate class

3 certification stage, those objections are premature.  *See Kilby v. CVS Pharmacy, Inc.*, No. 09-2051,

4 2010 WL 3339464, at *5 (S.D. Cal. Aug. 23, 2010) (denying motion to strike class complaint and

5 holding that "Defendant's motion with respect to the class definition is premature.  The class will be

6 defined in the order certifying the class, if and when a class action is certified. Fed. R. Civ. Proc.

7 23(c)(1)(B).").

8     **B.     The Complaint Adequately Alleges A Class That Meets The Requirements Of Rule**

9            **23(a)**

10     Rule 23(a) provides that a court should certify a class where: "(1) the class is so numerous that

11 joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3)

12 the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

13 (4) the representative parties will fairly and adequately protect the interests of the class."  Fed.R.Civ.P.

14 23(a).  Here, Plaintiffs have addressed each element of Rule 23(a).  Plaintiffs have alleged that the

15 proposed Class is numerous, as SCEA has sold millions of PS3 systems to consumers and  required

16 those consumers to download the update or forego the On-Line Features.  Complaint ¶ 73.  Plaintiffs

17 have also identified multiple common questions of law and fact, including whether SCEA advertised

18 the PS3 as a computer and as having the ability to use other operating systems, whether SCEA failed to

19 disclose material facts to users, and whether SCEA violated various statutory and common law duties.

20 Complaint, ¶ 74.  In addition, Plaintiffs have alleged that their claims are typical of the claims of Class

21 members because their claims arose from SCEA taking away advertised features of the PS3 through

22 Update 3.21.  Complaint, ¶ 75.  Plaintiffs have also stated that they will fairly and adequately protect

23 the interests of the Class, have no interests antagonistic or in conflict with those of Class members, and

24 have retained competent counsel.  Complaint, ¶ 76.

25     The only element of Rule 23(a) that SCEA challenges is that "the claims or defenses of the

26 representative parties are typical of the claims or defenses of the class."  Def. Mem. at 22-24.  The Rule

27 23(a) typicality prerequisite is fulfilled if "the claims or defenses of the representative parties are

28 typical of the claims or defenses of the class."  Fed.R.Civ.P. 23(a)(3).  Plaintiffs are typical of the class

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**

if "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover North Am., LLC*, No. 07-00627, 2010 U.S. App. LEXIS 17132, at *14 (9th Cir. August 17, 2010) (reversing denial of class certification). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998).[4]

The basis for SCEA's challenge to Plaintiffs' typicality is that "[a]lthough the Consolidated Complaint references a number of alleged false representations, Plaintiffs fail to state that they relied on any of them, implicitly admitting that they did not." Def. Mem. at 22. First, this is a blatant mischaracterization of the Complaint. In fact, each of the Plaintiffs allege that they "performed extensive research" concerning the features available with the PS3, that they reviewed and relied on SCEA's statements concerning the Other OS, and that "Defendant's representations about the PS3's features, including the Other OS feature, played a substantial factor in influencing Plaintiff's decision to purchase a PS3." Complaint ¶¶ 10-20.

Second, SCEA's argument is based on the false premise that there are any material differences in the various instances in which SCEA touted the Other OS feature. But there are no such differences, particularly with reference to SCEA's failure to inform users that it would disable that feature when it found it expedient to do so – each alleged representation simply states that the PS3 included the Other OS function. The mere fact that some class members may have seen different SCEA representations that the PS3 came with an Other OS feature is of no moment, particularly before discovery has occurred. As the Ninth Circuit held in *Dukes*, Plaintiffs' claims need only be "substantially" identical:

> Under [Rule 23's] permissive standards . . . we must consider whether the injury allegedly suffered by the named plaintiffs and the rest of the class resulted from the same allegedly discriminatory practice. Even though individual employees in different stores with different managers may have

[4] As to Plaintiffs' claims under the UCL, only the reliance of the class representative should be considered. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 324 (Cal. 2009); *Chavez v. Blue Sky Natural Beverage Company*, 268 F.R.D. 365, 378-79 (N.D.Cal. 2010).

13

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**

received different levels of pay or may have been denied promotion or
promoted at different rates, because the discrimination they claim to have
suffered occurred through alleged common practices-e.g., excessively
subjective decision making in a corporate culture of uniformity and gender
stereotyping-the district court did not abuse its discretion by finding that
their claims are sufficiently typical to satisfy Rule 23(a)(3).

*Dukes*, 603 F.3d at 613.  Here, the proposed class members' injuries stem from SCEA's single action of

releasing Update 3.21 and the uniform result that users' PS3s were no longer capable of both running

an Other OS and the On-Line Features.  Because the Plaintiffs' injuries, like those of the entire class',

resulted from SCEA's release of Update 3.21, their claims are typical.

SCEA's argument that the class is overbroad because it might contain some consumers who do

not have standing fails.  Def. Mem. at 15-16.  SCEA's standing claim is based on the assertion that

some owners may not have seen SCEA's representation that the PS3 was capable of running an Other

OS and the On-Line Features, and that some owners were not damaged because they did not use the

Other OS feature.  Def. Mem. at 16.  Even if there is a factual predicate to these assertions, and there is

not, they do not justify striking the class allegations, especially at this early stage of the litigation.

The basis of SCEA's argument that some class members did not see any representations

concerning the Other OS and that some class members did not intend to use the Other OS are certain

cherry-picked statements from internet chat boards, *see* Carter Ott Declaration  ¶ 18, by a handful of the

tens of millions of potential class members.  As noted above, this Court should only consider whether

the Complaint as alleged is sufficient to support the class allegations.  It would be inappropriate for this

Court to rely on the alleged statements of a few PS3 users to strike the class allegations without

allowing Plaintiffs the opportunity to conduct discovery to oppose SCEA's evidentiary proffers.  The

result, then, would be inefficient and duplicative discovery, which should occur in an orderly fashion in

class discovery; this is precisely the reason that motions to strike class allegations are disfavored.

Moreover, such an evidentiary detour is unnecessary because the Complaint adequately alleges

that members of the proposed class did see representations by SCEA that the PS3 would include the

Other OS feature as SCEA "consistently and aggressively advertised the PS3 as the most advanced

computer entertainment system in the industry.  Complaint ¶ 34.  The Complaint also alleges that

SCEA's advertising campaign touting the ability of the PS3 to run an Other OS was pervasive and

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**

appeared in foreign and domestic publications and websites, including SCEA's website, in direct communications with class members, and in the PS3 user manual.  Complaint ¶¶ 34-45.  Moreover, each of the named Plaintiffs alleges that they saw such advertisements.  Complaint ¶¶ 10-20.  The Complaint also adequately alleges that every member of the proposed class was injured; on March 31, 2010, they possessed a PS3 that was capable of both running an Other OS and using the On-Line Features; on April 1, 2010, users were forced to choose between the Other OS and the On-Line Features.  As such, the console had fewer available features than when consumers purchased it, rendering it less valuable and therefore injuring each PS3 owner.  Complaint ¶¶ 52-54**.**

### C.     The Complaint Adequately Alleges A Class That Meets The Requirements Of Rule 23(b)

Rule 23(b) requires that the district court must also find that at least one of the following three conditions is satisfied: (1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications, or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *Dukes*, 603 F.3d at 580 (citing Fed.R.Civ.P. 23(b)).  Plaintiffs have adequately alleged that certification is appropriate under any of the three conditions identified in Rule 23(b).

### 1.     The Class Can Be Certified Under Rule 23(b)(1)(A)

SCEA argues that class certification is inappropriate under 23(b)(2) and 23(b)(3); however, SCEA does not object that the class may be certified pursuant to 23(b)(1)(A), which authorizes the certification of a class where "prosecuting separate actions by or against individual class members would create the risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  Fed.R.Civ.P. 23(b)(1)(A).

In this case, Plaintiffs have alleged that the class action mechanism will avoid the potentially inconsistent and conflicting adjudications of the class claims.  Complaint ¶ 77.  If no class is certified,

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**

the federal and state courts of this nation will likely be flooded by numerous individualized actions, and it is entirely likely that there will be conflicting adjudications as to whether Update 3.21 was proper or unconscionable.  SCEA cannot modify its conduct on a jurisdiction-by-jurisdiction basis as it uniformly releases its updates to PS3 users across the world via the internet; therefore, this is not just a case where conflicting adjudications might result in some class members recovering while others do not, but one in which varying adjudications will preclude SCEA's ability to conduct itself uniformly when as a practical matter it must.  Certification of the class is thus to SCEA's benefit, certification under Rule 23(b)(1)(A) is appropriate, and SCEA's motion to strike should be denied.  *See Tibble v. Edison Int'l*, No. 07-5359, 2009 WL 6764541, at *7 (C.D. Cal. June 30, 2009) (certifying class under 23(b)(1) where if "each Plan participant were to bring a claim against Defendants, the fiduciaries would risk being subject to differing standard of conduct.").[5] *See also La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973) (holding that "Rule 23(b)(1)(A) authorizes class actions to eliminate the possibility of adjudications in which the defendant will be required to follow inconsistent courses of continuing conduct.  This danger exists in those situations in which the defendant by reason of the legal relations involved can not as a practical matter pursue two different courses of conduct."); 2 William B. Rubenstein, Alba Conte and Harold B. Newberg, *Newberg on Class Actions* (4th ed. 2010) § 4:8 ("likely candidates for being successfully certifies as a Rule 23(b)(1)(A) class would  . . . challenge[] the conduct or practices of defendants who are required by law or by practical circumstances to deal with all class members the same way . . . [or where] the relief sought for the class is a combination of both injunctive and monetary relief.").

### 2.  The Class Can Be Certified Under Rule 23(b)(2)

Certification is appropriate under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, so that the final injunctive relief . . . is appropriate respecting the class as a whole."  Here, SCEA has acted on grounds generally applicable to each person who possessed a PS3 on April 1, 2010, and Plaintiffs have sought an "order enjoining

---

[5]The mere fact that Plaintiffs also seek damages does not preclude certification under 23(b)(1)(A). *Id.* ("[I]n addition to damages, Plaintiffs seek substantial equitable relief . . . the injunctive relief sought in this case is not merely a request for injunctive relief masquerading as one for money damages.").

1    Defendant from further deceptive advertising, marketing, distribution, and sales practices with respect

2    to the PS3 and to enable the 'Other OS' feature on the PS3."  Complaint, Prayer for Relief, p. 43.

3    Thus, certification is appropriate under Rule 23(b)(2).

4         The mere fact that Plaintiffs seek monetary damages does not, of course, preclude 23(b)(2)

5    certification.  *Dukes*, 630 F.3d at 618 ("[E]very circuit to have addressed the issue has acknowledged

6    that Rule 23(b)(2) does allow for some claims for monetary relief.").  Nor does the mere fact that

7    Plaintiffs seek punitive damages require the conclusion that monetary claims predominate over the

8    injunctive relief Plaintiffs seek. *Id.* ("The view that punitive damages can never be awarded consistent

9    with Rule 23(b)(2) . . . has never been adopted by this circuit.").[6]  Not even the procedural requirement

10   for a jury trial is "dispositive" of the appropriateness of Rule 23(b)(2).  *Id.* at 621.

11        The extent to which monetary relief predominates over common issues cannot be determined at

12   this stage because this Court must "squarely face and resolve the question of whether the monetary

13   damages sought by the plaintiff class predominate over the injunctive and declaratory relief." *Dukes*,

14   630 F.3d at 620.  Not haven taken any discovery, such a task is impossible.  Questions such as the value

15   of the loss of function each class member suffered and the amount per class member owing in damages

16   are fact intensive and should not be pre-judged until the parties have had an opportunity to conduct

17   appropriate discovery.  Without any discovery, or even an answer from SCEA, it cannot meet its

18   burden to show individual issues predominate, a point SCEA seemingly concedes.  Def. Mem. at 25

19   ("<u>Depending on the facts</u> of each class member's claim, the damages sought <u>could</u> be substantial.")

20   (emphasis added).

21        Of course, even if this Court does ultimately find that Plaintiffs' punitive damages claims, or its

22   other monetary claims, are not appropriate for certification under Rule 23(b)(2), it need not deny

23   certification, as SCEA's motion to strike all class allegations would have this Court do now; rather, it

24   can "bifurcate the proceedings by certifying a Rule 23(b)(2) class for equitable relief and a separate

25   Rule 23(b)(3) class for damages." *Dukes*, 603 F.3d at 620.

26   _____

27   [6]Indeed, the fact that any punitive damages award will likely be uniform across the class (as any such
     award will stem from SCEA's single act of releasing Update 3.21 and the uniform devaluing effect that
28   had on class members' PS3s) factors in favor of certification under Rule 23(b)(2).

---

17

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**

3.    **The Class can be certified under Rule 23(b)(3)**

    (a).    **Rule 23(b)(3) Class Should Be Certified Where Common Issues Predominate**

Under Rule 23(b)(3), a class may be certified where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Here, Plaintiffs have adequately identified questions of law and fact that predominate over individual questions, and have adequately alleged superiority.  Complaint, ¶¶ 74, 77.

The predominance inquiry of Rule 23(b)(3) asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (reversing denial of class certification) (citation and internal quotation marks omitted).  The focus is on "the relationship between the common and individual issues."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Las Vegas Sands*, 244 F.3d at 1162, n.23.

The predominance requirement is not a "numerical test that identifies every issue in the suit as suitable for either common or individual treatment and determines whether common questions predominate by examining the resulting balance on the scale.  A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions."  *Newberg on Class Actions* (4th ed. 2010) §4:25.  Moreover, Rule 23(b)(3) does not require a perfect identity of issues: "the existence of some individual issues will not destroy common issue predominance."  *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 334 (S.D. Fla. 1996) (holding individual questions of reliance insufficient to prevent certification of class action involving Ponzi scheme).

    (b).    **Common Questions Predominate Over Individual Questions**

Here, there is one overriding common question of law and of fact that must be resolved as to each class member, namely whether SCEA's release of Update 3.21, which disabled the Other OS

feature unless users agreed to forego the On-Line Features, was a violation of California common and statutory law and Federal statutory law.  Also common to each class member is the extent to which the release of Update 3.21 uniformly devalued PS3s because they were no longer capable of both running an Other OS and the On-Line Features; these are the primary issues in the case, and they can be resolved on a common basis.  Therefore, SCEA's motion to strike should be denied, even as to those claims sounding in fraud.  *See Plascencia v. Lending 1st Mortgage*, 259 F.R.D. 437, 447 (N.D. Cal. 2009) ("Class certification of a fraud claim may be appropriate if the plaintiffs allege that an entire class of people has been defrauded by a common course of conduct."); *see also Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 517-18 (N.D. Ill. 2008) (certifying class and holding that "[c]ommon questions of fact are typically found when the defendants have engaged in standardized conduct towards the members of the proposed class.") (citing *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998)) (quotations omitted); *In re: Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 314 (3rd Cir. 1998) (affirming district court's approval of class action settlement incorporating certification of a nationwide class of claimants where "many purchasers have been defrauded over time by similar misrepresentations, or by a common scheme to which alleged non-disclosures related. . .").

### (c).   This Court Can Certify The Fraud Based Claims Under 23(b)(3)[7]

Contrary to SCEA's argument, Courts in this District and others frequently reject defendants' claims that fraud based claims cannot be maintained as class actions owing to individual reliance

---

[7]  But for its argument that individual damages inquiries preclude class certification under Rule 23(b)(3), which is incorrect as a matter of law, as discussed below, SCEA raises no objections to the certification of a Rule 23(b)(3) class as to the breach of implied warranties of merchantability and fitness for a particular purpose claims, the Computer Fraud and Abuse Act claim, and the Magnuson-Moss Warranty Act claim.  Moreover, there is no basis for SCEA's unsupported claim that the conversion and unjust enrichment claims sounds in fraud.  As to the conversion claim, the Complaint simply alleges that "[b]y releasing Update 3.21 and thereby removing the PS3's advertised features, including the 'Other OS' feature, Defendant intentionally  and wrongfully exercised control over, took, damaged, and/or interfered with Plaintiffs and the Class' property."  Complaint ¶ 166.  Similarly, the Complaint simply alleges that SCEA was unjustly enriched because Plaintiffs and the Class paid for functions to the benefit of SCEA and which SCEA unjustly disabled.  Complaint ¶¶ 170-74.  Fraud is not an element of these claims.

inquiries, particularly where plaintiffs allege a fraudulent omission.  *See*, *e.g.*, *Tietsworth v. Sears, Roebuck and Co.*, No. 09-00288, 2010 WL 1268093, at *20 (N.D. Cal. March 31, 2010) (finding that plaintiffs could plead class-wide fraud based claims and rejecting Defendant's argument that "Plaintiffs cannot sustain classwide claims on their fraud-based claims because they must demonstrate individual reliance on the alleged concealment.  However, courts have recognized that this element, which is often phrased in terms of reliance or causation, may be presumed in the case of a material fraudulent omission.")[8]  (citing *Plascencia* and *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972)).  *See also Collins*, 2010 WL 3077671, at *3; *Estrella v. Freedom Fin. Network, LLC*, No. 09-3156, 2010 WL 2231790, at *10 (N.D. Cal. June 2, 2010) (holding that "[i]ndividualized reliance may be presumed . . . where the alleged misrepresentation is material.").[9]

Moreover, "[c]lass certification of a fraud claim may be appropriate if the plaintiffs allege that an entire class of people has been defrauded by a common course of conduct."  *Plascencia*, 259 F.R.D. at 447.  Like the defendants in *Plascencia*, SCEA has "acted in a uniform way toward all class members," *id.*, by issuing Update 3.21 and forcing users to choose between forgoing the use of the Other OS function or the On-Line Features.  Moreover, the Complaint alleges that SCEA's advertising uniformly represented and advertised that the PS3 could function like a computer because it would include the Other OS feature.  Complaint ¶ 34 ("From the time Defendant introduced the PS3 in November 2006 through 2010, it has consistently and aggressively advertised the PS3 as the most advanced computer entertainment system in the industry."); Complaint ¶ 38 ("Defendant touted this as

---

[8]Plaintiffs adequately plead that the omission that SCEA might disable the Other OS feature unless consumers agreed to forego the Other Advertised features was material.  Complaint ¶ 2 (SCEA "specifically advertised the PS3's "Other OS" feature as an essential and important characteristic, which enabled users to install Linux or other operating systems."); Complaint ¶ 38 ("Defendant touted ["Other OS"] as a major feature of the PS3."); Complaint ¶¶ 10-19 ("Defendants representations about the PS3's features, including the "Other OS" feature, played a substantial factor in influencing Plaintiff's decision to purchase a PS3 over the Xbox 360 or Wii.").

[9]  SCEA's reliance on *Sanders v. Apple, Inc.*, 672 F.Supp.2d 978 (N.D. Cal. 2009) is misplaced as it does not stand for the proposition that a class "fraud claim cannot be certified because individual issues as to reliance would predominate [because] the Sanders court did not state that no such class could be certified; instead, the court granted leave to amend."  *Collins*, 2010 WL 3077671, at *3 (finding defendants motion to strike fraud based class allegations premature).

a major feature of the PS3."); Complaint ¶ 45 ("Since introducing the PS3 in November 2006, Defendant . . . has made numerous public statements promoting the "Other OS" feature as well as the PS3's other unique attributes.").  And just as the *Plascencia* Court rejected defendants' claim that individual issues of reliance predominated, this Court should hold that Plaintiffs' reliance "may be presumed in the case of a material fraudulent omission."  *Id.*

Nor is there any basis to strike the class allegations as to the UCL claim on the basis that individual issues predominate because "Plaintiffs may prove with generalized evidence that Defendants' conduct was 'likely to deceive' members of the public.  The individual circumstances of each class members' [claim] need not be examined because the class members are not required to prove reliance and damage."  *Plascencia*, 259 F.R.D. at 448.  *See also Estrella*, 2010 WL 2231790, at *10 (certifying class and holding that, under the UCL, "[i]ndividualized reliance may be presumed, however, where the alleged misrepresentation is material.").  As the California State Supreme Court has made clear, "[t]he substantive right extended to the public by the UCL is the right to protection from fraud, deceit and unlawful conduct and the focus of the statute is on the defendant's conduct."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 324 (Cal. 2009) (internal citations and quotations omitted).  As a result, it is well settled that, even though a UCL claim requires that plaintiffs prove reliance, "the class representative [is not] required to plead or prove an unrealistic degree of specificity that the plaintiffs relied on particular advertisements or statements when the unfair practice is a fraudulent advertisement campaign."  *Tobacco II*, 46 Cal. 4th at 306.  Here, Plaintiffs have alleged that SCEA engaged in a fraudulent advertisement campaign, to wit, the numerous statements and representations by various SCEA officials over the course of several years in a wide variety of news and advertisement media, as well as in the user manuals provided by SCEA with PS3s and SCEA's website, to the effect that the Other OS function was an integral and vital part of the PS3.  Complaint ¶¶ 34-45.

Nor is there any basis for SCEA's assertion that a showing that SCEA had a duty to disclose is required for each class member.  Def. Mem. at 18-19.  Such a position is directly contrary to well established law in this Circuit.  Under the CLRA, a duty to disclose arises when the omission is directly contrary to "a representation actually made by the defendant."  *Baba v. Hewlett-Packard Co.*, No. 09-05946, 2010 WL 2486353, at *3 (N.D. Cal. June 16, 2010) (denying motion to strike) (citation

omitted).  Here, SCEA affirmatively represented that the Other OS was a feature that was included in the PS3, Complaint ¶¶ 34-45, and SCEA uniformly violated its duty to inform consumers that it would disable that feature if it was expeditious for SCEA to do so.  Complaint ¶ 41.  As this omission is directly contradictory of the affirmative representations SCEA made to all consumers, SCEA had a duty to disclose to all class members.  *See Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 2591445, at *2 (N.D. Cal. Aug. 21, 2009)  (holding that "although a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant.") (citation omitted).  There are no variations in this duty imposed on SCEA, nor in its violation of that duty.

### (d).    This Court Can Certify An Express Warranty Class Under 23(b)(3)

For the same reason the Court may certify a CLRA and UCL class because any issues of reliance are uniform across the class, this Court can certify a 23(b)(3) class for Plaintiffs' Express Warranty claims, namely that the representations concerning the availability of both the Other Os and Other Advertised Features in the PS3 were uniform.  *See Grays Harbor Adventist Christian School v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007) (certifying express warranty class).

### (e).    Damages Issues Do Not Preclude Certification Under Rule 23(b)(3)

SCEA asserts that individual issues related to potential damages precludes certification of a 23(b)(3) class.  Def. Mem at 20-21.  However, this Court cannot undergo the rigorous analysis required to determine the extent to which damages issue might involve predominantly common versus individual issues without the benefit of discovery or a fully briefed motion for class certification. Indeed, none of the cases SCEA cites stands for the proposition that this Court can determine whether damages issues will predominate on a motion to strike.[10]  Moreover, it is well settled in the Ninth

---

[10]  As part of its scatter-shot listing of any possible individual issues it could identify, SCEA asserts in a footnote that potential statute of limitations defenses create individualized issues.  Def. Mem. at 19, n. 102.  SCEA's placement of this argument in a footnote was appropriate as this argument does not withstand scrutiny.  *See Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975) ("The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones."); *see also Grays Harbor*, 242 F.R.D. at 573 ("Class certification, under Rule 23(b)(3), is also not precluded by the need to address individual statute of limitations defenses.").

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**

Circuit and elsewhere that the need for individual "damage calculations alone cannot defeat certification." *Yokoyama v. Midland Nat'l Life Ins. Co.*, No. 07-16825, 2009 WL 2634770, *6 (9th Cir. Aug. 28, 2009); *see also Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment.").

## **CONCLUSION**

For the reasons cited above, Plaintiffs respectfully request that this Court deny SCEA's motion to strike the class allegations and order such other and further relief and the Court deems necessary and just.  In the event the Court is inclined to consider more detailed arguments relating to class certification, Plaintiffs request leave to provide additional briefing.  Such briefing should proceed, however, after discovery has taken place, in the context of a motion for class certification.  Finally, in the alternative, in the event the Court finds any deficiency in Plaintiffs' Complaint, Plaintiffs request leave to amend.

DATED: October 12, 2010                    **CALVO & CLARK, LLP**

                                           /s/ James A. Quadra
                                           James A. Quadra
                                           Rebecca Coll
                                           One Lombard Street
                                           San Francisco, California 94111
                                           Telephone: 415-374-8370
                                           Facsimile: 415-374-8373

DATED: October 12, 2010                    **FINKELSTEIN THOMPSON LLP**

                                           /s/ Rosemary M. Rivas
                                           Rosemary M. Rivas
                                           Tracy Tien
                                           100 Bush Street, Suite 1450
                                           San Francisco, California 94104
                                           Telephone: 415-398-8700
                                           Facsimile: 415-398-8704

DATED: October 12, 2010                    **HAUSFELD LLP**

                                           /s/ James Pizzirusso
                                           James Pizzirusso (*Pro hac vice*)

1700 K St., NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201

*Co-Interim Lead Counsel for Plaintiffs*

Douglas G. Thompson
**FINKELSTEIN THOMPSON LLP**
1050 30th Street, NW
Washington, DC 20007
Telephone: 202-337-8000
Facsimile: 202-337-8090

Michael P. Lehmann
**HAUSFELD LLP**
44 Montgomery Street, Suite 3400
San Francisco, California 94104
Telephone: 415-633-1908
Facsimile: 415-358-4980

Bruce L. Simon
**PEARSON, SIMON, WARSHAW &
PENNY, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone: 415-433-9000
Facsimile: 415-433-9008

Daniel L. Warshaw
**PEARSON, SIMON, WARSHAW &
PENNY, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: 818-788-8300
Facsimile: 818-788-8104

Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns (*Pro hac vice*)
**CHIMICLES & TIKELIS LLP**
361 W. Lancaster Ave.
Haverford, Pennsylvania 19041
Telephone: 610-642-8500
Facsimile: 610-649-3633

Ralph B. Kalfayan
**KRAUSE, KALFAYAN, BENINK & SLAVENS,
LLP**
625 Broadway, Suite 635
San Diego, California 92101
Telephone: 619-232-0331
Facsimile: 619-232-4019

Jeffrey Carton (*Pro hac vice*)
D. Greg Blankinship (*Pro hac vice*)
**MEISELMAN, DENLEA, PACKMAN, CARTON&
EBERZ P.C.**
1311 Mamaroneck Avenue
White Plains, New York 10605
Telephone: 914-517-5000
Facsimile: 914-517-5055

John R. Fabry (*Pro hac vice*)
**WILLIAMS KHERKHER HART BOUNDAS,
LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
Telephone: 713-230-2200
Facsimile: 713-643-6226

Rosemary Farrales Luzon
**SHEPHERD, FINKELMAN, MILLER
& SHAH,LLP**
401 West A. Street, Suite 2350
San Diego, California 92101
Telephone: 619-235-2416
Facsimile: 619-234-7334

*Counsel for Plaintiffs*

I, Rosemary M. Rivas, am the ECF User whose identification and password are being used to
file the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE
CLASS ALLEGATIONS.  I hereby attest that James A. Quadra and James Pizzirusso have
concurred in this filing.

DATED:  October 12, 2010                         FINKELSTEIN THOMPSON LLP

                                     By: /s/ Rosemary M. Rivas

                                        Counsel for Plaintiffs

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**