James A. Quadra (SBN 131084)
jquadra@calvoclark.com
**CALVO & CLARK, LLP**
One Lombard Street, Second Floor
San Francisco, California 94111
Telephone: (415) 374-8370
Facsimile: (415) 374-8373

Rosemary M. Rivas (SBN 209147)              James Pizzirusso (*admitted pro hac vice*)
rrivas@finkelsteinthompson.com              jpizzirusso@hausfeldllp.com
**FINKELSTEIN THOMPSON LLP**                **HAUSFELD LLP**
100 Bush Street, Suite 1450                 1700 K. Street NW, Suite 650
San Francisco, California 94115             Washington, DC 20006
Telephone: (415) 398-8700                   Telephone: (202) 540-7200
Facsimile: (415) 398-8704                   Facsimile: (202) 540-7201

*Interim Co-Lead Counsel and Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE SONY PS3 "OTHER OS" LITIGATION | CASE NO. CV-10-1811-RS (EMC) |
|  | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
|  | Date:       February 9, 2011 |
|  | Time:       10:30 a.m. |
|  | Judge:      Magistrate Judge Edward M. Chen |
|  | Courtroom: C, 15th Floor |

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

STATEMENT OF ISSUES TO BE DECIDED (Local Rule 7-4(a)(3)) ............................. 1

PRELIMINARY STATEMENT .......................................................................................... 2

FACTUAL AND PROCEDURAL HISTORY ...................................................................... 5

      A.    Factual Summary ................................................................................. 5

          1.    The PS3's Functions ................................................................ 5

          2.    SCEA's Representations ........................................................ 5

          3.    SCEA's Removal of the "Other OS" Function ....................... 6

      B.    Procedural Status ............................................................................... 7

      C.    SCEA's Document Requests ............................................................. 7

      D.    SCEA's Rescheduling of the First Deposition and Subsequent Meet and Confer Efforts ................................................................................................ 8

ARGUMENT…………………………………………………………………………………9

   I.    LEGAL STANDARD .................................................................................. 9

   II.    GOOD CAUSE SUPPORTS THE ISSUANCE OF A PROTECTIVE ORDER SEQUENCING DISCOVERY OF THE NAMED PLAINTIFFS ............................ 10

   III.    GOOD CAUSE SUPPORTS THE ISSUANCE OF A PROTECTIVE ORDER THAT FORBIDS SCEA FROM TAKING IRRELEVANT, BURDENSOME, AND INTRUSIVE DISCOVERY ................................................................................. 13

      A.    SCEA'S Request No. 1:  Demand for All Documents Relating to Sony ....... 13

      B.    SCEA'S Request No. 3: Demand for PS3s and Forensic Copies of PS3 Hard Drives .................................................................................................. 14

      C.    SCEA'S Request No. 6: Production of all Peripherals used with PS3s ......... 18

      D.    SCEA'S Request Nos. 7 and 8: Forensic Copies and Proofs of Purchase of All Personal Computers Plaintiffs Have Owned Since January 1, 2006 .............. 18

      E.    SCEA'S Request No. 14: All Documents Supporting Plaintiffs' Reliance.... 19

i

F.    SCEA'S Request No. 27: Plaintiffs' Representation Agreements with Counsel ........................................................................................ 21

G.    SCEA'S Request No. 28: Documents Regarding Unrelated Hacking to Plaintiffs' Counsel's Website ......................................................... 22

IV.    GOOD CAUSE SUPPORTS THE ISSUANCE OF A PROTECTIVE ORDER THAT PROHBITS DISCOVERY OF ABSENT CLASS MEMBERS ................................ 23

CONCLUSION ............................................................................................25

ii

## TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Ameriwood Industries, Inc., v. Liberman,*
   No. 4:06CV524, 2006 WL 3825291 (E.D. Mo. Dec. 27, 2006) ........................................ 15, 18

*Antioch v. Scrapbook Borders, Inc.,*
   210 F.R.D. 645 (D. Minn. April 29, 2002) ................................................................ 16

*Baldwin & Flynn v. Nat'l Safety Assoc.,*
   149 F.R.D. 598 (N.D. Cal. 1993) ........................................................................ 23

*Balistrieri v. O'Farrell,*
   57 F.R.D. 567 (E.D. Wis. 1972) ......................................................................... 13

*Benton v. Dlorah, Inc.,*
   No. 06-CV-2488, 2007 WL 2225946 (D. Kan. Aug. 1, 2007) ........................................ 15, 19

*Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,*
   170 F.R.D. 111 (S.D.N.Y. 1997) ........................................................................ 12

*Butler v. Portland General Elec. Co.,*
   No. 88-455-FR, 1990 WL 15680 (D. Or. Feb. 9, 1990) ............................................... 20

*Cacique, Inc. v. Robert Reiser & Co., Inc.,*
   169 F.3d 619 (9th Cir. 1999) ........................................................................... 10

*Chavez v. Blue Sky Natural Beverage Co.,*
   286 F.R.D. 365, 379 (N.D. Cal. 2010) .................................................................... 2

*Clark v. Universal Builders, Inc.,*
   501 F.2d 324 (7th Cir. 1974) ........................................................................... 25

*Clarke v. American Commerce Nat. Bank,*
   974 F.2d 127 (9th Cir. 1992) ........................................................................... 21

*Clinton v. Cal. Dept. of Corrections,*
   S-05-1600-LKK-CMK-P, 2009 WL 1617811 (E.D. Cal. Jun. 9, 2009) ................................... 20

*Coburn v. PN II, Inc.,*
   No. 2:07-cv-00662, 2008 WL 879746 (D. Nevada March 28, 2010) .................................... 15

*Feldman v. Motorola, Inc.,*
   No. 90-C-5887, 1992 WL 415382 (N.D. Ill. 1992) .................................................... 25

i

*Genworth Financial Wealth Mgmt., Inc. v. McMul006Can,*
  267 F.R.D. 443 (D. Conn. 2010) .................................................................................... 15

*Graebner v. James River Corp.,*
  130 F.R.D. 440 (N.D. Cal. 1989) .................................................................................. 12

*Honeywell Intl., Inc. v. Curities Litigation,*
  230 F.R.D. 293 (S.D.N.Y. 2003) .................................................................................. 13

*In re Carbon Dioxide Indus. Antitrust Litig.,*
  155 F.R.D. 209 (M.D. Fla. 1993) .................................................................................. 25

*In re Citric Acid Litigation,*
  191 F.3d 1090 (9th Cir.1999) ........................................................................................ 20

*In re Currency Conversion Fee Antitrust Litig.,*
  No. MDL NO. 1409, M 21-95, 2004 WL 2453927 (S.D.N.Y. Nov. 3, 2004) ..................... 24, 25

*In re Ford Motor Co.,*
  345 F.3d 1135, 1336-37 (11th Cir. 2003)………………………………………………15

*In re Grand Jury Witness,*
  695 F.2d 359 (9th Cir. 1982) ......................................................................................... 21

*In re Horn,*
  976 F.2d 1314 (9th Cir. 1992) ....................................................................................... 21

*In re Tobacco II Cases,*
  46 Cal. 4th 298 (2009) ............................................................................................... 2, 17

*In Re Qwest Communications International, Inc., Securities Litig.,*………………………………25
  2005 U.S. Dist. LEXIS 11618 (D. Col., June 7, 2005)

*In re Worlds of Wonder Sec. Litig.,*
  No. C-87-5491, 1992 WL 330411 (N.D. Cal. July 9, 1992) ........................................ 24

*Innomed Labs, LLC v. Alza Corp.,*
  211 F.R.D. 237 (S.D.N.Y.2002) .................................................................................... 12

*Katz v. Batavia Marine & Sporting Supplies, Inc.,*
  984 F.2d 422 (9th Cir. 1993) ......................................................................................... 10

*Kline v. First W. Gov't Sec.,*
  No. 83-1076, 1996 WL 122717 (E.D. Pa. Mar. 11, 1996) ......................................... 24

ii

TABLE OF AUTHORITIES
CASE NO. CV-10-1811 RS

*Kops v. Lockheed Martin Corporation,*
    MDL No. 1409, 2003 U.S. Dist. LEXIS 8568 (C.D. Cal., May 14, 2003) ................................. 24

*Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP,*
    No. 06cv2804 BTM (WMc), 2010 WL 275083  (S.D. Cal., Jan. 13, 2010) ............................. 22

*Micron Technology, Inc. v. Tessera, Inc.,*
    No. C06-80096 MISC.JW (HRL), 2006 WL 1646133 (N.D. Cal. Jun. 14, 2006) .................... 20

*Negrete v. Allianz Life Ins. Co. of N. America,*
    No. 05-6838, 2008 WL 8116992 (C.D.Cal. 2008) .................................................................. 24

*On the House Syndication, Inc. v. FedEx Corp.,*
    203 F.R.D. 452 (S.D. Cal. 2001) ........................................................................................... 24

*Org. of Minority Vendors, Inc. v. Illinois Central Gulf R.R.,*
    No. 79 C 1512, 1987 WL 8997 (N.D. Ill. 1987) ..................................................................... 25

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.,*
    307 F.3d 1206 (9th Cir. 2002) .............................................................................................. 10

*Pierce v. County of Orange,*
    526 F.3d 1190 n.9 (9th Cir. 2008) ........................................................................................ 23

*Pkfinans International Corp. v. IBJ Schroder Leasing Corp.,*
    No. 93Civ.5375(SAS)(HBP), 93Civ.1816(SAS)(HBP), 1996 WL 591213  (S.D.N.Y. 1996)... 12

*Playboy Enterprises, Inc. v. Welles,*
    60 F.Supp.2d 1050 (S.D. Cal.1999) ................................................................................. 15, 17

*Presidio Components, Inc. v. American Tech. Ceramics Corp.,*
    No. 08cv335 IEG (NLS), 2009 U.S. Dist. LEXIS 25562, (S.D. Cal. Mar. 25, 2009) ............... 12

*Redmond v. Moody's Investor Serv.,*
    No. 92 CIV 9161, 1995 WL 276150 (S.D.N.Y. May 10, 1995) ................................................ 25

*Rivera v. NIBCO, Inc.,*
    364 F.3d 1057 (9th Cir. 2004) .............................................................................................. 16

*San Jose Mercury News, Inc. v. U.S. Dist. Court--Northern Dist. (San Jose),*
    187 F.3d 1096 (9th Cir. 1999) .......................................................................................... 10, 11

*Sathianathan v. Smith Barney, Inc.,*
    C-04-02130SBA(JCS), 2007 WL 2417370 (N.D. Cal. Aug. 24, 2007) ............................... 10, 16

iii

TABLE OF AUTHORITIES
CASE NO. CV-10-1811 RS

*Seattle Times Co. v. Rhinehart,*
    467 U.S. 20 (1984) ................................................................. 10

*Teachers' Retirement System v. ACLN Ltd.,*
    No. 01-11814, 2004 WL 2997957 (S.D.N.Y. 2004) ....................... 24

*United States v. Intern. Union of Petro. & Indus. Wkrs.,*
    870 F.2d 1450 (9th Cir.1989) ................................................. 20

*Zubulake v. UBS Warburg LLC,*
    217 F.R.D. 309 (2003) ..................................................... 16, 17

**Statutes**
15 U.S.C. § 2301, et seq. ........................................................... 7
18 U.S.C. §§ 1030, et seq. .......................................................... 7
Cal. Bus. & Prof. Code §§ 17500, et seq. ...................................... 7
Cal. Bus. & Prof. Code §§17200, et seq. ....................................... 7
Cal. Civ. Code §§ 1750, et seq. ................................................... 7

**Rules**
Fed. R. Civ. P. 26(b)(1) ............................................... 9, 13, 22, 23
Fed. R. Civ. P. 26(c)(1) ................................................... 1, 9, 10
Fed. R. Civ. P. 26(c)(1)(A)-(B) ............................................. 1, 9
Fed. R. Civ. P. 30(a)(2)(A)(ii) ................................................. 11
Fed. R. Civ. P. 30(d)(1) ..................................................... 11, 12
Fed. R. Civ. P. 34(a)(1) ..................................................... 20, 21
Fed. R. Civ. P. 26(b)(3)(A) ....................................................... 23
Fed. R. Civ. P. 23 .................................................................. 23

TABLE OF AUTHORITIES
CASE NO. CV-10-1811 RS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 9, 2011 at 10:30 a.m., or as soon as thereafter as the matter may be heard in this Court, Plaintiffs Anthony Ventura, Jonathan Huber, Antal Herz, Jason Baker, and Elton Stovell (collectively "Plaintiffs") will and hereby do move for a Protective Order, pursuant to Fed. R. Civ. P. 26(c)(1)(A)-(B), seeking to resolving disputes related to Plaintiffs' objections to Defendant Sony Computer Entertainment LLC's ("SCEA") document requests prior to depositions of the named plaintiffs so as to avoid, if possible, multiple depositions of the parties; forbidding the disclosure and discovery sought by SCEA to Document Request Nos. 1, 3, 6, 7, 8, 14, 27, 28; and forbidding SCEA from seeking discovery from unnamed class members unless it can show good cause.

Plaintiffs' Motion is based on this Notice of Motion and accompanying Memorandum of Points and Authorities, the Declaration of Rosemary M. Rivas, all other pleadings and matters of record in this case, and such other evidence of which this Court may take judicial notice.

Pursuant to Fed. R. Civ. P. 26(c)(1) and Local Rule 37-1(a), Plaintiffs certify that on November 12, 2010 and November 15, 2010, they met and conferred in good faith with SCEA's counsel in person in (as well as in several subsequent emails and calls) in an effort to resolve the dispute without court involvement, but were unable to reach an agreement.

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES TO BE DECIDED (Local Rule 7-4(a)(3))

1.      Whether, in the interest of preserving resources and avoiding multiple depositions, the named plaintiffs' depositions should be sequenced until after the parties resolve their discovery disputes as to SCEA's document requests;

2.      Whether SCEA should be forbidden from discovering information that is irrelevant, burdensome, intrusive, or otherwise objectionable, such as the mirror images of the hard drives of

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

Plaintiffs' PlayStation 3 video game consoles ("PS3s") and every personal computer they have owned since January 2006; and

3.      Whether unnamed class members are obliged to comply with SCEA's sweeping preservation demands and appear for deposition.

### PRELIMINARY STATEMENT

When Defendant SCEA first introduced the PS3 video game console, it faced increasing competition from rivals such as Microsoft's X-box 360 and Nintendo's Wii.  To set its console apart from the competition and to justify its higher price tag, SCEA marketed the PS3 as more than just a game console with the slogan, "It only does everything."  SCEA actively promoted the PS3 as a video game console, a Blu-ray disc player, and as a *computer* allowing users to, among other things, download and install Linux and other operating systems (known as the "Other OS" function).  The "Other OS" function enabled consumers to utilize the PS3 for word processing, programming, and other computing needs.  In the spring of 2010, SCEA unilaterally opted to remove the "Other OS" feature through the release of SCEA's Firmware Update Version 3.21 ("Firmware 3.21") which, once downloaded, prohibited users from utilizing the "Other OS" function.  While SCEA claimed consumers had a "choice" about installing the update, if a user chose not to install Firmware 3.21, they would lose out on other core, advertised features of the PS3 such as the ability to play games online and the ability to play new DVDs and games that often require the latest updates.  The underlying claims were brought on behalf of consumers seeking compensation for the loss of a core, marketed function of the PS3 units that they purchased.

In lawsuits such as these, the focus is on the defendant's conduct.  *See, e.g., Chavez v. Blue Sky Natural Beverage Co.,* 286 F.R.D. 365, 379 (N.D. Cal. 2010) ("[t]he substantive right extended to the public by the UCL is the right to protection from fraud, deceit and unlawful conduct, and the focus is on the defendant's conduct") (quoting *In re Tobacco II Cases*, 46 Cal. 4th

298, 324 (2009)).  Nevertheless, SCEA has demanded overly burdensome and expensive discovery from Plaintiffs that bears little, if any, relevance to the issues at hand.  Plaintiffs suggested that the parties should meet and confer and, if necessary, file cross motions to resolve these issues before the depositions of the named representatives take place because Plaintiffs objected to any attempt by SCEA to use the discovery disputes as an excuse to later re-open the Plaintiffs' depositions (which SCEA reserved the right to do).  SCEA would not agree to go forward with the depositions and waive any rights it might have to re-open them based on Plaintiffs' objections to the document requests.  Thus, the parties agreed to a briefing schedule and hearing dates for the filing of Plaintiffs' motion for a protective order and SCEA's motion to compel.

Good cause supports the issuance of the protective order sought herein as the discovery SCEA seeks is irrelevant, burdensome, expensive and intrusive.  For instance, SCEA seeks forensic copies (at Plaintiffs' expense) of Plaintiffs' PS3 hard drives, as well as forensic copies of the hard drives of *every* personal computer that the Plaintiffs have owned since January 2006.  When Plaintiffs asked SCEA what types of documents it hoped to discover from the PS3 hard drives, SCEA responded that it could not specifically identify what would be helpful to it, except to say that the hard drives were relevant to determine whether the PS3 was used as a computer as Plaintiffs allege in the Complaint.  Plaintiffs have been unable to find a single decision where one party was granted unfettered access to the opposing party's hard drives on these or any other grounds.  Moreover, Plaintiffs proposed a compromise to provide SCEA the information it needed without producing the hard drives.  SCEA, however, rejected the proposal.  Further, discovery from the hard drives of Plaintiffs' personal computers (as opposed to their PS3 units) is irrelevant, burdensome, expensive, and intrusive and should be rejected outright.

SCEA has also demanded that Plaintiffs produce at their depositions the actual PS3 units and all peripherals used with the PS3s, such as keyboards, printers, monitors, television sets, video games, and DVDs.  This discovery is also irrelevant and burdensome as Plaintiffs are not claiming

3

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

damages for these items.  Again, in an effort to compromise, Plaintiffs have produced photographs of the peripherals they used with the PS3's "Other OS" function.   These photographs should be sufficient for SCEA to determine which peripherals were used.  Requiring Plaintiffs to haul such items to their deposition is not only burdensome, but it also risks damage to their products.

SCEA has also made a host of other unreasonable and burdensome demands for information that is irrelevant to this lawsuit, such as information relating to any Sony product Plaintiffs have owned since January 1, 2006, including cameras, stereos, DVD players, television sets and the like.  Further, SCEA has demanded the confidential and internal information regarding an unrelated hacking of the website owned by one of Plaintiffs' counsel.  SCEA has also demanded that Plaintiffs search the Internet to locate and print out copies of all advertisements and representations that Plaintiffs relied on in making their decision to purchase their PS3.  Although this is not required by the Federal Rules of Civil Procedure, SCEA has stated that if Plaintiffs do not produce these documents at their depositions, SCEA will seek to prohibit Plaintiffs from introducing these materials (if later discovered) at summary judgment or at trial even though SCEA may have the documents under its control.  SCEA also seeks privileged information, such as Plaintiffs' representation agreements with their attorneys.  SCEA also seeks to place onerous preservation demands and discovery (including depositions) from unnamed class members who previously filed individual complaints, but were not named in the operative and superseding consolidated complaint.

Plaintiffs have produced virtually every piece of paper to SCEA that is relevant to this litigation and that is in their possession, custody or control.  Plaintiffs have produced the photographs and proofs of purchase (if available) of their PS3s, along with the product packaging and inserts; photographs and proofs of purchase of the peripherals they have used with the "Other OS" functions, such as keyboards, monitors, and televisions; non-privileged communications they had with anyone about the "Other OS" function; documents related to postings they made on the

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

Internet or to the Better Business Bureau about their complaints against SCEA; and their resumes detailing their employment history, among other things.

Because the discovery rules do not authorize (for lack of a better term) "fishing expeditions", SCEA should not be permitted to conduct one here.  Accordingly, Plaintiffs respectfully request that this Court grant this Motion for a Protective Order.

## FACTUAL AND PROCEDURAL HISTORY

### A.    Factual Summary

#### 1.    The PS3's Functions

The PS3 was introduced on November 17, 2006 as "the most advanced computer system that serves as a platform to enjoy next generation computer entertainment." Consolidated Class Action Complaint ("Complaint"), ¶ 30 [Docket No. 76].  SCEA advertised the PS3 as having several significant functions, including a built-in Blu-ray disc player, the ability to play games online against other players through the PlayStation Network ("PSN"), the ability to install other operating systems and act as a personal computer, and the ability to periodically update the software (called "firmware") on the device to maintain and enhance its functionality.  *Id.* at ¶ 33.  Because of these unique functions, the PS3's suggested retail price is considerably higher than competing video game consoles, such as the Microsoft Xbox 360 and Nintendo Wii.  *Id.* at ¶¶ 31-32.  SCEA has reportedly sold approximately 23 million PS3s.  *Id.*

#### 2.    SCEA's Representations

SCEA (and its parent, Sony Computer Entertainment, Inc. ("SCEI")) have repeatedly promoted the capabilities and functions of the PS3 since its launch, including the ability to install other operating systems (the "Other OS" function), which was unique to the PS3.  Complaint, ¶ 30.  This function allowed the PS3 to run a second operating system, such as Linux, and allowed the PS3 to operate as a personal computer.  The "Other OS" function made it possible for customers to use word processing software, spreadsheet software, and alternate email clients. Complaint, ¶ 47.

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

### 3.    SCEA's Removal of the "Other OS" Function

In August 2009, SCEA released a new, "slim" version of the PS3 that did not support the "Other OS" functionality.  Senior-level SCEA executives such as John Koller, director of hardware marketing, assured customers at the time that Sony would continue to support the PS3's computing functions.  Complaint, ¶ 45.  Geoffrey Levand, Principal Software Engineer at Sony Corporation, even emailed existing customers assuring them that the "Other OS" functionality would not be lost.  *Id.*

On March 28, 2010, however, Patrick Sebold, SCEA's Senior Director of Corporate Communications and Social Media, announced that SCEA would release Firmware 3.21 on April 1, 2010 and that it would disable the "Other OS" function available on the "fat" (older model) PS3s.  *Id.*  Customers who chose not to download Firmware 3.21 in order to retain the "Other OS" function instead lost the following functions: (1) the ability to sign into the PSN as well as access any money they had in their PSN accounts; (2) the ability to use online capabilities that require PSN access, such as chat; (3) the ability to use the online capabilities of PS3 format software; (4) the ability to playback new PS3 software or Blu-ray discs that required Firmware 3.21 or later; (5) the ability to playback copyright-protected videos that were stored on a media server; and (6) the use of other new functions and improvements requiring Firmware 3.21 or later.  *Id.* at ¶ 53.

Customers who updated their PS3s with Firmware 3.21 and lost the "Other OS" function also lost any information stored on the hard drive utilizing Linux or other operating system.  *Id.* at ¶ 57.  Additionally, customers who sent their systems into SCEA for service were automatically updated to the most recent firmware and lost their "Other OS" functionality and the data contained therein.  *Id.* at ¶ 55.  In short, Firmware 3.21 (and subsequent firmware) required customers to download Firmware 3.21 and lose the "Other OS" function and the data contained therein, or lose all access to the PSN, the ability to play games online as well as the ability to play new PS3 games or Blu-ray discs that required Firmware 3.21 or later.

*//*

6

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

**B.    Procedural Status**

Plaintiffs filed their Complaint on July 30, 2010 alleging claims for breach of express and implied warranties; violations of state and federal statutes (the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq*.; the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.; the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.; the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq*.; the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.), and common law claims for conversion and unjust enrichment.

The Court held a hearing on SCEA's motion to dismiss on November 4, 2010 and the parties are awaiting the Court's ruling.  [Docket No. 108.]  Although SCEA agreed that it would not seek to stay discovery pending a ruling on the motion to dismiss, to date, SCEA has failed to make a meaningful document production in response to document requests that Plaintiffs served on September 8, 2010.  *See* accompanying Declaration of Rosemary M. Rivas ("Rivas Decl."), ¶¶ 3, 6.  Specifically, SCEA has refused to produce documents until the parties reach an agreement on a Stipulated Protective Order.  *Id.* at ¶ 12.  SCEA has also refused to produce documents from its parent, Sony Computer Entertainment, Inc. ("SCEI"), unless Plaintiffs waive their right to name SCEI as a defendant in this litigation. *Id.* at ¶ 11, Exs. M-N.  These are the subjects of Plaintiffs' motion to compel, concurrently filed herewith.

**C.    SCEA's Document Requests**

SCEA served deposition notices and 31 document requests on each of the named Plaintiffs on September 24, 2010.  *Id.* at ¶ 7.  The parties later agreed on locations and scheduling of the depositions with the first one set to begin on November 9, 2010.  *Id.* at ¶ 9.  Plaintiffs served responses to SCEA's document requests on October 28, 2010 and requested the parties meet and confer about several requests for which Plaintiffs had objections. *Id.* at ¶ 10.

*//*

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

### D.   SCEA's Rescheduling of the First Deposition and Subsequent Meet and Confer Efforts

SCEA did not initially seek to meet and confer on Plaintiffs' responses.  On November 8, 2010 – the day before the first scheduled deposition for which Plaintiffs were prepared to appear– SCEA informed Plaintiffs that it could not proceed with the first deposition since its counsel was ill.  Rivas Decl., ¶ 13.   Plaintiffs agreed to postpone the deposition.  *Id.*  The next day, on November 9, 2010, SCEA for the first time requested a conference to meet and confer about Plaintiffs' responses and objections to SCEA's document requests, which Plaintiffs had served almost two weeks earlier.  *Id.* at ¶ 14.  On November 10, 2010, prior to any meet and confer having taken place, SCEA demanded that Plaintiffs produce documents in response to its objectionable requests.  *Id.*, Ex. I at p. 5 (Carter Ott email dated 11/10/10 and sent at 8:24 a.m.). SCEA stated that its ability to depose Plaintiffs would be hampered and not likely completed without the requested documents, suggesting that SCEA would take the depositions even if Plaintiffs' objections were not resolved because SCEA would just seek to re-open the depositions at a later time.  *Id.*  Plaintiffs responded that they would not allow SCEA to take multiple depositions of their clients and that unless the discovery disputes were resolved, it was probably best to postpone the depositions.  *Id.* at p. 4-5 (James Quadra email dated 11/10/10 and sent at 11:04 a.m.).

On November 12, 2010, the parties met and conferred.  Rivas Decl., ¶ 16.  SCEA continued to demand that Plaintiffs produce documents in response to what Plaintiffs believed were improper document requests.  *Id.*, Ex. I.  The parties were unable to reach an agreement as to all of SCEA's requests.  Nevertheless, Plaintiffs agreed to appear for deposition beginning on November 15, 2010 and produce the following materials as long as SCEA agreed that it would not seek to reopen the depositions as a result of any outstanding discovery disputes:

- Photographs and serial numbers of the PS3s;

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

- Photographs and serial numbers of peripherals used with the Other OS function of the PS3 (e.g., keyboards), or other proof of purchase;

- Proof of purchase of software (including licensing agreements or other contracts related to such software) that Plaintiffs used with the PS3's "Other OS" function;

- Any advertising related to the PS3 that Plaintiffs have in their possession, custody or control;

- All communications between the named Plaintiffs and anyone (other than their counsel) regarding the "Other OS" function or Update 3.21;

- Any information Plaintiffs have in their possession, custody or control relating to "hacking" or "jailbreaking" of the PS3s; and

- Non-privileged documents cited in the Complaint.

Rivas Decl., Ex. I at p. 1-2 (James Quadra email dated 11/12/10 and sent at 2:32 p.m.).

SCEA, however, rejected the above proposal and the parties agreed to file cross motions to compel and for a protective order. *Id.* (Luanne Sacks email dated 11/12/10 and sent at 4:50 p.m.). The parties continued to meet and confer over the next two weeks to no avail. Rivas Decl., ¶¶ 17-18, Exs. J-O. SCEA has refused to withdraw or narrow many of its objectionable discovery requests.

## **ARGUMENT**

### I.    **LEGAL STANDARD**

Fed. R. Civ. P. 26(c)(1) permits a party to move for a protective order in the court where the action is pending. Upon a showing of good cause, the Court may issue orders to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Id.* For example, the Court may issue an order that specifies the terms, including the time and place, for discovery, or an order forbidding discovery. Fed. R. Civ. P. 26(c)(1)(A)-(B).

The Federal Rules plainly limit discovery to that which is relevant. Fed. R. Civ. P.

9

26(b)(1).  "[T]he potential for discovery abuse is ever-present, and courts are authorized to limit discovery to that which is proper and warranted in the circumstances of the case."  *Katz v. Batavia Marine & Sporting Supplies, Inc*., 984 F.2d 422, 424 (9th Cir. 1993).  "Enforcing a discovery request for *irrelevant* information is a *per se* abuse of discretion."  *Cacique, Inc. v. Robert Reiser & Co., Inc.*, 169 F.3d 619, 622 (9th Cir. 1999) (emphasis in original).  Indeed, courts, including ones in this district, have recognized that the Federal Rules do not allow parties to use the discovery process to conduct a widespread "fishing expedition."  *Sathianathan v. Smith Barney, Inc*., C-04-02130SBA(JCS), 2007 WL 2417370 (N.D. Cal. Aug. 24, 2007).

Thus, a court may issue a protective order forbidding discovery of certain information to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  "The Supreme Court has interpreted this language as conferring 'broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'"  *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp*., 307 F.3d 1206, 1211 (9th Cir. 2002) (citing *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984)).  The "trial court is in the best position to weigh the fairly competing needs and interests of the parties affected by discovery.  The unique character of the discovery process requires that the *trial court have substantial latitude to fashion protective orders*."  *Phillips*, 307 F.3d at 1212 (internal quotations and citations omitted).  The party seeking the protective order bears the burden of showing good cause and must show that specific prejudice or harm will result if no protective order is granted. *Id*. at 1210-11; *San Jose Mercury News, Inc. v. U.S. Dist. Court--Northern Dist. (San Jose)*, 187 F.3d 1096, 1102 (9th Cir. 1999).

## II.     GOOD CAUSE SUPPORTS THE ISSUANCE OF A PROTECTIVE ORDER SEQUENCING DISCOVERY OF THE NAMED PLAINTIFFS

While SCEA has the prerogative under Rule 26(d)(2) to serve its discovery as it sees fit (*e.g*., by seeking depositions before document requests are resolved), it does not have the right to

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

obtain from Plaintiffs unduly burdensome, oppressive and expensive discovery, as it seeks to do here.  Nor does it have an unfettered right, without seeking leave from the Court, to conduct multiple depositions of the named plaintiffs.  Many of the discovery disputes at issue in this case stem from the fact that SCEA served document requests attached to deposition notices of the named Plaintiffs, rather than serving Requests for Production of Documents, resolving outstanding disputes, and then seeking to take depositions, as is the normal course.

   As set forth above, Plaintiffs served timely objections to SCEA's requests and SCEA acted initially as though it wanted to go ahead with the depositions despite Plaintiffs' objections.  Indeed, Plaintiffs were ready to start with the first deposition on November 9, 2010 when they were informed on the eve of the deposition that SCEA's counsel was ill.  Rivas Decl., ¶ 13.  Plaintiffs agreed to postpone the November 9, 2010 deposition to accommodate SCEA's request.  *Id.*

   The next day, on November 9, 2010, less than a week away from the next scheduled deposition, SCEA finally sought to meet and confer on Plaintiffs' objections.  *Id.* at ¶ 14.  Although the parties were unable to resolve several of their disputes, Plaintiffs were amenable to proceeding with the depositions, but only if SCEA agreed that it would not seek to re-open any depositions based on the disputed issues.  *Id.*, Ex. I at p. 1-2.  SCEA refused to agree; moreover, it failed to compromise on its objectionable discovery requests.  *Id.*  The parties then agreed to resolve the issues by filing cross-motions for a protective order and to compel discovery.  *Id.*, Ex. I at p. 1.

   The Federal Rules of Civil Procedure provide that depositions shall be limited to one day, up to seven hours, unless additional time is needed to fairly examine the deponent.  Fed. R. Civ. P. 30(d)(1).  Absent a stipulation of the parties, a party may not be deposed a second time except with leave of court.  Fed. R. Civ. P. 30(a)(2)(A)(ii).  "Although there is no specific limit on the number of times a person or party may be deposed, repeat depositions are disfavored, except in certain

---

11

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

circumstances.  Examples include: long passage of time with new evidence, new theories added to the complaint, etc."  *Graebner v. James River Corp.*, 130 F.R.D. 440, 441 (N.D. Cal. 1989). Courts routinely deny motions seeking to re-depose a party for failure to seek leave from the court. *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (denying request for leave to re-depose corporation) (citing *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 170 F.R.D. 111, 119 (S.D.N.Y. 1997), *Pkfinans International Corp. v. IBJ Schroder Leasing Corp.*, No. 93Civ.5375(SAS)(HBP), 93Civ.1816(SAS)(HBP), 1996 WL 591213, *2 (S.D.N.Y. 1996)).

A court should not allow additional depositions of the same individual outside the parameters set forth in Rule 26(b)(2).  Under Rule 26(b)(2), the court must consider whether the discovery sought is cumulative or duplicative, or can be obtained from some another source; whether the party seeking discovery has had ample opportunity to obtain the information pursuant to prior discovery in the action; and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2).  "The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order."  Advisory Committee Notes, 2000 Amendment to Rule 30(d)(1); *see also Presidio Components, Inc. v. American Tech. Ceramics Corp.*, No. 08cv335 IEG (NLS), 2009 U.S. Dist. LEXIS 25562, at *14 (S.D. Cal. Mar. 25, 2009) (stating that, "[a]bsent a showing of good cause, generally the court will not require a witness to appear for another deposition.").

Given the general prohibition against serial depositions of parties, SCEA's desire to depose Plaintiffs and then use existing discovery disputes as an excuse to depose them again should not be countenanced.  Instead, those disputes should be resolved beforehand.  Plaintiffs are not resourceful corporations like SCEA; they are consumers with full-time jobs or other responsibilities.  Additionally, some of them live outside of California.  Thus, Plaintiffs simply do not have the resources to appear for multiple depositions.  Accordingly, Plaintiffs have sought to resolve the disputes about their objections to SCEA's document requests prior to the depositions

---

12

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

going forward and SCEA agreed to the scheduling.  To the extent SCEA now claims that Plaintiffs unilaterally cancelled the depositions (which SCEA has indicated in some correspondence), then Plaintiffs seek a protective order from this Court under Rule 26(d)(2) that sequences discovery and delays the depositions of the named plaintiffs until after the disputes are resolved as to SCEA's document requests so as to avoid multiple depositions.

## III.   GOOD CAUSE SUPPORTS THE ISSUANCE OF A PROTECTIVE ORDER THAT FORBIDS SCEA FROM TAKING IRRELEVANT, BURDENSOME, AND INTRUSIVE DISCOVERY

### A.   SCEA'S Request No. 1:  Demand for All Documents Relating to Sony[1]

Request No. 1 seeks irrelevant information and is overbroad, burdensome and harassing.  A party only has the right to discover information that is "relevant to any party's claim or defense." *See* Fed. R. Civ. Proc. 26(b)(1).  A party may also discover information "relevant to the subject matter involved in the action," but only upon a showing of good cause.  *See id.*  Sweeping requests that are overly broad are not permitted.  *See* Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION (4th Ed.) § 11.443 ("In overseeing document production, the court should ... prevent indiscriminate, overly broad, or unduly burdensome demands—in general, forbid sweeping requests, such as those for 'all documents relating or referring to' an issue, party, or claim ...."); *Regan-Touhy v. Walgreen Co.*, 526, F.3d 641, 649-50 (10th Cir. 2008) (holding that document request seeking "all documents" relating to a party was overbroad); *Balistrieri v. O'Farrell*, 57 F.R.D. 567, 569 (E.D. Wis. 1972) (denying defendants' motion to compel with respect to their request for production of plaintiff's "file pertaining to the defendants" because the request was too broad even though there might be properly discoverable material in the file); *Honeywell Intl., Inc. v. Curities Litigation*, 230 F.R.D. 293, 301 (S.D.N.Y. 2003) (holding that document request

---

[1] The text of Request No. 1 says, "ANY and ALL DOCUMENTS CONCERNING Sony, SCEA, and/or the PS3."

13

seeking all communications regarding a party was overbroad because it contained no limitation as to subject-matter).

In this case, SCEA seeks documents that are overly burdensome and not relevant to any party's claim or defense, or even to the subject matter of the case.  Request No. 1 encompasses documents relating to *any* Sony product or device (including, for example, manuals, receipts, correspondence, etc.) such as Sony cameras, televisions, stereo systems, DVD players, and other products that are not the subject of the case.  Plaintiffs do not believe that they are obligated to comply with such an overbroad request.  Even if the request was solely limited to documents relating to the PS3, such a request would still be overbroad, and could include, for example, email exchanges with friends about games class representatives played on the PS3, passing references to playing with the PS3 in email messages to loved ones, and so on.  This request therefore impermissibly seeks documents that have no bearing on the issues in this case. Accordingly, Plaintiffs should not be required to produce anything more that what they have already produced.

**B.**    **SCEA'S Request No. 3: Demand for PS3s and Forensic Copies of PS3 Hard Drives**[2]

Request No. 3 demands that Plaintiffs produce their PS3s at their depositions.  This demand is burdensome, especially when the futility of such an exercise is considered.  According to SCEA, it needs to take photos of the PS3s and obtain information (which it has yet to identify) from the exterior of the consoles.  Plaintiffs, however, have produced recent photographs of their PS3s (along with photos of the serial numbers) and their proofs of purchase, if available.  Rivas Decl., ¶ 25.  Based on its own records, SCEA is likely able to confirm that the PS3s are registered to Plaintiffs.  Thus, there is no need for Plaintiffs to ship or bring the PS3s to their depositions at

---

[2] The text of Request No. 3 says, "ANY and ALL PS3s that YOU purchased, received, or otherwise acquired, including but not limited to, the PS3 referenced in Paragraph 14 of the CONSOLIDATED COMPLAINT."

14

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

the risk of damaging them during transit just so SCEA can take pictures which Plaintiffs have already produced.

Even more troubling, SCEA has demanded forensic copies of Plaintiffs' PS3 hard drives.[3] This demand is extremely burdensome, intrusive and overbroad.  While Rule 34(a) of the Federal Rules of Civil Procedure permits discovery of electronically stored information, it does not provide the right to search all of a party's records.  *Ameriwood Industries, Inc., v. Liberman,* No. 4:06CV524, 2006 WL 3825291, at *2 (E.D. Mo. Dec. 27, 2006).  Further, the right to information under Rule 34(a) "[i]s counterbalanced by a responding party's confidentiality or privacy interests."  *Genworth Financial Wealth Mgmt., Inc. v. McMul006Can*, 267 F.R.D. 443, 446 (D. Conn. 2010) (*citing* Notes of Advisory Committee on 2006 Amendments).

Sweeping requests for discovery of electronically-stored information, such as requests for an image of entire hard drive, are denied in cases such as these where a hard drive does not contain information subject to discovery or where there is no evidence of spoliation.  *See, e.g., Benton v. Dlorah, Inc.,* No. 06-CV-2488, 2007 WL 2225946, at *2 (D. Kan. Aug. 1, 2007).  Moreover, even where there is evidence of spoliation, unfettered access to the opposing party's entire computer hard drive is not allowed.  *In re Ford Motor Co.,* 345 F.3d 1135, 1336-37 (11th Cir. 2003) (unlimited and direct access to database abuse of discretion); *Playboy Enterprises, Inc. v. Welles*, 60 F.Supp.2d 1050, 1054-55 (S.D. Cal.1999) (ordering mirror image of defendant's hard drive but only allowing access to defendant's counsel and employing other protocols where privacy concerns implicated); *Coburn v. PN II, Inc.,* No. 2:07-cv-00662, 2008 WL 879746, at *3 (D. Nevada March 28, 2010) (direct and unfettered access to opposing party's home computers not

---

[3]SCEA has stated that the forensic copies are necessary because Plaintiffs have not discontinued use of their PS3s.  Plaintiffs, however, have been informed of their preservation obligations and simply because they have continued to use their PS3s does not mean that there has been spoliation. Plaintiffs have been unable to find any legal decisions involving false advertising cases such as this one where the continued use of a product is prohibited.

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

permitted); *Antioch v. Scrapbook Borders, Inc.,* 210 F.R.D. 645, 653 (D. Minn. April 29, 2002) (opposing party denied unfettered access to computer equipment).

SCEA explained that it is entitled to a forensic copy of Plaintiffs' PS3 hard drives to determine whether the PS3s were used as Plaintiffs allege in the Complaint.   When Plaintiffs asked SCEA to identify specifically what type of information it hoped to discover, SCEA stated that it could not specifically identify what might be relevant.   Thus, SCEA's overbroad request to obtain mirror images of Plaintiffs' hard drives should be rejected.  *Rivera v. NIBCO, Inc.,* 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expedition[s].'"); *Sathianathan v. Smith Barney, Inc*., C-04-02130SBA(JCS), 2007 WL 2417370 (N.D. Cal. Aug. 24, 2007).

Plaintiffs proposed instead to allow a neutral and mutually agreeable computer expert to examine the PS3 hard drives and prepare a report that identifies: (1) whether Linux or another operating system was installed on the PS3 using the "Other OS" function, (2) whether certain types of files exist on the hard drives, i.e., music, movie, word processing, email, video game or other Linux software related files, and (3) the dates of installation.  Rivas Decl., ¶18.  This information, coupled with Plaintiffs' deposition testimony, would enable SCEA to determine whether the PS3s were used as Plaintiffs' allege.  SCEA, however, rejected this proposal.  *Id*.

Further, SCEA should bear the costs of preparing the forensic report, not Plaintiffs. *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (2003).  While the responding party generally bears the expense of complying with discovery requests, cost-shifting should be ordered when the requested discovery imposes an "undue burden or expense" on the responding party. *Id.* at 318.   In determining whether to shift costs, courts consider:

1. The extent to which the request is specifically tailored to discover relevant information;

2. The availability of such information from other sources;

3. The total cost of production, compared to the amount in controversy;

16

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

4. The total cost of production, compared to the resources available to each party;

5. The relative ability of each party to control costs and its incentive to do so;

6. The importance of the issues at stake in the litigation; and

7. The relative benefits to the parties of obtaining the information.

*Id.* at 322.  All of the factors weigh in favor of shifting the costs to SCEA.

As to factors one and two, the request for hard drives is not specifically tailored to discover relevant information.  Further, SCEA's stated purpose for seeking the hard drives – to verify that Plaintiffs used the PS3s as alleged in the Complaint – can be obtained through deposition testimony and the proofs of purchase and photographs of Plaintiffs' peripherals.  This is especially the case where the focus of the litigation is on SCEA's conduct.  *Chavez,* 286 F.R.D. at 379 (citing *In re Tobacco*, 46 Cal. 4th at 324).

Factors three, four, and five also weigh in favor of cost-shifting.  The PS3 cost as low as $399 (Complaint ¶ 14) considerably less than the cost of preparing the forensic report suggested by Plaintiffs.  To perform the analysis and report Plaintiffs suggest, it would take three days at $350 per hour.  Rivas Decl., Ex. P.  Further, SCEA has significant resources, generating billions of dollars in PS3 sales, while Plaintiffs are consumers.  SCEA is also the party with the greater ability to control costs and imposing costs here on SCEA will incentivize it to do so instead of engaging in needless discovery.  As to the sixth factor, whether Plaintiffs used their PS3s as alleged in the Complaint can be verified through less onerous and burdensome means and is also of less importance than SCEA's conduct.  Thus, this factor weighs in favor of cost-shifting.

With respect to the seventh factor, the discovery sought is of little benefit to the litigation, because the information can be discovered through less-intrusive means and because the focus of this litigation is on SCEA's conduct.  *See Chavez*, 286 F.R.D. at 379 (citing *In re Tobacco*, 46 Cal. 4th at 324).  Accordingly, the costs of preparing the forensic report, as Plaintiffs proposed, should be shifted to SCEA.  *See, e.g., Playboy Enterprises,* 60 F.Supp.2d at 1054-55 (placing costs of

17

mirroring hard drive on the requesting party); *Ameriwood*, 2006 WL 3825291, at *5 (costs on the party seeking discovery).

### C.     SCEA'S Request No. 6: Production of all Peripherals used with PS3s[4]

This request is clearly overbroad, burdensome, harassing, oppressive, and not likely to lead to the discovery of admissible evidence. SCEA has stated that it is entitled to discover whether Plaintiffs used their PS3s in the manner alleged in the Complaint. Rivas Decl., Ex. I at p. 5 (Carter Ott email dated 11/10/10 and sent at 8:24 a.m.). Plaintiffs have produced photographs of the peripherals they have used with the PS3's "Other OS" function. Rivas Decl., ¶ 25. This information should be sufficient. There is no need for Plaintiffs to produce at deposition games, movies, CDs, printers, televisions, monitors, keyboards and cables, at the risk of damaging their property during shipment or transit.

### D.     SCEA'S Request Nos. 7 and 8: Forensic Copies and Proofs of Purchase of All Personal Computers Plaintiffs Have Owned Since January 1, 2006[5]

---

[4] The text of Request No. 6 says, "ANY and ALL DOCUMENTS and/or things not responsive to Request No. 3 CONCERNING ANY data, game, program, operating system, application, file, hard drive, memory storage device, Internet browser, mouse, printer, television, cable, wireless network, hardware, firmware, peripheral, monitor, keyboard, Compact Disc, Digital Versatile Disc, Blu-ray Disc, and or software code that Plaintiff authored, created, used with, connected to, installed on, downloaded to, backed up to, backed up from, imaged and/or uninstalled on each PS3 to be identified and produced in response to Request No. 3 that did not accompany each PS3 at the time of purchase, receipt and/or acquisition."

[5] The text of Request No. 7 says, "A forensic copy of the hard drive for ANY and ALL PERSONAL COMPUTERS used by [Plaintiff] during the DESIGNATED PERIOD, including, but not limited to, any used by [Plaintiff] at his place of residence and/or place of business."

The text of Request No. 8 says, "ANY and ALL DOCUMENTS CONCERNING the purchase, receipt, and/or acquisition of ANY and ALL PERSONAL COMPUTERS in [Plaintiff's] possession, custody or control, including, but not limited to, any used by [Plaintiff] at his place of residence and/or place of business during the DESIGNATED TIME PERIOD, including, but not limited to purchase orders, bills of sale, invoices, credit card receipts, cancelled checks and money orders."

---

18

Request Nos. 7 and 8 seek forensic copies and proofs of purchase of all personal computers Plaintiffs bought, owned or acquired from January 1, 2006 to the present, as well as their business computer.  Plaintiffs' personal computers are completely irrelevant to the litigation.  Moreover, as with Request No. 3, the request is burdensome, overbroad, and intrusive as it violates Plaintiffs' right to privacy.  There are no issues of spoliation, nor is this the type of case where the computers are at issue.  *See, e.g., Benton,* 2007 WL 2225946, at *2 ("Defendants have not sustained their burden to show that Plaintiff has in fact failed to comply with their requests for production, that Plaintiff's hard drive contains any additional information subject to discovery, [or] that Plaintiff has spoliated evidence . . . [.]").  SCEA should be forbidden from taking any discovery in response to these requests.

**E.    SCEA'S Request No. 14: All Documents Supporting Plaintiffs' Reliance[6]**

Defendant's Request for Production No. 14 asked Plaintiffs to produce "any and all documents that Plaintiffs relied on in purchasing, receiving, or acquiring any PS3."  Depending on the particular class representative, SCEA also requested copies of anything that they had read online about the PS3.  During the parties' meet and confer on this topic, SCEA indicated that each class representative must produce any documents which they had seen in any magazine or on the Internet – even if they had never printed the documents or otherwise retained control of them.

---

[6] The text of Request No. 14 says, "ANY and ALL DOCUMENTS that [Plaintiff] relied upon in purchasing, receiving  or acquiring any PS3, including but not limited to, ANY and ALL DOCUMENTS CONCERNING YOUR allegations in Paragraph 16 of the CONSOLIDATED COMPLAINT that "[b]efore purchasing the PS3, [Plaintiff] performed extensive research on the Internet.  Among other things, [Plaintiff] reviewed and relied on Defendants' website with regard to the PS3's 'Other OS' function, as well as the PS3's other advertised functions such as the ability to access the PSN, play video games, watch movies, and listen to music, among other things" and "Defendant's representations about the PS3's functions,  including the 'Other OS' function, played a substantial factor in influencing Plaintiffs decision to  purchase a PS3 over the Xbox 360 and Wii."

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

Rivas Decl. ¶ 16.  Plaintiffs seek a protective order as to this request to the extent SCEA attempts to force production of documents not in any Plaintiffs' possession, custody or control.

As an initial matter, the Federal Rules provide no basis for seeking to compel a party to produce documents not in their possession, custody, or control.  *See* Fed. R. Civ. P. 34(a)(1) ("A party may serve on the other party a request ... to produce ... items in the responding party's possession, custody, or control.");  *Clinton v. Cal. Dept. of Corrections*, S-05-1600-LKK-CMK-P, 2009 WL 1617811, at *1 (E.D. Cal. Jun. 9, 2009) ("A request to produce documents pursuant to Rule 34 is limited to those documents within the party's possession.").  Moreover, "[t]he law does not require a party to prepare or create a document in response to a discovery request."  *Butler v. Portland General Elec. Co.*, No. 8-455-FR, 1990 WL 15680, at *2 (D. Or. Feb. 9, 1990).

Here, SCEA seeks documents from Plaintiffs that are in the hands of third parties (or itself).  A party seeking production of documents bears the burden of establishing the opposing party's control over those documents.  *United States v. Intern. Union of Petro. & Indus. Wkrs.*, 870 F.2d 1450, 1452 (9th Cir.1989).  Documents not actually possessed by the subpoenaed party may be considered within its control if the party has "the legal right to obtain the documents on demand*." In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir.1999).  However, "the legal right to obtain documents on demand and the practical ability to obtain documents on demand are two distinct things.  Legal right suggests an ownership interest, a binding contract, a fiduciary duty, or some other legally enforceable arrangement."  *Micron Technology, Inc. v. Tessera, Inc.*, No. C06-80096 MISC.JW (HRL), 2006 WL 1646133, *1 (N.D. Cal. Jun. 14, 2006).  Here, except to the extent that a Plaintiff may have printed out advertisements or representations and the like from websites three years ago when they were buying their PS3 (which, as Plaintiffs explained to SCEA, did not occur), Plaintiffs do not have the requisite control of the documents requested.  Many of the documents that Plaintiffs relied on in purchasing the PS3 are in the sole possession, custody, or control of SCEA or another website.  Requesting Plaintiffs to "perform a search" on

20

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

the Internet for documents not in their possession, custody, or control is equivalent to asking

Plaintiffs to "create" responsive documents.  This is burdensome and contrary to Rule 34(a)(1).

### F.        SCEA'S Request No. 27: Plaintiffs' Representation Agreements with Counsel[7]

Request No. 27 seeks copies of each Plaintiff's representation agreement with their counsel

in this litigation.  Such information is protected by the attorney-client privilege.  *In re Horn,* 976

F.2d 1314, 1317-18 (9th Cir. 1992) ("Such documents may reveal the client's motivation for

seeking legal representation, the nature of the services provided or contemplated, strategies to be

employed in the event of litigation, and other confidential information exchanged during the

course of the representation.  Accordingly, we have held, in clear and unambiguous language, that

a demand for such documents constitutes 'an unjustified intrusion into the attorney-client

relationship.'") (*quoting In re Grand Jury Witness (Salas)*, 695 F.2d 359, 361-62 (9th Cir. 1982)).

Agreements entered into at the inception of the attorney-client relationship are particularly

deserving of protection because they evince the client's motivations for representation.  *Salas*, 695

F.2d at 362 ("As a general proposition, the client's ultimate motive for litigation or for retention of

an attorney is privileged . . .  Accordingly, correspondence between attorney and client which

reveals the client's motivation for creation of the relationship or possible litigation strategy ought

to be protected.") (citations omitted).

 In *Salas*, the Ninth Circuit held that retainer agreements and representation contracts were

protected by the attorney-client privilege.  *Id.*  at 361-62.  Moreover, it is well-established in the

Ninth Circuit that "correspondence, bills, ledgers, statements, and time records which also reveal

the motive of the client in seeking representation, litigation strategy, or the specific nature of the

services provided, such as researching particular areas of law, fall within the privilege."  *Clarke v.

American Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (*citing Salas*, 695 F.2d at 361-

---

[7] The text of Request No. 27 says, "ANY and ALL agreements that [Plaintiff] entered into with his counsel in the above-captioned litigation, including, but not limited to, ANY AND ALL engagement agreements."

21

62); *see also Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06cv2804 BTM (WMc), 2010 WL 275083, *1 (S.D. Cal., Jan. 13, 2010) (representation agreement protected by attorney-client privilege).  Plaintiffs should not be required to produce such information.

## G.   SCEA'S Request No. 28: Documents Regarding Unrelated Hacking to Plaintiffs' Counsel's Website[8]

SCEA's Request for Production No. 28 seeks all documents regarding the hacking of one of Plaintiffs' counsel's websites. The requested information is irrelevant.  In essence, the request seeks information relating to a June 2010 incident where an unknown third party hacked into the website of Meiselman, Denlea, Packman, Carton & Eberz P.C. ("MDPCE") and made a false post in its "News" section.[9]  The circumstances surrounding this hacking into a law firm's website has no bearing on any issue in this case, much less relevance to any claim or defense in this matter. Therefore, the information is not discoverable.  *See* Fed. R. Civ. Proc. 26(b)(1).

Moreover, any information regarding MDPCE's investigation into its own security breach would not be in the possession, custody or control of any class representative.  *See* Fed. R. Civ. Proc. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the *responding party's* possession, custody, or control ….") (emphasis added). Plaintiffs are the "responding parties" here, not MDPCE.  Indeed, MDPCE's own security investigation relates to its own business, and records relating to its investigation into a hacking of

---

[8]Request No. 28 seeks "ANY and ALL DOCUMENTS CONCERNING an allegedly false posting made on or about June 6, 2010 on the website of MDPC&E CONCERNING this litigation, including, but not limited to, the investigation of the source of that posting, including whether it was the result of hacking: the identity of the individual(s) who allegedly hacked that website to create the posting; and YOUR COMMUNICATIONS CONCERNING the posting, including CONCERNING the alleged hack and the accurate status of this litigation."

[9] The hacker in question apparently posted a false story that this case had been settled.  MDPCE promptly removed the false posting.

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

its website would not appear in files relating to this case.  Therefore, any information in MDPCE's possession regarding its own investigation about its own website should not be considered to be documents within Plaintiffs' control.  *See id.*

Finally, any communication with Plaintiffs about any security breach would be attorney-work product and attorney-client privileged communications.  *See* Fed. R. Civ. Proc. 26(b)(3)(A); Fed. R. Civ. P. 26(b)(1). Accordingly, Plaintiffs should not be required to comply with this highly objectionable document request.

## IV.   GOOD CAUSE SUPPORTS THE ISSUANCE OF A PROTECTIVE ORDER THAT PROHBITS DISCOVERY OF ABSENT CLASS MEMBERS

The Case Management Order entered by Judge Seeborg on June 30, 2010 provides for the filing of a consolidated complaint, which "shall be deemed the operative complaint, *superseding all complaints filed in this action*, or any of the actions to be consolidated hereunder or in any related cases."  *See* Docket Entry No. 65 at ¶ 11 (emphasis added).  The Consolidated Complaint, which was filed on July 30, includes five named class representative plaintiffs.  *See* Amended Complaint, Docket Entry No. 76.  SCEA has repeatedly asserted that any absent class members who were previously named in one of the earlier, pre-consolidation complaints is subject to discovery just as if they continue to be a named class representative-- and therefore subject to document requests and depositions.  SCEA has also demanded that these unnamed Class members undertake extensive and overbroad preservation obligations.  Rivas Decl., Ex. A.  Plaintiffs believe that such discovery is inappropriate, overly burdensome, and seek a protective order.  *See, e.g., Pierce v. County of Orange*, 526 F.3d 1190, 1202 n.9 (9th Cir. 2008) (acknowledging the "limitations on absent class member discovery inherent in Fed. R. Civ. P. 23").

Numerous courts have found that the burden on a party seeking discovery of absent class members is high and such discovery is disfavored.  *See, e.g., Baldwin & Flynn v. Nat'l Safety Assoc.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993) ("Defendants must have leave of court to take

depositions of members of a putative class, other than the named class members-after first showing that discovery is both necessary and for a purpose other than taking undue advantage of class members.  The burden is heavy to justify asking questions by interrogatories, even heavier to justify depositions.") (citations omitted); *Negrete v. Allianz Life Ins. Co. of N. America*, No. 05-6838, 2008 WL 8116992, at *2 (C.D.Cal. 2008) (same); *On the House Syndication, Inc. v. FedEx Corp.*, 203 F.R.D. 452, 455 (S.D. Cal. 2001) (*citing In re Worlds of Wonder Sec. Litig.*, No. C-87-5491, 1992 WL 330411 (N.D. Cal. July 9, 1992)) ("Absent class members are not parties and separate discovery of individual class members not representatives is normally not permitted."); *Kline v. First W. Gov't Sec.*, No. 83-1076, 1996 WL 122717, at *1 (E.D. Pa. Mar. 11, 1996) ("[U]pon a survey of cases, it is safe to state that discovery of absent class members is disfavored."); *Teachers' Retirement System v. ACLN Ltd.*, No. 01-11814, 2004 WL 2997957, at *10 (S.D.N.Y. 2004) ("[C]ourts are extremely reluctant to permit discovery of absent class members.") (citations omitted).  SCEA has not sought leave to seek discovery of these absent class members, nor has it sought leave to impose its onerous preservation obligations upon then.

The issue is no different where formerly named representatives are no longer participating as named representatives in a case -- at the time an amended complaint is filed, formerly named representatives become absent class members and discovery against them is generally inappropriate.  *See, e.g., Kops v. Lockheed Martin Corporation*, MDL No. 1409, 2003 U.S. Dist. LEXIS 8568, at *3-4 (C.D. Cal., May 14, 2003) (holding that non-lead named plaintiffs in a class action lawsuit "have no role in the litigation apart from being members of the proposed class" and, as such, are rendered "akin to 'absent class members' to whom special rules of discovery apply"); *In re Currency Conversion Fee Antitrust Litig.*, No. MDL NO. 1409, M 21-95, 2004 WL 2453927, at *2 (S.D.N.Y. Nov. 3, 2004) (refusing to allow discovery of withdrawn class representatives); *In re Lucent Technologies, Inc. Sec. Litig.*, No. 00-621, 2002 WL 32818345, at *1 (D.N.J. May 9, 2002); *magistrate's ruling aff'd by* 2002 WL 32815233 (D.N.J. July 16, 2002); *In re Carbon*

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

1  *Dioxide Indus. Antitrust Litig.*, 155 F.R.D. 209, 211-12 (M.D. Fla. 1993) ("By virtue of not being

2  chosen as class representatives, these Plaintiffs remain as passive class members, on equal footing

3  with all other non-representative class members"); *Feldman v. Motorola, Inc.,* No. 90-C-5887,

4  1992 WL 415382, at *6 *7  (N.D. Ill. 1992) (same); *Org. of Minority Vendors, Inc. v. Illinois*

5  *Central Gulf R.R.*, No. 79 C 1512, 1987 WL 8997, at *1 (N.D. Ill. 1987) (same); *see also In Re*

6  *Qwest Communications International, Inc*., *Securities Litig*., 2005 U.S. Dist. LEXIS 11618, at *10

7  (D. Col., June 7, 2005);

8   "The burden on the defendant to justify discovery of absent class members by means of

9  deposition is particularly heavy."  *In re Currency Conversion Fee Antitrust Litig.*, 2004 WL

10  2453927, at *2 (*quoting Redmond v. Moody's Investor Serv.*, No. 92 CIV 9161, 1995 WL 276150,

11  at *1 (S.D.N.Y. May 10, 1995)); *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir.

12  1974) ("T]he party seeking the depositions [of absent class members] has the burden of showing

13  necessity and . . . the burden confronting the party seeking deposition testimony should be more

14  severe than that imposed on the party requesting permission to use interrogatories.").  The *Manual*

15  *for Complex Litigation* also notes, "[d]eposing absent class members requires greater justification

16  than written discovery."  *Manual for Complex Litigation*, § 21.41 (4th ed. 2004).

17  Here, SCEA has provided no justification for taking discovery of any absent class

18  members, much less the burdensome and onerous requirements of deposition discovery and has

19  not sought leave of Court to do so.  As such, SCEA should be prohibited from (1) taking discovery

20  from absent class members, and (2) demanding that absent class members take broad preservation

21  obligations without Court approval.

## CONCLUSION

23  Based on the foregoing, Plaintiffs respectfully request that the Court grant this motion for a

24  protective order sequencing the depositions of the named plaintiffs and prohibiting SCEA from

25  taking the discovery described herein.

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

Dated: December 15, 2010                    Respectfully submitted,

**CALVO & CLARK, LLP**

/s/ James A. Quadra
James A. Quadra
Rebecca Coll
One Lombard Street, Second Floor
San Francisco, California 94111
Telephone: 415-374-8370
Facsimile: 415-374-8373

Dated: December 15, 2010                    **FINKELSTEIN THOMPSON LLP**

/s/ Rosemary M. Rivas
Rosemary M. Rivas

Tracy Tien
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: 415-398-8700
Facsimile: 415-398-8704

Douglas G. Thompson
**FINKELSTEIN THOMPSON LLP**
1050 30th Street, NW
Washington, DC 20007
Telephone: 202-337-8000
Facsimile: 202-337-8090

Dated: December 15, 2010                    **HAUSFELD LLP**

/s/ James Pizzirusso
James Pizzirusso (*pro hac vice*)

1700 K St., NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201

Michael P. Lehman
**HAUSFELD LLP**

26

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS

44 Montgomery Street, Suite 3400
San Francisco, California 94104
Telephone: 415-633-1908
Facsimile: 415-358-4980

*Co-Interim Lead Counsel for Plaintiffs*

Bruce L. Simon
**PEARSON, SIMON, WARSHAW &
PENNY, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone: 415-433-9000
Facsimile: 415-433-9008

Daniel L. Warshaw
**PEARSON, SIMON, WARSHAW &
PENNY, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: 818-788-8300
Facsimile: 818-788-8104

Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
**CHIMICLES & TIKELIS LLP**
361 W. Lancaster Ave.
Haverford, Pennsylvania 19041
Telephone: 610-642-8500
Facsimile: 610-649-3633

Ralph B. Kalfayan
**KRAUSE, KALFAYAN, BENNICK &
SLAVENS, LLP**
625 Broadway, Suite 635
San Diego, California  92101
Telephone: 619-232-0331
Facsimile: 619-232-4019

Jeffrey Carton (*pro hac vice*)
D. Greg Blankinship (*pro hac vice*)
**MEISELMAN, DENLEA, PACKMAN, CARTON**

27

**& EBERZ LLP**
1311 Mamaroneck Avenue
White Plains, New York 10605
Telephone: 914-517-5055
Facsimile: 914-517-5055

John R. Fabry
**BAILEY & GALYEN**
18333 Egret Bay Blvd., Suite 444
Houston, Texas 77058
Telephone: 281-335-7744
Facsimile: 281-335-5871

*Counsel for Plaintiffs*

I, Rosemary M. Rivas, am the ECF user whose ID and password are being used to file this MOTION FOR PROTECTIVE ORDER.  In compliance with General Order 45, X.B., I hereby attest that James A. Quadra and James Pizzirusso have concurred in this filing.

NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER; MPA
CASE NO. CV-10-1811 RS