James A. Quadra (SBN 131084)
jquadra@calvoclark.com
**CALVO & CLARK, LLP**
One Lombard Street, Second Floor
San Francisco, California 94111
Telephone: (415) 374-8370
Facsimile: (415) 374-8373

Rosemary M. Rivas (SBN 209147)   James Pizzirusso (Admitted *pro hac vice*)
rrivas@finkelsteinthompson.com   jpizzirusso@hausfeldllp.com
**FINKELSTEIN THOMPSON LLP**   **HAUSFELD LLP**
100 Bush Street, Suite 1450   1700 K. Street NW, Suite 650
San Francisco, California 94104   Washington, DC 20006
Telephone: (415) 398-8700   Telephone: (202) 540-7200
Facsimile: (415) 398-8704   Facsimile: (202) 540-7201

*Interim Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re Sony PS3 "Other OS" Litigation | Case No. CV-10-1811-RS<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER: (1) COMPELLING DISCOVERY FROM DEFENDANT SCEA'S PARENT COMPANY; AND (2) ENTERING THE NORTHERN DISTRICT OF CALIFORNIA'S STANDARD STIPULATED PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: February 9, 2011<br>Time: 10:30 a.m.<br>Judge: Magistrate Judge Edward M. Chen<br>Courtroom: C, 15th Floor |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED (Local Rule 7-4(a)(3)) ........................................ 1

PRELIMINARY STATEMENT ..................................................................................................... 2

PLAINTIFFS' MEET AND CONFER EFFORTS ......................................................................... 3

      A.     Plaintiffs' Document Requests ............................................................................. 3

      B.     The Protective Order ............................................................................................. 4

ARGUMENT .................................................................................................................................. 5

    I.    PLAINTIFFS ARE ENTITLED TO DISCOVERY FROM SCEA'S PARENT COMPANY ........................................................................................................... 5

    II.   THE NORTHERN DISTRICT OF CALIFORNIA'S STANDARD PROTECTIVE ORDER IS APPROPRIATE FOR THIS CASE .............................................................. 9

CONCLUSION .............................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                            **Page(s)**

*A. Farber & Partners, Inc. v. Garber,*
   234 F.R.D. 186 (C.D. Cal. 2006) .................................................................................................. 5

*Beckman Indus. v. International Ins. Co.,*
   966 F.2d 470 (9th Cir. 1992) ...................................................................................................... 10

*Brown Bag Software v. Symantec Corp.,*
   960 F.2d 1465 (9th Cir. 1992) ...................................................................................................... 9

*Camden Iron and Metal, Inc. v. Marubeni America Corp.,*
   138 F.R.D. 438 (D.N.J. 1991) ...................................................................................................... 6

*Charles O. Bradley Trust v. Zenith Capital LLC,*
   No. C-04-2239 JSW (EMC), 2006 WL 798991 (N.D.Cal. Mar. 24, 2006) .............................. 11

*Choice-Intersil Microsystems, Inc. v. Agere Systems, Inc.,*
   224 F.R.D. 471 (N.D. Cal. 2004) ................................................................................................. 7

*Cooper Industries, Inc. v. British Aerospace, Inc.,*
   102 F.R.D. 918 (S.D. N.Y. 1984) ............................................................................................ 7, 8

*Foltz v. State Farm Mut. Auto. Ins. Co.,*
   331 F.3d 1122 (9th Cir. 2003) .................................................................................................... 10

*Gerling Int'l Ins. Co. v. Commissioner,*
   839 F.2d 131 (3d Cir. 1988) ......................................................................................................... 6

*Hill v Eddie Bauer,*
   242 F.R.D. 556 (C.D. Cal. 2007) .................................................................................................. 5

*In re Citric Acid Litig.,*
   191 F.3d 1090 (9th Cir. 1999) ...................................................................................................... 6

*Japan Halon Co. v. Great Lakes Chem. Corp.,*
   155 F.R.D. 626 (N.D. Ind. 1993) .................................................................................................. 8

*Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.,*
   No. C-06-1066 PHJ EMC, 2007 WL 4169628 (N.D. Cal. Nov. 20, 2007) .......................... 10, 11

*Miller v. NTN Communs., Inc.,*
   No. 97cv1116-BTM (JAH), 1998 U.S. Dist. LEXIS 13753 (S.D. Cal. July 23, 1998) ............ 11

*Phoenix Sol'ns. Inc. v. Wells Fargo Bank, N.A.*,
  254 F.R.D. 568 (N.D. Cal. 2008) .................................................................................. 9

*Rambus, Inc. v. Nvidia Corp.*,
  No. C 08-3343 SI, 2009 WL 982123 (N.D. Cal. Apr. 13, 2009) .............................. 12

*Shared Memory Graphics, LLC v. Apple, Inc.*,
  No. C-10-2475 VRW (EMC), 2010 WL 4704420 (Nov. 12, 2010)........................... 9

*United States v. Faltico,*
  586 F.2d 1267 (8th Cir.1978) ..................................................................................... 7

*United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO,*
  870 F.2d 1450 (9th Cir.1989) ..................................................................................... 5

**Rules**
Fed. R. Civ. P. 23................................................................................................................ 11
Fed. R. Civ. P. 26(c)(1)......................................................................................................... 1
Fed. R. Civ. P. 34(a) ............................................................................................................. 5

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 9, 2011 at 10:30 a.m., or as soon as thereafter as the matter may be heard in this Court, Plaintiffs Anthony Ventura, Jonathan Huber, Antal Herz, Jason Baker, and Elton Stovell (collectively "Plaintiffs") will and hereby do move for an Order: (1) Compelling Discovery from Defendant Sony Computer Entertainment LLC's ("SCEA") Parent Company, and (2) Entering the Northern District of California's Standard Stipulated Protective Order.

Plaintiffs' Motion is based on this Notice of Motion and accompanying Memorandum of Points and Authorities, the Declaration of Rosemary M. Rivas ("Rivas Decl."), Plaintiffs' Request for Judicial Notice, all other pleadings and matters of record in this case, and such other evidence of which this Court may take judicial notice. A proposed order is included.

Pursuant to Fed. R. Civ. P. 26(c)(1) and Local Rule 37-1(a), Plaintiffs certify that they have met and conferred in good faith with SCEA's counsel in an effort to resolve the dispute without court involvement, but were unable to reach an agreement. The parties have met and conferred in person, by telephone and through email on October 29, 2010, November 10, 2010, November 15, 2010, November 23, 2010, and December 1, 2010 as set forth in the accompanying Rivas Declaration.

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES TO BE DECIDED (Local Rule 7-4(a)(3))

1. Whether Defendant Sony Computer Entertainment America ("SCEA"), which marketed and distributed the PlayStation 3 (designed and manufactured by SCEA's parent, Sony Computer Entertainment, Inc. ("SCEI")) is obligated to produce documents responsive to Plaintiffs' First Request for Production of Documents that are located in Japan and in its parent's possession, custody or control; and

2. Whether the Northern District of California's Standard Stipulated Protective Order is appropriate for this class action case involving consumer claims for breach of warranty and false advertising, among other things.

**PRELIMINARY STATEMENT**

Defendant Sony Computer Entertainment America ("SCEA"), headquartered in California, is a wholly owned subsidiary of Sony Computer Entertainment, Inc. ("SCEI"). SCEA has recently informed Plaintiffs that while it oversaw the marketing and distribution of the Sony PlayStation 3 ("PS3") throughout the United States and provided related customer support, its corporate parent, SCEI, is the entity that was responsible for the PS3's design, including the decision to add and then remove the PS3's "Other OS" function. As a result, SCEA has refused to produce responsive documents in this case, such as those relating to the decisions to include and later remove the "Other OS" feature, on the grounds that such information is within the possession, custody and control of its parent SCEI, which is located in Japan. At the same time, however, SCEA has asserted in its Motion to Dismiss and elsewhere that the Terms of Service governing the PS3 allowed it to remove this feature because of "security concerns." Plaintiffs have no way of disputing this assertion without related discovery and thus requested that SCEA produce documents from SCEI, as well. SCEA refused.

As an initial matter, Plaintiffs dispute that SCEA does not have any documents itself related to this issue, but have no way of knowing as SCEA has not yet produced any documents in this case that it claims as "confidential." Nevertheless, SCEA would only agree to produce responsive documents on this issue that it claims are exclusively in the possession, custody and control of its parent, SCEI, if Plaintiffs would agree to forever waive their right to name SCEI as a defendant in this litigation. Plaintiffs responded that they could only agree to such a proposal if SCEA agreed that SCEI's conduct were imputed to SCEA; SCEA refused. SCEA's proposal is unacceptable in light of the authority in this district holding that a subsidiary who is a party must produce documents in its parent's possession if the relationship between the two suggests that the subsidiary has legal control of the documents as is the case here. Plaintiffs therefore seek an order from the Court that compels SCEA to produce documents responsive to Plaintiffs' discovery requests, regardless of whether that information is here or in Japan.

Additionally, as noted, SCEA has refused to produce any "confidential" documents until the parties have reached an agreement on a stipulated protective order, despite Plaintiffs' agreement to maintain any documents that SCEA has produced "Attorneys' Eyes Only" in the interim until a stipulated protective order is entered. SCEA refuses to stipulate to the Northern District of California's Standard Stipulated Protective Order, but insists that the parties stipulate to the Northern District of California's Patent Model Protective Order. This is not a patent case, but a straight forward consumer case involving claims such as breach of warranty and false advertising.

Accordingly, Plaintiffs must receive SCEA's documents before they can adequately prepare a motion for class certification. SCEA's refusal to produce responsive documents based on the claim that they are not in its possession, custody or control, or because a protective order has not been entered, is hindering Plaintiffs' discovery efforts and causing unnecessary motion practice. Accordingly, Plaintiffs respectfully request that the Court grant this motion.

## PLAINTIFFS' MEET AND CONFER EFFORTS[1]

### A.  Plaintiffs' Document Requests

Plaintiffs served their First Request for Production of Documents ("Document Requests") on September 8, 2010. Rivas Decl., ¶ 6. SCEA raised boilerplate objections to nearly all of the requests. *Id*. at Ex. C. The parties met and conferred about the Document Requests at an in-person meeting on October 29, 2010. *Id*. at ¶¶ 11-12. During the meet and confer, SCEA informed Plaintiffs that while it marketed and distributed the PS3 throughout the United States and provided customer support, its parent, SCEI, is the entity that was responsible for the PS3's design, including the decision that was made to subsequently remove the "Other OS" function. *Id*. at ¶ 11. Thus, SCEA stated that it did not have documents responsive to Document Request Nos. 5-7, or 10-13. Rivas Decl., ¶ 11. Plaintiffs asked if SCEA would produce documents from SCEI. SCEA agreed to consider the request. *Id*. at Ex. H.

---

[1] The factual summary and procedural status of this case are set forth in Plaintiffs' Motion for Protective Order, filed concurrently herewith.

3

PLAINTIFFS' NOTICE OF MOTION & MOTION TO COMPEL; MPA IN SUPPORT THEREOF
CASE NO. CV-10-01811-RS

1   In a follow-up meet and confer letter dated November 10, 2010, Plaintiffs indicated that they were considering naming SCEI as a defendant or might move to compel if SCEA would not produce SCEI's documents. *Id*. at Ex. H. Plaintiffs also indicated that they might be willing to enter into a tolling agreement with SCEI whereby SCEI would not initially be named as a defendant and any potential statute of limitations would be tolled as of the date of the agreement. *Id*.

During a telephonic meet and confer on November 15, 2010, SCEA stated that it would be willing to enter into a stipulation whereby SCEA would agree to produce documents from its parent SCEI, but that with regard to depositions, Plaintiffs would need to follow the appropriate requirements for taking depositions in Japan under international discovery rules. Rivas Decl., ¶ 17. Plaintiffs asked SCEA to provide its proposal in writing. *Id*. After nearly three weeks of repeated requests that SCEA provide its proposal in writing, SCEA finally provided a written proposal on December 8, 2010. *Id*. at Ex. M. For the first time, however, SCEA was now insisting that Plaintiffs forever waive their right to name SCEI as a defendant in this litigation in exchange for SCEA agreeing to produce very limited discovery from SCEI related to two topics. *Id*. Plaintiffs sent a counter proposal asking for full discovery of SCEI and for SCEA to agree that SCEI's actions were imputed to it. SCEA rejected that counter proposal. *Id*. at Ex. N.

### B.   The Protective Order

Plaintiffs filed their Consolidated Class Action Complaint ("Complaint") on July 30, 2010. *See* Dkt. No. 76. Plaintiffs raised the issue of a stipulated protective order with SCEA's counsel at the parties' in-person Rule 26(f) meeting on August 12, 2010. Rivas Decl., ¶ 2-4. SCEA stated that it would send Plaintiffs a draft of a proposed protective order within one week, and agreed to provide a redlined version of the Northern District of California's Sample Stipulated Protective Order. *Id*. at ¶ 4. SCEA did not provide a draft protective order as promised. *See id*. at Ex. J. Two months later, during the parties' in-person meet and confer on October 29, 2010, SCEA stated that it would not produce documents until the parties reached an agreement on a protective order. Rivas Decl., ¶ 12. SCEA would not even agree to produce

4

PLAINTIFFS' NOTICE OF MOTION & MOTION TO COMPEL; MPA IN SUPPORT THEREOF
CASE NO. CV-10-01811-RS

1  advertisements and other marketing materials that were publicly disseminated.  SCEA promised
2  again that it would send a draft protective order, but it did not.  *See id*. at Ex. J.  Plaintiffs
3  suggested that if SCEA produced documents, it would maintain such documents confidential
4  under the highest designation, "Attorneys' Eyes Only," until a protective order was entered by
5  the Court.  *Id*. at ¶ 12.
6      On November 8, 2010, SCEA sent Plaintiffs a draft based on the Northern District of
7  California's **Patent** Stipulated Protective Order.  Rivas Decl., Ex. J.   On November 10, 2010,
8  Plaintiffs explained in an email communication that given that this case is not a patent case, the
9  parties should adopt the Northern District's Standard Protective Order.  *Id*.  During the parties'
10 meet and confer on November 15, 2010, Plaintiffs reiterated the same.  *Id*.  SCEA refused to
11 agree to the Northern District of California's Standard Protective Order and reiterated its position
12 that it would not produce "confidential" documents until Plaintiffs agreed to SCEA's proposed
13 protective order.  *Id*.

## ARGUMENT

**I.  PLAINTIFFS ARE ENTITLED TO DISCOVERY FROM SCEA'S PARENT COMPANY**

    Under the Federal Rules of Civil Procedure, a party is required to produce documents within its "possession, custody, or control."  *See* Fed. R. Civ. P. 34(a).  Control is defined as "the legal right to obtain documents upon demand."  *See United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO,* 870 F.2d 1450, 1452 (9th Cir.1989); *Hill v Eddie Bauer*, 242 F.R.D. 556, 560 (C.D. Cal. 2007).  Thus, "[a] party responding to a Rule 34 production request ... is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control."  *Eddie Bauer*, 242 F.R.D. at 560 (internal quotations omitted); *A. Farber & Partners, Inc. v. Garber,* 234 F.R.D. 186, 189 (C.D. Cal. 2006).

    A subsidiary that is a party to a federal lawsuit may be required to produce documents that are in the possession of its nonparty parent corporation if the relationship between the

5

PLAINTIFFS' NOTICE OF MOTION & MOTION TO COMPEL; MPA IN SUPPORT THEREOF
CASE NO. CV-10-01811-RS

subsidiary and parent corporation suggests that the subsidiary has legal control of the documents. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999). Control has been found to exist where: (1) the subsidiary was an agent of the parent in the transaction giving rise to the lawsuit; (2) the relationship is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and the documents are helpful for use in litigation; (3) there is access to documents when the need arises in the ordinary course of business; or (4) the subsidiary was the marketer and servicer of the parent's product in the United States. *See, e.g., Gerling Int'l Ins. Co. v. Commissioner*, 839 F.2d 131, 140-41 (3d Cir. 1988) (cited with approval in *In re Citric Acid*, 191 F.3d at 1108); *Camden Iron and Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438, 442 (D.N.J. 1991) ("Evidence considered by the courts [in considering whether a subsidiary has control over documents] includes the degree of ownership and control exercised by the parent over the subsidiary, a showing that the two entities operated as one, demonstrated access to documents in the ordinary course of business, and an agency relationship.").

In their first set of document requests, Plaintiffs sought materials that SCEA indicated would not be in its possession (such as documents related to the reasons for including and subsequently disabling the Other OS feature), but in the possession of its parent company, SCEI, in Japan. As SCEA has produced relatively scant documents until the protective order issues are resolved, Plaintiffs are not in a position to determine where relevant materials may be physically located, or what role SCEA, as opposed to SCEI, had in these issues. Plaintiffs are, however, entitled to production of these and other relevant materials whether they are here or in Japan. One of the key issues in this case will be *why* SCEA/SCEI decided to remove the "other OS" feature since SCEA contends that it was entitled to do so for security reasons under its TOS. *See* Defendant's Motion to Dismiss (Dkt. No. 97) at 22.

In this instance, SCEA was acting as the "agent" of SCEI in the transaction giving rise to the lawsuit: the sale of a PS3 unit and subsequent removal of a core, advertised feature. SCEA is apparently able to produce documents from SCEI, as it proposed to do so but only if Plaintiffs waived any right to name SCEI. Rivas Decl., Ex. M. SCEA's proposal is sufficient to

demonstrate its ability to obtain documents upon demand from its parent, a not uncommon finding in similar cases.  *See, e.g., Choice-Intersil Microsystems, Inc. v. Agere Systems, Inc.*, 224 F.R.D. 471 (N.D. Cal. 2004); *Cooper Industries, Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919 (S.D. N.Y. 1984); *United States v. Faltico,* 586 F.2d 1267, 1270 (8th Cir.1978) (affirming that parent/subsidiary corporate relationship constituted "control" over documents).  Indeed, as the party responsible for the marketing and sales in North America of the PS3 units that SCEI designs and produces, it is only logical that SCEA would have the ability to request documents about this product from SCEI.

This is consistent with similar findings in this District.  In *Choice-Intersil*, Judge Larson ordered an American subsidiary to produce documents held by its German-based parent.  224 F.R.D. 471 (N.D. Cal. 2004).  The Court looked at several factors in finding that the subsidiary had access and control over the documents: the subsidiary was wholly-owned by the parent, the subsidiary would have marketed the parent's product in North America if not for a change in market conditions, the parent and subsidiary shared some databases, and "upon demand, [the subsidiary] was able to obtain high-level documents from" the parent.  *Id.* at 472-73.  The facts in this case closely mirror those in *Choice-Intersil*. SCEA is a subsidiary of SCEI, SCEA markets SCEI's products (including the PS3), and SCEA has the ability to obtain documents from SCEI as evidenced by its proposal.

SCEA's marketing relationship is particularly relevant to this analysis.  When a subsidiary markets the products of its parent, courts have found the subsidiary to control documents related to those products held by the parent corporation.  *See, e.g., Cooper Industries*, 102 F.R.D. at 919-20.  In *Cooper Industries*, a wholly–owned subsidiary was both a marketer and servicer of its parent corporation's products.  *Id.*  The court held the subsidiary had control over the documents requested because:

> The documents plaintiff seeks all relate to the [products] that defendant works with every day; it is inconceivable that defendant would not have access to these documents and the ability to obtain them for its usual business.

7

PLAINTIFFS' NOTICE OF MOTION & MOTION TO COMPEL; MPA IN SUPPORT THEREOF
CASE NO. CV-10-01811-RS

*Cooper Industries*, 102 F.R.D. at 919-920 (internal citations and footnotes omitted). The court continued:

> The documents and records that a corporation requires in the normal course of its business are presumed to be in its control unless the corporation proves otherwise. Any other rule would allow corporations to improperly evade discovery.

*Id.*

SCEA should not be able to evade discovery by arguing that the documents are located in Asia. Notably, this is not the first time that SCEA has been ordered to produce discovery on behalf of its corporate parent, SCEI.[2] In *Microunity Systems Engineering Inc., v. SCEA Computer Entertainment America Inc.*, Case No. 2:05cv505 TJW (E.D. Tex.), the plaintiffs sought to compel SCEA to produce SCEI witnesses for depositions in the United States given that SCEA claimed a lack of knowledge about 30(b)(6) topics (similar to SCEA's claim, for example, that it has little or no relevant information about the addition or removal of the Other OS function). *See* Plaintiffs' Request for Judicial Notice ("RJN") filed concurrently herewith, Ex. 1, 2. The Court ordered SCEA to produce SCEI witnesses in California or pay all related expenses of taking those depositions in Asia. RJN, Ex. 3. Likewise, the fact the SCEI is located in Japan is of no moment. In *Japan Halon Co. v. Great Lakes Chem. Corp.*, 155 F.R.D. 626, 627-29 (N.D. Ind. 1993), the court criticized the party refusing to produce documents in the possession of its parent corporation because it claimed the parent did not legally exercise control over the subsidiary based on Japanese law. The court stated: "The tactics of some counsel in this case have the distinct odor of an effort to prolong the discovery disputes so as to undermine the trial date in this case" and then ordered the subsidiary to produce the documents within the possession of the parent corporation in Japan. *Id.* at 629. Accordingly, SCEA should be ordered to provide relevant discovery from SCEI including the production of documents that are

---

[2] Plaintiffs are not aware if similar orders have been issued in other cases against SCEA as most of these types of discovery decisions are unreported. Given SCEA's role as the US agent and marketer of SCEI's products, however, Plaintiffs would expect that SCEA has produced discovery from SCEI before.

8

PLAINTIFFS' NOTICE OF MOTION & MOTION TO COMPEL; MPA IN SUPPORT THEREOF
CASE NO. CV-10-01811-RS

responsive to Plaintiffs' Document Requests whether such documents are located here or in Japan.

## II. THE NORTHERN DISTRICT OF CALIFORNIA'S STANDARD PROTECTIVE ORDER IS APPROPRIATE FOR THIS CASE

Plaintiffs do not dispute that a protective order is needed to govern the production of confidential information in this case. Plaintiffs do, however, disagree as to what terms should be contained in any protective order. Plaintiffs requested that SCEA agree to the standard protective order for this District. SCEA refused. As the proponent of stricter terms beyond those contained in the model protective order, SCEA should have the burden here to justify any additional layers of protection and should have sought a protective order against such production. *See, e.g., Phoenix Sol'ns. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal. 2008) (noting that "[t]he burden of demonstrating the need for protection from discovery is placed on the party seeking a protective order, not on the party opposing the order"); *Shared Memory Graphics, LLC v. Apple, Inc*., No. C-10-2475 VRW (EMC), 2010 WL 4704420, at *1 (Nov. 12, 2010) (Chen, J.) (same). Plaintiffs seek an order from this Court that requires SCEA to produce, without further delay, documents that have been outstanding since October 8, 2010, subject to Northern District of California's Standard Protective Order.

The Northern District of California offers two standard protective orders which "are provided by the Court as model forms to which counsel may stipulate in a particular case."[3] The Court provides a "standard" protective order and a "patent - highly sensitive" protective order. The patent order is meant to apply to intellectual property cases. This is not a patent case involving SCEA's competitors (such as Microsoft or Nintendo) and highly confidential business secrets that SCEA would not want them to see. Accordingly, there is minimal risk of "misuse of trade secrets by competitors." *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). Nevertheless, SCEA has demanded that Plaintiffs stipulate to the patent

---

[3]http://www.cand.uscourts.gov/cand/form.nsf/7813fd3053452aef88256d4a0058fb31/5e428ee77bf8e03b88256dd3005d9450?OpenDocument

9

PLAINTIFFS' NOTICE OF MOTION & MOTION TO COMPEL; MPA IN SUPPORT THEREOF
CASE NO. CV-10-01811-RS

1 protective order before SCEA will produce *any* confidential materials. *See* Rivas Decl. ¶12, Ex.
2 J.[4]. Under SCEA's proposed order, Plaintiffs are also required to disclose to SCEA any potential
3 consultants or experts to whom Plaintiffs might want to show materials that SCEA has
4 designated as "highly confidential," as well as detail which documents those are. *See id.*, Ex. J
5 (SCEA's Proposed Order) at ¶7.4(a). Further, the named Plaintiffs are not allowed to view
6 highly confidential designated materials. *Id.* at ¶7.3. SCEA also inserted several additional
7 unacceptable provisions, including altering timelines appearing in the model order and restricting
8 statements made in open court. *See, e.g., id.* at ¶¶3.1, 6.3.

9       To justify the provisions in dispute, SCEA must provide case-specific reasoning showing
10 why these provisions are required to avoid harm in this case. *Cf. Beckman Indus. v.*
11 *International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm,
12 unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c)
13 test.") (internal quotation omitted); *see also Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d
14 1122, 1130 (9th Cir. 2003) ("A party asserting good cause bears the burden, for each particular
15 document it seeks to protect, of showing that specific prejudice or harm will result if no
16 protective order is granted") (internal citations omitted). SCEA has not met its burden to justify
17 the onerous terms it has proposed. This Court has recognized that "courts have viewed with
18 disfavor blanket protective orders untethered to the good cause standard." *Medtronic Vascular,*
19 *Inc. v. Abbott Cardiovascular Sys., Inc.*, C-06-1066 PHJ EMC, 2007 WL 4169628, *2. (N.D.
20 Cal. Nov. 20, 2007). Indeed, this Court held in *Medtronic Vascular Inc.* that even if the parties
21 had stipulated to a protective order designating documents as "confidential" and "highly
22 confidential," a party must still meet its burden to show good cause why a document is so

---

[4] Notably, Plaintiffs agreed to abide by the most restrictive terms possible and treat all SCEA documents as "Attorneys Eyes Only" that would not be shared with any outside experts or consultants until this issue was resolved. SCEA refused to agree. Thus, to date, SCEA has only produced publicly available, non-confidential documents to Plaintiffs documents requests served in September 2010.

10
PLAINTIFFS' NOTICE OF MOTION & MOTION TO COMPEL; MPA IN SUPPORT THEREOF
CASE NO. CV-10-01811-RS

1  designated. *Medtronic Vascular Inc.*, 2007 WL 4169628, at *2 (granting defendant's motion to
2  de-designate plaintiff's "confidential documents" due to plaintiff's failure to show good cause).
3    The *only* issue SCEA has raised in its correspondence with Plaintiffs as supporting the
4  need for the "patent" protective order is that at some unspecified future date, SCEA may have to
5  produce allegedly highly confidential "source code" because Plaintiffs assert in their Complaint
6  that alternatives to disabling the "Other OS" function existed. *See* Rivas Decl., Ex. J. This is a
7  red herring. Plaintiffs have *not* requested SCEA's source code. If Plaintiffs decide that they
8  *might* need such code in the future, the standard protective order easily allows for a party to seek
9  modification and Plaintiffs suggested to SCEA that they could address this issue at that time.
10  *See id.*, Exs. J, L. SCEA's protests at this time are simply "broad, conclusory allegations of
11  harm." *Medtronic Vascular, Inc.*, 2007 WL 4169628, at *2 (*citing Charles O. Bradley Trust v.*
12  *Zenith Capital LLC,* No. C-04-2239 JSW (EMC), 2006 WL 798991, *1 (N.D.Cal. Mar. 24,
13  2006).
14    As Plaintiffs' experts and consultants will be bound to use any confidential discovery
15  only for purposes of this litigation pursuant to the Northern District's Standard Stipulated
16  Protective Order, there is also no need for SCEA to have advance knowledge of which experts
17  Plaintiffs have retained, what otherwise undisclosed consultants Plaintiffs might use, and which
18  documents Plaintiffs intend to show them in preparation of Plaintiffs' case. *Miller v. NTN*
19  *Communs., Inc.*, No. 97cv1116-BTM (JAH), 1998 U.S. Dist. LEXIS 13753, *8 (S.D. Cal. July
20  23, 1998) (rejecting request for protective order requiring prior-notification provision because
21  "[d]isclosure of the identity of plaintiffs' potential non-testifying experts may lessen the number
22  of candid opinions available as well as the number of able consultants willing to discuss" the
23  case).[5]

---

[5] Plaintiffs also requested that SCEA stipulate to a standard order covering expert disclosures. SCEA also refused. Nevertheless, the amendments to the Federal Rules which went into effect December 1, 2010, address this issue and protect communications and drafts shared between counsel and experts. Fed. R. Civ. P. 23.

11

PLAINTIFFS' NOTICE OF MOTION & MOTION TO COMPEL; MPA IN SUPPORT
THEREOF
CASE NO. CV-10-01811-RS

1   Plaintiffs will be prejudiced if they are required to disclose experts prematurely (and, in
2   particular, the documents these experts viewed) and if they are required to disclose non-testifying
3   consultants at all.  It may be appropriate to impose the expert disclosure and approval procedures
4   in contentious IP litigation where competing companies' highly confidential, technological trade
5   secrets will be exposed, but that is simply not the case in this straightforward, consumer class
6   action based on SCEA's misrepresentations.  SCEA has delayed its discovery obligations long
7   enough and the provisions related to disclosure of confidential information in this District's
8   standard protective order more than adequately addresses any of SCEA's concerns.  *See Rambus,*
9   *Inc. v. Nvidia Corp.,* C 08-3343 SI, 2009 WL 982123, *1 (N.D. Cal. Apr. 13, 2009) (in order to
10  prevent delay in entering protective order, court ordered the parties to file a proposed protective
11  order based on the model protective order without any of defendant's proposed changes).
12  Plaintiffs respectfully request that the Court compel SCEA to produce confidential
13  materials subject to the Northern District of California's Standard Protective Order.

## CONCLUSION

15  Based on the foregoing, Plaintiffs respectfully request that the Court grant this motion.

16  Dated:  December 15, 2010                Respectfully Submitted,

**CALVO & CLARK, LLP**

/s/ James A. Quadra
James A. Quadra
Rebecca Coll
One Lombard Street, Second Floor
San Francisco, California 94111
Telephone: 415-374-8370
Facsimile: 415-374-8373

Dated: December 15, 2010                **FINKELSTEIN THOMPSON LLP**

/s/ Rosemary M. Rivas
Rosemary M. Rivas
Tracy Tien
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: 415-398-8700

12
PLAINTIFFS' NOTICE OF MOTION & MOTION TO COMPEL; MPA IN SUPPORT
THEREOF
CASE NO. CV-10-01811-RS

|   |   |   |
|---|---|---|
| 1 |  | Facsimile: 415-398-8704 |
| 2 |  | Douglas G. Thompson |
| 3 |  | **FINKELSTEIN THOMPSON LLP** |
|   |  | 1050 30th Street, NW |
| 4 |  | Washington, DC 20007 |
|   |  | Telephone: 202-337-8000 |
| 5 |  | Facsimile: 202-337-8090 |
| 6 | Dated: December 15, 2010 | **HAUSFELD LLP** |
| 7 |  | /s/ James Pizzirusso |
| 8 |  | James Pizzirusso (*pro hac vice*) |
| 9 |  | 1700 K St., NW, Suite 650 |
|   |  | Washington, DC 20006 |
| 10 |  | Telephone: 202-540-7200 |
| 11 |  | Facsimile: 202-540-7201 |
| 12 |  | Michael P. Lehman |
|   |  | **HAUSFELD LLP** |
| 13 |  | 44 Montgomery Street, Suite 3400 |
|   |  | San Francisco, California 94104 |
| 14 |  | Telephone: 415-633-1908 |
| 15 |  | Facsimile: 415-358-4980 |
| 16 |  | *Co-Interim Lead Counsel for Plaintiffs* |
| 17 |  | Bruce L. Simon |
| 18 |  | **PEARSON, SIMON, WARSHAW & PENNY, LLP** |
| 19 |  | 44 Montgomery Street, Suite 2450 |
|   |  | San Francisco, California 94104 |
| 20 |  | Telephone: 415-433-9000 |
|   |  | Facsimile: 415-433-9008 |
| 21 |  |  |
| 22 |  | Daniel L. Warshaw |
|   |  | **PEARSON, SIMON, WARSHAW &** |
| 23 |  | **PENNY, LLP** |
|   |  | 15165 Ventura Boulevard, Suite 400 |
| 24 |  | Sherman Oaks, California 91403 |
|   |  | Telephone: 818-788-8300 |
| 25 |  | Facsimile: 818-788-8104 |
| 26 |  |  |
|   |  | Joseph G. Sauder |
| 27 |  | Matthew D. Schelkopf |
|   |  | Benjamin F. Johns |
| 28 |  |  |

13

PLAINTIFFS' NOTICE OF MOTION & MOTION TO COMPEL; MPA IN SUPPORT
THEREOF
CASE NO. CV-10-01811-RS

**CHIMICLES & TIKELIS LLP**
361 W. Lancaster Ave.
Haverford, Pennsylvania 19041
Telephone: 610-642-8500
Facsimile: 610-649-3633

Ralph B. Kalfayan
**KRAUSE, KALFAYAN, BENNICK & SLAVENS, LLP**
625 Broadway, Suite 635
San Diego, California  92101
Telephone: 619-232-0331
Facsimile: 619-232-4019

Jeffrey Carton (*pro hac vice*)
D. Greg Blankinship (*pro hac vice*)
**MEISELMAN, DENLEA, PACKMAN, CARTON & EBERZ LLP**
1311 Mamaroneck Avenue
White Plains, New York 10605
Telephone: 914-517-5055
Facsimile: 914-517-5055

John R. Fabry
**BAILEY & GALYEN**
18333 Egret Bay Blvd., Suite 444
Houston, Texas 77058
Telephone: 281-335-7744
Facsimile: 281-335-5871

*Counsel for Plaintiffs*

I, Rosemary M. Rivas, am the ECF user whose ID and password are being used to file this MOTION FOR ORDER: (1) COMPELLING DISCOVERY FROM DEFENDANT SCEA'S PARENT COMPANY; AND (2) ENTERING THE NORTHERN DISTRICT OF CALIFORNIA'S STANDARD STIPULATED PROTECTIVE ORDER.  In compliance with General Order 45, X.B., I hereby attest that James A. Quadra and James Pizzirusso have concurred in this filing.