1  LUANNE SACKS, Bar No. 120811
   luanne.sacks@dlapiper.com
2  CARTER W. OTT, Bar No. 221660
   carter.ott@dlapiper.com
3  **DLA PIPER LLP (US)**
   555 Mission Street, Suite 2400
4  San Francisco, CA  94105
   Tel:  415.836.2500
5  Fax:  415.836.2501

6  Attorneys for Defendant
   SONY COMPUTER ENTERTAINMENT
7  AMERICA LLC (erroneously sued as "Sony
   Computer Entertainment America Inc.")

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12

13
    In re SONY PS3 "OTHER OS"          CASE NO.  3:10-CV-01811 RS (EMC)
14  LITIGATION
                                        **DEFENDANT'S OPPOSITION TO**
15                                      **PLAINTIFFS' MOTION TO COMPEL**

16                                      Date:        February 9, 2011
                                        Time:        10:30 a.m.
17                                      Judge:       Hon. Edward M. Chen
                                        Courtroom:  C, 15th Floor
18

19

20

21

22

23

24

25

26

27

28

DLA PIPER LLP (US)

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .......................................................................................................... 1

II.  CLASS REPRESENTATIVES HAVE FAILED TO SHOW THAT SCEA
     CONTROLS DOCUMENTS POSSESSED BY SCEI .......................................................... 2

     A.   Class Representatives Misstate The Factual Background ..................................... 2

     B.   Relevant Legal Standard ..................................................................................... 4

     C.   Class Representatives Have Not Established That SCEA Has Constructive
          Control Over SCEI Documents ............................................................................ 5

          1.   SCEA's Business Activities Do Not Demonstrate Constructive
               Control Over SCEI Documents .................................................................. 5

          2.   Class Representatives Have Failed To Show That SCEA Has
               Unfettered Access To SCEI Documents ..................................................... 8

          3.   Class Representatives' Assertion that SCEA Acted as SCEI's Agent
               in the Relevant "Transaction" Does Not Assist Them ............................. 10

III. CLASS REPRESENTATIVES' PROPOSED PROTECTIVE ORDER DOES
     NOT AFFORD SCEA ADEQUATE PROTECTION ....................................................... 11

     A.   Class Representatives' Demanded Timing For Production Is Inappropriate ........ 18

IV.  CONCLUSION ........................................................................................................... 19

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

5

*A. Hirsh, Inc. v. United States,*
    657 F. Supp. 1297 (C.I.T. 1987) ........................................................................................ 15

6

7

*Addamax Corp. v. Open Software Found., Inc.,*
    148 F.R.D. 462 (D. Mass. 1993) .......................................................................................... 5

8

*Bare Escentuals Beauty, Inc. v. Costco Wholesale Corp.,*
    2007 WL 4357672 (S.D. Cal. Dec. 11, 2007) .................................................................... 16

9

10

*Beckman Indus., Inc. v. Int'l Ins. Co.,*
    966 F.2d 470 (9th Cir. 1992) .............................................................................................. 14

11

12

*Brown Bag Software v. Symantec Corp.,*
    960 F.2d 1465, 1470-71 (9th Cir. 1992) ....................................................................... 14, 15

13

14

*Camden Iron & Metal, Inc. v. Marubeni Am. Corp.,*
    138 F.R.D. 438 (D.N.J. 1991) ...................................................................................... 5, 6, 8

15

*Charles O. Bradley Trust v. Zenith Capital LLC,*
    2006 WL 798991 (N.D. Cal. March 24, 2006) ................................................................... 14

16

17

*Choice-Intersil Microsytems, Inc. v. Agere Sys., Inc.,*
    224 F.R.D. 471 (N.D. Cal. Sept. 30, 2004) ....................................................................... 10

18

*Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.,*
    107 F.R.D. 288 (D. Del. 1985) ........................................................................................... 17

19

20

*Computer Sciences Corp. v. Computer Associates, Int'l,*
    1999 WL 675446 (C.D. Cal. Aug. 12, 1999) ..................................................................... 14

21

22

*Cooper Industries, Inc. v. British Aerospace, Inc.,*
    102 F.R.D. 918 (S.D.N.Y. 1984) ...................................................................................... 5, 6

23

*Davanzia, S.L. v. Laserscope, Inc.,*
    2008 WL 509435 (N.D. Cal. Feb. 22, 2008) ....................................................................... 4

24

25

*E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.,*
    219 U.S.P.Q. 37 (D. Del. 1982) ......................................................................................... 15

26

27

*Foltz v. State Farm Mut. Auto. Ins. Co.,*
    331 F.3d 1122 (9th Cir. 2003) ............................................................................................ 14

28

-ii-

**TABLE OF AUTHORITIES**
(continued)

Page

*Gillard v. Boulder Valley School Dist.*,
196 F.R.D. 382 (D. Colo. 2000)..................................................................................... 14

*Glaxo Inc. v. Boehringer Ingelheim Corp.*,
40 U.S.P.Q. 2d 1848 ......................................................................................................... 9

*Glenz v. Sharp Elec. Corp.*,
2010 WL 2758729 (D.N.J. July 12, 2010)...................................................................... 7

*Hechavarria v. City and County of San Francisco*,
2010 WL 4937314 (N.D. Cal. Nov. 30, 2010)............................................................... 16

*Honda Lease Trust v. Middlesex Mut. Assurance Co.*,
2008 WL 3285242 (D. Conn. Aug. 7, 2008) .................................................................. 9

*Hunter Douglas, Inc. v. Comfortex Corp.*,
1999 WL 14007 (S.D.N.Y. Jan. 11, 1999)................................................................. 5, 7

*In re Citric Acid Litigation*,
191 F.3d 1090 (9th Cir. 1999)...................................................................................... 10

*In the Matter of Certain Optical Disk Controller Chips & Chipsets & Prods. Containing Same*,
2004 WL 2311060 (U.S.I.T.C. Oct. 5, 2004) .............................................................. 6

*In re San Juan DePont Plaza Hotel Fire Litig.*,
121 F.R.D. 147 ............................................................................................................. 17

*In re Subpoena To Huawei Tech. Co. Ltd.*,
720 F. Supp. 2d 969 (N.D. Ill. June 2, 2010)...................................................... 4, 5, 9

*In re Uranium Antitrust Litig.*,
480 F. Supp. 1138 (N.D. Ill. 1979) ............................................................................. 4

*Intel Corp. v. Via Tech., Inc.*,
198 F.R.D. 525 (N.D. Cal. Oct. 11, 2000) .................................................................. 15

*Japan Halon Co., Ltd. v. Great Lakes Chemical Corporation*,
155 F.R.D 626 (N.D. Ind. 1993) .................................................................................. 8

*Kroll v. Kaiser Foundation Health Plan Long Term Disability Plan*,
2010 WL 1233871 (N.D. Cal. March 26, 2010) .......................................................... 16

*Layne Christensen Co. v. Purolite Co.*,
--- F.R.D. ----, 2010 WL 3001744 (D. Kan. July 28, 2010) ...................................... 19

**TABLE OF AUTHORITIES**
(continued)

Page

*LG Display Co., Ltd. v. Chi Mei Opto. Corp.*,
  2009 WL 223585 (S.D. Cal. Jan. 28, 2009) ............................................................ 4

*Linde v. Arab Bank, PLC*,
  262 F.R.D. 136 (E.D.N.Y. 2009) ...................................................................... 4, 7

*Medtronic Vascular, Inc. v. Abbott Cardio. Sys., Inc.*,
  2007 WL 4169628 (N.D. Cal. Nov. 20, 2007) ........................................................ 14

*Miller v. NTN Communications*,
  1998 U.S. Dist. LEXIS 13753 (S.D. Cal. 1998) ..................................................... 18

*Mixt Greens v. Sprout Café*,
  2010 WL 2555753 (N.D. Cal. June 21, 2010) ......................................................... 16

*Newton Research Partners, LP v. Shell Exploration & Prod. Co.*,
  2007 WL 4895911 (N.D. Tex. Jan. 29, 2007) ........................................................ 17

*Nygren v. Hewlett-Packard Co.*,
  2008 WL 2610558 (N.D. Cal. July 1, 2008) .......................................................... 19

*Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*,
  121 F.R.D. 264 (M.D.N.C. 1988) ...................................................................... 15

*Phoenix Solutions Inc. v. Wells Faro Bank, N.A.*,
  254 F.R.D. 568 (N.D. Cal. 2008) ...................................................................... 17

*Pitney Bowes, Inc. v. Kern Int'l, Inc.*,
  239 F.R.D. 62 (D. Conn. 2006) ................................................................. 4, 5, 6, 7, 9

*Playboy Entm't Group, Inc. v. U.S.*,
  1997 WL 873550 (D. Del. Dec. 11, 1997) .............................................................. 4

*Quality Inves. Prop. Santa Clara, LLC v. Serrano Electric, Inc.*,
  2010 WL 2889178 (N.D. Cal. 2010) ......................................................... 14, 15, 16, 17

*Rambus, Inc. v. Nvidia Corp.*,
  2009 WL 982123 (N.D. Cal. April 23, 2009) ......................................................... 18

*S.P.A. v. Krauss-Maffei Corp.*,
  113 F.R.D. 127 (D. Del. 1986) .......................................................................... 5

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984) ..................................................................................... 15

1

# TABLE OF AUTHORITIES
(continued)

2

**Page**

3

*Stella v. LVMH Perfumes and Cosmetics USA*,
4
    2009 WL 780890 (N.D. Ill. March 23, 2009) ..................................................... 5, 10

5

*Tessera, Inc. v. Micron Tech.*,
    2006 WL 733498 (N.D. Cal. March 22, 2006) .................................................... 4, 7, 8, 10, 11

6

*The Beam Sys., Inc. v. Checkpoint Sys., Inc.*,
7
    1997 WL 364081 (C.D. Cal. Feb. 6, 1997) ........................................................ 15, 17

8

*Third Wave Tech., Inc. v. Stratagene Corp.*,
    405 F. Supp. 2d 991 (W.D. Wis. 2005) .............................................................. 17

9

10

*U.S. v. Int'l Union of Petrol. and Indus. Workers, AFL-CIO*,
    870 F.2d 1450 (9th Cir. 1989) ........................................................................... 4, 8

11

*United States Int'l Trade Comm. v. ASAT, Inc.*,
12
    411 F.3d 245 (D.D.C. 2005) .............................................................................. 6, 7, 9

13

*United States v. Faltico*,
    586 F.2d 1267 (8th Cir. 1978) ........................................................................... 10

14

*Zenith Elec. LLC v. Vizio, Inc.*,
15
    2009 WL 3094889 (S.D.N.Y. Sept. 25, 2009) ................................................... 5, 9

16

17

**STATUTES**

18

Cal. Civil Code § 2295 ........................................................................................... 10

19

20

**RULES**

21

Fed.R.Civ.P. 26(b)(1) ............................................................................................. 15

22

Fed.R.Civ.P. 26(c) .................................................................................................. 15, 17

23

Fed. R. Civ. P. 26(c)(7) .......................................................................................... 15

24

Fed. R. Civ. P. 30(b)(6) .......................................................................................... 9, 11

25

Fed. R. Civ. P 34 .................................................................................................... 4

26

Fed. R. Civ. P. 45 ................................................................................................... 4

27

28

          -v-

# TABLE OF AUTHORITIES
(continued)

**Page**

**OTHER AUTHORITIES**

Manual for Complex Litigation (4th 2004), § 11.432....................................................................... 17

1   **I.     INTRODUCTION**

2          In the guise of a "motion to compel" responses from defendant Sony Computer

3   Entertainment America LLC ("SCEA") to their First Set Requests for Production of Documents

4   ("RFPs"), plaintiffs Anthony Ventura, Jonathan Huber, Antal Herz, Jason Baker, and Elton

5   Stovell (the "Class Representatives") ask the Court to enter the following orders:  (1) that a non-

6   party Japanese corporation – Sony Computer Entertainment Inc. ("SCEI") – produce documents

7   responsive to the RFPs because it designed the PlayStation®3 console (the "PS3") and was

8   previously the corporate parent of SCEA; (2) that this District's "standard" model protective

9   order should be entered by this Court, rather than its "Stipulated Protective Order For Litigation

10  Involving Patents, Highly Sensitive Confidential Information And/Or Trade Secrets" model order

11  as proposed by SCEA; and (3) that SCEA produce all documents it has "withheld as confidential"

12  not more than ten days following this Court's order.

13         The Class Representatives' Motion should be denied on each of these three issues.  They

14  have failed to carry their burden to show that SCEA has the requisite control over documents in

15  SCEI's possession to warrant an order requiring that SCEI produce the documents sought by the

16  Class Representatives.  Their request for entry of the Court's "standard" model protective order

17  ignores completely the highly sensitive, trade secret and potential patent implications of the

18  documents they demand or that SCEA may offer in its defense.  Finally, their request for

19  production ten days after this Court's order of documents "withheld as confidential" fails because

20  the Class Representatives never informed SCEA of their intent to seek such immediate production

21  in the course of their meet and confer obligations and the request flies in the face of the ongoing

22  negotiations between the parties regarding electronic document production parameters.

23         On these bases, SCEA respectfully requests that the Court enter an order denying Class

24  Representatives' Motion to Compel.[1]

25

26  _____

    [1] The present motion is part of a complex discovery dispute between the parties, which they
27  agreed would be subject to a stipulated briefing and hearing schedule.  In the interests of
    efficiency and economy, SCEA references, without repeating, the factual background and the
28  recitation of the legal standard set forth in its Motion to Compel, filed on December 15, 2010.
    SCEA's Motion to Compel (Docket #116), 3:2-9:2.

## II.   CLASS REPRESENTATIVES HAVE FAILED TO SHOW THAT SCEA CONTROLS DOCUMENTS POSSESSED BY SCEI

### A.   Class Representatives Misstate The Factual Background

This dispute regarding SCEA's production of SCEI's documents commenced with Class Representatives' document demands.  Class Representatives demanded that SCEA produce responsive documents in its control as well as in the control of many of its affiliated entities, including its "parent" company which Class Representatives contended was SCEI.[2]  SCEA responded, however, that it would only produce documents in its possession, custody, and control.[3]

SCEA has not globally declined to respond to RFPs on the basis that all possible responsive documents are possessed by SCEI, as Class Representatives assert in their Motion.  To the contrary, SCEA has repeatedly confirmed that it will produce documents responsive to the RFPs in its possession, custody, or control, including any documents it received from SCEI.[4]  SCEA appropriately objected to Class Representatives' efforts to impose on it the obligation to obtain and produce documents beyond its control, *i.e.*, SCEI documents not shared with SCEA in the ordinary course of business, and advised Class Representatives that it had no ability to demand production of such documents from its former parent.[5]

Specifically, on October 29, 2010, the parties met and conferred regarding SCEA's responses and objections to the RFPs.  At no time did SCEA state, as the Class Representatives assert, that "it did not have documents responsive to Document Request Nos. 5-7, or 10-13."[6]  To the contrary, it agreed to produce those documents responsive to these requests in its possession, custody, or control:

---

[2] Rivas Decl., (Docket #114), Ex. B (Class Reps' RFPs), 3:19-22.  It should be noted that, as of April 1, 2010, SCEI was no longer SCEA's corporate parent.
[3] Rivas Decl., (Docket #114), Ex. C (Responses to Class Reps' RFPs), 4:20-26.
[4] Declaration of Luanne Sacks ISO Opposition to Motion Compel and Motion for Protective Order ("Sacks Decl."), ¶ 2.  In fact, SCEA would have already produced many of these documents but for Class Representatives' refusal to agree to a protective order that affords SCEA's commercially sensitive information adequate protections.  *See* Section III, *infra*; *see* Class Reps' Motion to Compel (Docket #112), 2:15-17.
[5] Sacks Decl., ¶ 3.
[6] Sacks Decl., ¶¶ 3-5, Ex. A; Class Reps' Motion to Compel (Docket #112), 3:23-24.

**Request for Production No. 5:  All DOCUMENTS, including but not limited to any studies, focus groups, statistics or polls, that REFER OR RELATE TO YOUR decision to include the OTHER OS feature on the PS3.**

**Request for Production No. 6:  All DOCUMENTS, including but not limited to any studies, focus groups, statistics or polls, that REFER OR RELATE TO YOUR decision to disable or remove the OTHER OS feature on the PS3, or UPDATE 3.21.**

**Request for Production No. 7:  All DOCUMENTS, including but not limited to any studies, focus groups, statistics or polls, that REFER OR RELATE TO consumers' interest in purchasing a video game console with the OTHER OS feature.**

**Request for Production No. 10:  All DOCUMENTS sufficient to determine the number of PS3 purchasers in the United States or its territories that utilized the OTHER OS feature.**

**Request for Production No. 11:  All DOCUMENTS, including but not limited to any studies, focus groups, statistics or polls, that REFER OR RELATE TO the utilization or popularity of the OTHER OS feature on the PS3.**

**Request for Production No. 12:  All DOCUMENTS, including but not limited to any studies, focus groups, statistics or polls, that REFER OR RELATE TO the reasons for including the OTHER OS feature on the PS3.**

**Request for Production No. 13:  All DOCUMENTS, including but not limited to any studies, focus groups, statistics or polls, that REFER OR RELATE TO the reasons for disabling the OTHER OS feature on the PS3.[7]**

In the course of multiple meet and confer discussions, the parties discussed possible terms under which SCEA would secure SCEI's agreement to voluntarily produce discovery in this case, including Class Representatives' promise not to sue SCEI if such voluntary discovery was afforded.[8]  Ultimately, SCEA prepared a written stipulation reciting the proposed terms – but in their pending motion to compel Class Representatives grossly misstate the proposed stipulation and its import.  The Class Representatives threatened to sue SCEI, and then asked if SCEA would attempt to secure a compromise regarding production of discovery from SCEI to avoid that result.  After consultation with SCEI, SCEA offered to stipulate that SCEI would produce documents and witnesses in this litigation voluntarily, and not subject to the strictures of the Hague Convention (which would otherwise apply even if SCEI was a named party) in exchange for Class Representatives' agreement not to later name SCEI as a defendant.[9]  Class Representatives

---

[7] Rivas Decl., (Docket #114), Ex. B (Class Reps' RFPs), 7:19-8:21.
[8] Sacks Decl., ¶¶ 6-7.
[9] Sacks Decl., ¶¶ 6-8.

1    rejected this proposal[10] and instead of making good on their threat to sue SCEI (which would

2    have presented the complicated discovery protocols applicable to a Japanese corporation) they

3    filed the pending motion to compel contending that SCEA's proffered compromise constitutes an

4    admission of its control of SCEI's documents and information.

5        **B.    Relevant Legal Standard**

6        A party's obligation to produce documents requested by an adversary is limited by Rule

7    34 "to those documents that 'are in the possession, custody or control of the party upon whom the

8    request is served....'"[11]  Here, the Class Representatives seek documents they concede are in the

9    possession of SCEI, which they contend is the parent of SCEA.[12]  However, the parent subsidiary

10   relationship is insufficient to demonstrate the requisite control over requested documents: "[a]

11   subsidiary will be deemed to have possession, custody or control of documents held by its parent

12   company only in certain circumstances."[13]

13       "The party seeking production of the documents bears the burden of proving that the

14   opposing party has such control."[14]  And, "[t]he determination of whether [SCEA] has 'control'

15   over the documents sought by [the Class Representatives] is a 'very fact specific' inquiry."[15]

16   "While 'the particular *form* of the corporate relationship does not govern whether a party controls

17   _____

18   [10] Sacks Decl., ¶ 8, Ex. B.
     [11] *LG Display Co., Ltd. v. Chi Mei Opto. Corp.*, 2009 WL 223585, *3 (S.D. Cal. Jan. 28, 2009).
19   "Control is defined as the legal right to obtain documents upon demand."  *U.S. v. Int'l Union of
     Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989); *Tessera, Inc. v.
20   Micron Tech.*, 2006 WL 733498, *5 (N.D. Cal. March 22, 2006).  Because the definition of
     "control," in Rule 34 and 45, is the same, the court may consider case law interpreting
21   "possession, custody, or control" in cases regarding Rule 34 as well as Rule 45.  *In re Subpoena
     To Huawei Tech. Co. Ltd.*, 720 F. Supp. 2d 969, 977 fn. 10 (N.D. Ill. June 2, 2010); *see also
22   Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 141 fn. 2 (E.D.N.Y. 2009) (the meaning of "control"
     is the same under Rules 34 and 45).
23   [12] Class Reps' Motion to Compel (Docket #112), 5:15-9:2.  Making argument and resolution
     regarding its motion more difficult, Class Representatives either fail or are unable to explain
24   which documents they seek from SCEI.  Presumably, they seek, at least, every document
     responsive to their requests in SCEI's possession, custody, and control.  *See* Rivas Decl. (Docket
25   #114), Ex. B.
     [13] *LG Display Co.*, 2009 WL 223585, at *3 (citing *In re Uranium Antitrust Litig.*, 480 F. Supp.
26   1138, 1152-53 (N.D. Ill. 1979)).
     [14] *Int'l Union of Petrol.*, 870 F.2d at 1452; *Tessera*, 2006 WL 733498, at *5.
27   [15] *Pitney Bowes, Inc. v. Kern Int'l, Inc.*, 239 F.R.D. 62, 66 (D. Conn. 2006) (quoting *Playboy
     Entm't Group, Inc. v. U.S.*, No. Civ. A. 96-94-JJF, 1997 WL 873550, *3 (D. Del. Dec. 11, 1997));
28   *see also Davanzia, S.L. v. Laserscope, Inc.*, 2008 WL 509435, **1-2 (N.D. Cal. Feb. 22, 2008);
     *Tessera*, 2006 WL 733498, at **4-5.

documents,' (citation omitted) the 'nature of the transactional relationship between the subsidiary and parent…is pivotal.'"[16]  "'[I]n parent/subsidiary situations, the determination of control turns upon whether the intracorporate relationship establishes some legal right, authority *or* ability to obtain the requested documents on demand.'"[17]  "Whether a domestic subsidiary has control over documents in the possession of a foreign parent is a question that courts resolve by examining the 'closeness of the relationship between the parties.'"[18]  "The critical inquiry is whether the subsidiary can 'exercise custody and control over the documents' requested."[19]

### C.   Class Representatives Have Not Established That SCEA Has Constructive Control Over SCEI Documents

#### 1.   SCEA's Business Activities Do Not Demonstrate Constructive Control Over SCEI Documents

Class Representatives assert that "it is only logical" that SCEA would have constructive control over SCEI's documents because SCEA is "the party responsible for the marketing and sales in North America of the PS3 units that SCEI designs and produces."[20]  This argument has been rejected consistently.  Indeed, the case law cited by the Class Representatives illustrates and confirms SCEA's position, *Cooper Industries, Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918 (S.D.N.Y. 1984).[21]

In *Cooper Industries*, the wholly-owned subsidiary was the distributor and servicer of its parent company's airplanes in the United States, and the subpoenaed documents were service manuals and blueprints related to those airplanes.[22]  Because the subpoenaed documents "relate[d] to the planes that [the subsidiary] work[ed] with every day," the district court found it

---

[16] *Pitney Bowes*, 239 F.R.D. at 66 (quoting *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 131 (D. Del. 1986) and *Addamax Corp. v. Open Software Found., Inc.*, 148 F.R.D. 462, 467 (D. Mass. 1993)); *Zenith Elec. LLC v. Vizio, Inc.*, 2009 WL 3094889, *1 (S.D.N.Y. Sept. 25, 2009) ("In deciding whether a [] domestic corporation can be compelled to produce documents held by a foreign affiliate, a court must 'consider the nature of the relationship between the corporation and its affiliate.'") (quoting *Hunter Douglas, Inc. v. Comfortex Corp.*, 1999 WL 14007, *3 (S.D.N.Y. Jan. 11, 1999)).
[17] *Pitney Bowes*, 239 F.R.D. at 67 (quoting *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 442 (D.N.J. 1991)).
[18] *In re Subpoena To Huawei Tech. Co. Ltd.*, 720 F. Supp. 2d at 976 (quoting *Stella v. LVMH Perfumes and Cosmetics USA*, 2009 WL 780890, *2 (N.D. Ill. March 23, 2009).
[19] *Zenith Elec. LLC*, 2009 WL 3094889, at *1 (quoting *Hunter Douglas*, 1999 WL 14007, at *3).
[20] Class Reps' Motion to Compel (Docket #112), 7:5-8 and 7:19-8:6, and 6:6-7.
[21] Class Reps' Motion to Compel (Docket #112), 7:19-8:6).
[22] 102 F.R.D. at 919.

1   "inconceivable that [the subsidiary] would not have access to these documents and the ability to

2   obtain them for its usual business."[23]  Other courts have made clear that the result in *Cooper*

3   *Industries* regarding the subsidiary's control of its parent's documents as a result of its

4   distribution/service role is the exception, not the rule: "it would be 'impracticable' to hold that

5   'all wholly owned subsidiaries engaged in sales and servicing' were 'controlling their parent

6   company's documents.'"[24]  "Rather, 'there must be a nexus between the [documents sought] and

7   [the party's] relationship with its parent companies, taking into account, among other things, [the

8   party's] business responsibilities.'"[25]

9          The Class Representatives' arguments sound remarkably like those made in *U.S. Int'l*

10   *Trade Commission v. ASAT, Inc.*, 411 F.3d 245 (D.C. Cir. 2005), *i.e.*, that the defendant's

11   "principle activities" were the sales and marketing of the parent's product.[26]  The District of

12   Columbia Circuit Court concluded that was not enough:

13          [t]he record only vaguely indicates that [defendant's] 'principle activities' are
         'sales, marketing and customer services,' and it does not provide any context or
14          explanation for why [defendant] would have access to or even need documents
         relating to [the matter underlying the lawsuit].  Simply because the [defendant]
15          share[s] some documents during the ordinary course of business is insufficient to
         deem [it] has having control over the documents underlying [the matter at
16          issue].[27]

17   That court's holding is equally applicable here: "It is quite conceivable that [SCEA] does not

18   have routine access to these documents because they do not seem to relate directly to its principal

19   activities."[28]  Thus, "merely being a 'sales and service' subsidiary does not establish the

20   subsidiary's control over documents and information in the parent's possession."[29]

21          Similarly, in *Pitney Bowes*, the defendant was "a wholly owned subsidiary" of the source

22   of the documents and "operat[ed] as the exclusive seller of [the parent corporation's] products in

23

---

24   [23] *Id.* at 919-20.
25   [24] *Pitney Bowes*, 239 F.R.D. at 67 (quoting *United States Int'l Trade Comm. v. ASAT, Inc.*, 411
     F.3d 245, 255) (D.D.C. 2005)).
     [25] *Id.* at 67 (quoting *ASAT, Inc.*, 411 F.3d 245, 255) (D.D.C. 2005)).
26   [26] *ASAT, Inc.*, 411 F.3d at 255.
     [27] *Id.* (citing *Camden*, 138 F.R.D. at 442).
27   [28] *Id.*
     [29] *Id.* (citing *In the Matter of Certain Optical Disk Controller Chips & Chipsets & Prods.*
28   *Containing Same*, 2004 WL 2311060 (U.S.I.T.C. Oct. 5, 2004)).

the United States."[30]  The plaintiff claimed the defendant had received documents from its parent, including technical drawings, for use in its litigation defense and to respond to customer inquiries.[31]  But the court concluded that the plaintiff had "failed to satisfy its burden of establishing that the documents are in the 'control' of [the defendant], as plaintiff has not offered evidence that these documents are necessary to the business of [the defendant] or that the requested documents are produced in the normal course of its business."[32]

Indeed, Class Representatives' assertion – that SCEA must necessarily have access to all of SCEI's documents simply because their businesses relate to the same product – is mere speculation and unsupported by the law.[33]  "[Class Representatives] provide no similar basis as to why it would be inconceivable for [SCEA] to lack control over the 'design schematics and other core technical documents' when [SCEA] 'appears to be more like a marketing and distributing entity.'"[34]

In *Tessera*, this Court rejected a similar assertion of control by a subsidiary.[35]  The *Tessera* court acknowledged that the "Korean parent company own[ed] 96.7 percent of the [defendant] U.S. subsidiary," the two companies were part of a "global sales, marketing and distribution network" and had "undertaken joint efforts in research and development" regarding the matters at issue in the litigation, and the companies had "overlapping directors and share[d] counsel."  Nonetheless, it concluded that the plaintiffs had failed to make any "specific showing that [the U.S. subsidiary had] the legal right to obtain any" of the documents demanded.[36]  As the *Tessera* court explained, "[c]ontrol must be firmly placed in reality, not in an esoteric concept such as 'inherent relationship.'"[37]

---

[30] 239 F.R.D. at 67.
[31] *Id.* at 68.
[32] *Id.* at 69.
[33] *See ASAT, Inc.*, 411 F.3d at 255-56 ("this conclusion stands for the untenable position that any subsidiary whose business life may be threatened has the ability to control its parent's documents, and it appears to be based on pure speculation without support in the record.").
[34] *Glenz v. Sharp Elec. Corp.*, 2010 WL 2758729, *3 (D.N.J. July 12, 2010); *see also Linde*, 262 F.R.D. at 142 ("There is no evidence to indicate that the documents sought 'flow[ed] freely' between subsidiary and parent.") (quoting *Hunter Douglas*, 1999 WL 14007, at *3).
[35] No. C06-80024MISC-JW (PVT), 2006 WL 733498 (N.D. Cal. March 22, 2006).
[36] *Id.* at *6.
[37] *Id.* (quoting *Int'l Union of Petrol.*, 870 F.2d at 1453-54).

1    These decisions also confirm that Class Representatives' reliance on *Camden Iron* is

2    misplaced and factually inapposite.[38]  The *Camden Iron* plaintiff demonstrated that the defendant

3    had "easy and customary access to the [parent corporation's] documents involving th[e]

4    transaction" at issue, that it had "the ability to obtain such documents from [the parent

5    corporation] for its usual business needs," and that the defendant and parent "acted in th[e]

6    transaction [at issue] 'as one.'"  Specifically, the defendant actively worked with the parent in the

7    negotiations related to the underlying transaction, exchanged documents in the course of those

8    negotiations and in the "normal course of business" with the parent, and shared profits related to

9    the transaction with the parent.[39]

> ### 2.    Class Representatives Have Failed To Show That SCEA Has Unfettered Access To SCEI Documents

12    Because they have no actual evidence of SCEA's supposed control over SCEI's

13    documents, the Class Representatives have conjured up every possible theory without regard to

14    whether it could be factually supported.  Indeed, the Class Representatives go so far as to point to

15    the terms of SCEA's proposed stipulation that they rejected and thus was never presented to or

16    entered by the Court, as supposed confirmation of SCEA's control over SCEI's documents.[40]

17    Specifically, in response to a threat by Class Representatives to name SCEI as a defendant in this

18    litigation, SCEI and SCEA presented a potential compromise:  SCEI would produce relevant

19    documents and corporate deposition testimony without requiring the Class Representatives to

20    proceed under the terms of the Hague Convention.  In exchange, the Class Representatives would

21    agree not to sue SCEI in this litigation.[41]

22    Class Representatives now offer this proposed compromise – which they objected – as

23    supposed evidence of SCEA's right to demand production of documents from SCEI.  To the

24    contrary, at all times, SCEA offered only to ask SCEI if it would be willing to produce responsive

---

[38] 138 F.R.D. 438 (D.N.J. 1991); Class Reps' Motion to Compel (Docket #112), 6:9-13.

[39] *Id.* at 443-44; *See also Japan Halon Co., Ltd. v. Great Lakes Chemical Corp.*, 155 F.R.D 626, 628 (N.D. Ind. 1993) (district court found that the plaintiff had provided "five pages" of "deposition testimony that evidences" the "extreme closeness" of the defendant and its parent that justified an order compelling production).

[40] Class Reps' Motion to Compel (Docket #112), 6:25-27 (citing Rivas Decl., Ex. M) and 6:4-6.

[41] *See* Section II(A), *supra*.

1    documents and an appropriate number of Rule 30(b)(6) witness(es) in exchange for Class

2    Representatives' agreement not to name SCEI as a party in this action.[42]  The language SCEA

3    proposed for the parties' stipulation, which Class Counsel submitted in filing their discovery

4    motions, makes this clear:  "SCEA agrees that it will request and produce relevant documents in

5    SCEI's possession, custody, or control responsive to [Class Representatives'] First Set Of

6    Requests For Production Of Documents…."[43]

7            Furthermore, Class Representatives' argument has been rejected by the Southern District

8    of New York in *Zenith Elec. LLC* when the plaintiff sought to compel production of documents

9    from the defendant's non-party parent company based on a similar failed offer to compromise.[44]

10   The district court denied the motion after concluding that this offer was "insufficient" as evidence

11   of the requisite control.[45]  The Court's holding is readily applicable here:  "[m]ore specifically to

12   the instant inquiry, however, [Class Representatives] ha[ve] produced no evidence that [SCEI]

13   gives [SCEA] access to *its* documents, and specifically no evidence that [SCEI] would give

14   [SCEA] any access to the documents requested . . . ."[46]

15           Class Representatives "[have] not satisfied [their] burden of establishing that the

16   documents are in the 'control' of [SCEA], as [they have] not offered evidence that these

17   documents are necessary to the business of [SCEA] or that the requested documents are produced

18   in the normal course of its business."[47]  "Because [Class Representatives have] not demonstrated

19   [SCEA's] 'ability to easily obtain [the requested documents] when it [is] in their interest to do

20   so,' this factor does not weigh in favor of production of these documents from [SCEI]."[48]  Thus,

21   based on apposite controlling case law, Class Representatives have failed to carry their burden to

22   require production by SCEA of SCEI's documents.[49]

---

23   [42] *See* Section II(A), *supra*.
     [43] Rivas Decl. (Docket #114), Ex. M (emphasis added).
24   [44] 2009 WL 3094889, at *2.
     [45] *Id.* (citing *Honda Lease Trust v. Middlesex Mut. Assurance Co.*, 2008 WL 3285242, *2 (D.
25   Conn. Aug. 7, 2008)).
     [46] *In re Subpoena To Huawei Tech. Co. Ltd.*, 720 F. Supp. 2d at 977; *ASAT, Inc.*, 411 F.3d at 255
26   (same).
     [47] *Pitney Bowes*, 239 F.R.D. at 69 (citing *Glaxo Inc. v. Boehringer Ingelheim Corp.*, 40 U.S.P.Q.
27   2d 1848, 1850).
     [48] *Id.*; *see also In re Subpoena To Huawei Tech. Co. Ltd.*, 720 F. Supp. 2d at 977.
28   [49] *Tessera*, 2006 WL 733498, at *6.

1      **3.    Class Representatives' Assertion that SCEA Acted as SCEI's Agent in the Relevant "Transaction" Does Not Assist Them**

2

3          Class Representatives also contend that "SCEA was acting as the 'agent' of SCEI in the

4    transaction giving rise to the lawsuit: the sale of a PS3 unit and subsequent removal of a core,

5    advertised feature" and thus must produce SCEI's documents.[50]  But they offer no evidence to

6    support this allegation and the controlling case law discussed above demands much more than a

7    mere allegation of agency relationship.[51]  Class Representatives' argument is, in essence, the

8    same as the one the Northern District of Illinois rejected in *Stella*.  As in that case, Class

9    Representatives argue only that SCEA "has the legal right to obtain [SCEI's] documents '[g]iven

10   the relationship of the parties and the fact that [SCEA] is a wholly owned subsidiary.'"[52]  Here, as

11   in that case, Class Representatives have failed to satisfy their burden of demonstrating

12   constructive control.[53]  Class Representatives' reliance on *In re Citric Acid Litigation* is

13   particularly apt here:  "Because [SCEA] does not have legal control over [SCEI's] documents,

14   [Class Representatives] cannot compel [SCEA] to produce those documents."[54]

15         This lack of evidence puts Class Representatives reliance on *Choice-Intersil* in stark

16   contrast.[55]  The *Choice-Intersil* court concluded, based on "testimony offered by [plaintiff] at oral

17   argument," that the defendant was a "wholly-owned subsidiary" of the plaintiff; the subsidiary

18   would have marketed the product at issue, but for a change in market conditions; the defendant

19   and its parent "share[d] databases dealing with a variety of documents [and] records"; and, "upon

20   /////

21   /////

---

22   [50] Class Reps' Motion to Compel (Docket #112), 6:3-4, 6:24-25.

23   [51] *Stella*, 2009 WL 780890, at *3; *see also* Cal. Civil Code § 2295 ("agent" defined as "one who represents another, called the principal, in dealings with third persons.").
     [52] 2009 WL 780890, at *2-3.

24   [53] *Id.* ("Plaintiff does not provide this Court with sufficient information to discern the relationship between LVMH and the various entities.").  Class Representatives' reliance on *United States v.*

25   *Faltico* is not compelling as the defendant in that case admitted that the source of the documents sought was "controlled entirely" by it.  586 F.2d 1267, 1269-70 (8th Cir. 1978); Class Reps'

26   Motion to Compel (Docket #112), 7:4-5.
     [54] 191 F.3d 1090, 1107-8 (9th Cir. 1999) (sustaining lower court's ruling "that proof of theoretical

27   control is insufficient; a showing of actual control is required."); Class Reps' Motion to Compel (Docket #112), 6:2.

28   [55] Class Reps' Motion to Compel (Docket #112), 7:2-3 and 7:9-18; 224 F.R.D. 471.

demand, [the defendant] was able to obtain high-level documents from [its parent]" related to the underlying litigation.[56]  No showing of such a relationship or access has been made here.

Class Representatives' reliance on *Microunity Sys. Engineering Inc. v. Sony Computer Entertainment America Inc.* is just as misplaced.[57]  *Microunity* provides no factual or legal support for the Class Representatives' arguments because that ruling was not based on any assertion of constructive control or agency, nor did the court make any of the findings, that must be made here, related to SCEA's constructive control over SCEI documents.[58]  In fact, the *Microunity* ruling has nothing to do with production of SCEI documents or SCEA's constructive control over those documents – it turned on the location of depositions of SCEA's Rule 30(b)(6) witnesses.[59]

## III.   CLASS REPRESENTATIVES' PROPOSED PROTECTIVE ORDER DOES NOT AFFORD SCEA ADEQUATE PROTECTION

This is a class action relating to the most advanced gaming console to date, the product of decades of strategic design, manufacturing, distribution, and marketing research and development.  Class Representatives allege that they have been injured because they cannot use a specific, unique software feature (the Other OS operating system) that came with the PS3, but was not featured on any other gaming console.[60]  On this basis, they demand that SCEA produce its sensitive commercial documents regarding its internal decision-making processes for including and later disabling the Other OS feature, the Other OS feature's design and function, and marketing strategies regarding this feature; as well as regarding the PS3's distribution, marketing, and overall software design.[61]  SCEA would also necessarily need to produce similar commercially sensitive documents to support its defense to Class Representatives' claims.

To protect itself from the injury it would incur as a result of disclosure and use of these documents and information, SCEA provided Class Counsel with a draft stipulated protective

---

[56] 224 F.R.D. at 472-73; *see also Tessera*, 2006 WL 733498, at *6 (distinguishing *Choice-Intersil*).
[57] Class Reps' Motion to Compel (Docket #112), 8:7-17.
[58] Class Reps' RJN (Docket #113), Exs. 1-3.
[59] Id.
[60] Consolidated Complaint (Docket #76), 1-3. 10-19, 34-55.
[61] R. Rivas Decl. (Docket #114), Ex. B (RFDs).

1   order based on this District's model Stipulated Protective Order For Litigation Involving Patents,

2   Highly Sensitive Confidential Information And/Or Trade Secrets.  Class Counsel, however,

3   refuses to agree to two provisions found in this model:  the "Highly Confidential" and "Highly

4   Confidential-Source Code" designations, and the provision requiring notice to a designating party

5   of a party's intention to provide documents designated as such to an expert or consultant.[62]

6   Through their motion, Class Representatives now request that the Court enter a protective order

7   that does not contain these protections – the District's "Stipulated Protective Order For Standard

8   Litigation" – despite the fact that there is nothing "standard" about this litigation or the

9   documents SCEA has been asked to produce.

10        Class Representatives argue, without any supporting authority, that the District's

11   stipulated protective order form advocated by SCEA is available only in patent cases and poses

12   unacceptable notice requirements regarding expert/consultant recipients of highly sensitive

13   information.  This argument is disingenous given that Class Counsel recently agreed to use of the

14   identical stipulated protective order in a related case against SCEA involving a different PS3

15   firmware update, which protective order was in fact approved by the Court.  And it flies in the

16   face of this Court's approval of such stipulated protective order terms in many non-patent cases.[63]

17        Class Representatives argue that they must be able to disseminate to their clients any

18   documents or information SCEA produces in this litigation, but will be restricted from doing so if

19   SCEA has the ability to designate documents as "Highly Confidential" as defined in the District's

20   template protective order.  However, it is just such a broad and uncontrolled dissemination to the

21   Class Representatives and unnamed class members that causes great concern to SCEA.  In their

22   complaints, the Class Representatives and other named plaintiffs acknowledged that "security

23

---

24   [62] Rivas Decl., (Docket #114), Ex. J.  According to Class Representatives, their motion seeks

25   documents from SCEA in response to their requests, and seeks entry of a protective order so that SCEA can produce those documents.  Class Reps' Motion to Compel (Docket #112), 9:15-17.

26   But Class Representatives fail to explain which document requests they are moving on or even what documents they seek, or to describe the status of the parties' meet and confer.  In actuality,

27   Class Representatives' Motion to Compel is, with the exception of their arguments regarding SCEA's production of SCEI documents, a motion for entry of a protective order.

28   [63] *See, e.g.,* Declaration of Carter Ott ISO Opposition to Motion Compel and Motion for Protective Order ("Ott Opp. Decl."), ¶ 4, Ex. C.

DLA PIPER LLP (US)       -12-
WEST\222942898.1                                DEF.'S OPPOSITION TO MOTION TO COMPEL
CASE NO. 3:10-CV-01811 RS (EMC)

1    concerns" resulting from hacking of the PS3 prompted the release of Update 3.21.[64]  Soon after

2    these lawsuits were filed, Mr. Ventura's counsel's website reported false statements about the

3    status of this action which counsel contends were posted by a hacker.[65]  In the last month, further

4    published accounts of how to hack the PS3 were disseminated over the Internet, further treatening

5    SCEA's intellectual property rights.  Declaration of Carter Ott ISO Opposition to Motion Compel

6    and Motion for Protective Order ("Ott Opp. Decl."), ¶ 10, Ex. I ("Console Hacking 2010" slides);

7    ¶ 11, Ex. J ("Console Hacking 2010" transcript).[66]  Thus, Class Representatives cannot

8    demonstrate that the protective order form that SCEA requests is unwarranted.

9            Moreover, Class Representatives literally put the cart before the horse in their arguments

10   regarding the appropriate scope of the protective order to be entered by this Court:  they rely on

11   cases addressing whether a party appropriately designated a document under the terms of an

12   existing protective order, which is not an issue presented in the pending motions.  In fact, Class

13   Representatives fail to cite any apposite cases, and instead rely entirely on out of context

14   statements regarding protection afforded to specific documents produced.  For example, *Brown*

15   *Bag Software v. Symantec Corp.* has nothing to do with a protective order; rather, it is limited to

16   whether a party's in-house counsel should be precluded from reviewing the opposing party's

17   trade secrets.[67]  *See also Medtronic Vascular, Inc. v. Abbott Cardio. Sys., Inc.*, 2007 WL 4169628

18   (N.D. Cal. Nov. 20, 2007) (court was determining whether designations assigned to specific

19   documents were appropriate under the existing protective order); *Charles O. Bradley Trust v.*

20   *Zenith Capital LLC*, 2006 WL 798991 (N.D. Cal. March 24, 2006) (same); *Foltz v. State Farm*

21   *Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003), *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966

22   _____

23   [64] Consolidated Complaint (Docket #76), ¶ 63; Ott Opp. Decl., ¶ 5, Ex. D (Huber Complaint), ¶ 3.
     [65] SCEA Motion to Compel (Docket #116), 23:9-24:20.

24   [66] *See also* Ott Opp. Decl., ¶ 7, Ex. F (*SCEA v. Hotz et al.* Complaint), ¶¶ 15(a), 15(b) ("…is a
     member of FAIL0VERFLOW, a group of hackers who have conspired and continue to conspire

25   to engage in unlawful circumvention of the effective technological protection measures ("TPMs")
     in the PS3 System."), 15(c) ("Additionally, Cantero has used and continues to use github.com, an
     interactive online software sharing community based in San Francisco, California, to post and

26   distribute throughout the Internet, including to persons in this district, the code and software tools
     derived from FAIL0VERFLOW's circumvention of the TPMs in the PS3 System."), ¶¶ 49-51;

27   Ott Opp. Decl., ¶ 9, Ex. H (B. Mogilefsky Decl.), ¶¶ 15-27.
     [67] 960 F.2d 1465, 1470-71 (9th Cir. 1992); *see Computer Sciences Corp. v. Computer Associates,*

28   *Int'l*, 1999 WL 675446, *16 fn. 13 (C.D. Cal. Aug. 12, 1999).

DLA PIPER LLP (US)

WEST\222942898.1                                                    DEF.'S OPPOSITION TO MOTION TO COMPEL
                                                                   CASE NO. 3:10-CV-01811 RS (EMC)

F.2d 470 (9th Cir. 1992) (court never addressed question of particular designations to be offered under protective order).[68]

"[B]lanket protective orders governing the handling of confidential information exchanged in discovery are routinely approved by courts in civil cases"[69]:

> The very first rule set forth in the Federal Rules of Civil Procedure requires courts to construe and administer the rules 'to secure the just, speedy, and inexpensive determination of every action and proceeding.' (Citation omitted). Blanket protective orders serve the interests of a 'just, speedy, and inexpensive' determination of cases by alleviating the undue cost and delay that would ensue if courts had to make good cause determinations on a document-by-document basis for *all* documents exchanged in discovery that a party wished to protect. As the Ninth Circuit has implicitly acknowledged, the use of blanket protective orders conserves resources by eliminating the requirement that a party move for a protective order every time that party produces documents they contend are confidential.[70]

> * * * * *

> The use of protective orders is vital to the efficient litigation of every stage of many intellectual property disputes. If protective orders were not issued to safeguard the confidentiality of trade secrets and other confidential commercial information when warranted by the circumstances, litigants would be forced to choose between fully presenting their claims or defenses (and thereby destroying their trade secrets through disclosure to competitors or the public), or foregoing their claims or defenses (in order to keep their trade secrets and other sensitive information confidential).[71]

While blanket protective orders are usually based on a joint request of the parties, the agreement of all parties is not required so long as certain conditions are met.[72]  Those conditions include the following:

> First, a party must make some threshold showing of good cause to believe that discovery will involve confidential or protected information. This may be done on

---

[68] 331 F.3d 1130-33; 966 F.2d at 471-72 & 476.

[69] *Quality Inves. Prop. Santa Clara, LLC v. Serrano Electric, Inc.*, 2010 WL 2889178, *1 (citing *Gillard v. Boulder Valley School Dist.*, 196 F.R.D. 382, 386 (D. Colo. 2000)).

[70] *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (noting that use of a blanket protective order was "understandable for the unfiled documents given the onerous burden document review entails")).

[71] *The Beam Sys., Inc. v. Checkpoint Sys., Inc.*, 1997 WL 364081, *2 (C.D. Cal. Feb. 6, 1997) (citing Uniform Trade Secrets Act, § 5, Comment ("If reasonable assurances of maintenance of secrecy cannot be given, meritorious trade secret litigation will be chilled.")).

[72] *Quality Inves. Prop.*, 2010 WL 2889178, at *1 (citing *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 121 F.R.D. 264, 268 (M.D.N.C. 1988)).  *The Beam Sys., Inc.*, 1997 WL 364081, at *1 ("When a conflict arises between a right of property and the right to adequately present a claim or a defense, courts try to balance the competing interests."; "One of the principal tools enabling courts to strike an appropriate balance is a protective order.") (relying on Fed. R. Civ. P. 26(c)(7) and *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 219 U.S.P.Q. 37, 38 (D. Del. 1982)).

1   a <u>generalized</u> as opposed to a <u>document-by-document basis</u>.  Moreover, even
2   though a blanket protective order permits all documents to be designated as
    confidential, a party must agree to only invoke the designation in good faith.
3   After receiving documents, the opposing party has the right to contest those
    documents which it believes not to be confidential. At this stage, the party seeking
4   the protection shoulders the burden of proof in justifying retaining the
    confidentiality designation. Thus, the burden of proving confidentiality never
5   shifts from the party asserting that claim-only the burden of raising that issue.[73]

6   "[B]ecause [they] seek[] disclosure of information that would otherwise be confidential, [Class

7   Representatives] bear[] the burden of establishing a sufficient need for the information which

8   outweighs the risk of injury to [SCEA]."[74]  This risk can only be ameliorated under the current

9   circumstances by imposition of an appropriately restrictive protective order by this Court.

10      Class Representatives argue that the District's model stipulated protective order including

11  "Highly Confidential" and "Highly Confidential-Source Code" designations are intended to apply

12  only to "intellectual property cases."[75]  But the form's caption makes clear that this is not the

13  case:  "**Stipulated Protective Order For Litigation Involving** Patents, **Highly Sensitive**

14  **Confidential Information And/Or** Trade Secrets."  In addition, Class Representatives' argument

15  is clearly contrary to practice, as courts in this District have utilized these designations in many

16  different types of cases. *See Hechavarria v. City and County of San Francisco*, 2010 WL

17  4937314, *1 (N.D. Cal. Nov. 30, 2010) (use of protective order affording "confidential" and

18  "highly confidential-attorneys' eyes only" protections in assault and battery action); *Quality*

19

---

20  [73] *Quality Invs. Prop.*, 2010 WL 2889178, at *1 (emphasis added) (*citing Parkway Gallery
    Furniture, Inc.*, 121 F.R.D. at 268).  "The balance struck depends, in part, on the stage of the
21  proceedings. During the discovery phase, courts possess greater latitude to take reasonable steps
    to ensure that the private interest in maintaining the confidentiality of trade secrets or other
22  sensitive information is not unnecessarily impaired litigation-related disclosure." *The Beam Sys.,
    Inc.*, 1997 WL 364081, at *1 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35-36 (1984));
23  *see also Brown Bag*, 960 F.2d at 1470 ("On the one hand, parties seeking discovery are entitled to
    all information 'reasonably calculated to lead to the discovery of admissible evidence,'
24  Fed.R.Civ.P. 26(b)(1) – an intentionally broad mandate.  On the other hand, responding parties
    are entitled to protection from 'undue burden' in discovery, including protection from misuse of
25  trade secrets by competitors.  Fed.R.Civ.P. 26(c).").
    [74] *Intel Corp. v. Via Tech., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. Oct. 11, 2000) ("The party
26  seeking a protective order bears the burden of showing good cause for the order to issue.") (citing
    *Brown Bag*, 960 F.2d at 1470 (motion to modify protective order was denied because the moving
27  party "failed to demonstrate how the protective order actually could have or did prejudice its
    case.") and *A. Hirsh, Inc. v. United States*, 657 F. Supp. 1297, 1303 (C.I.T. 1987).
28  [75] Class Reps' Motion to Compel (Docket #112), 9:21-25.

1   *Inves. Prop.*, (use of protective order affording "attorney's eyes only" protection in action

2   regarding a contract dispute).[76]

3        Furthermore, the "Highly Confidential" and "Highly Confidential-Source Code"

4   designations that SCEA seeks are entirely appropriate in this case because, to respond to Class

5   Representatives' document demands and produce documents to defend itself, SCEA must

6   produce trade secret and other confidential commercially sensitive information.  *See* Decl. of John

7   Koller ISO Opposition to Motion to Compel ("Koller Decl."), ¶ 3.  This information is the result

8   of significant expenditures and, if disclosed to the public, including SCEA's competitors and

9   hackers, would cause significant injury.  Koller Decl., ¶ 4; *see also* Ott Opp. Decl., ¶ 7, Ex. F

10  (*SCEA v. Hotz et al.* Complaint), ¶¶ 23, 31, 36, 37, 47, 51, and 52.

11       These designations are therefore appropriate to preclude this harm.  In addition, "[t]he

12  form of order proposed by [SCEA] limits confidentiality designations to information or tangible

13  things that qualify for protection under the standards developed under Rule 26(c)."[77]  And if, after

14  SCEA has produced these documents, Class Representatives have any concerns about the

15  designations it has used, the protective order provides them with the ability and procedure to

16  challenge those designations.[78]

17       Class Representatives also object to SCEA's inclusion of the District's proposed provision

18  that bars disclosure of documents designated as "Highly Confidential" to Class Representatives'

19  experts and consultants without prior notice.[79]  Courts routinely use such a provision to protect

20

21  [76] *See also Kroll v. Kaiser Foundation Health Plan Long Term Disability Plan*, 2010 WL
    1233871, *1 (N.D. Cal. March 26, 2010) (in a insurance coverage dispute, ruling that concerns

22  about disclosure of information "may be dealt with by a protective order, limiting the use of the
    information for purposes of this litigation and designating the information 'Attorney's Eyes

23  Only.'"); *Mixt Greens v. Sprout Café*, 2010 WL 2555753, *2 (N.D. Cal. June 21, 2010) (in a trade
    dress infringement and unfair competition action, ruling that refusal to produce financial

24  documents was not justified because "any privacy concerns could have been addressed by a
    protective order limiting the disclosure, *e.g.*, for attorney's eyes only."); *See, e.g., Bare

25  Escentuals Beauty, Inc. v. Costco Wholesale Corp.*, 2007 WL 4357672, *1 (S.D. Cal. Dec. 11,
    2007) (action for trademark infringement and unfair competition).

26  [77] *See Quality Inves. Prop.*, 2010 WL 2889178, at *2 ("the protective order proposed…ensures
    that the parties are not improperly given 'carte blanche' to designate information which is not

27  entitled to protection under Rule 26(c)."); Rivas Decl., (Docket #114), Ex. J, Attached Draft
    Protective Order, ¶ 2.2.

    [78] *Quality Inves. Prop.*, 2010 WL 2889178, at *2.

28  [79] Rivas Decl. (Docket #114), Ex. J, attached proposed protective order, ¶ 7.4(a).

1  commercially sensitive information from disclosure to individuals or entities that could use it in a

2  manner that could harm the designating party.[80]  This is one of those cases.  The documents

3  SCEA will produce in this litigation include trade secret and other commercially sensitive

4  documents that are valuable to its competitors and an organized community of hackers; if

5  disclosed to them, SCEA will suffer substantial competitive and commercial injury.  Koller Decl.,

6  ¶ 4; Ott Opp. Decl., ¶ 7, Ex. F (*SCEA v. Hotz et al.* Complaint), ¶¶ 37, 47, 51 and 52.[81]  The risk

7  that Class Representatives may retain, intentionally or not, a member of this community of

8  individuals and businesses focused on hacking the PS3 for personal and commercial purposes

9  also weighs in favor of including a provision that requires prior notice of the individuals to whom

10  they intend to provide SCEA's commercially sensitive information.[82]  Ott Opp. Decl., ¶ 11, Ex. J

11  ("Console Hacking 2010" transcript), 4:13-21, 9:17-20 ("So, but the worst part of this is that, the

12  people who used Other OS are the hackers so by doing this, Sony pissed off the hackers.  That's a

13  really, really bad idea.  In other words, they are so getting hacked now."), 11:19-24 ("…So it

14  turns out that you can just copy games to the hard drive, patch LV2 to run them from the hard

15  drive and LV1 doesn't care, and the Security SPE doesn't care so you can break 20% of the

16  security and copy games which is 100% of what Sony doesn't want you to do."); ¶ 10, Ex. I

17  ("Console Hacking 2010" slides);  ¶ 7, Ex. F (*SCEA v. Hotz et al.* Complaint), ¶¶ 2, 15, 31-52,

18  and 64-69.

19       Class Representatives also seek, in effect, to broaden the class of individuals who can

20  access SCEA's "Highly Confidential" documents to all "members of the proposed plaintiff class,"

21  [80] *See, e.g., Newton Research Partners, LP v. Shell Exploration & Prod. Co.*, 2007 WL 4895911,
    *1 (N.D. Tex. Jan. 29, 2007); *Third Wave Tech., Inc. v. Stratagene Corp.*, 405 F. Supp. 2d 991,

22  1017 (W.D. Wis. 2005); *In re San Juan DePont Plaza Hotel Fire Litig.*, 121 F.R.D. 147, 149 (D.
    P.R. 1988); Manual for Complex Litigation (4th 2004), § 11.432; *see also Phoenix Solutions Inc.*

23  *v. Wells Faro Bank, N.A.*, 254 F.R.D. 568, 579 (N.D. Cal. 2008) ("the fact that [the parties] are
    not direct competitors hardly forecloses the inquiry.").

24  [81] *See The Beam Sys., Inc.*, 1997 WL 364081, at *2 ("More fundamentally, courts have a
    responsibility to ensure that court-required disclosure of trade secrets for purposes of litigation do

25  not 'become by indirection the means of ruining an honest and profitable enterprise.'" ) (*quoting
    Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288, 290 (D. Del.

26  1985)).
    [82] Furthermore, the Class Representatives reliance on *Miller v. NTN Communications* is similarly

27  factually inapposite as the documents in that case had apparently already been disclosed to the
    producing party's competitors and the "likelihood of harm" to the producing party was "remote."

28  1998 U.S. Dist. LEXIS 13753, *9 (S.D. Cal. 1998).

1  albeit with no stated justification for affording millions of individuals access to this information.[83]

2  Notably, Class Counsel offers no real justification for the supposed necessity of disseminating

3  SCEA's documents to millions of potential class members (including the five Class

4  Representatives).  Thus, in light of SCEA's legitimate substantiated security concerns, the Class

5  Representatives have failed completely in their arguments to limit SCEA's designation of

6  documents it produces.

7       Furthermore, Class Representatives reliance on *Rambus, Inc. v. Nvidia Corp.*, 2009 WL

8  982123 (N.D. Cal. April 13, 2009), is woefully misplaced – to the contrary, the Court's holding

9  supports SCEA's arguments – there the Court entered the very protective order that SCEA has

10  consistently advocated in this case.[84]

11       Finally, even in cases where a court concludes that the requesting party had not shown

12  sufficient cause for such a provision, courts have entered a restriction limiting disclosure to

13  protect the producing party's trade secret and confidential, commercially sensitive information.[85]

14  Clearly, even if the Court concludes that SCEA has not shown good cause for the notice provision

15  it seeks, some other form of protection is appropriate.

16      **A.**    **Class Representatives' Demanded Timing For Production Is Inappropriate**

17       Although it is not stated in the actual motion to compel they filed, Class Representatives

18  ask this Court for an order compelling SCEA to "produce any 'confidential' documents it has

19  been withholding that are responsive to [their RFPs] <u>within 10 business days</u>."[86]  In support of

20  their request (inadequate as it may be under the local rules) Class Representatives ignore

21  completely the fact that SCEA has produced over 2,000 pages of documents, including images of

22  advertisements and other marketing, instruction manuals, safety and support manuals, license

23  agreements, warranties, terms of service and user agreements.[87]

24  [83] Class Reps' Motion to Compel (Docket #10:6-8), 10:5-6; Rivas Decl., (Docket #114), Ex. J, 11/23/10, 7:29 p.m., Ott email, Section 7.

25  [84] Ott Opp. Decl., ¶ 6, Ex. E (*Rambus, Inc.* Proposed Protective Order), ¶¶ 2.4 & 7.4.
   [85] *See Nygren v. Hewlett-Packard Co.*, No. C07-05793-JW (HRL), 2008 WL 2610558, *1 (N.D.

26  Cal. July 1, 2008); *Layne Christensen Co. v. Purolite Co.*, --- F.R.D. ----, 2010 WL 3001744, *10 (D. Kan. July 28, 2010) (concerns address by prohibiting disclosure to experts or consultants

27  employed by defendant's competitors).
   [86] Docket #112-1, 2:8-9 (emphasis added).

28  [87] Ott Opp. Decl., ¶ 13.

1    In addition, the parties never met and conferred about any possible demand by Class

2    Representatives regarding timing of production of all documents demanded for production by

3    SCEA.  To the contrary, the parties agreed that further production would be conducted consistent

4    with agreed upon keyword terms, and the list of such keyword terms is still under review and

5    analysis.[88]

6    **IV.    CONCLUSION**

7    Based on the foregoing, defendant Sony Computer Entertainment America LLC

8    respectfully requests that the Court deny Class Representatives' Motion to Compel.

9    Dated:  January 14, 2011

10

11    DLA PIPER LLP (US)

12    By:  /s/ Luanne Sacks
     LUANNE SACKS

13    Attorneys for Defendant
     SONY COMPUTER ENTERTAINMENT

14    AMERICA LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[88] Sacks Decl., ¶ 9.