LUANNE SACKS, Bar No. 120811
luanne.sacks@dlapiper.com
CARTER W. OTT, Bar No. 221660
carter.ott@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA  94105
Tel:  415.836.2500
Fax:  415.836.2501

Attorneys for Defendant
SONY COMPUTER ENTERTAINMENT
AMERICA LLC (erroneously sued as "Sony
Computer Entertainment America Inc.")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re SONY PS3 "OTHER OS" LITIGATION | CASE NO.  3:10-CV-01811 RS (EMC) <br><br> **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER** <br><br> Date:          February 9, 2011 <br> Time:          10:30 a.m. <br> Judge:         Hon. Edward M. Chen <br> Courtroom:  C, 15th Floor |

1

**TABLE OF CONTENTS**

2

**Page**

3
I.    INTRODUCTION ......................................................................................................... 1

4
II.   LEGAL STANDARD.................................................................................................... 2

5
III.  THERE IS NO DISPUTE BEFORE THE COURT REGARDING REQUEST NO.
      1.................................................................................................................................... 3

6
IV.   THE CLASS REPRESENTATIVES CANNOT CLAIM PREJUDICE OR HARM
      FROM PRODUCING THEIR PS3S – OR COPIES OF THE HARD DRIVE -

7
      FOR  INSPECTION....................................................................................................... 3

8
      A.    The Class Representatives Should Either Produce The PS3s and Related
            Hardware, Software and Peripherals Requested by SCEA Or Be Precluded

9
            From Using Them As Evidence In This Lawsuit .................................................. 3

      B.    The Court Should Order Class Representatives To Alternatively Produce
10
            Forensic Copies Of Their PS3s And PC Hard Drives And Bear the Cost
            Thereof ................................................................................................................ 7

11
      C.    Additional Information Related To Use Of Their PS3s Is Relevant And
            Should Be Produced............................................................................................. 10

12
V.    CLASS REPRESENTATIVES CANNOT REFUSE TO PRODUCE TO SCEA
13
      DOCUMENTS THAT THEY MAY LATER USE TO ESTABLISH RELIANCE........ 12

14
VI.   A BLANKET ORDER PROHIBITING REOPENING CLASS
      REPRESENTATIVES' DEPOSITIONS IS IMPROPER AND PREMATURE ............. 13

15
VII.  THE UNNAMED PLAINTIFFS ARE NOT ABSENT CLASS MEMBERS, AND
      ARE THEREFORE SUBJECT TO DISCOVERY UNTIL THEY WITHDRAW .......... 15

16
VIII. CLASS REPRESENTATIVES HAVE NOT DEMONSTRATED THAT ANY
      INFORMATION SET FORTH IN THEIR RETAINER AGREEMENTS ARE
17
      PRIVILEGED .............................................................................................................. 17

18
IX.   INFORMATION REGARDING A DEFAMATORY POSTING ON COUNSEL'S
      WEBSITE IS RELEVANT, AND COMMUNICATIONS CLASS COUNSEL
      MADE TO THE PUBLIC ABOUT THIS POSTING ARE NOT PRIVILEGED ........... 18
19
X.    CONCLUSION ............................................................................................................. 21

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

5
*Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*,
    2010 WL 2035322 (N.D. Cal. May 19, 2010) ................................................................. 9, 10

6
*Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey*
7
    *Circus*,
    233 F.R.D. 209 (D.D.C. 2006) ............................................................................................ 20

8
*Antonino-Garcia v. Shadrin*,
9
    208 F.R.D. 298 (D. Or. 2002) ............................................................................................. 14

10
*Armour v. Network Assoc., Inc.*,
    171 F. Supp. 2d 1044 (N.D. Cal. 2001) .............................................................................. 17
11

12
*Armstrong v. Hussman Corp.*,
    163 F.R.D. 299 (E.D. Mo. 1995) ........................................................................................ 14

13
*Avocent Redmond Corp. v. Rose Elec.*,
14
    491 F. Supp. 2d 1000 (W.D. Wash. 2007) .......................................................................... 20

15
*Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*,
    170 F.R.D. 111 (S.D.N.Y. 1997) ........................................................................................ 15
16

17
*Bowoto v. Chevron Corp.*,
    2006 WL 2604565 (N.D. Cal. Aug. 23, 2006) .................................................................... 14

18
*Bryant v. Mattel, Inc.*,
19
    2007 WL 5430887 (C.D. Cal. June 20, 2007) .................................................................... 17

20
*Carrizosa v. Stassinos*,
    2006 WL 2529503 (N.D. Cal. Aug. 31, 2006) .................................................................... 17
21

22
*Coburn v. PN II, Inc.*,
    2008 WL 879746 (D. Nev. Mar. 28, 2008) ....................................................................... 5, 6

23
*Collins v. Int'l Dairy Queen*,
24
    189 F.R.D. 496 (M.D. Ga. 1999) ........................................................................................ 14

25
*Dixon v. Certainteed Corp.*,
    164 F.R.D. 685 (D. Kan. 1996) ........................................................................................... 14
26

27
*Duran v. Cisco Sys., Inc.*,
    258 F.R.D. 375 (C.D. Cal. 2009) ..................................................................................... 2, 15

28

-ii-

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4

*Fausto v. Credigy Servs. Corp.*,
    251 F.R.D. 436 (N.D. Cal. 2008) ........................................................... 8

5

*Flomo v. Bridgestone Americas Holding, Inc.*,
    2010 WL 935553 (S.D. Ind. March 10, 2010) ...................................... 14

6

7

*Fulco v. Continental Cablevision, Inc.*,
    789 F. Supp. 45 (D. Mass. 1992) .......................................................... 19

8

9

*Genworth Fin. Wealth Mgmt., Inc. v. McMullan*,
    267 F.R.D. 443 (D. Conn. 2010) ............................................................ 5

10

*Glenwood Farms, Inc. v. Ivey*,
    229 F.R.D. 34 (D. Me. 2005) ................................................................ 14

11

12

*Graebner v. James River Corp.*,
    130 F.R.D. 440 (N.D. Cal. 1989) .......................................................... 15

13

14

*Hammond v. Junction City*,
    167 F. Supp. 2d 1271 (D. Kan. 2001) ................................................... 19

15

*Hoot Winc LLC v. RSM McGladrey Fin. Process Outsourcing LLC*,
    2009 WL 3857425 (S.D. Cal. Nov. 16, 2009) ...................................... 17

16

17

*In re Ford Motor Co.*,
    345 F.3d 1315 (11th Cir. 2003) .............................................................. 6

18

19

*In re Google AdWords Litig.*,
    2010 WL 4942516 (S.D. Ind. March 10, 2010) .................................... 17

20

*In re Grand Jury Subpoena (Horn)*,
    976 F.2d 1314 (9th Cir. 1992) ......................................................... 17, 18

21

22

*In re Grand Jury Subpoena Witness (Salas)*,
    695 F.2d 359 (9th Cir. 1982) ................................................................ 17

23

24

*In re Grand Jury Subpoenas*,
    803 F.2d 493 (9th Cir. 1986) ................................................................ 17

25

*In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*,
    318 F.3d 379 (2d Cir. 2003) ................................................................. 20

26

27

*In re Michaelson*,
    511 F.2d 882 (9th Cir. 1975) ................................................................ 17

28

WEST\222946491.1

1

## TABLE OF AUTHORITIES
(continued)

2

**Page**

3

*In re Quintus Sec. Litig.*,

4

148 F. Supp. 2d 967 (N.D. Cal. 2001) ................................................................. 17

5

*In re Veeco Instr., Inc. Sec. Litig.*,
2007 WL 724555 (S.D.N.Y. March 9, 2007) ........................................................ 20

6

7

*In re Veeco Instr., Inc. Sec. Litig.*,
2007 WL 983987 (S.D.N.Y. April 2, 2007) ............................................................ 4

8

*Innomed Labs v. Alza Corp.*,
211 F.R.D. 237 (S.D.N.Y. 2002) ................................................................... 13, 15

9

10

*Inyo v. Dept. of Interior*,
2010 WL 5173139 (E.D. Cal. Dec. 13, 2010) ...................................................... 14

11

*Keck v. Union Bank of Switzerland*,
1997 WL 411931 (S.D.N.Y. July 27, 1997) ........................................................ 14

12

13

*McPeek v. Ashcroft*,
202 F.R.D. 31 (D.D.C. 2001) .............................................................................. 9

14

*Morgenstern v. Int'l Alliance of Theatrical Stage Employees, Local 16*,
2006 WL 2385233 (N.D. Cal. Aug. 17, 2006) ................................................... 9, 10

15

16

*Nat'l Acad. of Recording Arts & Sciences, Inc. v. On Point Events, LP*,
256 F.R.D. 678 (C.D. Cal. 2009) ......................................................................... 2

17

18

*Ochoa-Hernandez v. Cjaders Foods, Inc.*,
2010 WL 1340777 (N.D. Cal. April 2, 2010) ...................................................... 19

19

*OpenTV v. Liberate Tech.*,
219 F.R.D. 474 (N.D. Cal. 2003) .......................................................................... 9

20

21

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ............................................................................................. 8

22

23

*Phillips v. GMC*,
307 F.3d 1206 (9th Cir. 2002) .............................................................................. 2

24

*Playboy Enterprises, Inc. v. Welles*,
60 F. Supp. 2d 1050 (S.D. Cal. 1999) .................................................. 4, 5, 6, 9, 10

25

26

*Preiser v. Newkirk*,
422 U.S. 395 (1975) ........................................................................................... 14

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Quinby v. WestLB AG,*
4
    245 F.R.D. 94 (S.D.N.Y. 2006) ...................................................................... 9

5

*Ralls v. United States,*
    52 F.3d 223 (9th Cir. 1995)............................................................................ 17

6

*Rivera v. NIBCO, Inc.,*
7
    364 F.3d 1057 (9th Cir. 2004), *cert. denied*, 544 U.S. 905 (2005).......................... 2

8

*Rowe Entertainment, Inc. v. William Morris Agency, Inc.,*
    205 F.R.D. 421 (S.D.N.Y. 2002) ...................................................................... 8

9

10

*Surfvivor Media, Inc. v. Survivor Prods.,*
    406 F.3d 625 (9th Cir. 2005).......................................................................... 2

11

*United States v. Blackman,*
12
    72 F.3d 1418 (9th Cir. 1995)........................................................................ 17

13

*United States v. Jones,*
    696 F.2d 1069 (4th Cir. 1982)....................................................................... 20

14

15

*Vallone v. CNA Financial Corp.,*
    2002 WL 1726524 (N.D. Ill. March 19, 2002) ....................................................... 19

16

*Vincent v. Mortman,*
17
    2006 WL 726680 (D. Conn. March 17, 2006)........................................................ 14

18

*Xpedior Creditor Trust v. Credit Suisse First Boston, Inc.,*
    309 F. Supp. 2d 459 (S.D.N.Y. 2003)................................................................. 10

19

20

*Zamora v. D'Arrigo Bro. Co. of California,*
    2006 WL 3227870 (N.D. Cal. Nov. 7, 2006)..................................................... 13, 14

21

*Zubulake v. UBS WarburgLLC,*
22
    216 F.R.D. 280 (S.D.N.Y. 2003) ................................................................... 8, 9

23

*Zubulake v. UBS Warburg LLC,*
    217 F.R.D. 309 (S.D.N.Y. 2003) ................................................................... 8, 9

24

25

**RULES**

26

Fed. R. Civ. P. 26 .............................................................................. 1, 12

27

Fed. R. Civ. P. 26(a)(i)(A)(ii) .................................................................. 3

28

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

Fed. R. Civ. P. 26(b) ................................................................................................. 9

4

Fed. R. Civ. P. 26(b)(1) ............................................................................................ 2

5

Fed. R. Civ. P. 26(b)(2) ....................................................................................... 4, 13

6

Fed. R. Civ. P. 26(b)(2)(C)(i) ................................................................................. 14

7

Fed. R. Civ. P. 26(b)(5)(A)(ii) ................................................................................ 20

8

Fed. R. Civ. P. 26(c) ......................................................................................... 2, 8, 9

9

Fed. R. Civ. P. 26(c)(1)(D) ....................................................................................... 2

10

Fed. R. Civ. P. 26(f) ................................................................................................. 7

11

Fed. R. Civ. P. 30(a) .............................................................................................. 13

12

Fed. R. Civ. P. 30(a)(2)(A)(ii) ............................................................................... 13

13

Fed. R. Civ. P. 34(a) ................................................................................................ 5

14

Fed. R. Civ. P. 37(c) ................................................................................................ 6

15

16

17

**OTHER AUTHORITIES**

18

2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 11:1 (6th ed. 2009) ......................... 19

19

8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Fed. Practice & Procedure

20

§ 2210 (2d ed. 1994) ................................................................................................ 21

21

8A Charles Alan Wright, Arthur R. Miller and Richard L. Marcus, Federal Practice and

22

Procedure, § 2053 (3rd ed. 2010) p. 370 .................................................................... 3

23

24

25

26

27

28

1

## I.      INTRODUCTION

2        In their Motion for Protective Order, which was filed in direct response to SCEA's Motion

3   To Compel, plaintiffs Anthony Ventura, Jonathan Huber, Antal Herz, Jason Baker, and Elton

4   Stovell (the "Class Representatives") seek an order from the Court permitting them to withhold

5   production of critical evidence until they see fit to produce it at some later stage of this litigation

6   – evidence the Class Representatives disclosed in their Rule 26 submission directly relevant to

7   their assertions of standing, adequacy, typicality, reliance, causation and damages.  This is the

8   element of surprise that the discovery rules are designed to avoid.  If producing the evidence in

9   discovery proceedings is too inconvenient for the Class Representatives, as they suggest, then

10  they should be barred from using this very same evidence to advance their claims at some later

11  stage in the proceedings.

12       Class Representatives also seek improper advisory orders from the Court.  Specifically,

13  Class Representatives move for an order prohibiting the reopening of their depositions,

14  notwithstanding that Class Representatives have refused to appear for deposition to date and it is

15  pure supposition on their part that SCEA will seek to re-depose them.  Class Representative also

16  move for an order precluding discovery to the individuals named in the predecessor complaints

17  that initiated this consolidated action, but who were not named as plaintiffs in the operative

18  consolidated complaint, despite the fact that SCEA has not served any discovery requests on these

19  individuals.  The Court cannot rule on disputes that are not justiciable.

20       Class Representatives also request that the Court enter an order precluding discovery

21  requests seeking their fee agreements, notwithstanding Ninth Circuit law confirming that such

22  agreements are discoverable absent a showing that they included privileged information.  Last,

23  Class Representatives seek an order preventing SCEA from discovering information related to a

24  posting on Class Counsel's website making false representations regarding this action -- which

25  Counsel contends was made by a hacker.  SCEA is entitled to discover the source of the alleged

26  hacking, and what individuals, including putative class members, were told about the information

27  in the posting.  Furthermore, because the Class Representatives acknowledge that Update 3.21

28  was released to address hacking of the PlayStation®3 console (the "PS3"), if Class Counsel's

1  website was hacked, documents related to that posting will be relevant to the need for security

2  against hacking.  Of course, if the posting was created by Class Counsel, a Class Representative,

3  or their agents, it will bear directly on the issue of adequacy.

4  On these bases, SCEA respectfully requests that the Court enter an order denying Class

5  Representatives' Motion for Protective Order.

6  **II.  LEGAL STANDARD**

7  Under Federal Rule of Civil Procedure ("Rule") 26(b), discovery is permitted in civil

8  actions of "any nonprivileged matter that is relevant to any party's claim or defense...."[1]

9  "Relevant information for purposes of discovery is information 'reasonably calculated to lead to

10  the discovery of admissible evidence.'"[2]  "Generally, the purpose of discovery is to remove

11  surprise from trial preparation so the parties can obtain evidence necessary to evaluate and

12  resolve their dispute."[3]

13  Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party

14  or person from annoyance, embarrassment, oppression, or undue burden or expense ... [by]

15  forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain

16  matters [.]"[4]  "For good cause to exist, the party seeking protection bears the burden of showing

17  specific prejudice or harm will result if no protective order is granted."[5]

18  /////

19  /////

20

21  [1] Fed. R. Civ. P. 26(b)(1).
 [2] *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citation omitted).

22  [3] *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citations and internal quotation marks omitted); *Nat'l Acad. of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 (C.D. Cal. 2009).

23  [4] Fed. R. Civ. P. 26(c)(1)(D); *see also Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir.

24  2004) ("After a showing of good cause, the district court may issue any protective order ... 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

25  expense,' including any order prohibiting the requested discovery altogether, limiting the scope of discovery, or fixing the terms of disclosure."), *cert. denied*, 544 U.S. 905 (2005).
 [5] *Phillips v. GMC*, 307 F.3d 1206, 1210-11 (9th Cir. 2002); *Rivera*, 364 F.3d at 1063.  The

26  present discovery dispute relates to a discovery dispute between the parties regarding numerous matters, which the parties agreed would be subject to a stipulated briefing and hearing schedule.

27  In the interests of efficiency and economy, SCEA references, without repeating, the factual background set forth in its Motion to Compel, filed on December 15, 2010.  *See* also SCEA's

28  Motion to Compel (Docket #116), 9:3-10:4.

III.   **THERE IS NO DISPUTE BEFORE THE COURT REGARDING REQUEST NO. 1.**

Class Representatives have moved for a protective order forbidding SCEA from obtaining discovery related to Request Number 1.[6]  In a good faith attempt to narrow the parties' differences, SCEA withdrew this request several weeks prior to the filing of Class Representatives' Motion.[7]  The Court should not be burdened with a dispute that no longer exists.

IV.   **THE CLASS REPRESENTATIVES CANNOT CLAIM PREJUDICE OR HARM FROM PRODUCING THEIR PS3S – OR COPIES OF THE HARD DRIVES - FOR INSPECTION**

A.   **The Class Representatives Should Either Produce The PS3s and Related Hardware, Software and Peripherals Requested by SCEA Or Be Precluded From Using Them As Evidence In This Lawsuit**

In the Consolidated Class Action Complaint, the Class Representatives allege that they used their PS3s for specific purposes, including for watching Blu-ray discs, browsing the Internet, word processing and playing Linux-specific games.[8]  The Class Representatives further allege that Update 3.21, which only some of them downloaded and installed, caused them to be unable to use their PS3s and related software and peripherals under certain circumstances.[9]  As set forth in SCEA's Motion To Compel, the Class Representatives listed "Plaintiffs' PS3 Units" in their Rule 26(a)(i)(A)(ii) disclosures as evidence that they may use to support their claims in this lawsuit.  When SCEA naturally requested to inspect their PS3 units, however, the Class Representatives – in an about-face manner – asserted that the PS3s are "irrelevant" to their claims, and that it would be "burdensome" to produce them for inspection.  The Class Representatives cannot selectively assert evidence as relevant for their own evidentiary purposes but irrelevant for purposes of complying with their discovery obligations.

It would certainly seem logical "that any document the disclosing party says it may use to support its claims or defenses would bear some presumption of sufficient relevance to warrant production, given the low standard of relevance in discovery."[10]  Here, SCEA seeks to inspect the

---

[6] Motion for Protective Order (Docket #111), 13:8-14:13.
[7]  Declaration of Carter Ott ISO Opposition to Motion Compel and Motion for Protective Order ("Ott Opp. Decl."), ¶ 2, Ex. A.
[8]  Consolidated Complaint (Docket #76), ¶¶ 10, 12, 14, 16, and 18.
[9] *Id.*, ¶¶ 11, 13, 15, 17, and 19.
[10]  8A Charles Alan Wright, Arthur R. Miller and Richard L. Marcus, Federal Practice and Procedure, § 2053, (3rd ed. 2010) p. 370.

1    PS3s (and related peripherals and software) to assess the merit and veracity of the allegations in

2    the Consolidated Class Action Complaint, including allegations regarding the Class

3    Representatives' historical use of the PS3s, whether or not Update 3.21 was installed, and the

4    extent, if any, that it impaired prior usage.  Such inspection would also be relevant to whether the

5    Class Representatives' claims are typical of the class.  Unauthorized use of the PS3s, including

6    use of pirated software or unauthorized peripherals, would also support many defenses available

7    to SCEA and could be relevant to a Class Representatives' adequacy.

8         In their Motion for Protective Order, the Class Representatives assert that SCEA should

9    accept self-serving testimony from the Class Representatives or selective photographs of their

10   PS3 units and peripherals in lieu of inspection.  Such evidence, however, is inadmissible hearsay

11   and does not establish the actual condition and usage of the Class Representatives' PS3s, let alone

12   of the hardware and software used with it.

13        In its Motion To Compel, SCEA cited several cases where plaintiffs were routinely

14   ordered to produce their hard drives or gaming consoles in similar litigation.[11]  In its Motion For

15   Protective Order, the Class Representatives do not cite any contrary authority, and do not attempt

16   to distinguish those cases in any regard.

17        Given the undisputed relevancy of the PS3s and related products, the only issue is whether

18   such production would be overly burdensome or prejudicial.  "In determining whether a request

19   for discovery will be unduly burdensome to the responding party, the court weighs the benefit and

20   burden of the discovery."[12]  "This balance requires a court to consider the needs of the case, the

21   amount in controversy, the importance of the issues at stake, the potential for finding relevant

22   material and the importance of the proposed discovery in resolving the issues."[13]  Here, the

23   probative value of the evidence available from the Class Representatives' PS3s and related

24   hardware and software – including the data on their PS3 hard drives – manifestly outweighs any

25   burden of bringing these items to their deposition.[14]  Notably, no Class Representative submitted

---

26   [11] SCEA's Motion to Compel (Docket #116), 10:3-14:4.
27   [12] *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1053-54 (S.D. Cal. 1999) (citing Fed. R. Civ. P. 26(b)(2)).
     [13] *Id.*
28   [14] *See In re Veeco Instr., Inc. Sec. Litig.*, 2007 WL 983987, *1 (S.D.N.Y. April 2, 2007).

1  a declaration testifying that it would be burdensome to transport his or her PS3 and related

2  software and hardware to deposition.  To the contrary, if Class Representatives produced their

3  PS3s as requested, SCEA could make an image of the hard drive and authenticate the unit within

4  a matter of hours at minimal cost, and could most likely do so during his or her deposition.  *See*

5  Declaration of Carter Ott ISO Opposition to Motion Compel and Motion for Protective Order

6  ("Ott Opp. Decl."), ¶ 10, Ex. I (Summary of Work).

7         Class Representatives correctly state that "the right to information under Rule 34(a), '[i]s

8  counterbalanced by a responding party's confidential or privacy interests.'"[15]  But, here, Class

9  Representatives only baldly assert that SCEA's demand is "intrusive" because it "violates [their]

10 right to privacy."[16]  Nowhere in their motion do Class Representatives explain what kind of

11 information they seek to protect or even what privacy right(s) is allegedly affected.  No Class

12 Representative offers a declaration confirming that his or her PS3 hard drive is the repository of

13 information of such an indisputably confidential nature that it should be afforded extraordinary

14 protection against production in litigation.  Therefore, neither the Court nor SCEA has any ability

15 to assess Class Representatives' conclusory argument.

16        In addition, SCEA has offered a stipulated protective order that would address Class

17 Representatives' privacy concerns.  Ironically, Class Representatives have refused to agree to it

18 because of the inclusion of a "Highly Confidential" designation -- despite the fact that it would

19 resolve their asserted privacy concerns regarding their PS3 hard drive contents.[17]  In any event,

20 Class Representatives fail to explain why the stipulated protective order SCEA has offered is

21 inadequate to afford sufficient protection for any supposedly "private" data stored on their hard

22 drives.  More troubling is the lack of any explanation by Class Representatives for their refusal to

23 produce information based on their supposed "privacy" rights when they are demanding

24

25 [15] Class Reps' Motion for Protective Order (Docket #111), 15:7-10 (citing *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 446 (D. Conn. 2010)).

26 [16] Class Reps' Motion for Protective Order (Docket #111), 19:4-5.
   [17] *See* Class Reps' Motion for Protective Order (Docket #111), 15:14-16 (citing *Playboy*

27 *Enterprises*, 60 F. Supp. 2d at 1055 ("Further, [the producing party's] attorney-client privilege and privacy concerns will be protected by the protective order…."); also citing *Coburn v. PN II,*

28 *Inc.*, 2008 WL 879746, *3 (D. Nev. March 28, 2008) (same); *see also* SCEA's Opposition to Motion to Compel.

1   production of equally "private" information from SCEA.  Apparently, Class Representatives'

2   position is that SCEA must produce documents containing its trade secret and other confidential,

3   commercially sensitive information – and without any appropriate limits on its further

4   dissemination – but they need not produce what is potentially the most probative data regarding

5   their use of their PS3s.

6          Finally, contrary to Class Representatives' exaggerated assertion, SCEA does not seek

7   production of "all of [their] records."[18]  Instead, SCEA seeks only those documents that relate to

8   PS3 use, reliance on asserted misrepresentations, consequent injury, and other issues relevant to

9   certification that Class Representatives and the other named plaintiffs placed at issue though their

10  pleadings.[19]  Thus, Class Representatives gain nothing by their effort to equate SCEA's pending

11  requests to those issued by a plaintiff against Ford seeking access to all databases containing

12  "customer contacts" and "contacts by dealers, personnel, and other sources" which a district court

13  rejected in *In re Ford Motor Co.*[20]

14         Class Representatives' reliance on *Ameriwood Industries, Inc.*; *Playboy Enterprises, Inc.*;

15  *Coburn*; and *Antioch* is also misplaced.  It is not the specific content of the documents stored on

16  Class Representatives' PS3 hard drives that is relevant here, but, rather, the data on the hard

17  drives (including stored documents and related metadata) is relevant to show the Class

18  Representatives PS3 usage.  This evidence will bear directly on Class Representatives' allegations

19  regarding the extent and nature of their PS3 use, the materiality of the Other OS feature, the scope

20  of injury they sustained, if any, and their alleged typicality.[21]

21         Nevertheless, if the Court is somehow persuaded that it is too oppressive and burdensome

22  for the Class Representatives to produce their PS3 units and related hardware and software in

23  ordinary course discovery, it should also enter an order under Rule 37(c) precluding the Class

24  Representatives from offering any such evidence at subsequent stages of the litigation.

25

26  ---
    [18] Class Reps' Motion for Protective Order (Docket #111), 15:4-7.

27  [19] SCEA Motion to Compel (Docket #116), 14:15-17:2.
    [20] *See* Class Reps' Motion for Protective Order (Docket #111), 15:14-17; 345 F.3d 1315, 1316
    (11th Cir. 2003).

28  [21] Class Reps' Motion for Protective Order (Docket #111), 15:6-7, 15:17-16:2.

**B.    The Court Should Order Class Representatives To Alternatively Produce Forensic Copies Of Their PS3s And PC Hard Drives And Bear the Cost Thereof**

Any alleged cost, burden or expense to the Class Representatives from producing an image of their PS3 hard drives is self-inflicted.  SCEA reminded the Class Representatives of their duty to preserve the condition of the PS3s for use as evidence in this case shortly after this litigation commenced, but the Class Representatives declined explicitly to do so.  Class Representatives have apparently continued to use their PS3s without regard to their obligations to preserve relevant evidence.  This issue was highlighted in the parties' Joint Case Management Statement and Rule 26(f) Report:

> The parties have discussed and agreed to preserve documents and electronic data relevant to the issues in this case.  However, the parties have also identified an issue regarding the extent of Plaintiffs' obligation to preserve their PS3 consoles.  Specifically, SCEA disputes Plaintiffs' position that they may continue to use their PS3s during the pendency of this litigation.  SCEA believes that these PS3s must be preserved, including barring any continued use, as these units are evidence.
>
> Plaintiffs assert that the requirement that they preserve evidence does not trigger a duty to stop using their PS3s, and Plaintiffs should be permitted to continue to use those functions that they can still access on the PS3s, if they so choose.[22]

In a subsequent meet and confer, the Class Representatives suggested that the hard drives be imaged, but by a third party selected by Class Representatives and at SCEA's sole cost and expense.  SCEA should not have to pay for the Class Representatives' continued use of their PS3s.

Furthermore, the imaging procedure proposed by Class Representatives is unacceptable because it strips the evidence of its quantitative and qualitative nature.  Class Representatives proposed that they use a "neutral and mutually agreeable computer expert" to "inspect the PS3 hard drives and prepare a report, at SCEA's expense, that sets forth (1) whether Linux was installed and the date of installation; and (2) whether the following types of files exist, or not, on the hard drives: video game files, movie files, music files, word processing files, email files or

---

[22] Joint Case Management Statement and Rule 26(f) Report (Docket #86), 3:16-4:3.

-7-

DEF.'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER
CASE NO. 3:10-CV-01811 RS (EMC)

1   other Linux software related files."[23]  This offer affords SCEA none of the extremely probative

2   value that an analysis of the actual hard drive content would.  Specifically, an analysis of the hard

3   drives would provide SCEA with a qualitative and quantitative picture of Class Representatives'

4   daily use of their PS3s.  Class Representatives' offer, however, only affords SCEA a "Yes" or

5   "No," as to whether certain software was installed, without any true portrayal of whether it was

6   ever used and with what frequency and in what contexts.  If, for example, one of the Class

7   Representatives used the machine in violation of the warranty, such information would be absent

8   from the report.  If one of the Class Representatives was using the Other OS function to hack the

9   PS3 and thus play pirated games, SCEA would be unable to discern such illegal usage from the

10  proffered report.  And whether various game, movie and music files existed on the PS3 hard drive

11  would be of little aid to SCEA in determining if those files had been obtained through use of the

12  Other OS feature rather than through the PS3 native operating system.

13          Class Representatives also assert that any cost for forensic imaging of their PS3 hard

14  drives should be shifted entirely to SCEA.[24]  There is a presumption that "the responding party

15  must bear the expense of complying with discovery requests."[25]  However, under Rule 26(c), a

16  district court may issue an order protecting the responding party from undue burden or expense

17  by "conditioning discovery on the requesting party's payment of the costs of discovery."[26]

18          The normal and reasonable costs incurred in translating electronic data into a form usable

19  by the discovering party are borne by the responding party in the absence of a showing of

20  extraordinary hardship:  "If the total cost of the requested discovery is not substantial, then there

21  is no cause to deviate from the presumption that the responding party will bear the expense."[27]

22  /////

23  [23] Class Reps' Motion for Protective Order (Docket #111), 16:11-17.  Ott Opp. Decl., ¶ 2, Ex. A
    (Rivas 11/18/10 email).
24  [24] Class Reps' Motion for Protective Order (Docket #111), 16:18-18:2.
25  [25] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978).
    [26] *Id.* ("the presumption is that the responding party must bear the expense of complying with
26  discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant
    orders protecting him from 'undue burden or expense.'"); *see also Zubulake v. UBS Warburg*
    ("*Zubulake III*"), 216 F.R.D. 280, 283 (S.D.N.Y. 2003).
27  [27] *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 431 (S.D.N.Y.
28  2002); *Zubulake v. UBS Warburg LLC* ("*Zubulake I*"), 217 F.R.D. 309, 317-18 (S.D.N.Y. 2003)
    (protective order shifting cost "will issue only when the burden is extreme").

1   Such an order may be granted only on the motion of the responding party and "for good cause

2   shown,"[28] and "the responding party has the burden of proof on a motion for cost-shifting."[29]

3        There is no need to consider the *Zubulake* factors cited by Class Representatives because

4   they are only employed when the documents sought are not readily accessible, which necessarily

5   entails whether the cost of obtaining the data is burdensome.[30]  Here, it will take two to three

6   hours at a total estimated cost of $2,500 to $3,750 to image each Class Representative's PS3 hard

7   drive.  Accordingly, it cannot be said that the data sought is inaccessible or that it would be

8   unduly costly to obtain these documents.

9        Furthermore, the *Zubulake* factors do not weigh in favor of shifting costs:  here, the

10  requests are appropriately tailored to discover relevant information.  Class Representatives' PS3

11  hard drives are likely the best source of evidence regarding their actual use of these

12  computer/gaming consoles.[31]  "The more likely it is that the [requested information] contains

13  information that is relevant to a claim or defense, the fairer it is that the [responding party] search

14  at its own expense."[32]  Moreover, the Class Representatives have not submitted any competent

15  evidence of the amount of expenses they reasonably would incur in connection with the document

16  productions at issue in this motion.  The declaration they submitted is hearsay.  And even if the

17  document were not hearsay, it provides no explanation of "*why*" it would take "three days" to

18  image these hard drives.[33]

---

19  [28] Fed. R. Civ. P. 26(c)

20  [29] *Zubulake III*, 216 F.R.D. at 283; *Fausto v. Credigy Servs. Corp.*, No. C 07-5658 JW (RS)., 251 F.R.D. 436, 437 (N.D. Cal. 2008).

21  [30] *See Zubulake III*, 216 F.R.D. at 284 ("[C]ost shifting is potentially appropriate only when inaccessible data is sought."); *Zubulake I*, 217 F.R.D. at 318 (In the context of discovery of

22  electronic documents, "whether production of [such] documents is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessible format (a distinction that corresponds closely to the expense of production)."); *Morgenstern v. Int'l*

23  *Alliance of Theatrical Stage Employees, Local 16*, 2006 WL 2385233, *5 (N.D. Cal. Aug. 17, 2006) ("Cost-shifting should only be considered when discovery imposes an 'undue burden or

24  expense' that outweighs the likely benefit of the discovery.") (quoting Fed. R. Civ. P. 26(b)-(c)); *Quinby v. WestLB AG*, 245 F.R.D. 94, 104 (S.D.N.Y. 2006) ("cost shifting is appropriate only

25  where electronic discovery imposes an undue burden or expense.").
    [31] *See* SCEA's Motion to Compel (Docket #116), 10:5-14:14.

26  [32] *McPeek v. Ashcroft*, 202 F.R.D. 31, 34 (D.D.C. 2001); *OpenTV v. Liberate Tech.*, No. C 02-0655 JW(MEJ)., 219 F.R.D. 474, 477-78 (N.D. Cal. Nov. 18, 2003) (same).

27  [33] *Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, No. C 04-2266 JW (PVT)., 2010 WL 2035322, *1 (N.D. Cal. May 19, 2010); *See also* SCEA's Evidentiary Objections,

28  submitted herewith.

*Playboy Enterprises, Inc.*, does not assist Class Representatives.[34]  The court in that case did not "plac[e] [the] costs" on the requesting party; rather, it withheld its decision pending a declaration from the requesting party regarding "feasibility concerns" and the court noted that "[t]o some degree" the cost should fall on the producing party because "this process has become necessary due to [its] own conduct."[35]  The same result should occur here – Class Representatives could have produced their PS3s for hard drive imaging at SCEA's expense during their depositions, but chose not to do so.  Thus, the Court should deny Class Representatives' request for cost shifting because they have "not shown that an order shifting costs is warranted under the present circumstances."[36]

## C. Additional Information Related To Use Of Their PS3s Is Relevant And Should Be Produced

The Class Representatives' use of their PS3s, including the Other OS feature, is unquestionably one of the central topics in this litigation.  In their Initial Disclosures, Class Representatives state that they will rely on a broad set of documents related to their use.[37]  SCEA thereafter requested that the Class Representatives produce documents, in specific categories, that evidences their use of their PS3s as well as any hacking or "jailbreaking" of the PS3.[38]  In response, Class Representatives produced only a handful of documents, many of which appear on their face to have little to no connection to their actual PS3 usage.[39]

/////

---

[34] Class Reps' Motion for Protective Order (Docket #111), 17:24-18:1.
[35] 60 F. Supp. 2d at 1054.
[36] *Advanced Microtherm, Inc.*, 2010 WL 2035322, at *1; *Morgenstern*, 2006 WL 2385233, at *5 (denying request for cost-shifting; "the potential value of such information outweighs this cost."); *see Xpedior Creditor Trust v. Credit Suisse First Boston, Inc.*, 309 F. Supp. 2d 459, 467 (S.D.N.Y. 2003).
[37] SCEA Motion to Compel (Docket #116), 17:6-8.
[38] SCEA Motion to Compel (Docket #116), 17:11-24 and 19:2-4.
[39] SCEA Motion to Compel (Docket #116), 17:25-19:11.  Ms. Rivas grossly over generalizes, and thereby mischaracterizes, Class Representatives' production to date.  For example, she states that Class Representatives have produced "[c]opies of complaint letters sent to the Better Business Bureau and the Federal Trade Commission."  Rivas Decl. (Docket #114), 6:13-14.  In fact, no complaint letter has been produced.  Class Representatives have only produced correspondence related to the complaints filed with the BBB and FTC.  SCEA's Motion to Compel (Docket #116), 17:25-18:21.  Ms. Rivas' declaration (Docket #114) contains many incorrect generalizations, and it would be too much to address them all.  Accordingly, SCEA will address only the most material.

Class Representatives now seek an order from the Court allowing them to abstain from producing anything they used with their PS3s - *i.e.*, any software or hardware, including any "games," "movies," "CDs," "cables," "keyboards," game controllers and other peripheral devices – despite their claim for consequential damages related to loss of use of this software and accessories.[40]  Class Representatives offer only one reason for why they will not produce these things before or at their depositions:  the "risk of damaging their property during shipment or transit."[41]  But Class Representative fail to specifically describe what things they would produce, but for this risk; what particular risk of "damage" these things face; or why they are unable to properly ship or pack these items to minimize the risk of damage.  For example, if Mr. Ventura, who resides in Santa Clara, California, only used "cables" and a game controller with his PS3, there is no legitimate basis for his failure to carefully transfer that property to San Francisco for production at his deposition.  And of course, nothing argued by Class Representatives justifies their failure to bring software, i.e., CDs, DVDs and Blu-Ray discs purchased for use with their PS3s.

Class Representatives also contend that they have produced photographs of all of the peripherals they have used with the Other OS feature, and that these "should be sufficient."[42]  Of course, SCEA need not accept Class Representatives' inadmissible hearsay – it is entitled to inspect all items that Class Representatives intend to present in support of their consequential damages claims.  Moreover, each of these photographs is poor and darkly lit, making it difficult to determine the identity of these things.  In addition, there is no way to assess from the photographs their condition or whether they function at all with the PS3.  For example, Mr. Ventura's photograph appears to depict a SEGA controller, which ordinarily would not function with a PS3 console.  To the extent he claims that he purchased that controller for use with the PS3 this would appear to be false.  To the extent he may have altered that controller to use with the PS3, it would be a violation of his warranty, thereby making him not typical of other class members and inadequate as a class representative.  Rather than using Class Representatives'

---

[40] *See, e.g.,* Consolidated Complaint (Docket #76), 19:2-22:5.
[41] Class Reps' Motion for Protective Order (Docket #111), 18:9-11.
[42] Class Reps' Motion for Protective Order (Docket #111), 18:7-9.

1   inaccurate, poorly lit, and incomplete photographs of the things they allegedly used with their

2   PS3s, SCEA is entitled to inspect the actual items at deposition and question Class

3   Representatives about how they used them.

4   **V.   CLASS REPRESENTATIVES CANNOT REFUSE TO PRODUCE TO SCEA
        DOCUMENTS THAT THEY MAY LATER USE TO ESTABLISH RELIANCE**

5

6           In their Initial Disclosures, the Class Representatives state that they intend to use

7   documents that they purportedly relied upon in purchasing their PS3s, including "[s]creen shots

8   from the SCEA website regarding the PS3" and "[d]ocuments regarding the 'Other OS' function

9   and the operation, installation and use of Linux on the PS3."[43]  Class Representatives, however,

10  failed to produce these documents with their disclosure statement.  Accordingly, SCEA issued

11  Request No. 14 seeking production of such documents.[44]

12          Class Representatives promised to produce documents responsive to Request No. 14, but

13  later qualified the scope of their intended production.[45]  They explained that they would produce

14  responsive documents only if currently possessed by them in hard copy --- i.e., they would not

15  conduct any electronic search including the contents of the hard drives of their PCs and PS3s, for

16  responsive documents.  Incredibly, Class Representatives announced in the same breath that they

17  reserved their rights to perform such searches and obtain such documents for use at a later stage

18  of the litigation.[46]  And they made this assertion, i.e., that they "do not have the requisite control

19  of the documents" notwithstanding that they listed such documents in their Rule 26 disclosures.

20  Apparently Class Representatives have made no effort to search their PCs for responsive

21  documents, nor have they bothered to visit the same webpages they supposedly reviewed in

22  making their purchase decisions.  It is for this reason that SCEA requested a copy of their PC hard

23  drives.

24          Contrary to Class Representatives' assertion, SCEA did not demand that the Class

25  Representatives "produce any documents which they have seen in any magazine or on the

26

---

27  [43] Ott Decl. (Docket #117), ¶ 32, Ex. PP (Amended Initial Disclosures), 9:4-21.
    [44] SCEA's Motion to Compel (Docket #116), 14:15-17:2.
    [45] Ott Decl. (Docket #117), ¶ 17, Exs. T-X.

28  [46] Ott Decl. (Docket #117), ¶¶ 22 and 25, Exs. CC and FF.

1   Internet."[47]  Rather, SCEA only offered as a compromise – for the purpose of Class

2   Representatives' depositions – that they produce any Internet document that they contend they

3   relied upon in buying a PS3.[48]  Obviously, because they reference these documents in their initial

4   disclosures and failed to produce them upon demand by SCEA, Class Representatives cannot

5   expect to later offer them in this litigation to SCEA's detriment.

6          Clearly, Class Representatives' position and demand for a protective order is contrary to

7   the rules of discovery and disclosure.  The Class Representatives must produce any documents

8   now that they intend to rely upon as evidence, particularly in advance of their depositions.

9   Should they fail to do so, they should be barred from presenting any such discovery in subsequent

10  stages of the litigation.

11         Finally, Class Representatives cite numerous cases holding that a party is not required to

12  produce documents beyond its possession, custody or control.  None of those cases, however, are

13  apposite here, where a party refuses to produce documents it has listed in its initial disclosures,

14  which it concedes are accessible to it, and still seeks the right to later obtain and rely upon such

15  documents as evidence supporting its claims.

16  **VI.    A BLANKET ORDER PROHIBITING REOPENING CLASS
            REPRESENTATIVES' DEPOSITIONS IS IMPROPER AND PREMATURE**
17

18         This discovery dispute arises, in part, from Class Counsel's refusal to produce the Class

19  Representatives for deposition until after the Court resolves <u>all</u> discovery disputes related to

20  SCEA's document demands.[49]  The Class Representatives now seek an advisory opinion from the

21  Court that their depositions should never be reopened.

22         Rule 30(a) requires leave of court to reopen a deposition.[50]  Such leave "shall be granted

23  to the extent consistent with the principles stated in Rule 26(b)(2)."[51]  Thus, the Court has

24  considerable discretion to make a determination which is fair and equitable under all the relevant

25  _____

26  [47] Class Reps' Motion for Protective Order (Docket #111), 19:15-17.
    [48] Ott Decl. (Docket #117), ¶ 22, Ex. CC (11/12/10 12:52 p.m. email).
27  [49] SCEA Motion to Compel (Docket #116), 7:8-9:2.
    [50] Fed. R. Civ. P. 30(a)(2)(A)(ii).
28  [51] *Zamora v. D'Arrigo Bro. Co. of California*, No. C04-00047 JW (HRL), 2006 WL 3227870, *1
    (N.D. Cal. Nov. 7, 2006).

1   circumstances.[52] Courts routinely permit a deposition to be reopened on various grounds, many

2   of which are not known until during or after the deposition, including where the court finds the

3   witness was inhibited from providing full information at the first deposition or that the deponent

4   frustrated a fair examination or unreasonably prolonged the examination; the deponent made

5   extensive changes to the transcript following the deposition; new information comes to light after

6   the deposition; and/or documents are produced after the deposition.[53]

7           By its Motion for Protective Order, Class Representatives now ask the Court to rule –

8   without the ability to make any such findings – that there are *no grounds* on which it may

9   conclude that it should reopen their depositions, regardless of the timing and adequacy of Class

10  Representatives' document production or their conduct in deposition. Clearly, the Court cannot

11  enter such an order without an adequate basis. Neither SCEA nor the Court can establish or

12  determine whether there is good cause or not to reopen those depositions until those grounds are

13  present.[54] Notably, Class Representatives have failed to cite any case law authorizing the order

---

14  [52] *See generally Innomed Labs v. Alza Corp.*, 211 F.R.D. 237, 239 (S.D.N.Y. 2002).

15  [53] *See Vincent v. Mortman*, 2006 WL 726680, *1 (D. Conn. March 17, 2006) ("courts frequently
    permit a deposition to be reopened where…new information comes to light triggering questions
16  that the discovering party would not have thought to ask at the first deposition"); *Collins v. Int'l
    Dairy Queen*, 189 F.R.D. 496, 498 (M.D. Ga. 1999) (second deposition allowed where it was
17  likely to produce new information not obtainable in the first deposition); *Zamora*, 2006 WL
    3227870, at *2 (second deposition allowed to question witness about documents produced after
18  first deposition); *Inyo v. Dept. of Interior*, 2010 WL 5173139, *6 (E.D. Cal. Dec. 13, 2010)
    (granting motion to reopen deposition; "Defendants should be permitted to conduct additional
19  discovery to address these newly produced exhibits…."); *Flomo v. Bridgestone Americas
    Holding, Inc.*, 2010 WL 935553, *3 (S.D. Ind. March 10, 2010) (same; "because Plaintiffs
20  belatedly produced the documents, Defendants had no opportunity to cover that ground in [the]
    original deposition."); *Bowoto v. Chevron Corp.*, No. C 99-02506 SI, 2006 WL 2604565, *1
21  (N.D. Cal. Aug. 23, 2006)("The Court agrees with defendant that….[plaintiff's] late production
    effectively prevented defendant from having any meaningful ability to question [the deponent].
22  Thus, the Court believes that defendants should have the opportunity to reopen [the]
    deposition."); *Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 692 (D. Kan. 1996) (production after
23  first deposition of document containing statement by witness warranted second deposition);
    *Antonino-Garcia v. Shadrin*, 208 F.R.D. 298, 300 (D. Or. 2002) (permitting renewed deposition
24  after deponent refused to answer question and brought along a "supporter" who disrupted the
    proceedings); *Armstrong v. Hussman Corp.*, 163 F.R.D. 299, 301-03 (E.D. Mo. 1995) (counsel
25  improperly directed witness not to answer and coached witness); *Keck v. Union Bank of
    Switzerland*, 1997 WL 411931, *2 (S.D.N.Y. July 27, 1997); *Glenwood Farms, Inc. v. Ivey*, 229
26  F.R.D. 34, 35 (D. Me. 2005).
    [54] *See* Fed. R. Civ. P. 26(b)(2)(C)(i); *Keck*, 1997 WL 411931, at *2; *Zamora*, 2006 WL 3227870,
27  at *1; *Inyo*, 2010 WL 5173139, at *6. Class Representatives' request in essence seeks an
    advisory opinion. In essence, Class Representatives are asking the Court to conclude that there
28  will never be good cause or other basis to reopen their depositions. *See Preiser v. Newkirk*, 422
    U.S. 395, 401 (1975) ("[A] federal court has neither the power to render advisory opinions nor 'to

1  they seek here – an order to blindly deny any future request to reopen the plaintiff's deposition.

2  Instead, the cases they rely on are in agreement that some basis is necessary to permit, or for that

3  matter disallow, reopening a deposition.[55]

4         In the end, whether or not these depositions are reopened is predominantly in the control

5  of the Class Representatives and their counsel.  For example, if they choose not to produce all

6  documents in their control responsive to SCEA's requests prior to or at their depositions, disrupt

7  the depositions, and/or produce or otherwise rely on previously un-produced documents after

8  their depositions, they run the risk that those depositions may be reopened.[56]

9  **VII.   THE UNNAMED PLAINTIFFS ARE NOT ABSENT CLASS MEMBERS, AND
          ARE THEREFORE SUBJECT TO DISCOVERY UNTIL THEY WITHDRAW**

10

11         As an initial matter, Class Representatives' motion does not seek a protective order "that

12  prohibits discovery of absent class members."[57]  What they seek is an advisory order that

13  prohibits SCEA from obtaining discovery from their co-plaintiffs who have each asserted

14  individual claims against SCEA.  These individuals – Sean Bosquett, Frank Bachman, Paul

15  Graham, Paul Vannatta, Todd Densmore, Keith Wright, Jeffrey Harper, Zachary Kummer, and

16  Rick Benavides (the "Unnamed Plaintiffs") – filed complaints initiating nationwide class actions

17  against SCEA and, by Order of the Court, these actions were consolidated into the above-

18  captioned action – for pretrial purposes only – and the plaintiffs were ordered to file a

19  consolidated complaint.[58]  Class Counsel made the decision to name only the Class

20  Representatives in their Consolidated Complaint.

21         This issue is not ripe because, to date, SCEA has not sought any discovery from the

22  Unnamed Plaintiffs.  This issue first arose because Class Counsel objected that the Unnamed

23  Plaintiffs must preserve any documents or things related to the actions that *they* commenced, and

24

25  decide questions that cannot affect the rights of litigants in the case before them.'").
   [55] *See, e.g., Graebner v. James River Corp.*, No. C-88-1725 DLJ (FSL)., 130 F.R.D. 440, 442

26  (N.D. Cal. 1989); *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002);
   *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 170 F.R.D. 111, 119 (S.D.N.Y. 1997).

27  [56] *See Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) ("purpose of discovery is
   to remove surprise").
   [57] Class Reps' Motion for Protective Order (Docket #111), 23:8-9.

28  [58] Case Management Order Number 1 (Docket #65).

1    the claims *they* asserted against SCEA.[59]  Class Counsel states in the declaration submitted with

2    their briefs that SCEA's counsel sent a letter outlining "absent class members" preservation

3    obligations.[60]  In fact, that letter makes clear that it refers to the Class Representatives, the

4    Unnamed Plaintiffs, and "any individual who has not formally appeared as a plaintiff in the

5    Matter but whom [Class Counsel] contend[s]has retained any firm that is counsel of record in the

6    Matter as his or her attorney…."[61]  The Unnamed Plaintiffs have notice of their preservation

7    obligations, and they choose to destroy or spoliate evidence at their own risk.

8       Furthermore, an order prohibiting discovery from the Unnamed Plaintiffs is inappropriate.

9    These individuals are not "absent class members;" they initiated individual claims against SCEA

10   and therefore had notice that, as a result of those claims SCEA would seek discovery from them.

11   In addition, they have made no attempt to dismiss their individual claims, and therefore have no

12   basis to believe that SCEA should not be entitled to such discovery.  According to the Class

13   Representatives, the Court's CMC order absolves the Unnamed Plaintiffs from participating in

14   discovery.[62]  But this Order only consolidated the predecessor actions for "pre-trial purposes."[63]

15   In other words, the consolidation is effective only up to class certification.  Thus, by the operation

16   of the Order, the underlying complaints will reassume their independent identities in the liability

17   phase, and SCEA must presume that the Unnamed Plaintiffs will resurface in the litigation at that

18   point.  The Court has not issued any order requiring bifurcation of discovery as to certification

19   and liability.  Consequently, SCEA only has one opportunity to seek discovery from the

20   Unnamed Plaintiffs.

21       Class Representatives cite <u>sixteen cases</u> and one commentator regarding depositions of

22   putative class members; however, only <u>seven</u> of these cases relate to depositions of individuals

23   who were first named plaintiffs and then later taken off of the caption.[64]  And in these seven

24   cases, the individuals the defendant sought to depose had withdrawn their position as class

---

25   [59] Class Reps' Motion for Protective Order (Docket #111), 23:18-21.  Rivas Decl. (Docket #114, Ex. A).

26   [60] Rivas Decl. (Docket # 114), 1:26-28.

     [61] *Id.* at Ex. A, p. 1, third paragraph.

27   [62] Class Reps' Motion for Protective Order (Docket #111), 23:10-22.

     [63] Docket #65 at 4.

28   [64] Class Reps' Motion for Protective Order (Docket #111), 23:8-25:1.

1   representatives either by their own motion or order of the court.  Here, the Unnamed Plaintiffs

2   have not withdrawn their positions as class representatives or as individual litigants in the action.

3   Unless and until they withdraw or are ordered to withdraw as putative class representatives, the

4   Unnamed Plaintiffs are subject to discovery under the applicable rules.

5   **VIII.   CLASS REPRESENTATIVES HAVE NOT DEMONSTRATED THAT ANY**
6   **INFORMATION SET FORTH IN THEIR RETAINER AGREEMENTS ARE**
    **PRIVILEGED**

7           Request No. 27 seeks production of all agreements Class Representatives have with their

8   counsel in this litigation, including retainer agreements.[65]  As explained in SCEA's Motion to

9   Compel, the retainer agreements are relevant because they demonstrate the scope and definition

10  of the Class Representatives' relationship with their counsel.[66]

11          In their Motion for Protective Order, the Class Representatives do not contest that these

12  documents are relevant.  Instead, they argue only that these documents – which are not part of any

13  privilege log – are protected by the attorney-client privilege.[67]  Contrary to their position,

14  however, "the Ninth Circuit has repeatedly held retainer agreements are not protected by the

15  attorney-client privilege or work product doctrine."[68]  As one decision cited by Class

16  Representatives states:  "the attorney-client privilege ordinarily protects neither a client's identity

17  nor information regarding the fee arrangements reached with the client."[69]

18          The cases cited by Class Representatives are limited to retainer agreements that contain

19  descriptions of the client's motivations for seeking legal representation or other nondiscoverable

20  information.  For example, both *In re Grand Jury Subpoena (Horn)* and *In re Grand Jury*

---

[65] SCEA's Motion to Compel (Docket #116), 21:17-22:2.

[66] *Id.*; *see, e.g.*, *Armour v. Network Assoc., Inc.*, 171 F. Supp. 2d 1044, 1048-49 & 1055-56 (N.D. Cal. 2001); *In re Quintus Sec. Litig.*, Nos. C-00-4263 VRW, C-00-3894 (VRW)., 148 F. Supp. 2d 967, 972 (N.D. Cal. 2001); *Bryant v. Mattel, Inc.*, 2007 WL 5430887 (C.D. Cal. June 20, 2007).

[67] Class Reps' Motion for Protective Order (Docket #111), 21:3-22:3.

[68] *Hoot Winc LLC v. RSM McGladrey Fin. Process Outsourcing LLC*, 2009 WL 3857425, *2 (S.D. Cal. Nov. 16, 2009) (citing *Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995); *United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995)); and *In re Michaelson*, 511 F.2d 882 (9th Cir. 1975)); *Carrizosa v. Stassinos*, No. C 05-2280 RMW (RS), 2006 WL 2529503, *3 (N.D. Cal. Aug. 31, 2006); *Ralls*, 52 F.3d at 225-26; *see also Bryant*, 2007 WL 5430887, at *1 (ordering plaintiff to produce a fee agreement to which it was not a party on the grounds that it was relevant to demonstrate bias and lack of credibility); *In re Google AdWords Litig.*, No. C08-03369 JW (HRL)., 2010 WL 4942516, *3 fn. 4 (N.D. Cal. Nov. 12, 2010) (citing *In re Grand Jury Subpoenas*, 803 F.2d 493, 496 (9th Cir. 1986)).

[69] 976 F.2d 1314, 1317 (9th Cir. 1992).

1   *Subpoena Witness (Salas)*, involve the specific instance where, in a criminal matter, the client's

2   retainer agreement may contain descriptions of the intended scope of the attorney-client

3   relationship which would necessarily incriminate the client.[70]  In fact, the *Horn* court concluded

4   that it would conduct an *in camera* inspection of the retainer agreement in that case to determine

5   whether it contained any privileged information.[71]

6          Here, Class Representatives have not established – or even suggested – that such

7   potentially privileged information exists in any of their retainer agreements.  Moreover, to the

8   extent such information exists, the Court can perform an *in camera* review under *Horn*.

9   Accordingly, Class Representatives have not met their burden of establishing privilege and the

10  Court should deny their motion for protective order relating to Request No. 27.

11  **IX.    INFORMATION REGARDING A DEFAMATORY POSTING ON COUNSEL'S**
        **WEBSITE IS RELEVANT, AND COMMUNICATIONS CLASS COUNSEL MADE**
12      **TO THE PUBLIC ABOUT THIS POSTING ARE NOT PRIVILEGED.**

13          As set forth in its Motion to Compel, on June 6, 2010, SCEA discovered a defamatory

14  statement regarding the status of this lawsuit on the website of Mr. Ventura's counsel, Meiselman

15  Denlea Packman Carton & Ebertz P.C.[72]

16          [b]ecause [SCEA] failed to defend it's intentions in court, the judge decided that
            [SCEA] will have to pay every PS3 owner, who bought his PS3 before March 27,
17          2010, a refund of 50% of the price when purchased…. [SCEA] will also be
            handing out refunds at 'E3,' a large video-gaming event, to all registered PS3
18          owners.[73]

19  At SCEA's request, this posting was removed, and Mr. Ventura's attorneys informed SCEA that

20  it would conduct an "investigation" about the source of that posting.[74]  SCEA later learned that

21  the Meiselman firm had communicated with the general public about this posting and this

22  lawsuit.[75]  On this basis, SCEA requested all documents concerning the false posting, including

23  the communications made with the general public; however, Class Representatives refused.[76]

24  /////

25  [70] *See* 976 F.2d 1314, 1317-18 (9th Cir. 1992); 695 F.2d 359, 362 (9th Cir. 1982).
    [71] 976 F.2d at 1318.
26  [72] SCEA Motion to Compel (Docket #116), 23:11-17.
    [73] Ott Opp. Decl., ¶ 4, Ex. C (6/6/10, 11:27 a.m. email).
27  [74] SCEA Motion to Compel (Docket #116), 23:17-22.
    [75] SCEA Motion to Compel (Docket #116), 23:17-22.
28  [76] SCEA Motion to Compel (Docket #116), 24:1-6.

1    This posting on the website of Class Representatives' counsel raises critical questions

2    regarding both the adequacy of the Class Representatives and one of the Class Representative's

3    counsel.  SCEA is entitled to any and all documents regarding counsel's investigation to ensure

4    that the posting was made without the knowledge and consent of the Class Representatives or one

5    of their counsel.

6    Counsel's representation that the posting was created by a hacker further underscores the

7    relevance of the information sought.  Class Representatives concede that Update 3.21 was issued

8    because of security concerns due to hacking of the PS3.[77]  The need for protection against hackers

9    – including, on Class Representatives' counsel's website – is clearly relevant in this action.  This

10   is particularly true if the Class Representatives' counsel's website was hacked by the same person

11   (or persons) who have published the specific means by which one may hack the PS3.  *See, e.g.,*

12   Ott Opp. Decl., ¶ 5, Ex. D (*SCEA v. Hotz et al.* Complaint), ¶¶ 15; Ott Opp. Decl., ¶ 7, Ex. F

13   (Declaration of Bret Mogilefsky), ¶¶ 15-27.  SCEA is entitled to know this information, and

14   counsel has an obligation to provide information that could lead to the discovery of the hacker's

15   identity.

16   In addition, the communications that Class Counsel has had with the general public,

17   including class members, regarding this posting and this lawsuit bear on the public and class

18   members' understanding of this litigation, and is relevant to the adequacy requirement.  Before

19   any notices regarding this lawsuit are sent to putative class members, it is critical to know what

20   the Meiselman firm has represented to them regarding the statements posted to its website.  If, for

21   example, the putative class members were led to believe that SCEA admitted liability, it could

22   impact SCEA's ability to resolve the litigation at a later stage.

23   Notably, Class Representatives contend that <u>all</u> of the communications by or with the

24   Meiselman firm regarding its website "would be attorney-work product and attorney-client

25   privileged communications."[78]  While that might be true for Mr. Ventura, the actual individual the

26   Meiselman firm represents in this litigation – it does not hold true for other putative class

27   _____

28   [77] Consolidated Complaint (Docket #76), ¶ 63; Ott Opp. Decl., ¶ 5, Ex. D (*Huber Complaint*), ¶ 3.
     [78] Class Reps' Motion for Protective Order (Docket #111).

1  members who never engaged the firm as counsel.[79]  Significantly, Class Representatives have not

2  presented any facts to support such a claim of privilege.

3      In fact, the Meiselman website expressly disclaims any attorney-client relationship, that

4  any of its communications constitute legal advice, or that any information sent to the firm will be

5  kept confidential:

> The information contained within the Meiselman, Denlea, Packman, Carton &
> Eberz P.C. ("Meiselman Denlea" or the "firm") website is intended for
> informational purposes only, and **should not be construed as legal advice or
> professional counsel on any subject matter**.... The transmission of the
> Meiselman Denlea website, in part or in whole, and/or communication with the
> firm by electronic mail or through the Meiselman Denlea website **does not
> constitute or create an attorney-client relationship** or impose any obligation on
> Meiselman Denlea or any of its attorneys.  Any information sent to Meiselman
> Denlea by electronic mail or through the Meiselman Denlea website **is not
> secure, and is done so on a non-confidential basis**....[80]

12  Based on the above, the Class Representatives are without any basis to claim that all

13  communications relating to the Meiselman website are privileged.[81]

14      Class Representatives also contend that the documents sought are not in their possession.[82]

15  To the extent Class Representatives did not receive any communications from the Meiselman

16  firm regarding the website posting, they can simply state that in their formal response to SCEA's

17  request without the necessity of a protective order.  The issue, however, is not limited to

18  possession; the documents are within Mr. Ventura's control.  The Meiselman firm is and was

19  acting as Mr. Ventura's agent in prosecuting this action.  In fact, the only reason that the false

---

[79] *See Ochoa-Hernandez v. Cjaders Foods, Inc.*, 2010 WL 1340777, *4 (N.D. Cal. April 2, 2010);
2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 11:1 (6th ed. 2009); *Hammond v.
Junction City*, 167 F. Supp. 2d 1271, 1286 (D. Kan. 2001); *Fulco v. Continental Cablevision,
Inc.*, 789 F. Supp. 45, 47 (D. Mass. 1992); *Vallone v. CNA Financial Corp.*, 2002 WL 1726524,
at *1 (N.D. Ill. March 19, 2002).
[80] Ott Decl. (Docket #117), ¶ 33, Ex. QQ (emphasis added).
[81] *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curiam) ("[t]he proponent
must establish not only that an attorney-client relationship existed, but also that the particular
communications at issue are privileged and that the privilege was not waived."); *Veeco Instr., Inc.
Sec. Litig.*, 2007 WL 724555 *4 (S.D.N.Y. Mar. 9, 2007) ("[t]he party asserting work product
protection 'bears the burden of establishing its applicability to the case at hand.'") (quoting *In re
Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2d Cir.
2003)); Fed. R. Civ. P. 26(b)(5)(A)(ii) (Parties withholding documents under a claim of privilege
should identify and describe the documents in sufficient detail to "enable other parties to assess
the claim.").
[82] Motion for Protective Order (Docket #111), 22:12-23:3.

1   posting was made on the Meiselman firm's website, and the only reason that documents regarding

2   that false posting exist, is because of the Meiselman firm's role as Mr. Ventura's agent in

3   prosecuting this action.  Thus, these documents are in Mr. Ventura's control, and he is obligated

4   to direct the Meiselman firm to produce them.[83]

5   **X.    CONCLUSION**

6        Based on the foregoing, defendant Sony Computer Entertainment America LLC

7   respectfully requests that the Court deny Class Representatives' Motion for Protective Order in its

8   entirety.

9   Dated:  January 14, 2011

10                                          DLA PIPER LLP (US)

11

12                                          By:  /s/ Luanne Sacks
                                                LUANNE SACKS
13                                              Attorneys for Defendant
                                                SONY COMPUTER ENTERTAINMENT
14                                              AMERICA LLC

15

16

17

18

19

20

21

22

23

24

25   _____

26   [83] *See Avocent Redmond Corp. v. Rose Elec.*, 491 F. Supp. 2d 1000, 1010 (W.D. Wash. 2007)
     (citing *Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey
27   Circus*, 233 F.R.D. 209, 212 (D.D.C. 2006) ("Because a client has the right, and the ready ability,
     to obtain copies of documents gathered or created by its attorneys pursuant to their representation
28   of that client, such documents are clearly within the client's control") and 8A Charles A. Wright,
     Arthur R. Miller & Richard L. Marcus, Fed. Practice & Procedure § 2210 (2d ed. 1994)).