1  LUANNE SACKS, Bar No. 120811
   luanne.sacks@dlapiper.com
2  CARTER W. OTT, Bar No. 221660
   carter.ott@dlapiper.com
3  **DLA PIPER LLP (US)**
   555 Mission Street, Suite 2400
4  San Francisco, CA  94105
   Tel:  415.836.2500
5  Fax:  415.836.2501

6  Attorneys for Defendant
   SONY COMPUTER ENTERTAINMENT
7  AMERICA LLC (erroneously sued as "Sony
   Computer Entertainment America Inc.")
8

9                UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

13

14 In re SONY PS3 "OTHER OS"        CASE NO.  3:10-CV-01811 RS (EMC)
   LITIGATION
15                                  **DEFENDANT'S REPLY IN SUPPORT OF
                                    MOTION TO COMPEL**
16
                                    Date:       February 9, 2011
17                                  Time:       10:30 a.m.
                                    Judge:      Hon. Edward M. Chen
18                                  Courtroom:  C, 15th Floor

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. THE CLASS REPRESENTATIVES' PS3S AND PCS ARE THE MOST IMPORTANT SOURCES OF INFORMATION REGARDING USE OF THE OTHER OS ............................................................................................................................ 3

    A. Class Representatives' Use Of The Other OS Bears On The Materiality Element Of Their Claims And Their Damages Demands ........................................ 3

    B. Class Representatives' Privacy Objections Lack Support ..................................... 6

III. THE COURT SHOULD ORDER THE CLASS REPRESENTATIVES TO PRODUCE THEIR ONLINE PSEUDONYMS ...................................................................... 7

IV. DOCUMENTS REGARDING THE FALSE WEBSITE POSTING ................................. 8

    A. The Court Should Strike Class Representatives' Addendum Brief ....................... 8

V. CLASS REPRESENTATIVES' RETAINER AGREEMENTS ARE RELEVANT TO ADEQUACY AND ARE NOT PRIVILEGED ............................................................. 9

VI. THE COURT SHOULD ORDER THE CLASS REPRESENTATIVES TO APPEAR FOR THEIR DEPOSITIONS ............................................................................... 10

VII. AS A RESULT OF SCEA'S MOTION, CLASS REPRESENTATIVES HAVE NOW REVERSED THEIR POSITION REGARDING SCEA'S DOCUMENT REQUESTS ........................................................................................................................... 10

    A. The Court Should Order The Class Representatives To Provide An Unconditional Confirmation Of Their Production ................................................ 10

    B. SCEA Has No Ability To Confirm Or Refute Class Representatives' Asserted Production Because They Have Not Identified Documents Responsive to SCEA's Requests ............................................................................ 11

    C. Class Representatives' Position Regarding Their Production Of The Documents They Relied On Is Inconsistent ........................................................... 12

    D. Class Representatives' Recent Production Confirms The Appropriateness Of SCEA's Discovery Requests ............................................................................ 12

VIII. CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

Page

**CASES**

*Aircraft Tech. Pub. v. Avantext, Inc.*,
   2009 WL 3833573 (N.D. Cal. Nov. 16, 2009) .......................................................................... 8

*Alaska v. Suburban Propane Gas Corp.*,
   123 F.3d 1317 (9th Cir. 1997) .................................................................................................. 5

*Armour v. Network Assoc., Inc.*,
   171 F. Supp. 2d 1044 (N.D. Cal. 2001) .................................................................................... 9

*Baker v. Masco Builder Cabinet Group, Inc.*,
   2010 WL 3862567 ..................................................................................................................... 9

*Beckner v. El Cajon Police Dept.*,
   2008 WL 2033708 (S.D. Cal. May 9, 2008) .......................................................................... 13

*Bonilla v. Trebol Motors Corp.*,
   1997 WL 178844 (D.P.R. Mar. 27, 1997) ........................................................................ 13, 14

*Bryant v. Mattel, Inc.*,
   2007 WL 5430887 ..................................................................................................................... 9

*Caro v. Procter & Gamble Co.*,
   18 Cal. App. 4th 644 (1993) ..................................................................................................... 4

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) .................................................................................................. 4

*Coles v. Nyko Technology*,
   247 F.R.D. 589 (C.D. Cal. 2007) .............................................................................................. 6

*Cruz v. Dollar Tree Stores, Inc.*,
   2009 WL 1458032 (N.D. Cal. May 26, 2009) .......................................................................... 5

*Del Campo v. Am. Corrective Counseling Servs, Inc.*,
   2008 WL 2038047 (N.D. Cal. May 12, 2008) .......................................................................... 5

*Doe v. 2TheMart.com Inc.*,
   140 F. Supp. 2d 1088 (W.D. Wash. 2001) ............................................................................ 7, 8

*Epstein v. American Reserve Corp.*,
   1985 WL 2598 (N.D. Ill. 1985) ................................................................................................ 9

*Falk v. GMC*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) .................................................................................... 4

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Gary Price Studios, Inc. v. Randolph Rose Collection, Inc.*
  2005 WL 1924733 (S.D.N.Y. August 9, 2005) ................................................................... 12

*Holliday v. Extex*,
  237 F.R.D. 425 (D. Hi. 2006) ............................................................................................. 6

*In re Bulk Popcorn Antitrust Litig.*,
  1990 WL 123750 (D. Minn. June 19, 1990) ...................................................................... 13

*In re Google AdWords Litig.*,
  2010 WL 4942516 (N.D. Cal. Nov. 12, 2010) ................................................................ 9, 10

*In re Mercedes-Benz Tele Aid Contract Litigation*,
  257 F.R.D. 46, 50-51 (D. N.J. 2009) ................................................................................... 4

*In re Quinus Sec. Litig.*,
  148 F. Supp. 2d 967 (N.D. Cal. 2001) ................................................................................. 9

*In re Sony Grand WEGA*,
  2010 WL 4892114 (S.D. Cal. Nov. 30, 2010) ..................................................................... 4

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ......................................................................................................... 4

*Klein v. Miller*,
  82 F.R.D. 6 (N.D. Tex. 1978) ............................................................................................. 9

*Knight v. Evans*,
  2008 WL 5225863 (N.D. Cal. Dec. 12, 2008) .................................................................... 9

*Lamon v. Director, Calif. Dept. of Corrections*,
  2009 WL 1911699 (E.D. Cal. July 1, 2009) ....................................................................... 9

*Lim v. Citizens Sav. & Loan Assoc.*,
  430 F. Supp. 802 (D.C. Cal. 1976) ..................................................................................... 9

*Marcus v. BMW of North America*,
  2010 WL 4853308 (D.N.J. 2010) ........................................................................................ 4

*Mas v. Cumulus Media, Inc.*,
  2010 WL 4916402 (N.D. Cal. Nov. 22, 2010) .................................................................... 6

*McColm v. San Francisco Housing Authority*,
  2007 WL 218920 (N.D. Cal. Jan. 29, 2007) ................................................................ 11, 12

# TABLE OF AUTHORITIES
(continued)

**Page**

*McCurdy Group v. Am. Biomedical Group, Inc.*,
  9 Fed. Appx. 822 (10th Cir. 2001) ............................................................................................ 6

*Mitchell-Tracey v. United General Title Ins. Co.*,
  2006 WL 149105 (D. Md. Jan. 9, 2006) .................................................................................... 9

*PDQ, Inc. of Miami v. Nissan Motor Corp.*,
  61 F.R.D. 372 (S.D. Fla. 1972) ................................................................................................. 9

*Peterson v. California Depart. of Corrections and Rehab.*,
  2006 WL 2522410 (E.D. Cal. Aug. 30, 2006) ........................................................................ 13

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys, Inc.*,
  2005 WL 1459555 (N.D. Cal. June 21, 2005) ........................................................................ 13

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................................................................... 4

*Scotts Co. LLC v. Liberty Mutual*,
  2007 WL 1723509 (S.D. Ohio June 12, 2007) ......................................................................... 6

*Smith v. Ford Motor Co.*,
  --- F. Supp. 2d ----, 2010 WL 3619853 ................................................................................ 3, 4

*Stanich v. Travelers Indem. Co.*,
  259 F.R.D. 294 (N.D. Ohio 2009) ............................................................................................ 9

*Swanson v. U.S. Forest Serv.*,
  87 F.3d 339 (9th Cir. 1996) ...................................................................................................... 8

*Woods v. Kraft Foods, Inc.*,
  2006 WL 2724096 (E.D. Cal. Sept. 22, 2006) ....................................................................... 13


**RULES**

Fed. R. Civ. P. 23(a) ........................................................................................................................ 4

Fed. R. Civ. P. 26 ............................................................................................................................ 2

Fed. R. Civ. P. 34 .................................................................................................................... 11, 12

Fed. R. Civ. P. 34(b)(2)(E)(i) ........................................................................................................ 11

-iv-

WEST\223058902.2                                    DEF.'S OPPOSITION TO MOTION TO COMPEL
                                                         CASE NO. 3:10-CV-01811 RS (EMC)

## I. INTRODUCTION

Throughout their opposition memorandum, the named plaintiffs ("Class Representatives") attempt to downplay, if not completely ignore, the copious allegations in the Consolidated Complaint regarding their distinct purchase and usage experience with respect to the PlayStation®3 game console (the "PS3"). Indeed, they now glibly describe this case as a garden variety consumer fraud action, and they claim that the unique and varying uses and injuries pleaded are "irrelevant" and "immaterial." According to the Class Representatives, discovery should be limited solely to an unexplained, amorphous supposedly uniform "loss of value" sustained by all PS3 purchasers – irrespective of whether they used the Other OS features or installed Update 3.21. However, the ten distinct causes of action in the 174-paragraph Consolidated Complaint focus extensively on how each Class Representative (as well as various unidentified putative class members) "used" the PS3. Moreover, the Consolidated Complaint avers various theories of causation and damages based on varying degrees of lost or restricted "use."

At the hearing on defendant Sony Computer Entertainment America LLC's ("SCEA") Motion to Dismiss, Judge Seeborg underscored the relevance of the Class Representatives' allegations regarding individual user behavior when he noted that these allegations make class certification questionable:

> Not to jump into the class arguments, but you're talking about all sorts of disparate -- disparate consumers doing very different things. Some are upgrading, some are not. Some are buying. Some are not. How can you have a class?[1]

Given the impact of the Class Representatives' allegations on the question of class certification, it is no surprise that they have resisted producing facts, evidence and testimony relevant to their purchase and usage of the PS3 and related games, movies, accessories and peripherals. The federal discovery rules, however, require the Class Representatives to do so, particularly where they have alleged such highly individualized facts in support of their claims.

/////

---

[1] Ott Decl. ISO Motion to Compel (Docket #117), ¶ 18, Ex. Y (11/4/10 hearing transcript), 37:18-22.

The best and incontrovertible evidence of PS3 usage is obviously the units themselves. However, Class Representatives go to great lengths to avoid producing those units, and particularly their hard drives, for inspection. It is inconceivable that the Class Representatives may maintain that they used the sophisticated Linux-based functionality of the Other OS feature and were damaged by the elimination of this feature without providing SCEA an opportunity to confirm this fact through an inspection of the units. Photographs and other hearsay – including deposition testimony – simply lack any evidentiary foundation.

In addition to misstating their causation and damages theories, the Class Representatives also sidestep critical issues of reliance and materiality, contrary to Judge Seeborg's acknowledgment of the need for discovery to determine what, if any, representations the Class Representatives saw prior to purchase. The Class Representatives decry their obligation to produce the results of any Internet searches they performed prior to purchase, including the various "screen shots" that they cite throughout the Consolidated Complaint and in their Rule 26 Disclosures. SCEA has a right to know and have access to the specific representations each Class Representative relied on, and if Class Counsel did not collect this evidence from their clients and continue to refuse to do so, such evidence must be precluded at trial. Moreover, the answer that SCEA itself has access to its representations does nothing to answer the inquiry. SCEA should not have to waste precious deposition hours showing every advertisement and website page regarding the PS3 to every deponent in an effort to discern the scope of reliance, which reliance is their burden to prove.

Class Representatives also decline to produce discovery related to a gross misstatement published on Class Counsel's website that SCEA had been found liable by default and was ordered to pay damages. Whether the misstatement resulted from unauthorized hacking, as Class Representatives contend, the posting is still a proper subject of discovery. For example, SCEA is entitled to probe whether any of the Class Representatives or their counsel was involved in such improper conduct. SCEA is also entitled to any non-privileged aspects of the asserted investigation regarding the identity of the alleged hacker – particularly because it was similar hacking efforts that prompted SCEA to issue Update 3.21. Even more important, SCEA recently

1 learned of Internet posts suggesting means to work around Update 3.21 and reinstate the Other
2 OS feature.  SCEA is taking appropriate steps to prevent these further efforts to imperil the
3 security of the PS3 system and protect its intellectual property, but all of this serves only to
4 highlight the relevance of Internet hacking to the pending lawsuit.[2]

5       The Class Representatives should not be permitted to withhold facts and evidence that
6 may defeat class certification.  SCEA is entitled to test the allegations of commonality and
7 typicality that permeate the Consolidated Complaint.  In addition, SCEA is entitled to discover
8 facts establishing whether the Class Representatives possess the requisite standing and are
9 adequate representatives of the various class-wide claims of injury and damages.  SCEA's motion
10 to compel should be granted in its entirety.

11 **II.     THE CLASS REPRESENTATIVES' PS3S AND PCS ARE THE MOST
        IMPORTANT SOURCES OF INFORMATION REGARDING USE OF THE**
12 **     OTHER OS**

13     **A.     Class Representatives' Use Of The Other OS Bears On The Materiality
              Element Of Their Claims And Their Damages Demands**
14

15       This is hardly a simple product defect claim in which reduced value is the only remedy
16 sought.[3]  This is a multi-faceted class action premised on a supposed promise by SCEA that it
17 would continue to support all PS3 features, including the Other OS, for all time.  Class
18 Representatives demand "compensatory, consequential, punitive and statutory damages,"
19 "restitution and restitutionary disgorgement," including moneys spent on peripheral devices,
20 games, movies and online services rendered unusable or inaccessible by Update 3.21; data lost
21 during installation; decreased memory storage space and other unspecified forms of damages.[4]

22       Class Representatives allege claims based on purported violations of the UCL, FAL, and
23 CLRA, but to succeed they must establish that the alleged misrepresentations were material and
24 caused consequential injury.  *See Smith v. Ford Motor Co.*, --- F. Supp. 2d ----, 2010 WL
25 3619853, **9 & 13-14 (N.D. Cal. Sept. 13, 2010) (granting summary judgment with regard to

---

26 [2] Ott Decl. ISO Opp. to Motion to Compel and Motion for Protective Order (Docket #130), ¶ 7, Ex. F; ¶ 9, Ex. H; ¶ 10, Ex. I; ¶ 11, Ex. J.
27 [3] *See, e.g.,* Class Reps' Opp. to Motion to Compel (Docket # 131), 1:17-20, 9:10-11 & 17:18-20.
[4] Consolidated Complaint (Docket #76), 43:19-22; Ott Decl. ISO Motion to Compel (Docket
28 #117), ¶ 32, Ex. PP (Amended Initial Disclosures), 10:2-10.

CLRA and UCL claims based on plaintiffs' failure to satisfy materiality requirements of those claims).[5] Indeed, certification is inappropriate in fraudulent misrepresentation actions like this because materiality cannot be resolved on a classwide basis. *See, e.g., Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (if certified, court "would be forced to engage in **individual inquiries** of each class member with respect to **materiality** of the statement….") (emphasis added).[6] This is equally true where claims are based on fraudulent concealment.[7]

Similarly, use of the PS3 bears directly on the claims for breach of warranty,[8] violation of the Computer Fraud and Abuse Act claim,[9] and common law claims premised in tort and *quasi* contract.[10] Underlying each claim is the premise that each member of the proposed class has been deprived of his or expected and desired uses of the PS3. Accordingly, Class Representatives averred that the Other OS feature was material as demonstrated by (i) their selection of the PS3 over other game consoles specifically for use of the Other OS feature;[11] (ii) their extensive use of

---

[5] *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*, 2010 WL 4892114, (S.D. Cal. Nov. 30, 2010) (dismissing CLRA claim with prejudice for inability to satisfy CLRA's materiality requirement); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, (9th Cir. 2008) (granting summary judgment to UCL claim for failure to satisfy materiality requirement). Class Representatives' reliance on *In re Mercedes-Benz Tele Aid Contract Litigation* and *Marcus v. BMW of North America, LLC* is misplaced as these cases involve safety issues, not at issue here, which courts treat differently for purposes of the materiality; the service at issue in *In re Mercedes-Benz* was separately offered and specifically purchased by the plaintiffs, in contrast to the admission of many members of this putative class who admit they had no idea what Other OS was until Update 3.21 was released; *In re Mercedes-Benz* is also based entirely on New Jersey law; and the section of *Marcus* Class Representatives cite relates to the "usually simple" Rule 23(a) commonality requirement, and the court in that case denied certification due to the multiple individual issues that precluded resolution of liability on common proof. 257 F.R.D. 46, 50-51 (D. N.J. 2009); 2010 WL 4853308, **3-4 & 16 (D.N.J. Nov. 19, 2010); *see also Falk v. GMC*, 496 F. Supp. 2d 1088, 1095-96 (N.D. Cal. 2007) (materiality based on alleged defective automobile speedometer); *Smith v. Ford Motor Co.*, --- F. Supp. 2d ----, 2010 WL 3619853, *9 (N.D. Cal. Sept. 13, 2010) (distinguishing *Falk*); Ott Decl. ISO Motion to Dismiss and Motion to Strike (Docket #98), ¶ 18, Ex. Q. 257 F.R.D. 46, 49; 2010 WL 4853308, **4-6 & 18. In addition, the portion of *In re Tobacco II Cases* Class Representatives rely on is taken out of context, and refers solely to UCL actions that seek only injunctive relief. 46 Cal. 4th 298, 312 (2009).
[6] *See also Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993) ("On this record the court properly concluded individual issues involving the existence and nature of any material misrepresentation would predominate over common issues….").
[7] *Id.*
[8] *See, e.g.,* Consolidated Complaint (Docket #76), ¶ 79, ¶ 84, ¶ 86 ("…Update 3.21 breached the implied warranty of merchantability because it eliminated the 'Other OS' feature and the ability to **use** the PS3 as a personal computer…."), ¶ 93 and 95.
[9] *See, e.g.,* Consolidated Complaint (Docket #76), ¶ 132.
[10] *See, e.g.,* Consolidated Complaint (Docket #76), ¶ 170.
[11] *See, e.g.,* Consolidated Complaint (Docket #76), ¶¶ 10, 12, 14, 16, and 18.

the Other OS feature,[12] including in lieu of a "personal computer"[13] and (iii) the significant injuries they allegedly suffered because they can no longer use the Other OS feature.[14] Indeed, the Consolidated Complaint is replete with 81 references to "use" of the PS3 (including "uses," "used," and "utilize") and repeats 25 times that they were damaged due to loss of use. In sharp contrast, loss of value – which they now contend is the sole discoverable issue – appears merely four times in the pleading.

Discovery regarding Class Representatives' uses will be particularly important to resolving certification and liability. For instance, Class Representatives' particular use of the units – and if they used the units in an unauthorized fashion, including in violation of copyright laws – will bear directly on the adequacy requirement.[15] Specifically, Class Representatives' hacking of their PS3s, or the use of their PS3s or PCs to assist with or solicit hacking, would bear directly on their adequacy because they will be subject to unique defenses. *See Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997) ("when named plaintiffs are subject to unique defenses which could skew the focus of the litigation, district courts properly exercise their discretion in denying class certification."); *See, e.g.,* Ott Decl. ISO Opp. to Motion to Compel and Motion for Protective Order (Docket #130), ¶ 7, Ex. F; ¶ 9, Ex. H; ¶ 10, Ex. I; ¶ 11, Ex. J.[16] Such evidence would also preclude satisfaction of the typicality requirement, as Class Representatives' use of their PS3s (and therefore their claims) would not be similar to those of the putative class.

The hard drives from Class Representatives' PS3s, including the metadata on those drives, are indisputable and unimpeachable sources of evidence regarding their day-to-day use.[17] The PC

---

[12] *See, e.g.,* Consolidated Complaint (Docket #76), ¶¶ 10, 12, 14, 16, and 18.
[13] *See, e.g.,* Consolidated Complaint (Docket #76), ¶¶ 12, 14, and 16.
[14] *See, e.g.,* Consolidated Complaint (Docket #76), ¶¶ 13, 15, and 19.
[15] Class Reps' Opp. to Motion to Compel (Docket # 131), 8:18-9:4.
[16] SCEA does not contend that Class Representatives are inadequate due to their "credibility," as in *Del Campo v. Am. Corrective Counseling Servs, Inc.* and *Cruz v. Dollar Tree Stores, Inc.*, but seeks discovery that will demonstrate that they are not adequate based on unique use of their PS3s. 2008 WL 2038047, **3-4 (N.D. Cal. May 12, 2008); 2009 WL 1458032, *7 (N.D. Cal. May 26, 2009).
[17] *See* SCEA's Motion to Compel (Docket #116), 10:5-14:4; SCEA's Opp. to Motion for Protective Order (Docket #125), 3:6-6:24.

1  hard drive contents will confirm or refute their averment that the PS3 replaced their PC.[18]  A non-
2  destructive inspection of the PS3 units will reveal if they are functional, have been tampered with,
3  or were physically altered to facilitate hacking.[19]  *Coles v. Nyko Technologies, Inc.*, 247 F.R.D.
4  589 (C.D. Cal. 2007), and *Holliday v. Extex*, 237 F.R.D. 425 (D. Hi. 2006), support this.  The
5  *Holliday* court treated a party's right to inspect the device at issue as a litigation axiom; the *Coles*
6  court concluded that an inspection of a game console was appropriate in an action alleging the
7  same claims as those alleged here.[20]  Class Representatives make no attempt to distinguish
8  *Holliday*, and point only to irrelevant distinctions in *Coles*.[21]  Clearly, the probative value of the
9  evidence available from the PS3s and related hardware and software – including data on hard
10 drives and electronic storage devices– manifestly outweighs any burden of bringing these items to
11 their depositions, particularly as their PS3 hard drives can be imaged during those depositions.[22]
12 Similarly, SCEA is entitled to examine the peripherals and other things that Class Representatives
13 claim they used with their PS3s, particularly those that are the subject of their damage allegations.
14 None of this is available from self-serving deposition testimony, self-selected photographs, or a
15 forensic specialist's generic statements about whether certain software was installed or not.
16 /////
17 /////

---

[18] Class Representatives fail to explain how an unpublished decision from the Tenth Circuit related to a breach of contract action in which the propounding party demanded production of a forensic copy of the plaintiff-company's computers, without any explanation; or this Court's order to produce calendar and expense documents from their laptops in a wage and hour class action relates to this discovery dispute. *McCurdy Group v. Am. Biomedical Group, Inc.*, 9 Fed. Appx. 822, 831 (10th Cir. 2001); *Mas v. Cumulus Media, Inc.*, 2010 WL 4916402, *3 (N.D. Cal. Nov. 22, 2010). Their reliance on *Scotts Co. LLC v. Liberty Mutual Ins. Co.* is also distinguishable as the moving party was seeking "re-production of electronically stored information" that its opposing party had already produced. 2007 WL 1723509, **1-2 (S.D. Ohio June 12, 2007).
[19] *See* SCEA's Motion to Compel (Docket #116), 13:14-18.
[20] 237 F.R.D. at 426-27; 247 F.R.D. 592-93.
[21] Class Reps' Opp. to Motion to Compel (Docket # 131), 6:23-7:7.  Class Representatives also attempt to distinguish, on irrelevant grounds, numerous cases that SCEA cited in which the court ordered production of a hard drive.  Class Reps' Opp. to Motion to Compel (Docket # 131), 7:8-8:15.  SCEA only cited these decision to contest Class Counsel's assertion, during meet and confer, on the lack of authority regarding an order compelling production of hard drives.  *See* SCEA's Motion to Compel (Docket #116), 12:2-4 fn. 70.  Obviously, because the Class Representative no longer dispute this issue, they have conceded this point.
[22] *See* SCEA's Opp. to Motion for Protective Order (Docket #125), 4:17-5:6.

**B.   Class Representatives' Privacy Objections Lack Support**

Nowhere in their numerous briefs do Class Representatives explain why or how inspection and production of their PS3s "is an impermissible invasion of [their] privacy…."[23] Nor do they provide any evidence (no declarations) to support their speculative assertions that, "Plaintiffs, other than Mr. Stovell, used the Other OS function as a personal computer, and there **may** be personal and confidential material stored therein"[24] or that "[i]ndividuals **may** maintain multiple private information on personal computers, including correspondence with friends and family members, confidential business information, photographs, journals, and so on."[25] They also provide no explanation for how, as they state, the very "games, videos, and other media" that they "used with their PS3s," including "what games [they] played" and "how often they played games," is "private information"; how compelling production of this information would result in an "unnecessary and impermissible violation of their privacy;" or what harm, if any, would result.[26] Nor do they explain why the significant protections afforded by SCEA's proposed protective order are insufficient, or why this information is so sensitive that it must be treated differently than SCEA's trade secrets that they demand it produce.

**III.  THE COURT SHOULD ORDER THE CLASS REPRESENTATIVES TO PRODUCE THEIR ONLINE PSEUDONYMS**

The Internet sparked a historical revolution in the exchange of information, but also made it possible for individuals to anonymously engage in unlawful and other improper acts in a virtual world. One pertinent example is ongoing Internet communications regarding hacking the PS3.[27] SCEA requested that the Class Representatives produce the aliases they have used on the Internet which may lead to the discovery of evidence bearing on their adequacy, including if they have commented on this litigation or engaged in soliciting or assisting hacking.[28] But Class

---

[23] Class Reps' Opp. to Motion to Compel (Docket # 131), 3:3-4 and 9:24-12:9.
[24] Class Reps' Opp. to Motion to Compel (Docket # 131), 11:25-26 (emphasis added) (citing Consolidated Complaint, at 4-8).
[25] Class Reps' Opp. to Motion to Compel (Docket # 131), 11:27-12:2 (emphasis added).
[26] Class Reps' Opp. to Motion to Compel (Docket # 131), 12:3, 17:20-18:4.
[27] Ott Decl. ISO Opp. to Motion to Compel and Motion for Protective Order (Docket #130), ¶ 7, Ex. F; ¶ 9, Ex. H; ¶ 10, Ex. I; ¶ 11, Ex. J.
[28] SCEA's Motion to Compel (Docket #116), 22:3-23:8.

1  Representatives' refusal, based now on "privacy" and "freedom of speech" grounds, lacks any
2  compelling support.[29]

3  The only case they cite, *Doe v. 2TheMart.com Inc.*, is inapposite as it relates only to the
4  evaluation of a civil subpoena seeking the identities of anonymous Internet users.[30]  It has nothing
5  to do with the disclosure of information that will lead to discovery of a class representative's
6  online activities.  Those activities would otherwise be publicly accessible, but for the Class
7  Representatives' use of pseudonyms.  Of course, Class Representatives' online activities and
8  aliases would receive ample protection under the stipulated protective order SCEA proposed.
9  Class Representatives provide no explanation why this would not be sufficient.  Furthermore, the
10  First Amendment concerns related to compelling disclosure of the identities of anonymous
11  Internet users in *Doe v. 2TheMart.com, Inc.* is vastly different from Class Representatives'
12  concern.  With the disclosure limitations afforded by SCEA's proposed protective order, Class
13  Representatives' only true concern could be that SCEA and the Court will learn whether they
14  have been involved in nefarious Internet activities.

## IV. DOCUMENTS REGARDING THE FALSE WEBSITE POSTING

### A. The Court Should Strike Class Representatives' Addendum Brief

17  Despite the voluminous briefing to date, Class Representatives filed a four-page
18  addendum brief in addition to their twenty-five page opposition to SCEA's Motion to Compel.
19  This addendum brief solely relates to SCEA's Request for Production Number 28, seeking
20  documents related to a false posting on Mr. Ventura's counsel's website.[31]  As a transparent
21  attempt to avoid the District's twenty-five page limit on opposition briefs, the Court should strike
22  this addendum brief in its entirety.  *See Aircraft Tech. Pub. v. Avantext, Inc.*, 2009 WL 3833573,
23  *1 (N.D. Cal. Nov. 16, 2009) ("In an attempt to circumvent page limits imposed by the Local
24  Rules, [defendant] filed four Summary Judgment Motions, which collectively total fifty-nine
25  pages in length….  Because [the defendant's] briefs violate Local Rules and undermine the

---

[29] Class Reps' Opp. to Motion to Compel (Docket # 131), 23:21-24:9.
[30] 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001).
[31] Class Reps' Addendum Opp. to Motion to Compel (Docket # 133); *see also* SCEA's Motion to Compel (Docket #116), 23:9-24:20.

DLA PIPER LLP (US)   WEST\223058902.2     -8-     DEF.'S REPLY ISO MOTION TO COMPEL
CASE NO. 3:10-CV-01811 RS (EMC)

1  Court's administration of justice, the Court hereby strikes [the defendant's] Summary Judgment

2  Motions from the record on the ground that they were filed in violation of the Local Rules.")

3  (citing *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996) (holding that district court

4  has discretion to disregard briefs filed in circumvention of page limits)).[32]  SCEA's substantive

5  response to Class Representatives' addendum brief is submitted herewith.

6  **V.  CLASS REPRESENTATIVES' RETAINER AGREEMENTS ARE RELEVANT TO ADEQUACY AND ARE NOT PRIVILEGED**

7

8  Courts routinely order production of retainer agreements as probative of the class

9  representative's relationship with class counsel and potential conflicts with absent class

10  members.[33]  Class Representatives cite a smattering of cases from other jurisdictions, most of

11  which are based on an incorrect presumption referenced in a *dicta* statement by a Maryland

12  district court in *Mitchell-Tracey v. United General Title Insurance Co.*, that retainer agreements

13  are only relevant to whether the litigation is adequately funded.  There is no indication that this

14  court considered the obvious issue that the retainer agreement defines the scope of the

15  relationship between the class representative and class counsel.[34]  The *In re Google AdWords*

16  *Litigation* court's ruling is also distinguishable because it was based largely on the defendant's

17  failure to ask about the terms of the relationship during the plaintiffs' deposition.[35]  Finally, Class

18  Representatives' offer that SCEA simply ask them about the content of their retainer agreements

19  /////

---

[32] *See also Lamon v. Director, Calif. Dept. of Corrections*, 2009 WL 1911699, *8 (E.D. Cal. July 1, 2009) (failure to comply with the page restriction may result in sanctions, including restricted access to court and dismissal of the suit); *Knight v. Evans*, 2008 WL 5225863, *9 (N.D. Cal. Dec. 12, 2008) (briefs that exceed the page limit be returned without being filed).

[33] *See, e.g., Epstein v. American Reserve Corp.*, 1985 WL 2598, *3 (N.D. Ill. Sept. 18, 1985) (citing *Klein v. Henry S. Miller Residential Servs., Inc.*, 82 F.R.D. 6, 8-9 (N.D. Tex. 1978); *Armour v. Network Ass'n., Inc.*, 171 F. Supp. 2d 1044, 1048-49 & 1055-56 (N.D. Cal. 2001); *In re Quinus Sec. Litig.*, 148 F. Supp. 2d 967, 972 (N.D. Cal. 2001); *Bryant v. Mattel, Inc.*, 2007 WL 5430887, **1-2 (C.D. Cal. June 20, 2007); *Lim v. Citizens Sav. & Loan Assoc.*, 430 F. Supp. 802, 813 (D.C. Cal. 1976) (relying on *PDQ, Inc. of Miami v. Nissan Motor Corp. in U.S.A.*, 61 F.R.D. 372 (S.D. Fla. 1973)).

[34] *Mitchell-Tracey v. United General Title Ins. Co.*, 2006 WL 149105, **1-2 (D. Md. Jan. 9, 2006); *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 322 (N.D. Ohio 2009) (relying on *Mitchell-Tracey*); *Baker v. Masco Builder Cabinet Group, Inc.*, 2010 WL 3862567, **3-4 (D. S.D. Sept. 27, 2010) (relying on *Mitchell-Tracey*); *In re Google AdWords Litig.*, 2010 WL 4942516, *3 (N.D. Cal. Nov. 12, 2010) (relying on *Mitchell-Tracey*).

[35] 2010 WL 4942516, *5.

in deposition begs the question of whether the information is discoverable and instead opens the door to hearsay objections regarding the contents of a written contract.

## VI. THE COURT SHOULD ORDER THE CLASS REPRESENTATIVE TO APPEAR FOR THEIR DEPOSITIONS

While the parties dispute Class Representatives' characterization of the events that led to this discovery dispute, there is no dispute that a court may only reopen a deposition under particular circumstances.[36] Whether such circumstances are present cannot be resolved until after the depositions have commenced.[37] Class Representatives' refusal to appear simply because SCEA may have a justification later to reopen their deposition improperly allows them to control the timing SCEA's discovery. No further deposition will be necessary if the relevant responsive documents and evidence are produced now – it is only Class Representatives' failure to comply with discovery obligations that poses the potential they may have to appear more than once.[38] As part of its order compelling discovery, the Court should therefore order the Class Representatives to appear promptly for their depositions.

## VII. AS A RESULT OF SCEA'S MOTION, CLASS REPRESENTATIVES HAVE NOW REVERSED THEIR POSITION REGARDING SCEA'S DOCUMENT REQUESTS

### A. The Court Should Order The Class Representatives To Provide An Unconditional Confirmation Of Their Production

Class Representatives reversed their position with regard to a substantial number of SCEA's document demands only days before and again weeks after SCEA filed its Motion to Compel. *See* Sections VII(B)-(D), *infra*. But Class Representatives have caveated their production to documents in their "custody or control"[39] rather than all documents in their "possession, custody and control," the phrase they use repeatedly in their own discovery motions to describe the scope of SCEA's discovery obligation.[40] Indeed, their representation that they

---

[36] *See* SCEA's Opp. Motion to Compel (Docket #125), 13:18-14:6; Class Reps' Opp. to Motion to Compel (Docket # 131), 25:6-7.
[37] SCEA's Opp. Motion to Compel (Docket #125), 14:7-15:8.
[38] *Id.*
[39] *See, e.g.,* Class Reps' Opp. to Motion to Compel (Docket # 131), i:22, 15:6, 15:28-16:1, 16:6, 16:10, and 16:16-17.
[40] *See, e.g.,* Class Reps' Motion to Compel (Docket #112), 1:22-24, 2:10, 2:18-19, and 3:11.

1  have "searched their personal computers for, and produced, all documents responsive to requests

2  other than those to which [they] objected" provides no assurance as they have objected to all of

3  SCEA's requests.[41] Their position that they need not produce documents collected by their

4  counsel on their behalf, as set forth in their Motion for Protective Order and illustrated by their

5  filing of an addendum brief ostensibly by Mr. Ventura's counsel (Docket #133), is also contrary

6  to their discovery obligation as well as the representation that they have produced all documents

7  in their "control."[42] The Court's ruling should include an order requiring Class Representatives to

8  unconditionally confirm their production.[43]

### B. SCEA Has No Ability To Confirm Or Refute Class Representatives' Asserted Production Because They Have Not Identified Documents Responsive to SCEA's Requests

Shortly before and after SCEA filed its Motion to Compel, Class Representatives produced a handful of documents, and only now – in their opposition brief – inform SCEA that within those productions are documents responsive to its Requests for Production Numbers 2, 4, 5, 8 and 26.[44] They provide no explanation as to why they refused to produce these documents until after SCEA was required to file a motion to compel. In addition, SCEA has no ability to ascertain which documents within these productions are responsive to any of its specific requests because Class Representatives have failed to "organize and label them to correspond to the categories in the request[s]," as required by Rule 34.[45] In the beginning of December 2010,

---

[41] Class Reps' Opp. to Motion to Compel (Docket # 131), 14:14-16.
[42] Class Reps' Motion for Protective Order (Docket #111), 22:4-23:7; SCEA's Opp. to Motion for Protective Order (Docket #125), 20:14-21:4.
[43] *See McColm v. San Francisco Housing Authority*, 2007 WL 218920, *3 (N.D. Cal. Jan. 29, 2007) ("Finally, with respect to every document request, Plaintiff claims that she has 'conducted a diligent search of documents to which she has current access, custody, and control,' and 'believes' she is not in possession of documents responsive to these requests, except for those that are 'equally available to Defendant.' This response is inadequate. Plaintiff must produce copies of all documents responsive to any of these requests. The response is flawed for another reason: Plaintiff appears to limit her search to documents to which she has 'current access' and believes she is not 'currently in possession' of responsive documents. It may be that after a diligent search, Plaintiff determines that she has no documents that are responsive to any of the Document Requests. If that is the case, she should state so clearly and without equivocation. However, Plaintiff should understand that if she states in response to a Document Request that she has no such documents, she may later be precluded from introducing into evidence any documents in her possession that are responsive to these requests, but were not produced to A-1 Security.").
[44] Class Reps' Opp. to Motion to Compel (Docket # 131), 16:18-17:3 and 23:5-20.
[45] Fed. R. Civ. P. 34(b)(2)(E)(i) ("Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information…(i) A party must

1  SCEA inquired if the Class Representatives would provide an index pursuant to Rule 34, and
2  offered as a compromise to Rule 34 that the parties each produce an index describing the
3  categories of documents produced by bates number.[46]  After failing to respond to this request for
4  over a month, on the eve of this filing, Class Representatives finally agreed to this compromise
5  offering to produce an index only after the deadline for this reply brief.[47]  Pursuant to this Court's
6  Standing Order, they also asserted that "all materials we agreed to produce that were locatable
7  after diligent searches of all locations at which such materials might plausibly exist have been
8  produced."[48]  Of course, this is belied by the fact that, in their opposition, they refuse to search for
9  documents in obvious locations where documents may be found, state only that they have
10 produced documents in their "custody and control," and inconsistently state that they have
11 produced responsive documents and argue that they need not produce documents in response to
12 the request that demands production of those documents.

### C.  Class Representatives' Position Regarding Their Production Of The Documents They Relied On Is Inconsistent

15 Class Representatives now claim that they have produced all documents in their "custody
16 and control" responsive to the request seeking documents on which they relied in purchasing a
17 PS3, *i.e.*, SCEA's Request for Production No. 14.[49]  But to the contrary, they have refused to
18 search for electronic documents, including items they previously found on the Internet,[50] say they
19 will produce "additional responsive documents as they are discovered," and disclaim their
20 obligation to do more, supposedly because responsive documents "will likely come from SCEA
21 itself."[51]  In other words, Class Representatives (and their counsel) apparently intend to review
22 the documents SCEA produces to determine which documents they themselves claim to have

---

produce documents as they are kept in the usual course of business or ***must organize and label them to correspond to the categories in the request*****….**") (emphasis added).
[46] Declaration of Carter Ott ISO SCEA's Reply ISO Motion to Compel ("Ott Reply Decl."), ¶ 2, Ex. A (12/9/10 email; 12/21/10 email; 12/23/10 email).
[47] *Id.* (1/25/11 email).
[48] *Id.*
[49] Class Reps' Opp. to Motion to Compel (Docket # 131), 15:25-16:1; SCEA's Motion to Compel (Docket #116), 14:17-15:10.
[50] Class Reps' Opp. to Motion to Compel (Docket # 131), 16:5-17.
[51] Class Reps' Opp. to Motion to Compel (Docket # 131), 16:2-5.

1  relied upon in purchasing their PS3s.  The Court should enter an order requiring Class

2  Representatives to either produce responsive documents now or be precluded from using them in

3  the future.  *See McColm*, 2007 WL 218920, at *3, *supra*.

4      *Gary Price Studios, Inc. v. Randolph Rose Collection, Inc.* provides no support for Class

5  Representatives' arguments that they need not produce the documents they reference in their

6  Amended Initial Disclosures.  Preclusive sanctions were not entered there because no injury

7  occurred as a result of the failure to produce and the court explicitly declined to reach the issue of

8  whether documents accessible from the Internet are in a party's possession, custody, or control.[52]

9      **D.**    **Class Representatives' Recent Production Confirms The Appropriateness Of SCEA's Discovery Requests**

10

11      After refusing to produce any documents supporting thirteen paragraphs of the

12  Consolidated Complaint,[53] Class Representatives have reversed course and now say they have

13  produced all documents in their "custody or control" responsive to these requests[54]

14  notwithstanding that the requests are "premature."[55]  Production of documents referenced in a

15  pleading, as well as in initial disclosures, made more than eight months into litigation could

16  hardly be described as "premature" and their disclosure obligation is unambiguous.

17      Furthermore, the basis for their argument, that these are "contention document requests"

18  and should therefore be treated like contention interrogatories, lacks any factual or legal basis.

19  First, these requests are by their nature different.  Responses to interrogatories are typically

20  drafted by counsel, based on factual and legal matters determined through discovery.  By contrast,

21  the requests seek production of documents, if any exist, on which the Class Representatives based

22  their conclusions that they have been wronged.  In addition, unlike responses to contention

23  interrogatories, the documents on which the Class Representatives have based their allegations

24  and their decision to sue SCEA are critical to their deposition cross-examination.

---

[52] 2005 WL 1924733 (S.D.N.Y. Aug. 9, 2005).
[53] SCEA's Motion to Compel (Docket #116), 19:11-21:8.
[54] Class Reps' Opp. to Motion to Compel (Docket # 131), 19:21-22 ("Plaintiffs have produced all such documents in their custody and control."); *see also* SCEA's Motion to Compel (Docket #116), 21:9-14.
[55] Class Reps' Opp. to Motion to Compel (Docket # 131), 18:17-20:4.

Courts regularly approve requests seeking the production of documents and evidence supporting specific assertions in the plaintiff's complaint. *See, e.g., Beckner v. El Cajon Police Dept.*, 2008 WL 2033708 (S.D. Cal. May 9, 2008) (ordering plaintiff to produce documents responsive to requests for "all documents supporting his contention that [d]efendants 'denied [him] proper medical care with deliberate indifference,' that [d]efendants 'denied [him] health care,' and which 'support [his] claim for economic damages.'").[56] Of the numerous cases Class Representatives cite, only two relate to document requests, and in those instances the courts did not distinguish treatment of interrogatories and document demands.[57] Moreover, both cases are questionable authority from distant courts that were not subjected to appellate scrutiny. In fact, one refers to these requests as something the defendant had "invent[ed]," and assumed that the defendant was demanding the plaintiff's "trial exhibit list."[58]

## VIII. CONCLUSION

Based on the foregoing, as well as the arguments set forth in its opening brief, defendant Sony Computer Entertainment America LLC respectfully requests that the Court enter an order compelling the Class Representatives to produce the documents and things requested and appear for deposition.

Dated: January 26, 2011

DLA PIPER LLP (US)

By: /s/ Luanne Sacks
LUANNE SACKS
Attorneys for Defendant
SONY COMPUTER ENTERTAINMENT AMERICA LLC

---

[56] *See also Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, 2005 WL 1459555, at *6 (N.D. Cal. June 21, 2005) ("There is nothing unusual about a discovery request asking Plaintiffs to produce or identify documents relating to or supporting allegations made in their FAC. Moreover, this is not a situation where Plaintiffs are requested to produce a compilation of documents, but only documents referenced in their FAC. Therefore, Defendants are entitled to know the factual basis of Plaintiffs' claims in order to prepare for trial."); *Peterson v. California Depart. of Corrections and Rehab.*, 2006 WL 2522410, at *2 (E.D. Cal. Aug. 30, 2006); *Woods v. Kraft Foods, Inc.*, 2006 WL 2724096, *7 (E.D. Cal. Sept. 22, 2006).
[57] *See In re Bulk Popcorn Antitrust Litig.*, 1990 WL 123750 (D. Minn. June 19, 1990); *Bonilla v. Trebol Motors Corp.*, 1997 WL 178844 (D.P.R. Mar. 27, 1997).
[58] *Bonilla*, 1997 WL 178844 at **65-66, *supra*.