**\*\*E-filed 2/17/11\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SONY PS3 OTHER OS LITIGATION | No. C 10-1811 RS<br><br>**ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND, AND DENYING MOTION TO STRIKE** |

## I. INTRODUCTION

In 2006, defendant Sony Computer Entertainment America LLC introduced the PlayStation® 3 ("PS3") gaming system. Plaintiffs in this putative class action contend that Sony promoted the PS3 as having capabilities beyond those of prior game consoles, including specifically an "Other OS" feature, which enabled users to install Linux or other operating systems and use the devices as personal computers. In 2010, Sony released a software update for the PS3 that, among other things, intentionally disabled the Other OS feature, ostensibly for the purpose of enhancing security or protecting intellectual property. Although PS3 owners had the choice of declining to install the software update, without it they would no longer have access to certain online features

and entertainment, and would be unable to play any new games that might require the update to function.

In the operative Consolidated Complaint, plaintiffs seek damages and/or an injunction that would require Sony to restore the Other OS feature. Sony moves to dismiss, arguing that all of plaintiffs' claims for relief contain pleading defects, and more fundamentally, that under the facts pleaded and the terms of the written warranty and software license agreement that accompany PS3 systems, it had every right to disable the Other OS feature when providing software updates that users were free to accept or decline. While it cannot be concluded as a matter of law at this juncture that Sony could, without legal consequence, force its customers to choose either to forego installing the software update or to lose access to the other OS feature, the present allegations of the Complaint largely fail to state a claim. Accordingly, with the exception of one count, the motion to dismiss will be granted, with leave to amend. Sony's further request for a ruling as to viability of this matter proceeding as a class action is premature, and therefore its motion to strike the class allegations will be denied.

## II. BACKGROUND

Plaintiffs contend that when Sony introduced the PS3, it touted it as "the most advanced computer system that serves as a platform to enjoy next generation computer entertainment." Plaintiffs identify four "core" attributes of the system, in addition to stand-alone game play, that Sony purportedly advertised widely: (1) a built-in Blu-ray disc player, (2) access to online gaming through the PlayStation Network ("PSN"), (3) the Other OS feature, and (4) the capability to receive software (or "firmware") updates to maintain and enhance system functionality.

In 2009, Sony introduced a new model of the PS3 that eliminated the Other OS feature. At that time, however, Sony assured owners of older PS3 systems that they would continue to have access to the feature on their machines. In 2010, however, Sony issued Firmware Update 3.21. If a user downloaded Update 3.21, it would disable the Other OS feature. Users who chose not to download the update lost access to PSN and would not be able to use any future games, Blu-ray video discs, or other features that might require it. According to the Complaint, Sony initially stated

that disabling the Other OS feature was intended to enhance the "security" of users' systems, but it later admitted that the purpose was to "protect the intellectual property of the content offered on the PS3 system."[1]

### III. LEGAL STANDARDS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); see also *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of

---

[1] This appears to imply that disabling to Other OS feature was intended to make it more difficult to evade protections against copying game and video disks.

United States District Court
For the Northern District of California

the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. U.S.A.,* 317 F.3d 1097, 1106 (9th Cir. 2003).

### III.  DISCUSSION

A.  <u>Breach of Express Warranty</u>

Under California law, to prevail on a breach of express warranty claim a plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise, or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached. *Weinstat v. Dentsply Intern. Inc*., 180 Cal. App. 4th 1213, 1227 (2010); California Uniform Commercial Code § 2313; *see also Keith v. Buchanan*, 173 Cal.App.3d 13, 20 (1985)).

Plaintiffs' express warranty claim is based on a variety of statements appearing in such places as the PS3 user manual, the Sony website, and in publicity materials. Some of the statements do not refer to the availability of the Other OS Feature except by implication.  For example plaintiffs rely on comments by Sony officials that the PS3 "is clearly a computer," and allows users to "play games, watch films, browse the Web, and use other computer functions."  While other statements, such as those allegedly appearing in the user manual or on the website, explicitly refer to installing another operating system, such as Linux, none of them can reasonably be characterized as a "promise," and it is difficult to discern exactly what "affirmation of fact" or "description of the goods" those statements comprise that plaintiffs contend constitutes the warranty.  For this reason alone further clarification in the pleading is necessary, at a minimum.

More fundamentally, even assuming that plaintiffs have already pleaded, or subsequently plead, that Sony made an express affirmation of fact, or description of the PS3, that the system included the Other OS feature at the time they made their purchases, they must still somehow address the temporal aspect of the express warranty claim they are attempting to make.  Plaintiffs are *not* suggesting that their PS3 systems lacked the other OS feature when they acquired them. Plaintiffs must therefore either allege that Sony made some express representations as to the *continued* availability of that feature, or they will have to show both that there were implied

4

representations as to continued availability *and* that an express warranty claim may legally proceed even where it is based in part on such implied representations.[2]

Finally, Sony also argues that the express warranty claim fails because plaintiffs have not adequately alleged that they read or heard the purported statements and relied on them in making their purchases. In fact, the named plaintiffs allegedly each conducted "extensive research on the Internet" prior to choosing the PS3 over competing systems, and in most instances specifically reviewed the representations on Sony's website. Moreover, actual reliance is no longer an element of an express warranty claim under California law. *Weinstat*, *supra*, 180 Cal. App. 4th 1213, 1227 ("Pre-Uniform Commercial Code law governing express warranties required the purchaser to prove reliance on specific promises made by the seller . . . . The Uniform Commercial Code, however, does not require such proof.") Nevertheless, in light of the issues identified above, the express warranty claim must be dismissed, with leave to amend.

B. <u>Breach of Implied Warranty</u>

Plaintiffs assert two counts for breach of implied warranty—one for the general warranty of merchantability, and one for a warranty of fitness for a particular purpose. Sony contends that both counts fail for two reasons. First, Sony points out that plaintiffs are not in privity with it, as they purchased their PS3 systems from independent retailers, not Sony itself. Plaintiffs acknowledge that privity is absent in a strict sense, but argue that it should not be required. Relying on *U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal.App.3d 1431 (1991), plaintiffs suggest that their implied warranty claim is viable because they had "direct dealings" with Sony—i.e., they obtained and

---

[2] Sony argues that it would make no sense to have any warranty liability for disabling the Other OS feature after the expiration of the one year written warranty it provided on the PS3 systems when they were sold. As Sony points out, had a plaintiff's PS3 failed completely after one year, he or she would have no recourse. Certainly, were plaintiffs complaining that the Other OS feature no longer functioned as the result of the failure of some system component, the terms of the written warranty likely would govern. Contrary to Sony's contention, however, it would not be irrational to apply a different rule to a manufacturer's *deliberate* disabling of a product feature on machines that were otherwise still functioning as originally marketed and sold. Whether a claim would sound in warranty, or only under some other legal theory, however, remains to be seen.

1 installed Update 3.21 directly from Sony's website, and their purchases of PS3 systems, "inherently
2 and necessarily included access" to PSN.

3        In *U.S. Roofing*, however, the question was whether the plaintiff had purchased a crane
4 directly from its manufacturer or indirectly through a third party that provided financing. *See* 228
5 Cal.App.3d at 1441 ("The trial court . . . determined that the identity of the parties to the sale was a
6 factual issue for the jury to decide.") Among other things, there was evidence that the plaintiff had
7 paid substantial sums directly to the manufacturer. *Id.* at 1438. In *U.S. Roofing,* the court
8 concluded that the jury's finding of a breach of implied warranty could stand because there was
9 substantial evidence to support a conclusion that the crane was sold pursuant to an oral agreement
10 between the manufacturer and the plaintiff, not because there is some "exception" to the privity
11 requirement where there are some "direct dealings" to which a plaintiff can point. Here, there is no
12 dispute that plaintiffs purchased their PS3 systems from retailers, and that at no time did they make
13 any direct payments for the systems to Sony. Accordingly, *U.S. Roofing* aids them little.[3]

14        Plaintiffs also rely on dicta in *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212 (2006),
15 suggesting that the privity requirement for an implied warranty claim might be "relaxed" where
16 plaintiff had also alleged actual reliance on an express warranty to the same effect. The *Atkinson*
17 dicta, however, is not consistent with clear California precedent that privity remains a requirement
18 in implied warranty claims even though it has been eliminated in express warranty claims. *See*
19 *Blanco v. Baxter Healthcare Corp.,* 158 Cal.App.4th 1039, 1058-59 (2008); *Evraets v. Intermedics*
20 *Intraocular, Inc*. 29 Cal.App.4th 779, 788 (1994); *see also Postier v. Louisiana-Pacific Corp,* 2009
21 WL 3320470, *6 (N.D. Cal. 2009) ("*Atkinson* appears to be an anomaly"). Accordingly, plaintiffs
22 have not established that an exception to the privity rule applies here.

23        Sony's second challenge to both breach of implied warranty counts asserts that plaintiffs
24 have failed to allege the PS3 systems were defective at the time of purchase. Plaintiffs' theory,
25 however, is that their purchase of the systems included the right to future updates that would

---

[3] Plaintiffs argue that at least in some cases they pay monies directly to Sony in connection with using PSN. That would not, however, support a conclusion that Sony was the seller in the transactions by which plaintiffs acquired their PS3 systems.

maintain and enhance the functionality of the machines. If their claim is otherwise viable, the fact that the problem did not arise until delivery of Update 3.21 will not be dispositive.

Sony further attacks the count for breach of the implied warranty of merchantability on grounds that the warranty only "provides for a minimum level of quality." At the pleading stage, though, it is not feasible to determine whether providing a PS3 that lacks only the Other OS feature would satisfy the warranty implied under all the circumstances of the original sales.

Finally, Sony contends that the count for breach of the implied warranty of fitness for a particular purpose lacks allegations that Sony has "reason to know" of plaintiffs' desire to use the Other OS feature indefinitely. Plaintiffs respond that Sony had every reason to know that consumers would expect to have access to all the features advertised and promoted by Sony. While that may be true, at least in the abstract, it is unclear what "special purpose" plaintiffs contend the systems failed to serve.

Accordingly, the implied warranty claims must be dismissed. Although it is not clear how plaintiffs may be able to cure the privity problem, leave to amend will be granted.

### C. Magnuson-Moss Warranty Act

Plaintiffs assert a count under the Magnuson-Moss Warranty Act, 15 U.S.C. section 2301 *et seq.*, which provides a federal private right of action for state law warranty claims. 15 U.S.C. § 2301(d)(1). With exceptions not implicated here, "disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008). Accordingly, the Magnuson-Moss Act count will be dismissed, with leave to amend.

### D. California Consumer Legal Remedies Act ("CLRA")

Plaintiffs contend Sony violated three provisions of the CLRA – California Civil Code subsections 1770(a)(5), (7), and (9), which prohibit "representing" or "advertising" goods or services in a false or misleading manner. For the same reasons discussed above in the context of breach of express warranty, plaintiffs must more clearly identify the particular representations on

which they rely, and articulate why they were false or misleading. Such specificity is all the more important here, because the CLRA claims sound in fraud, thereby implicating Rule 9(b). *See Vess v. Ciba-Geigy Corp.,* 317 F.3d 1097, 1103-1104 (9th Cir. 2003) (finding Rule 9(b) applicable to CLRA claim). Again, plaintiffs must address the fact that none of the representations they have thus far identified include any *express* promise that the Other OS feature would be available indefinitely or for any particular period of time.[4] Accordingly, the CLRA claim will be dismissed, with leave to amend.[5]

### E. Unjust enrichment

Sony contends, and plaintiffs concede, that California law does not recognize a separate claim for "unjust enrichment." *See Jogani v. Superior Court*, 165 Cal.App.4th 901, 911 (2008). Plaintiffs nonetheless argue that they have alleged facts sufficient to give rise to an equitable remedy of "restitution," regardless of the precise label. The complaint, however, does not presently articulate a sufficient basis for relief. Among other things, plaintiffs have not adequately explained how Sony has been wrongfully "enriched" or what payments they made to Sony that should now be returned. Accordingly, this claim for relief will be dismissed, with leave to amend.

---

[4] Plaintiffs may very well be able to state a claim even in the absence of any such express promises, provided they sufficiently allege factual circumstances from which a trier of fact could conclude that Sony's express statements about the Other OS feature were at least misleading in light of Sony's retention of a purported right to disable it at any time. While plaintiffs argue that the present complaint does exactly that, the ultimate viability of such a theory is more appropriately addressed in light of such amended allegations as plaintiffs may offer.

[5] Sony also argues that the CLRA claim is defective insofar as it alleges that Sony included unconscionable provisions in its software license agreement for the PS3. While a conclusive determination must await any amended complaint, it presently appears that the issue may not be subject to resolution in Sony's favor at the pleading stage.

### F. Unfair Competition Law ("UCL")

Plaintiffs seek "restitution" under California's UCL, Cal. Bus. & Prof. Code §§ 17200 *et seq.*[6] As with their claim for "unjust enrichment," plaintiffs have failed to allege sufficient facts showing sums paid by them to Sony that should be refunded. Furthermore, as plaintiffs impliedly concede, these claims are largely or wholly dependent on their ability to plead successfully one or more of their other claims. Accordingly, the counts under the UCL will also be dismissed, with leave to amend.

### G. Conversion

"Conversion is the wrongful exercise of dominion over the property of another." *Oakdale Village Group v. Fong* 43 Cal.App.4th 539, 543-544 (1996). The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. *Id.* As *Oakdale* explains, "[i]t is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." *Id*. Nevertheless, the facts alleged by plaintiffs here do not show that Sony assumed control or ownership of any of plaintiffs' property, or applied any such property to its own use. Accordingly, the conversion claim must be dismissed, with leave to amend.

### H. Computer Fraud and Abuse Act ("CFAA")

Plaintiffs contend that Sony violated the CFAA by "knowingly caus[ing] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caus[ing] damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A)(i). Sony argues that it did not act "without authorization" either because the terms of the software license

---

[6] While Sony does not expressly address the fact that the complaint contains a separate count under Cal. Bus. & Prof. Code §§ 17500 *et seq.* for false advertising, the same issues apply.

9

permitted it to take the actions it did, or because plaintiffs' "voluntarily" downloaded Update 3.21, knowing the effect it would have. At this juncture, Sony has not conclusively established that disabling a PS3 capability of the nature of the Other OS feature is within the scope of the license agreement provisions on which it relies, nor has it shown that those plaintiffs who downloaded the Update thereby necessarily "authorized" the removal of the feature within the meaning of the statute. Accordingly, this prong of the motion will be denied, without prejudice to Sony's ability to challenge any CFAA claim in an amended complaint, based on the same or expanded arguments.

I. Motion to strike

Sony urges the Court to conclude at this juncture that plaintiffs' class allegations are untenable, rather that awaiting class certification proceedings. Under the circumstances here, Sony has not persuasively shown that the relevant issues are more appropriately addressed at the pleading stage, or even that the appropriateness of class certification necessarily could be determined based solely on the allegations of the complaint. Accordingly, the motion to strike will be denied.

IV. CONCLUSION

Sony's motion to dismiss is granted, with the exception of the claim under CFAA. The motion to strike is denied. Plaintiffs shall file any amended complaint within 20 days of the date of this order.

IT IS SO ORDERED.

Dated: 2/17/11

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

10