LUANNE SACKS, Bar No. 120811
luanne.sacks@dlapiper.com
CARTER W. OTT, Bar No. 221660
carter.ott@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel: 415.836.2500
Fax: 415.836.2501

JOSEPH COLLINS (*Pro Hac Vice*, Ill. Bar No. 06238527)
joseph.collins@dlapiper.com
**DLA PIPER LLP (US)**
203 North LaSalle Street, Suite 1900
Chicago, IL 60601-1293
Tel: 312.368.4000
Fax: 312.236.7516

Attorneys for Defendant
SONY COMPUTER ENTERTAINMENT AMERICA LLC
(erroneously sued as "Sony Computer Entertainment America
Inc.")

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re SONY PS3 "OTHER OS" LITIGATION | CASE NO. 3:10-CV-01811 RS (EMC)<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: May 12, 2011<br>Time: 1:30 p.m.<br>Judge: Hon. Richard Seeborg<br>Courtroom: 3 |

1

**TABLE OF CONTENTS**

2

**Page**

3

NOTICE OF MOTION; MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

I.       INTRODUCTION ........................................................................................................... 1

II.      PLEADING STANDARDS............................................................................................. 3

III.     PLAINTIFFS ONCE AGAIN FAIL TO ALLEGE ANY WRITTEN PROMISE
         REGARDING THE UNCONDITIONAL AND PERPETUAL AVAILABILITY
         OF THE OTHER OS FEATURE .................................................................................... 4

IV.      PLAINTIFFS' AMENDED IMPLIED WARRANTY CLAIMS CONTINUE TO
         LACK THE REQUISITE VERTICAL PRIVITY AT THE TIME OF SALE.................. 6

V.       PLAINTIFFS' FAILURE TO PLEAD AN EXPRESS OR IMPLIED
         WARRANTY CLAIM DOOMS THEIR MAGNUSON-MOSS WARRANTY
         ACT CLAIM.................................................................................................................... 8

VI.      PLAINTIFFS CANNOT SUCCEED ON THEIR CLRA CLAIM.................................... 9

         A.       Plaintiffs Have Failed To Establish SCEA Made Any Misrepresentation At
                  Or Before The Time Of Sale.............................................................................. 9

         B.       Plaintiffs' "Unconscionability" Claim Also Fails................................................ 12

VII.     PLAINTIFFS' AMENDED COMPUTER FRAUD AND ABUSE ACT CLAIM
         FAILS TO ESTABLISH AN "UNAUTHORIZED" ACT .............................................. 13

VIII.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF
         LAW AND FACT............................................................................................................ 16

IX.      PLAINTIFFS CANNOT SUCCEED ON THEIR UCL AND FAA CLAIMS ................ 18

         A.       Plaintiffs Lack Standing to Assert Claims Under the UCL and FAA ................. 18

         B.       Plaintiffs Fail To Allege Any Unlawful Conduct ................................................ 19

         C.       Plaintiffs Fail To Satisfy Rule 9(b) .................................................................... 19

X.       MEMBERSHIP IN PLAINTIFFS' AMENDED CLASSES IS NOT
         ASCERTAINABLE........................................................................................................ 20

XI.      CONCLUSION............................................................................................................... 21

21

22

23

24

25

26

27

28

DEF.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMO. PS & AS
CASE NO. 3:10-CV-01811 RS (EMC)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adashunas v. Negley*,
626 F.2d 600 (7th Cir. 1980) .......................................................................................... 21

*Aiken v. Obledo*,
442 F. Supp. 628 (E.D. Cal. 1977) .................................................................................. 21

*Anunziato v. eMachines*,
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ............................................................................ 6

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ......................................................................................... 4, 12, 17

*AtPac, Inc. v. Aptitude Solutions, Inc.*,
730 F. Supp. 2d 1174 (E.D. Cal. 2010) .......................................................................... 16

*Baba v. Hewlett-Packard Co.*,
2010 WL 2486353 (N.D. Cal. June 16, 2010) ................................................................ 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................... 4, 17

*Benito v. Indymac Mortgage Servs.*,
2010 WL 2089297 (D. Nev. May 21, 2010) ................................................................... 21

*Berenblat v. Apple, Inc.*,
2009 WL 2591366 (N.D. Cal. Aug. 21, 2009) ................................................................ 11

*Buckland v. Threshold Enterprises, Ltd*,
155 Cal. App. 4th 798 (2007) ......................................................................................... 18

*Burr v. Sherwin Williams Co.*,
42 Cal. 2d 682 (1954) ...................................................................................................... 6

*Caro v. Procter & Gamble Co.*,
18 Cal. App. 4th 644 (1993) ........................................................................................... 12

*Citizens of Humanity, LLC v. Costco Wholesale Corp.*,
171 Cal. App. 4th 1 (2009) ............................................................................................. 18

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) .......................................................................................... 6

*Committee on Children's Television v. General Foods Corp.*,
35 Cal. 3d 197 (1983) ..................................................................................................... 20

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Consumer Advocates v. Echostar Satellite Corp.*,

4

    113 Cal. App. 4th 1351 ................................................................................................ 10

5

*Cooper v. Pickett*,

    137 F.3d 616 (9th Cir. 1997).......................................................................................... 4

6

*Daugherty v. American Honda Motor Co., Inc.*,

7

    144 Cal. App. 4th 824 (2006) ................................................................................. 11, 18

8

*DeBremaecker v. Short*,

    433 F.2d 733 (5th Cir. 1970).......................................................................................... 20

9

*Deitz v. Comcast Corp.*,

10

    2007 WL 2015440 (N.D. Cal. July 11, 2007).............................................................. 20

11

*Egilman v. Keller & Heckham, LLP*,

12

    401 F. Supp. 2d 105 (D.D.C. 2005) ............................................................................. 13

13

*Eminence Capital, LLC v. Aspeon, Inc.*,

    316 F.3d 1048 (9th Cir. 2003)....................................................................................... 22

14

*Foman v. Davis*,

15

    371 U.S. 178 (1962)...................................................................................................... 22

16

*Genna v. Digital Link Corp.*,

17

    25 F. Supp. 2d 1038 (N.D. Cal. 1997) ......................................................................... 19

18

*Hall v. Time, Inc.*,

    158 Cal. App. 4th 847 (2008) ....................................................................................... 12

19

*Haskell v. Time, Inc.*,

20

    857 F. Supp. 1392 (E.D. Cal. 1994).............................................................................. 10

21

*Hoey v. Sony Electronics, Inc.*,

22

    515 F. Supp. 2d 1099 (N.D. Cal. 2007) ....................................................................... 11

23

*In re Apple and ATTM Antitrust Litig.*,

    2010 WL 3521965 (N.D.Cal. Jul. 8, 2010)................................................................... 14

24

*In re Gilead Scis. Sec. Litig.*,

25

    536 F.3d 1049 (9th Cir. 2008)......................................................................................... 3

26

*In re NASDAQ Market-Makers Antitrust Litig.*,

27

    169 F.R.D. 493 (S.D.N.Y. 1996) ................................................................................. 17

28

1

## TABLE OF AUTHORITIES
(continued)

2

**Page**

3

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
--- F. Supp. 2d ----, 2010 WL 4892114 (S.D. Cal. Nov. 30, 2010)................................... 11, 20

4

5

*In re Sony PS3 Litig.*,
No. C 09-4701 RS, 2010 WL 3324941 (N.D. Cal. Aug. 23, 2010).................................... 7, 18

6

*Johnson v. Riverside Healthcare Sys.*,
534 F.3d 1116 (9th Cir. 2008).......................................................................................... 3

7

8

*Kasky v. Nike, Inc.*,
27 Cal. 4th 939 (2002) ...................................................................................................... 20

9

*Keith v. Buchanan*,
173 Cal. App. 3d 13 (1985)............................................................................................ 4, 5

10

11

*Korea Supply v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ............................................................................................... 18, 19

12

13

*Kraus v. Trinity Management Services, Inc.*,
23 Cal. 4th 116 (2000) ...................................................................................................... 19

14

*Leong v. Square Enix of Am. Holdings, Inc.*,
2010 WL 1641364 (C.D. Cal. Apr. 20, 2010) ....................................................................... 12

15

16

*Long v. Hewlett-Packard Co.*,
2007 WL 2994812 (N.D. Cal. July 27, 2007)....................................................................... 11

17

18

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009)........................................................................................... 14

19

*Marceau v. Blackfeet Hous. Auth.*,
540 F.3d 916 (9th Cir. 2008).............................................................................................. 3

20

21

*Mazur v. eBay, Inc.*,
257 F.R.D. 563 (N.D. Cal. 2009) ....................................................................................... 21

22

23

*Meridian Project Systems, Inc. v. Hardin Const. Co. LLC.*,
426 F. Supp. 2d (E.D. Cal. 2006)................................................................................... 12, 13

24

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001).............................................................................................. 3

25

26

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................................ 11

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*One Beacon Ins. Co. v. Crowley Marine Servs..*,
4
   2010 WL 1463451, *5 (S.D. Tex. April 12, 2010) ................................ 15

5

*Osborne v. Subaru of America, Inc.*,
   198 Cal. App. 3d 646 (1988) ...................................................... 6

6

*Outboard Marine Corp. v. Superior Court*,
7
   52 Cal. App. 3d 30 (1975) ........................................................ 12

8

*Pence v. Andrus*,
   586 F.2d 733 (9th Cir. 1978) ..................................................... 17

9

*Pennsylvania R. Co. v. City of Girard*,
10
   210 F.2d 437, 440 (6th Cir. 1954) ................................................. 2

11

*People v. Orange County Charitable Services*,
12
   73 Cal. App. 4th 1054 (1999) .................................................... 20

13

*Purdum v. Holmes*,
   2010 WL 2951617 (Cal. App. July 29, 2010) ...................................... 13

14

*Sabella v. Wisler*,
15
   59 Cal. 2d 21 (1963) ............................................................ 11

16

*Scott v. Aetna Services, Inc.*,
17
   210 F.R.D. 261 (D. Conn. 2002) .................................................. 20

18

*Seely v. White Motor Co.*,
   63 Cal. 2d 9 (1965) ............................................................. 11

19

*Skelton v. General Motors Corp.*,
20
   660 F.2d 311 (7th Cir. 1981) ..................................................... 8

21

*Sprewell v. Golden State Warriors*,
22
   266 F.3d 979 (9th Cir. 2001) ..................................................... 3

23

*Stearns v. Select Comfort Retail Corp.*,
   2009 WL 1635931 (N.D. Cal. 2009) ................................................ 8

24

*Trans World Airlines v. Curtiss-Wright Corp.*,
25
   148 N.Y.S. 2d 284 (1955) ....................................................... 11

26

*United States Roofing, Inc. v. Credit Alliance Corp.*,
27
   228 Cal. App. 3d 1431 (1991) .................................................. 6, 7

28

-v-

1

### TABLE OF AUTHORITIES
(continued)

2

**Page**

3

*US Bioservices Corp. v. Lugo*,

4
    595 F. Supp. 2d 1189 (D. Kan. 2009) .................................................................. 13

5

*Vess v. Ciba-Geigy Corp. U.S.A.*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................ 4, 10, 19

6

*Vignolo v. Miller*,

7
    120 F.3d 1075,1077 (9th Cir. 1999) .................................................................... 3

8

*Walker v. GEICO Gen. Ins. Co.*,
    558 F.3d 1025 (9th Cir. 2009) ........................................................................ 18

9

10

*Walker v. USAA Casualty Ins. Co.*,
    474 F. Supp. 2d 1168 (E.D. Cal. 2007) ............................................................ 18

11

*Weinstat v. Dentsply Intern. Inc.*,

12
    180 Cal. App. 4th 1213 (2010) ........................................................................... 4

13

*Wyatt v. Cadillac Motor Car Div.*,
    145 Cal. App. 2d 423 (1956) ............................................................................ 11

14

15

16

**STATUTES**

17

18 U.S.C. § 1030(a)(5)(A)(1) .................................................................................... 14

18

18 U.S.C. § 1030 et seq. ........................................................................................... 13

19

18 U.S.C. § 2301(d)(1) ............................................................................................... 8

20

California Uniform Commercial Code § 2313 ............................................................. 4

21

Civil Code
    Section 1770 ...................................................................................................... 10

22
    Section 1770(a)(5) ............................................................................................... 9

23
    Section 1770(a)(7) ............................................................................................... 9
    Section 1770(a)(9) ............................................................................................... 9

24
    Section 1770(a)(17) ........................................................................................... 12
    Section 1780 ................................................................................................. 10, 12

25
    Section 1783 ...................................................................................................... 10

26

Magnuson-Moss Warranty Act, 15 U.S.C. section 2301 *et seq.* .............................. 8

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
(continued)

**Page**

**RULES**

Fed. R Civ. P 9(b) ................................................................................................. 4, 10, 19, 20

Fed.R Civ. P 12(b)(6)...................................................................................................... 3

Fed.R Civ. P 23(b)(3)...................................................................................................... 21

Fed.R Civ. P 23(c)(2) ...................................................................................................... 21


**REGULATIONS**

16 C.F.R. § 700.3 .......................................................................................................... 8


**OTHER AUTHORITIES**

B. Clark & C. Smith, *The Law of Product Warranties* (Thompson-West 2d ed.), § 14:1 ............. 8

1    **NOTICE OF MOTION; MOTION**

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE that on May 12, 2011 at 1:30 p.m., or as soon thereafter as

4    counsel may be heard in Courtroom 3 of the above-entitled Court, located at 450 Golden Gate

5    Avenue, San Francisco, California, defendant Sony Computer Entertainment America LLC

6    ("SCEA") will, and hereby does, move for dismissal of Plaintiffs' claims for relief asserted in the

7    First Amended Consolidated Class Action Complaint (the "FAC") (Docket #165) in this matter.

8    This motion is brought pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) and 23, and is based

9    on this Notice of Motion and Motion; the Memorandum of Points and Authorities, *infra*; the

10   FAC; the complete file and record in this action; the argument of counsel; and such other and

11   further evidence and argument as the Court may choose to entertain.

12   **MEMORANDUM OF POINTS AND AUTHORITIES**

13   **I.    INTRODUCTION**

14   Stripped to its essence, Plaintiffs' eighty-four-page, 341-paragraph FAC fails to allege the

15   one thing repeatedly demanded by this Court – an explicit promise by SCEA to Plaintiffs that the

16   "Other OS" feature of the PlayStation®3 game console ("PS3") would be available

17   unconditionally and in perpetuity.  Absent such a promise, Plaintiffs' claims – no matter how

18   prolix – remain legally and factually deficient.

19   The undisputed facts remain unchanged.  SCEA introduced the PS3 in 2006.  At that time,

20   the PS3 included Other OS functionality that allowed users to install Linux as an alternative

21   operating system.  It offered many other features and functions, including use of the PlayStation®

22   Network ("PSN"), the ability to play music, games and movies, and view photos.  Use of the PS3

23   and PSN were subject to the terms of SCEA's System Software License Agreement ("SSLA")

24   and Terms Of Service And User Agreement ("Terms of Service"), both of which cautioned that

25   SCEA may issue updates that disable certain functions of the PS3 due to security or other

26   concerns.[1]

27   _____

28   [1] SCEA references without repeating the Factual and Procedural Background set forth in its
     Motion to Dismiss Plaintiffs' Initial Consolidated Complaint.  *See* Docket #97, 3:3-9:10.

1    Plaintiffs, through Mr. Ventura, have already explicitly conceded that SCEA was

2    "concern[ed] that the Other OS feature might be used by 'hackers' to copy and/or steal gaming

3    and other content."  As Mr. Ventura averred:

4    Indeed it is no coincidence that the release of Update 3.21 came quickly on the
     heels of an announcement by a hobbyist named Geohot that he was able to use the
5    Other OS feature along with a bit of soldering in a manner that gave him more
     control over the PS3 hardware than Sony had intended.[2]

6

7    In response to these publicized hacking efforts, SCEA issued Update 3.21 on April 1,

8    2010, which if installed, would disable the Other OS feature.  Users had the choice to install

9    Update 3.21 with full knowledge of the consequences.  Some Plaintiffs installed it, some did not.

10    While Plaintiffs are understandably disappointed by the introduction of Update 3.21, they

11    are not entitled to relief.  Plaintiffs' units were fully operable with the Other OS feature during the

12    applicable one-year warranty and, based on the terms thereof, Plaintiffs had no reasonable

13    expectation that they could enjoy all features of the PS3 in perpetuity.  Certainly they have

14    offered no express promise that the Other OS feature in particular would be available beyond the

15    one-year-warranted term.

16    At best, Plaintiffs offer a purported promise by another entity, not SCEA, that the Other

17    OS feature would not be disabled.  The referenced statement is alleged to have been made in the

18    Fall of 2009, several years after Plaintiffs purchased their consoles and their warranties expired,

19    months before the hacking efforts were discovered, and more than six months before Update 3.21.

20    Plaintiffs also offer now, almost a year into this litigation, supposed promises by SCEA

21    that the PS3 would last for ten years.  Notably, only one such statement pre-dates the Plaintiffs'

22    PS3 purchases, and the statement is a quote from an interview with Kaz Hirai, chairman of

23    SCEA, in a CNET article, months before the PS3 was released for sale, speaking of his future

24    intent for the market lifecycle of the PS3, not a promise to purchasers of how long any particular

25    hardware or software feature or function would be supported.  Such a generalized statement of

26    puffery, were it even actionable, says nothing about the functionality of Plaintiffs' particular units

27    ────────────────
      [2] *Ventura* Complaint (Docket #1), ¶ 25 (emphasis added); *see Pennsylvania R. Co. v. City of
28    Girard*, 210 F.2d 437, 440 (6th Cir. 1954) ("[P]leadings withdrawn or superseded by amended
      pleadings are admissions against the pleader in the action in which they were filed")).

1   at the time they were purchased.  It merely sets an expectation that SCEA will still be selling

2   PS3s – as opposed to a PS4 or some replacement technology – in 2016, nothing more, nothing

3   less.  Significantly, it should not be lost on this Court that none of the Plaintiffs could recall such

4   "promises" in their prior pleadings.  Nor can Plaintiffs argue that such singular statement of

5   future intent was seen and relied upon by all PS3 purchasers – to the contrary, Messrs. Baker and

6   Stovell implicitly admit they did not see or rely on any such statement.[3]

7        The law does not require software to be accessible and functional forever, nor does the

8   law ignore standard language existing in virtually every software license that the licensor may be

9   required to alter the functionality due to security and intellectual property issues.  Update 3.21

10  was released in response to serious hacking concerns, as Plaintiffs conceded in their prior

11  pleadings.  Plaintiffs now suggest that SCEA did so to save money, but offer only conjecture and

12  speculation in support.[4]  In any event, those Plaintiffs who downloaded Update 3.21 did so

13  knowingly and voluntarily and with full consent and no claim for relief exists based on the

14  alleged facts.

15       Finally, in addition to their new theories, Plaintiffs offer three new class definitions.

16  However, Plaintiffs have made class certification even more impossible – the classes proposed all

17  lack ascertainability as membership cannot be readily determined – but would require extensive

18  fact finding and individualized inquiries.  And, because of the admissions by Messrs. Ventura,

19  Baker and Stovell, Plaintiffs lack a representative for two of the three new class definitions.

20       The FAC should be dismissed with prejudice.

21  **II.    PLEADING STANDARDS**

22       Under Rule 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon

23  which relief can be granted."[5]  A dismissal under Rule 12(b)(6) may be based on the lack of a

24  cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal

25

---

26  [3] FAC (Docket #165), ¶¶ 21 and 23.

    [4] In light of the Plaintiffs' prior judicial admissions that the Other OS feature was disabled for

27  security reasons, all of the Plaintiffs (and, in particular, plaintiff Ventura) should be precluded
    from now alleging, based on nothing more than rank speculation, that Update 3.21 was released,

28  not for security reasons, but to save money.
    [5] Fed. R. Civ. P. 12(b)(6).

theory.[6]  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.[7]  The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."[8]  Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."[9]

Additionally, Rule 9(b) requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct.[10]  In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong."[11]

## III.  PLAINTIFFS ONCE AGAIN FAIL TO ALLEGE ANY WRITTEN PROMISE REGARDING THE UNCONDITIONAL AND PERPETUAL AVAILABILITY OF THE OTHER OS FEATURE

Under California law, to plead a breach of express warranty claim a plaintiff must properly allege that (1) the seller's statements constitute an affirmation of fact or promise, or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.[12]

In dismissing their initial express warranty claim, the Court concluded that none of the various representations Plaintiffs cited in marketing materials, interviews, and brochures "can reasonably be characterized as a 'promise,' and it is difficult to discern exactly what 'affirmation

---

[6] *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).
[7] *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075,1077 (9th Cir. 1999).
[8] *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).
[9] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[10] *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).
[11] *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003).
[12] *Weinstat v. Dentsply Intern. Inc.*, 180 Cal. App. 4th 1213, 1227 (2010); California Uniform Commercial Code § 2313; *Keith v. Buchanan*, 173 Cal. App. 3d 13, 20 (1985));

-4-

1  of fact' or 'description of the goods' those statements comprise that plaintiffs contend constitutes

2  the warranty."[13]  Furthermore, the Court recognized the fatal temporal flaw in Plaintiffs' claim in

3  that the Other OS feature was available at the time of purchase.  As such, the Court concluded

4  that, to state a claim for express warranty, "Plaintiffs must … allege that [SCEA] made some

5  express representations as to the *continued* availability of [the Other OS] feature."[14]

6      In response, Plaintiffs' amended claim for breach of express warranty in Count I of the

7  FAC lists only three statements that they purport to be express warranties:

8      Defendant expressly warranted via its advertising, statements, brochures, website
9      information, public statements, owner's manuals, console, and other representations

10     ***that the PS3 would be able to operate as a computer and install Linux through the "Other OS" feature.***

11

12     ***that the PS3 would be able to access the PSN and play games online, as well as the newest DVDs and games.***

13     ***that the PS3 would be upgraded through Firmware Updates and last ten years or more.***[15]

14

15 None of these statements meet the Court's requirements.  The first two statements say nothing

16 about the continued availability of any feature, including the Other OS, and thus suffer from the

17 same deficiencies as those statements previously rejected by the Court.  Regarding the last

18 statement, the Plaintiffs engage in an illogical leap.  Plaintiffs manufacture a "promise" from the

19 following quotes projecting the marketplace lifecycle of the PS3 – only one of which pre-dates

20 their PS3 purchases – that their PS3s would "last 10 years or more":

21     "We look at our products having a 10-year life cycle, which we've proven with
22     the PlayStation.  Therefore, the PlayStation 3 is going to be a console that's going to be with you again for 10 years." (August 2006 CNET News)

23     "Last time I checked, [Microsoft] never had a console that's been on the market
24     for more than four or five years and we've committed to a ten year life cycle, so you do the math." (2009 Official PlayStation Magazine)

25

26 [13] Order Granting Motion to Dismiss (Docket #161), 4:11-21.
[14] *Id.*  The Court alternatively held that Plaintiffs "will have to show both that there were implied
27 representations as to continued availability and that an express warranty claim may legally
proceed even where it is based in part on such implied representations." *Id.*  As set forth in
28 Section IV, Plaintiffs have failed to allege any actionable claim for breach of implied warranty."
[15] FAC (Docket #165), ¶¶ 212-214 (emphasis added).

1

"[W]e firmly believe that the PS3 will not only be around in 10 years but it'll be
driving the business – driving this industry.  I don't know if our competitors'
platforms will still be viable in 10 years; I do know that the PlayStation 3 will
be." (Spring 2009, unidentified publication)

2

3

4

". . . Both the original PlayStation and PlayStation 2 had lifecycles of more than
10 years, and the PlayStation 3 will as well.  The 10-year life cycle is a
commitment we've made with every PlayStation consumer to date and is part of
our philosophy that we provide hardware that will stand the test of time providing
that fun experience you get from day one for the next decade…."[16] (February 14,
2011, *i.e.*, after Update 3.21 was issued).

5

6

7

8

Notwithstanding Plaintiffs' specious assertions to the contrary, these statements of

9

lifecycle expectations, *i.e.*, how long SCEA will continue to sell PS3s, surely cannot be contorted

10

into a promise that all *PS3 features and functions* will be supported, unconditionally and in the

11

identical manner for ten years.  Indeed, none of these statements says anything about any software

12

feature, let alone the ability to run Linux as an alternative operating system.

13

Only two of the four named Plaintiffs avers having seen any statement regarding a ten

14

year lifecycle.[17]  Moreover, all but the first statement post-dated the Plaintiffs' purchase of the

15

PS3 and therefore could not possibly be part of a basis for the Plaintiffs' bargain.  And with

16

respect to the remaining statement in 2006, the only way this statement could possibly be false

17

would be if in fact SCEA ceases sale of the PS3 before year 2016.  Any such claim has yet to

18

accrue.  Thus, Plaintiffs' amended express warranty claims fare no better than their previous

19

attempt, and should be dismissed with prejudice.

20

**IV.   PLAINTIFFS' AMENDED IMPLIED WARRANTY CLAIMS CONTINUE TO
LACK THE REQUISITE VERTICAL PRIVITY AT THE TIME OF SALE**

21

Counts II and III of the FAC allege that SCEA breached the implied warranties of

22

merchantability and fitness for a particular purpose.[18]  Under California law, a plaintiff may assert

23

breach of an implied warranty only against the party from whom he or she directly purchased –

24

"[v]ertical privity is a prerequisite in California."[19]  For example, the Ninth Circuit held that

25

---

26

[16] FAC (Docket #165), ¶¶ 122-125.
[17] *Id.*, ¶¶ 21,23.
[18] *Id.*, ¶¶ 82-99.
[19] *United States Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal. App. 3d 1431, 1441 (1991)
(citing *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695-96 (1954); *Osborne v. Subaru of
America, Inc.*, 198 Cal. App. 3d 646, 656 (1988)).

27

28

1  where an end-consumer buys a product from a retailer, the consumer has no claim for breach of

2  implied warranty as against the product's manufacturer.[20]  Here, there is no dispute that Plaintiffs

3  purchased their PS3s from independent retailers, not SCEA.  Thus, the Plaintiffs have no vertical

4  privity with SCEA, and cannot assert a breach of implied warranty claim against SCEA as a

5  matter of law.  It is for this precise reason that the Court dismissed the implied warranty claims in

6  the prior pleading.  Indeed, the Court, in permitting leave to replead, recognized that "it is not

7  clear how plaintiffs may be able to cure the privity problem."[21]

8       In their FAC, Plaintiffs do not attempt to allege, and cannot credibly allege, that they

9  made any direct payments to SCEA for the purchase of the PS3.  Instead, they essentially restate

10  the same "direct dealings" arguments that the Court already rejected, in both this and other

11  firmware cases.[22]  Specifically, Plaintiffs allege that they have privity with SCEA because some

12  class members – <u>post-sale</u> – had "direct financial and other dealings" with SCEA when they

13  downloaded SCEA updates, accessed the PSN and purportedly paid money for access to the

14  PlayStation® Store and Qore.[23]  The "direct dealings" exception to vertical privity has been

15  recognized only where a consumer negotiates or pays consideration directly to the manufacturer

16  pre-sale.[24]  No privity exception exists for post-sale dealings with a manufacturer, and the Court

17  has already stated its refusal to create such an additional, temporally-flawed exception:

18       Plaintiffs argue that at least in some cases they pay monies directly to [SCEA] in
19       connection with using PSN.  That would not, however, support a conclusion that
         [SCEA] was the seller in the transactions by which plaintiffs acquired their PS3
20       systems.[25]

21  Plaintiffs further allege that SCEA "is in direct privity with Plaintiffs and members of the Class

22  by reasons of its express written warranty, TOS, and SSLA."[26]  This Court, however, has already

23  rejected this allegation, recognizing "clear California precedent that privity remains a requirement

---

[20] *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citing *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. Nov. 10, 2005); *Osborne*, 198 Cal. App. 3d at 656 fn. 6).
[21] *See* Docket #161, 7:13-14.
[22] *In re Sony PS3 Litig.*, 2010 WL 3324941, at *2-3 (N.D. Cal. Aug. 23, 2010).
[23] FAC (Docket #165), ¶¶ 14, 225-227
[24] *See U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal. App. 3d 1431 (1991).
[25] Docket #161, p. 6, note 3
[26] FAC (Docket #165), ¶ 211

1  in implied warranty claims even though it has been eliminated in express warranty claims."[27]

2  Vertical privity must be established between the consumer and the manufacturer at the time of

3  purchase, not afterwards, and the FAC, like its predecessor, fails to establish such privity.

4
5  ## V.  PLAINTIFFS' FAILURE TO PLEAD AN EXPRESS OR IMPLIED WARRANTY CLAIM DOOMS THEIR MAGNUSON-MOSS WARRANTY ACT CLAIM

6  The Magnuson-Moss Warranty Act, 15 U.S.C. section 2301 *et seq.*, provides a federal

7  private right of action for state law warranty claims (18 U.S.C. § 2301(d)(1)), but does not expand

8  those state law rights: "dismissal of the state law claims requires the same disposition with respect

9  to any associated [Magnuson-Moss] claim."[28]  As in their Initial Complaint, the Magnuson-Moss

10  Act claim Plaintiffs aver in their FAC is based entirely on their express and implied warranty

11  claims.[29]  With regard to this claim alleged in the Initial Complaint, the Court concluded that,

12  "[w]ith exceptions not implicated here, 'disposition of the state law warranty claims determines

13  the disposition of the Magnuson-Moss Act claims.'  Accordingly, the Magnuson-Moss Act count

14  will be dismissed, with leave to amend."[30]  The same reasoning compels dismissal of the

15  Magnuson-Moss Act claim in the FAC.

16  This claim also fails for another reason: for a written representation to constitute a

17  "written warranty" under the Magnuson-Moss Act, it must relate for a specific period of time:

18
19  > Certain representations, such as energy efficient ratings for electrical appliances, care labeling of wearing apparel, and other product information disclosures may be express warranties under the Uniform Commercial Code.  However, these disclosures alone are not written warranties under the Act.  Section 101(6) provides that a written affirmation of fact or a written promise of a specified level of performance must relate to *a specified period of time* in order to be considered a "written warranty."  A product information disclosure without a specified time period to which the disclosure relates is therefore not a written warranty.[31]
20
21
22

23  In their FAC, Plaintiffs fail to cite any written warranty regarding the promised duration of any

24  software feature or function, including the Other OS, and the SSLA states precisely the

25  ---
[27] Docket #161, 6:17-22; *see also* Docket #162 (further addressing privity arguments).
26  [28] *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, *9 (N.D. Cal. 2009); B. Clark & C. Smith, *The Law of Product Warranties* (Thompson-West 2d ed.), § 14:1.
27  [29] FAC (Docket #165), ¶¶ 309 and 313.
[30] Docket #161, 7:16-22.
28  [31] 16 C.F.R. § 700.3 (emphasis added); *see also Skelton v. General Motors Corp.*, 660 F.2d 311, 316 fn. 7 (7th Cir. 1981) (same).

1   opposite.[32]  In fact, the only amended allegation Plaintiffs can offer is corporate puffery in the

2   form of responses to interview questions that the PS3 is expected to have a ten-year presence in

3   the marketplace – which is certainly not a written "product information disclosure."  As set forth

4   above, that is not a written warranty at all.  *See* Section III, *supra*.  On this additional basis, their

5   Magnuson-Moss Act claim fails.

6   **VI.    PLAINTIFFS CANNOT SUCCEED ON THEIR CLRA CLAIM**
        **A.    Plaintiffs Have Failed To Establish SCEA Made Any Misrepresentation At
7             Or Before The Time Of Sale**

8            Plaintiffs have retained their allegation that SCEA violated three provisions of the

9   Consumer Legal Remedies Act ("CLRA") – Civil Code subsections 1770(a)(5), (7), and (9),

10  which prohibit "representing" or "advertising" goods or services in ways that are false or

11  misleading.[33]  In dismissing their prior CLRA claim, the Court concluded that they "must address

12  the fact that none of the representations they have thus far identified include any *express* promise

13  that the Other OS feature would be available indefinitely or of any particular period of time."[34]

14  Once again, in their FAC, Plaintiffs have failed to do this.  They premise their CLRA claim on the

15  allegation that "[SCEA] advertised, promoted, marketed, warranted, and represented that the PS3

16  operates like a computer through the ability to download operating systems such as Linux," "that

17  the PS3 can play online games and access other features through the PSN," "that the PS3 has a

18  lifespan of 10 years," and that "downloading and installing updates would update the PS3's

19  operating system to include additional settings and features."[35]  However, all of the underlying

20  statements were true when made.  *See* Sections III, *infra*.  And Plaintiffs' mischaracterization of

21  the one pre-sale statement, in August 2006, regarding the intended "lifespan," *i.e.* the marketplace

22  lifecycle of the PS3, is anything but an "*express* promise" regarding the Other OS feature.  *See*

23  Sections III and IV, *infra*.  Stated differently, Plaintiffs' CLRA claim fails for the same reason as

24  does their express warranty claim.

25  /////

26  ─────────────────────
    [32] *See* Section III, *supra*.  In fact, only the express written warranty – which is limited to the
    hardware – states a specified period.  *See* Docket #97, Section II(B).
27  [33] FAC (Docket #165), ¶ 285.
    [34] Docket #161, 8:4-6 (emphasis in original).
28  [35] FAC (Docket #165), ¶¶ 269-272.

1       Moreover, the FAC fails to plead the requisite causal connection between a misstatement

2   and acquisition of the goods at issue.  The CLRA only provides a cause of action for a consumer

3   who "suffers any damage **as a result of** the use or employment…of a method, act or practice

4   declared to be unlawful by section 1770."[36]  The FAC asserts violations of the CLRA in

5   connection with purchases of PS3s in 2006 and 2007.[37]  However, the basis for their claims,

6   launch of Update 3.21, which if accepted by a user disabled the Other OS function, did not occur

7   until April 1, 2010.  Thus, there is not, nor can there be, any causal connection between the

8   challenged act and Plaintiffs' PS3 purchases.[38]

9       Indeed, to the extent Plaintiffs are attempting to assert CLRA claims based on

10  misrepresentations or omissions at the time of sale, those who purchased their PS3 on or before

11  April 27, 2007, like Messrs. Huber and Baker, have no CLRA claims due to the application of the

12  three year statute of limitations.  Cal. Civil Code § 1783.  And of course, neither Mr. Stovell nor

13  Baker averred ever seeing a representation of a ten year life span, and for that further reason

14  cannot state a CLRA claim.

15      In addition, in dismissing Plaintiffs' initial CLRA claim, the Court concluded that

16  Plaintiffs had failed to "clearly identify the particular representations on which they rely, and

17  articulate why they are false or misleading.  Such specificity is all the more important here,

18  because the CLRA claims sound in fraud, thereby implicating Rule 9(b)."[39]  Numerous supposed

19  misrepresentations are referenced, but in each instance the allegations are inadequate under Rule

20  9(b)'s heightened pleading requirement.  *See* Section IX(C), *infra*.

21      Furthermore, only detailed factual representations are actionable under the CLRA – not

22  sales boasts or "puffery."[40]  "Advertising that amounts to 'mere' puffery is not actionable because

23  no reasonable consumer relies on puffery."[41]  Most of the representations cited by Plaintiffs –

---

[36] Civil Code § 1780 (emphasis added).

[37] FAC (Docket #165), ¶¶ 17-24.

[38] This issue aside, Plaintiffs have admitted that their PS3s are "personal computers," as they purport the relevant representations state.

[39] Order Granting Motion to Dismiss (Docket #161), 7:27-8:4 (citing *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

[40] *See Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 fn. 3 (2003).

[41] *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994); *see also Consumer Advocates*,

1    particularly the one pre-purchase comment – in August 2006 – regarding the intended ten-year

2    lifecycle of the PS3, are just that – inactionable puffery.

3         Finally, the FAC asserts SCEA violated the CLRA as well as the Unfair Competition Law

4    ("UCL"), California Business & Professions Code section 17200 *et seq.*, and the False

5    Advertising Act ("FAA"), California Business & Professions Code section 17500 *et seq.*, based

6    on an omission theory.  But nowhere in the FAC do Plaintiffs allege an "omission [] contrary to a

7    representation actually made by [SCEA], or an omission of fact [SCEA] was obliged to disclose,"

8    which is the prerequisite for viable claims under the CLRA, as well as the UCL and FAA.[42]

9    Based on the representations presented to the Court, "the only expectations buyers could have

10   had…was that [the PS3] would function properly for the length of" the one-year express

11   warranty.[43]  Plaintiffs attempt to end-run this conclusion be averring that their "reasonable

12   expectation" was that the Other OS feature would last for the "useful life" of the PS3.[44]  But

13   numerous courts, at the pleading stage, have explicitly declined to accept the notion that a

14   plaintiff's alleged expectation that a product would last longer than the express warranty can save

15   an omission-based claim.[45]  In addition, not one of the Plaintiffs avers that he was unaware the

16   113 Cal. App. 4th at 1361 (representation that satellite television system provided "crystal clear"
17   digital video or "CD quality" audio were "not factual representations that a given [industry]
     standard was met," but merely "boasts, all-but-meaningless superlatives," akin to "mere puffing,"
18   and "which no reasonable consumer would take as anything more weighty than an advertising
     slogan."); *Baba v. Hewlett-Packard Co.*, 2010 WL 2486353, *4 (N.D. Cal. June 16, 2010) (ruling
19   with regard to marketing of computers as "tablets":  "[t]he word 'tablet' merely describes the
     product being sold and does not constitute a representation of the quality of the product….");
20   *Long v. Hewlett-Packard Co.*, 2007 WL 2994812, *7 (N.D. Cal. July 27, 2007) (same ruling with
     regard to "notebook" computers).
     [42] *See Hoey v. Sony Electronics, Inc.*, 515 F. Supp. 2d 1099, 1103-04 (N.D. Cal. 2007) (quoting
21   *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006)); *see also In re
     Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, --- F. Supp.
22   2d ----, 2010 WL 4892114, **5 & 11 (S.D. Cal. Nov. 30, 2010) (dismissing CLRA claim based
     on omission theory, in part, because "[p]laintiffs have not sufficiently alleged that those
23   representations were untrue or misleading at the time they were made."; "Plaintiffs have not
     alleged that Sony has made any representations contrary to omitted information…."); *Berenblat v.
24   Apple, Inc.*, 2009 WL 2591366, **6-7 (N.D. Cal. Aug. 21, 2009).
     [43] *Daugherty*, 144 Cal. App. 4th at 838; *see also In re Sony Wega*, 2010 WL 4892114, *5 & 11.
25   [44] *See, e.g.,* FAC (Docket #165), ¶¶ 119.
     [45] *See In re Sony Grand WEGA*, 2010 WL 4892114, at *15 ("While the *Hicks* exception may
26   make sense for goods-such as the foundation of a home-that consumes may reasonably expect to
     last for decades, applying such an exception to consumer goods-such as televisions or other
27   electronics-about which consumer-expectations will be highly subjective and will vary widely
     'would eliminate term limits on warranties, effectively making them perpetual or at least for the
28   'useful life' of the product.'") (quoting *Oestreicher*, 544 F. Supp. 2d at 972); *see also Hoey*, 515

1   Other OS feature would be disabled if he downloaded Update 3.21.  To the contrary, they admit

2   that they independently decided whether or not to download Update 3.21 depending on the

3   associated known consequences, which were fully disclosed by SCEA at the time of issuing the

4   Update.[46]  Thus, no injury has been alleged from this supposed nondisclosure.[47]

5           **B.      Plaintiffs' "Unconscionability" Claim Also Fails**

6           Plaintiffs also allege SCEA violated Section 1770(a)(19) because the following term of

7   the SSLA is supposedly unconscionable:

8       Some services may change your current settings, cause a loss of data or content,
        or cause some loss of functionality.
9
        SCE, at its sole discretion, may modify the terms of this Agreement at any time,
10      including any terms in the PS3™ systems documentation or manual, or at
        http://www.scei.co.jp/ps3-license/index.html.  Please check back on this website
11      from time to time for changes to this Agreement.  Your continued access to or use
        of the System Software will signify your acceptance of any changes to this
12      Agreement.[48]

13  The FAC alleges that this term is unconscionable because it was imposed by SCEA after purchase

14  of the PS3, presenting buyers with no choice but to accept it, and because it unreasonably

15  reallocated risk between SCEA and PS3 buyers.[49]  But Plaintiffs supposedly reviewed the SCEA

16  website prior to purchase, and thus were informed of and had access to the terms of the SSLA at

17  the time of their buying decision.[50]

18  /////

---

19  F. Supp. 2d at 1105 ("In fact, the California Supreme Court has stated the general public policy
    that a consumer can be 'fairly charged with the risk that the product will not match his economic
20  expectations unless the manufacturer agrees that it will.'" (quoting *Seely v. White Motor Co.*, 63
    Cal. 2d 9, 18 (1965) (citing *Wyatt v. Cadillac Motor Car Div.*, 145 Cal. App. 2d 423, 426 (1956),
21  disapproved on other grounds *Sabella v. Wisler*, 59 Cal. 2d 21, 31 (1963); *Trans World Airlines v.
    Curtiss-Wright Corp.*, 148 N.Y.S. 2d 284, 290 (1955)); *Daugherty*, 144 Cal. App. 4th at 830-32.
22  [46] Consolidated Complaint (Docket #76), ¶¶ 10-19; FAC (Docket #165), ¶¶ 17-24.
    [47] *See* Civil Code § 1780 ("suffers any damage **as a result of** the use or employment…of a
23  method, act or practice declared to be unlawful by section 1770.") (emphasis added); *see
    Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 37 (1975) (CLRA claim properly
24  stated when plaintiff alleged reliance on alleged misrepresentations); *Hall v. Time, Inc.,* 158 Cal.
    App. 4th 847, 855 (2008) ("The phrase 'as a result of in its plain and ordinary sense means 'caused
25  by' and requires a showing of a causal connection or reliance on the alleged misrepresentation.");
    *Caro v. Procter & Gamble Co.,* 18 Cal. App. 4th 644, 668 (1993) (holding no material
26  misrepresentation was made to plaintiff suing under the CLRA because he did not believe or rely
    on the allegedly misleading statement).
27  [48] FAC (Docket #165), ¶¶ 286-294
    [49] *Id.*
28  [50] *Id.*, ¶¶ 17-24.

1    Moreover, these allegations are truly inadequate as they are thinly-veiled conclusory

2    recitations of the legal elements of an unconscionability theory, and thus inadequate under *Iqbal.*

3    Indeed, California courts reviewing similar "clickwrap" licenses have approved of them, finding

4    they are neither procedurally or substantively unconscionable.[51]  Thus, an end-user-license

5    agreement is not invalid even if a consumer receives it for the first time after purchase of the

6    software.[52]  Nor is it unconscionable merely because it affords the licensor the right to limit or

7    revoke the license, and unconscionability claims based on facts Plaintiffs allege here have been

8    dismissed at the pleading stage.[53]  Clauses allowing a software licensor to terminate or alter the

9    scope of its services are not "sufficiently shocking;"[54] indeed, as the Central District Court of

10   California concluded when reviewing terms of a video game software license and subscription

11   agreement, "[i]f such a clause were unconscionable, [defendant] and all of its competitors would

12   be forced to make their games available in perpetuity or face class actions suits for loss of data."[55]

13       The FAC also avers that the allegedly unconscionable terms were written in "small-type,

14   prolix form; disguised…under nebulous heading; and buried…among sundry other unrelated

15   contractual terms."[56]  These conclusory allegations are contradicted by the actual terms of the

16   SSLA:  the challenged verbiage is in the same font size as the rest of the Agreement and appears

17   under the headings "Services and Updates" and "General Legal."  The SSLA is less than two and

18   half pages (when printed) and, as such, it is hard to imagine any terms being "buried" or in

19   "prolix form" in such a short document.[57]

20       Finally, the three year statute of limitations would also bar the unconscionability claim

21   with regard to PS3 purchases prior to April 27, 2007.[58]

22   _____

23   [51] *See e.g., Meridian Project Systems, Inc. v. Hardin Const. Co. LLC.*, 426 F. Supp. 2d 1101,
     1107 (E.D. Cal. 2006) (shrinkwrap license not unconscionable);  *Leong v. Square Enix of Am.*

24   *Holdings, Inc.*, 2010 WL 1641364 at *10 (C.D. Cal. Apr. 20, 2010) (clickwrap license not
     unconscionable).
     [52] 426 F. Supp. 2d at 1107.

25   [53] *Id*. at *1.
     [54] *Id.* *10.

26   [55] *Id.*
     [56] FAC (Docket #165), ¶ 289.

27   [57] Ott Decl. (Docket #98), ¶ 3, Ex. B.
     [58] *Purdum v. Holmes*, 2010 WL 2951617, *5 (Cal. App. July 29, 2010) (CLRA statute of

28   limitations is "three years from commission of method, act or practice.").

1  **VII.  PLAINTIFFS' AMENDED COMPUTER FRAUD AND ABUSE ACT CLAIM**
       **FAILS TO ESTABLISH AN "UNAUTHORIZED" ACT**
2

3      The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, was enacted to

4  address hacking, *i.e.*, trespass into computers in the course of computer fraud. [59]  Count V of the

5  Amended Complaint alleges that SCEA, through Update 3.21, violated the CFAA by "knowingly

6  caus[ing] the transmission of a program, information, code, or command, and as a result of such

7  conduct, intentionally caus[ing] damage without authorization, to a protected computer."  *See* 18

8  U.S.C. § 1030(a)(5).  The Ninth Circuit has defined "without authorization" under the CFAA to

9  mean "without permission."[60]  Thus, to plead a Section 1030(a)(5) CFAA claim, Plaintiffs must

10  allege that Update 3.21 was downloaded without permission.

11      Plaintiffs' CFAA claim fails for two reasons.  First, Update 3.21 was not forcibly or

12  automatically installed on a user's PS3 – it could be transmitted to a PS3 only by manual

13  acceptance, *i.e.*, with permission.  This is indisputable, as some of the Plaintiffs elected *not* to

14  manually download the update, and hence Update 3.21 was not installed on their PS3.  Thus, it is

15  implausible to allege that any individual manual download was "unauthorized" by the PS3 user.

16  Indeed, "[v]oluntary installation runs counter to the notion that … the alleged act was 'without

17  authorization.'"[61]

18      In the FAC, Plaintiffs begrudgingly concede that "SCEA told users that they would not

19  have to download Update 3.21 if they did not wish to do so."  As Mr. Ventura admitted:  "PS3

20  /////

21  /////

22  /////

23

---

24  [59] *US Bioservices Corp. v. Lugo*, 595 F. Supp. 2d 1189, 1193 (D. Kan. 2009); *Egilman v. Keller
    & Heckham, LLP*, 401 F. Supp. 2d 105, 110 (D.D.C. 2005).  Plaintiffs' reliance on an anti-
25  hacking statute is ironic in light of the fact that Update 3.21 was released to prevent an
    unauthorized hacking of the PS3.
26  [60] *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133-35 (9th Cir. 2009)
    [61] *In re Apple and ATTM Antitrust Litig.*, 2010 WL 3521965 at *7 (N.D. Cal. Jul. 8, 2010).
27  Plaintiffs also allege that they were "forced" to download Update 3.21 or lose certain
    functionality.  Plaintiffs specifically refer to it as a "Hobson's Choice."  For purposes of the
28  CFAA, an alleged Hobson's choice is nevertheless a "choice."

1   owners are not technically required to install Update 3.21."[62]  Plaintiffs further concede that users

2   "authorized" installation of Update 3.21 when they manually downloaded it:

3          Although Plaintiffs and Class members *may have authorized* a firmware update
        for security reasons, they did not authorize the disabling of the "Install Other OS"
4          feature to [sic] Defendant money.[63]

5   While SCEA disputes Plaintiffs' unsupported allegation that SCEA issued Update 3.21 to "save

6   money," it does not matter for purposes of dismissal – SCEA's alleged business motivations are

7   irrelevant for purposes of Section 1030(a)(5).  Under the plain language of the CFAA, if a user

8   "authorized" installation of Update 3.21, knowing that doing so would disable the Other OS

9   feature, there can be no statutory violation as a matter of law, regardless of SCEA's intent in

10  issuing the update.

11         Second, as a condition to using the PS3, users gave advance permission to receiving

12  updates that may disable a software feature.  In fact, certain users gave this permission to SCEA

13  on more than one occasion.  For example, Plaintiffs acknowledge in the FAC that they accepted

14  the SSLA.[64]  The SSLA makes clear that software updates may be made automatically by SCEA

15  (which Update 3.21 was not) or for manual download, and whether automatic or available for

16  manual download by users, may "cause some loss of functionality":

17         Some services may change your current settings, cause a loss of data or content,
        or cause some loss of functionality.  SCE, at its sole discretion may modify the
18          terms of this Agreement at any time, including any terms in the PS3™ systems
        documentation or manual, or at http://www.scei.co.jp/ps3-license/index.html.
19          Please check back on this website from time to time for changes to this
        Agreement.  Your continued access to or use of the System Software will signify
20          your acceptance of any changes to this Agreement.[65]

21         In addition, those who use the PSN which, according to the FAC, includes all of the

22  Plaintiffs, must first agree to a Terms of Service.[66]  There have been several different versions of

23  the Terms of Service, the most recent being version 7.0.[67]  Similar to the SSLA, the "Maintenance

24  _____
    [62] *Ventura* Complaint (Docket #1), ¶ 26 (emphasis added).
    [63] FAC (Docket #165), ¶ 304.
25  [64] FAC (Docket #165), ¶¶ 17-24, 184-192, and 286-294; *see also One Beacon Ins. Co. v. Crowley
    Marine Servs.*, 2010 WL 1463451, *5 (S.D. Tex. April 12, 2010) ("The fact that a party chooses
26  not to review a contract, or terms and conditions, when they had the opportunity does not negate
    the fact that they are bound by those Terms and Conditions.").
27  [65] *See* Ott Decl. (Docket #98), ¶ 3, Ex. B (SSLA Version 1.4).
    [66] *See* Ott Decl. (Docket #98), ¶ 6, Ex. E.
28  [67] *See* Ott Decl. (Docket #98), Exs. E, F, and G.

1 and Upgrades" section of the Terms of Service reaffirms that updates may cause loss of

2 functionality and, more importantly, change the current "operating system:"

> From time to time, it may become necessary for SCEA to provide certain content
> to you to ensure that Sony Online Services and content offered through Sony
> Online Services, your PlayStation3™ computer entertainment system, the PSP™
> (PlayStation Portable) system or other SCEA-authorized hardware is functioning
> properly in accordance with SCEA guidelines. Some content may be provided
> automatically without notice when you sign in. **Such content may include
> automatic updates or upgrades which may change your current operating
> system, cause a loss of data or content or cause a loss of functionalities or
> utilities. Such upgrades or updates may be provided for system software for
> your PlayStation3™ computer entertainment system**, the PSP™ (PlayStation
> Portable) system, or other SCEA-authorized hardware.[68]

9 By such language, SCEA contemplated that circumstances, like security breaches, may occur that

10 require it to disable certain functions of the PS3 or change the operating system. Because

11 Plaintiffs consented at least twice to SCEA updates that could change the functionality of the

12 PS3, they cannot plausibly argue that any subsequent download by them of Update 3.21 was

13 unauthorized. "Simply put, a person cannot access a computer 'without authorization' if the

14 gatekeeper has given them permission to use it."[69]

15
16 **VIII. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW
    AND FACT**

17 In their prior pleading, Plaintiffs' unjust enrichment claim was based on a theory that

18 SCEA somehow unjustly benefitted "from the sales of PS3s with the 'Other OS' function which

19 it then forced purchasers to either disable or forgo other important PS3 functions."[70] The Court,

20 in dismissing this claim, recognized that "California law does not recognize a separate claim for

21 'unjust enrichment.'"[71] Furthermore, the Court concluded that "[a]mong other things, plaintiffs

22 have not adequately explained how [SCEA] has been wrongly 'enriched' or what payments they

23 made to [SCEA] that should now be returned."[72]

24 /////

---

25 [68] *See* Ott Decl. (Docket #98), ¶ 6, Ex. E (emphasis added). Substantially similar language
appears in versions 1.0, 2.0, 3.0, 4.0, 5.00, and 6.0. *See* Ott Decl. (Docket #98), ¶ 7, 8, 22-25, Ex.
26 F, G, U-X.
[69] *AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F. Supp. 2d 1174, 1180 (E.D. Cal. 2010).
27 [70] Initial Consolidated Complaint (Docket #76), ¶¶ 169-174.
[71] Docket #161, 8:10-13.
28 [72] Docket #161, 8:12-16.

1    In Count IX of the FAC, Plaintiffs tacitly acknowledge that they could not offer the

2    allegations required by the Court on behalf of their entire class of PS3 purchasers.  Consequently,

3    they now assert that one singular plaintiff, Mr. Baker, and "some" members of a new "Class 3,"

4    paid money for PSN services that they can purportedly no longer use:

5        Plaintiff Baker and the [sic] some members of Class 3 have directly conferred
         benefits on SCEA by paying money for PSN-related services, such as the
6        PlayStation Store, PlayStation Plus, pre-paid money into the PSN Wallet, and
         Qore subscriptions.  After failing to download Update 3.21, these individuals
7        were no longer able to access these features and items for which they had directly
         paid sums to SCEA as SCEA prohibited them from accessing the PSN….[73]
8

9    Putting aside the unchanged fact that California does not recognize an independent cause of

10   action for unjust enrichment, which alone ends the analysis, Mr. Baker fails to state any facts

11   entitling him to relief.  First, Mr. Baker does not allege the amount, if any, that he paid to SCEA;

12   nor is there any explanation of what specific service or services Mr. Baker supposedly purchased.

13   Rather, Mr. Baker simply bundles his claim with "some" phantom, absent members of "Class 3,"

14   which falls well short of applicable standing and pleading requirements.  *See Ashcroft v. Iqbal*,

15   129 S. Ct. 1937, 1949-50 (2009) (legal conclusions are not accepted as true and "[t]hreadbare

16   recitals of elements of a cause of action, supported by mere conclusory statements, do not

17   suffice."); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Pence v. Andrus*,

18   586 F.2d 733, 736-37 (9th Cir. 1978) ("[I]n class actions, the named representatives must allege

19   and show that they personally have been injured, not that injury has been suffered by other,

20   unidentified members of the class to which they belong and which they purport to represent."); *In*

21   *re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 504 (S.D.N.Y. 1996) ("[A] plaintiff

22   may not use the procedural device of a class action to bootstrap himself into standing he lacks

23   under the express terms of the substantive law.").  Moreover, for a justiciable controversy to exist,

24   Mr. Baker must allege that he was denied a refund for any pre-paid services.  The pleading fails

25   to state whether he even *asked* for a refund.  Mr. Baker's claim for unjust enrichment fails as both

26   a matter of law and fact.

27

28   ---
     [73] FAC (Docket #165), ¶¶ 337-341.

-17-

## IX.    PLAINTIFFS CANNOT SUCCEED ON THEIR UCL AND FAA CLAIMS

### A.    Plaintiffs Lack Standing to Assert Claims Under the UCL and FAA

Only individuals who suffer loss of money or property eligible for restitution have standing to bring claims under the UCL and FAA.[74]  In *Korea Supply v. Lockheed Martin Corp.*, the California Supreme Court described the bounds of the restitutionary remedy available under the UCL, upholding a demurrer to a UCL claim because "[a]ny award that plaintiff would recover from defendants . . . would not replace any money or property that defendants took directly from plaintiff.[75]  Applying *Korea Supply* here, Plaintiffs do not have a claim because they do not allege that they gave any money to SCEA, let alone as a result of wrongful conduct.  The gravamen of the FAC is that Plaintiffs were harmed by Update 3.21 a year or more after they purchased their PS3s from third party retailers.[76]  Plaintiffs therefore cannot seek restitution of their purchase price – it is temporally impossible for any causal connection to exist between Update 3.21 and Plaintiffs' purchase.[77]

As this Court stated with regard to claims alleged against SCEA related to the PS3 regarding other firmware updates:  "plaintiffs have failed to allege sufficient facts showing how [SCEA] has been wrongfully 'enriched,' or what they have paid to [SCEA] that it should be required to restore them.  Accordingly, this claim for relief is also dismissed…."[78]  Plaintiffs' claim is a claim for damages – not restitution – and so they lack standing to bring any claim under the UCL or FAA.[79]

---

[74] *Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1, 22, (2009) (quoting *Buckland*, 155 Cal. App. 4th 798, 817 (2007) ("Because remedies for individuals under the [UCL and FAA] are restricted to injunctive relief and restitution, the import of the [loss of money or property] requirement is to limit standing to individuals who suffer losses of money or property that are eligible for restitution."); *Walker v. GEICO Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009) (upholding dismissal of UCL class action claims because the named plaintiff did not allege facts supporting restitution); *Walker v. USAA Casualty Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2007)).

[75] *Korea Supply*, 29 Cal. 4th 1134, 1149 (2003).

[76] Consolidated Complaint, ¶¶ 10-19, 52-61.

[77] *See Korea Supply*, 29 Cal. 4th at 1146 ("Any award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff."); *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 fn. 6 (2006).

[78] *See In re Sony PS3 Litig.*, No. C 09-4701 RS, 2010 WL 3324941, *4 (N.D. Cal. Aug. 23, 2010).

[79] Plaintiffs' request for "disgorgement" of profits received by SCEA (Consolidated Complaint, ¶

Moreover, with respect to the injunctive relief they purport to seek, they have not and cannot demonstrate that monetary relief, should they succeed on any claim affording damages, is inadequate.  Indeed, Plaintiffs seek monetary relief in other Counts based on alleged diminution in value to their PS3 units.  Plaintiffs cannot have it both ways for purposes of circumventing the UCL and FAA standing requirements.

### B.    Plaintiffs Fail To Allege Any Unlawful Conduct

To state a UCL claim under the UCL, Plaintiffs must properly allege that SCEA engaged in conduct that is (1) unlawful; (2) unfair; or (3) deceptive or fraudulent.  Regarding the first prong, Plaintiffs allege in Count VIII that SCEA engaged in unlawful conduct to the extent it violated any statutes alleged in the FAC.  As set forth herein, SCEA has not violated any such statutes and, therefore, it cannot be held liable under the UCL.

### C.    Plaintiffs Fail To Satisfy Rule 9(b)

Regarding the second prong, the Consolidated Complaint fails to provide the specificity required by Rule 9(b).[80]  Additionally, courts have already concluded that "clickwrap" provisions that grant only a license for software are lawful when issued under circumstances comparable to those alleged in the Consolidated Complaint, and accordingly, the mere use of such a license is not inherently "unfair."[81]  On this additional basis, Plaintiffs' UCL claim fails.

Regarding the third prong of Plaintiffs UCL claim – deceptive or fraudulent business practices or advertising, as well as their FAA claim, Plaintiffs have again run afoul of Rule 9(b) because these claims lack the requisite specific allegations of "the time, place and content of [any] alleged [misrepresentation]," the identity of the speaker, or "the manner in which [the] representations were false and misleading."  *Genna*, 25 F. Supp. 2d at 1038.[82]

---

146) is similarly inappropriate. *Kraus v. Trinity Management Services, Inc.*, 23 Cal. 4th 116, 127-28 (2000), *superseded on other grounds by statute*; *Korea Supply*, 29 Cal. 4th at 1148-49 (under UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest).
[80] *Genna*, 25 F. Supp. 2d at 1039; *see* Section VIII(D), *infra*.
[81] *See* Section VIII(B), *infra*.
[82] *See, e.g.*, FAC (Docket #165), ¶¶ 77 (no date or location provided for alleged statements), 145 (same), 73 (no location); *Vess*, 317 F.3d 1097, 1104-05 (9th Cir. 2003) (FAA subject to Rule 9(b)); *In re Sony Grand Wega*, 2010 WL 4892114, at *9 (S.D. Cal. Nov. 30, 2010) (same).  A FAA violation is automatically a UCL violation.  *See Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950-51 (2002); *see also People* v. *Orange County Charitable Services*, 73 Cal. App. 4th

1

## X.   MEMBERSHIP IN PLAINTIFFS' AMENDED CLASSES IS NOT ASCERTAINABLE

2

3       The Court did not order Plaintiffs to amend their class definition and indeed denied

4   SCEA's motion to strike it.  In re-casting their pleading, however, Plaintiffs apparently realized

5   that their new theories and claims were not common to the individual representatives, let alone an

6   entire class.  In the FAC, Plaintiffs abandon their original class (as well as one of the named class

7   representatives, Mr. Herz), and purport to offer three new classes:

8       "**Class 1**  All persons in the United States who purchased a PS3 with the "Other
        OS" feature available ('Fat' model PS3s) and who accessed the PSN, and did not

9       use the 'Other OS' feature.

10      "**Class 2**  All persons in the United States who purchased a PS3 with the "Other
        OS" feature available ("Fat" model PS3s) and who accessed the PSN, used the

11      "Other OS" feature, and downloaded Firmware Update 3.21.

12      "**Class 3**  All persons in the United States who purchased a PS3 with the "Other
        OS" feature available ("Fat" model PS3s) and who accessed the PSN, used the

13      "Other OS" feature, and did not download Firmware Update 3.21.[83]

14   Mr. Stovell seeks to represent Class 1, Mr. Huber seeks to represent Class 2, and Messrs. Ventura

15   and Baker seek to represent Class 3.[84]

16      These newly-minted class definitions are fatally flawed in that they each propose an

17   unascertainable class.  Courts recognize that a proposed class must be "ascertainable," *i.e.*, it must

18   be possible to readily identify class member, so that the parties and courts in the future can

19   evaluate those bound by any judgment under *res judicata* principles.[85]  Thus, a proposed class

20   definition must be precise, objective, and identifiable based on readily available criteria.[86]

21   1054, 1075 (1999); *Committee on Children's Television,* 35 Cal. 3d 197,211 (1983) (superseded
     on other grounds by California Proposition 64, voter approved in Nov. 2, 2004 General Election).
22   Conversely, statements or acts that do not violate the UCL by necessity cannot support a claim
     under the FAA.
23   [83] FAC (Docket #165), ¶ 202 (emphasis added).
     [84] *Id.*
24   [85] *See DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970); *see also Deitz v. Comcast
     Corp.,* 2007 WL 2015440, *8 (N.D. Cal. July 11, 2007) ("The problem of ascertainability is the
25   inability for future courts to ascertain who was and was not bound by the judgment."); *Scott v.
     Aetna Services, Inc.,* 210 F.R.D. 261, 267 (D. Conn. 2002) ("[a]scertainability is required in order
26   to give notice to putative class members as to whom the judgment in the action will be res
     judicata.").
27   [86] *Mazur v. eBay, Inc.,* 257 F.R.D. 563, 567 (N.D. Cal. 2009); *Aiken v. Obledo,* 442 F. Supp. 628,
     658 (E.D. Cal. 1977) (class definition must be "sufficiently definite so that it is administratively
28   feasible for the court to determine whether an individual is a member.").

1    Membership in the class may not turn on extensive fact-finding, a resolution of the merits of the

2    claims, or the subjective belief of class members.[87]

3          Here, membership in each class is premised on whether individual PS3 purchasers

4    engaged in certain conduct; specifically, whether they "accessed" the PSN and whether they

5    "used" or did not "use" the Other OS feature.[88]  To add to the factual complexity, membership in

6    Classes 2 and 3 is further premised on whether individual class members "did" or "did not"

7    download Update 3.21.[89]  Notably, Plaintiffs do not aver the means by which membership will be

8    objectively discerned and indeed, there is no ready, objective means for determining who

9    "accessed" the PSN, who "used" or did not "use" the Other OS feature, or who "did" or "did not"

10   download Update 3.21.  Accordingly, membership in these classes is not readily ascertainable,

11   and these classes are deficiently pleaded as a matter of law.  Thus, in the event that any claim

12   survives dismissal, which is highly unlikely, Plaintiffs' new class allegations must be dismissed.

13         Specific flaws also exist with respect to Plaintiffs' unjust enrichment claim in Count IX.

14   It is axiomatic that no proposed class containing members lacking standing may be certified.

15   Here, Plaintiffs allege their unjust enrichment claim only on behalf of "some members of Class

16   3," thereby conceding that members of that class lack standing to prosecute this claim.  On this

17   basis, which is separate from those set forth more fully above, the Court should dismiss the class

18   allegations from Count IX should it survive dismissal.

19   **XI.   CONCLUSION**

20         It is clear from the FAC that Plaintiffs are unable to cure the glaring flaws in their overall

21   theory.  Because no amendment can save their claims, they should be dismissed with prejudice.

22   *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam)

23   /////

24

---

25   [87] *Adashunas v. Negley*, 626 F.2d 600, 603 (7th Cir. 1980) (class certification denied because of extensive fact finding necessary to identify members of class); *Benito v. Indymac Mortgage Servs.*, 2010 WL 2089297, *2 (D. Nev. May 21, 2010) ("Defining the class is 'of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the 'best notice practicable' in a Rule 23(b)(3) action.'") (quoting Manual for Complex Litigation, § 21.222)).

26

27   [88] FAC (Docket #165), 56:8-19.

28   [89] *Id.*, 56:13-19.

1    (dismissal without leave to amend appropriate where amendment would be futile) (quoting

2    *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

3

4    Dated:  March 28, 2011

                                           DLA PIPER LLP (US)
5

6                                          By:  /s/ Luanne Sacks
                                                LUANNE SACKS
7                                               Attorneys for Defendant
                                                SONY COMPUTER ENTERTAINMENT
8                                               AMERICA LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28