James A. Quadra (SBN 131084)
jquadra@calvofisher.com
Rebecca M. Coll (SBN 184468)
rcoll@calvofisher.com
**CALVO FISHER & JACOB, LLP**
One Lombard Street, Second Floor
San Francisco, California 94111
Telephone: (415) 374-8370
Facsimile: (415) 374-8373

Rosemary M. Rivas (State Bar No. 209147)         James Pizzirusso (*admitted pro hac vice*)
rrivas@finkelsteinthompson.com                   jpizzirusso@hausfeldllp.com
**FINKELSTEIN THOMPSON LLP**                      **HAUSFELD LLP**
100 Bush Street, Suite 1450                       1700 K. Street NW, Suite 650
San Francisco, California 94104                   Washington, DC 20006
Telephone: (415) 398-8700                         Telephone: (202) 540-7200
Facsimile: (415) 398-8704                         Facsimile: (202) 540-7201

*Interim Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|                                        |                                        |
| -------------------------------------- | -------------------------------------- |
|                                        | Case No. 3:10-cv-01811 RS (EMC)        |
| In re SONY PS3 "OTHER OS" LITIGATION   | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
|                                        | Date:         May 12, 2011 <br> Time:         1:30 p.m. <br> Judge:        Honorable Richard Seeborg <br> Courtroom    3 |

1

**TABLE OF CONTENTS**

2

3                                                                                                       <u>Page</u>

4   I.     <u>INTRODUCTION</u> ................................................................................. 1

5   II.    <u>THE NEW, DETAILED FACTS ALLEGED IN THE COMPLAINT</u> ....................... 2

6   III.   <u>LEGAL STANDARD</u> ......................................................................... 3

7   IV.    <u>PLAINTIFFS HAVE STATED UCL AND FAA CLAIMS</u> ........................... 4

8          A.    <u>SCEA's "Standing" Argument Is Specious.</u> ................................. 4

9          B.    <u>Plaintiffs Adequately Allege Unlawful, Unfair, and Fraudulent Business Practices</u>........... 6

10               1.    Plaintiffs State A Claim For Unlawful Business Practices. ...................... 6

11               2.    Plaintiffs State A Claim For Unfair Business Practices.......................... 7

12               3.    Plaintiffs State Claims for Fraudulent and Misleading Business Practices ................. 8

13  V.     <u>PLAINTIFFS STATE CLAIMS FOR CLRA VIOLATIONS</u> ........................... 9

14         A.    <u>SCEA Made Affirmative Misrepresentations and Failed to Disclose Material Facts Both
15               Before and At the Point of Sale</u> .................................................. 10

16         B.    <u>Plaintiffs Have Sufficiently Alleged a Causal Connection</u> ........................ 12

17         C.    <u>SCEA's Representations are Actionable</u> ...................................... 13

18         D.    <u>Plaintiffs Have Pled their Claims with Particularity</u> ............................ 13

19         E.    <u>Plaintiffs Have Sufficiently Pled Unconscionability</u>............................ 14

20  VI.    <u>PLAINTIFFS STATE A CLAIM FOR BREACH OF WRITTEN PROMISES</u> ........................ 15

21  VII.   <u>PLAINTIFFS ADEQUATELY ALLEGE PRIVITY</u> ................................. 18

22  VIII.  <u>PLAINTIFFS ARE ENTITLED TO RESTITUTIONARY RELIEF</u>........................ 21

23  IX.    <u>PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE CFAA</u>........................ 22

24  X.     <u>SCEA'S ATTEMPTS TO DISMISS PLAINTIFFS' CLASS ALLEGATIONS ARE
25         PREMATURE, IMPROPER AND WITHOUT MERIT</u>........................ 24

26  XI.    <u>CONCLUSION</u>.................................................................... 25

27

28

1

## TABLE OF AUTHORITIES

2

3 **Cases**                                                                          **Page(s)**

4
*24 Hour Fitness, Inc. v. Super. Ct.,*
5     66 Cal. App. 4th 1199 (Cal. Ct. App. 1998) ................................................................. 14

6 *Anunziato v. eMachines, Inc.,*
7     402 F. Supp. 2d 1133 (C.D. Cal. 2005) ..................................................................... 13

8 *Armendariz v. Found. Health Psychcare Servs.,*
    24 Cal. 4th 83 (2000) ................................................................................................ 14
9

10 *Atkinson v. Elk Corp. of Texas,*
    142 Cal. App. 4th 212 (Cal. Ct. App. 2006) ............................................................. 18
11

12 *AtPac, Inc. v. Aptitude Solutions, Inc.,*
    730 F. Supp. 2d 1174 (E.D. Cal. 2010)..................................................................... 24
13

14 *Baggett v. Hewlett-Packard Co.,*
    582 F. Supp. 2d 1261 (C.D. Cal. 2007) ..................................................................... 12
15

16 *Barker v. Riverside County Office of Ed.,*
    584 F.3d 821 (9th Cir. 2009) ...................................................................................... 4
17

18 *Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2009).................................................................................................... 4
19

20 *Brothers v. Hewlett Packard-Co.,*
    2007 WL 485979 (N.D. Feb. 12, Cal. 2007) ........................................................... 16
21

22 *Buckland v. Threshold Enterprises, Ltd.,*
    155 Cal. App. 4th 798 (Cal. Ct. App. 2007) ............................................................... 6
23

24 *Burrows v. Orchid Island TRS,*
    2008 WL 744735  (S.D. Cal. Mar. 18, 2008) ............................................................. 8
25

26 *Cardinal Health 301, Inc. v. Tyco Electronics Corp.,*
    169 Cal. App. 4th 116 (Cal. Ct. App. 2008) ....................................................... 20, 21
27

28 *Cel-Tech Communications v. Los Angeles Cellular Telephone Co,*
    20 Cal. 4th 163 (1999)............................................................................................ 6, 7

*Chacanaca v. Quaker Oats,*
    2010 WL 4055954 (N.D. Cal. Oct. 14, 2010)...................................................... 9, 13

*Chamberlan v. Ford Motor Co.,*
  369 F. Supp. 2d 1138 (N.D. Cal. 2005) .......................................................................... 12, 15

*Chang v. Chen,*
  80 F.3d 1293 (9th Cir. 1996) ................................................................................................ 4

*Chavez v. Blue Sky Natural Beverage Co.,*
  340 Fed. App'x. 359 (9th Cir. 2009) ..................................................................................... 4

*Citizens of Humanity, LLC v. Costco Wholesale Corp.,*
  171 Cal. App. 4th 1 (Cal. Ct. App. 2009) .............................................................................. 6

*Clark v. State Farm Mut. Auto. Ins. Co.,*
  231 F.R.D. 405 (C.D. Cal. 2005) ........................................................................................ 24

*Clayworth v. Pfizer, Inc.,*
  49 Cal. 4th 758 (2010) .......................................................................................................... 6

*Consumer Advocates v. Echostar Satellite Corp.,*
  113 Cal. App. 4th 1351 (Cal. Ct. App. 2005) ..................................................................... 13

*Daugherty v. American Honda Motor Co., Inc.,*
  144 Cal. App. 4th 824 (Cal. Ct. App. 2006) ......................................................... 10, 11, 12

*Davis v. Ford Motor Credit Co.,*
  179 Cal.App.4th 581 (Cal. Ct. App. 2009), .......................................................................... 7

*Day v. AT&T Corp.,*
  63 Cal. App. 4th 325 (Cal. Ct. App. 1998) ........................................................................... 9

*Defazio v. Hollister, Inc.,*
  2008 WL 958185 (E.D. Cal. April 8, 2008) ........................................................................ 24

*Discover Bank v. Super. Ct.,*
  36 Cal. 4th 148 (2005) ........................................................................................................ 14

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.,*
  2009 U.S. Dist. LEXIS 30610 (N.D. Cal. April 10, 2009)…………………………………………18

*Durell v. Sharp Healthcare,*
  183 Cal.App.4th 1350 (2010) ............................................................................................... 6

*Egilman v. Keller & Heckham, LLP,*
  401 F. Supp. 2d 105 (D.D.C. 2005) .................................................................................... 22

ii
TABLE OF AUTHORITIES
CASE NO. 3:10-CV-01811 RS (EMC)

*Ferrington v. McAfee, Inc.,*
    2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ............................................................. 6

*Genna v. Digital Link Corp.,*
    25 F. Supp. 2d 1032 (N.D. Cal. 1997) ........................................................... passim

*Gentry v. Super. Ct.,*
    42 Cal. 4th 443 (2007) ............................................................................. 14

*Gerlinger v. Amazon.com, Inc.,*
    311 F. Supp. 2d 838 (N.D. Cal. 2004) ............................................................. 21

*Gruen v. EdFund,*
    2009 WL 2136785 (N.D. Cal. July 15, 2009) ..................................................... 9

*Hardling v. Time Warner, Inc.,*
    2009 WL 2575898 (S.D. Cal. Aug. 18, 2009) ..................................................... 4

*Haskell v. Time, Inc.,*
    857 F. Supp. 1392 (E.D. Cal. 1994) ............................................................. 13

*Hirsch v. Bank of America,*
    107 Cal. App. 4th 708 (Cal. Ct. App. 2003) ..................................................... 21

*Hoey v. Sony Electronics, Inc.,*
    515 F. Supp. 2d 1099 (N.D. Cal. 2007) ........................................................... 12

*In re Apple & AT&TM Antitrust Litig.,*
    596 F. Supp. 2d 1288 (N.D. Cal. 2008) ...................................................... 11, 23

*In re Apple and ATTM Antitrust Litig.,*
    2010 WL 3521965 (N.D. Cal. Jul. 8, 2010) ..................................................... 23

*In re Mattel, Inc.,*
    588 F. Supp. 2d 1111 (C.D. Cal. 2008) ........................................................... 9

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV Television Litig.,*
    2010 WL 4892114 (S.D. Cal. Nov. 30, 2010) ................................................... 12

*In re Sony PS3 Litigation,*
    2010 WL 3324941  (N.D. Cal. Aug. 23, 2010) ................................................. 21

*In re Sony Vaio Computer Notebook Trackpad Litig.,*
    2010 WL 4262191 (S.D. Cal. Oct. 28, 2010) ................................................... 21

iii

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ................................................................................. 9

*In re Wal-Mart Stores, Inc. Wage and Hour Litigation,*
    505 F. Supp. 2d 609 (N.D. Cal. 2007) ....................................................... 24

*Ingle v. Circuit City Stores, Inc.,*
    328 F.3d 1165 (9th Cir. 2003) ..................................................................... 14

*Kasky v. Nike Inc.,*
    27 Cal. 4th 163, 950 (2002) .......................................................................... 6

*Keith v. Buchanan,*
    173 Cal. App. 3d 13 (Cal. Ct. App. 1985) ................................................. 16

*Kwikset Corp. v. Sup. Ct.,*
    51 Cal. 4th 310 (2011) .......................................................................... 4, 5, 6

*LiMandri v. Judkins,*
    52 Cal. App. 4th 326 (Cal. Ct. App. 1997) ............................................... 11

*LVRC Holdings LLC v. Brekka,*
    581 F.3d 1127 (9th Cir. 2009) ..................................................................... 23

*Mass. Mutual Life Ins. Co. v. Superior Court,*
    97 Cal. App. 4th 1282 (Cal. Ct. App. 2002) ....................................... 12, 15

*McAdams v. Monier,*
    182 Cal. App. 4th 174 (Cal. Ct. App. 2010) ................................................ 9

*McGary v. City of Portland,*
    386 F.3d 1259 (9th Cir. 2004) ..................................................................... 19

*McKell v. Washington Mutual, Inc.,*
    142 Cal. App. 4th 1457 (2006) ................................................................... 10

*Meyer v. Sprint Spectrum,*
    45 Cal. 4th 634 (2009) ................................................................................. 12

*Misra v. Decision One Mortgage Co., LLC,*
    673 F. Supp. 2d 987 (C.D. Cal. 2008) ....................................................... 24

*Morey v. NextFoods, Inc.,*
    2010 WL 2473314 (S.D. Cal. June 7, 2010) .............................................. 16

iv

*Multiven, Inc. v. Cisco Systems, Inc.,*
  2010 WL 2889262 (N.D. Cal. July 20, 2010).........................................................23

*Nagrampa v. MailCorps., Inc.,*
  469 F.3d 1257 (9th Cir. 2006) .............................................................................14

*Netscape Communications Corp. v. Federal Insurance Co.,*
  2006 WL 449149  (N.D. Cal. Feb. 22, 2006) ..........................................................8

*Nordberg v. Trilegiant Corp.,*
  445 F. Supp. 2d 1082 (N.D. Cal. 2006) ................................................................21

*O'Connor v. Boeing N. Am., Inc.,*
  184 F.R.D. 311 (C.D. Cal. 1998) ..........................................................................25

*Perretta v. Prometheus Development Co.,*
  520 F.3d 1039 (9th Cir. 2008) ...............................................................................4

*Quelimane Co. v. Stewart Title Guaranty Co.,*
  19 Cal. 4th 26 (1998) ............................................................................................8

*Rubio v. Capitol One Bank,*
  613 F.3d 1195 (9th Cir. 2010) .............................................................................10

*Saltzman v. Pella Corp.,*
  257 F.R.D. 471 (N.D. Ill. 2009)...........................................................................25

*Shersher v. Superior Court,*
  154 Cal. App. 4th 1491 (Cal. Ct. App. 2007) .........................................................6

*State ex rel. Celebrezze v. Ferraro,*
  63 Ohio App. 3d 168 (Ohio Ct. App. 1989) .........................................................14

*Stickrath v. Globalstar, Inc.,*
  527 F. Supp. 2d 992 (N.D. Cal. 2007) ..................................................................13

*Sullivan v. Kelly Services, Inc.,*
  2010 WL 1729174 (N.D. Cal. April 27, 2010).......................................................25

*Thorpe v. Abbott Lab, Inc.,*
  534 F. Supp. 2d 1120 (N.D. Cal. 2008) ................................................................24

*Ticconi v. Blue Shield of California,*
  160 Cal. App. 4th 528 (Cal. Ct. App. 2008) ...........................................................7

TABLE OF AUTHORITIES
CASE NO. 3:10-CV-01811 RS (EMC)

*US Bioservices Corp v. Lugo,*
   595 F. Supp. 2d 105 (D.D.C. 2005) ........................................................... 22

*U.S. Roofing, Inc. v. Credit Alliance Corp.,*
   228 Cal. App. 3d 1431 (Cal. Ct. App. 1991) ...................................... 20, 22

*Vess v. Ceba-Geigy Crop. USA,*
   317 F.3d 1097 (9th Cir. 2003) .................................................................... 9

*Villegas v. U.S. Bancorp,*
   2010 WL 2867424 (N.D. Cal. July 20, 2010) ............................................. 4

*Walker v. Geico General Insurance Company,*
   558 F.3d 1025 (9th Cir. 2009) .................................................................... 6

*Wayne v. Staples, Inc.,*
   135 Cal. App. 4th 466 (Cal. Ct. App. 2006) ............................................ 14

*Weinstat v. Dentsply Intern., Inc.,*
   180 Cal. App. 4th 1213, 1228 (Cal. Ct. App. 2010)…………...........................15, 16, 17

*Westlands Water Dist. V. Firebaugh Canal,*
   10 F.3d 667 (9th Cir. 1993) ........................................................................ 4

*Williams v. City of Antioch,*
   2010 WL 3632197 (N.D. Cal. Sept. 2, 2010) ........................................... 25

*Williams v. Gerber Products Co.,*
   552 F.3d 934 (9th Cir. 2008) ................................................................. 9, 10

## Statutes

15 U.S.C. § 2301(6) ...................................................................................... 21
18 U.S.C. § 1030(a)(1) .................................................................................. 22
18 U.S.C. § 1030(a)(4) .................................................................................. 22
18 U.S.C. § 1030(a)(5)(A) ................................................................. 22, 23, 24
Cal. Bus. & Prof. Code § 17200 ..................................................................... 6
Cal. Bus. & Prof. Code § 17204 .................................................................. 4, 6
Cal. Bus. & Prof. Code § 17535 ..................................................................... 4
Cal. Civ. Code § 1670.5 ............................................................................... 14

## Rules

Fed. R. Civ. Proc. 23 (c)(5).......................................................................... 25

TABLE OF AUTHORITIES
CASE NO. 3:10-CV-01811 RS (EMC)

**<u>Other Authority</u>**

*Validity, Construction, and Application of Computer Fraud and Abuse Act,*
174 A.L.R. Fed. 101 (2001)..................................................................................................... 22

TABLE OF AUTHORITIES
CASE NO. 3:10-CV-01811 RS (EMC)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   __INTRODUCTION__

Defendant Sony Computer Entertainment America LLC's ("SCEA") motion to dismiss should be denied because it generally ignores the new and detailed allegations of the First Amended Consolidated Class Action Complaint ("Complaint" or "FAC") and because SCEA's arguments are based on erroneous statements of law.  More importantly, SCEA ignores the fundamental underpinnings of Plaintiffs' claims.  Implicit in every contract of sale is the agreement that the seller will not take acts that deprive the buyer of the benefit of his bargain after the sale.  This principle holds true regardless of the duration of any warranties.  For example, if Toyota disabled the battery feature in its hybrids and forced owners to use only gasoline, it would not matter whether the auto's warranties had expired.  A manufacturer cannot unilaterally take away a fundamental feature of a product after that product has been sold to a consumer – regardless of whether the warranty is still in effect.

In arguing that Plaintiffs' only expectation was that the PS3's features would last for the duration of the one-year limited warranty, SCEA ignores Plaintiffs' new allegations that SCEA advertised the PS3 as a computer having a lifespan of 10 years with the ability to run alternate operating systems, such as Linux, access the PlayStation Network ("PSN"), and play Blu-ray movies and video games, among other things.  Those representations reinforced SCEA's contractual obligation not to deprive Plaintiffs of these fundamental features of the PS3 for at least ten years.  SCEA's representations that the PS3 was both a computer, on which consumers could use other operating systems,  as well as a gaming device with access to the PSN, and that it would support the product for 10 years are "affirmations of fact" and "promises to perform" that formed the basis of the parties' bargain.  By interfering with consumers' ability to use those key features, SCEA deprive buyers of the benefit of their bargain.

SCEA's arguments are also based on erroneous statements of law; for instance, SCEA argues that unless Plaintiffs can show a right to restitution, they lack standing under the Unfair Competition Law.  The California Supreme Court has rejected this argument twice now in decisions issued in July 2010 and recently in January 2011.  California law is also clear that even though Plaintiffs did not pay SCEA for their PS3s directly, they are nevertheless entitled to restitution.

Further, SCEA repeats arguments that this Court has already rejected.  For example, SCEA

1

asserts that various adhesive contracts allow it to unilaterally remove the PS3's Other OS. SCEA is essentially arguing that it can unilaterally remove any of the PS3's features, even the ability to play video games, under the terms of its contracts. As this Court stated in its February 2011 Order, SCEA has failed to conclusively establish that its contracts allow it to remove the PS3's basic features. Nothing SCEA says in its motion changes the Court's prior ruling. Additionally, as it did the last time, the Court should reject SCEA's attacks on the class allegations as premature. As Plaintiffs explain below, SCEA's arguments lack merit when considered in light of the newly added allegations and the applicable law, and they respectfully request that the Court deny SCEA's motion in its entirety.

## II.   THE NEW, DETAILED FACTS ALLEGED IN THE COMPLAINT

In developing the PS3, under the vision and leadership of Ken Kutaragi, former CEO of Sony Computer Entertainment, Inc., SCEA and its partners set out to create an advanced new processor to power a "computer" that could also play games and Blu ray DVDs. (FAC ¶¶ 46-7.) SCEA and its Sony partners joined efforts with Toshiba and IBM and invested hundreds of millions of dollars to develop, from scratch, a new and unique computer chip to enable the PS3 to act as a computer. (FAC ¶¶ 48-51.) Unbeknownst to Sony, during development, IBM sold some of this technology to Microsoft, Sony's chief competitor, who then beat Sony to the market causing significant financial losses to Sony that would impact the PS3 for many years. (FAC ¶¶ 59-61.)

Nevertheless, Sony's efforts resulted in the development of the new "Cell" processor, which allowed both a Game Operating System ("Game OS") and an Other Operating System ("Other OS") to operate simultaneously on the PS3 through the use of a "hypervisor," which managed the interface between the Game OS and the Other OS. (FAC ¶¶ 52-56.) While the Game OS allowed the PS3 to operate as a gaming console, the Other OS allowed users to install Linux and perform computing functions. (FAC ¶ 3.) Because the Cell processor was so powerful, users could write complex programs, do sophisticated mathematical research, and, in the case of the federal government, map targeting areas and break encrypted passwords. (FAC ¶¶ 51, 110-14.) SCEA even funded and promoted PS3 computer "clusters," wherein two or more PS3s were linked together, to allow users to create "super-computers" for high-powered computer research. (FAC ¶¶ 6, 7, 104-09, 116-18.)

SCEA heavily promoted the PS3's computer and Linux capabilities.  (FAC ¶¶ 71-119.)  SCEA's efforts included: a media blitz through press releases and interviews describing and advertising the PS3's computer capabilities (FAC ¶¶ 71-80); advertising the PS3's computer capabilities on SCEA's websites (FAC ¶¶ 84, 90-93, 103); sponsoring events to promote the computer functionality of the PS3 (FAC ¶¶ 105-106); entering agreements with third parties to cross-promote Linux and the PS3 and to advertise the PS3's computing capabilities  (FAC ¶¶ 104, 107); advertising the Other OS and Linux capability on the PS3 box, in the PS3 manuals, and on the PS3 screen (FAC ¶¶ 87-89, 97-100); working closely with Linux developers to ensure that consumers install Linux on the PS3, which increased the visibility of the feature (FAC ¶¶ 80, 103-104); creating a PS3 Linux Distributer's Starter Kit (FAC ¶¶ 94-95); and funding PS3 clusters described above.  (FAC ¶¶ 108-118.)

SCEA also promised that this "computer" would have a 10-year lifespan, and that its features (including Other OS) would be maintained and improved through periodic "updates."  (FAC ¶¶ 4, 9, 120-137.)    To carry out this promise and as part of the sale, SCEA entered into a direct contractual relationship with consumers to provide such updates.  (FAC ¶¶ 133-137.)  Thus, buyers did not just purchase a simple gaming console, but a constantly evolving gaming console *and* computer promoted as having a lifespan of at least a decade as a result of the ability to upgrade it through SCEA's direct updates.  (FAC ¶ 4.)  SCEA never informed consumers that it retained the purported right (or even had the ability) to remove the PS3's advertised features, such as the Other OS feature.  (FAC ¶ 11.)

Despite its promises that the PS3 would act as a computer, had a ten year lifespan, and would be continually updated, on April 1, 2010, SCEA intentionally disabled the Other OS feature.  (FAC ¶ 10.)  This occurred after SCEA promised that the feature would not be removed on older models. (FAC ¶¶ 143-51.)   SCEA falsely told the public that this "update," known as Firmware version 3.21 ("Update 3.21") was for "security" reasons.  (FAC ¶¶ 159-60.)  The true reason SCEA removed the Other OS was to save money and increase its profits.   (FAC ¶¶ 171-76; 177-78; 182.)

## III.   LEGAL STANDARD

On a Rule 12(b)(6) motion, the court must "construe the complaint liberally by viewing it in the

light most favorable to the plaintiff."[1]  Moreover, the court should accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations.[2]  Thus, the "issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims asserted."[3]  Further, a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual assertions;" rather, the pleader must simply provide the "grounds" of his "entitle[ment]" by pleading more than "labels and conclusions, and a formulaic recitation of a cause of action's elements."[4]  As courts within this Circuit have noted, "[t]his new standard is not a 'heightened fact pleading' requirement, but 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim].'"[5]  To survive a Rule 12(b)(6) motion, a complaint need contain "only enough facts to state a claim to relief that is **plausible on its face**."[6]

## IV.   PLAINTIFFS HAVE STATED UCL AND FAA CLAIMS
### A.   SCEA's "Standing" Argument Is Specious

To establish standing under the Unfair Competition Law ("UCL") and False Advertising Act ("FAA"), a plaintiff must only allege "lost money or property" resulting from the defendant's conduct.[7] Because the "lost money or property" standard under the UCL is stricter than the "injury in fact" requirement under Article III, a plaintiff who establishes the former also meets the latter.[8]

As the California Supreme Court recently observed, "[t]here are innumerable ways" in which a plaintiff may meet this "lost money or property" requirement.[9]  "A plaintiff may (1) surrender in a

---

[1] *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996).
[2] *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993); *see also Barker v. Riverside County Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009).
[3] *Villegas v. U.S. Bancorp*, 2010 WL 2867024, at *2 (N.D. Cal. July 20, 2010).
[4] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2009).
[5] *Hardling v. Time Warner, Inc.*, 2009 WL 2575898, at *3 (S.D. Cal. Aug. 18, 2009).
[6] *Twombly*, 550 U.S. at 570 (emphasis added); *see also Perretta v. Prometheus Development Co.*, 520 F.3d 1039, 1043 (9th Cir. 2008), amended, 521 F.3d 1061 (9th Cir. 2008).
[7] *See Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. App'x. 359, 361 (9th Cir. 2009) (unpublished); *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 323 (2011); Bus. & Prof. Code § 17204; Bus. & Prof. Code § 17535.
[8] *Kwikset*, 51 Cal. 4th at 324 ("standing under [the UCL] is substantially narrower than federal standing under article III . . . which may be predicated on a broader range of injuries").
[9] *Id.* at 323.

PLAINTIFFS' MPA IN OPPOSITION TO SCEA'S MOTION TO DISMISS
CASE NO. 3:10-CV-01811 RS (EMC)

1   transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a

2   present or future property interest diminished; (3) be deprived of money or property to which he or she

3   has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that

4   would otherwise have been unnecessary."[10]  Plaintiffs meet this flexible standard.

5       Plaintiffs allege they "acquired less" than they bargained for when they purchased their PS3s, for

6   which they paid a premium due to the Other OS feature, because (1) at the time of purchase, SCEA

7   reserved the right to disable or remove the PS3's advertised features, including the "Other OS", without

8   disclosing this significant limitation; and (2) they purchased the PS3s based in part on SCEA's promise

9   to provide periodic "updates" that would maintain and improve the PS3's functionality throughout its

10  minimum ten year lifespan, but in fact were provided an "update" that significantly *degraded* the PS3's

11  features and value during its expected useful life and forced them to choose between the promised

12  update and retaining existing features.  (FAC ¶ 332.)  Plaintiffs also allege that SCEA "diminished" the

13  present and/or future value of their PS3s by forcing them to choose between (1) accepting the promised

14  "update" to maintain the currency of their consoles but obliterate critical existing features, or (2)

15  declining the update and foregoing *other* critical gaming and computing features.  Whichever they

16  chose, their PS3 became less "valuable" by virtue of the lost features and functionality.  *Id.*   Plaintiffs

17  allege they have been "deprived" of property to which they have a cognizable claim, namely, a gaming

18  and computing console that continues to function as promised, and/or periodic "updates" that maintain

19  *and* enhance (rather than degrade) the functionality of those consoles.  *Id.*  Finally, Plaintiffs allege they

20  have been "required to enter into a transaction" (installing Update 3.21) that cost them "property" (the

21  loss of features), which would have been unnecessary had SCEA kept its promise to provide updates

22  that would maintain and enhance the PS3s features.  *Id.*

23      SCEA contends that Plaintiffs lack standing because "[o]nly individuals who suffer loss of

24  money or property *eligible for restitution* have standing to bring claims under the UCL and FAA."

25  Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss ("MTD") at 18

26  (Docket No. 168.)  SCEA is wrong.  Based on their allegations, Plaintiffs *are* entitled to restitution of

27  monies they provided in exchange for the PS3s even though they did not pay SCEA directly but through

28

---

[10] *Kwikset,* 51 Cal. 4th at 323.

PLAINTIFFS' MPA IN OPPOSITION TO SCEA'S MOTION TO DISMISS
CASE NO. 3:10-CV-01811 RS (EMC)

retailers.[11]  Even if they were entitled to only their requested injunctive relief, Plaintiffs plainly have

standing to bring these claims.  The California Supreme Court recently reiterated that "ineligibility for

restitution is not a basis for denying standing" for a UCL claim.[12]  In reaching this holding, the Court

***expressly disapproved*** the very cases on which SCEA relies for its standing argument.[13]  Accordingly,

Plaintiffs have standing to bring their causes of action under the UCL and FAA.[14]

###   B.   Plaintiffs Adequately Allege Unlawful, Unfair, and Fraudulent Business Practices

To state a UCL claim, Plaintiffs must allege facts that, if proven, establish that SCEA engaged in

unlawful, unfair or fraudulent business acts or practices.  Cal. Bus. & Prof. Code § 17200.  Because

these three "prongs" of the UCL are disjunctive, a plaintiff need only allege facts sufficient under any

one of them to state a UCL claim.[15]  Plaintiffs state a claim under all three prongs.

###   1.   Plaintiffs State A Claim For Unlawful Business Practices.

The UCL's "unlawful" prong borrows from virtually any law or regulation to serve as the

predicate wrong for a UCL claim.  Thus, a violation of the borrowed law results in a *per se* violation of

the UCL.[16]  SCEA contends that Plaintiffs fail to state a claim for "unlawful" business conduct because

they have failed to allege facts necessary to establish underlying statutory violations.  This Court has

already upheld Plaintiffs' Computer Fraud and Abuse Act claim, and nothing SCEA says in its current

motion should change that, as described below in Part IX.  February 17, 2011 Order Granting Motion to

---

[11] Standing exists and restitution is available even if payments to the defendant were "indirect" through a retailer.  *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788 (2010); *see also Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1500 (Cal. Ct. App. 2007); *Ferrington v. McAfee, Inc.,* 2010 WL 3910169, at *7-9 (N.D. Cal. Oct. 5, 2010).
[12] *Kwikset,*, 51 Cal.4th at 335-37 ("the standards for establishing standing under section 17204 and eligibility for restitution under section 17203 are wholly distinct . . . [n]othing in the text or history of Proposition 64 suggests" an intent to make eligibility for restitution a prerequisite for standing); *Clayworth,* 49 Cal. 4th at 788-89.
[13] *Id.* at 335-37 (*declining to extend Citizens of Humanity, LLC* v. *Costco Wholesale Corp.*, 171 Cal. App. 4th 1 (Cal. Ct. App. 2009); *Buckland v. Threshold Enterprises, Ltd*., 155 Cal. App. 4th 798 (Cal. Ct. App. 2007); and *Walker v. Geico General Insurance Company*, 558 F.3d 1025 (9th Cir. 2009)).
[14] The California Supreme Court handed down *Clayworth* in July 2010 and *Kwikset* in January 2011, yet SCEA filed the instant motion relying on overruled cases.  MTD at 18.  SCEA failed to cite *Kwikset* and *Clayworth* in its opening brief or to note that its cases had been rejected.  *Id.*
[15] *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1359 (2010).
[16] *Kasky v. Nike Inc.*, 27 Cal. 4th 939, 950 (2002); *Cel-Tech Communications v. Los Angeles Cellular Telephone Co*, 20 Cal. 4th 163, 180 (1999).

PLAINTIFFS' MPA IN OPPOSITION TO SCEA'S MOTION TO DISMISS
CASE NO. 3:10-CV-01811 RS (EMC)

Dismiss With Leave to Amend and Denying Motion to Strike ("Feb. 2011 Order") at 9-10.  Based on that finding alone, Plaintiffs have identified and pled an "unlawful" business act or practice.  Moreover, for the reasons set forth below, Plaintiffs allege facts sufficient to establish violations of the Consumers Legal Remedies Act ("CLRA") and the Magnuson-Moss Warranty Act ("Magnuson-Moss").  *See infra* Parts V, VII.  Thus, Plaintiffs state an unlawful business practices claim.

### 2.    Plaintiffs State A Claim For "Unfair" Business Practices.

"The 'unfair' standard . . . is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud."[17]  "The test of whether a business practice is unfair involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer."[18]  An "unfair" business practice occurs "when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Id.*  A plaintiff states an "unfair" practice if he or she alleges (1) a consumer injury that is "substantial"; (2) that the injury is not "outweighed by any countervailing benefits to consumers or competition"; and (3) that the injury was one that "consumers themselves could not reasonably have avoided."[19]  A business practice can be unfair even if there is no law prohibiting it.  As the California Supreme Court has explained, "It would be impossible to draft in advance detailed plans and specifications of all acts and conduct to be prohibited, since unfair or fraudulent business practices may run the gamut of human ingenuity and chicanery."[20]

Here, Plaintiffs allege that SCEA caused them substantial harm by (1) at the time of sale, purporting to retain the right to remove critical PS3 features without adequate disclosure, (2) after the sale, issuing an update that was promised, as a part of the "bargain" that Plaintiffs struck when they purchased their PS3s, to preserve and enhance the PS3, but that in fact significantly degraded its features and functionality; (3) damaging Plaintiffs' property, which Plaintiffs owned and which SCEA had no

---

[17] *Ticconi v. Blue Shield of California*, 160 Cal. App. 4th 528, 539 (Cal. Ct. App. 2008); *see also Davis v. Ford Motor Credit Co.*, 179 Cal.App.4th 581, 596-97 (Cal. Ct. App. 2009), reh'g denied (Dec. 8, 2009), review denied (Mar. 10, 2010) ("As our Supreme Court has put it, the courts need to deal with innumerable new schemes that the fertility of man's invention can contrive," thus courts apply a flexible and "suitably broad" standard to claims of "unfair" practices.)

[18] *Ticconi*, 160 Cal. App. 4th at 539.

[19] *Davis*, 179 Cal. App. 4th at 596-97.

[20] *Cel-Tech*, 20 Cal. 4th at 181 (internal citations and quotations omitted).

1   right to alter, without Plaintiffs' permission, by requiring Plaintiffs to eliminate features of that property

2   in order to be able to continue using the PS3 to play online games and to perform other functions; and

3   (4) advertising and marketing the PS3 as including the "Other OS" feature and as having the

4   functionality of a computer, while purporting to reserve the right—by virtue of terms that were not fairly

5   disclosed to purchasers and were without legal effect—to eliminate those functions at its discretion.

6   (FAC ¶ 327.)  Plaintiffs allege that SCEA's purported "security" justification was fabricated and in any

7   event did not justify the invasion of Plaintiffs' property interests in their PS3s.  *Id.*, ¶ 329.  Finally,

8   Plaintiffs allege that PS3 buyers could not have reasonably foreseen that SCEA would breach its

9   promise to provide "updates" that would enhance and preserve the PS3's functionality, or that SCEA

10  purported to reserve the right to do so.  *Id.*, ¶ 327.  Nor could Plaintiffs have "avoided" damage—they

11  were forced to "pick their poison" by either accepting Update 3.21 and losing the Other OS, or declining

12  Update 3.21 and losing other features.  *Id.*

13          SCEA wrongly contends that Plaintiffs fail to state an unfair business practices claim that

14  satisfies Rule 9(b).  Plaintiffs meet Rule 9(b) by making the allegations as set forth above, and even if

15  they did not, it is settled in state courts that pleading unfair practices with particularity is not required.[21]

16  There is no authority for the proposition that a special "fraud" pleading requirement applies to the same

17  claims brought in federal court.  SCEA's only "support" is (1) a citation to *Genna v. Digital Link Corp.*,

18  25 F. Supp. 2d 1032, 1039 (N.D. Cal. 1997); and (2) a reference to "section VIII(D), *infra*."  MTD at 19

19  n. 80.  *Genna* is a *securities fraud* case that says nothing about pleading requirements for an unfair

20  practices claims, and there *is* no "section VIII(D)" in SCEA's opening brief.[22]  In fact, federal courts

21  considering this issue have applied *Quelimane* to non-fraud claims brought under the UCL.[23]

            **3.      Plaintiffs State Claims for Fraudulent and Misleading Business Practices**

23          Plaintiffs disagree that Rule 9(b) applies to their claims under the FAA and the UCL's fraud

---

[21] *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 46-47 (1998) (the "well-settled rule" is that *only* fraud allegations under the UCL must be pleaded with particularity).

[22] This is yet another example of SCEA presenting a misleading argument to the Court.

[23] *See Burrows v. Orchid Island TRS*, 2008 WL 744735 at *5 (S.D. Cal. Mar. 18, 2008); *Netscape Communications Corp. v. Federal Insurance Co.*, 2006 WL 449149 at *5 (N.D. Cal. Feb. 22, 2006).

prong, but even if Rule 9(b) does apply, they meet it.[24]  Rule 9(b) requires that the plaintiff allege the circumstances surrounding the alleged fraud that are "specific enough to give the defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."[25]

Plaintiffs meet Rule 9(b).  In Paragraphs 87-93, 97-101 and 196-201 of the FAC, Plaintiffs have "identified the specific statements they allege are misleading, the basis for that contention, where those statements appear on the product packaging, and the relevant time period in which such statements were used."[26]  Plaintiffs have also identified the statements appearing on SCEA's website, on the PS3 console itself, and in various articles and reports at third party review sites.  (FAC ¶¶ 83, 90-92, 97-101, 122.)  Plaintiffs have also alleged that these were SCEA's representations, and where possible, they identified the specific employee or agent who made the representations.  (FAC ¶¶ 122, 130, 132.)  Thus, Plaintiffs have pled the "who, what, when, where, how and why."  Plaintiffs have also pled the content of the representations they relied on, and where they viewed these representations.   (FAC ¶¶ 17, 19, 21, 23.)

## V.   PLAINTIFFS STATE CLAIMS FOR CLRA VIOLATIONS

The CLRA prohibits misrepresentations as well as the concealment or suppression of material facts.[27]  The CLRA, like the UCL, is governed by the "reasonable consumer" test.[28]  Thus, the CLRA prohibits advertising which is not only false, but also advertising which, "although true, is either actually misleading or which has the capacity or tendency to deceive or confuse the public."[29]  Whether a business practice is deceptive is generally a question of fact inappropriate for resolution on a motion to

---

[24] To preserve any appellate rights on this issue, Plaintiffs submit Rule 9(b) does not apply to their claims for violations of the FAA, UCL, and CLRA, as these claims are distinct from the traditional type of common law fraud in that Plaintiffs must only show that "members of the public are likely to be deceived."  *In re Tobacco II Cases,* 46 Cal. 4th 298, 312 (2009); *In re Mattel, Inc.,* 588 F. Supp. 2d 1111, 1118 (C.D. Cal. 2008); *Vess v. Ceba-Geigy Crop. USA,* 317 F.3d 1097, 1105 (9th Cir. 2003); *Gruen v. EdFund,* 2009 WL 2136785, at *5 (N.D. Cal. July 15, 2009).
[25] *Chacanaca v. Quaker Oats,* 2010 WL 4055954, at *12 (N.D. Cal. Oct. 14, 2010).
[26] *Chacanaca,* 2010 WL 4055954, at *12.
[27] *Williams v. Gerber Products Co.,* 552 F.3d 934, 938 (9th Cir. 2008); *McAdams v. Monier,* 182 Cal. App. 4th 174, 185 (Cal. Ct. App. 2010).
[28] *Williams,* 552 F.3d at 938.
[29] *Id.; see also Day v. AT&T Corp.,* 63 Cal. App. 4th 325, 232-33 (Cal. Ct. App. 1998).

1  dismiss.[30]  Here, Plaintiffs allege that SCEA violated the CLRA by making affirmative

2  misrepresentations and failing to disclose material facts.

3      **A.      SCEA Made Affirmative Misrepresentations and Failed to Disclose Material Facts
        Both Before and At the Point of Sale**

5      Plaintiffs allege that SCEA made misrepresentations in violation of Cal. Civ. Code

6  sections 1770(a)(5), 1770(a)(7), and 1770(a)(9)[31].  In accordance with the Court's February 17, 2011

7  Order, Plaintiffs have identified a number of affirmative misrepresentations that could mislead

8  reasonable consumers to believe that they would be able to use the PS3's features, including the Other

9  OS feature, for the PS3's useful life of 10-years, and that SCEA's future updates would improve the

10 system by adding features and upgrades.  (FAC ¶¶ 87-94, 122, 130.) Contrary to its representations,

11 SCEA used an update to remove the PS3's advertised features.

12     Even if these statements were literally true when made, that would not absolve SCEA from

13 liability.[32]  Rather, SCEA's representations were nonetheless false and misleading because SCEA

14 removed the Other OS feature in April 2010, well before the end of the PS3's useful life through an

15 "update," which it represented would improve the PS3, based on hidden terms in its adhesion contracts.

16     Further, Plaintiffs properly allege CLRA claims for the failure to disclose material information.

17 Under the CLRA, an omission is actionable if it is contrary to a representation actually made by the

18 defendant or was a fact the defendant had a duty to disclose.[33]  SCEA's purported right to remove the

19 PS3's advertised features was clearly contrary to its representations about the PS3's features and

20 lifespan.  Additionally, Plaintiffs adequately allege a duty on SCEA to disclose its purportedly retained

21 right to remove the PS3's advertised features.  A duty to disclose material facts exists in one of four

22 circumstances: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had

---

[30] *Williams*, 552 F.3d at 938; *McKell v. Washington Mutual, Inc.,* 142 Cal. App. 4th 1457, 1472 (2006).
[31] Section 1770(a)(5) prohibits "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have[.]"
Section 1770(a)(7) prohibits "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another."
Section 1770(a)(9) prohibits "Advertising goods or services with intent not to sell them as advertised."
[32] *See Rubio v. Capitol One Bank,* 613 F.3d 1195, 1202 (9th Cir. 2010) (practice of promising a fixed 6.99% APR and later increasing to 15.9% three years later for undisclosed reasons was misleading).
[33] *Daugherty v. American Honda Motor Co., Inc.,* 144 Cal. App. 4th 824, 835 (Cal. Ct. App. 2006).

1   exclusive knowledge of material facts not know to the plaintiff; (3) the defendant actively conceals a

2   material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses

3   some material fact.[34]

4       First, Plaintiffs allege that SCEA had exclusive knowledge of material facts, namely, that it

5   retained the right and had the ability to remove any of the PS3's advertised features during the PS3's

6   useful life through updates.  (FAC ¶ 276.)[35]  Second, Plaintiffs have adequately alleged that SCEA

7   actively concealed material facts from them by burying its purported right to remove the PS3's

8   advertised features using vague and ambiguous language in the SSLA, the Warranty, and the TOS,

9   which were not presented to Plaintiffs until after they already bought and set up the PS3.  (FAC ¶ 288.)

10  Finally, Plaintiffs sufficiently allege partial representations (*i.e.*, the PS3's Other OS feature, the PS3's

11  lifespan, and the availability updates to improve functionality) but suppressed material facts, namely,

12  that SCEA retained the right to remove the PS3's advertised features during the useful life of the product

13  through updates.  (FAC ¶¶ 143, 277.)

14      SCEA's reliance on *Daugherty* to support its claim that the only expectations buyers could have

15  is that the PS3 would function for the length of the one-year express warranty is unavailing.  *Daugherty*

16  involved the potential for a generally insignificant oil leak manifesting, if at all, years after the warranty

17  had expired.  The vehicle performed fully as advertised and the single latent problem could be "easily

18  repaired by installing a retainer bracket designed to maintain the oil seal in its proper position."[36]  In the

19  present case, SCEA made a slew of affirmative representations that were false (i.e., updates would

20  improve the PS3 and the Other OS would not be removed from older models) and/or misleading (i.e.,

21  failure to disclose material facts, namely, the purported right to remove the PS3's advertised features).

22  Further, Plaintiffs' PS3s did not malfunction causing them to lose the Other OS feature, nor can

23  Plaintiffs somehow obtain a repair to get the Other OS feature back.  Rather, SCEA unilaterally and

24  intentionally removed the Other OS feature through a firmware update despite the fact that Plaintiffs

25

26  [34]  *LiMandri v. Judkins,* 52 Cal. App. 4th 326, 337 (Cal. Ct. App. 1997).

27  [35]  FAC ¶ 276; *See In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1289-90 (N.D. Cal.
    2008) (plaintiff adequately pled that Apple had exclusive knowledge of legal and technical limitations

28  associated with the iPhone).

[36]  *Daugherty,* 144 Cal.App.4th at 827.

PLAINTIFFS' MPA IN OPPOSITION TO SCEA'S MOTION TO DISMISS
CASE NO. 3:10-CV-01811 RS (EMC)

1   paid a premium for the PS3 and the Other OS feature.  Plaintiffs' reliance on SCEA's representations

2   about the PS3's features, lifespan, and continuous improvement through updates were reasonable.[37]

3   These facts readily distinguish this case from SCEA's remaining authorities.[38]

## B.   Plaintiffs Have Sufficiently Alleged a Causal Connection

5            The CLRA's Section 1780(a) says that "Any consumer who suffers damage as a result of the use

6   or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may

7   bring an action" under the CLRA.  To establish causation, Plaintiffs must only allege that they were

8   exposed to an unlawful or deceptive practice causing or resulting in some sort of damage.[39]  Here,

9   Plaintiffs have alleged just that, namely, they allege exposure to SCEA's misrepresentations and failure

10  to disclose material facts (before and at the time of sale), and the damages they suffered at the time of

11  Update 3.21.   (FAC ¶¶ 273, 17-24.)

12           Also, Plaintiff Baker's and Plaintiff Huber's claims are timely.  The CLRA's statute of

13  limitations runs from the "time a reasonable person would have discovered the basis for the claim."[40]

14  Here, the statute of limitations began to run on the date SCEA issued Update 3.21 and Plaintiffs became

15  aware of this basis for their claims.  Finally, that Stovell and Baker do not allege seeing the 10-year life

16

17  [37] Additionally, SCEA offers extended warranties for the PS3, further undercutting its argument that
    consumers can only reasonably expect the PS3 to last the life of its limited warranty.  *See*

18  http://us.playstation.com/support/protection-plan/ (last visited April 18, 2011).

19  [38] Contrary to SCEA's assertions, courts do not discount the consumer's reasonable expectations.  *See,
    e.g, Baggett v. Hewlett-Packard Co.,* 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) (finding alleged

20  expectations that all ink in cartridge could be used was reasonable based on manual's representations
    about cartridge's average life; also the manual did not represent upper limit of printed pages after which

21  printing would shut off).  Rather, it depends on whether there were affirmative representations that were
    untrue or misleading, or if a duty to disclose material facts exists.  *See, e.g., Daugherty,* 144 Cal. App.

22  4th at 834 ("The complaint fails to identify any representation by Honda that its automobiles had any
    characteristic they do not have, or are of a standard or quality they are not."); *see also In re Sony Grand*

23  *WEGA KDF-E A10/A20 Series Rear Projection HDTV Television Litig.,* 2010 WL 4892114, at *5 (S.D.

24  Cal. Nov. 30, 2010) (Sony not responsible for repair of allegedly defective television that stopped
    working after warranty because alleged false or misleading representations constituted puffery and did

25  not support a duty to disclose); *Hoey v. Sony Electronics, Inc.,* 515 F. Supp. 2d 1099, 1104 (N.D. Cal.

26  2007) (Sony not responsible for repair of allegedly defective computer that stopped working after
    warranty because no adequately alleged misleading representation or duty to disclose).

27  [39] *Meyer v. Sprint Spectrum,* 45 Cal. 4th 634, 641 (2009); *Mass. Mutual Life Ins. Co. v. Superior Court,*
    97 Cal. App. 4th 1282, 1292 (Cal. App. 2002).

28  [40]  *Mass. Mut. Life Ins. Co.,* 97 Cal. App. 4th at 1295; *Chamberlan v. Ford Motor Co.,* 369 F. Supp. 2d
    1138, 1148 (N.D. Cal. 2005).

1   span representations is of no moment, because they do allege seeing representations about the Other OS

2   feature and firmware updates, which also trigger a duty to disclose.  (FAC ¶¶ 21, 23.)

3           **C.**      **SCEA's Representations are Actionable**

4          Statements of fact that can be verified as true or false through discovery are not puffery.[41]

5   Further, statements not actionable standing alone, are actionable if, "[v]iewed in context, the language

6   arguably is misleading to a reasonable consumer." [42]   Here, statements that the PS3 has a lifespan of 10

7   years, is like a computer that has the ability to run other operating systems, such as Linux, and to access

8   the PSN, and that comes with future firmware updates to improve the system are actionable because

9   they can be verified as true or false through discovery.  Accordingly, SCEA's argument fails.

10          **D.**      **Plaintiffs Have Pled their Claims with Particularity**

11         Without any analysis and only in three conclusory sentences, SCEA argues that Plaintiffs fail to

12  allege their CLRA claims with the particularity required by Rule 9(b).  Rule 9(b) requires that the

13  plaintiff allege the circumstances surrounding the alleged fraud that are "specific enough to give the

14  defendants notice of the particular misconduct . . . so that they can defend against the charge and not just

15  deny that they have done anything wrong."[43]

16         Here, Plaintiffs have met Rule 9(b).  Specifically, in Paragraphs 87-93, 97-101 and 196-201 of

17  the FAC, Plaintiffs have "identified the specific statements they allege are misleading, the basis for that

18  contention, where those statements appear on the product packaging, and the relevant time period in

19  which such statements were used."[44]   Thus, Plaintiffs have alleged the "who, what, when, where, how

20  and why."  Plaintiffs have also alleged the representations they relied on.  (*E.g.*, FAC ¶¶ 17, 19, 21, 23.)

---

[41]   *Consumer Advocates v. Echostar Satellite Corp.,* 113 Cal. App. 4th 1351, 1361 (Cal. Ct. App. 2005); *Anunziato v. eMachines, Inc.,* 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005).

[42]   *Haskell v. Time, Inc.* 857 F. Supp. 1392, 1401-02 (E.D. Cal. 1994).  For instance, statements that a service "[w]orks virtually ANYWHERE you can see SKY" and that the "products can help you maintain productivity and keep in contact from remote locations or worksites" have been found actionable.  *Stickrath v. Globalstar, Inc.,* 527 F. Supp. 2d 992, 999 (N.D. Cal. 2007); *see also Chacanaca v. Quaker Oats Co.*, 2010 WL 4055954 (N.D. Cal. Oct. 14, 2010) (representation that product with allegedly dangerous additives was "wholesome" not puffery but could mislead a consumer).

[43]   *Chacanaca,* 2010 WL 4055954, at *12.

[44]   *Id.*

1

### E.    Plaintiffs Have Sufficiently Pled Unconscionability

2    In its February 2011 Order, the Court held that it does not appear that Plaintiffs' CLRA claim for

3    violation of Section 1770(a)(19) may be "subject to resolution in Sony's favor at the pleading stage."

4    Feb. 2011 Order at 8 n. 5.  In its motion, SCEA merely repeats its previous erroneous arguments which

5    the Court should reject again.  Unconscionability, which has both a procedural and a substantive

6    element, refers to "'an absence of meaningful choice on the part of one of the parties together with

7    contract terms which are unreasonably favorable to the other party.'"[45]  While unconscionability is a

8    question of law for the court, factual issues may bear on the question.[46]

9    Plaintiffs state a claim under Section 1770(a)(19).  First, Plaintiffs allege that the SSLA, TOS

10    and Warranty are contracts of adhesion SCEA imposed through its superior bargaining strength without

11    the opportunity to negotiate the terms.  (FAC ¶ 286.)  Thus, the SSLA, TOS and Warranty are

12    procedurally unconscionable.[47]  Second, the SSLA, TOS and Warranty are substantively unconscionable

13    because they are one-sided, harsh and oppressive to the extent they allow SCEA (as it contends) to

14    unilaterally remove the PS3's advertised features without compensation and contrary to its

15    representations.[48]

16    SCEA's authorities are readily distinguishable.  *Meridian Project Systems, Inc. v. Hardin Constr.*

17    *Co., LLC,*[49] did not involve a "click wrap" license that allowed the software manufacturer to remove

18    _____

19    [45] *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *Gentry v. Super. Ct.*, 42 Cal.

20    4th 443, 468-69 (2007).  Procedural unconscionability concerns the manner in which the agreement was
      sought or obtained, while substantive unconscionability concerns the impact of the term itself and

21    focuses on overly harsh or one-sided results.  *Gentry*, 42 Cal. 4th at 468-69.  Procedural and substantive
      unconscionability need not be present in the same degree to be unenforceable.  *Id.*  Rather, a "sliding

22    scale" is invoked, such that the greater the procedural unconscionability, the less evidence of substantive
      unconscionability is required, and vice versa.  *Id.*

23    [46] *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 480 (Cal. Ct. App. 2006); *see also Armendariz v.*

24    *Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 92 (2000).  Under California law, "[w]hen it is claimed
      . . . that the contract or any clause thereof may be unconscionable the parties [are] afforded a reasonable

25    opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in
      making the determination."  Cal. Civ. Code § 1670.5.

26    [47] *See Discover Bank v. Super. Ct.*, 36 Cal. 4th 148, 160 (2005).

27    [48] *See, e.g., Nagrampa v. MailCorps., Inc.*, 469 F.3d 1257, 1286 (9th Cir. 2006); *24 Hour Fitness, Inc.*
      *v. Super. Ct.*, 66 Cal. App. 4th 1199, 1213 (Cal. Ct. App. 1998); *State ex rel. Celebrezze v. Ferraro*, 63

28    Ohio App. 3d 168, 173-74 (Ohio Ct. App. 1989).
      [49] 426 F. Supp. 2d 1101, 1103 (E.D. Cal. 2006).

1    advertised functions.  That case also involved parties with equal bargaining power and was decided on

2    summary judgment.  In *Leong v. Square Enix of America Holdings, Inc.*, the plaintiffs knew upfront that

3    they had to pay a monthly service fee to continue playing the online video game at issue and therefore

4    the clause revoking the user's software license for failure to pay the monthly fees was not

5    unconscionable.[50]  In contrast here, Plaintiffs believed they could use the PS3's advertised features for

6    its useful life based on SCEA's representations and the SSLA, TOS and Warranty did not advise them

7    otherwise.[51]

8    **VI.    PLAINTIFFS STATE A CLAIM FOR BREACH OF WRITTEN PROMISES**

9             Relying on *Weinstat v. Dentsply International, Inc.*, SCEA correctly describes the elements of a

10   breach of an express warranty claim in California,[52] but wrongly asserts that Plaintiffs fail to adequately

11   identify the promises or temporal element of their express warranty claims.  MTD at 5.  Plaintiffs have

12   explicitly identified SCEA's key promises about the PS3 that became part of the basis of the bargain

13   (*i.e.*, the ability of the PS3 to install Linux and to operate as a computer).[53]  Further, while not a

14   requirement in California warranty law (as evidenced by SCEA's own recitation of the elements of this

15   claim), Plaintiffs have also alleged a "temporal element" to these claims by showing that SCEA

16   represented that the PS3's features (including computer functionality and Linux installation/operation)

17   were designed to and would be *continually upgraded and available for the life of the product* (10-years

18   or more).  (FAC ¶¶ 91, 122, 130.)  Notably, SCEA points to no counter-representations or statements

19   stating that the PS3's advertised features would only be available at SCEA's whim – its position here.

20            As an initial matter, whether SCEA's numerous advertisements and representations about the

21   PS3 amount to a warranty is generally not amenable to resolution on a motion to dismiss where all

22

23   ---

     [50] 2010 WL 1641364, at *1, 10 (C.D. Cal. April 20, 2010).

24   [51] Plaintiffs' unconscionability claims are not barred by the statute of limitations for the same reasons
     discussed above in Part V.B.  *See Mass. Mut. Life Ins. Co.*, 97 Cal. App. 4th at 1295; *Chamberlan*, 369

25   F. Supp. 2d at 1148.  At minimum, this is a factual question inappropriate here.

26   [52] 180 Cal. App. 4th 1213, 1228 (Cal. Ct. App. 2010); *see* MTD at 4 ("Under California law, to please a
     breach of express warranty claim a plaintiff must properly allege that (1) the seller's statements

27   constitute an affirmation of fact or promise, or a description of goods; (2) the statement was part of the
     basis of the bargain; and (3) the warranty was breached.").

28   [53] For those who failed to download Update 3.21 (Class 3), SCEA breached other warranties regarding,
     for example, the ability of the PS3 to play games online.  (*E.g.*, FAC at ¶ 217.)

reasonable inferences are weighed in Plaintiffs' favor.  In *Pau v. Yosemite Park and Curry Co.*, the Ninth Circuit reversed dismissal of plaintiffs' express warranty claim, holding that a rental company's brochure offering rental bikes and representing that the Mirror Lake area trail was "safe for cycling" could reasonably be interpreted by a jury as an express warranty that the bikes "were safe for the Mirror Lake trail and that this statement became part of the basis of the bargain."[54]  Similarly, in *Anthony v. General Motors Corp.*, the court held it was an issue for the jury whether General Motors' nationwide advertising about the "the excellence and reliability of [GM's] products" was a warranty.[55]

In *Weinstat*, the case upon which SCEA relies, the representations at issue were in the product's manual.  In the manual's directions, the manufacturer suggested that a Cavitron (a dental device), could be used in oral surgery, whereas the Plaintiffs alleged that it could not because the product failed to deliver a safe water stream.[56]  The *Weinstat* court held that "[a]ny affirmation, once made, is part of the agreement unless there is 'clear affirmative proof' that the affirmation has been taken out of the agreement."[57]  In rejecting the defendant's argument that the manual's statements could not have been part of the basis of the bargain, the court held, "[u]nder [defendant's] view of express warranty law, the company would not be obliged to stand by any statement it made in the Directions . . . . Surely this is not the law."[58]  Numerous other California courts have similarly recognized that a manufacturer's statements in advertisements, brochures, and manuals form an express warranty.[59]  Notably, in none of

---

[54]  928 F.2d 880, 886-87 (9th Cir. 1991).

[55]  33 Cal. App. 3d 699, 706-07 (Cal. Ct. App. 1973) ("Neither the trial court nor this court can say, at this stage of the proceedings, that plaintiffs would not be able to produce evidence of advertisements containing broad claims amounting to a warranty that General Motors products, including the trucks equipped with the wheels herein involved, were free from inherent risk of failure.").

[56]  180 Cal. App. 4th at 1220.

[57]  *Id.* at 1229.

[58]  *Id.* at 1230.

[59]  *See, e.g., Brothers v. Hewlett Packard-Co.*, 2007 WL 485979, at *7 (N.D. Cal. Feb. 12, 2007) (denying a motion to dismiss an express warranty claim and finding that statements that a notebook computer that could provide a certain level of graphics functionality because of its compatibility with a particular graphics card that were made in HP's technical specification documents and brochures could form the basis of an express warranty claim); *Morey v. NextFoods, Inc.*, 2010 WL 2473314, *2 (S.D. Cal. June 7, 2010) ("The complaint contains pictures of GoodBelly products that clearly state that GoodBelly 'Support Healthy Digestion [and] Natural Immunity' and that GoodBelly has 'Clinically Tested Live Cultures.'  These assertions suffice to state a claim for breach of [express] warranty.") (internal citation omitted); *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21 (Cal. Ct. App. 1985) (Reversal of

16

1    these cases was SCEA's proposed "temporal element" an additional prerequisite that had to be pled.

2    Moreover, SCEA cites no case where an express warranty created by *advertising* was somehow limited

3    by the terms of an unrelated written warranty that came with the product related to product defects.

4         Plaintiffs allege that SCEA made numerous representations about a user's ability to install

5    another operating system, such as Linux, and use the PS3 as a computer on the PS3 box (FAC at ¶ 88),

6    in the PS3 manual and directions (*Id.* at ¶ 89), on the PS3 screen (*Id.* at ¶¶ 90-96), on several PS3-related

7    websites (*Id.* at ¶¶ 84, 97-100, 103), in numerous public interviews (*e.g.*, *id.* at ¶¶ 70-77), and through

8    many other sources (*e.g.*, *id.* at ¶¶ 79-83). Plaintiffs also allege that SCEA initially widely promoted the

9    PS3's unique Linux feature and even set up research "clusters" and sold PS3s to various government

10   agencies who specifically wanted to use the PS3's Linux computing features for significant and

11   expensive projects. (*Id.* at ¶¶ 104-118). Plaintiffs allege (and SCEA does not dispute) that no

12   statements, warranties, or anything else indicated that SCEA retained a purported right to remove these

13   key, promoted features of the product at any time. (*E.g., id.* at ¶¶ 9, 11, 119).

14        Instead of acknowledging and discussing these detailed allegations, SCEA relies on three

15   summary statements in the claim section and ignores the bulk of the Complaint. MTD at 5. And

16   SCEA's *sole* argument about the inadequacy of Plaintiffs' advertising express warranty claim appears to

17   be that Plaintiffs "say nothing about the continued availability of any feature . . . ." *Id.* SCEA then

18   repeats some (but not all) of the Complaint's allegations with regard to Sony's numerous representations

19   related to PS3 "lifecycle expectations" (including that the 10-year life cycle was a "commitment" SCEA

20   made with every PS3 consumer) of the PS3 and then contends "surely [these statements] cannot be

21   contorted into a promise that all PS3 features and functions will be supported, unconditionally and in the

22   identical manner for ten years." MTD at 6.[60] SCEA's argument about whether these statements (and

23   others in the Complaint it fails to mention) constitute a "promise" cannot be resolved on this record.

24

25   judgment of no express warranty at end of plaintiff's case, finding that a representation that a boat was
"seaworthy" in manufacturer's sales brochure was an express warranty).

26   [60] SCEA also asserts that "only two of the four named Plaintiff avers having seen any statement

27   regarding a ten year lifecycle." MTD at 6. A statement does not have to be seen to have been a part of
the basis of the bargain. *Weinstat v. Dentsply Intern., Inc.*, 180 Cal. App. 4th 1213, 1228 (Cal. Ct. App.

28   2010) (explicitly rejecting defendants' argument that the express warranty claims were "doomed"
because the plaintiffs could not "prove that they saw and read the statements prior to the purchase").

PLAINTIFFS' MPA IN OPPOSITION TO SCEA'S MOTION TO DISMISS
CASE NO. 3:10-CV-01811 RS (EMC)

1    Plaintiffs also adequately allege that SCEA represented that firmware updates would make the

2    constantly evolving PS3 "future proof" and that this would ensure the continued viability of the PS3's

3    features (including computer functionality through Linux) for at least 10-years.  (FAC at ¶¶ 128-132.)

4    SCEA's website and manual stated that its updates would "add new features and updates," "update …

5    features," and "add features."  (*Id.*)  Plaintiffs allege that the Other OS was one of the core "features" of

6    the PS3.  (*Id.* at ¶¶ 9, 11, 14.)  Further, in one of the FAC's paragraphs that SCEA fails to mention in its

7    brief, SCEA issued a press release where its vice president of product marketing, Scott Steinberg, is

8    quoted as stating that SCEA's updates are what make the ten year life cycle viable: "***With these regular***

9    ***firmware updates and futureproofed technology***, SCEA is making the 10-year lifecycle of PS3

10   possible."  (*Id.* at ¶ 129 (emphasis added).)  And when SCEA initially removed the Other OS from the

11   newer PS3 models, it reaffirmed its past representations that it would not remove the Other OS feature

12   from older models but that it would continue to provide support for the Other OS.[61]  Plaintiffs' newly

13   alleged paragraphs in the FAC on these issues sufficiently show that SCEA's representations created an

14   express warranty that the PS3's features (including Linux operability) would be continually available

15   and upgraded for 10-years or more, which SCEA breached through Update 3.21.

16   **VII.    PLAINTIFFS ADEQUATELY ALLEGE PRIVITY**

17   SCEA repeats its attacks on Plaintiffs' allegations with respect to privity while ignoring the

18   detailed, privity-related allegations that Plaintiffs allege in the FAC.  MTD at 6-7.[62]  Plaintiffs' amended

19   allegations here are different and SCEA's recycled arguments are unpersuasive.  Additionally, SCEA's

_____

21   [61]  *Id.* at ¶143 ("[i]f anyone wants to use previous models and change the OS, they can do so."); ¶145
22   ("There would be no time in the future when the Other OS would be moved from those models
     (CECHL00)."); ¶149 ("Please be assured that SCE is committed to continue the support for previously
23   sold models that have the 'Install Other OS' feature and that this feature will not be disabled in future
     firmware releases.").

24   [62]  While the Court has previously rejected the dicta of *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th
25   212 (Cal. Ct. App. 2006), wherein the court noted that an express warranty could put a Plaintiff in
     privity with respect to an implied warranty claim (Feb. 2011 Order at 6), Plaintiffs maintain that the
26   *Atkinson* holding is legally sound and seek to preserve this argument should an appeal be necessary.  As
     Judge Fogel ruled in *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, "where a product bears the
27   manufacturer's printed guarantee of quality, or represents that the product has certain properties, a
     subsequent purchaser may sue the manufacturer even if the product was purchased through a distributor
28   and the purchaser correspondingly lacks privity with the manufacturer."  2009 U.S. Dist. LEXIS 30610,
     at *26-27 (N.D. Cal. April 10, 2009).

1    contention that "no privity exception exists for post-sale dealings with a manufacturer" (MTD at 7) is

2    unsupported by and contrary to California law.  SCEA fails to acknowledge the uniqueness and novelty

3    of the privity principles at issue in this case.[63]  This is not a "typical" warranty case where a consumer

4    purchases a product from a retailer, has no further contact with the manufacturer, and thus is not in a

5    direct privity relationship with the original manufacturer.  Instead, SCEA deliberately places itself in

6    direct privity with buyers as part of the sale to establish strict control over how the PS3 is used and to

7    ensure continued functionality of the console.

8           In dismissing Plaintiffs' implied warranty claims, the Court noted that in the original complaint,

9    "Plaintiffs did not articulate a contention that the privity between the parties under the license agreement

10   and/or the PSN User Agreement effectively created privity with respect to the sales transactions."  Feb.

11   2011 Order at 2.  Plaintiffs have now clearly made such an allegation in significant detail, which SCEA

12   fails to address.  In particular, Plaintiffs allege that SCEA marketed and sold the PS3 based on its ability

13   to access significant online content, including the ability to play games against other players online, and

14   as having constantly evolving and upgraded features through the use of firmware updates.  (*See, e.g.,*

15   FAC at ¶¶ 128).  Thus, as a continuum of their PS3 purchase and the features with which it was

16   marketed, consumers were obliged to enter into a subsequent direct contractual relationship with SCEA

17   to access SCEA's exclusive online PSN and to ensure the ongoing functionality of their PS3 consoles.

18   And to access the PSN, consumers had to accept SCEA's SSLA and TOS– which SCEA itself argues

19   apply to this case.  These terms governing the PSN explicitly state that the TOS is "contract" entered

20   into between the consumer and SCEA.  (*Id.* at ¶¶ 133-137.)  And it is through this direct "contract" with

21   SCEA that the "updates" which caused the harm complained of here occurred and through which

22   Plaintiffs claim a breach of the implied warranty resulted.  If Plaintiffs and SCEA were not in a direct

23   privity relationship, Plaintiffs would not have been able to download the updates directly from SCEA

24   and would not have been harmed.  In short, Plaintiffs' interactions with SCEA are an integral part of the

25   original sale – and not merely limited "post-sale" interactions – that were related to key promoted

26   _____

27   [63]  On that basis alone, SCEA's motion to dismiss should be denied. *See McGary v. City of Portland*,
     386 F.3d 1259, 1270 (9th Cir. 2004) (quotation omitted) ("Rule 12(b)(6) dismissals 'are especially
28   disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after
     factual development.'").

                                          19

1   features of the PS3 (online play and upgradability).  And as a result, Plaintiffs and SCEA are in a direct

2   privity relationship for purposes of Plaintiffs' sale-based warranty claims.  In the alternative, Plaintiffs

3   maintain that their direct dealings with SCEA are an *exception* to the privity rule as recognized by *U.S.*

4   *Roofing* and other cases where a manufacturer's deliberate actions placed it into privity with an end-

5   user.[64]

6       SCEA's argument that there is no privity because any interactions here took place "post-sale" is

7   contrary to California law.  MTD at 7.  In *U.S. Roofing*, much of the evidence regarding the direct

8   dealings between the manufacturer and the purchaser also took place post-sale.  While the parties had an

9   oral agreement for the sale of the crane before purchase, the court also noted that the manufacturer made

10  an express warranty as to the crane and when the purchaser experienced problems after the sale, it

11  contacted the manufacturer for relief.  Repairs on the crane, after it was sold, were arranged and paid for

12  by the manufacturer.  From this evidence, the court ruled that the jury could find the necessary privity to

13  support liability for breach of an implied warranty.[65]  Similarly, here, SCEA gave an express warranty

14  on the PS3; when users experienced problems, they contacted SCEA (not the retailer); and updates to

15  the PS3 were arranged by SCEA through a written contractual relationship with purchasers.  That users

16  initially bought the PS3 from retailers like Best Buy (although some did purchase directly from Sony),

17  should not act as a bar to an implied warranty claim given the allegations at issue here – particularly

18  when SCEA seeks to control and retains a right to sue users (and has done so) under these exact same

19  agreements despite this alleged "lack of privity." (FAC ¶¶ 135-37.)

20      Beyond *U.S. Roofing*, other California courts have also explicitly recognized that when a

21  manufacturer has direct dealings with a purchaser post-sale, it can find itself in a privity relationship

22  with the purchaser.[66]  In *Cardinal Health*, the court held: "[a]lthough direct dealings between a

23  purchaser and manufacturer after the purchase are ***generally*** insufficient to create an exception to the

24  privity requirement, *where as here the manufacturer essentially adopts and benefits from the initial*

25  *sales negotiations and there are numerous direct dealings between the parties, the requisite privity can*

26  _____

27  [64] *See, e.g., U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal. App. 3d 1431 (Cal. Ct. App. 1991).
    [65] *Id.* at 1442.

28  [66] *See Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116, 143 (Cal. Ct. App. 2008).

PLAINTIFFS' MPA IN OPPOSITION TO SCEA'S MOTION TO DISMISS
CASE NO. 3:10-CV-01811 RS (EMC)

1   *be established*." *Id.* (emphasis added).  Here, SCEA adopted and benefitted from the initial sales

2   contract by taking the place of the retailer, ensured the ongoing functionality and updates of the PS3

3   console that was sold, and offered additional advertised services to customers including online

4   capabilities (obtaining significant sums of money directly from consumers for many of these services).

5   These services were not offered by and could not have been handled by the retailer who essentially

6   passed off the sale to SCEA at SCEA's behest so that SCEA could strictly control PS3 usage and further

7   benefit from the sale.  As a result, the policy justifications for allowing an implied warranty claim to

8   proceed against SCEA apply:

9              [W]here, as here, the manufacturer or supplier affirmatively engages in
              conduct directly with the purchaser that functionally places the party in the
10             position of the direct seller, it is fair and appropriate to imply a warranty
              that the goods will be fit for the buyer's purposes, if all other elements of
11             the claim have been established.[67]

12

13          Plaintiffs agree, as this Court previously articulated, that their implied warranty claim under

14   Magnuson-Moss rises or falls on the success of their state law implied warranty claim.[68]

15   **VIII.   PLAINTIFFS ARE ENTITLED TO RESTITUTIONARY RELIEF**

16          Although unjust enrichment is not always recognized as an independent claim, plaintiffs "may

17   assert a claim for restitution based on a theory of unjust enrichment."[69]  Plaintiffs satisfy this criteria by

18   ─────────────────────

19   [67] *Cardinal Health*, 169 Cal. App. 4th at 143-45.  To the extent the Court nevertheless finds that
     Plaintiffs do not sufficiently allege privity, Plaintiffs respectfully ask that the Court grant them leave to
20   amend the complaint to allege that they are third-party beneficiaries of a contract between SCEA and
     authorized retailers like Best Buy.  *See In re Sony Vaio Computer Notebook Trackpad Litig.,* 2010 WL
21   4262191, at *3 (S.D. Cal. Oct. 28, 2010) (upholding implied warranty claims based on third party
     beneficiary theory).
22   [68] Feb. 2011 Order at 7.  Plaintiffs are not bringing a claim under the Magnuson Moss Warranty Act
23   ("MMWA") for breach of an express written warranty.  Plaintiffs' express warranty claim is limited to
     warranties created by SCEA's advertising and promotional statements, not the type of express written
24   warranty covered under the MMWA.  *See* 15 U.S.C. § 2301(6).  Thus, SCEA's argument with respect to
     "time specifications" is inapplicable as it is related to a written warranty claim.  MTD at 8.
25   Nevertheless, as discussed *supra*, SCEA did articulate a 10-year time period in numerous
26   representations.
     [69] *See Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100-02 (N.D. Cal. 2006); *Hirsch v. Bank of*
27   *America,* 107 Cal. App. 4th 708, 722 (Cal. Ct. App. 2003); *Gerlinger v. Amazon.com, Inc*., 311 F. Supp.
     2d 838, 856 (N.D. Cal. 2004); *In re Sony PS3 Litigation*, 2010 WL 3324941 *3 (N.D. Cal. Aug. 23,
28   2010) ("[s]ubstance, of course, is more important than labels, and any failure by plaintiffs to attach the

21

1   alleging their unjust enrichment claim on behalf of a subclass comprised of PS3 buyers "who accessed

2   the [Play Station Network] PSN used the 'Other OS' feature and did not download Firmware Update

3   3.21." (FAC ¶¶ 336-337.) As detailed in the Complaint, the claims on behalf of individuals who have

4   paid money directly to SCEA via the PSN, which enables online gaming, access to the PlayStation

5   Store, PlayStation Home and other Internet based services. (FAC ¶¶ 8, 13-16, 337.) Upon refusing to

6   download Update 3.21, these class members were prohibited from accessing features of the PSN, which

7   they had already paid. *Id.* ¶ 14-16, 338.

8          The Complaint establishes that SCEA was unjustly enriched – by receiving Plaintiff Baker's

9   money via access to the PSN. Further, Plaintiff Baker and subclass members who paid money to SCEA

10  via the PSN and refused to download Update 3.21 have suffered substantive monetary injuries because

11  they are no longer allowed to access the PSN feature they have paid for. Thus, these subclass members

12  are entitled to restitution of moneys paid to SCEA via the PSN under a theory of unjust enrichment.

13  **IX.    PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE CFAA**

14         Congress enacted the Computer Fraud and Abuse Act to address more than just the hacking of

15  computers, but also situations where a party authorizes access to a protected computer, but the violator

16  exceeds authorized access or causes unauthorized damage. *See* 18 U.S.C. §§ 1030(a)(1),(4),(5)(A).[70] In

17  its first motion to dismiss, (Docket No. 97), SCEA argued that the SSLA, TOS and Warranty

18  authorized SCEA to "take away or limit the Other OS function as well as access to the PSN." In the

19  present motion, SCEA again relies on the same provisions of the SSLA, TOS and Warranty as it did in

---

21  correct label to a claim for relief would not be fatal in and of itself.") In its previous ruling on Sony's

22  motion to dismiss, this Court held that in order to sufficiently state an unjust enrichment cause of action,
    Plaintiffs needed to "adequately explain[ ] how Sony has been wrongfully 'enriched' or what payments
23  they made to Sony that should now be returned." Feb. 2011 Order at 8:14-8:16.

    [70] SCEA's reliance on *US Bioservices Corp v. Lugo*, 595 F. Supp. 2d 105 (D.D.C. 2005) and *Egilman v.*
24  *Keller & Heckham, LLP*, 401 F. Supp. 2d 105 (D.D.C. 2005), are misplaced. First, Section (a)(5)(A),
    which is directly at issue in this case, was not at issue in *US Bioservices* or *Egilman*. Furthermore, *US*
25  *Bioservices* discusses the original intent of the statute as enacted in 1984. As originally enacted, the
    CFAA contained a loophole wherein an authorized person could cause harm to a protected computer
26  system without incurring liability. Deborah F. Buckman, Validity, Construction, and Application of
    Computer Fraud and Abuse Act, 174 A.L.R. Fed. 101 (2001). The CFAA has since been broadened
27  through amendments to protect against "fraud and related activities in connection with access devices
    and computers." *Id.* Moreover, the court in *Egilman* did not reach the substantive merits of plaintiff's
28  CFAA claim because it was dismissed on statute of limitations grounds.

its first motion to argue that these terms allowed it to remove the Other OS for security reasons.  But in its February 2011 Order, the Court disagreed, holding that "Sony has not conclusively established that disabling a PS3 capability of the nature of the Other OS feature is within the scope of the license agreement provisions of which it relies[.]"  *Id.* at 10.  The Court should reject the argument again, especially since Plaintiffs now allege that SCEA issued Update 3.21 to save money and increase its profits, not for security reasons.  (FAC ¶¶ 160-61.)  Plaintiffs also particularly detail that no language in the SSLA, TOS and Warranty allows SCEA to use voluntary updates to remove features so that it can save money and increase its profits.  (FAC ¶¶ 278-80.)

Next, SCEA relies on an erroneous interpretation of the CFAA by claiming that "plaintiffs must allege that Update 3.21 was **downloaded without permission**." (emphasis added). This argument, however, is contrary to the CFAA's language and plain meaning.  The CFAA imposes liability for **causing damage** without Plaintiffs' authorization.  18 U.S.C. § 1030(a)(5)(A) (unlawful to "knowingly cause[] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause[] damage without authorization, to a protected computer.").[71]  Contrary to SCEA's arguments, its intent is relevant under the statute.  *See id.*

The FAC's allegations are even stronger than those alleged in original complaint to support Plaintiffs' claims that SCEA intentionally caused damage "without authorization."  Plaintiffs allege that contrary to SCEA's representations that Update 3.21 was for "security" reasons, SCEA's representations *were false*; rather, SCEA issued Update 3.21 to cut its costs and increase its profits.   (FAC ¶¶ 160-61.) Plaintiffs also allege they had no choice but to download and install Firmware 3.21, otherwise they would lose the PS3's other important advertised functions.  (FAC ¶ 132.)  Thus, Plaintiffs did not voluntarily provide authorization; rather, SCEA obtained it through false pretenses and coercion.[72]  The Court should deny SCEA's motion and allow Plaintiffs to present evidence.

---

[71] Using the terms "authorization" and "permission" interchangeably, as urged by SCEA, relying on *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009) does not change Plaintiffs' analysis.
[72] *See, e.g., Multiven, Inc. v. Cisco Systems, Inc.*, 2010 WL 2889262, at *3 (N.D. Cal. July 20, 2010) (no authorization where defendant accessed Cisco network using login and password given to him for use by Cisco employee in violation of company policies); *In re Apple & AT&T Antitrust Litig.*, 596 F. Supp. 2d 1288, 1308 (N.D. Cal. 2008) (no authorization where plaintiffs allege they authorized an update but not phone's destruction).  The follow-up decision in *In re Apple and ATTM Antitrust Litig.*, 2010 WL

1

2

## X.     SCEA'S ATTEMPTS TO DISMISS PLAINTIFFS' CLASS ALLEGATIONS ARE PREMATURE, IMPROPER AND WITHOUT MERIT

3

4         In denying SCEA's previous motion to strike, the Court held that, "Sony has not persuasively

5 shown that the relevant issues are more appropriately addressed at the pleading stage, or even that the

6 appropriateness of class certification necessarily could be determined based solely on the allegations of

the complaint.  Thus, the motion to strike will be denied."  Feb. 2011 Order at 10:11-10:14.

7         The Court's Order is consistent with the overwhelming authority holding that attacks on class

8 allegations at the pleading stage "are disfavored because a motion for class certification is a more

9 appropriate vehicle for the arguments."[73]  Further, when class action allegations "'address each of the

10 elements of Rule 23, relate to the subject matter of the litigation, and are not redundant, immaterial, or

11 impertinent,' the court must find that the allegations-viewed in the light most favorable to plaintiffs – are

12 sufficient to survive a motion to strike."[74]

13        Although its motion to strike was soundly defeated, SCEA nevertheless argues that the Court

14 should "dismiss" the class allegations because Plaintiffs' subclasses are not ascertainable. MTD at 20-

15 21.  SCEA's reassertion of its motion to strike arguments here does nothing to change the fact that an

16 attack on Plaintiffs' class allegations is improper and has already been rejected by the Court.[75]  Thus, the

17

---

18 3521965, at *6 (N.D. Cal. Jul. 8, 2010) is inapplicable here.  First, that decision was on a motion for
summary judgment and second, the plaintiffs there could not ultimately prove damage to their products,
19 that Apple intended to cause damage, or provide evidence that the downloading of the update was
involuntary.  Here, in contrast, Plaintiffs adequate allege facts showing damage, intent, and that SCEA
20 lied to Plaintiffs about the reasons for Update 3.21.  Further, Plaintiffs allege that they really had no
choice in downloading Update 3.21.  Likewise, SCEA's reliance on *AtPac, Inc. v. Aptitude Solutions,*
21 *Inc.*, 730 F. Supp. 2d 1174 (E.D. Cal. 2010) does not provide guidance because that case did not involve
a claim under § 1030(a)(5)(A), which is at central issue in this case.
22
[73] *Thorpe v. Abbott Lab, Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); *see also In re Wal-Mart*
23 *Stores, Inc. Wage and Hour* Litigation, 505 F. Supp. 2d 609, 616 (N.D. Cal. 2007) (denying motion to
dismiss class allegations at the pleading stage); *Misra v. Decision One Mortgage Co., LLC*, 673 F. Supp.
24 2d 987, 994 (C.D. Cal. 2008) ("there is little, if any, authority in the Ninth Circuit or its district courts to
support striking the Rule 23 class claims at this stage of the litigation.").
25
[74] *Defazio v. Hollister, Inc.*, 2008 WL 958185, at *8 (E.D. Cal. April 8, 2008) (citing *Clark v. State*
26 *Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 407 (C.D. Cal. 2005)).
27 [75] Feb. 2011 Order at 10:11-10:14; *see also In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505
F.Supp.2d at 615 ("'dismissal of class allegations at the pleading stage should be done rarely and that
28 the better course is to deny such a motion because 'the shape and form of a class action evolves only
through the process of discovery.'").

---

24

1    Court should once again reject SCEA's attacks on Plaintiffs' class allegations *ab initio*.

2         SCEA's attack on Plaintiffs' class allegations also fails on the merits because the subclasses set

3    forth in the FACC are, "sufficiently definite so that its members can be ascertained by reference to

4    objective criteria."[76] "However, the class need not be 'so ascertainable that every potential member can

5    be identified at the commencement of the action. . . .As long as 'the general outlines of the membership

6    of the class are determinable at the outset of the litigation, a class will be deemed to exist.'"[77]

7    Furthermore, a class is ascertainable even when class members, "cannot be identified through

8    defendant's records, [when] plaintiff's definition provides objective criteria by which prospective

9    plaintiffs can identify themselves as class members."[78]

10        In this case, the FAC alleges three subclasses consisting of consumers, "who purchased a PS3

11   with the "Other OS" feature available ('Fat' model PS3s) and who accessed the PSN and either: (1)

12   "did not use the Other OS feature;" (2) "used the Other OS feature and downloaded Firmware Update

13   3.21;" or (3) "used the Other OS Feature, and did not download Firmware Update 3.21." (FACC ¶

14   202.)[79] Each of these three subclasses satisfy the requirements for ascertainability because they clearly

15   and unambiguously set forth objective criteria relating to the PS3's use and purchase, by which class

16   members can identify themselves.  As such, SCEA's argument that membership in these three

17   subclasses cannot be "objective discerned" is without merit and SCEA's motion should be denied as

18   premature and improper. MTD at 21.

19   **XI.    <u>CONCLUSION</u>**

20        Based on the foregoing reasons, Plaintiffs respectfully request that the Court deny SCEA's

21   motion to dismiss.

22   Dated: April 18, 2011                        Respectfully submitted,

23                                                **CALVO FISHER & JACOB, LLP**

24                                                /s/ James A. Quadra

25   _____

26   [76] *Williams v. City of Antioch*, 2010 WL 3632197, at *7 (N.D. Cal. Sept. 2, 2010) (certifying class).
     [77] *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (certifying class).

27   [78] *Sullivan v. Kelly Services, Inc.*, 2010 WL 1729174, at *5 (N.D. Cal. April 27, 2010); *see also*
     *Saltzman v. Pella Corp.,* 257 F.R.D. 471, 476 (N.D. Ill. 2009).

28   [79] Plaintiffs' right to allege subclasses is expressly set forth in Fed. R. Civ. Proc. 23 (c)(5) which states,
     "[a] class may be divided into subclasses that are each treated as a class under this rule."

1    James A. Quadra
     Rebecca M. Coll
2    One Lombard Street
     San Francisco, California 94111
3    Telephone: 415-374-8370
     Facsimile: 415-374-8373
4

5    Dated: April 18, 2011                **FINKELSTEIN THOMPSON LLP**

6
                                          /s/ Rosemary M. Rivas
7                                         Rosemary M. Rivas
                                          Danielle Stoumbos
8                                         100 Bush Street, Suite 1450
                                          San Francisco, California 94104
9                                         Telephone: 415-398-8700
                                          Facsimile: 415-398-8704
10

11   Dated: April 18, 2011                **HAUSFELD LLP**

12
                                          /s/ James Pizzirusso
13                                        James Pizzirusso (*Pro hac vice*)

14
                                          1700 K St., NW, Suite 650
15                                        Washington, DC 20006
                                          Telephone: 202-540-7200
16                                        Facsimile: 202-540-7201

17
                                          *Co-Interim Lead Counsel for Plaintiffs*
18

19                                        Douglas G. Thompson
                                          **FINKELSTEIN THOMPSON LLP**
20                                        1050 30th Street, NW
                                          Washington, DC 20007
21                                        Telephone: 202-337-8000
                                          Facsimile: 202-337-8090
22

23                                        Michael P. Lehmann
                                          **HAUSFELD LLP**
24                                        44 Montgomery Street, Suite 3400
                                          San Francisco, California 94104
25                                        Telephone: 415-633-1908
                                          Facsimile: 415-358-4980
26

27                                        Bruce L. Simon
                                          **PEARSON, SIMON, WARSHAW &**
28                                        **PENNY, LLP**

PLAINTIFFS' MPA IN OPPOSITION TO SCEA'S MOTION TO DISMISS
CASE NO. 3:10-CV-01811 RS (EMC)

44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone: 415-433-9000
Facsimile: 415-433-9008

Daniel L. Warshaw
**PEARSON, SIMON, WARSHAW &**
**PENNY, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: 818-788-8300
Facsimile: 818-788-8104

Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns (*Pro hac vice*)
**CHIMICLES & TIKELIS LLP**
361 W. Lancaster Ave.
Haverford, Pennsylvania 19041
Telephone: 610-642-8500
Facsimile: 610-649-3633

Ralph B. Kalfayan
**KRAUSE, KALFAYAN, BENINK & SLAVENS, LLP**
625 Broadway, Suite 635
San Diego, California  92101
Telephone: 619-232-0331
Facsimile: 619-232-4019

Jeffrey Carton (*Pro hac vice*)
D. Greg Blankinship (*Pro hac vice*)
**MEISELMAN, DENLEA, PACKMAN, CARTON**
 **& EBERZ P.C.**
1311 Mamaroneck Avenue
White Plains, New York 10605
Telephone: 914-517-5000
Facsimile: 914-517-5055

John R. Fabry (*Pro hac vice*)
**BAILEY & GALYEN**
18333 Egret Bay Blvd., Suite. 444
Houston, Texas 77058
Telephone: 281-335-7744
Facsimile: 281-335-5871

27

1

2        Guri Ademi
         Shpetim Ademi
3        David J. Syrios
4        John D. Blythin
         **ADEMI & O'REILLY LLP**
5        3620 East Layton Ave.
6        Cudahy, Wisconsin 53110
         Telephone: 866.264.3995
7        Facsimile: 414.482.8001

8        Ben Barnow
9        **BARNOW & ASSOCIATES PC**
         One North LaSalle Street
10       Suite 4600
11       Chicago, Illinois 60602
         Telephone: 312-621-2000
12       Facsimile: 312-641-5504

13       Lance A. Harke
14       Howard Bushman
         **HARKE CLASBY & BUSHMAN**
15       9699 NE Second Ave.
16       Miami, FL 33138
         Telephone: 305-536-8220
17       Facsimile: 305-536-8229

18       Robert C. Schubert
19       Willem F. Jonckheer
         Jason Andrew Pikler
20       **SCHUBERT JONCKHEER & KOLBE LLP**
21       Three Embarcadero Center
         Suite 1650
22       San Francisco, California 94111
         Telephone: 415-788-4220
23       Facsimile: 415-788-0161

24       Rosemary Farrales Luzon
25       **SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
         401 West A. Street, Suite 2350
26       San Diego, California 92101
         Telephone: 619-235-2416
27       Facsimile: 619-234-7334

28       *Counsel for Plaintiffs*

PLAINTIFFS' MPA IN OPPOSITION TO SCEA'S MOTION TO DISMISS
CASE NO. 3:10-CV-01811 RS (EMC)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I, Rosemary M. Rivas, am the ECF User whose identification and password are being used to file the foregoing PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SCEA'S MOTION TO DISMISS.  I hereby attest that James A. Quadra and James Pizzirusso have concurred in this filing.

Dated:  April 18, 2011                          FINKELSTEIN THOMPSON LLP

                                                By: /s/Rosemary M. Rivas

                                                *Counsel for Plaintiffs*

PLAINTIFFS' MPA IN OPPOSITION TO SCEA'S MOTION TO DISMISS
CASE NO. 3:10-CV-01811 RS (EMC)