LUANNE SACKS, Bar No. 120811
luanne.sacks@dlapiper.com
CARTER W. OTT, Bar No. 221660
carter.ott@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA  94105
Tel:  415.836.2500
Fax:  415.836.2501

JOSEPH COLLINS (*Pro Hac Vice*, Ill. Bar No. 06238527)
joseph.collins@dlapiper.com
**DLA PIPER LLP (US)**
203 North LaSalle Street, Suite 1900
Chicago, IL 60601-1293
Tel:  312.368.4000
Fax:  312.236.7516

Attorneys for Defendant
SONY COMPUTER ENTERTAINMENT AMERICA LLC
(erroneously sued as "Sony Computer Entertainment America
Inc.")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re SONY PS3 "OTHER OS" LITIGATION | CASE NO.  3:10-CV-01811 RS (EMC) |
| | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS** |
| | Date:        May 12, 2011<br>Time:        1:30 p.m.<br>Judge:       Hon. Richard Seeborg<br>Courtroom: 3 |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     PLAINTIFFS EXPRESS WARRANTY CLAIM SHOULD BE DISMISSED ................ 2

III.    PLAINTIFFS' IMPLIED WARRANTY CLAIM RETAINS ITS PRIVITY FLAW ........ 4

IV.     PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT CLAIM FAILS ...................... 5

V.      PLAINTIFFS FAIL TO STATE AN ACTIONABLE CLRA CLAIM ............................. 6

        A.      Plaintiffs' Second Attempt Makes Clear That They Cannot State A Viable
                Theory Based on A Representation Or Duty To Disclose ...................................... 6

        B.      Plaintiffs' Can Offer Only Conclusory Statements Parroting The Legal
                Standard For Unconscionability................................................................................ 8

VI.     PLAINTIFFS CANNOT SUCCEED ON THEIR UCL AND FAA CLAIMS ................. 9

VII.    PLAINTIFFS HAVE DEMONSTRATED THEY CANNOT SATISFY RULE
        9(b) ................................................................................................................................. 11

VIII.   PLAINTIFFS CANNOT STATE A COMPUTER FRAUD AND ABUSE ACT
        CLAIM BECAUSE THEY "AUTHORIZED" UPDATE 3.21 ....................................... 12

IX.     PLAINTIFFS CANNOT STATE AN UNJUST ENRICHMENT CLAIM..................... 15

X.      PLAINTIFFS' NEW CLASSES ARE FATALLY FLAWED AND SHOULD BE
        DISMISSED.................................................................................................................... 15

XI.     CONCLUSION .............................................................................................................. 15

WEST\223395021.2

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

**CASES**

5

*Adashunas v. Negley,*
626 F.2d 600 (7th Cir. 1980) ............................................................................... 16

6

7

*Anthony v. General Motors Corp.,*
33 Cal. App. 3d 699 (1973) ................................................................................. 4

8

9

*Anunziato v. eMachines, Inc.,*
402 F. Supp. 2d 1133 (C.D. Cal. Nov. 10, 2005) ............................................... 5

10

*Arabian v. Sony Elec.,*
2007 WL 627977 (S.D. Cal. Feb. 22, 2007) ....................................................... 4

11

12

*Atkinson v. Elk Corp. of Texas,*
142 Cal. App. 4th 212 (2006) ............................................................................. 5

13

*AtPac, Inc. v. Aptitude Solutions, Inc.,*
730 F. Supp. 2d 1174 (E.D. Cal. 2010) ............................................................... 13

14

15

*Blanco v. Baxter Healthcare Corp.,*
158 Cal. App. 4th 1039 (2008) ........................................................................... 5

16

17

*Blennis v. Hewlett-Packard Co.,*
2008 WL 818526 (N.D. Cal. 2008) ..................................................................... 4, 5

18

*Blihovde v. St. Croix County, WI,*
219 F.R.D. 607 (W.D. Wis. 2003) ....................................................................... 15

19

20

*Burrows v. Orchid Island,*
2008 WL 744735 (S.D. Cal. Mar. 18, 2008) ...................................................... 11

21

22

*Clayworth v. Pfizer Inc.,*
49 Cal. 4th 758 (2010) ......................................................................................... 9, 10

23

*Clemens v. DaimlerChrysler Corp.,*
534 F.3d 1017 (9th Cir. 2008) ............................................................................. 5

24

25

*County of Solano v. Vallejo Redevelopment Agency,*
75 Cal. App. 4th 1262 (1999) ............................................................................. 10

26

*Daugherty v. American Honda Motor Co.,*
144 Cal. App. 4th 824 (2006) ............................................................................. 6, 7, 8, 11

27

28

1

## TABLE OF AUTHORITIES
(continued)

2

**Page**

3

*Deitz v. Comcast Corp.*,
    2007 WL 2015440 (N.D. Cal. July 11, 2007) ........................................................... 15

4

5

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*,
    2009 WL 975817 (N.D. Cal. April 10, 2009) ............................................................ 5

6

7

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) .................................................................................. 16

8

*Evraets v. Intermedics Intraocular, Inc.*,
    29 Cal. App. 4th 779 (1994) ...................................................................................... 5

9

10

*Ferrington v. McAfee, Inc.*,
    2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ............................................................ 10

11

*First Nationwide Savings v. Perry*,
    11 Cal. App. 4th 1657 (1992) ................................................................................... 10

12

13

*Foman v. Davis*,
    371 U.S. 178 (1962) .................................................................................................. 16

14

15

*Fulford v. Logitech, Inc.*,
    2009 WL 837639 (N.D. Cal. Mar. 26, 2009) .............................................................. 8

16

*Hangarter v. Provident Life and Accident Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) .................................................................................... 11

17

18

*Hoey v. Sony Electronics Inc.*,
    515 F. Supp. 2d 1099 (N.D. Cal. 2007) ............................................................... 7, 11

19

20

*In re Apple & AT&TM Antitrust Litigation*,
    596 F. Supp. 2d 1288 (N.D. Cal. 2008) .............................................................. 8, 14

21

*In re Napster, Inc. Copyright Litigation*,
    354 F. Supp. 2d 1113 (N.D. Cal. 2005) ................................................................... 11

22

23

*In re Sony Grand Wega*,
    2010 WL 48921114 (S.D. Cal. Nov. 30, 2010) ...................................................... 4, 7

24

25

*In re Sony PS3 Litigation*,
    2010 WL 3324941 (N.D. Cal. Aug. 23, 2010) ........................................................... 5

26

*Kraus v Trinity Management Services Inc.*,
    23 Cal. 4th 116 (2000) .............................................................................................. 10

27

28

-iii-

DEF.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMO. PS & AS
CASE NO. 3:10-CV-01811 RS (EMC)

**TABLE OF AUTHORITIES**
(continued)

Page

*Kwikset Corp. v. Superior Court*,
　51 Cal. 4th 310 (2011) ................................................................................ 9, 10

*Leong v. Square Enix of Am. Holdings, Inc.*,
　2010 WL 1641364 (C.D. Cal. Apr. 20, 2010) ............................................... 9

*LiMandri v. Judkins*,
　52 Cal. App. 4th 326 (1997) ....................................................................... 7, 8

*LVRC Holdings LLC & Brekka*,
　581 F.3d 1127 (9th Cir. 2009)................................................................... 12, 13

*Meridian Project Systems, Inc. v. Hardin Construction Co. LLC*,
　426 F. Supp. 2d 1101 (E.D. Cal. 2006)....................................................... 9

*Multiven, Inc. v. Cisco Systems, Inc.*,
　2010 WL 2889262 (N.D. Cal. July 20, 2010)............................................. 14

*Netscape Communications Corp. v. Fed. Ins. Co.*,
　2006 WL 449149 (N.D. Cal. Feb. 22, 2006) ............................................. 11

*Oestericher v. Alienware* Corporation,
　2009 WL 902341 (9th Cir. Apr. 2, 2009) ................................................ 6, 11

*Pau v. Yosemite Park and Curry Co.*,
　928 F.2d 880 (9th Cir. 1991)...................................................................... 4

*Postier v. Louisiana-Pacific Corp.*,
　2009 WL 3320470 (N.D. Cal. October 13, 2009).................................... 5

*Quelimane Co. v. Stewart Title Guaranty*,
　19 Cal. 4th 26 (1998) .................................................................................. 11

*Rewis v. United States*,
　401 U.S. 808, 91 S.Ct. 1056 (1971).......................................................... 13

*Rubio v Capitol One Bank*,
　613 F.3d 1195 (9th Cir. 2010)................................................................... 7

*Saltzman v. Pella Corp.*,
　257 F.R.D. 471 (N.D. Ill. 2009) ............................................................... 15

*Shersher v. Superior Court*,
　154 Cal. App. 4th 1491 (2007) ................................................................ 10

-iv-

# TABLE OF AUTHORITIES
(continued)

Page

*Skelton v. General Motors Corp.*,
   660 F.2d 311 (7th Cir. 1981) .................................................................................... 6

*Sun Microsystems, Inc. v. Microsoft Corp.*,
   188 F.3d 1115 (9th Cir. 1999) ................................................................................. 10

*United States v. Carr*,
   513 F.3d 1164 (9th Cir. 2008) ................................................................................. 13

*Vess v. Ciba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................. 11

*Weinstat v. Dentsply Intern, Inc.*,
   180 Cal. App. 4th 1213 (2010) .................................................................................. 3


**STATUTES**

18 U.S.C. § 1030(a)(5)(A) ............................................................................... 12, 14

18 U.S.C. § 1030(a)(5)(C) ...................................................................................... 12

18 U.S.C. § 1030 *et seq.* ......................................................................................... 14

Cal. Bus. & Prof. Code § 17203 .............................................................................. 9

Cal. Bus. & Prof. Code § 17204 ............................................................................ 10


**RULES**

Fed. R. Civ. P. 9(b) ........................................................................................... 11, 12

Fed. R. Civ. P. 12 .................................................................................................... 15

Fed. R. Civ. P. 12(f) ................................................................................................ 15

Fed. R. Civ. P. 23 .................................................................................................... 15


**REGULATIONS**

16 C.F.R. § 700.3 ...................................................................................................... 6

1

## I.    INTRODUCTION

In dismissing nine out of ten Counts in the Consolidated Complaint, this Court correctly recognized that SCEA never promised Plaintiffs that the "Other OS" feature of the PlayStation®3 game console ("PS3") would be available "continu[ously]."[1]  To the contrary, the only statement that SCEA made about the continued availability of software features, which would include the Other OS, was that SCEA may issue "automatic upgrades or updates which may change your current operating system … or cause a loss of functionalities or utilities."  Plaintiffs try to avoid that language and the fate that befell their prior pleading by quoting a 2006 online interview of Kaz Hirai, Chairman of SCEA:

> We look at our products having a 10-year life cycle, which we've proven with the PlayStation.  Therefore, the PlayStation 3 is going to be a console that's going to be with you again for 10 years.[2]

SCEA is mystified as to how this comment could possibly be relevant to this case.  It does not promise or warrant that the Other OS feature will remain available.  Indeed, it does not mention any feature.  Nor does this comment purport to provide any sort of warranty with respect to any particular feature of a particular user's PS3 console.  Rather, as is clear on its face, this comment was merely intended to address the overall life cycle of the PS3 in the marketplace.  Quite obviously, the fact that the PS3 is expected to have a long shelf life in the gaming marketplace has nothing whatsoever to do with the terms of a user's warranty under California law.

Plaintiffs' attempt to convert this comment about market shelf-life into an "extended warranty," or a promise that Plaintiffs' individual units would remain fully functional and operational for ten years, fails miserably.  Accordingly, Plaintiffs' express warranty claim must be dismissed.  So must Plaintiffs' implied warranty allegations which, as this Court has already found, fail to plead vertical privity.

Plaintiffs' CLRA, UCL, and FAA claims fare no better.  Under Ninth Circuit and California appellate authority, because Plaintiffs have failed to plead an affirmative misrepresentation, SCEA's sole obligation to Plaintiffs was to provide a functioning PS3 under

---

[1] Order Granting Motion to Dismiss ("Order") (Docket #161), 4:21-5:2.
[2] FAC (Docket #165), ¶ 212.

1  the terms of its express one-year written warranty, which they concede SCEA did.  The allegation

2  that SCEA declined years later to allow continued access to the PSN and to future games and

3  movies for those utilizing the Other OS feature poses no viable theory of liability.  Nor does the

4  issuance of a firmware update, which, if installed by a user, would disable the Other OS feature,

5  state a CFAA claim.  Messrs. Huber and Stovell admit in the FAC that they provided permission

6  to SCEA for installation of the update.  Under established authority, this ends the analysis.

7       Most of Plaintiffs' lengthy opposition simply rehashes the same arguments this Court has

8  already rejected.  Even worse, Plaintiffs go so far as to preview some of the "new" theories that

9  they hope to include in their **next** amended pleading and threaten to seek appellate review of

10  other issues.  This posturing cannot change the fact that, absent a promise by SCEA that the Other

11  OS feature would remain available in perpetuity or for some period of time beyond the one-year

12  express warranty SCEA provided, Plaintiffs have no viable cause of action.

13  **II.    PLAINTIFFS' EXPRESS WARRANTY CLAIM SHOULD BE DISMISSED**

14       In their opposition, Plaintiffs defer discussion of the First Count for Breach of Express

15  Warranty until page 15.  There they regurgitate the same assertions about "the ability of the PS3

16  to install Linux and to operate as a computer"[3] that this Court has already rejected: "none of

17  [Defendant's alleged representations] can reasonably be characterized as a 'promise,' and it is

18  difficult to discern exactly what 'affirmation of fact' or description of the goods' those statements

19  comprise that plaintiffs contend constitutes the warranty."[4]  Plaintiffs offer only one new theory -

20  - that SCEA promised all features of the PS3 would be "continually upgraded and available for

21  the life of the product (10 [] years or more.)"[5]  Of course, no SCEA statement includes the word

22  "features" in the same breath as "life of the product."  Nothing they aver even mentions the Other

23  OS feature.  Instead, they rely upon a 2006 online interview discussing the anticipated market

24  cycle of the PS3 console:

25       We look at our products having a 10-year life cycle, which we've proven with the
        PlayStation.  Therefore, the PlayStation 3 is going to be a console that's going to

26

27  _____

    [3] Opposition to Motion to Dismiss FAC ("Opp.") (Docket #173), 15:12-13.
    [4] Order (Docket #161), 4:18-20; Opp., 15:9-19, 17:4-22.
28  [5] Opp. (Docket #173), 15:16-18 (italics omitted).

1    be with you again for 10 years.[6]

2    At best, this is a prediction that the shelf life of the PS3 in the marketplace may last 10 years.  Try

3    as they might, it simply is not possible for Plaintiffs to torture this comment into an express

4    affirmation of fact that their individual units would remain fully operational and functional for ten

5    years – thereby eviscerating SCEA's express one-year written warranty that accompanies all

6    PS3s.  Plaintiffs cite no case law stating that a prediction of market shelf life is the equivalent of

7    an extended warranty.  Nor does any such case law exist.

8    Plaintiffs' new "10 year warranty" theory is clearly a disparate attempt to avoid dismissal,

9    as demonstrated by the fact that this theory was not even mentioned during the prior year of

10   litigation in this case.  Indeed, in all its prior submissions in this case, Plaintiffs never once

11   purported to define the expected lifespan of the PS3.[7]  Now, that they are unable to locate a single

12   instance in which SCEA ever made any promise concerning the longevity of the Other OS

13   feature, Plaintiffs have been forced to rely on the absurd proposition that SCEA intended – in a

14   two-sentence comment in a 2006 online interview – to completely change the nature and scope of

15   the written warranties provided to millions of purchasers.  Furthermore, the fact that only Messrs.

16   Ventura and Huber say they read the 2006 interview also speaks volumes.  A warranty regarding

17   the durability of a consumer product would not vary between specific purchasers, yet that is

18   precisely the result that will obtain here if Plaintiffs are allowed to contort the 2006 comment on

19   the PS3's shelf life into an actionable claim.  *Weinstat v. Dentsply Intern, Inc.*, 180 Cal. App. 4th

20   1213 (2010), which Plaintiffs contend allows a warranty claim by those who never were informed

21   of its terms, actually says something very different:  that in certain circumstances, written

22   statements in documents that accompany a product at the time of sale but are not viewed until

23   afterwards may be express warranties.[8]  That is not what Plaintiffs aver here.

24   Plaintiffs also offer several statements by SCEA and third parties **post-dating** Plaintiffs'

25   purchases as support for a further alleged express warranty that the Other OS feature would be

26

27   _____

     [6] FAC (Docket #165), ¶ 122.
     [7] *See* Initial Consolidated Complaint (Docket #76), ¶ 170; Opposition to Initial Motion to Dismiss

28   (Docket #104), 132:1-3; 11/4/10 Hearing Transcript (Docket #109), 39:12-15, 40:4-5.
     [8] 180 Cal. App. 4th at 1228.

-3-

1   available for ten years.  None of the cited statements actually stand for that proposition.

2   Moreover, the Court has already rejected Plaintiffs' argument that representations made years

3   after the product purchase nevertheless become "part of the basis of the bargain" and thereby an

4   express warranty.[9]  Despite Plaintiffs' pleas for their express warranty claims to be decided by a

5   jury,[10] this case cannot ever get past the pleading stage unless Plaintiffs can actually identify a

6   legal basis for their claims.  They clearly cannot do so.  As such, this case is no different from the

7   many others in which courts have rejected express warranty claims as a matter of law.  *See, e.g.,*

8   *Blennis v. Hewlett-Packard Co.*, 2008 WL 818526, *2 (N.D. Cal. 2008); *In re Sony Grand Wega*,

9   2010 WL 48921114 *(S.D. Cal. 2010).*[11]  The Court appropriately dismissed Plaintiffs' previous

10  warranty claims, and should do so again.

11  **III.   PLAINTIFFS' IMPLIED WARRANTY CLAIM RETAINS ITS PRIVITY FLAW**

12          It remains undisputed that Plaintiffs purchased their PS3s from independent retailers, not

13  SCEA.  Thus, the Plaintiffs have no vertical privity with SCEA, and cannot assert a breach of

14  implied warranty claim against SCEA under California law.[12]  Plaintiffs repeat their argument

15  that their "direct dealings" with SCEA after they bought their PS3s creates retroactive privity, *i.e.*,

16  a seller/buyer relationship, at the time of purchase.  They have offered and this Court has rejected

17  this very same "direct dealings" argument on three prior occasions:[13]  at the motion to dismiss

18  hearing; in an order denying Plaintiffs' administrative motion (Docket #162, 1:26-28, 2:1-9), and

19  in its Order dismissing their claim.  Docket #161, 5:17-6:22.  As the Court has repeatedly and

20  properly recognized, Plaintiffs' alleged post-sale dealings with SCEA "would not support a

21  conclusion that [SCEA] was the seller in the transactions by which plaintiffs acquired their PS3

22

23  [9] *See* Opp., 16:8-17:3; Opposition to Initial Motion to Dismiss (Docket #104), 7:9-8:4; 11/4/10 Hearing Transcript (Docket #109), 4:9-21, 30:25-33:7.

24  [10] Opposition (Docket #173), 15:20-16:7, 17:22-23.

    [11] *Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880 (9th Cir. 1991), involved a summary

25  judgment decision were there were disputed issues of fact and thus in inapposite; *Anthony v. General Motors Corp.*, 33 Cal. App. 3d 699 (1973) arose from a trial court's dismissal of class

26  allegations at the pleading stage where the underlying facts plead by the named plaintiffs appeared adequate to avoid a pleading challenge.

    [12] *In re Sony Grand Wega*, citing *Arabian v. Sony Elec.*

27  [13] *See* Opp. (Docket #173), 18:16-19, 19:1-25, 20:1-25, 21:1-14; Opposition to Initial Motion to Dismiss (Docket #104), 10:21-12:4; 11/4/10 Hearing Transcript (Docket #109), 4:22-5:9, 17:18-

28  18:5, 33:9-38:11; Administration Motion Re RJN (Docket #160), 2:14-27.

-4-                    DEF.'S REPLY ISO MOTION TO DISMISS
                                                                                    CASE NO. 3:10-CV-01811 RS (EMC)

systems."[14]  There is no reason to conclude differently here.  This remains true.

Plaintiffs cite only one new case not previously presented to the Court.[15]  They contend that, in *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, 2009 WL 975817 (N.D. Cal. April 10, 2009), Judge Fogel ruled that there is an exception to the privity requirement for implied warranty claims "where a product bears the manufacturer's printed guarantee of quality, or represents that the product has certain properties."[16]  But they distort Judge Fogel's ruling – he concluded that because the manufacturer "provided Certificates of Analysis with each shipment of raw fiberglass verifying that the product shipped was [what the purchaser had specified, *i.e.*, "E-Glass]" the purchaser could bring express and implied warranty claims.  That is a drastically different scenario from that averred in the FAC.  SCEA did not provide a specific certification to individual PS3 purchasers that his or her unit conformed to his or her individual specifications; and the absence of any such promise renders *Dong* inapposite.  Furthermore, as Judge Fogel confirmed in *Blennis v. Hewlett-Packard Co.,* the privity exception "for labels and promotional materials gives rise <u>only to express warranty claims</u>." (emphasis added).[17]

## IV.   PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT CLAIM FAILS

The weakness in Plaintiffs' new Magnuson-Moss Warranty Act theory is best illustrated by their decision to bury it in a footnote in their implied warranty argument and their inability to cite any legal authority to support it.[18]  They contend that the Act's temporal requirement applies only to a formal written warranty, as opposed to express warranties arising from advertising and promotional materials like those Plaintiffs aver.  Contrary to this unsupported contention, the

---

[14] Docket #161, 6 fn. 3.

[15] Opp. (Docket #173), 18 fn. 62.

[16] *Id.*

[17] *See also* Order (Docket #161) (refusing to accept dicta in *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212 (2006), and citing *Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058-59 (2008); *Evraets v. Intermedics Intraocular, Inc.*, 29 Cal. App. 4th 779, 788 (1994); and *Postier v. Louisiana-Pacific Corp.*, 2009 WL 3320470, *6 (N.D. Cal. October 13, 2009) as "clear California precedent that privity remains a requirement in implied warranty claims even though it has been eliminated in express warranty claims."); *see also In re Sony PS3 Litigation*, No. C 09-4701 RS, 2010 WL 3324941, **1-2 (N.D. Cal. Aug. 23, 2010) (denying implied warranty claim against SCEA based in part on lack of privity); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citing *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. Nov. 10, 2005)

[18] Opp. (Docket #173), 21 fn. 68.

1   applicable regulation, 16 C.F.R. section 700.3, makes clear that this requirement applies to all

2   "representations, such as energy efficient ratings for electrical appliances, care labeling of

3   wearing apparel, and other product information disclosures [that] may be express warranties

4   under the Uniform Commercial Code."[19]  But more important, as this Court has acknowledged,

5   this claim fails along with Plaintiffs' state law express and implied warranty claims.[20]

6   **V.**       **PLAINTIFFS FAIL TO STATE AN ACTIONABLE CLRA CLAIM**

7         **A.**     **Plaintiffs' Second Attempt Makes Clear That They Cannot State A Viable Theory Based on A Representation Or Duty To Disclose**

8        As the Ninth Circuit has confirmed, "a manufacturer's duty to consumers is limited to its

9   express warranty absent an affirmative misrepresentation or a safety issue." *Oestericher v.*

10  *Alienware* Corporation, 2009 WL 902341, *5 (9th Cir. Apr. 2, 2009) (citing *Daugherty).*  As this

11  Court has already concluded and as it should similarly conclude regarding the FAC:  "[N]one of

12  the representations they have thus far identified include any *express* promise that the Other OS

13  feature would be available indefinitely or for any particular period of time" and Plaintiffs have

14  otherwise failed to "identify the particular representations on which they rely" and "articulate

15  why they were false or misleading."[21]  Thus, because Plaintiffs have failed to plead an affirmative

16  misrepresentation, SCEA's sole obligation was to provide a functioning PS3 under the terms of

17  its express one-year written warranty.

18        There is no rational basis to distinguish the circumstances before the courts in *Daugherty*

19  and *Oestericher* from those present here:  the plaintiffs in each instance asserted that the

20  defendant failed to disclose information it exclusively possessed regarding the possibly premature

21  (*i.e.*, before the end of the anticipated useful life) loss of function of the purchased product.  In

22  *Daughtery*, the manufacturer failed to disclose its selection of a sub-standard part; in *Oestericher*,

23  it failed to reveal known design limitations; here, SCEA allegedly failed to disclose that it might

24  alter or disable software features.  In each instance, the consequence of the alleged non-disclosure

25  was the same – the consumer lost use of some or all of the performance of the purchased product.

26  The alleged harm is identical in the three cases: consumers paid more for the product because of

---

27  [19] 16 C.F.R. § 700.3; *see also Skelton v. GMC*, 660 F.2d 311, 316 fn. 7 (7th Cir. 1981).

    [20] *See* Motion to Dismiss FAC (Docket #168), 8:6-15.

28  [21] Order (Docket #161), 7:27-8:6.

the non-disclosure, and the consequent value of the product to the consumer was diminished. And the result in all three cases must be the same – a CLRA claim cannot stand because the manufacturer's duty was limited to its express warranty.  Plaintiffs now argue that even if SCEA's statements were "literally true when made," it would not be "absolved from liability." Of course, Plaintiffs offer no apposite authority for this argument – their one cited case, *Rubio v Capitol One Bank,* did not include CLRA claims.  In addition, nowhere in the FAC do Plaintiffs allege an "omission [] contrary to a representation actually made by [SCEA], or an omission of fact [SCEA] was obliged to disclose."  Plaintiffs concede that their PS3s possessed **all** of the advertised features at the time of sale and throughout the one year warranty period.  Given that SCEA made no representations regarding the continued availability of any software feature or function, it is simply not possible for Plaintiffs to state an omission claim.  Regardless of whether the action involves an automotive "oil leak"[22] or a consumer-electronic product, the *Daugherty* line of cases make clear that this is a prerequisite for a viable omission claim under the CLRA, UCL, or FAA.  *See Daugherty*, 144 Cal. App. 4th at 838; *Hoey*, 515 F. Supp 2d at 1104-05 ("Therefore, here, as in *Daugherty*, the complaint fails to identify any representation by Sony that the subject computers had any characteristic they do not have…."); *see also In re Sony WEGA*, 2010 WL 4892114, *5 & 11.  Plaintiffs have failed to satisfy this prerequisite.

Finally, Plaintiffs' contention that they need only allege that "SCEA had exclusive knowledge of material facts" to state a viable omission theory is based on a misstatement of law.[23]  The only legal authority they cite in support, *LiMandri v. Judkins*, states that, to be actionable, a nondisclosure or concealment claim based on exclusive knowledge or active concealment must be linked with "some other relationship between the plaintiff and defendant in which a duty to disclose can arise."  52 Cal. App. 4th at 336-37.  No such relationship is alleged here.[24]  More importantly, as the Ninth Circuit confirmed, the pleading standard for a CLRA

---

[22] *See* Opp. (Docket #173), 11:14-12:3
[23] Opp. (Docket #173), 10:20-11:6.
[24] *See also Fulford v. Logitech, Inc.*, 2009 WL 837639, *1 (N.D. Cal. Mar. 26, 2009) ("Here, Fulford has neither argued nor alleged that Logitech owed him any fiduciary duty, nor has Fulford argued or alleged that he entered into any transaction with Logitech."); *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288 (N.D. Cal. 2008) (plaintiffs purchased from defendant).

1    claim by a consumer against a manufacturer is that set forth in *Daugherty*, and the *Daugherty*

2    court rejected this type of "exclusive knowledge" argument as a basis of duty to disclose.

3           Finally, as SCEA demonstrated in its opening brief, Plaintiffs' CLRA theories vary

4    depending on which issue they are addressing – if it is statute of limitations, then Plaintiffs allege

5    the liability arose only when Update 3.21 was issued, years after purchase; conversely, if it is the

6    causation requirement of the CLRA, then Plaintiffs suddenly allege that the liability arose years

7    earlier as a result of SCEA's pre-sale advertisements.  As these inconsistencies make clear,

8    Plaintiffs are unable to articulate a legal theory that survives scrutiny under California law.  Since

9    it is undisputed that the Other OS feature was available as represented throughout the term of the

10   one year express warranty, it is not possible for Plaintiffs to state a CLRA claim.[25]

11          **B.      Plaintiffs Can Offer Only Conclusory Statements Parroting The Legal
                      Standard For Unconscionability**

12          Plaintiffs now contend that the underlying agreements – the Warranty, SSLA, and Terms

13   of Service – conflict with the Plaintiffs' expectation that they "could use the PS3's advertised

14   features for its useful life" and thus are unconscionable.[26]  But Plaintiffs' expectation theory is

15   factually insupportable.  *See* Section II, *supra.*

16          In addition, Plaintiffs' opposition only offers the same types of conclusory statements the

17   *Iqbal* court concluded are insufficient, stating that these agreements are unconscionable as they

18   are "contracts of adhesion," imposed through "superior bargaining strength," "procedurally

19   unconscionable," and "one-sided, harsh, and oppressive."[27]  In fact, this amended

20   unconscionability argument boils down to Plaintiffs' objection to the limitation, which they

21   agreed to, on the PS3's software features.  Numerous other courts have concluded that such an

22   agreement, also offered in clickwrap form, is not unconscionable.  To rule otherwise would

23   permit a consumer to agree to and enjoy the benefits of a limited-software agreement but then

24   renegotiate its terms at any point he or she objected to how it is exercised.  *See Meridian Project*

25   *Systems, Inc. v. Hardin Construction Co. LLC*, 426 F. Supp. 2d 1101, 1107 (E.D. Cal. 2006);

26   *Leong v. Square Enix of Am. Holdings, Inc.*, 2010 WL 1641364, *10 (C.D. Cal. Apr. 20, 2010).

---

[25] Motion to Dismiss (Docket #168), 10:1-8.
[26] Opp. (Docket #173), 15:5-7.
[27] *Id.* 14:9-15.

## VI.   PLAINTIFFS CANNOT SUCCEED ON THEIR UCL AND FAA CLAIMS

This Court correctly concluded that Plaintiffs had not alleged "facts showing sums paid by them to Sony that should be refunded" in their prior pleading.  They have added nothing in the FAC that warrants a different result – to the contrary, they concede "they did not pay SCEA directly but through retailers." Opp. (Docket #173), 5:27 – 6:1.

In their opposition, Plaintiffs contend that two recent California Supreme Court decisions have dramatically changed the UCL landscape, such that they may now recover from SCEA monies paid to third party retailers.  Plaintiffs first cite *Clayworth v. Pfizer Inc.,* for this proposition, but they have turned that decision on its head.  The plaintiffs – retail pharmacies – had paid monies directly to defendant Pfizer for drugs purchased for resale.  The pharmacies contended Pfizer overcharged them as part of an antitrust scheme.  Pfizer argued that the pharmacies suffered no compensable loss and thus had no standing because they were able to mitigate any injury by passing on the overcharges to retail purchasers.  The Court disagreed: "The doctrine of mitigation . . . is a limitation on liability for damages, not a basis for extinguishing standing."  The Court acknowledged that since the pharmacies sought return of funds under Section 17203, standing existed even if it was doubtful that the pharmacies would ultimately prevail.  Here, however, Plaintiffs never paid monies to SCEA in the first place, and therefore they cannot obtain restitution under the UCL.

The Court in *Kwikset* acknowledged that a party **not seeking restitution** could nonetheless have standing under Section 17204 to seek injunctive relief, where for example a defendant caused a diminishment in value of some asset a plaintiff possesses.  However, that begs the question here – Plaintiffs are seeking restitution from SCEA, and restitution can only be had from the defendant to whom the sums were paid.  The *Kwikset* Court cited *Kraus v. Trinity Management Services Inc.* with approval for that proposition.  Thus, just as this Court said in its prior order, there is nothing for SCEA to refund to Plaintiffs.  Plaintiffs also offer cases in which a defendant was potentially liable for restitution of sums paid to its agent or partner.  Of course, Plaintiffs have not offered factual allegations sufficient to plead that SCEA had such a close

1    relationship with any retailer from whom Plaintiffs purchased a PS3.[28]

2            Plaintiffs' failure to aver that they paid money directly to SCEA trumps the remainder of

3    their discussion regarding their UCL claims – including whether a CFAA claim survives which

4    would support a UCL unlawful prong averment.  Given that Plaintiffs concede they paid nothing

5    to SCEA based on its supposed misstatements regarding PS3 features and functions, they have

6    nothing to recover from SCEA.

7            Plaintiffs contend they may sue for injunctive relief in addition to restitution, again based

8    on *Clayworth* and *Kwikset.*  However, as the Supreme Court noted in *Kwikset,* "[i]njunctions are

9    the primary form of relief available under the UCL to protect consumers from unfair business

10   practices," while restitution is a type of ancillary relief."  Plaintiffs here obviously do not view

11   injunction as their principal remedy, but instead seek recovery of some or all of the purchase price

12   of their units.  Plaintiffs do seek "an order enjoining [SCEA] from further deceptive advertising,

13   marketing, distribution, and sales practices,"[29] but have failed to allege any ongoing deceptive

14   representation or sales practice.  *See* Section V(A), *supra*; *see also Sun Microsystems, Inc. v.*

15   *Microsoft Corp.*, 188 F.3d 1115, 1123 (9th Cir. 1999) (to be entitled to injunctive relief, a

16   plaintiff must be subject to a continuing threat of harm); *Hangarter v. Provident Life and*

17   *Accident Ins. Co.*, 373 F.3d 998, 1021-22 (9th Cir. 2004).  They also demand that the Court enter

18   an order "to enable the 'Other OS' feature on the PS3."[30]  But this is the precise relief that the

19   *Daugherty* line of cases have concluded is not appropriate where, as here, the plaintiff has failed

20   to point to a representation or basis for a duty to disclose.  *See* Section V(A), *supra.*  Because

21   Plaintiffs fail to allege any facts entitling them to injunctive relief or restitution, their UCL claims

22   fail as a matter of law.  *See In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1127

23   _____

24   [28] *See Ferrington v. McAfee, Inc.*, 2010 WL 3910169, **1-2 & 8-9 (N.D. Cal. Oct. 5, 2010)
     (alleging that Arpu, Inc., the recipient of funds, had "partnered with" the defendant McAfee, Inc.,
25   who "receive[d] an undisclosed fee for each customer who subscribes to Arpu's services through
     the ad on McAfee's site.) *Shersher v. Superior Court*, 154 Cal. App. 4th 1491 (2007), is contrary
26   to the bulk of California appellate court decisions and relies upon questionable pre-Proposition 64
     case authority and non-UCL decisions.  154 Cal. App. 4th at 1500 (citing *County of Solano v.*
27   *Vallejo Redevelopment Agency*, 75 Cal. App. 4th 1262, 1278 (1999); *First Nationwide Savings v.*
     *Perry*, 11 Cal. App. 4th 1657, 1663 (1992).
28   [29] FAC (Docket #165), 83:19-22.
     [30] *Id.*.

(N.D. Cal. 2005) (dismissing UCL claim where plaintiff failed to allege any set of facts that would entitle it to injunctive relief or restitution).

## VII.   PLAINTIFFS HAVE DEMONSTRATED THEY CANNOT SATISFY RULE 9(b)

Plaintiffs' contention that Rule 9(b) does not apply to their UCL, FAA, and CLRA claims is entirely without merit.[31]  The courts of this Circuit have consistently ruled that Rule 9(b) applies to such claims, concluding that a plaintiff cannot avoid Rule 9(b) by alleging a fraudulent conduct claim as an "unfair practice" as Plaintiffs attempt to do here.[32]  Plaintiffs must satisfy Rule 9(b) as their UCL, FAA, and CLRA claims are based on alleged fraudulent conduct.[33]

Plaintiffs' sweeping statement that SCEA has "exclusive knowledge" of the specifics related to their claims does not excuse their failure to plead with particularity.  *See, e.g., Hoey*, 515 F. Supp. 2d at 1106 (plaintiffs' allegation "Sony was in a superior position to know the facts" fails to satisfy Rule 9(b)).  Despite its obvious increase in mass, the FAC fails just like its predecessor to provide the details required by Rule 9(b).  As one example, Plaintiffs contend that in Paragraphs 97 through 100 of the FAC, among others, they "identified the specific statements they allege were misleading, the basis for that contention, where those statements appear…, and the relevant time period in which such statements were used."[34]  But these paragraphs simply provide a description of the process for installing Linux on the PS3 along with screenshots.  Similarly, throughout the FAC, Plaintiffs rely on alleged misrepresentations without providing any details of when these were made,[35] where or in what context,[36] or more importantly what

---

[31] Opp. (Docket #173), 8:13-9:4, 9 fn. 24, 10:16-11:3.

[32] *See* Order (Docket #161), 8:1-4 ("Such specificity is all the more important here, because the CLRA claims sound in fraud, thereby implicating Rule 9(b).") (citing *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (Rule 9(b) applicable to CLRA claim)); *see also Hoey v. Sony Electronics Inc.*, 515 F. Supp. 2d 1099 (N.D. Cal. 2007) (referring to UCL and CLRA claims: "Rule 9(b) applies not only to claims in which fraud is an essential element, but also to claims grounded in allegations of fraudulent conduct.") (citing *Vess*).

[33] Plaintiffs assert that there "is no authority" for the proposition that Rule 9(b) applies to their UCL, FAA, and CLRA claims and that SCEA fails to cite any.  Opposition (Docket #173), 8:13-8:21.  But they cite *Vess* on the very next page of their brief (Docket #173, 9 fn. 24), a case SCEA and the Court cited for this very proposition, and they are aware of SCEA's reliance on *Hoey*.  Motion to Dismiss (Docket #168), 11 fn 42.  Plaintiffs' reliance on *Quelimane Co. v. Stewart Title Guaranty*, *Burrows v. Orchid Island*, and *Netscape Communications Corp.* is misplaced as those cases only stand for the proposition that, when a UCL claim is premised on a non-fraud theory, the plaintiff need not satisfy Rule 9(b).  *See also Oestericher*, 2009 WL 902341, at **5-6.

[34] Opp. (Docket #173), 9:5-8.

[35] *See, e.g.,* FAC (Docket #165), ¶¶ 71, 72, 76, 77, 79, 82, and 83.

statement or statements were made.[37]

## VIII.   PLAINTIFFS CANNOT STATE A COMPUTER FRAUD AND ABUSE ACT CLAIM BECAUSE THEY "AUTHORIZED" UPDATE 3.21

Under the CFAA, SCEA is liable for issuing Update 3.21 only if Plaintiffs can establish that SCEA "intentionally accesse[d] [their] computer[s] without authorization, and as a result of such conduct, recklessly causes damage; or [] intentionally accesse[d] [their] computer[s] without authorization, and as a result of such conduct, causes damage and loss."  18 U.S.C. § 1030(a)(5)(A), (C).  "Without authorization," as interpreted by the Ninth Circuit, means "without permission at all."[38]  Messrs. Stovell and Huber, the only two Plaintiffs who permitted the download of Update 3.21, twice authorized SCEA's access to their computers.  In the FAC, both admit that they were given a choice to download it: "SCEA told users that they would not have to download Update 3.21 if they did not wish to do so."[39]  Messrs. Stovell and Huber further **admit** in the FAC that they nevertheless chose to "authorize" Update 3.21 knowing that by doing so, the Other OS feature would be disabled on their PS3.[40]  Indeed, the FAC acknowledges that the other two named Plaintiffs, Messrs. Ventura and declined to download Update 3.21 "so that [they] can continue to use the "Other OS" functions."[41]  Furthermore, in accepting SCEA's terms and conditions, Messrs. Stovell and Huber provided advance consent for SCEA to issue updates that may disable the functionality of their PS3's.  Because Messrs. Stovell and Huber "authorized" the transmission of Update 3.21 both generally and specifically, they are precluded from asserting a CFAA claim under the plain language of the statute.  "Simply put, a person cannot access a computer 'without authorization' if the gatekeeper has given them permission to use it."[42]

In their opposition, Plaintiffs contend that a statutory exception arises under the CFAA if SCEA did not disclose its true business motivation, or "intent," for issuing Update 3.21.  This contention squarely conflicts with Ninth Circuit precedent, which dictates that the Court must

---

[36] *See, e.g., Id.*, ¶¶ 70, 71, 73-77, and 79, 82, 83.
[37] *See, e.g., id.* ¶¶ 79 and 82.
[38] *LVRC Holdings LLC & Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009) (defining "without authorization" in the CFAA to mean "without permission at all").
[39] FAC (Docket #165),  ¶13.
[40] *Id.* at ¶ 304.
[41] FAC (Docket #165), ¶¶ 18, 22.
[42] *AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F. Supp. 2d 1174, 1180 (E.D. Cal. 2010).

consider **only** the computer owner's conduct, not the accessor's state of mind, in determining whether access was "authorized."[43]  Simply put, "the intent of the individual accessing the computer is irrelevant" under the CFAA for purposes of determining "authorization."[44]  Thus, Plaintiffs' rank speculation that SCEA issued Update 3.21 to "save money" and not to combat hacking, even if accepted as true, is entirely irrelevant.  The Court needs only to consider the intent of Messrs. Stovell and Huber, who both knew and appreciated the consequences of downloading Update 3.21, *i.e.*, disabling the Other OS feature, and in any event undeniably authorized access to their computers by affirmatively accepting the download.  To accept Plaintiffs' interpretation of the CFAA would disregard both controlling Ninth Circuit precedent and the Supreme Court's warning against interpreting the CFAA "in surprising and novel ways that impose unexpected burdens on defendants."[45]

Finally, Plaintiffs cannot contend that SCEA "erroneously" interpreted the CFAA by focusing on whether SCEA accessed their units "without authorization."  In their opposition, Plaintiffs suggest that their claim is limited to subsection 1030(a)(5)(A) of the CFAA, which imposes liability for "caus[ing] damage without authorization."  Putting aside whether this subsection can be plausibly interpreted to mean that someone would conceivably authorize "damage" to their computer, Count V of the FAC is not limited to this subsection.  To the contrary, Plaintiffs' CFAA claim is brought under the entire statute, 18 U.S.C. § 1030 *et seq*.  And consistent with sections 1030(a)(5)(A) and (C) referenced by SCEA in the first paragraph above, Plaintiffs allege that "[SCEA] intentionally accessed Plaintiffs' and Class members' PS3 consoles without authorization and recklessly caused damage; and/or intentionally accessed Plaintiffs' and Class members' PS3 consoles without authorization and caused damage or loss."[46]  The Court should not allow Plaintiffs to abandon their express allegations in the FAC to escape certain dismissal.

---

[43]*LVRC*, 581 F.3d at 1135; *see also AtPac,* 730 F. Supp. 2d at 1180 ("In [*LVRC*] the computer owner's conduct-not the accessor's state of mind-determined whether access was 'authorized.'").
[44] *AtPac,* 730 F. Supp. 2d at 1180.
[45] *Id*., *citing United States v. Carr*, 513 F.3d 1164, 1168 (9th Cir. 2008) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.") (quoting *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056 (1971)).
[46] FAC (Docket #165), ¶ 301.

Finally, the cases cited by Plaintiffs are factually inapposite.  For example, in *In re Apple & AT&T Antitrust Litig.*, 596 F. Supp. 2d 1288, 1308 (N.D. Cal. 2008), the plaintiffs alleged that they did not know that the defendants' update, if installed, would completely disable their iPhones.  According to the plaintiffs, the defendants falsely stated that the update was intended to provide "a needed and substantial improvement to the power management and battery life of [the] iPhone."  In stark contrast, Messrs. Huber and Stovell were fully aware that Update 3.21 would remove the Other OS feature, and they do not allege that anything else was caused by Update 3.21 that they did not know about.  Similarly, *Multiven, Inc. v. Cisco Systems, Inc.*, 2010 WL 2889262 (N.D. Cal. July 20, 2010), involved a defendant who accessed plaintiff's network with a misappropriated login and password.  Here, there are no allegations that SCEA misappropriated information from Messrs. Huber and Stovell to access their computers.

## IX.  PLAINTIFFS CANNOT STATE AN UNJUST ENRICHMENT CLAIM

Plaintiffs make no effort to address the deficiencies in their Unjust Enrichment claim that, according to the *Iqbal* and *Twombly* courts, make dismissal appropriate.  And they make no effort to state that they can amend to allege what amount Mr. Baker allegedly paid, if any; what specific service or services he supposedly purchased; or that he was denied, or even asked for, a refund.  Instead, they embrace and compound the flaws in the FAC by, again, bundling the harm Mr. Baker purportedly suffered with that of "some" phantom members of Class 3.[47]  This second failure makes clear that they cannot plead a viable Unjust Enrichment claim.

## X.  PLAINTIFFS' NEW CLASSES ARE FATALLY FLAWED AND SHOULD BE DISMISSED

The Court previously rejected Plaintiffs' argument that pleading challenges to class allegations are *per se* premature.[48]  But more importantly, Plaintiffs have offered no basis for their assertion that membership is readily identifiable.  For example, Plaintiffs are silent as to how the parties have any practicable means or methodology for readily identifying who "accessed" the

---

[47] Opp. (Docket #173), 21:17-22:12; *see also* Motion to Dismiss (Docket #168), 17:1-26.
[48] Plaintiffs' reliance on case authority interpreting the legal standard for Rule 12(f) motions (Opp. (Docket #173), 24:9-12) is inapposite as the operative procedural basis for pleading challenges to class allegations is Rule 23 and the pending challenge is brought as part of its Motion to Dismiss, not a motion to strike.  *See Blihovde v. St. Croix County, WI*, 219 F.R.D. 607, 612 (W.D. Wis. 2003) (pleading challenge to class allegations governed by Rule 23, not Rule 12).

1   PSN, who "used" or did not "use" the Other OS feature, or who "did" or "did not" download

2   Update 3.21.  Instead, Plaintiffs state, in the most conclusory manner, that the classes are

3   "sufficiently definite" to survive dismissal.[49]  Conclusory, self-serving assertions are not enough

4   under the applicable pleading standards.  Furthermore, Plaintiffs make no attempt to distinguish

5   any of the controlling cases cited by SCEA.[50]  They also make no effort to address SCEA's

6   arguments that the class claims related to their Unjust Enrichment count should be dismissed,

7   implicitly agreeing that that flaw justifies dismissal.[51]

8          Finally, Plaintiffs' proposal that the Court and the parties simply let PS3 owners

9   determine whether or not they are class members is contrary to the law.  If such classes were

10  certified and SCEA obtained judgment in its favor, PS3 owners would no doubt argue that they

11  did not believe that they were members of the class.  If Plaintiffs obtained a judgment, these same

12  PS3 owners could choose to be members of the class.  To permit class members to hedge their

13  risk in such a manner would be unduly prejudicial to SCEA and contrary to applicable law.

14  **XI.    CONCLUSION**

15         Based on the foregoing, defendant Sony Computer Entertainment America LLC

16  respectfully requests that the Court enter an order dismissing Plaintiffs' claims for relief.  Because

17  it is now clear that no amendment can save Plaintiffs' claims, these claims should be dismissed

18  with prejudice.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per

19  curiam) (dismissal without leave to amend appropriate where amendment would be futile)

20  (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

21  _____

[49] Opp. (Docket #173), 25:2-14.

22  [50] *See, e.g., Deitz v. Comcast Corp.*, 2007 WL 2015440, *8 (N.D. Cal. July 11, 2007) ("There
    would be no easy way to determine which subscribers owned a cable-ready television during the

23  relevant class period.  Plaintiff nowhere cites, nor has the Court found in the voluminous record,
    any Comcast records that contain information on the types of devices owned by its subscribers.  It

24  would be impossible to determine without significant inquiry which subscribers owned such
    devices.").  Plaintiffs also fail to cite any compelling authority.  Only one of the cases they cite

25  (*Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009) discusses the ascertainability
    requirement as it relates to the ability to readily identify class members – the question at issue

26  here.  And in that case, the court concluded that the parties and the court could use a number of
    different methods in conjunction to readily identify class members, including one that was part of

27  the "routine administration" of the defendant's business.  257 F.R.D. at 476-77.  Plaintiffs have
    not proposed any practicable method here.

28  [51] *See* Motion to Dismiss FAC (Docket #168), 21:13-18.

1

Dated:  April 28, 2011

2                                                    DLA PIPER LLP (US)

3

                                                     By: /s/ Luanne Sacks
4                                                          LUANNE SACKS
                                                          Attorneys for Defendant
5                                                          SONY COMPUTER ENTERTAINMENT
                                                          AMERICA LLC
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28