# EXHIBIT 1

## FOR PUBLICATION

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

STEPHEN C. STEARNS, on behalf of
himself, and all others similarly
situated,

*Plaintiff-Appellant,*

v.

TICKETMASTER CORP.;
TICKETMASTER, LLC;
ENTERTAINMENT PUBLICATIONS, INC.,
AKA Entertainment, Inc.;
IAC/INTERACTIVECORP,

*Defendants-Appellees.*

No. 08-56065

D.C. No.
2:08-cv-00117-DSF-
JTL

CRAIG JOHNSON, on behalf of
themselves, and all others
similarly situated; JULIE JOHNSON,
on behalf of themselves, and all
others similarly situated,

*Plaintiffs-Appellants,*

v.

TICKETMASTER CORP.;
TICKETMASTER, LLC;
ENTERTAINMENT PUBLICATIONS, INC.,
AKA Entertainment, Inc.;
IAC/INTERACTIVECORP,

*Defendants-Appellees.*

No. 09-56126

D.C. No.
2:08-cv-07509-DSF-
JTL

11341

JOHN MANCINI; ROBERT D. REESE,
Sr.; DUKE SANDERS; TM, by her
next friend and legal guardian E.
Eileen Gardner, as individuals, on
behalf of themselves, and those
similarly situated,
             *Plaintiffs-Appellants,*

       v.

TICKETMASTER CORP.;
TICKETMASTER, LLC;
ENTERTAINMENT PUBLICATIONS, INC.,
AKA Entertainment, Inc.;
IAC/INTERACTIVECORP,
             *Defendants-Appellees.*

No. 10-55341

D.C. No.
2:07-cv-01459-DSF-
JTL

OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
July 12, 2011—Pasadena, California

Filed August 22, 2011

Before: Ferdinand F. Fernandez, Pamela Ann Rymer, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Fernandez

## COUNSEL

Adam J. Gutride, Gutride Safier LLP, San Francisco, California, for the plaintiffs-appellants.

Donald R. Brown, Manatt, Phelps & Phillips, LLP, Los Angeles, California, for the defendants-appellees.

## OPINION

FERNANDEZ, Circuit Judge:

John Mancini, Duke Sanders, and Taylor Myers appeal the district court's denial of certification of their putative class action in *Mancini v. Ticketmaster* (Appeal No. 10-55341); Stephen Stearns appeals the district court's dismissal of his putative class action in *Stearns v. Ticketmaster* (Appeal No. 08-56065); and Craig and Julie Johnson appeal the district court's dismissal of their putative class action in *Johnson v. Ticketmaster* (Appeal No. 09-56126). Because the issues are related — at root identical — we will sometimes refer to these

parties collectively as Appellants. Appellants' actions were directed against a number of entities that were said to have participated in a deceptive internet scheme, which induced numerous individuals to unwittingly sign up for a fee-based rewards program where amounts were charged to their credit cards or directly deducted from their bank accounts. Those entities are Ticketmaster Entertainment, LLC, Ticketmaster, LLC (collectively Ticketmaster); Entertainment Publications, LLC (EPI); and IAC/InterActiveCorp (IAC). Hereafter we will sometimes refer to them collectively as Appellees.

As relevant here, Appellants' asserted claims for violations of California's Unfair Competition Law (UCL),[1] California's Consumers Legal Remedies Act (CLRA),[2] and the Federal Electronic Fund Transfer Act (EFTA).[3] They sought to certify their claims for class treatment. The district court denied class certification of the UCL claim, the EFTA actual damages claim, and the CLRA claim in the *Mancini* action. It dismissed both the *Stearns* and *Johnson* actions. These appeals followed. We affirm in part, reverse in part, and remand.

## BACKGROUND

While the issues are somewhat complex, many of the basic facts are not.[4] Ticketmaster operates the *www.ticketmaster.com* website. It and EPI were operating businesses of IAC at one time. They have since separated. Since 2004, EPI has operated the Entertainment Rewards program, which is an online coupon program. Members of Entertainment Rewards can download printable coupons from EPI's website, which allows them to receive discounts at a variety of retail estab-

---

[1]Cal. Bus. & Prof. Code §§ 17200-17210.

[2]Cal. Civ. Code §§ 1750-1784.

[3]15 U.S.C. §§ 1693-1693r.

[4]These facts are taken, for the most part, from the district court's orders, and are not actually in dispute.

lishments. EPI charges a monthly membership fee following
a free trial (thirty days) for those who enroll.

The Entertainment Rewards program has been linked to
Ticketmaster's website since April 7, 2004. The Entertain-
ment Rewards "ad unit" is displayed on the ticket purchase
confirmation page, after customers have purchased tickets
from Ticketmaster's website. An example of the Entertain-
ment Rewards ad unit on the Ticketmaster confirmation page
is as follows:

> Get a $25 Cash Back Award with your next Ticket-
> master Purchase.
> *Your order is complete.*
> *Click here for details on the $25 Cash Back Award.*
>
> Continue [button]
>
> Click above to learn how to get $25 Cash Back from
> Entertainment Rewards.

Once customers click on that ad unit, they are taken to a
landing page on the EPI website. If they enter their email
address twice on the landing page, and click on a "Sign Me
Up" or "Yes" button, they wind up enrolled in the program.
Once that occurs, any credit or debit card information that had
been given to Ticketmaster is transferred from Ticketmaster
to EPI automatically, and without any communication
between Ticketmaster or EPI and the customer. The process
is euphemistically known as a "data pass." Once that occurs,
customers, after the thirty-day trial period, will have their
credit cards or bank accounts charged on a monthly basis.

The gravamen of Appellants' claims is that the Appellees'
website presentations and practices are designed to lull and
induce people, who really only intended to purchase tickets
from Ticketmaster, into inadvertently becoming committed to
purchasing EPI's services, which they neither expected, nor

wanted, nor used, and that EPI then proceeds to mulct them with continuing charges. EPI even goes so far as to make charges to their credit cards, or take money directly from their bank accounts, all without specific authorization. And EPI does not issue a confirmation at the end of the internet transaction to memorialize the fact that a deal has been consummated.

As a result of the above, Appellants sought certification of a class composed of "[a]ll persons in the United States who: (1) made a purchase at Ticketmaster.com between September 27, 2004, and the present . . . , (2) were enrolled in Entertainment Rewards by Ticketmaster passing their credit or debit card information to [EPI], (3) were charged for Entertainment Rewards, and (4) did not print any coupon or apply for any cashback award from Entertainment Rewards . . . ."[5]

## JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(d)(2)(A). We have jurisdiction pursuant to 28 U.S.C. § 1291 (dismissed actions), in part, and 28 U.S.C. § 1292(e) (denial of class action certification), in part.[6]

---

[5]When pressed, Appellants in *Mancini* indicated that they would accept certification of a class further narrowed to those in the above group who cancelled their enrollment in Entertainment Rewards and "stated at the time of cancellation that they were unaware of being enrolled in [Entertainment Rewards] and have not received a complete refund." That would have significantly narrowed the class, but Appellants did not present evidence to the district court that their only viable class representative — Myers — would be a member of that class, that is, they presented no evidence that she made the statements in question or, for that matter, that she had not received a complete refund. Thus, the district court did not consider that narrowing definition further. Appellants' suggestion that a declaration they filed over nine months after the district court ruled shows that the court erred is meritless.

[6]*See* Fed. R. Civ. P. 23(f).

We review a district court's denial of class certification for abuse of discretion. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010). The same is true for "any particular underlying Rule 23 determination involving a discretionary determination." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010). In so doing, we ask:

> whether the district court correctly selected and applied Rule 23 criteria. An abuse of discretion occurs when the district court, in making a discretionary ruling, relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them.

*Wolin*, 617 F.3d at 1171 (internal quotation marks and citations omitted). " 'To the extent that a ruling on a Rule 23 requirement is supported by a finding of fact,' we review that finding for clear error." *Id.* at 1171-72. And, we review a district court's determination of whether information is immaterial under that clearly erroneous standard. *See S.E.C. v. Talbot*, 530 F.3d 1085, 1090 (9th Cir. 2008).

"While our review of discretionary class certification decisions is deferential, it is also true that we accord the decisions of district courts no deference when reviewing their determinations of questions of law. Further, this court has oft repeated that an error of law *is* an abuse of discretion." *Yokoyama*, 594 F.3d at 1091.

"We review de novo a district court's order granting a motion to dismiss under Rule 12(b)(6)." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). However, we review a decision to dismiss with prejudice for an abuse of discretion. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1402 (9th Cir. 1986).

## DISCUSSION

Although the core of Appellants' claims is the same, each of them subtends different issues, especially from a class action perspective. We will consider each of those in turn. But first, we will say a few words about class actions in general, and quickly dispose of a typicality issue.

**[1]** For a class to be certified, a plaintiff must satisfy each prerequisite of Rule 23(a) of the Federal Rules of Civil Procedure and must also establish an appropriate ground for maintaining class actions under Rule 23(b). *See Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). The requirements of Rule 23(a) are: (1) a class so numerous that joinder is impractical (numerosity); (2) common questions of fact or law (commonality);[7] (3) typicality of the representatives (typicality); and (4) that the representatives will adequately protect the class (adequate representation).[8] Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, ___, 131 S. Ct. 2541, 2548, ___ L. Ed. 2d ___ (2011).

**[2]** A plaintiff must also satisfy one of Rule 23(b)'s provisions. The provision at issue here is Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "The predominance inquiry of Rule 23(b)(3) asks

---

[7]The parties do not dispute the district court's decision that there is commonality on some issues. But because they do dispute whether common issues predominate, we note that in deciding upon just what issues are common, and whether they do predominate, the district court is required to make a rigorous analysis of the case before it. As the Supreme Court has recently told us: "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, ___, 131 S. Ct. 2541, 2551, ___ L. Ed. 2d ___ (2011).

[8]The only relevant Rule 23(a) criterion directly at issue is typicality.

'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' The focus is on 'the relationship between the common and individual issues.' " *Mevorah v. Wells Fargo Home Mortg. (In re Wells Fargo Home Mortg. Overtime Pay Litig.)*, 571 F.3d 953, 957 (9th Cir. 2009) (internal citation omitted).

[3] Because Mancini and Sanders complain about the district court's Rule 23(a) typicality decision, we will discuss that forthwith. " 'The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class.' " *Wolin*, 617 F.3d at 1175. "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez*, 591 F.3d at 1124 (internal quotation marks omitted).

[4] As the district court pointed out, because Mancini insisted that he was not really deceived into joining the Entertainment Rewards program and, indeed, decided that he would not do so, but must have accidentally clicked on "Yes," he is not at all typical of the proposed class.[9] And Sanders never saw the site or signed up for the program, and does not really know how his son did so; he too is far from typical of the class. His claim to the contrary abounds in crocodility. The district court did not err in refusing to accept Mancini and Sanders as class representatives.

## I.   The California UCL Claim

[5] The district court determined that individual issues predominated for purposes of the UCL claim because individualized proof of reliance and causation would be required. Were

---

[9]It is also doubtful that he could meet the class representation requirements of Cal. Bus. & Prof. Code § 17204.

that true, the district court might well have been correct
because it is clear that "[c]onsidering whether 'questions of
law or fact common to class members predominate' begins,
of course, with the elements of the underlying cause of
action." *Erica P. John Fund, Inc., v. Halliburton Co.*, ___
U.S. ___, ___, 131 S. Ct. 2179, 2184, ____ L. Ed. 2d ____
(2011). Unfortunately, the district court did not have the bene-
fit of *In re Tobacco II Cases*, 46 Cal. 4th 298, 207 P. 3d 20,
93 Cal. Rptr. 3d 559 (2009), when it ruled, and that case
makes all the difference in the world. There the California
Supreme Court reviewed California UCL law and made it
plain that:

> [T]o state a claim under either the UCL or the
> false advertising law, based on false advertising or
> promotional practices, it is necessary only to show
> that members of the public are likely to be deceived.
> To achieve its goal of deterring unfair business prac-
> tices in an expeditious manner, the Legislature lim-
> ited the scope of the remedies available under the
> UCL. A UCL action is equitable in nature; damages
> cannot be recovered. . . . We have stated under the
> UCL, [p]revailing plaintiffs are generally limited to
> injunctive relief and restitution.
>
> The fraudulent business practice prong of the
> UCL has been understood to be distinct from com-
> mon law fraud. A [common law] fraudulent decep-
> tion must be actually false, known to be false by the
> perpetrator and reasonably relied upon by a victim
> who incurs damages. None of these elements are
> required to state a claim for injunctive relief under
> the UCL. This distinction reflects the UCL's focus
> on the defendant's conduct, rather than the plaintiff's
> damages, in service of the statute's larger purpose of
> protecting the general public against unscrupulous
> business practices.

*Id.* at 312, 207 P.3d at 29-30, 93 Cal. Rptr. 3d at 569-70 (internal quotation marks and citations omitted).

[6] The court had no doubt that California law had been changed by the voters so that a person who sought to be a class representative did have to show some additional factors as to himself, including injury in fact and causation. *Id.* at 313-14, 207 P.3d at 31, 93 Cal. Rptr. 3d at 571. That repaired the danger of frivolous strike suits, but it decidedly did not change the California rule "that relief under the UCL is available without individualized proof of deception, reliance and injury." *Id.* at 320, 207 P.3d at 35, 93 Cal. Rptr. 3d at 576; *see also Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1224, 103 Cal. Rptr. 3d 614, 623 (2010). Thus, the district court's concerns about reliance and causation were not well taken.

We do not, of course, suggest that predominance would be shown in every California UCL case. For example, it might well be that there was no cohesion among the members because they were exposed to quite disparate information from various representatives of the defendant. *See, e.g., Wal-Mart*, ____ U.S. at ____, 131 S. Ct. at 2554-57; *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 849-50, 100 Cal. Rptr. 3d 637, 652 (2009). On this record, that does not appear to be the case, and the district court did not rule that it was.

Nor do we agree with Appellees' argument that because it need not be shown that class members have suffered actual injury in fact connected to the conduct of the Appellees, the alternative to the district court's ruling must be that the class lacks standing under Article III of the United States Constitution. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). No doubt a plaintiff's injury must be "concrete and particularized." *Id.* at 560, 112 S. Ct. at 2136. The injury here meets both of those requirements. Each alleged class member was

relieved of money in the transactions. Moreover, it can hardly be said that the loss is not fairly traceable to the action of the Appellees within the meaning of California substantive law. *Id.; see also Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 974-75 n.7 (9th Cir. 2008). That law, as already noted, keys on the wrongdoing of Appellees and is designed to protect the public (including the proposed class members). *Tobacco II*, 46 Cal. 4th at 312, 207 P.3d at 30, 93 Cal. Rptr. 3d at 570. In other words, this is not a case, as was possible under California's UCL before it was amended, where the representative plaintiff need not even show any connection to a defendant's conduct;[10] it is plainly a case where Appellants' claim is that they came, saw, were conquered by stealth, and were relieved of their money.[11] Basically, Appellees' real objection is that state law gives a right to "monetary relief to a citizen suing under it"[12] (restitution) without a more particularized proof of injury and causation.[13] That is not enough to preclude class standing here.

Nor does our case law point to a different conclusion. On the contrary, our law keys on the representative party, not all of the class members, and has done so for many years. In *Casey v. Lewis*, 4 F.3d 1516 (9th Cir. 1993), we declared that:

> At least one *named* plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class. The inquiry is

---

[10]*See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001). That possibility has been abolished. *See* Cal. Bus. & Prof. Code § 17204.

[11]*See San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) (stating "[e]conomic injury is clearly a sufficient basis for standing.").

[12]*Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001).

[13]One might even say that, in effect, California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury; restitution is the remedy.

whether any named plaintiff has demonstrated that he has sustained or is imminently in danger of sustaining a direct injury as the result of the challenged conduct.

*Id.* at 1519 (internal citation omitted). And close to fifteen years later we made that even more explicit when we held that: "In a class action, standing is satisfied if at least one named plaintiff meets the requirements. . . . Thus, we consider only whether at least one named plaintiff satisfies the standing requirements . . . ." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc); *see also Fleming v. Pickard*, 581 F.3d 922, 924 n.3 (9th Cir. 2009). Appellees do not assert that no named plaintiff has standing.

[7] In sum, while Rule 23 does give the district court broad discretion over certification of class actions, here the court erred when it based its exercise of that discretion on what turned out to be an inaccurate reading of the California UCL. Thus, we must remand so that the court can reconsider the certification question. *See Wells Fargo*, 571 F.3d at 959.

## II. The California CLRA Claim

The district court dismissed and refused to certify the CLRA claims brought in the *Mancini*, *Stearns* and *Johnson* actions. The district court first discussed the CLRA claim for damages in *Mancini*[14] and then in *Stearns* on the basis that insufficient notice of a claim had been given. Cal. Civ. Code § 1782. It then refused certification of the remainder of the CLRA action (injunctive relief[15]) in *Mancini* on the basis that because reliance had to be shown as to the class members, Rule 23(b)(3) had not been complied with. The district court erred regarding the former issue, but not the latter.

---

[14]Dismissal of the CLRA damage claim in *Mancini* is not before us on appeal.

[15]*See* Cal. Civ. Code § 1780(a)(2).

[8] California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a). The CLRA allows suits by a "consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by [the CLRA]." Cal. Civ. Code § 1780. The statute requires that " 'plaintiffs in a CLRA action show not only that a defendant's conduct was deceptive but that the deception caused them harm.' " *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129, 103 Cal. Rptr. 3d 83, 94 (2009).

[9] A CLRA claim warrants an analysis different from a UCL claim because the CLRA requires each class member to have an actual injury caused by the unlawful practice. *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 155-56, 104 Cal. Rptr. 3d 329, 337 (2010). But "[c]ausation, on a class-wide basis, may be established by *materiality*. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Vioxx*, 180 Cal. App. 4th at 129, 103 Cal. Rptr. 3d at 95; *see also Vasquez v. Superior Court*, 4 Cal. 3d 800, 814, 484 P.2d 964, 973, 94 Cal. Rptr. 796, 805 (1971); *Steroid*, 181 Cal. App. 4th at 156-57, 104 Cal. Rptr. 3d at 338. This rule applies to cases regarding omissions or "failures to disclose" as well. *See McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 184, 105 Cal. Rptr. 3d 704, 711 (2010) (holding that because of defendant's failure to disclose information "which would have been material to any reasonable person who purchased" the product, a presumption of reliance was justified); *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1293, 119 Cal. Rptr. 2d 190, 198 (2002) ("[H]ere the record permits an inference of common reliance. Plaintiffs contend Mass Mutual failed to disclose its own concerns about the premiums it was paying and that those concerns would have been material to any reasonable person contemplating the purchase . . . ." If proved, that would "be sufficient to give rise to the inference of common reliance on representations which were materially deficient.").

Under California law, a misrepresentation or omission is material

> if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.

*Steroid*, 181 Cal. App. 4th at 157, 104 Cal. Rptr. 3d at 338-39 (internal quotation marks omitted); *see also Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977, 938 P.2d 903, 919, 64 Cal. Rptr. 2d 843, 859 (1997). If the misrepresentation or omission is not material as to all class members, the issue of reliance "would vary from consumer to consumer" and the class should not be certified. *Vioxx*, 180 Cal. App. 4th at 129, 103 Cal. Rptr. 3d at 95.

[10] But, while meeting the above criteria is all that is necessary to obtain injunctive relief, if a plaintiff hopes to recover damages, he must give a thirty-day notice to the defendant before he commences the action. *See* Cal. Civ. Code § 1782. And that notice must contain certain provisions. *Id.* § 1782(a).

A.   *Notice*

[11] While others had not done so, it is pellucid that Myers gave Appellees a thirty-day notice under the CLRA. In fact, she expressly set forth the nature of the dispute and declared that damages would be sought if the appropriate corrections were not made. *See* Cal. Civ. Code § 1782(a)-(b). There is no dispute about that. The district court, however, decided that the notice requirement was not sufficiently complied with because Myers did not expressly state that she would seek class action relief if her demand was not met.

The district court correctly noted that the notice provision exists to give an erring defendant an opportunity to avoid liability for damages,[16] and that, therefore, the notice provisions must be literally complied with.[17] That is not controversial, but for a number of reasons it does not justify the district court's conclusion here.

[12] Simply put, the statute states that the notice must be given and must set forth certain information; it does not literally state that the threat of a class action must be set forth.[18] *See Kagan v. Gibraltar Sav. & Loan Ass'n*, 35 Cal. 3d 582, 594-95, 676 P.2d 1060, 1066, 200 Cal. Rptr. 38, 44 (1984), *disapproved on other grounds by Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 200 P.3d 295, 88 Cal. Rptr. 3d 859 (2009).

Secondly, the notice section expressly recognizes that a class action might ensue. Cal. Civ. Code § 1782(c). More than that, it provides that if a defendant seeks to avoid facing a class action, it must take certain steps regarding "[a]ll consumers similarly situated" to the person giving notice. *Id.* § 1782(c)(1). And, Myers' notice expressly told the Appellees that they must do all of the things that were required by § 1782(c)(1)-(c)(4) if they hoped to avoid litigation. Only an exceedingly obtuse (or even comatose) defendant would fail to understand that it had received notice that a class action was in the offing if it remained obdurate.

Finally, we see no reason to read a provision requiring a plaintiff to use the phrase "class action" into the statute. Even if we were inclined to do so, we lack that authority.

---

[16]*See Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1261, 99 Cal. Rptr. 3d 768, 789 (2009).

[17]*See Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 40-41, 124 Cal. Rptr. 852, 858-59 (1975).

[18]It is notable that the district court found that Appellees were undoubtedly aware that a class action was sought.

[13] Thus, the district court erred when it determined that the Myers notice was insufficient and then dismissed the *Stearns* action on that account.

B. *Reliance*

[14] The district court determined that no class action could be certified because there was no showing of material misrepresentations or omissions to the whole class, as proposed by Appellants.

[15] Appellants asserted that the design of both the Ticketmaster site and the EPI site was misleading both by what was said and by what was omitted. For example, the prominent Continue button on the Ticketmaster site did not truly alert users to the fact that they were going to land on another's website where, perforce, by other misleadingly placed queries and directions they could inadvertently find themselves subject to monthly charges, which would come out of their credit cards or bank accounts. Interestingly enough, without any further notice or ado, the credit card or debit card information, which had been given to Ticketmaster, transferred to EPI. Indeed, there was no confirmation page on the EPI site — a page of that sort is normal and had a much better chance of alerting people that they had just agreed to pay monthly fees to EPI. It might even have satisfied the requirements of the EFTA, but more of that later.

[16] In short, on the present state of the record the form and content of the websites were "materially deficient" as to those consumers who did not know they signed up for Entertainment Rewards. *See Mass. Mut.*, 97 Cal. App. 4th at 1293, 119 Cal. Rptr. at 198. Nevertheless, the proposed *Mancini* class was so broad that it cannot be said that the websites were "materially deficient" as to the entire class. Therefore, the district court did not err when it determined that the class could not be certified. *See Vioxx*, 180 Cal. App. 4th at 134. Notable are the myriad reasons that someone who was not

misled and intentionally signed up might have chosen not to take advantage of the available product by actually printing a coupon or obtaining a rebate for some period. Perhaps, for example, the person had been ill, or distracted by family emergencies, or just did not see anything that he really wanted during that time. Or, perhaps, a person decided after a few months that the premiums were not worth the price of admission. But all of those people would have been swept willy-nilly into the class. Had Appellants limited the class as they proposed in their failed attempt referred to in footnote 5, *supra*, this would have been a much closer case. As it is, we cannot say that on the record before it the district court abused its discretion when it failed to certify the proposed CLRA class in *Mancini*. Because the action in *Stearns* was duplicative of *Mancini*, we also affirm its dismissal.

*Johnson* (No. 09-56126) presents a more thorny issue as far as the CLRA is concerned. The district court dismissed the case at the pleading stage on the basis that it was simply duplicative of *Mancini* and suffered from the same defects. *See Frost v. Symington*, 197 F.3d 348, 359 (9th Cir. 1999) (if an already existing class action involves the same issues as a new individual action, the claims of the latter may have to be brought in the former action); *Crawford v. Bell*, 599 F.2d 890, 892-93 (9th Cir. 1979) (where a new individual complaint merely duplicates the allegations of an existing class action complaint, it is proper to dismiss the former); *see also Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (duplicative actions generally). In *that* the district court erred.

First, even if the Myers notice had been defective, which it was not, Johnson had given a separate notice, which complied with the district court's added requirements. It is not clear that the district court determined otherwise.

[17] Second, while it is true that the proposed class in the Johnsons' original complaints was, in fact, subject to the same

defects as *Mancini*, the Johnsons then proposed a second amended complaint which narrowed the class by adding a limitation to those who "reported in the course of cancellation or seeking a refund that they were unaware that they would be enrolled in or charged for Entertainment Rewards." The district court based its denial of the Johnsons' motion to amend on its determination that the limitation made no difference. We do not agree.

The proposed change was not insignificant, once one recognizes that the omissions in Appellees' websites were material as to certain consumers. The change limited the class to people for whom the websites were presumptively "materially deficient," because they told EPI they had been signed up for Entertainment Rewards without realizing it. *See Mass. Mut.*, 97 Cal. App. 4th 1293, 119 Cal. Rptr. at 197-98. In fact, it may have been even narrower than the class proposal that had been made by Appellants in *Mancini*[19] because it expressly restricted the class to those who did not know they would be "charged," although that is implied in the lack of knowledge of enrollment.

Thus, by the second amended complaint stage, this was not a case where a plaintiff was, in effect, attempting to avoid an unfavorable prior ruling in one case by filing essentially the same claims in a new case. *See Adams*, 487 F.3d at 688.[20] The *Mancini* CLRA action failed of class certification because the proposed class was overbroad. But that would not preclude the Johnsons from bringing an individual action. Nor do we see a defect in their asserting an action for a different — more narrow — class than the overbroad class defined in *Mancini*. In fact, the district court did not rule that any CLRA action

---

[19] *See* n.5, *supra.*

[20] Incidentally, we recognize the fact that the same plaintiffs' counsel was involved in these cases, and while we find the flailing about that has occurred here to be far from exemplary, we are loath to preclude the possibility of class action relief on that basis alone.

would be duplicative. It simply did not believe that a legally significant narrowing of the class had taken place; that was the basis of its ruling with which we disagree.

[18] The above being so, *Johnson* was significantly different from *Mancini*, and the district court erred in determining that it was not. *See Frost*, 197 F.3d at 359; *Crawford*, 599 F.2d at 893. Thus, we must reverse the dismissal of the complaint based on the determination that it was duplicative. Of course, we express no opinion on whether, upon further consideration by the district court, a class can properly be certified in the *Johnson* action; we only determine that dismissal of the CLRA claim on the basis that it was duplicative of *Mancini* cannot stand.

## III.   The EFTA Claim

[19] In *Mancini* (No. 10-55741), Myers sought class certification for claims against EPI under the EFTA.[21] That Act provides that: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a). When the Act is violated, plaintiffs can obtain an award of "any actual damage sustained . . . as a result" of the violation, and statutory damages. *Id.* § 1693m(a).

The district court denied class certification of the actual damages claim in *Mancini*. In so doing, the district court determined that EPI had violated the EFTA when it failed to follow the requirements of 15 U.S.C. § 1693e(a). Appellees do not contest that determination.

However, the district court denied class certification of the actual damages claim because it decided both that the actual

---

[21]*Johnson* also contained an EFTA claim, which was dismissed. No issue about that dismissal is raised on appeal.

damages could not, as a matter of law, be the total amount taken from the class members' accounts, and that some members might not have cared whether the money was charged to a credit card or to a debit card, if they knew that a charge was going to be made. In other words, the district court rejected the claim for actual damages on the merits and rejected class certification on the ground of lack of predominance under Rule 23(b)(3). We agree in part with the district court's reasoning.

We have held that the mere fact that there might be differences in damage calculations is not sufficient to defeat class certification. *Yokoyama*, 594 F.3d at 1094. As we have put it:

> Damage calculations will doubtless have to be made under [the] consumer protection laws. In this circuit, however, damage calculations alone cannot defeat certification. We have said that "[t]he amount of damages is invariably an individual question and does not defeat class action treatment." Thus, because there are no individualized issues sufficient to render class certification inappropriate under Rule 23, class issues predominate.

*Id.* (internal citations omitted); *see also De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 233 (7th Cir. 1983) ("It is very common for Rule 23(b)(3) class actions to involve differing damage awards for different class members."); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) (individuality of damage amounts does not defeat certification). Were we dealing with a class limited to individuals who did not want the service and did not know they would be charged at all, we would find it unduly speculative to imagine that some of them might not have cared if the funds they did not intend to spend were taken from their bank accounts. Some variations in damages would be acceptable. But as we have already noted, the proposed class was not so limited.

Moreover, we are well aware of the fact that statutory damages are not designed to impose a roadblock in a plaintiff's path. As we have indicated previously in the context of another statute: "Congress expressly created a statutory damages scheme that intended to compensate individuals for actual or potential damages resulting from . . . violations, without requiring individuals to prove actual harm." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010). And as we said in *Planned Parenthood of the Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 963 n.7 (9th Cir. 2005): "Statutory damages are meant to compensate victims when actual loss is hard to prove."

[20] Nonetheless, a plaintiff must show that the claimed actual damages were "as a result of" the violation, that is, he must show a causal connection between the EFTA violation and the claimed actual damages. That would at least require the establishment of "a substantial nexus between the injury" and the statutory violation. *Valladolid v. Pac. Operations Offshore, LLP*, 604 F.3d 1126, 1139 (9th Cir. 2010); *see also Brown v. Gardner*, 513 U.S. 115, 119, 115 S. Ct. 552, 555-556, 130 L. Ed. 2d 462 (1994) ("as a result of" language imposes a casual connection).

In any event, in the mine run of cases, it may well be true that the only wrong to the plaintiff will have been the fact of removal of funds directly from the plaintiff's account, which may even have occurred without any added charges to the plaintiff by the bank where the account was located. The harm will not actually have been in the amount of the funds themselves. For example, if a plaintiff fully intended to purchase merchandise or a service and to use a debit card, but the merchant or other seller obtained the transfer from the plaintiff's account without first obtaining a proper authorization, the plaintiff will, most likely, find it difficult or impossible to show actual damages measured by the amount removed from his account. Logically, he would be hard pressed to show that the removal was caused by the authorization failure. In that

event, he would, instead, be relegated to the statutory damages portion of the EFTA. *See* 15 U.S.C. § 1693m(a)(2)(A); *see also id.* § 1693m(a)(2)(B) (class actions). That, of course, is not to say that actual damages can never include the full amount taken from a plaintiff's account.

[21] In this case, because of the breadth of the proposed class,[22] it might well encompass numerous people who are part of that mine run and who, therefore, would not be able to claim actual damages based on the amounts removed from their accounts.[23] We need not, and do not, opine on whether a different approach would apply if the proposed class had been less expansive in its embrace of all who ultimately failed to make use of the product offered by EPI.

[22] As it is, we cannot say that the district court abused its discretion when it denied EFTA class certification regarding actual damages in *Mancini*.

CONCLUSION

While we are reversing the district court's certification decision regarding the UCL, we hasten to add that we are not deciding whether Appellees were lax or louche or neither or both. Nor are we substituting our own decision by deciding whether one or more classes (perhaps even a narrowed one)[24] should or could now be certified. We are simply rejecting the district court's reasons for refusing to certify at this time.

That said, we reverse the district court's denial of the

---

[22]Again, it covers everyone who just did not happen to use the EPI product before cancelling.

[23]Appellants do not argue on appeal that they effectively sought to narrow the EFTA class to eliminate the causation problem.

[24]*See* Fed. R. Civ. P. 23(c)(1)(C); *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982) (stating that class certification orders are " 'inherently tentative' ").

motions for class certification of the UCL claims in *Mancini* (No. 10-55341), and affirm its determination that Mancini and Sanders are not typical of the class members and, therefore, are not proper representatives. We affirm the district court's dismissal of the CLRA claim in *Stearns* (No. 08-56065).[25] We also affirm the district court's refusal to certify a class regarding the CLRA injunctive relief claims in *Mancini*. We reverse the district court's dismissal of the *Johnson* action (No. 09-56126) regarding the CLRA claim. Finally, we affirm its refusal to certify a class regarding the EFTA actual damage claim in *Mancini*.

AFFIRMED in part, REVERSED in part, and REMANDED. The parties shall bear their own costs on appeal.

---

[25]However, in so doing, we reject the district court's determination regarding notice in the CLRA cases.