**\*\*E-filed 12/8/11\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SONY PS3 OTHER OS LITIGATION <br> _____/ | No. C 10-1811 RS <br><br> **ORDER GRANTING MOTION TO DISMISS, WITHOUT LEAVE TO AMEND, AND DENYING MOTION TO STRIKE AS MOOT** |

I. INTRODUCTION

In 2006, defendant Sony Computer Entertainment America LLC introduced the PlayStation® 3 ("PS3") gaming system. Plaintiffs in this putative class action contend that Sony promoted the PS3 as having capabilities beyond those of prior game consoles, including specifically an "Other OS" feature, which enabled users to install Linux or other operating systems and use the devices as personal computers. In 2010, Sony released a software update for the PS3 that, among other things, intentionally disabled the Other OS feature, ostensibly for the purpose of enhancing security or protecting intellectual property, but which plaintiffs allege was actually an attempt to save money. Although PS3 owners had the choice of declining to install the software update,

1 without it they would no longer have access to the Sony PlayStation Network ("PSN"), and would
2 not realize any other benefits the update might provide.

3 With one exception, all of the counts in the original Consolidated Complaint were dismissed, with leave to amend. Although a count under the Computer Fraud and Abuse Act ("CFAA") was permitted to stand at that juncture, the dismissal order expressly noted that arguments as to its viability could be renewed in any subsequent motion to dismiss. Defendants now move to dismiss the First Amended Complaint ("FAC") in its entirety. Because the amendments have not cured the previously-identified deficiencies, and because the facts alleged do not show wrongdoing even under the CFAA, the motion will be granted. In light of the prior amendment, and the fundamental shortcomings in plaintiffs' basic theory that it was wrongful for Sony to release the software update in dispute, leave to amend will be denied. Sony's motion to strike the class action allegations is therefore moot and will be denied on that basis.

## II. BACKGROUND

Plaintiffs contend that when Sony introduced the PS3, it touted it as "the most advanced computer system that serves as a platform to enjoy next generation computer entertainment." Plaintiffs identify four "core" attributes of the system, in addition to stand-alone game play, that Sony purportedly advertised widely: (1) a built-in Blu-ray disc player, (2) access to online gaming through the PSN service, (3) the Other OS feature, and (4) the capability to receive software (or "firmware") updates to maintain and enhance system functionality.

In 2009, Sony introduced a new model of the PS3 that eliminated the Other OS feature. At that time, however, Sony assured owners of older PS3 systems that they would continue to have access to the feature on their machines. In 2010, however, Sony issued Firmware Update 3.21. If a user downloaded Update 3.21, it would disable the Other OS feature. Users who chose not to download the update lost access to PSN and would not be able to use any future games, Blu-ray video discs, or other features that might require the update to have been installed.

## III. LEGAL STANDARDS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); see also *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Vess v. Ciba-Geigy Corp. U.S.A.,* 317 F.3d 1097, 1106 (9th Cir. 2003). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Id.*

## IV. DISCUSSION

A. <u>Sony's basic obligations</u>

The FAC, like the original pleading, sets out multiple counts articulating various theories under which plaintiffs seek to hold Sony liable for the consequences of its decision to release

3

Firmware Update 3.21. With the exception of the "Unjust Enrichment" claim discussed further below, all of the counts are based on plaintiffs' fundamental contention that it was wrongful for Sony to disable the Other OS feature, or, more precisely, to put PS3 owners to the "Hobson's choice" of either permitting the Other OS feature to be disabled or forgoing their access to the PSN and any other benefits available through installing Firmware Update 3.21. Plaintiffs offer an analogy: "if Toyota disabled the battery feature in its hybrids and forced owners to use only gasoline, it would not matter whether the auto's warranties had expired." Opposition at 1:8-9. In plaintiffs' view, it should be self evident that, "A manufacturer cannot unilaterally take away a fundamental feature of a product after that product has been sold to a consumer – regardless of whether the warranty is still in effect." *Id*. at 1:9-11.

      The flaw in plaintiffs' analogy is that they are claiming rights not only with respect to the features of the PS3 *product*, but also to have ongoing access to an internet *service* offered by Sony, the PSN. A somewhat fanciful, but more apt, analogy would be if Toyota sold hybrid vehicles with an advertisement campaign touting that Toyota owners would have access to a recreational driving facility, a no-speed limit amusement park for cars. Then, at some time thereafter, Toyota instituted a rule that its hybrids would not be permitted in the park unless the owners allowed the battery feature to be disabled. In those circumstances, Toyota hybrid owners who declined to authorize disabling of the battery feature would still have fully-functional hybrid vehicles, capable of running on an electric motor or a gasoline engine, as appropriate under the conditions. Similarly, PS3 owners who declined to install Firmware Update 3.21 still have fully-functioning devices, capable of either being used as game consoles to play games on optical disks, or as computers, with the Other OS feature.

      While plaintiffs would characterize the ability to access the PSN as a "fundamental feature" of the PS3 itself, it cannot be disputed that the "feature" is dependent on something outside the actual device—i.e., the continued existence of the PSN. Additionally, plaintiffs acknowledge that installation of Firmware Update 3.21 was entirely at the discretion of the user; indeed they have proposed separate subclasses for those who did chose to download it and those who did not. The

1 choice may have been a difficult one for those who valued both the Other OS feature and access to
2 the PSN, but it was still a choice.

3       Under these circumstances, it cannot be said that Sony "unilaterally took away a
4 fundamental feature of a product after that product [was] sold to a consumer." Rather, Sony
5 unilaterally imposed a requirement that PS3 owners who wanted continued access to the PSN
6 service would have to allow the Other OS feature in their machines to be disabled. As a
7 consequence, for Sony's conduct to have been in any manner wrongful, it is not enough for
8 plaintiffs to show that they have a right to expect continued availability of the Other OS feature
9 beyond the warranty period, but also a right to continued access to the PSN.

10       Nothing in plaintiffs' factual allegations or their arguments is sufficient to support a
11 conclusion that Sony has any obligation to maintain the PSN in operation indefinitely. Had Sony
12 elected to shut down the PSN entirely, and for some unknown reason then offered PS3 owners the
13 option to disable the Other OS feature on their machines, users who elected to do so would plainly
14 have no claim for loss of the OS Feature.[1] Nor would it be sufficient for plaintiffs merely to say
15 that, having elected not to shut down the PSN entirely, Sony had no right to limit access to the
16 service to those who agreed to disable the Other OS feature. This is not a discrimination case, and
17 nothing in plaintiffs' factual allegations supports the existence of a legally enforceable duty on
18 Sony's part to refrain from altering the conditions under which users are permitted access to the
19 PSN.

20       In short, even assuming it would be wrongful under one or more of plaintiffs' legal theories
21 for Sony unilaterally to disable the Other OS feature after expiration of the warranty period but
22 during the reasonably expected lifetime of machines that were otherwise still working properly, the
23 facts show that Sony did not do so, except with the consent of owners who exercised an affirmative
24 choice to install Firmware Update 3.21. For some, that choice may not have been made without
25 regret, but absent some legal *entitlement* to continued access to the PSN, it was still a choice.

---

[1] It is conceivable, of course, that in such a circumstance there would be an attempt to bring a class action challenging the shutdown of the PSN. Whether or not a viable claim could ever be alleged in such a case, it is clear that plaintiffs in this action have not alleged a basis on which Sony could be found legally obligated to keep the PSN in operation for any particular period of time.

5

Finally, certain allegations in the FAC are particularly demonstrative of the basic flaw in plaintiffs' theory. Plaintiffs describe institutional users, including government agencies, who allegedly purchased large numbers of PS3s to use specifically for their capabilities to function as computers. Paragraph 115 states:

> Indeed, the Air Force expressed disappointment with [Sony's] decision. "We will have to continue to use the systems we already have in hand," the lab told Arstechnica.com, but "this will make it difficult to replace systems that break or fail."

The "disappointment" allegedly expressed by the Air Force reveals that Sony in no way forced any user to give up the Other OS system on any PS3s it had previously purchased. The Air Force expressed no dissatisfaction with the machines it already owned, and explicitly stated its intent to continue using them. The problem, from the Air Force's point of view, is that it would be unable to *replace* its existing PS3s with new ones providing the same functionality. A manufacturer's decision to discontinue selling a product with the same features is not generally wrongful as to prior purchasers of the product. Additionally, while it may be that some PS3 owners would have a greater desire to use their PS3s on the PSN than the Air Force likely did, the fact remains that the Other OS feature remained fully usable unless users elected to download Firmware Update 3.21.

B. <u>Breach of Express Warranty</u>

As set out in the prior order, to prevail on a breach of express warranty claim under California law, a plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise, or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached. *Weinstat v. Dentsply Intern. Inc.*, 180 Cal. App. 4th 1213, 1227 (2010); California Uniform Commercial Code § 2313; *see also Keith v. Buchanan*, 173 Cal.App.3d 13, 20 (1985)).

Plaintiffs have buttressed their prior allegations of an express warranty claim by pointing to a statement that Sony expected the PS3 to have a "ten year life cycle" and that it would "be a console that's going to be with you again for 10 years." This and similar statements alleged

6

continue to fall far short of any clear representation, rising to a warranty, that any user could expect a particular PS3 he or she purchased would be able to utilize the Other OS feature for ten years, or, more to the point, that the PSN Network would continue to be available and accessible by the machine without any condition that the user elect to disable the Other OS feature. Their protestations to the contrary notwithstanding, plaintiffs' have still failed to identify any basis on which they could pursue an express warranty claim.

### C. Breach of Implied Warranty

As in the original complaint, plaintiffs assert two counts for breach of implied warranty—one for the general warranty of merchantability, and one for a warranty of fitness for a particular purpose. In an attempt to establish the privity required under California law to pursue implied warranty claims, plaintiffs set out in more detail in the FAC facts regarding the contracts PS3 users enter into directly with Sony governing software updates and the PSN. Plaintiffs argue that, at a minimum, the unusual interrelationship between the contract for the sale of the product and the subsequent contracts related to its use presents a novel issue of law as to privity that should not be decided at the pleading stage. See *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) ("Rule 12(b)(6) dismissals 'are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development.").

Even if dismissal were not appropriate based on a lack of privity, however, the FAC fails to set forth a basis on which even an implied promise that has been breached could be found. There is no dispute that the PS3s performed in all respects as represented at the time of sale. The Other OS system continues to function as represented unless users elect to disable it by installing Firmware Update 3.21. Plaintiffs have not shown how conditioning continued access to the PSN service on users' willingness to disable the Other OS feature breached any warranty implied in the sale of the product.

### D. California Consumer Legal Remedies Act ("CLRA")

Plaintiffs' claims under the CLRA fail for the same basic reasons as do their warranty claims. Nothing in the circumstances of the sales of the PS3 or any representations Sony made regarding its capabilities or expected product lifespan, gave rise to an obligation to refrain from subsequently restricting access to the PSN or other services to those users willing to install Firmware Update 3.21. Nor does characterizing the conduct as a failure to disclose the possibility of such future actions transform it into a cognizable claim.[2]

### E. Computer Fraud and Abuse Act ("CFAA")

Plaintiffs' claim under the CFAA in the original complaint was allowed to stand because Sony had not made a persuasive showing that, from the face of the pleading, disabling of the Other OS was "authorized."[3] It is now clear, however, that even without reliance on any specific licensing agreement provisions, the facts do not support liability under the CFAA because the Other OS feature was only removed in instances where users affirmatively elected to download and install Firmware Update 3.21. As plaintiffs make no claim that Sony failed to disclose that the update would disable the Other OS feature, there is no basis to claim that Sony "caused damage without authorization to a protected computer."

### F. Magnuson-Moss Warranty Act

As in the original complaint, the FAC's claim for relief under the Magnuson-Moss Warranty Act fails because, with exceptions not applicable here, "disposition of the state law warranty claims

---

[2] To the extent plaintiffs' CLRA claim is also based on conclusory assertions that Sony included unconscionable provisions in its licensing and use agreements, they have failed to allege facts showing that they suffered any cognizable harm therefrom, given that Sony's conduct was not wrongful even without reliance on any specific provisions in those agreements.

[3] The CFAA prohibits, "knowingly caus[ing] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caus[ing] damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A)(i).

determines the disposition of the Magnuson-Moss Act claims." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).

### G. Cal. Bus. & Prof. Code §§ 17200 and 17500

Plaintiffs' statutory claims for unfair business practices and false or misleading advertising rely on the same underlying factual basis found wanting in the other claims addressed above. Accordingly, those counts are also must be dismissed.

### H. Unjust enrichment

As noted in the prior order, "unjust enrichment" is generally not recognized as a stand-alone claim under California law. *See Jogani v. Superior Court*, 165 Cal.App.4th 901, 911 (2008). Regardless of labeling, however, in this count plaintiffs assert a right to recover monies some of them allegedly prepaid to Sony for use in connection with the PSN service, and which they thereby "lost" when they could no longer access the PSN. Plaintiffs have failed to state a claim for restitution or damages because, among other things, they have not alleged sufficient facts as to the terms and conditions on which they paid monies to Sony, or that they have requested and been denied refunds.[4]

### I. Motion to strike

Even if it were otherwise appropriate to address the viability of the class action allegations at the pleading stage, Sony's motion to strike is moot in light of the disposition of the motion to dismiss. It will therefore be denied on that basis.

---

[4] If any persons have a legal right to receive refunds they paid in connection with the PSN, and Sony has failed and refused to provide such refunds, those claims are fundamentally different in nature than the balance of the claims advanced in this action, and would involve a different subset of PS3 owners from those alleged as putative subclasses here. Because no class has been certified, the dismissal of this action would not preclude any such persons from pursing claims for such refunds, assuming there is otherwise a viable factual and legal basis to do so.

## IV. CONCLUSION

The dismay and frustration at least some PS3 owners likely experienced when Sony made the decision to limit access to the PSN service to those who were willing to disable the Other OS feature on their machines was no doubt genuine and understandable. As a matter of providing customer satisfaction and building loyalty, it may have been questionable. As a legal matter, however, plaintiffs have failed to allege facts or to articulate a theory on which Sony may be held liable. The motion to dismiss is granted, without leave to amend. The motion to strike is denied as moot. A separate judgment will issue.

IT IS SO ORDERED.

Dated: 12/8/11

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE