Rosemary M. Rivas (SBN 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Kathleen Fisher (SBN 70838)
kfisher@calvofisher.com
**CALVO FISHER & JACOB LLP**
555 Montgomery Street, Suite 1155
San Francisco, California 94111
Telephone: (415) 373-8370
Facsimile: (415) 374-8373

James Pizzirusso (pro hac vice)
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| In re SONY PS3 "OTHER OS" LITIGATION | Case No. 4:10-CV-01811-YGR |
|---|---|
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** |
| | Date:        July 19, 2016 |
| | Time:        2:00 p.m. |
| | Judge:       Honorable Yvonne Gonzalez Rogers |
| | Courtroom:  1 – 4th floor |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   PROCEDURAL SUMMARY ................................................................................... 2

    A.   The Consolidated Action........................................................................................ 2

    B.   SCEA's Challenges to the Pleadings and Subsequent Appeal............................... 3

    C.   The Parties Took Significant Discovery in the Case.............................................. 4

    D.   Settlement Negotiations ......................................................................................... 5

III.  THE SETTLEMENT TERMS .................................................................................. 5

    A.   Monetary Payments............................................................................................... 5

    B.   Dissemination of Notice to the Settlement Class .................................................. 6

    C.   Incentive Award and Attorneys' Fees and Costs .................................................. 8

    D.   Release Provisions.................................................................................................. 8

IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ..................... 9

    A.   The Classes Satisfy the Numerosity Requirement ................................................ 9

    B.   The Class Satisfies the Commonality Requirement............................................... 9

    C.   Plaintiffs Meet the Typicality Requirement ......................................................... 10

    D.   Plaintiffs Satisfy the Adequacy Requirement ...................................................... 10

    E.   Class Members are Ascertainable ........................................................................ 11

    F.   The Class Satisfies the Criteria of Rule 23(b)...................................................... 12

        1.   Common Questions Predominate.................................................................... 12

        2.   A Class Action Is The Superior Method For The Fair And Efficient Adjudication Of This Controversy ................................................................... 13

           a.   The Individual Class Members' Interest in Controlling the Litigation .................................. 13

           b.   Extent and Nature of Litigation Already Commenced by Class Members .......................... 14

           c.   The Desirability of Concentrating the Litigation in a Particular Forum .............................. 14

           d.   This Case is Manageable As a Class Action ...................................................... 14

    G.   Certification of a Nationwide Settlement Class is Appropriate ............................ 14

V.    PRELIMINARY APPROVAL IS APPROPRIATE ...................................................... 16

    A.   The Settlement Approval Process ......................................................................... 16

    B.   The Settlement is the Product of Well-Informed, Vigorous and Thorough Arms' Length Negotiations…………………………………………………………………...17

C.    The Settlement Bears No Obvious Deficiencies and There is No Preferential Treatment ........ 17

D.    The Settlement Falls Within the Range of Possible Approval .................................................. 18

VI.  NOTICE ......................................................................................................................................... 19

VII. CONCLUSION ............................................................................................................................... 21

# TABLE OF AUTHORITIES

**<u>Federal Cases</u>**

*Amchem Prods. v. Windsor* (1997)
  521 U.S. 591 ............................................................................................ 12, 14

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds* (2013)
  133 S.Ct. 1184 ............................................................................................ 12

*Armstrong v. Davis* (9th Cir. 2001)
  275 F.3d 849 ................................................................................................ 10

*Arnold v. FitFlop USA, LLC* (S.D. Cal. Apr. 28, 2014),
  No. 11-CV-0973 W (KSC), 2014 U.S. Dist. LEXIS 58800 ...................... 15

*Burden v. SelectQuote Ins. Servs.* (N.D. Cal. Mar. 21, 2013),
  2013 WL 1190634 ................................................................................... 16, 17

*Eisen v. Carlisle & Jacquelin* (1974)
  417 U.S. 156 ................................................................................................ 20

*Erica P. John Fund, Inc. v. Halliburton Co.* (2011)
  133 S. Ct. 2179 ............................................................................................ 12

*Forcellati v. Hyland's, Inc.* (C.D. Cal. Apr. 9, 2014),
  2014 WL 1410264 ........................................................................................ 11

*Hanlon v. Chrysler Corp.* (9th Cir. 1998)
  150 F.3d 1011 ........................................................... 10, 11, 12, 15, 17, 19

*In re HP Laser Printer Litig.* (C.D. Cal. Aug. 31, 2011),
  2011 WL 3861703 ........................................................................................ 20

*In re Prudential Ins. Co. of Am. Sales Practices Litig.* (D.N.J. 1997)
  962 F.Supp. 450 .......................................................................................... 14

*In re Tableware Antitrust Litig.* (N.D. Cal. 2007)
  484 F.Supp.2d 1078 ................................................................................. 16, 17

*In re Zurn Pex Plumbing Prods. Liab. Litig.* (D. Minn. Oct. 18, 2012),
  2012 WL 5055810 ........................................................................................ 17

*Johns v. Bayer Corp.* (S.D. Cal. 2012)
  280 F.R.D. 551 ............................................................................................ 12

*Keegan v. Am. Honda Motor Co* (C.D. Cal. 2012)
  284 F.R.D. 504 ............................................................................................ 11

*Kent v. Hewlett-Packard Co.* (N.D. Cal. Sept. 20, 2011),
  No. C 09-05341 JF, 2011 U.S. Dist. LEXIS 106831 ................................. 15

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.* (9th Cir. 2001)
244 F.3d 1152 ........................................................................................................ 13

*Miller v. Ghirardelli Chocolate Co.* (N.D. Cal. Feb. 20, 2015),
No. 12-cv-04936-LB, 2015 U.S. Dist. LEXIS 20725 ........................................ 15

*Moshogiannis v. Security Consultants Group, Inc.* (N.D. Cal. Feb. 8, 2012),
2012 WL 423860 .................................................................................................. 13

*Negrete v. Allianz Life Ins. Co. of N. Am.* (C.D. Cal. 2006)
238 F.R.D. 482 .................................................................................................... 14

*Norflet v. John Hancock Life Ins. Co.* (D. Conn. 2009)
658 F.Supp.2d 350 .............................................................................................. 20

*Parkinson v. Hyundai Motor Am.* (C.D. Cal. 2008)
258 F.R.D. 580 .............................................................................................. 11, 15

*Phillips Petroleum Co. v. Shutts* (1985)
472 U.S. 797 ............................................................................................ 13, 14, 19

*Pilkington v. Cardinal Health, Inc.* (9th Cir. 2008)
516 F.3d 1095 ...................................................................................................... 16

*Sony PS3 "other OS" Litig. v. Sony Computer Entm't Am., Inc.* (9th Cir. 2014)
551 F. App'x 916 ............................................................................................... 2, 3

*Staton v. Boeing Co.* (9th Cir. 2003)
327 F.3d 937 ........................................................................................................ 18

*Sterling v. Velsicol Chem. Corp.* (6th Cir. 1988)
855 F.2d 1188 ...................................................................................................... 13

*Sullivan v. Oracle Corp.* (9th Cir. 2011)
662 F.3d 1265 ................................................................................................ 14, 15

*Thomas v. Baca* (C.D. Cal. 2005)
231 F.R.D. 397 .................................................................................................... 12

*Vinole v. Countrywide Home Loans, Inc.* (9th Cir. 2009)
571 F.3d 935 ........................................................................................................ 12

*Wal-Mart Stores, Inc. v. Dukes* (2011)
131 S.Ct. 2541 ...................................................................................................9, 10

*Westways World Travel, Inc. v. AMR Corp.* (C.D. Cal. 2003)
218 F.R.D. 223 .................................................................................................... 14

*Williams v. Gerber* (9th Cir. 2008)
552 F.3d 934 ........................................................................................................ 13

*Wolin v. Jaguar Land Rover North Am., LLC* (9th Cir. 2010)
    617 F.3d 1168 ................................................................................................. 13

*Yokoyama v. Midland Nat'l Life Ins. Co.* (9th Cir. 2010)
    594 F.3d 1087 ................................................................................................. 13

**State Cases**

*Clothesrigger, Inc. v. GTE Corp.* (1987)
    191 Cal.App.3d 605 ........................................................................................ 14

*In re Tobacco Cases II* (2015)
    240 Cal.App.4th 779 ....................................................................................... 19

**Other**

*Conte & Newberg, Newberg on Class Actions* § 11.41 (4th ed. 2002)…………….………………...16, 17

*Manual for Complex Litigation* § 13.14 at 173 (4th ed. 2004)…………………………………… 16, 20, 21

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 19, 2016 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 1, 4th Floor of the United States District Court, Oakland Courthouse, located at 1301 Clay Street, Oakland, California, 94612, before the Honorable Yvonne Gonzalez Rogers, Plaintiffs Derrick Alba, Jason Baker, James Girardi, Jonathan Huber, and Anthony Ventura, ("Plaintiffs") will, and hereby do, move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for an order:

1.     Preliminarily approving the Stipulation of Class Action Settlement and Release ("Settlement" or "Settlement Agreement") they have reached with Defendant in this matter;

2.     Granting provisional certification of the Class, and appointing the foregoing named plaintiffs as the class representatives and Kathleen Fisher of Calvo Fisher & Jacob LLP; Rosemary Rivas of Finkelstein Thompson LLP; and James Pizzirusso of Hausfeld LLP, as Class Counsel;

3.     Approving the Parties' proposed Notice Program, as set forth in the Settlement, and directing notice of the proposed Settlement to the Class;

4.     Appointing Garden City Group, LLC ("GCG") as the Settlement Administrator, and directing GCG to carry out the duties of the Settlement Administrator, including but not limited to the provision of notice, as set forth in the Settlement Agreement;

5.     Approving the Parties' proposed Claim Form, and approving the procedures set forth in the Settlement for Class Members to submit claims, exclude themselves from the Class, and object to the Settlement;

6.     Setting a schedule for the final approval process and for Plaintiffs' motion for service awards to the named plaintiffs and attorneys' fees and costs; and

7.     Staying all non-settlement related proceedings in this case pending final approval of the proposed Settlement.

The grounds for this motion are that the proposed Settlement is fair, adequate and reasonable, and that the other requested relief is well-grounded in law and fact, as set forth in the accompanying memorandum of points and authorities.  This motion is based on the Declaration of Rosemary M. Rivas submitted herewith, and the exhibits thereto; the Declaration of Stephen Cirami, Executive Vice

1  President and Chief Operating Office of Garden City Group, LLC, and the exhibits thereto; the attached

2  supporting memorandum of points and authorities; the pleadings and papers on file in this action, and

3  the oral argument of counsel, if any, presented at the hearing on this motion.

4  DATED: June 17, 2016                     Respectfully submitted,

5                                           **FINKELSTEIN THOMPSON LLP**

6                                           By: */s/ Rosemary M. Rivas*

7                                                Rosemary M. Rivas

8                                           One California Street, Suite 900

9                                           San Francisco, California 94111
                                            Telephone: (415) 398-8700

10                                          Facsimile: (415) 398-8704

11                                          **CALVO FISHER & JACOB LLP**

12                                          By: */s/ Kathleen Fisher*

13                                               Kathleen Fisher

14                                          555 Montgomery Street, Suite 1155

15                                          San Francisco, California 94111
                                            Telephone: (415) 374-8370

16                                          Facsimile: (415) 374-8373

17                                          **HAUSEFELD LLP**

18                                          By: */s/ James Pizzirusso*

19                                               James Pizzirusso

20                                          1700 K Street NW, Suite 650

21                                          Washington, DC 20006
                                            Telephone: (202) 540-7200

22                                          Facsimile: (202) 540-7201

23                                          *Interim Co-Lead Counsel for Plaintiffs and the*

24                                          *Proposed Class*

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

   Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Derrick Alba, Jason Baker, James Girardi, Jonathan Huber, and Anthony Ventura, hereby move for preliminary approval of the Stipulation of Class Action Settlement and Release ("Settlement" or "Agreement")[1] they reached with Defendant Sony Computer Entertainment America LLC, currently known as Sony Interactive Entertainment America LLC (referred to herein as "Defendant" or "SCEA") after nearly six years of litigation and many months of settlement negotiations.  About 10 million consumers nationwide are eligible to submit a Claim Form to receive a cash payment in the amount of either $55.00 or $9.00.

   The action arose out of SCEA's marketing and sale of the Sony PlayStation®3 ("PS3").  Plaintiffs allege that Defendant marketed the PS3 as having the ability to run an operating system (such as Linux) in addition to the native game operating system (henceforth referred to as "Other OS"), and that SCEA subsequently removed the "Other OS" functionality via firmware update 3.21, harming PS3 purchasers.  Approximately 10 million units were sold in the United States and ranged in price from approximately $400 to $600.[2]  Throughout the pendency of the case, Defendant has vigorously denied liability.  Among other things, Defendant has argued that it had the right to remove the Other OS pursuant to its terms of service and other purported agreements, and that the Other OS was not a functionality that was material to the vast majority of purchasers.

   The Parties have litigated the case vigorously, and now, following a previous dismissal of the case with prejudice, a partial reversal of the dismissal order by the Ninth Circuit, and extensive discovery and litigation, the Parties reached the Settlement as the result of a lengthy negotiations process that was begun in a mediation session with the Honorable Howard B. Weiner (Ret.), and the specific

---

[1] Unless otherwise stated, capitalized terms have the same meaning as in the Agreement, attached as Exhibit A to the accompanying Declaration of Rosemary M. Rivas ("Rivas Decl.").

[2] SCEA sold PS3's wholesale and has no retail sales figures from third party retailers.  The number of units sold was estimated based on wholesale figures.

1

**MPA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO. 4:10-CV-01811-YGR**

provisions of which the Parties have negotiated for the past several months.

Defendant has agreed to pay $55.00 to each Class member who submits a valid claim showing, among other things, proof that he or she used the Other OS functionality, and $9.00 to all other Class Members who submit a valid claim and attesting, among other things, that they lost value and/or desired functionality or were otherwise injured as a consequence of the firmware update. There is no limit on the number of valid claims that Defendant is required to pay. The Parties believe the terms of the Agreement are fair, reasonable and adequate, and that the Court should grant preliminary approval. Accordingly, Plaintiffs respectfully request that the Court grant this motion.[3]

## II.   PROCEDURAL SUMMARY

### A.   The Consolidated Action

Several class action cases arising out of the PS3's "Other OS" functionality were filed against SCEA beginning on April 27, 2010.[4] The Honorable Richard Seeborg consolidated the cases as *In re Sony PS3 "Other OS" Litigation* and appointed the firms of Finkelstein Thompson LLP, Hausfeld LLP and Calvo & Clark LLP (now Calvo Fisher & Jacob LLP) as Interim Co-Lead Counsel. Dkt. No. 65.

Plaintiffs filed the Consolidated Class Action Complaint ("Consolidated Complaint") on July 30, 2010, alleging causes of action for statutory violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"); the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"); the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*; and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* Dkt. No. 76. Plaintiffs also alleged common law claims for breach of express warranty; breach of the implied warranty of merchantability; breach of the implied warranty of fitness for a particular purpose; conversion and unjust enrichment. *Id.* Plaintiffs sought damages, restitution and injunctive relief. *Id.*

---

[3] Defendant does not oppose Plaintiffs' motion for preliminary approval and intends to file a notice of non-opposition concurrently with the filing of this motion.

[4] On April 27, 2010, the case titled *Ventura v. Sony Computer Entertainment America Inc.* ("*Ventura*"), 3:10-cv-01811-RS was filed in the United States District Court for the Northern District of California. Several additional plaintiffs filed cases in the weeks thereafter.

1

### B.   SCEA's Challenges to the Pleadings and Subsequent Appeal

2

On September 10, 2010, SCEA moved to dismiss the Consolidated Complaint on several

3

grounds, and moved to strike the class allegations.  Dkt. Nos. 96-97.  Plaintiffs filed oppositions to

4

SCEA's motions on October 12, 2010, and SCEA filed its reply briefs on October 21, 2010.  Dkt. Nos.

5

103-106.  Judge Seeborg heard the motions on November 4, 2010, and on February 17, 2011, entered an

6

order granting in part, and denying in part, the motion to dismiss (with leave to amend), and denied the

7

motion to strike.  Dkt. No. 108.  According to Judge Seeborg, the Consolidated Complaint was deficient

8

in the following respects:  Plaintiffs had failed to allege that SCEA made express representations as to

9

the *continued* availability of the "Other OS" functionality; Plaintiffs did not identify the particular

10

representations on which they relied; Plaintiffs did not allege how SCEA had been unjustly enriched;

11

and Plaintiffs did not show that Sony had assumed control or ownership of any of Plaintiffs' property,

12

among other things.  *Id.*

13

Plaintiffs filed the First Amended Consolidated Class Action Complaint ("First Amended

14

Complaint") on March 9, 2011.  Dkt. No. 165.  On April 28, 2011, SCEA again moved to dismiss.  Dkt.

15

No. 168.  Plaintiffs filed an opposition brief on April 18, 2011, and SCEA filed its reply brief on April

16

28, 2011.  Dkt Nos. 173, 176.  Judge Seeborg heard SCEA's motion to dismiss on July 21, 2011.  Dkt.

17

No. 179.  On December 8, 2011, Judge Seeborg entered an order dismissing the action without leave to

18

amend.  Dkt. No. 185.

19

Plaintiffs filed a Notice of Appeal on December 22, 2011.  Dkt No. 193.  After full briefing by

20

the Parties, the Ninth Circuit heard oral argument on October 11, 2013.  Dkt. No. 32.  In a memorandum

21

dated January 6, 2014, the Ninth Circuit affirmed in part, and reversed in part, the dismissal of

22

Plaintiffs' case.  *See In re Sony PS3 "Other OS" Litig. v. Sony Computer Entm't Am., Inc.,* 551 Fed.

23

Appx. 916 (9th Cir. 2014).  Among other things, the Ninth Circuit held that the district court erred in

24

dismissing the UCL claims for violations of the fraud and unfair prongs, the FAL claim, and the CLRA

25

claims for violations of Sections 1770(a)(5) and (a)(7).  The Ninth Circuit affirmed the district court's

26

dismissal of the remaining claims and remanded the case back to the district court.

27

Plaintiffs filed the Second Consolidated Class Action Complaint on May 29, 2014, which SCEA

28

3

answered on June 27, 2014.  Dkt. Nos. 213, 219.

## C.   The Parties Took Significant Discovery in the Case

The Parties engaged in extensive discovery *both* before the appeal and afterwards.  *See* accompanying Declaration of Rosemary M. Rivas ("Rivas Decl.") ¶ 9.  While SCEA's motions to dismiss and strike were pending, each party served written discovery.  *Id.*  Having reached an impasse on several discovery issues, such as whether Plaintiffs had to produce their PS3s and personal computers for SCEA's inspection, Plaintiffs moved for a protective order and filed a motion to compel other discovery on December 15, 2010.  Dkt. No. 111-12.  SCEA opposed Plaintiffs' motions to compel and for a protective order on January 18, 2011, and Plaintiffs filed reply briefs on January 26, 2011.  Dkt. No. 124-125, 142.  For its part, SCEA filed a motion to compel discovery on December 15, 2010, Plaintiffs filed an opposition on January 18, 2011, and SCEA filed a reply brief on January 26, 2011. Dkt. No. 139.

After hearing oral argument, (then Magistrate) Judge Edward M. Chen issued an order granting in part and denying in part Plaintiffs' motion to compel and motion for a protective order.  Dkt. No. 152. Judge Chen ordered the Plaintiffs to produce their PS3s for imaging, but not their personal computers as requested by SCEA, and that Plaintiffs could direct focused discovery at SCEA's Japanese parent corporation.  *Id.*  Further discovery disputes arose, however, surrounding the details of the PS3 imaging process, the depositions of the named plaintiffs, and the scope of discovery to be served on SCEA's parent company.  Both SCEA and Plaintiffs submitted letter briefs to Judge Chen about the disputes. Dkt. Nos. 169-171.  Judge Chen subsequently issued an order regarding the disputes and letters on April 11, 2011.  Dkt. No. 172.  SCEA also deposed two of the named plaintiffs before the case was dismissed with prejudice by Judge Seeborg.  Rivas Decl. ¶ 10.

After the appeal was resolved in 2014, the Parties restarted discovery.  *Id.* at ¶ 11.  SCEA deposed the remaining three named plaintiffs and inspected the PS3s of all of the named plaintiffs.  *Id.* Plaintiffs also responded to interrogatories and document requests propounded by SCEA.  *Id.*  Plaintiffs deposed seven (7) SCEA witnesses, three of which were designated to testify on behalf of SCEA pursuant to Fed. R. Civ. P. 30(b)(6).  *Id.*  Plaintiffs also reviewed approximately tens of thousands of

pages of documents produced by SCEA, as well as SCEA's responses to their interrogatories.  Rivas Decl. ¶ 11.

### D.    Settlement Negotiations

While SCEA's second motion to dismiss was pending in 2011, the Parties participated in an initial private mediation before the Honorable James L. Warren (Ret.) of JAMS.  *Id.* at ¶ 13.  In preparation of the mediation, which was a full-day session and took place on July 7, 2011, the Parties prepared detail mediation briefs outlining the respective strengths and weaknesses of their claims and defenses.  *Id*.  The Parties were unable to reach a settlement that day and, once the case was dismissed, the Parties ended settlement discussions.  *Id.*

After the appeal and additional discovery was completed, the Parties renewed their settlement efforts.  *Id.* at ¶14.  The Parties participated in a second mediation before the Honorable Howard Weiner (Ret.) on August 20, 2015.  *Id*.  In preparation for the mediation, the Parties again prepared detailed mediation briefs that took into account the Ninth Circuit's decision from 2014 as well as key evidence that had been discovered in the case in support of the Parties' respective positions.  *Id*.  While the parties were unable to reach an agreement on all terms that day, they did make substantial progress and continued to engage in numerous discussions to see if a final resolution could be reached.  *Id*.

Over the next five months, the parties had numerous teleconferences until they finally signed a Memorandum of Understanding ("MOU") in January 2016.  *Id.* at ¶ 15.  Once the MOU was fully executed, the Parties proceeded to draft the Agreement and ancillary documents which also proved to be difficult as the details of many key terms still needed to be negotiated.  *Id*.  Indeed, it took nearly five months for the Parties to negotiate the final settlement terms and execute the Settlement Agreement.  *Id.*

## III.    THE SETTLEMENT TERMS

### A.    Monetary Payments

Under the terms of the Settlement, the Class[5] is defined as: all persons in the United States who

---

[5] Excluded from the Class are: (a) any persons who are employees, directors, officers, and agents of Defendant or its subsidiaries and affiliated companies; (b) any persons who timely and properly exclude themselves from the Settlement; and (c) the Court, the Court's immediate family, and Court staff.

purchased a Fat PS3 model[6] in the United States between November 1, 2006, and April 1, 2010, from an unauthorized retailer for family, personal, and/or household use.  Agreement ¶ 12.

SCEA will pay $55 to each Class member who utilized the Other OS functionality ("Consumer Class A") and submits a valid claim.  *Id.* at ¶ 68(A).  Consumer Class A claimants must attest under oath to their purchase of the product and installation of Linux, provide proof of their purchase or serial number and PlayStation Network Sign-in ID, and submit some proof of their use of the Other OS functionality.  The Settlement Agreement sets forth a list of acceptable proof of use.  *Id.* at ¶ 68(A)(1)-(2).

SCEA will pay $9.00 to each Class member who, at the time of purchase, knew about the Other OS, relied upon the Other OS functionality, and intended to use the Other OS functionality ("Consumer Class B") and submits a valid claim.  Agreement ¶ 68(B)(1)(a)(ii)(a).  Alternatively, a member of Consumer Class B may attest that he or she lost value and/or desired functionality or was otherwise injured as a consequence of Firmware Update 3.21 issued on April 1, 2010.  *Id.* at ¶ 68(B)(1)(a)(ii)(b).  To present a valid claim, Consumer Class B claimants must also attest to their purchases and provide proof of purchase or a PS3 serial number and PlayStation Network Sign-in ID.  *Id.* at ¶ 68(B)(1)(b)(i)-(ii).

### B.      Dissemination of Notice to the Settlement Class

The Parties' settlement provides for robust notice and is estimated to reach at least 77% of Class Members.[7]  *See* Declaration of Stephen Cirami Regarding Notice and Settlement Administration ("Cirami Decl.") ¶ 29 (attached as Exh. E to the Rivas Decl.).  The Notice Program agreed to by the Parties, with expert assistance and endorsement, comports with due process and is the best notice practicable under the circumstances.  *Id.* at ¶¶ 3-6, 15.

---

Agreement ¶ 12.

[6] A "Fat PS3" means the Sony PlayStation®3 computer entertainment console that was manufactured between approximately November 1, 2006 and September 2009 that included the Other OS functionality.  Agreement ¶ 20.

[7] The Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide states that it is reasonable to reach between 70% and 95% of class members.  *Id.* at 3.

MPA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO. 4:10-CV-01811-YGR

The proposed Notice Program calls for direct notice via email (followed by a second round of emailed notice).  Cirami Decl. ¶ 16.  SCEA will provide the Parties' selected Settlement Administrator, Garden City Group, LLC ("GCG"), with an electronic list or database that is reasonably calculated to include the email addresses of all Class Members maintained by SCEA in its PlayStation Network Database. Agreement ¶ 76(i).  GCG will send the Short Form Notice, in the form approved by the Court, to Class Members, via email, along with a link to the Settlement Website.  Agreement ¶ 76(ii).  GCG will send a follow-up email notice to Class Members who have not submitted claims and for whom it did not receive a bounce-back in response to the first round of email notice.  *Id.* at ¶ 77; Cirami Decl. ¶ 16.

Additionally, the Notice Program provides for Internet notice via banner ads and search-related advertising on CNET, IGN, GameSpot.com and other websites intended to reach the targeted audience based on market research from GfK Mediamark Research, Inc. and comScore.  Cirami Decl. ¶¶ 10-12, 18-22.  Further, the Settlement Administrator will utilize social media outreach and establish a Settlement Website, where notice of the Settlement and key documents will be available, including the Long Form Class Notice and Short Form Notice.  *Id.* at ¶¶ 23-27.  A link to the Settlement Website will also be included in a national press release, approved by the Parties.  To comply with California's Consumers Legal Remedies Act, the Short Form Notice will also run one time per week for four weeks in the California edition of USA Today at the approximate ad size of ¼ page.  *Id.* at ¶ 26.

The Long Form Class Notice, which will be available on the Settlement Website, describes the material terms of the Settlement and the procedures that Class Members must follow to receive payments under the Settlement.  Agreement, Exh. 4.  The Long Form Class Notice also describes the procedures Class Members must follow to request exclusion or to object to the Settlement.  *Id.*  Any Class Member who wishes to be excluded from the Settlement need only make a timely opt-out request. *Id.*  The procedures for opting-out are those commonly used in class action settlements; they are straightforward and described in the notice.  *Id.*  The Short Form Notice provides a summary of the foregoing.  Agreement, Exh. 6.

Pursuant to the terms of the Settlement, SCEA agrees to retain Garden City Group and pay all reasonable costs of the Settlement Administrator to administer the Settlement, including providing Class Notice, processing and evaluating Claims, and performing other tasks as provided in the Agreement. Agreement ¶ 3.

### C.     Incentive Award and Attorneys' Fees and Costs

Each named Plaintiff may apply for an incentive award to be determined by the Court.  Pursuant to the Settlement, SCEA agrees not to object to the incentive award provided any requested incentive award does not exceed $3,500 per plaintiff.  *Id.* at ¶ 112.  Interim Co-Lead Counsel intend to request an incentive award of $3,500 for each named plaintiff to recognize them for their efforts during the action that resulted in the Settlement, including: retaining counsel; reviewing and authorizing the filing of the original and amended complaints; responding to discovery, including having their depositions taken and producing their PS3s for inspection; reviewing the proposed Settlement; and keeping abreast of the litigation.  Rivas Decl. ¶ 22.  Additionally, Interim Co-Lead Counsel will apply to the Court for an award of attorneys' fees and reimbursement of expenses in an amount not to exceed $2,250,000.00. Agreement ¶ 107.  Any attorneys' fees and expenses awarded by the Court, as long as they do not exceed $2,250,000.00 will be paid separately by SCEA.  *Id.* at ¶ 109.  Interim Co-Lead Counsel have worked on the case since 2010, and have incurred significant time and expenses, well above the $2,250,000.00 that will be requested.  Rivas Decl. at ¶ 12.

### D.     Release Provisions

Each Class member who does not timely submit a valid request to opt out of the Settlement will release "all claims, demands, rights and liabilities," whether "known or unknown," that arise from the purchase of a Fat PS3 and/or "relate to, are based on, concern or arise out of the allegations, facts, or circumstances that were asserted or that could have been asserted (whether individually or on a class-wide basis) in the Action.  Agreement ¶ 35.  The Released Claims include, but are not limited to, claims arising under the common laws and statutes of all fifty (50) states concerning: (a) whether SCEA falsely advertised or marketed the Fat PS3's Other OS functionality; (b) the disabling of the Other OS functionality in the Fat PS3; (c) the issuance of Firmware Update 3.21; and/or (d) whether the System

Software License Agreement and/or PlayStation Network Terms of Service and User Agreement enable SCEA to alter, remove or modify the features and/or functions of the Fat PS3.  Agreement ¶ 35.

The Released Parties are: SCEA and each of its current and former parents, subsidiaries, divisions, and affiliated individuals and entities, successors, predecessors, assigns, joint ventures, distributors, retailers, developers and/or licensees and each and all of their respective officers, partners, directors, servants, agents, shareholders, members, managers, principals, investment advisors, consultants, employees, representatives, attorneys, accountants, lenders, underwriters and insurers. Agreement ¶ 36.

## IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

For settlement purposes only, Plaintiffs request that the Court provisionally certify the following proposed Class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal, and/or household use.

Agreement ¶ 12.

Because the proposed Class meets all the requirements of Rule 23 as explained below, the Class should be certified for settlement purposes.

### A.   The Classes Satisfy the Numerosity Requirement

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable."  *Id.*  Numerosity is undisputed.  Plaintiffs allege, and discovery confirmed, that Defendant sold over 10 million PS3s during the relevant time frame.  While Plaintiffs do not know the precise number of those 10 million purchasers who used or were aware of the Other OS functionality, there are likely hundreds of thousands of purchasers eligible to make claims should the Court approve the Settlement.

### B.   The Class Satisfies the Commonality Requirement

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class."  *Id.*

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  This means that the class members' claims "must depend on a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  This requirement is also satisfied.

The commonality requirement is met for the Class because the claims of all Class Members arise from the same contention, namely, that Defendant unlawfully removed the Other OS, functionality that Plaintiffs contends it extensively marketed.  Thus, the determination of whether the Defendant's removal of the functionality violated an obligation created by alleged marketing will resolve a central issue on a class wide basis.

### C.   Plaintiffs Meet the Typicality Requirement

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  This requirement is also satisfied.

Courts consistently find that the typicality requirement is met if the claims arise from a common course of conduct.  Typicality does not require the claims to be substantially identical.  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).  Rather, the Ninth Circuit has found typicality if the "unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Id.* (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Plaintiffs have the same claims as the members of the Class they seek to represent, and they must satisfy the same legal elements that Class Members must satisfy, including with respect to the CLRA, FAL, and UCL claims alleged in the operative complaint.  They share identical legal theories with the proposed Class Members, based on allegations that SCEA marketed and sold PS3s with the Other OS functionality that SCEA ultimately removed.  Their alleged injuries are similar, too.  Thus, Rule 23(a)(3) is satisfied.

### D.   Plaintiffs Satisfy the Adequacy Requirement

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

10

interests of the class."  "Resolution of two questions determines legal adequacy: (1) do the named Plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiff and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1988).

There are no conflicts of interest alleged or that could possibly exist here.  Plaintiffs seek the exact same remedy as all Class Members: namely, relief to address the claims that Defendant misrepresented its product by marketing the "Other OS" functionality and then removing it.  Plaintiffs' interests therefore, are perfectly aligned with the interests of the Class.

The Plaintiffs' Counsel's adequacy is evidenced by their successful appeal of the dismissal of the case, as well as the Settlement negotiated with Defendant, which provides for important relief to the Class.  Further, Plaintiffs' counsel are highly experienced in class action litigation, and have been involved in many class action settlements and actions which further warrants preliminary approval of the Settlement.  Rivas Decl., Exhs. C-E.

### E.   Class Members are Ascertainable

There is no explicit ascertainability requirement in Rule 23.  Nevertheless, some courts have held that a class must also be ascertainable before proceeding.  "The requirement of an ascertainable class is met as long as the class can be defined through objective criteria."  *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *5 (C.D. Cal. April 9, 2014); *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012); *see also Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 593-94 (C.D. Cal. 2008) (A class is sufficiently ascertainable if "the proposed class definition allows prospective plaintiffs to determine whether they are class members with a potential right to recover.").

Plaintiffs have defined the proposed Class using objective criteria: purchase of the Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal and/or household use (and use of the Other OS functionality after installation of a Linux operating system on their Fat PS3, for Consumer Class A).  Such objective criteria sufficiently meets the ascertainablility requirement here.

F.      **The Class Satisfies the Criteria of Rule 23(b)**

To certify a class under Rule 23(b)(3), this Court must find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

Both criteria are met in this case.  The primary purpose behind Rule 23(b)(3) is the vindication of the rights of people who would not have the economic power or incentive to bring a wrongdoer into court to redress a wrong imposed on them.

1.      **Common Questions Predominate**

"The predominance inquiry focuses on the relationship between the common and individual issues and tests whether the proposed class [is] sufficiently cohesive to warrant adjudication by representation."  *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 944 (9th Cir. 2009). Predominance considers whether "questions of law or fact common to the class will predominate over any questions affecting only individual members as the litigation progresses."  *Amgen Inc. v. Conn. Retirement Plans & Trust Funds,* 133 S. Ct. 1184, 1195 (2013).  "Thus, this requirement is essentially a heightened commonality inquiry: do the common legal and factual questions appear more significant than the individualized legal and factual questions?"  *Thomas v. Baca,* 231 F.R.D. 397, 402 (C.D. Cal. 2005).  This analysis starts with the underlying causes of action.  *Erica P. John Fund, Inc. v. Halliburton Co.,* 133 S. Ct. 2179, 2184 (2011).

In analyzing whether common questions predominate, the Court must evaluate whether proving the elements of the claims can be done through common evidence applicable to the class as a whole, or whether proof will be overwhelmed with individual issues.  *See Hanlon,* 150 F.3d at 1022.  As the Supreme Court has noted, predominance is readily met in cases alleging consumer fraud.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).

The legal and factual issues central to each of Plaintiffs' claims are common to all Class Members and predominate over any individualized issues.  Plaintiffs' claims here center on one question: the alleged harm caused by SCEA's marketing and subsequent removal of the Other OS

functionality from the PS3.  This common question predominates over any individual questions that might exist because Defendant's alleged conduct affected all Class Members in the same manner as the PS3 was sold nationwide with the same alleged misrepresentations.  This weighs in favor of finding the requirements of Rule 23(b)(3) satisfied.  *Moshogiannis v. Security Consultants Group, Inc.*, 2012 WL 423860, at *4 (N.D. Cal. Feb. 8, 2012); *see also Sterling v. Velsicol Chem. Corp.* 855 F.2d 1188, 1196-97 (6th Cir. 1988).  As one court noted in *Johns v. Bayer Corp*, "these predominant questions are binary – advertisements were either misleading or not, and Bayer's prostate health claim is either true or false." 280 F.R.D. 551, 557 (S.D. Cal. 2012)

Moreover, under the California consumer protection laws at issue, whether consumers were likely to be deceived is an objective standard and most importantly, the focus is on the defendant's conduct, not the plaintiff's.  *Williams v. Gerber*, 552 F.3d 934, 938 (9th Cir. 2008); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089, 1094 (9th Cir. 2010).  Given the objective standard and focus on Defendant's conduct, common questions of law and fact predominate here.

### 2. A Class Action Is The Superior Method For The Fair And Efficient Adjudication Of This Controversy

This case also meets the second requirement of Rule 23(b)(3): that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy."  To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors for courts to consider:

> (A) [T]he interest of members of the class in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by . . . members of the class; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Each of these factors counsels in favor of certifying the Settlement Class here.

### a. *The Individual Class Members' Interest in Controlling the Litigation*

First, there is little interest or incentive for Class Members to individually control the prosecution of separate actions.  Each Class Member's individual claim is too small to justify the potential litigation costs that would be incurred by prosecuting these claims individually.  *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*

13

1   *Sands Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001); *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d

2   1168, 1175–76 (9th Cir. 2010).  Because the claims of each Class Member in this case are small and

3   virtually identical, no one member of the Class would have a materially greater interest in controlling

4   the litigation.  *See Westways World Travel, Inc. v. AMC Corp.,* 218 F.R.D. 223, 240 (C.D. Cal. 2003).

5          **b.      *Extent and Nature of Litigation Already Commenced by Class Members***

6          Plaintiffs are unaware of any other actions by Class Members against Defendant asserting similar

7   claims as here.  This factor also militates in favor of certification.

8          **c.      *The Desirability of Concentrating the Litigation in a Particular Forum***

9          Third, certification is superior because concentrating this litigation in one forum would not only

10  prevent the risk of inconsistent outcomes but would also "reduce litigation costs and promote greater

11  efficiency."  *Negrete v. Allianz Life Ins. Co. of North America,* 238 F.R.D. 482, 493 (C.D. Cal. 2006).

12         **d.      *This Case is Manageable As a Class Action***

13         Finally, the question here is "whether reasonably foreseeable difficulties render some other

14  method of adjudication superior to class certification."  *In re Prudential Ins. Co. of Am. Sales Practices*

15  *Litig.,* 962 F. Supp. 450, 525 (D.N.J. 1997).  As the Supreme Court has held, manageability issues will

16  not foreclose certification for settlement purposes.  *See Amchem Prods.,* 521 U.S. at 620 ("Confronted

17  with a request for settlement-only class certification, a district court need not inquire whether the case, if

18  tried, would present intractable management problems *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the

19  proposal is that there be no trial.").

20         Therefore, there are no serious manageability difficulties presented by conditionally certifying

21  this case for settlement purposes.

22         **G.      Certification of a Nationwide Settlement Class is Appropriate**

23         Fed. R. Civ. P. 23(b)(3) allows the certification of a nationwide class under California law on the

24  facts of this case.  For a state's substantive law to be selected in a constitutionally permissible manner

25  and applied to citizens outside of that state, that state must have a "significant contact or significant

26  aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor

27  fundamentally unfair."  *See Sullivan v. Oracle Corp.*, 662 F.3d 1265 (9th Cir. 2011) (citing *Phillips*

28

1   *Petroleum Co. v. Shutts*, 472 U.S. 797, 821-822 (1985)); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.

2   App. 3d 605 (1987) (citing *Shutts*).

3       Here, SCEA's contacts with California are substantial.  SCEA is an American corporation with

4   its principal place of business in California, where SCEA's marketing department is located.  Moreover,

5   in its Terms of Service and User Agreement ("TOS"), which all users had to agree to prior to signing into the

6   PSN and to which SCEA contends all users are bound, SCEA states: "Except as otherwise required by

7   applicable law, this Agreement shall be construed and interpreted in accordance with the laws of the State of

8   California applying to contracts fully executed and performed within the State of California."   Dkt. No. 98-

9   5 at 14.

10      Accordingly, application of California law to the nationwide claims here is neither arbitrary nor

11  unfair.  *See, e.g., Sullivan*, 662 F.3d at 1271 (application of California law to nonresidents appropriate

12  where defendant was headquartered in California, defendant's alleged decision to deny plaintiffs

13  overtime pay was made in California, and where alleged work at issue was performed in California).

14

15      To the extent the Court is concerned about variations in the substantive laws of the various

16  states, such variations do not preclude the certification of a nationwide settlement class.  The nationwide

17  settlement of a Rule 23(b)(3) action asserting California law claims is appropriate so long as there is a

18  common nucleus of facts and potential legal remedies shared between resident and nonresident class

19  members.  *See Hanlon*, 150 F.3d at 1022-23 (9th Cir. 1988) (nationwide settlement of consumer class

20  action appropriate given that "although some class members may possess slightly differing remedies

21  based on state statute or common law, the actions asserted by the class representatives are not

22  sufficiently anomalous to deny class certification."); *Parkinson*, 258 F.R.D. at 589 (certifying

23  nationwide class under California law where the defendant had operations in California).

24      Further support for provisionally certifying a nationwide class comes from the numerous

25  approvals of class action settlements by California federal courts in which California law claims were

26  asserted on a nationwide basis.  *See, e.g., Arnold v. FitFlop USA*, LLC, 2014 U.S. Dist. LEXIS 58800, at

27  *6 (S.D. Cal. Apr. 28, 2014) (granting final approval of a nationwide class certified for settlement

28  purposes under California law); *Miller v. Ghirardelli Chocolate Co.*, 2015 U.S. Dist. LEXIS 20725

(N.D. Cal. Feb. 20, 2015) (same); *Kent v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 106831 (N.D. Cal. Sept. 20, 2011) (same).

## V.   PRELIMINARY APPROVAL IS APPROPRIATE

### A.   The Settlement Approval Process

The law favors settlement, particularly in class actions and complex cases where substantial resources can be conserved by avoiding the time, costs and rigors of prolonged litigation. *Pilkington v. Cardinal Health (In re Syncor ERISA Litig.)*, 516 F.3d 1095, 1101 (9th Cir. 2008); CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("NEWBERG") ("By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise").

The first step toward effecting a proposed class-wide settlement is preliminary approval. *See* MANUAL FOR COMPLEX LITIGATION § 13.14 at 173 (4th ed. 2004) ("MANUAL") ("This [approval of a settlement] usually involves a two-stage procedure. First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing."); *see also id.*, § 21.632, at 320 ("Review of a proposed class action settlement generally involves two hearings.  First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation….") (footnote omitted); NEWBERG § 11.25 at 38-39 (discussing the two-step approval process).

At the preliminary approval stage, the Court asks whether "'[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval[7]….'" *See, e.g.*, *Burden v. SelectQuote Ins. Servs.*, 2013 WL 1190634, at *3 (N.D. Cal. Mar. 21, 2013) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). Put another way, the Court should "make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms . . . [.]" MANUAL § 21.632.

Because a preliminary evaluation of the instant Settlement will reveal no "grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or

segments of the class, or excessive compensation for attorneys," and because the settlement "appears to fall within the range of possible approval," Plaintiffs submit that the Settlement passes this initial evaluation. *See* NEWBERG § 11.25; *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079-80. Accordingly, as demonstrated below, the Court should grant preliminary approval.

### A. The Settlement is the Product of Well-Informed, Vigorous and Thorough Arms'-Length Negotiations

In considering preliminary approval, the Court must ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ." *Hanlon*, 150 F.3d at 1027 (internal quotes and citations omitted).  As set forth above, the Settlement in this matter was achieved only after five years of litigation, including extensive motion practice on Defendant's challenges to the pleadings, the appeal, the mediation briefs, depositions and document analysis, two in-person mediations and months of extensive negotiations between the Parties.  Further, Plaintiffs and the Class were represented throughout the litigation by dedicated counsel, court-appointed Interim Co-Lead Counsel with extensive experience in class action litigation. Based on the foregoing, Interim Co-Lead Counsel were well-situated to evaluate the strength and weaknesses of Plaintiffs' claims.  Far from being the product of anything inappropriate, the Settlement is the result of long, hard-fought, adversarial work, such that it is worthy of preliminary approval by the Court. *Cf Hanlon*, 150 F.3d at 1027 (no basis to disturb settlement where there was no evidence suggesting that the settlement was negotiated in haste or in the absence of information).

### B. The Settlement Bears  No Obvious Deficiencies and There is No Preferential Treatment

Furthermore, the Settlement bears no obvious deficiencies. *See Burden*, 2013 WL 1190634, at *3.  There are no patent defects that would preclude its approval by the Court, such that notifying the class and proceeding to a formal fairness hearing would be a waste of time. *See* NEWBERG § 11.25 (referring to the Court's inquiry as to, inter alia, "obvious deficiencies").  Respectfully, an examination of the Settlement will reveal no apparent unfairness, and no "unduly preferential treatment of a class representative or segments of the Settlement Class, or excessive compensation for attorneys." *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810, at *6 (D. Minn. Oct. 18, 2012) ("There are

no grounds to doubt the fairness of the Settlement, or any other obvious deficiencies, such as unduly preferential treatment of a class representative or segments of the Settlement Class, or excessive compensation for attorneys.").

To the contrary, the Settlement provides cash relief to qualified Class Members on a claims-made basis depending on whether they utilized or were aware of the Other OS functionality.  While Class members who utilized the Other OS are eligible to receive $55.00 under the Settlement, a higher cash award to this segment is fair when considering that under the CLRA, one of the claims here, Plaintiffs would have had to show that the Other OS representations were material to consumers.  One way to prove materiality is by showing proof of the use of the Other OS.  Class Members who never relied on the Other OS representation, however, are eligible to receive $9.00 in cash if they believe they were harmed by SCEA's removal of the Other OS functionality, without ever having to show reliance or materiality.

Moreover, although the Settlement authorizes the Plaintiffs to seek an incentive award of $3,500.00 each for their efforts in the lawsuit, it is the Court that will ultimately decide whether Plaintiffs are entitled to such an award and the reasonableness of the amount requested.  The Ninth Circuit has recognized that incentive awards to the named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable.  *See Staton v. Boeing Co.,* 327 F.3d 937, 977 (9th Cir. 2003).

Finally, as for attorneys' fees, Plaintiffs' counsel intend to apply for fees and reimbursement of expenses not to exceed $2.25 million, which is significantly less than their collective lodestar and expenses.  Rivas Decl. ¶ 12.  Thus, there are no obvious deficiencies preventing preliminary approval of the Settlement.

### C.    The Settlement Falls Within the Range of Possible Approval

Finally, the Court must determine whether the proposed settlement falls within the range of possible approval.  To determine whether an agreement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of

18

maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

These factors weigh in favor of preliminary approval.  While Interim Co-Lead Counsel believe that the Class's claims are meritorious, SCEA vigorously disputes this, and has argued that it never advertised the Other OS functionality on the product box or its website.  Further, there is a risk that the Court may deny class certification or, after initial certification, subsequently decertify any class due to unanticipated individualized issues or manageability concerns.  The outcome of a trial (and potential post-trial appeals) are inherently uncertain in terms of both outcome and duration.  Continued litigation would involve considerable costs and a significant investment of time by the parties and their respective counsel and would burden the resources of the Court.

Moreover, while Class Members are receiving a fraction of the PS3's purchase price (as much as 13.5% if the unit cost $400), this is consistent with any argument SCEA would make at trial that under California law a full refund is unavailable because the units still have some value as they can continue to be used to play video games, Blu-ray movies, and access the PlayStation Network, among other things. *See In re Tobacco Cases II*, 240 Cal. App. 4th 779, 796 (2015).

While Interim Co-Lead Counsel, who are experienced in consumer class action litigation, believe the claims have merit, they also believe the proposed settlement is fair, reasonable, adequate, and is in the best interest of the Settlement Class in light of all known facts gathered through the lengthy discovery process in this case and the applicable standards on class certification and the proof requirements necessary to obtain damages under the alleged claims.  Rivas Decl. ¶ 21. Consideration of the foregoing factors weighs in favor of preliminary approval.

## VI.    <u>NOTICE</u>

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise . . . [.]'" Manual § 21.312, at 293.  In order to protect the rights of absent Class Members, the Court must direct the best

notice practicable to Class Members.  *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).  Additionally, "Rule 23 … requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts.  Those who cannot be readily identified must be given the 'best notice practicable under the circumstances.'"  MANUAL, § 21.311 at 287.

In this case, Plaintiffs have consulted with a notice expert to devise an intensive and best-notice-practicable Notice Program including individual notice via electronic mail; a strong Internet and print publication component to reach Class Members nationwide; a settlement website; and plans to disseminate a press release regarding the settlement.  Rivas Decl. ¶ 18.  *See In re HP Laser Printer Litig.*, 2011 WL 3861703, at *3 (C.D. Cal. Aug. 31, 2011) (approving a notice plan utilizing direct email notice, publication of the summary notice in print publications, banner advertisements on websites, and "providing a link on both notice forms to a settlement website"); *Norflet v. John Hancock Life Ins. Co.*, 658 F. Supp. 2d 350, 352 (D. Conn. 2009) (approving a notice plan utilizing Internet banner advertisements).

As for the settlement notice itself, it will comport with due process because it will:

- define the class;
- describe clearly the options open to class members and the deadlines for taking action;
- describe the essential terms of the proposed settlement;
- disclose that no special benefits other than service awards approved by the Court will be provided to the class representatives;
- provide information regarding attorney fees;
- indicate the time and the place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;
- describe the method for objecting to or opting out of the settlement;
- explain the procedures for allocating and distributing settlement funds and clearly set forth the variations among different categories of class members;
- confirm that there are no non-monetary benefits provided under the settlement;

20

- provide information that will enable class members to estimate their individual recoveries; and

- prominently display the address and phone number of class counsel and how to make inquiries.

MANUAL § 21.312 at 295 (citation omitted).  Here, the Long Form Class Notice and Short Form Notice attached to the Parties' Settlement satisfy these requirements.  Agreement, Exhs. 4 and 6.

The Notice Program and documents are designed to afford notice in a comprehensive and reasonable manner.  Plaintiffs respectfully ask the Court to approve them.

## VII.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs request that the Court enter the submitted Order Preliminarily Approving Class Action Settlement and Certification of Settlement Class which: (1) preliminarily approves the Settlement; (2) directs dissemination of notice to Class; and (3) sets a date of November 8, 2016 for the final approval hearing.

DATED: June 17, 2016                             Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

By: <u>*s/Rosemary M. Rivas*</u>

Rosemary M. Rivas

One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704
Email: rrivas@finkelsteinthompson.com

Kathleen Fisher
kfisher@calvofisher.com
**CALVO FISHER & JACOB LLP**
555 Montgomery Street, Suite 1155
San Francisco, CA 94111
Telephone: (415) 374-8370
Facsimile: (415) 374-8373

James Pizzirusso (*Pro Hac Vice*)
jpizzirusso@hausfeld.com
**HAUSFELD LLP**

21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

*Interim Co-Lead Counsel for Plaintiffs*

MPA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO. 4:10-CV-01811-YGR