Rosemary M. Rivas (State Bar No. 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Kathleen Fisher (State Bar No. 70838)
kfisher@calvofisher.com
**CALVO FISHER & JACOB LLP**
555 Montgomery Street, Suite 1155
San Francisco, California 94111
Telephone: (415) 373-8370
Facsimile: (415) 374-8373

James Pizzirusso (pro hac vice)
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SONY PS3 "OTHER OS" LITIGATION | Case No. 4:10-CV-01811-YGR |
| | **DECLARATION OF ROSEMARY M. RIVAS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS** |
| | Date:        July 19, 2016 |
| | Time:        2:00 p.m. |
| | Judge:       Hon. Yvonne Gonzalez-Rogers |
| | Courtroom:   1 – 4th floor |

I, Rosemary M. Rivas, declare as follows:

1.      I am an attorney licensed to practice by the State of California, and a partner with the law firm of Finkelstein Thompson LLP, one of the firms appointed as Interim Co-Lead Counsel in the action titled, *In re Sony PS3 "Other OS" Litigation*, Case No. 4:10-CV-01811-YGR.

2.      On behalf of my firm, I have been one of the attorneys primarily responsible for this case since its inception, along with my co-counsel from Hausfeld LLP and Calvo Fisher & Jacob LLP.  Therefore, I have personal knowledge of the matters set forth herein, based on my active participation in the prosecution and settlement of the case and my firm's business records, and, if called as a witness, could and would competently testify thereto.

3.      I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class.  I discuss, in the following order: (a) a summary of the procedural history in the case; (b) issues relating to the good faith and arm's length settlement negotiations that took place in the case; (c) Interim Co-Lead Counsel's support for the settlement; (d) the proposed notice program; and (e) the named Plaintiffs' efforts in the case.

**SUMMARY OF PROCEDURAL HISTORY**

4.      Several class action cases relating to the Sony PlayStation®3's "Other OS" functionality were filed against Defendant Sony Computer Entertainment America LLC ("SCEA" or "Defendant"),[1] beginning on April 27, 2010.  The Honorable Richard Seeborg consolidated the cases as *In re Sony PS3 "Other OS" Litigation* and appointed the firms of Finkelstein Thompson LLP, Hausfeld LLP and Calvo & Clark LLP (now Calvo Fisher & Jacob, LLP) as Interim Co-Lead Counsel.

5.      On September 10, 2010, SCEA moved to dismiss the Consolidated Complaint on several grounds, and moved to strike the class allegations. Judge Seeborg heard the motions on November 4, 2010, and on February 17, 2011, entered an order granting in part, and denying in part, the motion to dismiss (with leave to amend) and denied the motion to strike.

---

[1] SCEA is currently known as Sony Interactive Entertainment America LLC.

RIVAS DECL. ISO PLAINTIFFS' MOT. FOR PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:10-CV-01811-YGR

6.    Plaintiffs filed the First Amended Consolidated Class Action Complaint ("First Amended Complaint") on March 9, 2011 and thereafter, SCEA again moved to dismiss. On December 8, 2011, Judge Seeborg entered an order dismissing the action without leave to amend.

7.    Plaintiffs filed a Notice of Appeal on December 22, 2011. After full briefing by the Parties, the Ninth Circuit heard oral argument on October 11, 2013, and in a memorandum dated January 6, 2014, the Ninth Circuit affirmed in part, and reversed in part, the dismissal of Plaintiffs' case. *See In re Sony PS3 "Other OS" Litig. v. Sony Computer Entm't Am., Inc.,* 551 Fed. Appx. 916 (9th Cir. 2014).

8.    Plaintiffs filed the Second Consolidated Class Action Complaint on May 29, 2014, which SCEA answered on June 27, 2014.

9.    The Parties engaged in extensive discovery *both* before the appeal and afterwards. While SCEA's motions to dismiss and strike were pending, each party served written discovery. Having reached an impasse on several discovery issues, such as whether Plaintiffs had to produce their PS3s and personal computers for SCEA's inspection, Plaintiffs moved for a protective order and filed a motion to compel discovery on December 15, 2010.

10.    After hearing oral argument, (then Magistrate) Judge Edward M. Chen issued an order granting in part and denying in part Plaintiffs' motion to compel and motion for a protective order.  Judge Chen ordered that the named Plaintiffs should produce their PS3s for imaging, but not their personal computers as requested by SCEA, and that Plaintiffs could direct focused discovery at SCEA's parent corporation. Further discovery disputes arose, however, surrounding the details of the PS3 imaging process, the depositions of the named plaintiffs, and the scope of discovery to be served on SCEA's parent company.  SCEA deposed two of the named plaintiffs before the case was dismissed with prejudice by Judge Seeborg.

11.    After the appeal was resolved in 2014, the Parties restarted discovery. SCEA deposed the remaining three named plaintiffs and inspected the PS3s of all of the named plaintiffs.   Plaintiffs also responded to interrogatories and document requests propounded by SCEA. Plaintiffs deposed

2

seven (7) SCEA witnesses, three of which were designated to testify on behalf of SCEA pursuant to Fed. R. Civ. P. 30(b)(6).  Plaintiffs also reviewed approximately tens of thousands of pages of documents produced by SCEA, as well as SCEA's responses to their interrogatories.

12.    Since the inception of this litigation in 2010, Interim Co-Lead Counsel and Plaintiffs' counsel have expended significant time and expenses in this matter that exceed the $2.25 million in attorneys' fees and expenses that Defendant has agreed to pay in this matter, subject to the Court's approval.

## SETTLEMENT NEGOTIATIONS

13.    While SCEA's second motion to dismiss was pending in 2011, the Parties agreed to participate in private mediation before the Honorable James L. Warren (Ret.) of JAMS.   In preparation of the mediation, which was a full-day session and took place on July 7, 2011, the Parties prepared detail mediation briefs outlining the respective strengths and weaknesses of their claims and defenses.  The Parties were unable to reach a settlement that day and, once the case was dismissed, the parties ended settlement discussions.

14.    After the appeal and additional discovery was completed, the Parties renewed their settlement efforts.  The Parties participated in a second mediation before the Honorable Howard Weiner (Ret.) on August 20, 2015.  In preparation for the mediation, the Parties again prepared detailed mediation briefs that took into account the Ninth Circuit's decision from 2014 as well as key evidence that had been discovered in the case in support of the Parties' respective positions.  While the parties were unable to reach an agreement on all terms on that day, they did make substantial progress and continued to engage in numerous discussions to see if a final resolution could be reached.

15.    Over the next five months, the Parties had numerous conferences until they finally signed a Memorandum of Understanding ("MOU") in January 2016.  Once the MOU was fully executed, the Parties proceeded to draft the settlement agreement and ancillary documents which also proved to be difficult as the details of many key terms still needed to be negotiated. Indeed, it

3

took nearly five months for the Parties to negotiate the final settlement terms and execute the Stipulation of Class Action Settlement and Release.

16.    Attached hereto as **Exhibit A** is a true and correct copy of the executed Stipulation of Class Action Settlement and Release ("Settlement" or "Settlement Agreement"). The Settlement Agreement has the following exhibits:

> **Exhibit 1**: Claim Form
>
> **Exhibit 2**: Final Judgment
>
> **Exhibit 3**: Form of Final Judgment
>
> **Exhibit 4**: Form of Long Form Class Notice
>
> **Exhibit 5**: Form of Preliminary Approval Order
>
> **Exhibit 6**: Form of Short Form Notice
>
> **Exhibit 7**: List of Fat PS3 model numbers
>
> **Exhibit 8**: General Release

## THE NOTICE PROGRAM

17.    While working on and negotiating the written terms of the Settlement Agreement, the Parties also interviewed and considered notice programs proposed by five settlement administrators who are experts in the field of class notice and settlement administration and have been regularly appointed by the courts as settlement administrators. The Parties jointly selected Garden City Group, LLC ("GCG") as the Settlement Administrator.

18.    Plaintiffs consulted with GCG to devise an intensive and best-notice-practicable notice program to include individual notice via electronic mail; a strong Internet and print publication component to reach Class Members nationwide; a settlement website; and plans to disseminate a press release regarding the settlement.  Attached hereto as **Exhibit B** is a true and correct copy of the Declaration of Stephen Cirami Regarding Notice & Settlement Administration, which describes the notice program in detail.

RIVAS DECL. ISO PLAINTIFFS' MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT
CASE NO. 4:10-CV-01811-YGR

## **INTERIM COUNSEL'S SUPPORT FOR THE SETTLEMENT**

19.     Attached hereto as **Exhibits C-E** are my firm's resume and the firm resumes of Hausfeld LLP and Calvo Fisher & Jacob LLP.

20.     Given the extensive motion practice on Defendant's Rule 12(b)(6) motion, the briefing on the settlement statements, and discovery, I believe the Parties were able to articulate the strengths of their claims and defenses and the weaknesses of each other's positions, ultimately reaching the proposed settlement embodied in the Settlement Agreement, and after weighing the facts and the applicable law and the risks of continued litigation, including the possibility of not achieving class certification and a loss at trial

21.     My co-counsel and I believe the Settlement is fair, reasonable and adequate and should be granted preliminary approval, especially when one considers the attendant expenses, risks, delays, and uncertainties of litigation, trial and post-trial proceedings. Additionally, the named Plaintiffs support the Settlement.

## **PLAINTIFFS' EFFORTS IN THE LITIGATION**

22.     Each of the Plaintiffs has participated extensively in this litigation. Among other things, the Plaintiffs had to consult with counsel about their experiences; the complaints filed in the matter; discovery; and to prepare for their depositions. They also produced their PS3 for imaging and examination by SCEA and appeared for depositions. They also discussed the terms of the Settlement with their counsel and executed the Settlement Agreement.

24.     For their efforts, Interim Co-Lead Counsel believe each plaintiff should receive a service award of $3500, which Defendant has agreed to pay subject to the Court's approval.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 17th day of June 2016, at San Francisco, California.

 */s/ Rosemary M. Rivas*
Rosemary M. Rivas

5

# EXHIBIT A

## STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

IT IS HEREBY STIPULATED AND AGREED, by and between Anthony Ventura, Jason Baker, James Girardi, Derrick Alba and Jonathan Huber (collectively, **"Class Representatives"**), individually and on behalf of the class they seek to represent (defined below as **"Class Members"**), on the one hand, and Sony Computer Entertainment America LLC, currently known as Sony Interactive Entertainment America LLC ( referred to herein as **"SCEA"**), on the other hand, through their duly-authorized counsel, that the proceedings in the United States District Court for the Northern District of California captioned *In re Sony PS3 Other "OS" Litigation*, Case No. C-10-1811 (YGR), including but not limited to the complaints referenced in Section II, paragraphs 50-52 and 55, below (collectively the **"Action"**) is settled, fully and finally, on the terms and conditions set forth in this **Agreement** and the exhibits hereto, subject to the occurrences set forth herein that permit **SCEA** or the **Class Representatives** to terminate this **Agreement**, and further subject to and expressly conditioned upon the approval of the **Court** and the entry of **Final Judgment**.

## I.    INTRODUCTION

A.    **SCEA** expressly denies any wrongdoing and does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been alleged against it in the **Action**. Nevertheless, **SCEA** considers it desirable to resolve the **Action** on the terms stated herein in order to avoid further expense, inconvenience, and interference with its business operations and to dispose of burdensome litigation. Therefore, **SCEA** has determined that the settlement of the **Action** on the terms set forth herein is in its best interests.

B.    This **Agreement** reflects a compromise between the **Parties** and shall in no event be construed as or deemed an admission or concession by any **Party** of the truth of any of the pleadings in the **Action** or of any fault on the part of **SCEA** and all such allegations or the validity of any purported claim or defense asserted are expressly denied. Nothing in this

**Agreement** shall constitute an admission of liability or may be used as evidence of liability by or against any **Party** hereto.

  **C.**  **Class Counsel** and **Class Representatives** believed that their claims were valid and were likely to prevail. Nevertheless, based upon their review, investigation, and evaluation of the facts and law relating to the matters alleged in the **Action**, **Class Representatives** and **Class Counsel**, on behalf of the putative **Class**, have agreed to settle the **Action** pursuant to the provisions of this **Agreement**, after considering, among other things: (1) the substantial benefits to the **Class** under the terms of this **Agreement**; (2) the risks, costs, and uncertainty of protracted litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (3) the desirability of consummating this **Agreement** promptly in order to provide expeditious and effective relief to the **Class**.

  **D.**  The **Parties** have therefore agreed to a settlement in which **SCEA** will pay claims that are validly submitted by **Class Members**. **SCEA** will separately pay the reasonable **Costs of Administration, Class Counsel's Fee and Expense Award,** and **Class Representatives' Service Awards**.

  **E.**  This **Settlement** was reached over the course of more than six months of arm's-length settlement negotiations among and between **Class Counsel, Class Representatives, SCEA,** and **SCEA's Counsel,** including a full day mediation session that was held on August 20, 2015 before Justice Howard W. Wiener that did not result in an agreement. After extensive continued negotiations, the **Parties** executed a Memorandum of Understanding For Settlement Agreement and Mutual Release ("MOU") on January 28, 2016 and then engaged in continued negotiations concerning the specific terms of the definitive settlement reflected in this **Agreement.**

## II. DEFINITIONS AND CONVENTIONS

### A. DEFINITIONS

  As used in this Agreement, capitalized bolded terms have the following meaning, unless specifically provided otherwise:

1.      **"Action"** means the putative class action complaint, including all individually filed, consolidated, coordinated and amended complaints filed in: *In re Sony PS3 Other "OS" Litigation*, Case No. C-10-1811 (YGR), currently pending in the Northern District of California, Oakland Division, before the Honorable Yvonne Gonzalez Rogers.

2.      **"Administration Cost"** or **"Administrative Costs"** means the reasonable, actual and direct costs charged by the **Settlement Administrator** for its services and includes the costs of **Class Notice**, implementing the **Claim Process** and carrying out any other responsibility consistent with the terms of this **Agreement**. **Administration Costs** do not include other fees, costs or expenses, including **Attorneys' Fees and Costs, Court** costs or **Service Awards**.

3.      **"Administrator"** or **"Settlement Administrator"** means the third-party agent or administrator retained by **SCEA** to administer the **Settlement**, including providing **Class Notice** to the **Class Members**, processing and evaluating **Claims** and other documents and performing other tasks that are provided for in this **Agreement**, otherwise agreed to by the **Parties** and **Administrator**, or ordered by the **Court**.

4.      **"Agreement"** means the terms and conditions of this document entitled "Stipulation of Class Action Settlement and Release."

5.      **"Attorneys' Fees and Costs"** means such funds as may be awarded by the **Court** to **Class Counsel** to compensate all Counsel in the **Action** for their fees and expenses incurred in connection with the **Action** and the **Settlement**, not to exceed Two Million Two Hundred and Fifty Thousand Dollars ($2,250,000).

6.      **"Claim"** means the claim of a **Class Member** or his or her legal representative submitted in compliance with the procedure provided in this **Agreement** as described in Section V.

7.      **"Claimant"** means a **Class Member** or his or her legal representative who submits a **Claim**.

8.      **"Claim Deadline"** means forty five (45) days following the **Notice Date**, unless a different date is ordered by the **Court**.

9.      **"Claim Form"** means the document by which **Class Members** may submit a

**Claim**, substantially in the form attached hereto as **Exhibit 1**.

10.     **"Claim Process"** means the process for submitting and reviewing **Claims** as

described in Section V of this **Agreement**.

11.     **"Class Counsel"** refers collectively to the law firms listed below who were

appointed as Interim Co-Lead Counsel on June 30, 2010 and seek to be appointed as **Class**

**Counsel**:

> James J. Pizzirusso
> Hausfeld LLP
> 1700 K St., NW, Ste 650
> Washington, DC 20006
> 202-540-7200
> Fax: 202-540-7201
> Email: jpizzirusso@hausfeldllp.com
>
> Rosemary M. Rivas
> Finkelstein Thompson LLP
> One California Street, Suite 900
> San Francisco, CA 94111
> 415-398-8700
> Fax: 415-398-8704
> Email: rrivas@finkelsteinthompson.com
>
> Kathleen V. Fisher
> Calvo Fisher & Jacob LLP
> 555 Montgomery Street
> Suite 1155
> San Francisco, CA 94111
> 415-374-8370
> Fax: 415-374-8373
> Email: kfisher@calvofisher.com

12.     **"Class"** or **"Class Member"** or **"Class Members"** means any and all persons in

the United States who purchased a **Fat PS3** in the United States between November 1, 2006 and

April 1, 2010 from an authorized retailer for family, personal, and/or household use. Excluded

from the **Class** are: (a) any persons who are employees, directors, officers, and agents of **SCEA**

or its subsidiaries and affiliated companies; (b) any persons who timely and properly exclude

themselves from this **Settlement**; and (c) the **Court,** the **Court's** immediate family, and **Court** staff.

13.     **"Class Notice"** means all types of notice that will be provided to the **Class Members** pursuant to Federal Rule of Civil Procedure 23(e), the **Preliminary Approval Order** and this **Agreement,** including email notice, publication notice, website notice, and any additional notice that may be ordered by the **Court**.

14.     **"Class Period"** means the time period between November 1, 2006 and April 1, 2010.

15.     **"Class Representatives"** or **"Plaintiffs"** means plaintiffs Anthony Ventura, Jason Baker, James Girardi, Derrick Alba and Jonathan Huber, collectively.

16.     **"Court"** means the United States District Court for the Northern District of California.

17.     **"Defendant"** means Sony Computer Entertainment America LLC, currently known as Sony Interactive Entertainment America LLC.

18.     **"Effective Date"** means the earliest of the following: (1) the date of entry of the **Final Approval Order** and **Final Judgment** if no objections are filed to the **Settlement** or if all objections are withdrawn prior to the **Court** ruling on them; or (2) thirty-one (31) calendar days after the entry of the **Final Approval Order** and **Final Judgment** if objections are filed and overruled and no appeal is taken from the **Final Approval Order** and/or **Final Judgment**; or (3) if a timely appeal is made, thirty-one (31) calendar days after the date any appeal is voluntarily dismissed; or (4) if a timely appeal is made and heard, thirty-one (31) calendar days of the final resolution of that appeal and any subsequent appeals or petitions for certiorari from the **Final Approval** and/or **Final Judgment.**

19.     **"Execution Date"** means the date upon which the last signature is placed on this **Agreement.**

20.     **"Fat PS3"** means the Sony PlayStation®3 computer entertainment console that was manufactured between approximately November 1, 2006 and September 2009 that included

00060419.DOCX - 1                                           5

the **Other OS** functionality. A list of **Fat PS3** model numbers is attached hereto as **Exhibit 7**.

21.    "**Fee And Expense Award**" means an award of attorneys' fees and the reimbursement of litigation costs and expenses authorized by the **Court** to be paid to **Class Counsel** for the services they provided in representing the **Class**. **SCEA** will not oppose an application for a **Fee and Expense Award** that does not exceed Two Million Two Hundred and Fifty Thousand Dollars ($2,250,000).

22.    "**Final Approval Hearing**" or "**Fairness Hearing**" means a hearing held before the **Court** during or following which the **Court** will: (1) make a final decision regarding whether to finally approve this **Agreement** as fair, reasonable and adequate; (2) determine the amount of any **Fee And Expense Award** and any **Service Award**; and (3) rule on the merit of any objections to this **Agreement**.

23.    "**Final Approval**" or "**Final Approval Order**" means an order issued by the **Court** finally approving this **Agreement** as binding upon the **Parties** and substantially in the form attached hereto as **Exhibit 2**.

24.    "**Final Judgment**" means the **Court's** order finally disposing of the **Action**, substantially in the form attached hereto as **Exhibit 3**.

25.    "**Firmware Update 3.21**" means the software update that **SCEA** issued in April 2010 which, among other things, disabled the **Other OS** functionality from the Sony PlayStation®3 upon installation.

26.    "**Long Form Class Notice**" means a notice substantially in the form of **Exhibit 4** attached hereto and approved by the **Court,** which the **Settlement Administrator** shall make available on the **Settlement Website** pursuant to the terms of this **Agreement**. The **Long Form Class Notice** will at a minimum contain the following:

            (i)     a concise statement of the background of the **Action,** the certification of the **Class** for settlement purposes, and the **Settlement;**

(ii)    a description of the nature and scope of the claims, causes of action, and facts compromised in the **Settlement** that will be subject to the release;

(iii)    a description of the relief provided by the **Settlement**;

(iv)    instructions to the **Class Members** on how to submit a claim or an exclusion request and of their right to object to the **Settlement**;

(v)    an explanation of the impact of the **Settlement** on participation in any existing and future litigation, arbitration, regulatory action, remediation, or other proceeding(s);

(vi)    a statement that any relief to the **Settlement Class** is contingent on the **Court's Final Approval**;

(vii)    a statement that **SCEA** will pay **Class Counsel's Fee and Expense Award** and that individual **Class Members** will not be responsible themselves for paying any attorneys' fees, costs, litigation expenses, administration expenses (unless they elect to retain their own attorney at their own expense), or **Service Awards** for the **Class Representatives**;

(viii)    the date, time, and place of the **Final Approval Hearing**, notice of **Class Members'** right to object to the **Settlement**, their right to appear in support of any timely and validly submitted objection, and their right to appear at the **Final Approval Hearing** as provided by this **Settlement** or ordered by the **Court** in the **Preliminary Approval Order**, on their own or through counsel of their own selection (at their own expense), and the procedures for doing so as further described below;

(ix)    advise that any **Final Judgment** entered in the **Action** will be binding on all **Class Members** who do not timely exclude themselves from the **Settlement**; and

(x)     inform the **Class Members** that they will be releasing all current and future claims against the **Released Parties** concerning or relating in any way to the **Released Claims.**

27.     **"Notice Date"** is the date by which the initial **Class Notice** shall be completed by the **Administrator** and shall be 45 days after **Preliminary Approval** unless a different date is order by the **Court.**

28.     **"Objection Deadline"** means forty-five (45) days following the **Notice Date** unless a different date is ordered by the **Court.**

29.     **"Opt-out Deadline"** or **"Exclusion Deadline"** means forty-five (45) days following the **Notice Date** unless a different date is ordered by the **Court.**

30.     **"Other OS"** means the alternative Operating System functionality that enabled a user to install Linux on a **Fat PS3.**

31.     **"Party"** or **"Parties"** means individually or collectively the **Class Representatives** and **SCEA** as defined herein.

32.     **"Payment Date"** is the date by which: (i) the **Settlement Administrator** will mail checks to **Valid Claimants**; and (ii) funds due to **Class Counsel** and **Class Representatives** will be paid by **SCEA**. The **Payment Date** is thirty days (30) after the **Effective Date.**

33.     **"Preliminary Approval"** or **"Preliminary Approval Order"** means an order entered by the **Court** preliminarily approving the terms and conditions of this **Agreement** and the **Settlement,** substantially in the form of **Exhibit 5** attached hereto.

34.     **"Publication Notice"** means display of the content of the **Short Form Notice** in online and print media pursuant to a notice plan to be agreed upon by the parties.

35.     **"Released Claims"** means all claims, demands, rights, and liabilities, whether known or unknown, and regardless of legal theory, that arise from the purchase of a **Fat PS3** and/or that relate to, are based on, concern or arise out of the allegations, facts or circumstances that were asserted or could have been asserted (whether individually or on a class-wide basis) in

00060419.DOCX - 1                                    8

the **Action**. **Released Claims** include, but are not limited to, claims arising under the common

laws and statutes of all fifty (50) states concerning: (a) whether **SCEA** falsely advertised or

marketed the **Fat PS3**'s Other OS functionality; (b) the disabling of the **Other OS** functionality

in the **Fat PS3**; (c) the issuance of Firmware Update 3.21; and/or (d) whether the System

Software License Agreement and/or PlayStation Network Terms of Service and User Agreement

enable **SCEA** to alter, remove or modify features and/or functions of the **Fat PS3**.

36.     **"Released Parties"** means **SCEA** and each of its current and former parents,

subsidiaries, divisions, and affiliated individuals and entities, successors, predecessors, assigns,

joint ventures, distributors, retailers, developers and/or licensees and each and all of their

respective officers, partners, directors, servants, agents, shareholders, members, managers,

principals, investment advisors, consultants, employees, representatives, attorneys, accountants,

lenders, underwriters and insurers.

37.     **"SCEA"** means Defendant Sony Computer Entertainment America LLC.,

currently known as Sony Interactive Entertainment America LLC.

38.     **"SCEA's Counsel"** means the following attorneys:

> Luanne Sacks
> Michele Floyd
> Michael Scott
> Sacks, Ricketts & Case, LLP
> 177 Post Street, Suite 650
> San Francisco, CA  94108

39.     **"Settlement"** means the terms and conditions set forth in this **Agreement**.

40.     **"Settlement Benefit"** means payments made to **Valid Claimants** pursuant to the

terms of this **Agreement**.

41.     **"Settlement Class"** means all **Class Members** except: (i) persons who properly

exclude themselves from the **Settlement**; (ii) any persons who are employees, directors, officers

or agents of **SCEA** or its subsidiaries and affiliated companies; or (iii) any judge, justice, judicial

officer, or judicial staff of the **Court** and the **Court's** immediate family members.

42.     **"Settlement Website"** means the website established by the **Settlement**

00060419.DOCX - 1                                    9

**Administrator** consistent with the entry of the **Preliminary Approval Order** to provide information regarding the Settlement, including information regarding submitting a **Claim** for **Settlement Benefits,** and requesting exclusion from or objecting to the **Settlement.**

43.     "**Short Form Notice**" means the summary form of notice of the **Settlement** that will be transmitted by email to **Class Members** and appear as the **Publication Notice.** The **Short Form Notice** shall be substantially in the form attached hereto as **Exhibit 6.**

44.     "**Consumer Class A**" means all persons in the United States who purchased a **Fat PS3** in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal and/or household use and who used the **Other OS** functionality after installation of a Linux operating system on their **Fat PS3.**

45.     "**Consumer Class B**" means all persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal, and/or household use.

46.     "**Valid Claimant(s)**" means all **Class Members** who have not excluded themselves from the **Settlement** and who the **Settlement Administrator** determines have submitted a timely and valid **Claim** for **Settlement Benefits** under **Consumer Class A** or **Consumer Class B.**

**B.     CONVENTIONS**

47.     All personal pronouns used in this Agreement, whether used in the masculine, feminine, or neuter gender, shall include all other genders and the singular shall include the plural and vice versa except where expressly provided to the contrary.

48.     All references herein to sections, paragraphs, and exhibits refer to sections, paragraphs, and exhibits of and to this Agreement, unless otherwise expressly stated in the reference.

49.     The headings and captions contained in this **Agreement** are inserted only as a matter of convenience and in no way define, limit, extend, or describe the scope of this **Agreement** or the intent of any provision thereof.

## III. THE LAWSUIT

50.     On April 27, 2010, Anthony Ventura filed a class action complaint in the Northern District of California, Case No. 10-cv-1811(RS), asserting causes of action for: (1) Breach of Contract; (2) Breach of the Covenant of Good Faith and Fair Dealing; (3) Unjust Enrichment; (4) violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §§17200 *et seq.*); and (5) violation of the California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1770 *et seq.*).

51.     Six more complaints alleging the same basic facts were subsequently filed as follows:

•     *Baker, et al. v. Sony Computer Entertainment America LLC*, Northern District of California Case No. 10-cv-1697 (April 30, 2010) for: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §§17200 *et seq.*); and (4) violation of the California Consumer's Legal Remedies Act (Cal. Civ. Code §§ 1770 *et seq.*).

•     *Densmore, et al.* v. *Sony Computer Entertainment America LLC*, Northern District of California Case No. 10-cv-1945 (April 30, 2010) for: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Trespass to Chattels; (4) Unjust Enrichment; (5) violation of the California Consumer's Legal Remedies Act (Cal. Civ. Code §§ 1770 *et seq.*); (6) violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030); (7) violation of the California False Advertising Act (Cal. Bus. & Prof. Code §§ 17500 *et seq.*); and (8) violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §§17200 *et seq.*).

•     *Wright, et al. v. Sony Computer Entertainment America LLC*, Northern District of California Case No. 10-cv-1975 (May 10, 2010) for: (1) violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §§17200 *et seq.*); (2) Breach of Contract; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing; (4)

Unjust Enrichment; (5) violation of the California Consumer's Legal Remedies Act (Cal. Civ. Code §§ 1770 *et seq.*); and (6) Equitable Relief.

• *Huber v. Sony Computer Entertainment America LLC*, Northern District of California Case No. 10-cv-2213 (May 21, 2010) for: (1) Breach of Express Warranty; (2) Breach of Implied Warranty of Merchantability; (3) violation of the California Consumer's Legal Remedies Act (Cal. Civ. Code §§ 1770(a)(5), (7) and (9)); (4) Conversion; (5) Violation of the Magnuson Moss Warranty Act (15 U.S.C. §§2301 *et seq.*); (6) violation of the California False Advertising Law (Bus. & Prof. Code §§ 17500 *et seq.*); and (7) violation of the California Unfair Competition Law (Bus. & Prof. Code § 17200 *et seq.*).

• *Harper, et al. v. Sony Computer Entertainment America, Inc.*, Case No. 10-cv-02197 (N. D. Cal. May 21, 2010) for: (1) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code. §1770, *et seq.* (2) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (3) violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500; (4) breach of Contract/Breach of Duty of Good Faith and Fair Dealing and (5) Unjust Enrichment.

• *Benavides v. Sony Computer Entertainment America, Inc. et al.*, Case No. 10-cv-02612 (N. D. Cal. June 14, 2010) for: (1) Breach of Contract; (2) violation of the California False Advertising Law, Cal. Bus. & Prof Code § 17500, *et seq.*; (3) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (4) Breach of Covenant of Good Faith and Fair Dealing; (5) Unjust Enrichment; (6) violation of California Consumer Legal Remedies Act, Cal. Civ. Code § 1770, *et seq.*

52.    On June 16, 2010, Judge Richard Seeborg issued an order finding that the seven cases were related and the plaintiffs filed an "Amended Consolidated Class Action Complaint" on July 30, 2010, captioned: *In re Sony PS3 "Other OS" Litigation*, United States District Court, Northern District of California, Case No. C-10-1811 (RS), alleging: (1) Breach of Express Warranty; (2) Breach of the Implied Warranty of Merchantability; (3) Breach of the Implied

Warranty of Fitness for a Particular Purpose; (4) Violation of the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1770(a)(5), (7), (9), (19)); (5) Violation of the Computer Fraud and Abuse Act (18 U.S.C. §§ 1030, *et seq*.); (6) Violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301); (7) Violation of Cal. Bus. & Prof. Code §§ 17500, *et seq*. (False Advertising); (8) Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*. (Unfair Competition); (9) Conversion; (10) Unjust Enrichment.

53.     In December 2010, a number of discovery disputes arose which culminated in the filing of a motion to compel by Plaintiffs (Docket No. 112), a motion for a protective order filed by Plaintiffs (Docket No. 111), and a motion to compel filed by SCEA (Docket No. 116). After full briefing, Magistrate Judge Chen granted in part, and denied in part, all of the discovery motions.

54.     On February 17, 2011, Judge Seeborg entered an order granting in part SCEA's motion to dismiss with leave to amend, and denied SCEA's motion to strike the class allegations in their entirety.

55.     On March 9, 2011, the plaintiffs filed a First Amended Class Action Complaint alleging: (1) Breach of Express Warranty; (2) Breach of Implied Warranty of Merchantability; (3) Breach of the Implied Warranty of Fitness for a Particular Purpose; (4) Violation of the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1770(a)(5), (7), (9), (19)); (5) Violation of the Computer Fraud and Abuse Act (18 U.S.C. §§ 1030, *et seq*.); (6) Violation of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301, *et seq*.); (7) Violation of Cal. Bus. & Prof. Code §§17500, *et seq*. (False Advertising); (8) Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*. (Unfair Competition); and (9) Unjust Enrichment.

56.     On July 7, 2011, the parties participated in a private mediation session that was unsuccessful before the Honorable James L. Warren (Ret.) of JAMS.

57.     On December 8, 2012, Judge Seeborg granted **SCEA's** motion to dismiss and dismissed the First Amended Class Action Complaint with prejudice.

58.     Plaintiffs appealed to the Ninth Circuit (Case No. 11-18066) and the Ninth Circuit issued an order affirming in part and vacating in part Judge Seeborg's order of dismissal.

59.     Consistent with the Ninth Circuit's Order, **Plaintiffs** filed a Second Amended Complaint, No. 4:10-cv-01811 (SC), on May 29, 2014 for: (1) violation of the California Consumers Legal Remedies Act (Cal. Civ. Code § 1770(a) (5), (7)); (2) violation of the California False Advertising Law (Bus. & Prof. Code § 17500 *et seq.*); and (3) violation of the California Unfair Competition Law (Bus. & Prof. Code § 17200 *et seq.*).  On remand, the case was reassigned to Judge Samuel J. Conti after Judge Seeborg recused himself.

60.     The **Parties** thereafter engaged in extensive discovery over the course of approximately ten (10) months.  Both **Parties** propounded extensive written discovery.  In response to **Plaintiffs'** Requests for Production of Documents, **SCEA** produced approximately 4,000 documents, comprised of approximately 26,000 pages and responded to interrogatories propounded by **Plaintiffs**.  **SCEA** deposed all five (5) **Plaintiffs,** and **Plaintiffs** deposed seven (7) **SCEA** witnesses, three of which were designated to testify on behalf of **SCEA** pursuant to Federal Rule of Civil Procedure 30(b)(6).  **Plaintiffs** also responded to Interrogatories propounded by **SCEA** and produced documents in response to its Requests for Production of Documents.  Plaintiffs also produced their PS3s for SCEA's inspection.

61.     On or about August 20, 2015, the **Parties** mediated the case before retired Judge Howard Weiner for a full day but were unable to reach an agreement.

62.     On November 3, 2015, the case was reassigned to Judge Yvonne Gonzalez Rogers upon Judge Conti's retirement.

63.     The **Parties** continued to negotiate and after approximately six months of extensive arm's length negotiations, the **Parties** signed the MOU on January 28, 2016.

64.     On February 12, 2016, the **Parties** notified the **Court** that they had signed the MOU and were proceeding to negotiate the details of the **Settlement** and draft a formal settlement agreement.

IV.    CONDITIONAL CLASS CERTIFICATION FOR SETTLEMENT PURPOSES
       ONLY

65.    The parties reached this **Agreement** before the **Plaintiffs** filed a motion for class certification. Accordingly, as part of this **Settlement**, the **Class Representatives** shall include a request for conditional certification as part of their Motion for **Preliminary Approval** that seeks certification of the **Class** and **Consumer Classes A and B** for settlement purposes.

66.    As a material part of this **Settlement**, **SCEA**, while reserving all defenses if this **Settlement Agreement** is not finally approved, hereby stipulates and consents, solely for purposes of and in consideration of the **Settlement**, to conditional certification of the above-referenced **Class** and **Consumer Classes** for settlement purposes only.  **SCEA**'s stipulation and consent to class certification is expressly conditioned upon the entry of a **Preliminary Approval Order**, a **Final Approval Order** and **Final Judgment**.  As part of its conditional stipulation, **SCEA** further consents to the appointment of **Class Counsel** to represent the Class and to the approval of **Plaintiffs** as suitable class representatives.

67.    The conditional certification of the **Class**, the appointment of the **Plaintiffs** as class representatives, and the appointment of class counsel shall be binding only with respect to this **Settlement** and this **Settlement Agreement**.  If the **Court** fails to enter a **Preliminary Approval Order** or a **Final Approval Order**, or if this **Settlement Agreement** and the **Settlement** proposed herein is terminated, canceled, or fails to become effective for any reason whatsoever, the class certification, to which the **Parties** have stipulated solely for the purposes of this **Settlement**, this **Settlement Agreement** and all of the provisions of any **Preliminary Approval Order** or any **Final Approval Order** shall be vacated by their own terms and the **Action** shall revert to its status as it existed prior to the date of this **Settlement Agreement** with respect to class certification, appointment of **Plaintiffs** as class representatives, and appointment of **Class Counsel**.  In that event, **SCEA** shall retain all rights it had immediately preceding the execution of this **Settlement Agreement** to object to the maintenance of the **Action** as a class action, the appointment of **Plaintiffs** as class representatives, and the appointment of **Class**

Counsel and, in that event, nothing in this **Settlement Agreement** or other papers or proceedings related to this **Settlement** shall be used as evidence or argument by any of the **Parties** concerning whether the **Action** may properly be maintained as a class action under applicable law, whether any of the **Plaintiffs** are adequate or typical class representatives, or whether **Class Counsel** is adequate class counsel.

## V.    CLASS RELIEF AND DISTRIBUTION OF SETTLEMENT BENEFITS

68.    Class Benefits.  In full, complete, and final settlement and satisfaction of the **Action** and all **Released Claims**, and subject to all of the terms, conditions, and provisions of this **Agreement**, including conditional certification as provided for in Section IV and **Preliminary Approval** and **Final Approval**, SCEA agrees to provide the following consideration to the **Class Members**:

A.    **Consumer Class A:**

1.    **SCEA** will pay $55 per valid **Claim** to each **Claimant** who satisfies the following requirements:

(a)    executes an attestation under oath that he or she purchased a **Fat PS3** in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal and/or household use and used the **Other OS** functionality after installing a Linux operating system on the **Fat PS3**; and

(b)    provides proof of purchase by submitting either:

(i) a receipt showing place and date of purchase or other documentation (such as a credit card statement) verifying place and date of purchase; **or**

(ii) the serial number of the **Fat PS3** that he or she purchased and the PlayStation Network Sign-In ID used for that console before April 1, 2010; and

(c)    submits documentary proof that he or she used the **Other OS** functionality before April 1, 2010.

2.    Acceptable proof of use of the **Other OS** functionality includes:

(a)    proof of purchase before April 1, 2010 of a version of

Linux that was compatible with and was installed on his or her **Fat PS3**;

(b)     proof of download before April 1, 2010 of a version of Linux that was compatible with and was installed on his or her **Fat PS3**;

(c)     a screenshot (or picture) showing Linux operating on his or her **Fat PS3**;

(d)     a screenshot (or picture) showing that a portion of his or her **Fat PS3** hard drive is still formatted for the **Other OS** with Linux installed;

(e)     proof of communication between the **Class Member** and **SCEA** or a third party dated prior to December 31, 2010 that discusses the **Class Member**'s use of the **Other OS** or discusses concerns with Update 3.21 due to the **Class Member**'s use of the **Other OS**, including but not limited to, copies of an email from or message board posting by the **Class Member** containing such discussion; or

(f)     any other documentary proof that he or she used the **Other OS** functionality before April 1, 2010 that the **Settlement Administrator** reasonably determines to be valid.

B.     **Consumer Class B:**

1.     **SCEA** will pay $9 per valid **Claim** to each **Claimant** who satisfies the following requirements:

(a)     executes an attestation under oath confirming the following:

(i)     that he or she purchased a **Fat PS3** in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal and/or household use; and

(ii) (a) that he or she knew about the **Other OS** functionality at the time of purchase, relied upon the **Other OS** functionality in making the purchase, and intended at the time of purchase to use the **Other OS** functionality; **or**

(ii) (b) that he or she lost value and/or desired functionality or was otherwise injured as a consequence of Firmware Update 3.21 issued on April 1, 2010; and

(iii)     that all information provided in support of the **Claim** is true and complete; and

(b)     can provide proof of purchase by submitting either:

(i)     a receipt showing place and date of purchase or other documentation (such as a credit card statement) verifying place and date of purchase; **or**

(ii)     the serial number of the **Fat PS3** he or she purchased and the PlayStation Network Sign-In ID used for that console before April 1, 2010.

69.     Each **Class Member** must submit a **Claim Form**, either by mail or electronically, to make a claim for compensation under **Consumer Class A** or **Consumer Class B**. The **Claim Form** shall be substantially in the form attached hereto as **Exhibit 1**.

70.     The **Settlement Administrator** shall submit to **SCEA** and to **Class Counsel** a weekly report of the **Claims** that are submitted using serial number and PlayStation Network Sign-In ID as proof of purchase so that **SCEA** can, in its sole discretion, verify the validity of the serial number and associated PlayStation Network Sign-In ID provided. SCEA will advise the Settlement Administrator and Class Counsel as soon as reasonably practicable of any invalid serial number/associated PlayStation Network Sign-In ID.

71.     Subject to paragraph 68, above, the **Settlement Administrator** will have discretion that it will exercise in good faith to determine the validity of all **Claims** in accordance with the requirements set forth above, including whether the requirements set forth in paragraph 68 have been satisfied for any particular **Claimant** and including whether any documentary proof provided adequately demonstrates the requisite use of the **Other OS** functionality before April 1, 2010. As set forth more fully in paragraph 81(G), below, the **Settlement Administrator** shall have discretion that it will exercise in good faith to reject fraudulent, incomplete, factually inaccurate or otherwise invalid **Claims**. If requested by the **Settlement Administrator**, **Class Counsel** and **SCEA's Counsel** shall provide the **Settlement Administrator** with agreed upon guidelines for accepting and rejecting claims.

72.     Distribution of Payments to the **Class**.   No later than ten (10) days after the **Claims Deadline**, the **Settlement Administrator**, using the information submitted by **Class Members**, shall create and provide to **Class Counsel** and **SCEA's Counsel** a complete and final

list of **Valid Claimants** that includes each member's name and payment amount. **SCEA's Counsel** and **Class Counsel** shall take appropriate steps to safeguard the list and shall not use it for any purpose other than the administration and implementation of this **Settlement Agreement**. **Class Counsel** agrees to return this list to the **Settlement Administrator** within sixty (60) days after the **Effective Date**.

73.     No later than 14 days after the **Effective Date**, **SCEA** shall provide to the **Settlement Administrator** funds sufficient to pay all **Claims** set forth on the list provided pursuant to paragraph 72, above.

74.     By the **Payment Date**, the **Settlement Administrator** shall mail checks via First Class U.S. Mail, proper postage prepaid, to the **Valid Claimants**. Payment checks to **Valid Claimants** shall be sent to the mailing address indicated in each **Valid Claimant's Claim Form**. Checks to **Valid Claimants** shall be valid for a period of one hundred and twenty (120) days from the date appearing on the payment check. For any payment check that is returned undeliverable with forwarding address information, the **Settlement Administrator** shall re-mail the check to the provided address. For any payment check that is returned undeliverable without forwarding address information, the **Settlement Administrator** shall make reasonable efforts to identify updated address information and re-mail the check to the extent an updated address is identified.

75.     If payment checks are returned undeliverable or have not been cashed one hundred and twenty (120) days after the date appearing on the payment check, the **Parties** agree that the **Settlement Administrator** shall void the check.

**VI.     CLASS NOTICE**

76.     The **Parties**, subject to **Court** approval, agree to the following **Class Notice** procedures which the **Parties** agree is the best notice practicable.

        A.     **Dissemination of the Short Form Notice.**

            (i)     Within fourteen (14) days of the **Preliminary Approval Order** or on such date otherwise ordered by the **Court**, **SCEA** shall provide the **Settlement**

**Administrator** with an electronic list or database that is reasonably calculated to include the email address(es) of all the **Class Members** known by **SCEA** through its PlayStation Network Database as of the date of **Preliminary Approval**. The class data shall not be provided to the **Class Representatives**, **Class Counsel** or anyone other than the **Settlement Administrator**.

(ii)     By no later than the **Notice Date**, the **Settlement Administrator** shall send the **Short Form Class Notice**, in the form approved by the **Court**, to **Class Members** via email, along with a link to the **Settlement Website**. The subject line for all emails covered by this paragraph shall be: "Important - Notice of Class Action Settlement Regarding PlayStation 3 'Other OS' Function."

(iii)    **Publication of Short Form Notice.** The **Settlement Administrator** shall cause the **Short Form Notice** to be published in the online publications set forth on **Exhibit 7.**

(iv)     The **Class Notice** program shall be sufficient to satisfy due process.

B.     **Dissemination of Long Form Notice.** By no later than the Notice Date, the Settlement Administrator shall post on the Settlement Website the Long Form Notice approved by the Court. Both the Short Form Notice and the Long Form Notice shall include the following information:

(i)     General Terms: The notices shall contain a plain, neutral, objective, and concise description of the nature of the **Action** and the proposed **Settlement**.

(ii)     Opt-Out Rights: The notices shall inform **Class Members** that they have the right to opt-out of the **Class** and the **Settlement** and shall provide the deadline and procedures for exercising this right.

(iii)     Objection to **Settlement**: The notices shall inform the **Class Members** of their right to object to the proposed **Settlement, Class Counsel**'s fee

application, and/or the requested **Service Awards** for **Plaintiffs** and of their right to appear at the **Fairness Hearing** and shall also provide the deadlines and procedures for exercising these rights.

(iv) Fees and Expenses: The notices shall inform **Class Members** about the potential amounts being sought by **Class Counsel** as **Attorneys' Fees and Expenses** and the amounts of the **Service Awards** being sought for the **Plaintiffs**.

(v) **Claim Form** for **Class Members**: The notices shall advise the **Class Members** that a **Claim Form** is available on the **Settlement Website** or may be obtained from the **Settlement Administrator** and that a **Claim Form** may be submitted online or emailed or mailed to the **Settlement Administrator**. The notices shall also inform **Class Members** that they must submit a timely and valid **Claim Form** to secure a cash payment. The notices shall also provide the deadline and procedures for submitting a **Claim Form**.

77. Follow-up Email. The **Settlement Administrator** shall provide one follow-up round of e-mail notice to those **Class Members** who have not submitted claims and for whom the **Settlement Administrator** did not receive a bounce-back in response to the first round of e-mail notice.

78. **Settlement Website**. The **Settlement Administrator** shall establish and maintain an Internet website, at a web address to be determined and approved by the Parties, where **Class Members** can obtain further information about the terms of the **Settlement**, their rights, important dates and deadlines, and related information. **Class Members** shall also be able to submit a **Claim Form** electronically via the **Settlement Website**. The **Settlement Website** shall include, in PDF format, the Second Amended Complaint, this **Agreement**, the Motion for Preliminary Approval, the **Preliminary Approval Order**, the **Class Notice**, any papers filed in support of final approval of the **Settlement**, **Class Counsel**'s application for attorneys' fees and costs (after it is filed), the **Final Approval Order** (after it is entered), and

other case documents as agreed upon by the **Parties** and/or required by the **Court** and shall be operational and live as of the date the Settlement Administrator begins emailing notice. The **Settlement Website** shall be optimized for mobile display. The **Settlement Administrator** shall maintain the **Settlement Website** as operational and shall not take it down until (200) days after the **Effective Date**. Within five (5) business days after the **Settlement Website** is taken down, the **Settlement Administrator** shall transfer ownership of the URL for the **Settlement Website** to **SCEA.**

79.     Instructions to **Class Members**. The **Settlement Website** will prominently contain instructions on how **Class Members** can make a **Claim** for **Settlement Benefits**, as well as instructions on how **Class Members** can request exclusion from the **Class** or file an objection.

80.     CAFA Notice. Within the time prescribed by 28 U.S.C. § 1715, the **Settlement Administrator** shall serve notice of this **Settlement** to appropriate state and federal officials pursuant to the Class Action Fairness Act ("CAFA"). The **Settlement Administrator** shall be responsible for drafting and preparing the CAFA notice in conformity with 28 U.S.C. § 1715, and for identifying the appropriate state and federal officials to be notified. **SCEA** agrees to pay the cost of CAFA notices.

**VII.    GENERAL SETTLEMENT ADMINISTRATION**

81.     In addition to disseminating the **Class Notice** as set forth above in paragraphs 72-75, the **Settlement Administrator** shall be responsible for the following:

        A.     Formatting and distributing (by email) the Short Form Notice approved by the Court;

        B.     Creating and maintaining a toll-free number that Class Members can call to request a copy of this Agreement, a Claim Form, or any other information concerning this Settlement or this Agreement;

        C.     Consulting with SCEA's Counsel and Class Counsel concerning any relevant issues, including (without limitation) distribution of the Class Notice and processing of Claims;

D.  Processing and recording all requests for exclusion;

E.  Receiving objections and providing them to Class Counsel and SCEA's Counsel in a timely manner;

F.  Processing and recording Class Members' Claims;

G.  Determining, in its sole discretion, exercised in good faith, the validity of all Claims in accordance with the requirement set forth in this Agreement. In the event that: (1) multiple Claims with the same serial number are submitted; (2) a serial number is submitted but the console with that serial number is not associated with the PlayStation Network Sign-In ID identified by the Claimant; (3) a serial number is submitted which raises reasonable suspicion concerning the legitimacy of the serial number or the Claim; or (4) more than one Claim is submitted from the same household, i.e. the same postal address, the Settlement Administrator shall request that the Claimant submit proof of purchase as defined in paragraph 68(A)(1)(b)(i) or may request other information as may be reasonably necessary to establish that the Claim is legitimate, including but not limited to date and location of purchase.  If adequate proof of purchase or other requested information is not provided to the Settlement Administrator, then the Claim(s) shall be deemed invalid.

H.  Within ten (10) days after the Claim Deadline, providing to SCEA and Class Counsel a list in writing of all individuals who have submitted Claims regardless of validity. The list shall include the following information, as available, for each Claimant with personally identifying information redacted, including serial number and PlayStation Network sign-in ID, from Class Counsel's list:

(i)  First and last name;

(ii)  Current mailing address;

(iii)  Current email address;

(iv)  Type of proof of purchase submitted;

(v)  PSN Network Sign-In ID, if submitted;

(vi)    The **Fat PS3** serial number, if submitted;

(vii)   The date and location of **Fat PS3** purchase, if submitted.

I.    Preparing, drafting, and serving the CAFA Notice; and

J.    Such other tasks as the Parties mutually agree or that the Court orders the Settlement Administrator to perform.

82.    **SCEA** agrees to pay to the **Settlement Administrator** all reasonable costs associated with the administration of this **Settlement**, distribution of **Class Notice** pursuant to this **Agreement**, and any other tasks assigned to the **Settlement Administrator** by this **Agreement**, by the **Parties'** mutual agreement in writing, or by the **Court**.

83.    Subject to Section XV [Confidentiality] of this **Agreement**, the **Parties** agree that within two hundred and ten (210) days after the **Effective Date**, the **Settlement Administrator** shall destroy any and all **Class Members'** personal identifying information that it has received from **SCEA** or otherwise in connection with the implementation and administration of this **Settlement**.

84.    Upon completion of the implementation and administration of the **Settlement**, the **Settlement Administrator** shall provide written certification of such completion to counsel for all **Parties**.

85.    The **Settlement Administrator** shall provide any information or declarations as requested by the **Parties** to assist with seeking **Preliminary Approval** and **Final Approval**, including an affidavit about the due process reach of the settlement notice, in support of Final Approval. The **Parties** each represent that he, she, or it will not have any financial interest in the **Settlement Administrator** ultimately appointed and otherwise will not have a relationship with the **Settlement Administrator** ultimately appointed that could create a conflict of interest.

86.    The **Parties** acknowledge and agree that the **Settlement Administrator** is not an agent of the **Class Representatives, Class Counsel, SCEA,** or **SCEA's Counsel** and that the **Settlement Administrator** is not authorized by this **Agreement** or otherwise to act on behalf of the **Class Representatives, Class Counsel, SCEA,** or **SCEA's Counsel.** The Settlement

Administrator is a neutral third-party whose appointment is subject to Court Approval.

87.     If a **Class Member** requests that the **Settlement Administrator** and/or its agent or employee refers him/her to **Class Counsel**, or if a **Class Member** requests advice beyond merely ministerial information regarding applicable deadlines or procedures for submitting claims pursuant to **Consumer Class A** or **Consumer Class B**, or other **Settlement** related questions for which the **Administrator** does not have an approved response, then the **Settlement Administrator** and/or its agent or employee shall promptly refer the inquiry to **Class Counsel**.

## VIII.   REQUESTS FOR EXCLUSION

88.     Any **Class Member** or person legally entitled to act on his or her behalf who wishes to be excluded from the **Class** must email or mail a written request for exclusion to the **Settlement Administrator** at the email address or mailing address provided in the **Class Notice**, postmarked no later than the **Opt-out Deadline** and specifying that he or she wants to be excluded from the **Class**. Such written request for exclusion: (i) must contain the name and address of the person to be excluded; (ii) if applicable, must contain the name and address of any person claiming to be legally entitled to submit an exclusion request on behalf of the **Class Member** and the basis for such legal entitlement; (iii) must be mailed by First Class U.S. Mail, proper postage prepaid, to the **Settlement Administrator** at the specified mailing address; (iv) must be submitted or postmarked on or before the **Opt-out Deadline**; (v) must include the serial number of the Fat PS3 that he or she purchased and the PlayStation Network Sign-In ID used for that console before April 1, 2010; and (vi) must be personally signed and clearly indicate that he/she wants to be excluded from the **Class**. So-called "mass" or "class" opt-outs shall not be allowed.

89.     Any **Class Member** who does not submit a timely and valid written request for exclusion as provided in paragraph 88 shall be bound by all subsequent proceedings, orders, and judgments in the **Action**, including, but not limited to, the Release, even if he or she has litigation pending or subsequently initiates litigation against **SCEA** relating to the **Released Claims**.

90. Any **Class Member** who timely submits a request for exclusion as provided in paragraph 88 shall waive and forfeit any and all rights (s)he may have to benefits of the **Settlement** if it is approved and becomes final, including monetary relief, and shall waive and forfeit any and all rights to object to the fairness, reasonableness, or adequacy of the **Settlement**, **Class Counsel's** request for **Attorneys' Fees and Costs**, and/or the requested **Service Awards** to **Plaintiffs.**

91. Not later than ten (10) days after the **Opt-out Deadline**, the **Settlement Administrator** shall provide to **Class Counsel** and **SCEA's Counsel** a complete and final list of **Class Members** who submitted requests to exclude themselves from the **Class**.

## IX. OBJECTIONS TO SETTLEMENT

92. Any **Class Member** or person legally entitled to act on his or her behalf may object to the fairness, reasonableness, or adequacy of the **Settlement, Class Counsel's** request for **Attorneys' Fees and Costs**, and/or the requested **Service Awards** to **Class Representatives**. To be valid, any objection must be made in writing and mailed to the **Settlement Administrator** at the address provided in the **Class Notice**, postmarked no later than the **Objection Deadline**. In addition, any objection must include the following: (i) the name of this **Action**; (ii) the objector's full name, address, and telephone number; (iii) if applicable, the name and address of any person claiming to be legally entitled to object on behalf of a **Class Member** and the basis of such legal entitlement; (iv) all grounds for the objection; (v) the serial number of the Fat PS3 that he or she purchased and the PlayStation Network Sign-In ID used for that console before April 1, 2010; (vi) whether the objector is represented by counsel and, if so, the identity of such counsel, and all previous objections filed by the objector and their counsel within the last two years; and (vii) the objector's signature. Personal information, including serial number and PlayStation Network Sign-In ID, will be redacted before any objection is filed with the Court.

93. Not later than two (2) days after the **Objection Deadline**, the **Settlement Administrator** shall provide to **Class Counsel** and **SCEA's Counsel** all objections submitted by **Class Members.**

94.     Any **Class Member** who submits a timely written objection as described in paragraph 92 may appear at the **Fairness Hearing**, either in person or through personal counsel hired at the **Class Member**'s own personal expense and also may be subject to discovery, subject to **Court** approval.

95.     Any **Class Member** who fails to make a timely objection shall waive and forfeit any and all rights (s)he may have to object and shall be bound by all the terms of this **Settlement Agreement** and by all proceedings, orders, and judgments in the **Action** including the **Final Approval Order** and **Final Judgment**.

96.     Any **Class Member** who objects to the **Settlement** shall nevertheless be entitled to all benefits of the **Settlement** if it is approved and becomes final, including monetary relief, if (s)he is a **Valid Claimant**.

97.     Not later than twenty (20) days after the **Objection Deadline, Class Counsel** shall file with the **Court** any and all objections to the **Settlement Agreement** and/or to **Class Counsel's** Application for Attorneys' Fees and Expenses and Request for Service Awards.  All personally identifying information shall be redacted before objections are filed with the Court.

## X.     PRELIMINARY APPROVAL, FINAL APPROVAL AND JUDGMENT

98.     Proof of the extent and effectiveness of **Class Notice** shall be provided by the **Settlement Administrator** to the **Parties** no later than fifteen (15) days following the **Objection/Exclusion Deadline**.

99.     On or before May 26, 2016, or any subsequent mutually agreed upon date, **Class Representatives** shall file with the **Court** a motion seeking **Preliminary Approval** of the **Settlement** and asking the **Court** to enter a **Preliminary Approval Order** substantially in the form attached as **Exhibit 5** to this **Settlement Agreement**.

100.    In connection with the motion for **Preliminary Approval**, the **Parties** shall ask the **Court** to set a date for the **Fairness Hearing** as soon as practicable, but in no event no earlier than thirty (30) days after the **Claim Deadline** and a date that ensures compliance with the requirements of 28 U.S.C. § 1715(d).

101.   In connection with the motion for Final Approval, the Parties shall ask that the Court enter the **Final Approval Order** and **Final Judgment** substantially in the form attached to this **Settlement Agreement** as **Exhibits 2** and **3**.

102.   After entry of the **Final Approval Order**, the **Parties** agree that the **Court** shall retain jurisdiction to enforce the terms of this **Settlement Agreement** and the **Final Approval Order** and the **Final Judgment**.

## XI.   CONDITIONS IMPACTING FINALITY OF SETTLEMENT

103.   If more than three percent (3%) of the **Class** exclude themselves from the **Settlement**, then **SCEA** shall have the option, in its sole discretion, to terminate and withdraw from the **Settlement** in its entirety; provided, however, that **SCEA** must notify **Class Counsel** and the **Court** in writing that it is exercising such option within fifteen (15) days after being notified in writing by the **Settlement Administrator** that the number of **Class Members** who have timely requested exclusion exceeds three percent (3%) of the total number of **Class Members**.

104.   The **Parties** expressly agree that in the event of any of the following conditions:

(a)   The **Court** does not conditionally certify the **Class** for settlement purposes;

(b)   The **Court** does not preliminarily approve the **Settlement**;

(c)   The **Court** does not finally approve the **Settlement**;

(d)   The **Court** does not enter the **Final Approval Order** and **Final Judgment**;

(e)   **SCEA** withdraws and cancels the **Settlement** pursuant to Paragraph 103; or

(f)   This **Settlement** does not become final for any reason, including on subsequent review by any appellate court(s) in the **Action**, the **Court** ultimately rejects, modifies, or denies approval of any portion of this **Settlement Agreement** that either **Plaintiffs** or **SCEA** reasonably determines is material, including, without limitation, the

terms of relief, the provisions relating to notice, the definition of the **Class,** and/or the scope and terms of the **Released Claims** and **Released Parties;** then **Plaintiffs** and **SCEA** each has the right to withdraw from and terminate this **Agreement.** Notwithstanding the foregoing, neither the denial of, an appeal of, a modification of, nor a reversal on appeal of any **Attorneys' Fees and Expenses Award** or any **Service Award** shall constitute grounds for cancellation or termination of this **Settlement Agreement.** If the Court indicates that the **Settlement** will not be approved unless changes are made, then the **Parties** will attempt in good faith to reach an agreement as to any such changes before exercising their option under this Section to withdraw from this **Agreement.**

105.    Method for Invoking Right to Terminate. Other than as provided in Paragraph 104 above, any **Party** exercising its right to terminate and withdraw must exercise this option as provided under paragraph 104 above by a signed writing served on the other **Party** no later than twenty-one (21) days after receiving notice of the event prompting the termination. The **Parties** may reasonably extend this 21 day period by written agreement if they are attempting in good faith to reach an agreement regarding changes proposed by the **Court** pursuant to paragraph 104, above.

106.    In the event that a terminating party exercises its option to withdraw from and terminate this **Settlement Agreement** pursuant to paragraph 104:

A.    This **Settlement Agreement** and the **Settlement** proposed herein shall be null and void and shall have no force or effect and neither **Party** to this **Settlement Agreement** shall be bound by any of its terms, except  as otherwise specifically provided for herein;

B.    The **Parties** will petition to have any stay orders that are entered pursuant to this **Settlement Agreement** lifted;

C.    This **Settlement Agreement** and all of its provisions, and all negotiations, statements, and proceedings relating to it, shall be without prejudice to the

rights of **SCEA**, **Plaintiffs**, or any **Class Member**, all of whom shall be restored to their respective positions as they existed immediately before the execution of this **Settlement Agreement**, except that the **Parties** shall cooperate in requesting that the **Court** set a new scheduling order such that neither **Party's** substantive or procedural rights is prejudiced by the attempted **Settlement**;

D.      The **Released Parties**, as defined herein, expressly and affirmatively reserve all defenses, arguments, and motions as to all claims that have been or might later be asserted in the **Action**, including, without limitation, **SCEA's** argument that the **Action** may not proceed on a class basis;

E.      **Plaintiffs** and all other **Class Members**, on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors, expressly and affirmatively reserve and do not waive any motions as to, and arguments in support of, all claims, causes of actions, or remedies that have been or might later be asserted in the **Action** including, without limitation, any argument concerning class certification, consumer fraud, and damages;

F.      This **Settlement Agreement**, the fact of its having been made, the negotiations leading to it, any informal discovery or action taken by a **Party** or **Class Member** pursuant to or in connection with this **Settlement Agreement**, or any documents or communications pertaining to this **Settlement Agreement** shall not be admissible or entered into evidence for any purpose whatsoever in the **Action** or in any other proceeding between the **Parties**, other than to enforce the terms of this **Settlement Agreement**; provided, however, that **SCEA** may rely on such evidence to defend itself in any other action not brought on behalf of the **Class** and relating to the subject matter of this **Action**

G.      All reasonable **Administrative Costs** incurred and approved but not yet paid will be paid by **SCEA**. **Plaintiffs**, **Class Counsel**, and **SCEA's Counsel** shall not be responsible for any of these costs or any other **Settlement**-related costs.

00060419.DOCX - 1                              30

## XII.    ATTORNEYS' FEES, EXPENSE AND SERVICE AWARDS

### A.    FEE AND EXPENSE AWARD

107.    **Class Counsel** intends to request that the **Court** award them a **Fee and Expense Award** but agree that, combined, the requested **Fee and Expense Award** shall not exceed Two Million Two Hundred and Fifty Thousand Dollars ($2,250,000). **Class Counsel** shall not be permitted to petition the **Court** for any additional payments for fees or expenses to be paid by **SCEA**. In no event will **Class Counsel's Fee and Expense Award** reduce any other benefit provided to the **Settlement Class** or the **Class Representatives**. If the **Court** for any reason enters a **Fee and Expense Award** that is in excess of the above amount, **Class Counsel** will nevertheless accept, in full satisfaction of the amounts awarded by the **Court**, payment by **SCEA** of Two Million Two Hundred and Fifty Thousand Dollars ($2,250,000).

108.    **SCEA** shall not object to **Class Counsel's** request for a **Fee and Expense Award** provided **Class Counsel's** request for a **Fee and Expense Award** does not collectively exceed Two Million Two Hundred and Fifty Thousand Dollars ($2,250,000).

109.    Any **Fee and Expense Award** approved by the **Court**, which does not exceed Two Million Two Hundred and Fifty Thousand Dollars ($2,250,000), shall be paid by **SCEA** via a wire transfer as directed by **Class Counsel** by the **Payment Date**. **SCEA** shall not be required to otherwise pay any portion of the attorneys' fees and expenses of **Class Counsel**, the **Class Representatives, Class Members,** or **Settlement Class Members**.

110.    Payment of the **Fee And Expense Award** to **Class Counsel** identified pursuant to paragraph 109, above, shall constitute full satisfaction by **SCEA** of any obligation to pay any amounts to any person, attorney, or law firm for attorneys' fees, expenses, or costs in the **Action** incurred by any attorney on behalf of the **Class Representatives,** the **Class Members,** or the **Settlement Class** and shall relieve **SCEA, SCEA's Counsel,** and the **Released Parties** of any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses, and/or costs to which any of them may claim to be entitled on behalf of the **Class Representatives,** the **Class Members,** and/or the **Settlement Class** for any **Released Claim**.

111.    Neither **Plaintiffs** nor the **Class** shall be responsible for any portion of **SCEA's** own legal fees, costs, and expenses incurred in the **Action**.

**B.      SERVICE AWARDS**

112.    **Class Counsel** intends to request that the **Court** approve a **Service Award** for each of the **Class Representatives** in an amount not to exceed Three Thousand Five Hundred Dollars ($3,500) each.  **SCEA** shall not object to **Class Counsel's** request, provided that the **Service Award** payable to the **Class Representatives** does not exceed Three Thousand Five Hundred Dollars ($3,500) for each of the **Class Representatives**.

113.    Any **Service Award** approved by the **Court** shall be paid by **SCEA** and delivered to **Class Counsel** on behalf of the **Class Representatives** by the **Payment Date**, provided each of the **Class Representatives** has executed the General Release substantially in the form attached hereto as **Exhibit 8**.

114.    Any **Service Award** paid to the **Class Representatives** shall be reported on an IRS Form 1099 (*i.e.*, as "Other Income") and provided to the **Class Representatives** and applicable governmental authorities

**XIII.  RELEASE**

115.    As of the **Effective Date**, the **Class Representatives** and the **Settlement Class,** on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors, hereby fully release and forever discharge the **Released Parties** and further expressly agree that they shall not now or thereafter institute, maintain, or assert against the **Released Parties**, either directly or indirectly, on their own behalf, or on behalf of any class or other person or entity, any action, regulatory action, arbitration, or court or other proceeding of any kind asserting causes of action, claims, damages, equitable, legal and administrative relief, interest, demands, rights or remedies, including, without limitation, claims for injunctive relief, declaratory relief, damages, mental anguish, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, disgorgement, or equitable relief against the **Released Parties**, whether based on federal, state, or local law, statute, ordinance,

regulation, the Constitution, contract, common law, or any other source that arise out of or in any way relate to the subject matter of the **Action** and/or the **Released Claims** and that were or could have been alleged in the **Action**.

116.    Unless otherwise specified in this **Agreement**, nothing in this release shall be deemed to alter any presently existing contractual rights or obligations that a current PlayStation Network account holder or **Released Party** may have against the other that arises out of current use of or access to the PlayStation Network.

117.    Solely with respect to any and all **Released Claims**, upon **Final Approval** and **Final Judgment**, the **Class Representatives** and the **Settlement Class** shall expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code and any and all provisions, rights, and benefits of any similar statute or law of California or of any other jurisdiction as to all known or unknown claims as against the **Released Parties**. Section 1542 provides:

> **A general release does not extend to claims which the creditor [in this case, the Class Member] does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor [in this case, the Released Parties].**

To the extent that California law or other similar federal or state law may apply, the **Class Representatives** and the **Settlement Class** hereby agree that the provisions of Section 1542 and all such similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived and relinquished by the **Class Representatives** and the **Settlement Class** in connection with this release of the **Released Claims**.

118.    The **Class Representatives** and the **Settlement Class** expressly agree that this release is, and may be raised as, a complete defense to and precludes any claim, action, or

proceeding encompassed by the release against the **Released Parties**. It is the intention of the **Class Representatives** in executing this release on behalf of themselves and the **Settlement Class** to fully, finally, and forever settle and release all matters and all claims relating to the **Released Claims** in every way.

119. Without limiting the foregoing, nothing in this **Agreement** shall release, preclude, or limit any claim or action by the **Parties** to enforce the terms of this **Agreement**.

## XIV.  NONDISPARAGEMENT

120. Each of the **Class Representatives** and **Class Counsel** agrees that he, she, or they will not disparage **SCEA** or any of the **Released Parties** in any manner potentially harmful to them or their business, business reputation, or personal reputation related to the **Released Claims**. This agreement not to disparage includes, but is not limited to, publishing disparaging statements (whether anonymously or for ascription) on the web, in blogs, in chat rooms, in emails, or in any other electronic means of transmitting information.

## XV.  CONFIDENTIALITY

121. **Plaintiffs** and **Class Counsel** agree that the terms of this **Agreement** will remain confidential until the Motion for **Preliminary Approval** is filed. **Plaintiffs** and **Class Counsel** further agree that they will not make any statements or comments, written or oral, about this **Settlement** or **Settlement Agreement** to any person other than to **Class Members** in any way other than as provided in this **Settlement Agreement**, the **Class Notice**, on the **Settlement Website**, or as otherwise agreed upon by **SCEA** in writing in each instance. Notwithstanding the terms of this provision, **Class Counsel** may display a link to the **Settlement Website** on their respective firms' websites and reference this **Settlement** as evidence of **Class Counsel's** professional qualifications in resumes, curriculum vitae, and motions for appointment as class counsel pursuant to Federal Rule of Civil Procedure 23 and similar state rules of procedure, but only to state that: (i) it was a nationwide consumer class; (ii) the general allegations involved in the **Action**; and (iii) the general terms of the **Settlement**.

122.    The **Parties** acknowledge that confidential documents produced in the course of the **Action**, whether in response to formal discovery or informally for purposes of mediation, are subject to a Stipulated Protective Order. The **Parties** agree to cooperate and to work with one another to protect any confidential materials produced in discovery in the **Action**, including but not limited to, promptly complying with all aspects of the Stipulated Protective Order regarding such information and stipulating that any confidential information submitted, whether in the past or in the future, to any court will be sealed.

## XVI.  MISCELLANEOUS

123.    The **Plaintiffs** and **Class Counsel** agree not to issue any press release, unless mutually agreed, at any time related to the Settlement, the lawsuit or any order preliminarily or finally approving the **Agreement**.

124.    The **Parties**, their successors and assigns, and their attorneys, agree to use reasonable efforts to cooperate with one another in seeking **Court** approval of this **Agreement** and to effectuate this **Agreement**.

125.    The **Parties** agree to cooperate in the settlement administration process and implementation of the **Settlement** and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration and implementation of the **Settlement**.

126.    Each signatory to this **Agreement** hereby warrants that he or she has the authority to execute this **Agreement** and thereby bind the respective Party. Each **Class Representative** warrants and represents that he is the sole and lawful owner of all rights, title, and interest in and to all of the **Released Claims** and that (s)he has not heretofore voluntarily, by operation of law or otherwise, sold, assigned, or transferred or purported to sell, assign, or transfer to any other person or entity any **Released Claims** or any part or portion thereof.

127.    **Plaintiffs** represent and certify that: (1) they have agreed to serve as representatives of the **Class**; (2) they are willing, able, and ready to perform all of the duties and obligations of representatives of the **Class**; (3) they have read the operative complaint or have had the contents of such pleadings described to them; (4) they are generally familiar with the

results of the fact-finding undertaken by **Class Counsel**; (5) they have read this **Agreement** or have received a detailed description of it from **Class Counsel** and they have agreed to its terms; (6) they have consulted with **Class Counsel** about the **Action** and this **Settlement Agreement** and the obligations imposed on them as representatives of the **Class**; and (7) they shall remain and serve as representatives of the **Class** until the terms of the **Agreement** are effectuated, this **Agreement** is terminated in accordance with its terms, or the **Court** at any time determines that said **Plaintiffs** cannot represent the **Class**.

128.    The terms of this **Agreement** shall inure to the benefit of, and be binding upon, the **Parties** and their respective heirs, legal representatives, executors, administrators, successors, and assigns upon the **Effective Date**.

129.    This **Agreement** and its attachments constitute the entire agreement of the **Parties** with respect to the matters discussed herein and supersede all prior or contemporaneous oral or written understandings, negotiations, agreements, statements, or promises. In executing this **Agreement**, the **Parties** acknowledge that they have not relied upon any oral or written understandings, negotiations, agreements, statements, or promises that are not set forth in this **Agreement**. The **Parties** also acknowledge and agree that each has been represented by its own counsel with respect to the negotiating and drafting of this **Settlement** and this **Agreement**.

130.    All exhibits to this **Agreement** are integrated herein and are to be considered terms of this **Agreement** as if fully set forth herein.

131.    This **Agreement** may not be amended or modified in any respect except by a written instrument duly executed by all of the **Parties** to this **Agreement** or their counsel. The **Parties** agree that nonmaterial amendments or modifications to this **Agreement** may be made in writing after **Preliminary Approval** without the need to seek the **Court**'s approval.

132.    Without further order of the **Court**, the **Parties** may agree in writing to reasonable extensions of time to carry out any of the provisions of this **Agreement** or the **Preliminary Approval Order**.

133. This **Agreement** may be executed in one or more counterparts, each of which shall be an original, and this **Agreement** is effective upon execution of at least one counterpart by each **Party** to this **Agreement**.

134. Nothing in this **Agreement** may be construed as, or may be used as, an admission by the **Class Representatives** that any of their claims are without merit.

135. Nothing in this **Agreement** may constitute, may be construed as, or may be used as an admission by **SCEA** of any fault, wrongdoing, or liability whatsoever or that class certification is appropriate. **SCEA** continues to deny all liability and all of the claims, contentions, and each and every allegation made by the **Class Representatives** in the **Action**.

136. The **Parties** expressly acknowledge and agree that this **Settlement Agreement** and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state. In no event shall this **Settlement Agreement**, any of its provisions, or any negotiations, statements, or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the **Action**, any other action, or in any judicial, administrative, regulatory, or other proceeding, except in a proceeding to enforce this **Settlement Agreement** or the rights of the **Parties** or their counsel. Without limiting the foregoing, neither this **Settlement Agreement** nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the **Released Parties**, **Plaintiffs**, the **Class**, or the **Settlement Class** or as a waiver by the **Released Parties**, **Plaintiffs**, or the **Class** of any applicable privileges, claims, or defenses.

137. Neither **Class Counsel** nor **SCEA's Counsel** intends anything contained herein to constitute legal advice regarding the tax consequences of any amount paid hereunder, nor shall it be relied upon as such.

00060419.DOCX - 1                                     37

138.     In the event of a conflict between this **Agreement** and any other document prepared pursuant to the **Settlement**, the terms of this will **Agreement** supersede and control.

139.     Any failure by any **Party** to insist upon the strict performance by any other **Party** of any provision of this **Agreement** shall not be deemed a waiver of any provision of this **Agreement** and such **Party**, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this **Agreement**.

140.     This **Agreement** has been, and shall be construed to have been, drafted by all the **Parties** to it and the **Parties** agree that any rule which construes ambiguities against the drafter shall have no force or effect.

141.     The Parties agree that this Agreement was drafted and executed in the State of California and that the laws of the State of California shall govern its enforcement without regard to its choice of law principles. The Parties further agree that any action relating to or arising out of this Agreement, including an action to enforce or void any of its terms or to rescind it in its entirety shall be venued in state or federal court, in the Northern District of California. All Parties consent to personal jurisdiction in courts within the Northern District of California.

## XVII.  LIST OF EXHIBITS

Exhibit 1 – Claim Form

Exhibit 2 – Form of Final Approval Order

Exhibit 3 – Form of Final Judgment

Exhibit 4 – Form of Long Form Class Notice

Exhibit 5 – Form of Preliminary Approval Order

Exhibit 6 – Form of Short Form Notice

Exhibit 7 – List of **Fat PS3** model numbers

Exhibit 8--General Release

DATED: _____

DATED: _____

DATED: _____

DATED: _____

DATED: _5/26/2016_

DATED: _____

_____
Anthony Ventura

_____
Jason Baker

_____
James Girardi

_____
Derrick Alba

_____
Jonathan Huber

Sony Interactive Entertainment America, LLC

By_____
Its_____

DATED: _____

_____
Anthony Ventura

DATED: _____

_____
Jason Baker

DATED: _____

_____
James Girardi

DATED: _05/24/2016_____

_____
Derrick Alba

DATED: _____

_____
Jonathan Huber

DATED: _____

Sony Interactive Entertainment America, LLC

By_____
Its_____

DATED: _5/25/2016_

_Anthony Ventura_
Anthony Ventura

DATED: _____

_____
Jason Baker

DATED: _____

_____
James Girardi

DATED: _____

_____
Derek Alba

DATED: _____

_____
Jonathan Huber

DATED: _____

Sony Interactive Entertainment America, LLC

By_____
Its_____

DATED: _____

Anthony Ventura
_____

DATED: _5/31/2016_

_____
Jason Baker

DATED: _____

_____
James Girardi

DATED: _____

_____
Derek Alba

DATED: _____

_____
Jonathan Huber

DATED: _____

Sony Interactive Entertainment America, LLC

By_____
Its_____

DATED: _____

_____
Anthony Ventura

DATED: _____

_____
Jason Baker

DATED: 5/24/16

_____
James Girardi

DATED: _____

_____
Derek Alba

DATED: _____

_____
Jonathan Huber

DATED: _____

Sony Interactive Entertainment America, LLC

By_____
Its_____

DATED: _____        _____
                                Anthony Ventura

DATED: _____        _____
                                Jason Baker

DATED: _____        _____
                                James Girardi

DATED: _____        _____
                                Derrick Alba

DATED: _____        _____
                                Jonathan Huber

DATED: 6/8/2016                 Sony Interactive Entertainment America LLC

                                By _____
                                Its   President and CEO

APPROVED AS TO FORM:

FINKELSTEIN THOMPSON LLP

By _____

    Rosemary M. Rivas (SBN 209147)
    rrivas@finkelsteinthompson.com
    FINKELSTEIN THOMPSON LLP
    505 Montgomery Street, Suite 300
    San Francisco, California 94111
    Telephone: (415) 398-8700
    Facsimile: (415) 398-8704

Interim Co-Lead Counsel for Plaintiffs

CALVO FISHER & JACOB LLP

By _____

    Kathleen V. Fisher (SBN 70838)
    kfisher@calvofisher.com
    CALVO FISHER & JACOB LLP
    555 Montgomery Street, Suite 1155
    San Francisco, California 94111
    Telephone: (415) 374-8370
    Facsimile: (415) 374-8373

Interim Co-Lead Counsel for Plaintiffs

HAUSFELD LLP

By _____

    James Pizzirusso (Pro Hac Vice)
    jpizzirusso@hausfeld.com
    HAUSFELD LLP
    1700 K. Street NW, Suite 650
    Washington, DC 20006
    Telephone: (202) 540-7200
    Facsimile: (202) 540-7201

Interim Co-Lead Counsel for Plaintiffs

SACKS, RICKETTS & CASE LLP

By _____

    Luanne Sacks (SBN 120811)
    lsacks@srclaw.com

APPROVED AS TO FORM:

FINKELSTEIN THOMPSON LLP


By_____
    Rosemary M. Rivas (SBN 209147)
    rrivas@finkelsteinthompson.com
    FINKELSTEIN THOMPSON LLP
    505 Montgomery Street, Suite 300
    San Francisco, California 94111
    Telephone: (415) 398-8700
    Facsimile: (415) 398-8704

Interim Co-Lead Counsel for Plaintiffs

CALVO FISHER & JACOB LLP

By_____
    Kathleen V. Fisher (SBN 70838)
    kfisher@calvofisher.com
    CALVO FISHER & JACOB LLP
    555 Montgomery Street, Suite 1155
    San Francisco, California 94111
    Telephone: (415) 374-8370
    Facsimile: (415) 374-8373

Interim Co-Lead Counsel for Plaintiffs

HAUSFELD LLP

By_____
    James Pizzirusso (Pro Hac Vice)
    jpizzirusso@hausfeld.com
    HAUSFELD LLP
    1700 K. Street NW, Suite 650
    Washington, DC 20006
    Telephone: (202) 540-7200
    Facsimile: (202) 540-7201

Interim Co-Lead Counsel for Plaintiffs

SACKS, RICKETTS & CASE LLP

By_____
    Luanne Sacks (SBN 120811)
    lsacks@srclaw.com

Michele Floyd (SBN 163031)
mfloyd@srclaw.com
SACKS, RICKETTS & CASE LLP
177 Post Street, Suite 650
San Francisco, CA 94108
Telephone: (415) 549-0580
Facsimile: (415) 549-0640

Attorneys for Defendant SONY COMPUTER
ENTERTAINMENT AMERICA LLC,
currently known as SONY INTERACTIVE
ENTERTAINMENT AMERICA LLC

# EXHIBIT 1

*CONSUMER CLAIM FORM*

*In re Sony PS3 "Other OS" Litigation*

**United States District Court, Northern District of California**

**Case No. 10-CV-01811-SC**

**DATED: _____, 2016**

**PLEASE BE AWARE THAT THE DEADLING FOR SUBMITTING CLAIMS IS _____, 2016. CLAIMS SUBMITTED AFTER THIS DATE WILL NOT BE ACCEPTED.**

**TO:** All persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal, and/or household use.

**PLEASE READ THIS ENTIRE CLAIM FORM CAREFULLY**

**TO BE ELIGIBLE TO RECEIVE A PAYMENT, YOUR COMPLETED CLAIM FORM MUST BE POSTMARKED, EMAILED OR SUMBITTED ONLINE ON OR BEFORE _____. CLAIMS SUBMITTED AFTER THIS DATE WILL NOT BE ACCEPTED.**

**ELIGIBILITY AND INSTRUCTIONS**

**IT IS IMPORTANT TO FOLLOW THESE INSTRUCTIONS CAREFULLY OR YOUR CLAIM MAY BE REJECTED.**

1.  If you purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010, you may be eligible to receive a payment if you submit a valid and complete Claim Form.

2.  The amount of the payment to which you are entitled depends on whether you submit a claim in Consumer Class A or Consumer Class B. You may submit one claim (in either Consumer Class A or Consumer Class B, but not both) per console as long as you submit the Required Documentation set forth below.

Consumer Class A is: All persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal and/or household use and who used the Other OS functionality after installation of a Linux operating system on their Fat PS3.

Consumer Class B is:  All persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal, and/or household use.

3.  If you are a member of Consumer Class A, you are eligible to receive a $55 payment if you submit the following documentation with your completed Claim Form:

**Consumer Class A:  Required Documentation**

(A)    Proof of Purchase.

> The following are acceptable forms of proof of purchase:
> (a)  A sales receipt, credit card statement or other documentation that shows the place and date of purchase; **OR**
> (b)  the serial number of the Fat PS3 you purchased (found on the back of the console) and the PlayStation Network Sign-In ID that you used with your Fat PS3 console between November 1, 2006 and April 1, 2010.

(B)    Proof that You Used The Other OS Functionality.

> The following are acceptable forms of proof of use:
>
> (a)  proof that you purchased a version of Linux that was compatible with and was installed on your Fat PS3 before April 1, 2010;
>
> (b)  proof that you downloaded a version of Linux that was compatible with and was installed on your Fat PS3 before April 1, 2010;
>
> (c)  a screenshot (or picture) showing Linux operating on your Fat PS3;
>
> (d)  a screenshot (or picture) showing that a portion of your PS3 hard drive is still formatted for the Other OS with Linux installed;
>
> (e)  proof of communication between you and SCEA or a third party dated before December 31, 2010 that discusses your use of the Other OS or concerns with Update 3.21 due to your use, including but not limited to, copies of an email from or message board posting by you containing such discussion; or
>
> (f)  any other documentary proof that you used the Other OS before April 1, 2010 that the Settlement Administrator reasonably determines to be valid.

(C)    Attestation under penalty of perjury.

To receive the $55 payment, you must attest on the Claim Form, under penalty of perjury, that you installed a Linux operating system on your Fat PS3 and used the Other OS functionality.

4. If you are a member of Consumer Class B (or a member of Consumer Class A who does not have proof that you used Other OS functionality), you are eligible to receive a $9 payment if you submit the following documentation with your completed Claim Form:

**Consumer Class B:  Required Documentation**

(A)     <u>Proof of Purchase</u>.

The following are acceptable forms of proof of purchase:

(a)  A sales receipt, credit card statement or other documentation that shows the place and date of purchase; **OR**

(b)  the serial number of the Fat PS3 you purchased (found on the back of your console) and the PlayStation Network Sign-In ID that you used with your Fat PS3 console between November 1, 2006 and April 1, 2010.

(B)     <u>Attestation under penalty of perjury</u>.

In order to receive the $9 payment, you must attest on the Claim Form, under penalty of perjury, that:

(a) You knew about the Other OS functionality, relied upon the Other OS functionality in making your decision to purchase a Fat PS3, and intended at the time of your purchase to use the Other OS functionality; or

(b)  You lost value and/or desired functionality or were otherwise injured as a consequence of Firmware Update 3.21, which was issued on April 1, 2010.

5.     **<u>Claim Forms that are incomplete will be considered invalid and will prevent you from receiving payment.</u>**

6.  If you need any help to determine whether you are eligible to submit a consumer claim, please contact the Settlement Administrator at 1-800-XXX-XXXX or by email at -------------@------

7.     If your purchase fits the definition of either Consumer Class A or Consumer Class B, complete the attached Claim Form or fill in the Claim Form online.  Include all required proof applicable to your claim with your Claim Form.  If you are submitting

your Claim Form electronically, then you will have to upload all required documentary proof applicable to your claim.

8.      The Claims Administrator has discretion that will be exercised in good faith to determine whether the proof you submit with your Claim Form to support your eligibility for a settlement payment is sufficient in accordance with the requirements of the Settlement.

9.      To receive a payment, you must include your current mailing address on the Claim Form.

10.      If you move after submitting your Claim Form, please send the Settlement Administrator your new address or contact the Settlement Administrator at the following toll-free number:_____.  It is your responsibility to keep a current address on file with the Settlement Administrator.

11.      The Settlement Administrator will use the email address that you provide on your Claim Form to communicate with you if communications are necessary.

**CLAIM FORM**

**Claimant Information**:

Name:

Street Address:

City:                                State:                    Zip Code

Daytime telephone:

Email address:

 PS3 Serial Number:

PSN Network ID:

If you are submitting this Claim Form on behalf of someone else, please explain why you have the right to do so.

_____

**Payment Information (check one)**

__  I am eligible for a $55 settlement payment and have attached (or uploaded):

     1.  Proof of purchase (receipt, credit card statement, other documentation showing the date and location of purchase or the PS3 Serial Number and PSN Network Sign-In ID); and
     2.  Proof that I used the Other OS functionality.

__  I am eligible for a $9 settlement payment and have attached (or uploaded):

     1.  Proof of purchase (receipt, credit card statement, other documentation showing the date and location of purchase or the PS3 Serial Number and PSN Network Sign-In ID).

The Claims Administrator may audit any and all claims.

**Attestation**

By signing below, you are signing under penalty of perjury.  Signing under penalty of perjury means that the information you have provided in the Claim Form is true.  It is a crime to submit a false Claim Form and sign under the penalty of perjury.

**Consumer Class A Claimants Only**:

I declare under the penalty of perjury that I purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal and/or household use and have submitted authentic proof of my purchase or the PS3 Serial Number and the PSN Network Sign-In ID used with my PS3 between November 1, 2006 and April 1, 2010.  I installed a Linux operating system on my Fat PS3 and I used the Other OS functionality.  I further declare that all of the information I have submitted in and with this Claim Form is true and correct.

Executed this __ day of _____ [month] 2016 at _____ [City and State].

Print name

**Consumer Class B Claimants Only**:

I declare under the penalty of perjury that I purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal and/or household use and have submitted authentic proof of my purchase or the PS3 Serial Number and the PSN Network Sign-In ID used with my PS3 between November 1, 2006 and April 1, 2010.  At the time of my purchase, either: (a) I knew about the Other OS functionality, relied upon the Other OS functionality in making my decision to purchase, and intended at the time of my purchase to use the Other OS functionality; or (b) I lost value and/or desired functionality or was otherwise injured as a consequence of Firmware Update 3.21, which was issued on April 1, 2010.   I further declare that all of the information I have submitted in and with this Claim Form is true and correct.

Executed this __ day of _____ [month] 2016 at _____ [City and State].

Print name

**Checklist**

Please make sure that you have:

1.      Signed the Certification above.
2.      Submitted your proof of purchase or the PS3 Serial Number and the PSN Network Sign-In ID used with your PS3 between November 1, 2006 and April 1, 2010, and, if you are a Class A claimant, the other required documents.
3.      Kept a copy of your completed Claim Form for your files.

4. E-filed, emailed or mailed your Claim Form before _____.

If submitting by mail, mail your Claim Form to:

  Other OS Settlement Administrator[address]

If submitting by e-mail, send your Claim Form to [email address]

**<u>BE SURE TO SIGN THIS FORM ABOVE AND SUBMIT IT TO THE
SETTLEMENT ADMINISTRATOR POSTMARKED OR SUBMITTED
ELECTRONICALLY NO LATER THAN [DATE].</u>**

# EXHIBIT 2

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN FRANCISCO DIVISION

11
12

Case No.  4:10-CV-01811-YGR

13

In re SONY PS3 "OTHER OS"
LITIGATION

**[PROPOSED] ORDER GRANTING FINAL
APPROVAL OF CLASS SETTLEMENT**

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This matter came before the **Court** for hearing pursuant to the following: (1) the Court's Order Granting Motion for Preliminary Approval dated _____**;** (2) **Plaintiffs'** Motion for a **Fee and Expense Award** and for **Service Awards** for the **Plaintiffs** dated _____; (3) Plaintiffs' Motion for Final Approval of Class Action Settlement dated _____; and (4) the **Stipulation of Class Action Settlement and Release** dated _____ (the "**Settlement**"), entered into by the **Parties** to settle and finally resolve the above captioned class action law suit (the "**Action**" or the "Class Action Lawsuit"). Due and adequate notice having been given to the **Class** of the proposed **Settlement** and the pending motions, as required by the **Court's** orders, and upon consideration of all papers filed and proceedings had herein, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1. Capitalized and bolded terms not otherwise defined herein shall have the same meaning as set forth in the Settlement.

2. The **Court** has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and has personal jurisdiction over the **Parties**. Venue is proper in this District.

3. The "**Class**," for purposes of this Order, shall mean:

> Any and all persons in the United States who purchased a **Fat PS3** in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal, and/or household use.

4. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the **Court** hereby certifies for settlement purposes only the **Class**, which it previously provisionally certified. Excluded from the **Class** are: (a) any persons who are employees, directors, officers, and agents of **SCEA** or its subsidiaries and affiliated companies; (b) any persons who timely and properly exclude themselves from the Settlement; and (c) the **Court**, the **Court's** immediate family, and **Court** staff.

5. The **Court** finds that the notice provisions set forth under the Class Action Fairness Act, 28 U.S.C. § 1715, were complied with in this Action.

6. The **Court** finds that the program for disseminating notice to the **Class** provided for in the **Settlement**, and previously approved and directed by the **Court** (the "**Notice Program**"), has been implemented by the **Settlement Administrator** and the **Parties**, and that

such **Notice Program**, including the approved forms of notice, constitutes the best notice practicable under the circumstances and fully satisfied due process, the requirements of Rule 23 of the Federal Rules of Civil Procedure and all other applicable laws.

7.      The **Court** reaffirms that this **Action** is properly maintained as a class action, for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(3), and 23(e), and that **Class Counsel** and the **Plaintiffs**, as **Class Representatives**, fairly and adequately represent the interests of the **Class**.  In support of its conclusion that this action is properly maintained as a class action, for settlement purposes, the **Court** finds as follows:

(a) the **Settlement Class** members are so numerous that joinder of all members is impracticable;

(b) there are questions of law and fact common to the **Settlement Class** members, and these questions predominate over any questions affecting individual **Settlement Class** members;

(c) the named **Class Representatives'** claims are typical of the claims of the **Settlement Class** members;

(d) the named **Class Representatives** and **Class Counsel** have adequately represented and will continue to adequately represent and protect the interests of the **Settlement Class**;

(e) class-wide treatment of the disputes raised in this action is superior to other available methods for adjudicating the controversy before this **Court**; and

(f) manageability issues do not prevent certification for settlement purposes because there will be no trial.

8.      The **Court** further finds that a full and fair opportunity has been afforded to the **Class Members** to opt out, to object and to participate in the hearing convened to determine whether the **Settlement** should be given final approval.  Accordingly, the **Court** hereby determines that all members of the **Settlement Class** are bound by this **Final Approval Order**.

9.      The **Court** finds that the **Settlement**, including the exhibits thereto, is fair, reasonable and adequate to the **Settlement Class**, is in the best interests of the **Settlement Class**, has been entered into in good faith and should be and hereby is fully and finally approved

pursuant to Federal Rule of Civil Procedure 23. The **Settlement** represents a fair resolution of all claims asserted on behalf of **Plaintiffs**, as **Class Representatives**, and the **Settlement Class** in this Action, and fully and finally resolves all such claims. **SCEA** and each member of the **Settlement Class** shall be bound by the **Settlement**, including the **Release** set forth in Section XIII of the **Settlement**, and by this Order and the **Final Judgment** entered in connection with this Order.

10. After considering (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement, the **Court** hereby finds that the **Settlement** is in all respects fair, reasonable, and adequate and in the best interests of the **Settlement Class**. In addition, the **Court** finds that there was no collusion in connection with the **Settlement**, that the **Settlement** was the product of informed and arm's-length negotiations among competent counsel, and that the record is sufficiently developed to have enabled the **Class Representatives** and SCEA to adequately evaluate and consider their respective positions. Accordingly, the **Court** hereby finally and unconditionally approves the **Settlement**.

11. **Class Counsel** are hereby awarded attorneys' fees in the amount of $_____, and reimbursement of their out-of-pocket litigation costs in the amount of $_____. **SCEA** shall pay such amounts to **Class Counsel** pursuant to the terms of the **Settlement**. The **Court** finds these amounts to be fair and reasonable and fairly compensates **Class Counsel** for their contributions to the prosecution of this **Action** and the **Settlement**.

12. The **Court** hereby awards service awards in the amount of $_____ each, to each of the **Plaintiffs** as **Class Representatives**, to compensate them for their commitments and efforts on behalf of the **Class** in this **Action**. **SCEA** shall pay such amounts to **Plaintiffs**, pursuant to the terms of the **Settlement Agreement**.

13. The **Parties** are to bear their own costs, except as awarded by this **Court** in this **Final Approval Order**.

14. In its Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action

Settlement and Certification of Settlement Class (Dkt. No. ___), the **Court** appointed and designated Garden City Group, LLC to act as the **Settlement Administrator** who shall continue to act as the **Settlement Administrator** to perform those duties and responsibilities that remain under the **Settlement** and this **Final Approval Order**.

15.    The **Parties** and **Settlement Administrator** are hereby directed to implement this **Final Approval Order** and the **Settlement** in accordance with the terms and provisions thereof, including the processing and payment of **Claims**.

16.    As of the **Effective Date**, the **Class Representatives** and the **Settlement Class**, on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors, shall be deemed to have, and by operation of this Order and the **Final Judgment** entered in connection with this Order shall have, fully released and forever discharged the **Released Parties** from all **Released Claims**, as more fully set forth in Section XIII of the **Settlement**, including that the **Class Representatives and the Settlement Class** shall fully release and forever discharge the **Released Parties** and further expressly agree that they shall not now or thereafter institute, maintain, or assert against the **Released Parties**, either directly or indirectly, on their own behalf, or on behalf of any class or other person or entity, any action, regulatory action, arbitration, or court or other proceeding of any kind asserting causes of action, claims, damages, equitable, legal and administrative relief, interest, demands, rights or remedies, including, without limitation, claims for injunctive relief, declaratory relief, damages, mental anguish, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, disgorgement, or equitable relief against the **Released Parties**, whether based on federal, state, or local law, statute, ordinance, regulation, the Constitution, contract, common law, or any other source that arise out of or in any way relate to the subject matter of the **Action** and/or the **Released Claims** and that were or could have been alleged in the **Action. Released Claims include, but are not limited to,** claims arising under the common laws of all fifty (50) states concerning: (a) whether **SCEA** falsely advertised or marketed the **Fat PS3's** Other OS functionality; (b) the disabling of the Other OS functionality in the **Fat PS3**; (c) the issuance of Firmware Update 3.21; and/or (d) whether the System Software License Agreement and/or PlayStation Network Terms of Service and User Agreement enable **SCEA** to

alter, remove or modify features and/or functions of the **Fat PS3**.

17.     As of the Final Settlement Date, **Plaintiffs** and, by operation of law, each member of the **Settlement Class** shall further be deemed to have waived and released any and all provisions, rights and benefits conferred by Section 1542 of the California Civil Code or similar laws of any other state or jurisdiction.

18.     The **Court** orders that, upon the **Effective Date**, the **Settlement** shall be the exclusive remedy for any and all **Released Claims** of the **Releasing Parties**.

19.     The **Court** hereby dismisses this **Action** with prejudice, and without fees or costs except as provided in the **Settlement Agreement** and this **Order**.  **Plaintiffs** and all members of the **Settlement Class** are hereby permanently barred and enjoined from commencing, pursuing, maintaining, enforcing or prosecuting, either directly or indirectly, any **Released Claims** in any judicial, administrative, arbitral or other forum, against any of the **Released Parties**, provided that this injunction shall not apply to the claims of any **Class Members** who have timely and validly requested to be excluded from the **Class**.  This permanent bar and injunction is necessary to protect and effectuate the **Settlement**, this **Order** and this **Court's** authority to effectuate the **Settlement**, and is ordered in aid of this **Court's** jurisdiction and to protect its judgments.

20.     The **Released Parties** may file this **Final Approval Order** in any other action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

21.     Nothing in this Order or in the **Final Judgment** entered in connection with this Order shall preclude any action to enforce the terms of the **Settlement**.

22.     Without affecting the finality of this Order in any way, the **Court** hereby retains continuing jurisdiction over: (a) all matters relating to the modification, interpretation, administration, implementation, effectuation and enforcement of the **Settlement**; (b) further proceedings, if necessary, on the motions for a **Fee and Expense Award** and **Service Awards** for **Plaintiffs**; and (c) the **Parties, Class Counsel** and members of the **Settlement Class** for the purpose of administering, supervising, construing and enforcing this Order and the **Settlement** in accordance with its terms.

- 5 -

23.     Neither this Order, the **Final Judgment** entered in connection with this Order, nor the **Settlement** (nor any other document referred to herein, nor any action taken to carry out this Order or the accompanying **Final Judgment**) shall be construed as or used as an admission or concession by or against **SCEA** or **Released Parties** of the validity of any claim or defense or any actual or potential fault, wrongdoing, or liability whatsoever.  The **Settlement** and this resulting **Final Approval Order** simply represent a compromise of disputed allegations.

24.     Without further order of the **Court**, the **Parties** may agree to reasonably necessary extensions of time to carry out any of the provisions of the **Settlement** and to make other non-material modifications, in implementing the **Settlement**, that are not inconsistent with this Order.

25.     The Clerk shall enter **Final Judgment**, consistent with this Order, forthwith.

26.     **Class Counsel** shall serve a copy of this **Final Approval Order** on all named parties or their counsel and the **Settlement Administrator** immediately upon receipt and the **Settlement Administrator** shall post a copy of this **Final Approval Order** on the **Settlement Website** immediately upon receipt.

IT IS SO ORDERED.

Dated: _____              _____
                                            YVONNE GONZALES ROGERS
                                            United States District Judge

# EXHIBIT 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re SONY PS3 "OTHER OS"
LITIGATION

Case No.  4:10-CV-01811-YGR

**[PROPOSED] FINAL JUDGMENT**

1    Pursuant to the Court's Final Approval Order ("Order") dated _____, the Court

2    hereby ORDERS that final judgment in this matter is entered in accordance with the Order and

3    the Settlement it incorporates.  The Court will have continuing jurisdiction over the Parties, the

4    Action, and the Settlement for purposes of enforcing the Settlement and resolving disputes under

5    the Settlement Agreement.  This document constitutes a judgment and a separate document for

6    purposes of Federal Rule of Civil Procedure 58(a).

     Only those persons listed in Exhibit A to this Final Judgment have submitted timely and

7    valid requests for exclusion from the Settlement Class and are therefore not bound by this Final

8    Judgment and the accompanying Final Approval Order.

9

10   **IT IS SO ORDERED.**

11

12   Dated:

13                                              _____
                                                Honorable Yvonne Gonzalez Rogers
14                                              United States District Court Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 4

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# IF YOU BOUGHT A PLAYSTATION® 3 CONSOLE BETWEEN NOVEMBER 1, 2006, AND APRIL 1, 2010, THIS CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS.

*A federal court authorized this notice.  This is not a solicitation from a lawyer and you aren't being sued.*

- A proposed Settlement has been reached in a class action lawsuit against Sony Computer Entertainment America LLC ("SCEA") challenging the issuance of a firmware update to disable the "Other OS" functionality from PlayStation® 3 "Fat" model computer entertainment consoles ("Fat PS3s"). The Other OS function enabled users to run Linux as an alternative operating system on Fat PS3s. SCEA denies that it did anything wrong. The Court has not decided who is right in the lawsuit.

- If you purchased a Fat PS3 in the United States between November 1, 2006, and April 1, 2010, from an authorized retailer for family, personal, and/or household use, you are a Class Member and may be eligible to submit a claim to receive a cash payment. Class Members who submit a claim with the required proof of purchase and proof of use of the Other OS feature are entitled to receive $55. Class Members who submit a claim with proof of purchase and attest that they intended to use the Other OS function, lost value or desired functionality, or believe they were otherwise injured are entitled to receive $9.

- Your legal rights are affected whether you act or do not act. Read this Notice and the information on this Settlement Website carefully. Your rights and options, and the deadlines to exercise them, are explained in this Notice.

- The Court will decide whether to approve the Settlement. Proposed payments to Class Members who do not exclude themselves from the Settlement will be made if the Court approves the Settlement. Please be patient and check this Settlement Website (www._____.com) to find out when the cash payments may be available.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM** | If you are a Class Member, you can submit a Claim Form online through this Settlement Website or by mail to the address provided below. The deadline to submit a Claim Form is [      ]. **See Questions 8-10 below for more details.** |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | You won't receive a cash payment from the Settlement. This is the only option that allows you to retain your right to bring another lawsuit against SCEA about the claims in this Lawsuit. The postmark or email deadline to exclude yourself is [     ]. **See Question 16 below for more details.** |
| **OBJECT TO THE SETTLEMENT** | Write to the Settlement Administrator if you don't like the Settlement. You may object to the Settlement and also submit a claim for payment under the Settlement. The postmark deadline to send an objection is [ ]. **See Questions 18-19 below for more details.** |

| | |
|---|---|
| **ATTEND THE HEARING** | The Court has set a hearing on [    ] at [   ] regarding the fairness of the Settlement. You may appear at the hearing, but you don't have to. You may hire your own attorney to appear for you. **See Questions 21-23 below for more details.** |
| **DO NOTHING** | If the settlement is approved and you do nothing, you will not receive a cash payment. You will be bound by the settlement terms and judgment and will not be able to later sue SCEA about the claims in this lawsuit. **See Question 15 below for more details.** |

## 1.      WHY DID I GET THIS NOTICE?

You received this Notice because you may have purchased a Fat PS3 from an authorized retailer between November 1, 2006, and April 1, 2010. This Notice explains the lawsuit, the settlement, your legal rights, what settlement benefits are available, who is eligible for them, and how to get them.

The Court authorized this Notice because you have a right to know about the proposed Settlement and all of your options before the Court decides whether to approve the Settlement. Cash payments will be provided if the Court approves the Settlement and all objections and appeals are resolved. You will be informed of the progress of the Settlement on this Settlement Website.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is known as *In re Sony PS3 "Other OS" Litigation*, U.S. District Court, N.D. Cal., Case No. C-10-1811 (YGR) (the "Lawsuit"). The consumers who sued are called "Plaintiffs" and/or "Class Representatives" and the company they sued, SCEA, is called the "Defendant."

## 2.      WHAT IS THIS LAWSUIT ABOUT?

The Lawsuit claims that disabling the Other OS functionality in Fat PS3s through a firmware update constituted an unfair and unlawful business practice and false advertising. The lawsuit seeks recovery of monetary damages to compensate Fat PS3 purchasers for the loss of the Other OS feature and functionality. The Second Amended Complaint filed in the lawsuit, which is available on this Settlement Website, contains all of the allegations and claims asserted against SCEA.

## 3.      HOW DOES SCEA RESPOND TO THE ALLEGATIONS?

SCEA expressly denies that it did anything wrong and does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been alleged against it in the Lawsuit.

## 4.      HAS THE COURT DECIDED WHO IS RIGHT?

No.  The Court has not decided which of the Parties, Plaintiffs or SCEA, is right.

## 5.      WHAT IS A CLASS ACTION AND WHO IS INVOLVED?

00059925.DOCX - 1

In a class action, the "Class Representatives" sue on behalf of themselves and other people who have similar claims (the Class Members). This lawsuit has five Class Representatives: Anthony Ventura, Jason Baker, Jonathan Huber, James Girardi, and Derek Alba. One court resolves the issues for all Class Members except those who exclude themselves from the Class. U.S. District Court Judge Yvonne Gonzales Rogers is in charge of this class action.

## 6.    WHY IS THERE A SETTLEMENT?

The Court hasn't decided in favor of either Plaintiffs or SCEA. Instead, both sides agreed to a Settlement. That way, they avoid the costs, uncertainty, and delay of further legal proceedings and the people affected will get the benefits of this Settlement. The Class Representatives and the attorneys appointed to represent the Class (called "Class Counsel") believe the Settlement is in the best interest of all Class Members.

## 7.    HOW DO I KNOW IF I AM PART OF THE SETTLEMENT?

To see if you will be part of the Settlement, you must decide whether you are a member of a Settlement Class.

This lawsuit has two classes.  You are a member of the Settlement Class if you belong to either:

- **Consumer Class A:**  You purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010, from an authorized retailer for family, personal, and/or household use and used the Other OS functionality after installation of a Linux operating system on your Fat PS3; or
- **Consumer Class B:** You purchased a Fat PS3 in the United States between November 1, 2006, and April 1, 2010, from an authorized retailer for family, personal, and/or household use.

IF YOU BOUGHT A FAT PS3 BETWEEN NOVEMBER 1, 2006 AND APRIL 1, 2010, BUT ARE UNSURE WHAT BENEFITS YOU ARE ELIGIBLE TO RECEIVE, WHETHER YOU ARE A MEMBER OF THE SETTLEMENT CLASS, OR WHAT YOUR OPTIONS ARE, YOU MAY CONTACT THE SETTLEMENT ADMINISTRATOR AT **[ phone/email    ]** OR YOU CAN REVIEW THE SETTLEMENT DOCUMENTS ON THIS SETTLEMENT WEBSITE (www._____.com).

## 8.    WHAT DOES THE SETTLEMENT PROVIDE?

The Settlement, if it is approved and becomes final, will provide cash payments, the amount of which depends on which class you are in. This Settlement Website explains who is eligible to receive a cash payment. In short, you are eligible for a cash payment if you are a member of either Consumer Class A or Consumer Class B and you can provide the following required information to the Settlement Administrator:

- **Consumer Class A:**  The settlement benefit for Consumer Class A is $55. In order to be eligible to for the $55 benefit, you must provide the following to the Settlement Administrator by the Claim Deadline:

    1.    A completed and signed Claim Form; and

00059925.DOCX - 1

QUESTIONS?  CALL 800-000-0000 TOLL FREE

3

2.    Proof of Purchase; and

3.    Proof that you used the Other OS functionality.

Acceptable proof of purchase is either a receipt, credit card statement or other documentation that shows the date and location of your purchase or the serial number of your Fat PS3 **and** the PlayStation Network Sign-In ID that you used with your Fat PS3 before April 1, 2010. The Claim Form provides a place to insert your serial number and PlayStation Network Sign-in ID.

Acceptable proof that you used the Other OS functionality includes the following: (a) proof of purchase before April 1, 2010 of a version of Linux that is compatible with and was installed on your Fat PS3; (b) proof that you downloaded a version of Linux that was compatible with and was installed on your Fat PS3 prior to April 1, 2010; (c) a screenshot (or picture) showing Linux operating on your Fat PS3; (d) a screenshot (or picture) showing that a portion of your Fat PS3 hard drive is still formatted for the Other OS with Linux installed; (e) proof that you communicated with SCEA or a third party before December 31, 2010, to discuss your use of the Other OS or your concerns about Update 3.21, for example, copies of an email from you or a message that you posted on a message board that discusses your use of the Other OS functionality or Linux on the Fat PS3; or (f) any other documentary proof you may have that shows that you used the Other OS functionality before April 1, 2010 that the Settlement Administrator determines to be valid.

If you are a member of Consumer Class A but don't have proof that you used the Other OS functionality, you may still submit a claim for Consumer Class B if you can satisfy the submission requirements for Consumer Class B.  You may not submit a claim for benefits for the same console pursuant to both Consumer Class A *and* Consumer Class B.

- **Consumer Class B:**  The settlement benefit for Consumer Class B is $9. In order to be eligible for the $9 award, you must provide the following to the Settlement Administrator by the Claim Deadline:

    1.    A completed and signed Claim Form; and

    2.    Proof of Purchase.

You will be required to attest under penalty of perjury on the Claim Form either:  (1) that you knew about the Other OS functionality when you purchased your Fat PS3, relied upon the Other OS functionality in making your purchase, and intended at the time of purchase to use the Other OS functionality; or (2) that you lost value and/or desired functionality and/or were otherwise injured by the disabling of the Other OS functionality through Firmware Update 3.21.

Acceptable proof of purchase is either a receipt, credit card statement or other documentation that shows the date and location of your purchase or the serial number of your Fat PS3 **and** the PlayStation Network Sign-In ID that you used with your Fat PS3 before April 1, 2010.

## 9.    HOW DO I GET A CASH PAYMENT?

If you are eligible to receive a benefit pursuant to either Consumer Class A or Consumer Class B, then you must submit a Claim Form to the Settlement Administrator in order to receive a cash payment. Electronic Claim Forms are available on this Settlement Website. You may also obtain a Claim Form by calling the Settlement Administrator at [phone]. The Claim Form will ask you to provide the proof of purchase and other information outlined in Question 8, above and will provide information on how to either upload or mail that information to the Settlement Administrator. Further information on submitting a Claim Form is provided in Question 10, below.

## 10.   HOW DO I SUBMIT A CLAIM FORM AND WHAT IS THE DEADLINE?

You have two options for submitting a Claim Form:

- Online:  You can submit a Claim Form online through this Settlement Website.

- By mail:  You can print and fill out the Claim Form that is on this Settlement Website or request that the Settlement Administrator mail you a Claim Form, and then mail your completed Claim Form (with postage) to:  [ADDRESS]

You must follow the instructions and provide all of the required information on the Claim Form. Your claim will be rejected if you fail to provide the proof of purchase and other required information outlined in paragraph 8, above, or if your Claim Form is otherwise incomplete.

**Online Claim Forms must be submitted by [DATE].  Claim Forms submitted by mail must be postmarked by [DATE].** If your online Claim Form is not submitted by [date] or your mailed Claim Form is not postmarked by [date], then your claim will be rejected.

## 11.   WHAT HAPPENS AFTER A CLAIM FORM IS SUBMITTED?

The Settlement Administrator will determine whether your Claim Form is complete and that the proof of purchase and other information that you submitted with your Claim Form is valid. The Settlement Administrator may contact you for additional information if: (1) multiple claims with the same serial number are submitted; (2) a serial number is submitted but the console with that serial number is not associated with the PlayStation Network ID identified by claimant; (3) a serial number is submitted that raises reasonable suspicion concerning the legitimacy of the serial number or the claim; or (4) more than one claim is submitted from the same household, i.e., the same postal address. The Settlement Administrator can ask you for proof of purchase if you submitted a serial number and PlayStation Network Sign-In ID with your Claim Form instead of proof of purchase. The Settlement Administrator can also ask you to provide the date and location of your Fat PS3 purchase or other information as may be reasonably necessary for the Settlement Administrator to establish that your claim is legitimate. Your claim will be rejected if you are contacted by the Settlement Administrator for additional information but you do not provide the information requested.

## 12.   CAN I SUBMIT MORE THAN ONE CLAIM?

Yes, you can submit one claim for each Fat PS3 that you purchased as long as you are a member of Consumer Class A or Consumer Class B as defined above in Question 8 of this Notice. Note, however, that if you have more than one console and submit multiple claims from the same household, the Settlement Administrator may ask you to provide additional information as set forth above in Question

11. Your claims will be rejected if you fail to submit any additional information that the Settlement Administrator requests.

## 13.     WHEN WILL I RECEIVE MY PAYMENT?

Judge Gonzales Rogers will hold a Final Approval Hearing on [DATE], to decide whether to approve the Settlement. If Judge Gonzales Rogers approves the Settlement and there are no appeals, the cash payments will be made approximately 40 days thereafter. However, it is possible there may be appeals related to the final approval, any attorneys' fees or costs awarded, or any incentive award to the Class Representatives. It is always uncertain whether and how these appeals will be resolved and resolving them may take time, perhaps more than a year. This website will be updated with current Settlement information including if final approval is entered and the date on which cash payments will be made. Please be patient.

## 14.     AM I GIVING UP ANY LEGAL RIGHTS BY STAYING IN THE CLASS?

Yes. Unless you exclude yourself from the class, you will agree to a "Release" of all of the claims described in Paragraphs 115-119 of the Settlement Agreement, which is available on this Settlement Website. This means that you will not be able to sue, continue to sue, or be part of any other lawsuit or arbitration against SCEA about the Released Claims, regardless of whether you submit a Claim Form for settlement benefits. It also means that the Court's orders will apply to you and legally bind you.

## 15.     WHAT HAPPENS IF I DO NOTHING?

If you do nothing and the Court finally approves this Settlement, you will be bound by the release of claims in this Settlement as described above even though you did not submit a Claim Form.

## 16.     HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?

To exclude yourself from the Settlement, you must send a written statement, either by mail or email, to the Settlement Administrator saying that you want to be excluded from the lawsuit entitled *In re Sony PS3 "Other OS" Litigation*. Your request must include:

- Your name and address;

- If applicable, the name and address of any person claiming to be legally entitled to submit an exclusion request on your behalf and the basis for such entitlement;

- Proof of Purchase or a Fat PS3 serial number and PSN Network Sign-In ID, if available; and

- A statement that you want to be excluded from the Class. You must personally sign your request for exclusion.

A sample request for exclusion letter is available on this Settlement Website.  **You cannot exclude yourself by phone.**

Your exclusion request must be emailed or postmarked on or before **[date].** Send your exclusion request to:

00059925.DOCX - 1

[SETTLEMENT ADMINISTRATOR]

Attn: In re Sony PS3 "Other OS" Litigation Class Action Exclusions
[ADDRESS]

[EMAIL ADDRESS]

## 17.   IF I DON'T EXCLUDE MYSELF, CAN I SUE FOR THE SAME THING LATER?

No. Unless you exclude yourself, you give up the right to sue any of the Released Parties, including SCEA, about the issues raised in the Lawsuit.

## 18.   HOW DO I OBJECT TO THE SETTLEMENT?

If you are a Class Member and don't exclude yourself, you can object to any part of the Settlement, the Settlement as a whole, Class Counsel's request for attorneys' fees and expenses, and/or the request for service awards for each of the Class Representatives. Any objection must be made in writing and include the following information:

- The name of this case, which is *In re Sony PS3 "Other OS" Litigation,* U.S. District Court, N.D. Cal., Case No. C-10-1811 (YGR);
- Your full name, address, and telephone number;
- Proof of Purchase of a PS3 or a PS3 Serial Number and PSN Network ID;
- If applicable, the name and address of any person claiming to be legally entitled to object on your behalf and the basis of such legal entitlement;
- All grounds for your objection;
- Whether you are represented by counsel and, if so, the identity of such counsel;
- Your signature (an attorney's signature is not sufficient).

To be considered, your objection must be mailed to the Settlement Administrator at: [ADDRESS], **postmarked no later than [DATE]**.

If you don't send a timely or complete objection, you will waive all objections to the Settlement and you won't be allowed to object to the Settlement at the Fairness Hearing or otherwise.

Even if you object to the Settlement, you will be eligible for cash payments as set forth above in Question 8 if you submit a valid claim, and you will still be bound by all terms of the proposed Settlement if it is finally approved by the Court.

## 19.   WHAT'S THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING?

You object to the Settlement when you wish to remain a Class Member and be subject to the Settlement, but disagree with some aspect of the Settlement. An objection allows your views to be heard in Court.

In contrast, excluding yourself from the proposed Settlement means that you are no longer part of the proposed Settlement and don't want the Settlement to apply to you even if the Court finally approves it. Once excluded from the proposed Settlement, you lose any right to receive a cash payment from the Settlement or to object to any aspect of the Settlement because the case no longer affects you.

00059925.DOCX - 1

## 20.   WHAT HAPPENS IF I DO NOTHING AT ALL?

If you do nothing and the Court grants final approval of the proposed Settlement, you will be included in the Settlement, will be bound by the release of claims in the Settlement Agreement and will be giving up your rights to be part of any other lawsuit or make any other claim against SCEA or other Released Parties about the issues raised in the Lawsuit (see Question 14). The Settlement Agreement, available on this Settlement Website, describes all of the claims you will release (give up).

## 21.   WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

The Court will hold the Fairness Hearing at __:__ a.m./p.m. on _____, 2016, at the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 1, 4th Floor, 1301 Clay Street, Oakland, CA 94612. The hearing may be moved to a different date or time without notice, so check for updates on this Settlement Website. At this hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. The Court will also consider Class Counsel's application for attorneys' fees and expenses and for service awards for the Class Representatives. If there are objections, the Court will consider them at the hearing. After the hearing, the Court will decide whether to approve the Settlement. We don't know how long the decision will take.

## 22.   DO I HAVE TO ATTEND THE HEARING?

No, you don't have to attend the Fairness Hearing. Class Counsel will answer any questions the Court may have. If you or your personal attorney would like to attend the Fairness Hearing, you are welcome to do so at your expense. If you send a written objection, you don't have to come to Court to talk about it. As long as you submit your written objection by **[date]**, to the proper address, and it complies with the requirements set forth in Question 18, above, the Court will consider it.

## 23.   MAY I SPEAK AT THE HEARING?

You may ask the Court for permission to speak at the Fairness Hearing. If you intend to speak at the Fairness Hearing, you may, but you are not required to, file with the Court and serve by First-Class mail on Class Counsel and SCEA's Counsel, a Notice of Intention to Appear. Your Notice of Intention to Appear should be filed and served by **[date]**. In addition to sending it to the Court, please send your Notice of Intent to Appear to the following:

| CLASS COUNSEL | SCEA, LLC |
|---|---|
| James Pizzirusso<br>Hausfeld LLP<br>1700 K St. NW. Ste. 650<br>Washington, D.C. 20006<br>(202) 540-7200<br>Fax:  (202) 540-7201<br>Email: jpizzirusso@hausefeldllp.com<br><br>Rosemary M. Rivas<br>Finkelstein Thompson LLP | Luanne Sacks<br>Michele Floyd<br>Michael Scott<br>Sacks, Ricketts & Case LLP<br>177 Post Street, Suite 650<br>San Francisco, CA 94108<br>Email: lsacks@srclaw.com<br>mfloyd@srclaw.com |

00059925.DOCX - 1

| One California Street, Suite 900<br>San Francisco, CA 94111<br>415-398-8700<br>Fax: 415-398-8704<br>Email: rrivas@finkelsteinthompson.com<br><br>Kathleen V. Fisher<br>Calvo Fisher & Jacob LLP<br>555 Montgomery Street<br>Suite 1155<br>San Francisco, CA 94111<br>415-374-8370<br>Fax: 415-374-8373<br>Email: kfisher@calvofisher.com | mscott@srclaw.com |
| --- | --- |

## 24.    DO I HAVE A LAWYER IN THE CASE?

The Class Representatives and the Class are represented by the lawyers and law firms listed in Question 23, above, under the heading "Class Counsel." The Court has appointed these lawyers to represent the Class in the Lawsuit and you will not be charged for their work on the case. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 25.    HOW WILL THE LAWYERS BE PAID?

Class Counsel have worked on this case since April 2010 to the present and have not been paid for their work to date. Class Counsel will ask the Court to approve payment of a maximum of $2,250,000 in attorneys' fees and expenses and SCEA has agreed not to object to Class Counsel's request provided it does not exceed $2,250,000 in total for attorneys' fees and expenses.

Class Counsel will also ask the Court to award to each of the five (5) Class Representatives a service award not to exceed $3,500. This service award is to compensate the Class Representatives for their respective commitment and effort on behalf of the Class Members in the Lawsuit. SCEA has agreed not to object to this request provided it does not exceed $3,500 for each of the five (5) Class Representatives.

SCEA will separately pay the attorneys' fees, expenses, and the service awards. These amounts will not in any way diminish the settlement benefits provided to the Class Members.

Class Counsel's application for attorneys' fees, expenses, and service awards will be available on this Settlement Website once when it is filed.

## 26.   HOW DO I GET MORE INFORMATION?

This notice summarizes the proposed Settlement. You can find more details in the Settlement Agreement. You can get a copy of the Settlement Agreement, read other key case documents, and get more information on this Settlement Website.   You can also call [TOLL-FREE NUMBER] for more information. **DO NOT CONTACT THE COURT, SCEA, OR SCEA'S COUNSEL.**

# EXHIBIT 5

Rosemary M. Rivas (SBN 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
1 California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

James Pizzirusso (*Pro Hac Vice*)
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1700 K. Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

Kathleen V. Fisher
kfisher@calvofisher.com
**CALVO FISHER & JACOB LLP**
555 Montgomery Street, Suite 1155
San Francisco, California 94111
Telephone: (415) 374-8370
Facsimile: (415) 374-8373

*Interim Co-Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re SONY PS3 "OTHER OS" LITIGATION | Case No.  4:10-CV-01811-YGR<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:<br>Time:<br>Location:<br>Judge: Hon. Yvonne Gonzalez Rogers |

This matter came before the Court on **Plaintiffs'** Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class.  The Parties have entered into a **Settlement Agreement** (the "**Settlement**") which, if approved, would resolve the above-captioned class action lawsuit (the "**Action**" or the "Class Action Lawsuit").  Upon review and consideration of the motion papers and the **Settlement** and all exhibits thereto, including the proposed forms of notice to the **Class** and the proposed **Claim Form**, the **Court** finds that there is sufficient basis for: (1) granting preliminary approval of the **Settlement**; (2) provisionally certifying the **Class** for settlement purposes only; (3) appointing **Class Counsel** and **Plaintiffs** to represent the **Class**; (4) approving the **Parties'** proposed notice program and forms of notice substantially similar to those forms attached to the **Settlement** and directing that notice be disseminated to the **Class** pursuant to the notice program provided in the **Settlement**; (5) approving the **Parties'** proposed **Claim Form** and approving the procedures set forth in the **Settlement** for **Class Members** to submit claims, exclude themselves from the **Class**, and object to the **Settlement**; (6) appointing a **Settlement Administrator** to conduct the duties assigned to that position in the **Settlement**; and (7) setting a hearing (the "**Fairness Hearing**") at which the **Court** will consider: (a) whether to grant final approval of the **Settlement**; (b) **Class Counsel's** application for attorneys' fees and costs; and (c) any request for service award for the **Plaintiffs**.

## IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      Capitalized and bolded terms not otherwise defined herein shall have the same meaning as set forth in the **Settlement**.

2.      The **Court** has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and has personal jurisdiction over the **Parties**.  Venue is proper in this District.

3.      This **Action** is provisionally certified as a class action for the purposes of settlement only pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e).  The **Class** is defined as follows:

> [A]ll persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal, and/or household use.

**Consumer Class A** is defined as follows:

> [A]ll persons in the United States who purchased a **Fat PS3** in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for

family, personal and/or household use and who used the **Other OS** functionality after installation of a Linux operating system on their **Fat PS3**.

**Consumer Class B** is defined as follows:

[A]ll persons in the United States who purchased a **Fat PS3** in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal, and/or household use.

Excluded from the **Class** are: (a) any persons who are employees, directors, officers, and agents of **SCEA** or its subsidiaries and affiliated companies; (b) any persons who timely and properly exclude themselves from this **Settlement**; and (c) the **Court**, the **Court's** immediate family, and **Court** staff.

4.      Certification of the **Class** shall be solely for settlement purposes and without prejudice to the **Parties** in the event the **Settlement** is not finally approved by this **Court** or otherwise does not take effect.

5.      In support of this **Preliminary Approval Order**, the **Court** conditionally and preliminarily finds that: (a) the **Class Members** are so numerous that joinder of all **Class Members** is impracticable; (b) there are questions of law and fact common to the **Class Members**, each of whom could have asserted the types of claims raised in the **Action**, and these questions predominate over any questions affecting individual **Class Members**; (c) the named **Class Representatives'** claims are typical of the claims of the **Class Members**; (d) the named **Class Representatives** and **Class Counsel** identified below are able to adequately represent the **Class Members**; and (e) class-wide treatment of the disputes raised in the **Action** is superior to other available methods for adjudicating the controversy.

6.      The **Court** preliminarily approves the proposed **Settlement** as fair, reasonable, and adequate, entered into in good faith, free of collusion, and within the range of possible judicial approval.

7.      The **Court** appoints the following as **Class Counsel**: James J. Pizzirusso of Hausfeld LLP, Rosemary M. Rivas of Finkelstein Thompson LLP, and Kathleen V. Fisher of Calvo Fisher & Jacob LLP.

8.      The **Court** appoints **Plaintiffs** Anthony Ventura, Jason Baker, James Girardi, Derek Alba, and Jonathan Huber as class representatives for the Class.

9.      The Court appoints Garden City Group, LLC to serve as the **Settlement Administrator** and directs it to carry out all duties and responsibilities of the **Settlement Administrator** specified in the **Settlement**.

10.     The **Court** approves the program for disseminating notice to the **Class** set forth in the **Settlement** (the "**Notice Program**").  The **Court** approves the form and content of the proposed forms of notice in the forms attached to the **Settlement Agreement** as Exhibits 4 and 6.  The **Court** finds that the proposed forms of notice are clear and readily understandable by **Class Members**.  The **Court** finds that the **Notice Program**, including the proposed forms of notice, constitutes the best notice practicable under the circumstances, constitutes valid, due, and sufficient notice to the **Class** in full compliance with the requirements of applicable law, including Federal Rule of Civil Procedure 23 and the Due Process Clause of the United States Constitution, and is the only notice to the **Class** of the **Settlement** that is required.

11.     The **Court** approves the form and content of the proposed **Claim Form**, in the form attached to the **Settlement** as Exhibit 1, and approves the procedures set forth in the **Settlement** for **Class Members** to submit **Claims**.

12.     Pursuant to the terms of the **Settlement**, to the extent SCEA has not already done so, within fourteen (14) days after entry of this Order, SCEA shall provide to the **Settlement Administrator** the Class Data for the **Settlement Administrator's** use in disseminating notice and processing **Claims**.  The Class Data shall include an electronic list or database that is reasonably calculated to include the email address(es) of all the **Class Members** known by SCEA through its PlayStation Network Database.

13.     The "**Notice Date**" shall be forty-five (45) days following the entry of this Order.

14.     By no later than the **Notice Date**, the **Settlement Administrator** shall send the **Short Form Notice**, substantially in the form attached to the **Settlement Agreement** as Exhibit 6 and in the form approved by the **Court**, to **Class Members** via email for those **Class Members** for whom an email address is available.  The subject line for all emails covered by this paragraph shall be: "Important - Notice of Class Action Settlement Regarding PlayStation 3 'Other OS' Function."

15.    The Settlement Administrator shall provide one follow-up round of e-mail notice to those Class Members who have not submitted claims and for whom the Settlement Administrator did not receive a bounce-back in response to the first round of email notice.

16.    By no later than the **Notice Date**, the **Settlement Administrator** shall post the **Long Form Notice**, in the form approved by the **Court**, on the **Settlement Website**.

17.    As soon as practicable following the entry of the **Preliminary Approval Order** and, in all events, by no later than the **Notice Date**, the **Settlement Administrator** shall cause the **Summary Notice** to be published in publication and media outlets as agreed upon by the **Parties**.

18.    The **Settlement Administrator** shall establish and maintain an Internet website ("**Settlement Website**") where **Class Members** can obtain further information about the terms of this **Settlement**, their rights, important dates and deadlines, and related information.  **Class Members** shall also be able to submit a **Claim Form** electronically via the **Settlement Website**. The **Settlement Website** shall include, in PDF format, the Second Amended Complaint ("SAC"), the **Settlement**, the Motion for Preliminary Approval, the **Preliminary Approval Order**, the **Class Notice**, any papers filed in support of final approval of the settlement, **Class Counsel's** application for attorneys' fees and costs (after it is filed), the **Final Approval Order** (after it is entered), and other case documents as agreed upon by the **Parties** and/or required by the **Court** and shall be operational and live as of the date the **Settlement Administrator** begins emailing notice.  The **Settlement Website** shall be optimized for display on mobile phones.  The **Settlement Administrator** shall maintain the **Settlement Website** as operational and shall not take it down until two hundred (200) days after the **Payment Date**.  Within five (5) business days after the **Settlement Website** is taken down, the **Settlement Administrator** shall transfer ownership of the URL for the **Settlement Website** to SCEA.

19.    The **Settlement Administrator** shall establish and maintain a toll-free telephone number ("**Toll-Free Number**") where **Class Members** can call to request a copy of the **Settlement Agreement**, a **Claim Form**, or any other information concerning this **Settlement** or the **Settlement Agreement**.  The **Toll-Free Number** shall be operational and live by no later than the date upon which the **Settlement Website** goes live.

20.     By no later than seven (7) days after the **Objection/Exclusion Date**, the **Settlement Administrator** shall file with the **Court** declaration(s) detailing the scope, methods, and status of the **Notice Program**.

21.     **Class Members** who wish to submit a **Claim** shall have the option of submitting **Claim Forms** online via the **Settlement Website** or by mail.  **Claim Forms** submitted online must be submitted by no later than the **Claims Deadline** (forty-five (45) days following the **Notice Date**).  **Claim Forms** submitted by mail must be postmarked no later than the **Claims Deadline**.

22.     Any **Class Member** who wishes to be excluded from the **Class** must email or mail a written request for exclusion to the **Settlement Administrator** at the address provided in the **Class Notice**, postmarked no later than the **Opt-Out Deadline** (forty-five (45) days following the **Notice Date**), and must include: (a) their full name and address and, if applicable, the name and address of any person claiming to be legally entitled to submit an exclusion request on behalf of the **Class Member** and the basis for such legal entitlement; (b) must be emailed to the email address provided in the Class Notice or mailed by First Class U.S. Mail, proper postage prepaid, to the **Settlement Administrator** at the specified mailing address as provided in the Class Notice; (c) must be submitted or postmarked on or before the **Opt-Out Deadline**; (d) the serial number of the Fat PS3 that he or she purchased and the PlayStation Network Sign-In ID used for that console before April 1, 2010; and (e) a statement that is personally signed and clearly indicates that he/she wants to be excluded from the **Class**.  So-called "mass" or "class" opt-outs shall not be allowed.

23.     If the **Settlement** is finally approved and becomes effective, any **Class Member** who does not send a timely and valid request for exclusion shall be a **Settlement Class Member** and shall be bound by all subsequent proceedings, orders, and judgments in the **Action**, including, but not limited to, the **Release**, even if he or she has litigation pending or subsequently initiates litigation against SCEA relating to the claims and transactions released in the **Action**.

24.     Any **Class Member** or person legally entitled to act on his or her behalf may object to the **Settlement**, to **Class Counsel's** request for attorneys' fees and expenses ("**Fee**

**Application**"), and/or to any request for service awards for the **Plaintiffs**.  To be considered, an objection must be made in writing, must be mailed to the **Settlement Administrator** at the address provided in the **Class Notice**, postmarked no later than the **Objection Deadline** (sixty (60) days following the **Notice Date**), and must include the following: (a) the name of the **Action** (*In re Sony PS3 Other "OS" Litigation*, No. C-10-1811 (YGR)); (b) the objector's full name, address, and telephone number; (c) if applicable, the name and address of any person claiming to be legally entitled to object on behalf of a **Class Member** and the basis of such legal entitlement; (d) all grounds for the objection; (e) the serial number of the **Fat PS3** that he or she purchased and the PlayStation Network Sign-In ID used for that console before April 1, 2010; (f) whether the objector is represented by counsel and, if so, the identity of such counsel, and all previous objections filed by the objector and their counsel within the last two years; and (g) the objector's signature.

25.     Any **Class Member** who submits a timely and valid written objection may appear at the **Fairness Hearing**, either in person or through personal counsel hired at the **Class Member's** own expense.  Any **Class Member** who does not submit a timely and valid objection shall be deemed to have waived all objections and shall forever be foreclosed from making any objection to the fairness, adequacy, or reasonableness of the **Settlement** and any **Final Approval Order** and **Final Judgment** entered approving it, Class Counsel's **Fee Application**, or any request for **Service Awards** for the **Plaintiffs**.

26.     The **Settlement Administrator** shall two (2) days after the **Objection Deadline** provide to **Class Counsel** and **SCEA's Counsel** copies of any objections, including any related correspondence.

27.     The **Settlement Administrator** shall no later than ten (10) days after the **Opt-Out or Exclusion Deadline** provide to **Class Counsel** and **SCEA's Counsel** copies of any requests for exclusion, including any related correspondence.

28.     **SCEA** shall pay to the **Settlement Administrator** all reasonable costs associated with the administration of the **Settlement**, distribution of **Class Notice**, and any other tasks assigned to the **Settlement Administrator** by the **Settlement**, this **Preliminary Approval Order**, by SCEA and the **Class Counsel's** mutual agreement in writing, or by this **Court**.

29.     The **Court** directs that the **Fairness Hearing** be scheduled for November 8, 2016 at 2:00 p.m. to assist the **Court** in determining whether the **Settlement** should be finally approved as fair, reasonable, and adequate to the **Settlement Class Members**; whether **Final Judgment** should be entered dismissing the **Action** with prejudice; whether **Class Counsel's Fee Application** should be approved; and whether any request for **Service Awards** for the **Plaintiffs** should be approved.

30.     The **Parties** shall file any motions in support of final approval of the **Settlement** by no later September 13, 2016.  **Class Counsel** shall file their **Fee Application** and any Request for Plaintiff **Service Awards** by no later than September 13, 2016.  After it is filed, **Class Counsel's Fee Application** and **Request for Plaintiff Service Awards** shall be posted on the **Settlement Website**.

31.     The **Parties** shall file any responses to any **Class Member** objections, and any reply papers in support of final approval of the **Settlement** or **Class Counsel's Fee Application** and **Request for Plaintiff Service Awards**, by no later than October 25, 2016.

32.     The **Court** reserves the right to modify the date of the **Fairness Hearing** and related deadlines set forth herein.  In the event the **Fairness Hearing** is moved, the new date and time shall be promptly posted on the **Settlement Website** by the **Settlement Administrator**.

33.     This **Order** shall become null and void and shall be without prejudice to the rights of the **Parties**, all of whom shall be restored to their respective positions as they existed immediately before the **Court** entered this Order, if: (a) the **Settlement** is not finally approved by the **Court**, or does not become final, pursuant to the terms of the **Settlement**; (b) the **Settlement** is terminated in accordance with the **Settlement**; or (c) the **Settlement** does not become effective pursuant to the terms of the **Settlement** for any other reason.

34.     If the **Settlement** does not become final and effective pursuant to the terms of the **Settlement**, the **Class Representatives**, the **Class Members**, and **SCEA** shall be returned to their respective statuses as of the date immediately prior to the execution of the **Settlement Agreement**, and this **Preliminary Approval Order** shall have no force or effect, and neither this **Preliminary Approval Order** nor the **Settlement** shall be construed or used as an admission, concession, or declaration by or against **SCEA** of any fault, wrongdoing, breach, or

liability, or be construed or used as an admission, concession, or declaration by or against any of the **Plaintiffs** or **Class Members** that their claims lack merit or that the relief requested is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims he, she, or it may have in this **Action** or in any other lawsuit, and it shall not be admissible in evidence, or usable for any purpose whatsoever in the **Action**, any proceeding between the **Parties,** or in any action related to the **Released Claims** or otherwise involving the **Parties**, **Class Members**, or any **Released Party**.

35.     Pending the final determination of whether the **Settlement** should be approved, all proceedings in this **Action**, except as may be necessary to implement the **Settlement** or comply with the terms of the **Settlement**, are hereby stayed.

36.     Pending the final determination of whether the **Settlement** should be approved, **Plaintiffs** and each **Class Member**, and any person purportedly acting on behalf of any **Class Member(s)**, are hereby enjoined from commencing, pursuing, maintaining, enforcing, or prosecuting, either directly or indirectly, any **Released Claims** in any judicial, administrative, arbitral or other forum, against any of the **Released Parties**, provided that this injunction shall not apply to the claims of any **Class Members** who have timely and validly requested to be excluded from the **Class**.  Such injunction shall remain in force until **Final Settlement Date** or until such time as the **Parties** notify the **Court** that the **Settlement** has been terminated.  This injunction is necessary to protect and effectuate the **Settlement**, this **Preliminary Approval Order**, and this **Court's** authority regarding the **Settlement**, and is ordered in aid of this **Court's** jurisdiction and to protect its judgments.

37.     **Class Counsel**, **SCEA**, and the **Settlement Administrator** are directed to carry out their obligations under the **Settlement** and this **Preliminary Approval Order**.

38.     The following chart summarizes the dates and deadlines set by this Order:

| Date | Event |
|------|-------|
| Fourteen (14) days after entry of **Preliminary Approval Order** issued | Deadline for **SCEA** to provide last known email addresses of **Class Members** known to **SCEA** through its PlayStation Network Database to **Settlement Administrator** |

| | |
|---|---|
| Forty-five  (45) days after entry of **Preliminary Approval Order** | **Notice Date**; deadline for **Settlement Administrator** to send **Short Form Class Notice** to **Class Members** via email along with a link to the **Settlement Website** and deadline for **Settlement Administrator** to post **Long Form Notice** on **Settlement Website** |
| Ten (10) days after the **Claims Deadline** | **Settlement Administrator** to provide to **Class Counsel** and **SCEA's Counsel** a final list of **Class Members** that made claims (regardless of validity of claims) |
| Forty-five (45) days after **Notice Date** | **Claims Deadline, Objection Deadline** and **Opt-Out Deadline** or **Exclusion Deadline** |
| Ten (10) Days after the **Opt-Out Deadline** | **Settlement Administrator** shall provide to **Class Counsel** and **SCEA's Counsel** a complete and final list of **Class Members** who submitted requests to exclude themselves from the **Class** |
| Two (2) days after the **Objection Deadline** | **Settlement Administrator** shall provide to **Class Counsel** and **SCEA's Counsel** all objections submitted by **Class Members**. |
| Twenty (20) days after **Objection Deadline** | **Class Counsel** shall file with the **Court** any and all objections to the **Agreement** redacted in accordance with ¶ 97 of the **Agreement** and/or to **Class Counsel's Application for Attorneys' Fees and Expenses** and **Request for Service Awards** |
| September 13, 2016 | Deadline for **Class Counsel** to file **Application for Attorneys' Fees and Expenses** and **Request for Service Awards** |
| Fifteen (15) days after notification from **Settlement Administrator** that more than three percent (3%) of the **Class** has requested exclusion | Deadline for SCEA to notify **Class Counsel** and the **Court** that it is terminating the **Settlement** |
| No later than twenty-one (21) days after receiving notice of an event prompting termination of the **Settlement** | **Party** exercising its right to terminate and withdraw from the **Settlement** must serve a signed writing on the other **Party** indicating termination and withdrawal |
| Sixty (60) days after the **Effective Date** | **Class Counsel** returns list of **Class Members** that made valid claims to **Settlement Administrator** |
| September 13, 2016 | Deadline for **Final Approval Motion** and for the parties to provide any responses to **Settlement Objections** |
| November 8, 2016 at 2:00 p.m. | **Final Approval Hearing Date** |
| **Effective Date** | The date of entry of the **Final Approval Order** and **Final Judgment** if no objections are filed to the **Settlement** or if all objections are withdrawn prior to the **Court** ruling on them; or thirty-one (31) calendar days after the entry of the **Final Approval Order** and **Final Judgment** if objections are filed and overruled and no appeal is taken from the |

| | |
|---|---|
| | **Final Approval Order** and/or **Final Judgment**; or if a timely appeal is made, thirty-one (31) calendar days after the date any appeal is voluntarily dismissed; or if a timely appeal is made and heard, thirty-one (31) calendar days after the final resolution of that appeal or petitions for certiorari from the **Final Approval** and/or **Final Judgment** |
| Fourteen (14) days after the **Effective Date** | **SCEA** provides to the **Settlement Administrator** funds sufficient to pay valid **Claims** |
| Thirty (30) days after the **Effective Date** | **Payment Date** (i.e., Deadline for **Settlement Administrator** to Disburse Settlement Fund) |
| Two hundred (200) days after the **Effective Date** | **Settlement Website** taken down |
| Five (5) business days after **Settlement Website** is taken down | **Settlement Administrator** to transfer **Settlement Website URL** to **SCEA** |
| Two hundred and ten (210) days after the **Effective Date**. | Deadline for **Settlement Administrator** to destroy any and all **Class Members'** personal identifying information that it has received from **SCEA** or otherwise in connection with the implementation and administration of this **Settlement** |

IT IS SO ORDERED.

Dated: _____

_____

YVONNE GONZALEZ ROGERS

United States District Judge

# EXHIBIT 6

**IF YOU PURCHASED A SONY "FAT" PLAYSTATION®3 COMPUTER
ENTERTAINMENT CONSOLE BETWEEN NOVEMBER 1, 2006 AND APRIL 1, 2010,
A CLASS ACTION SETTLEMENT MAY AFFECT YOU**

**The sole purpose of this notice is to inform you of the settlement
so that you can decide what to do.**

A proposed settlement has been reached in the nationwide class action lawsuit, *In re Sony PS3 "Other OS" Litigation,* United States District Court, Northern District of California, Case No. C-10-1811 (YGR). This lawsuit challenges the decision to disable the Other OS functionality from "Fat" PS3 computer entertainment consoles through Firmware Update 3.21, released on April 1, 2010. "Fat" PS3 consoles were consoles manufactured with the ability to install a Linux operating system as an alternative to the game operating system. Sony Computer Entertainment America, LLC ("SCEA") is the defendant and denies all allegations.

If the settlement is approved and you are a Class Member, you may be eligible to submit a claim for benefits. This litigation involves two classes. Consumer Class A is all persons in the United States who purchased a Fat PS3 between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal and/or household use and used the Other OS functionality after installation of a Linux operating system. Consumer Class B is all persons in the United States who purchased a Fat PS3 between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal and/or household use. The benefit for both classes is monetary, $55 (for Consumer Class A) or $9 (for Consumer Class B).. The deadline for submitting claim forms is [DATE]. Claim forms are available on the Settlement Website or may be obtained by calling the Settlement Administrator.

You may choose to exclude yourself from the settlement by sending your name, address, PS3 serial number and PSN Network ID along with a statement that you wish to be excluded to the Settlement Administrator at the address below. If you exclude yourself, you will not receive anything but will retain your right to sue. You may also object to the settlement with the option to appear at the final approval hearing with your own attorney at your cost. If you do nothing or object to the settlement, you will be bound by its terms and cannot later sue

SCEA all objections, requests and objections must be submitted by **DATE**.

Please contact the Settlement Administrator at the below address or visit: **www.XXXXXXX.com** for more information.   The Settlement Administrator is:

[**insert address]**

**PLEASE   DO   NOT   CONTACT   SCEA   OR   THE   COURT   FOR   INFORMATION**

# EXHIBIT 7

## LIST OF FAT PS3 MODEL NUMBERS

**CECHA01**

**CECHB01**

**CECHE01**

**CECHE01MG**

**CECHE11**

**CECHG01**

**CECHG11**

**CECHH01**

**CECHH01MG**

**CECHH11**

**CECHK01**

**CECHK11**

**CECHL01**

**CECHL11**

**CECHP01**

# EXHIBIT 8

**Exhibit 8**

## GENERAL RELEASE OF ALL CLAIMS BY PLAINTIFF ANTHONY VENTURA

1.      In consideration of the Settlement benefits provided for in the Class Action Settlement Agreement ("SETTLEMENT AGREEMENT"), Anthony Ventura ("Ventura"), on his own behalf and on behalf of his heirs, assigns, executors, administrators, predecessors, and successors, hereby completely releases and forever discharges Sony Computer Entertainment America LLC, currently known as Sony Interactive Entertainment America LLC ("SCEA") and its current and former parents, subsidiaries, divisions, and current and former affiliated individuals and entities, successors, predecessors (including companies they have acquired, purchased, or absorbed), assigns, joint venturers, distributors, retailers, developers and/or licensees and each and all of their respective officers, partners, directors, servants, agents, shareholders, investors, members, managers, principals, investment advisors, consultants, employees, representatives, attorneys, accountants, lenders, underwriters, and insurers ("RELEASED PARTIES"), from any and all injuries, demands, losses, damages, costs, loss of service, expenses, compensations, claims, suits, causes of action, attorneys' fees, obligations, or liabilities of any nature, type, or description, whether known or unknown, suspected or unsuspected, contingent or non-contingent, whether based on federal, state, or local law, statute, ordinance, code, contract, common law, or any other source which Ventura has, may now have, or has ever had against any of the RELEASED PARTIES, or any of them arising from or in any way connected with Ventura's purchase of a Fat PS3 and/or any other relationship with SCEA, as of the date of Ventura's execution of this General Release including, but not limited to claims that were or could have been asserted in or arising from or that may have arisen from the same facts alleged in either *In re Sony PS3 "Other OS" Litigation*, Case No. 4:10-cv-01811 YGR, currently pending in the District Court for the Northern District of California (the "ACTION") and/or *Anthony Ventura v. Sony computer Entertainment America Inc.,* United States District Court, Northern District of California, Case No. CV 10 1811 EMC. This General Release covers all statutory, common law, constitutional, and other claims, including but not limited to:

(a)      Any and all claims concerning the advertising of SCEA's Other OS functionality;

(b)      Any and all claims that arise out of, refer to or in any way relate to the disabling of the Other OS functionality in the Fat PS3;

(c)      Any and all claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), or any other applicable law or statute related to SCEA's advertising of the Other OS functionality;

(d)      Any and all claims that SCEA's advertising or representations regarding SCEA's Other OS functionality constituted a fraudulent, unlawful, unfair, or deceptive business practice, were unconscionable, violated consumer protection statutes, and/or constituted a breach of contract and/or breach of the covenant of good faith and fair dealing or unjust enrichment; and/or

(e)      Any and all claims concerning any fact or circumstance that relates to SCEA's advertising or representations regarding its Other OS functionality (collectively, the "RELEASED CLAIMS").

This General Release described herein covers, includes, and is intended to include all remedies that could be sought for the RELEASED CLAIMS including, but not limited to, statutory, constitutional, contractual, and common law claims for injunctive relief, declaratory relief, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, disgorgement, or equitable relief against SCEA.

2.      **Waiver of Unknown Claims**.  Ventura has read Section 1542 of the Civil Code of the State of California, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH
THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS
OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,
WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY
AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Ventura hereby voluntarily waives the rights described in Section 1542 and elects to assume all risks for claims that now exist in his favor, whether known or unknown, against the RELEASED PARTIES. Accordingly, this General Release includes within its effect claims and causes of action which Ventura does not know or suspect to exist in his favor at the time of his execution hereof and if the facts and circumstances relating in any manner to the RELEASED CLAIMS are hereafter found to be other than or different from the facts now believed to be true, this General Release shall remain effective.

3.      Neither an appeal of, a modification of, nor a reversal on appeal of the settlement benefits described in the SETTLEMENT AGREEMENT shall constitute grounds for cancellation or termination of this General Release.

4.      Ventura warrants and represents that he is the sole and lawful owner of all rights, title, and interest in and to all of the claims described above and that he has not heretofore voluntarily, by operation of law or otherwise, sold, assigned, or transferred or purported to sell, assign, or transfer to any other person or entity such claims or any part or portion thereof.

5.      _____, as the settlement administrator of the Class Action Settlement and Release (the "SETTLEMENT"), executed in the ACTION, shall issue Ventura a Form 1099 reflecting the payment of any settlement benefits described in the SETTLEMENT AGREEMENT.

6.      Ventura agrees that he alone is responsible for the tax consequences, including any penalties or interest, relating to the payment of any settlement benefits.

7.      Ventura and the RELEASED PARTIES expressly agree that any and all force and effectiveness of this General Release is entirely contingent upon final approval of the SETTLEMENT, executed in the ACTION. If the SETTLEMENT does not become final for any reason, then this General Release shall be null and void *ab initio*. Neither a modification of nor a reversal on appeal of the Incentive Award shall constitute grounds for cancellation or termination of this General Release, however.

Dated: _____, 2016

Anthony Ventura

_____

# EXHIBIT B

1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re SONY PS3 "OTHER OS" LITIGATION | ) ) ) ) ) ) ) ) ) | Case No. 3:10-cv-01811-YGR **DECLARATION OF STEPHEN CIRAMI REGARDING NOTICE AND SETTLEMENT ADMINISTRATION** |

I, STEPHEN CIRAMI, declare and state as follows:

1.      I am the Executive Vice President and Chief Operating Officer of Garden City Group, LLC ("GCG").  Over the past 12 years at GCG, I have handled a wide range of historic complex legal administrations, including mass tort settlements, human rights administrations, product liability settlements, antitrust matters, DOJ disgorgements, SEC Fair Funds, and ERISA, wage and hour, and insurance-related matters. I have particular expertise identifying solutions for cases involving high volume and inaccurate or dated data, and those requiring specialized class member identification demands. Attached as Exhibit A is my curriculum vitae.

00061616.DOCX - 1

2.     The following statements are based on my personal knowledge and information provided by other experienced GCG employees working under my supervision, and if called on to do so, I could and would testify competently thereto.

3.     GCG was engaged by the Parties to develop and implement a proposed legal notice program ("the Notice Program") to provide notice of the proposed settlement ("Settlement") with Sony Computer Entertainment America LLC, currently known as Sony Interactive Entertainment America LLC ("SCEA").

4.     GCG is a recognized leader in providing legal administrative services, including the development of complex legal notice programs.   GCG has operational offices in the following locations: Lake Success, New York; Seattle, Washington; and Dublin, Ohio.  GCG has a staff of more than 600 employees, including more than 100 attorneys on staff, a team of software engineers, Call Center professionals, in-house legal advertising specialists, and graphic artists with extensive website design experience.

5.     GCG handles the administration of a wide variety of class action settlements and notice programs, including but not limited to, consumer, securities, mass tort, antitrust, and product liability, labor and employment, ERISA, civil and human rights, insurance and healthcare.  Our team has served as administrator for over 3,200 cases.  In the course of its history, GCG has mailed hundreds of millions of notices, disseminated over 400 million emails, handled over 32 million phone calls, processed tens of millions claims, and distributed over $63 billion in settlement benefits.  Additional information about GCG can be found on our website at www.gardencitygroup.com.

6.     As more fully described below, the proposed plan will provide notice of the Settlements to Members of the Class.  This Declaration describes and details the proposed Notice Program and why it is the most appropriate and practicable under the circumstances.

## PROPOSED NOTICE PROGRAM

7.     According to the Second Amended Consolidated Class Action Complaint ("Complaint") submitted to the United States District Court Northern District of California on

00061616.DOCX - 1

DECLARATION OF STEPHEN CIRAMI
CASE NO. 10-01811-YGR

1  May 29, 2014 and provided by Counsel to GCG, the lawsuit alleges that on April 1, 2010 SCEA
2  released a software update for the PlayStation® 3 ("PS3") that disabled the Other OS
3  functionality that had allowed the use of Linux as an alternative operating system.

4      8.    Based on the information in the Settlement Agreement, we understand the class
5  definition to be:

6        All persons in the United States who purchased a Fat PS3 in the United States between
7        November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal,
8        and/or household use.

9  **STRATEGY AND TARGET AUDIENCE DEFINITION**

10      9.    GCG adheres to the highest communication and outreach standards, in part, by
11  structuring its notice programs on data provided by standard methodology that is used
12  throughout the advertising industry and which has been embraced by courts in the United States.
13  The design of the proposed Notice Program is consistent with the U.S. Supreme Court's
14  guidance in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and *Kumho Tire Co.*
15  *v. Carmichael*, 526 U.S. 137 (1999), and uses industry-accepted methodology that can be tested
16  by peers. Specifically, GCG designed the Notice Program using a method accepted within the
17  advertising industry to understand the target audience, including Class Members, by examining
18  their demography and media consumption habits. This Proposal describes the methodology for
19  understanding the target audience and how the most appropriate media was selected to reach
20  them.

21      10.    In order to design an appropriate and efficient national legal notice program, GCG
22  utilizes the syndicated research bureaus GfK Mediamark Research, Inc. ("GfK MRI") and
23  comScore. GfK MRI is a nationally syndicated research tool. It is the leading supplier of multi-
24  media audience research, and provides comprehensive reports on demographic, lifestyle, product
25  usage and media exposure. GfK MRI conducts more than 26,000 personal interviews annually
26  to gather their information, and is used by more than 450 advertising agencies as the basis for the
27  majority of media and marketing campaigns. comScore is a global Internet information provider

00061616.DOCX - 1

on which leading companies and advertising agencies rely for consumer behavior insight and Internet usage data. comScore maintains a proprietary database of more than 2 million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing. comScore panelists also participate in survey research that captures and integrates their attitudes and intentions.

11.    Based on these media research tools, GCG is able to measure and report to the Court what percentage of the target audience is estimated to be reached by the Notice Program and how many times the target audience will have the opportunity to see the notice. In advertising, this is commonly referred to as a reach and frequency analysis. Reach refers to the estimated percentage of the unduplicated audience exposed to the notice. Frequency, in turn, refers to how many times, on average, the target audience had the opportunity to view the notice. Reach and frequency calculations are used by advertising and communications firms worldwide and have become a critical element to help provide the basis for determining adequacy of notice in class action cases.

12.    Taking into account the Class described above, GCG believes that the best qualitative target for this case is "Adults 18 years of age or older that own a PlayStation or web-enabled console" ("Target Audience").

**PLAIN LANGUAGE**

13.    I have reviewed the Summary Notice for publication written by the Parties and find that it is written in a plain language style. Plain language is simply a more conversational form of communication, which is used, for example, when reporting the news. The concept, now integrated into legal notice practice, is one that has received note from various national and international authorities and organizations, including the Federal Judicial Center in the United States.

**OVERVIEW OF NOTICE PROGRAM**

14.    In order to reach a significant number of potential people covered by the settlement affected and using the information we understand about the Class, GCG proposes to

00061616.DOCX - 1

DECLARATION OF STEPHEN CIRAMI
CASE NO. 10-01811-YGR

1   use a variety of communication methods in the Notice Program.  Using a multifaceted approach,

2   engineered through a combination of internet advertising and social media engagement, this

3   Notice Program is specifically designed to notify persons covered by the settlement.   The

4   elements in this multilayered and comprehensive proposed Notice Program include:

5        (1) direct email notice to  class members known through the PlayStation Network

6        database for whom contact information is available;

7        (2) targeted banner notice on the internet in English and Spanish;

8        (3) search advertising through Google.com, Bing.com and Yahoo.com;

9        (4) promoted Tweets through Twitter.com;

10       (5) notice by social media outreach;

11       (6) notice by press release;

12       (7) print notice in a California publication to satisfy CLRA;

13       (8) a settlement website; and,

14       (9) a toll-free information telephone number.

15   15.   The notice plan described below is estimated to reach approximately 77% of the

16   Target Audience with and average frequency of 2.26.  GCG believes this notice plan satisfies

17   due process standards and will provide adequate notice to the settlement class based on the

18   documents provided by Counsel.  The proposed notice plan is consistent with Fed R. Civ. P. 23

19   and provides the best practicable notice to reach class members affected by the Complaint.

20   **NOTICE PLAN**

21   16.   **Direct Notice:** GCG will format the Summary Notice for electronic distribution

22   by email to Class Members for whom an email address is available ("Email Notice"). The Email

23   Notice will provide Class Members with a link to the Settlement Website.  GCG will follow

24   standard email protocols, including utilizing "unsubscribe" links and GCG's contact information

25   in the Email Notice.  The  contents  of  the  Email  Notice  will be  reviewed  to  minimize

26   SPAM triggers and also will be run through a set of sender authentication mechanisms, such as

27   SPF  (Sender  Policy  Framework),  DomainKeys,  DKIM  (DomainKeys  Identified  Mail),

00061616.DOCX - 1

DECLARATION OF STEPHEN CIRAMI
CASE NO. 10-01811-YGR

1  Barracuda, and SpamAssassin, to evaluate the probability that the email will encounter

2  spam filtering issues. Finally, the Email Notice will be distributed at a graduated level to

3  maximize the deliverability rate to the available Class Members' email addresses

4      17.   Based upon information provided by Defendants and further communications

5  with Counsel, it is GCG's understanding email addresses are available for approximately 67% of

6  the Class. Based on that information and the age of the data, we are expecting we will have an

7  undeliverable rate of approximately 50%. Therefore, reducing the 67% reach of direct notice to

8  the Class by such an undeliverable rate, GCG is making an estimate that the direct email notice

9  will reach approximately 33% of the Class.

10      18.   **Paid Banner Advertisements**: Internet advertising has become a standard

11  component in legal notice programs.  The Internet has proven to be an efficient and cost-

12  effective method to target and provide measurable reach of persons covered by a settlement.

13  According to GfK MRI Research, 96% of the Target Audience has used the internet in the last 30

14  days, therefore we propose notifying potential Class Members by running banner ads on select

15  websites where class members visit regularly and utilizing networks based on cost efficiency,

16  timing, and their contribution to the overall reach of the target.  Banner advertisements are

17  image-based graphic displays that are used in legal noticing to notify people of a settlement

18  relevant to them.  The text of the banner advertisement, which the Parties will review in advance

19  of publication,  will allow users to self-identify themselves as potential class members and

20  directly link them to the settlement website for more information.

21      19.   The selected sites, including gaming websites, a digital network, and the social

22  networking site Facebook, were selected to reach a great number of Class Members efficiently.

23  comScore research reveals that 56% of CNET.com visitors, 74% of IGN.com visitors, 78% of

24  GameSpot.com visitors, and 82% of GameInformaer.com visitors have a PlayStation or web-

25  enabled console. In addition, 92 % of our Target Audience visit websites part of the Yahoo!

26  Audience Network and 71% visit Facebook.

27      20.   The banner advertisements will run for 8 weeks throughout the U.S and will also

00061616.DOCX - 1

**DECLARATION OF STEPHEN CIRAMI**
**CASE NO. 10-01811-YGR**

link directly to the settlement website.   A list of the recommended websites included in the Notice Program is shown below.

| INTERNET | | |
|---|---|---|
| Site | URL | Unit Size |
| CNET | www.CNET.com | 728 x 90 |
| IGN | www.IGN.com | 300 x 250 |
| GameInformer.com | www.GameInformer.com | 300 x 250 |
| GameSpot.com | www.GameSpot.com | 728 x 90 & 300 x 250 |
| Yahoo! Audience Network | Various | Custom |
| Facebook | www.Facebook.com | Custom |
| Pulpo Media (Spanish Language) | Various | 728 x 90 & 300 x 250 |
| Total Estimated Impressions: | 282,0000,000 | |

21.    **Search Advertising**: Search advertising creates a unique opportunity to drive class members to the settlement website while they are actively searching for information relevant to the settlement.  GCG and Counsel will develop a list of keywords to reach class members on popular search engines such as Google, Bing, and Yahoo!.  When a user types a key search word into the search field, a text ad will have the opportunity to appear on a rotating basis with other advertising campaigns as a Sponsored Ad.

22.    **Twitter Promoted Tweets**: GCG will research a set of keywords, hashtags and Twitter handles related to gaming and more specifically, the PS3's affected in this litigation. Promoted Tweets are regular Tweets purchased by advertisers who want to reach a wider group of users or to spark engagement and drive traffic to a website. Promoted Tweets are delivered to

00061616.DOCX - 1

DECLARATION OF STEPHEN CIRAMI
CASE NO. 10-01811-YGR

influencer's timelines encouraging them to share with their followers and visit the settlement website. 61% of Twitter users are identified as our Target Audience, providing a cost effective approach to expand the messaging of the settlement while driving quality traffic to the settlement website with less wasted impressions.

23. **Social Media Outreach**: Social media outreach is an organic approach to identifying individuals, blogs, tweets and online conversations relevant to the case. It is an effective method to identify influencers and engage them directly in an effort to promote a conversation about the settlement and drive class members to the settlement website. GCG will monitor Twitter, blogs, online conversations and news stories by identifying case related keywords and hashtags. Additionally, GCG will draft a schedule of Tweets consistent with language approved in the Notice including a unique hashtag for tracking the Tweet reach.

24. GCG will create a case-specific Facebook page providing court documents and links to the settlement website. GCG will respond to Facebook users inquires with language approved by Counsel or the court approved notice.

25. **Press Release**: A national press release of up to 700 words will be distributed over PR Newswire's US1 and National Hispanic Newslines. The US1 release will be issued broadly to more than 15,000 media outlets, including newspapers, magazines, national wire services, television, radio and online media in all 50 states. The Hispanic newsline reaches over 7,000 U.S. Hispanic media contacts including online placement of approximately 100 Hispanic websites nationally.

26. **Print Notice:** To satisfy the Consumer Legal Remedies Act (CLRA) requirement, insertions will run one time per week for four (4) weeks in the California edition of USA Today at an approximate ad size of 1/4 page.

27. **Website:** Importantly, the Notice Plan includes an official website dedicated to Settlement information such as Settlement Class Member rights, dates, and deadlines. Additionally, the website address will be displayed in the trade publication notices, and will be activated promptly following approval of the Notice Plan. The Settlement Website will contain

1  additional information and important Court documents such as the Settlement Agreement, the

2  Preliminary Approval Order, the Long-Form Settlement Notice, and the Claim Form. It will also

3  include procedural information regarding the status of the Court-approval process and how to file

4  a claim. Further, Class Members will be able to submit a Claim Form on the Settlement Website

5  using the online portal. The Settlement Website will also provide instructions for Claimants

6  wishing to exclude themselves from or object to the Settlement.

7     28.   **Telephone:** GCG will maintain a toll-free telephone line where callers may

8  obtain information and have questions answered about the class action. The telephone number

9  will be prominently displayed in the direct mail and the Summary Notice, as well as on the

10 website.

## CONCLUSION

12    29.   This method of focused notice dissemination is a reasonable and targeted

13 approach to provide effective notice in this case. This Notice Program is estimated to reach at

14 least 77% of Class Members with an average frequency of 2.26. This methodology ensures the

15 highest standard of individual notice to Class Members and is the best notice practicable under

16 the circumstances.

17

18    I declare under penalty of perjury that the foregoing is true and correct to the best of my

19 knowledge and belief.

20

21    Executed this 17th day of June, 2016 in New York, New York.

22

23    _____

24    Stephen Cirami

25

26

27

00061616.DOCX - 1

**DECLARATION OF STEPHEN CIRAMI**
**CASE NO. 10-01811-YGR**

Exhibit A



# Stephen Cirami

## Executive Vice President and Chief Operating Officer

**Executive Summary:**

Stephen Cirami is a nationally renowned expert on all aspects of class action legal notice and administration. Over the past 12 years at GCG he has effectuated hundreds of notice programs, and has helped design dozens of others in his handling a wide range of historic complex legal administrations. Mr. Cirami consults frequently with plaintiff and defense counsel, as well as government agencies, to design notice programs that meet their specific needs and circumstances, and has particular expertise identifying solutions for cases requiring specialized class member identification demands.

**Notice Programs Effectuated:**

o  **In Re Royal Ahold Securities and ERISA Litigation**; Case No. 03-MD-01539-CCB; District of Maryland Northern Division; Hon. Catherine C. Blake; Settlement Fund - $1.1 billion

> *"Yes, I agree. I think, Mr. Cirami, you certainly have been doing everything you can to reach as many claimants as possible, and I appreciate it. It's a very difficult, very difficult and time-consuming process."*

> *"I appreciate the team of ... settlement administrators ... who have managed this process so well."*

> - - Hon. Catherine C. Blake, U.S. District Judge, District of Maryland

o  **In Re Initial Public Offering Securities Litigation**; Case No. 21-MC-92; Southern District of New York; Hon. Shira Scheindlin; Settlement Fund - $586 million

> *GCG is complying with its typical procedures for claims administration and is going above and beyond its usual practices due to the size of the class in this action."*

> - - Hon. Shira A. Scheindlin, U.S. District Judge, Southern District of New York

o  **In Re WorldCom Securities Litigation**; Case No. 02-cv-3288; Southern District of New York; Hon. Denise L. Cote; Settlement Fund - $6.13 billion

> o  Notice materials disseminated to nearly 4 million recipients three times due to various partial settlements.

o  **In Re Tyco International LTD., Securities Litigation**; Case No. 02-md-1335; District of New Hampshire; Hon. Paul Barbadoro; Settlement Fund - $3.2 billion

o  **In Re Bank of America Corp. Securities Derivative & ERISA Litigation**; Case No. 09-md-2058; Southern District of New York; Hon. P. Kevin Castel; Settlement Fund - $2.425 billion

> o  3.4 million notices mailed

o  **In Re Nortel Securities Litigation I and II**; Case No. 01-cv-1855; Southern District of New York; Hon. Richard M. Berman and In Re Nortel Securities Litigation II; Case No. 05-MD-1659; Southern District of New York; Hon. Loretta A. Preska Settlement Fund - $2.4 billion

> o  More than 2.3 million notices mailed to class members in the United States, Canada and around the globe.

o  **In Re Citigroup Inc. Bond Litigation**; Case No. 08-cv-9522; Southern District of New York; Hon. Sidney H. Stein; Settlement Fund - $730 million

o  **In re Wachovia Preferred Securities and Bond/Notes Litigation**; Case No. 09-cv-6351; Southern District of New York; Hon. Richard J. Sullivan; Settlement Fund - $627 million

o  **In re Citigroup Inc. Securities Litigation**; Case No. 07-cv-9901; Southern District of New York; Hon. Sidney H. Stein; Settlement Fund - $590 million

> o  Mailed more than 2.4 million claim packets

o  **In Re Lucent Technologies, Inc. Securities Litigation**; Case No. 00-cv-621; District of New Jersey; Hon. Joel A. Pisano; Settlement Fund - $517 million

o  **Countrywide MBS Settlement**; Case No. 10-cv-00302; Central District of California; Hon.

## CONTACT

P. 631-470-6838

1985 Marcus Ave
Lake Success, NY 11042

stephen.cirami
@gardencitygroup.com

**Admissions:**
Florida State Bar
New York State Bar

**Education:**
Duke University, J.D.,
cum laude

State University of New York
at Albany, B.A., Psychology

Mariana R. Pfaelzer; Settlement Fund - $500 million

  o ***In Re Bristol Myers Squibb Securities Litigation (2004 litigation)***; Case No. 02-cv-2251; Southern District of New York; Hon. Loretta A. Preska; Settlement Fund - $750 million

  o ***In Re Delphi Corporation Securities Litigation***; Case No. 05-MD-1725; Eastern District of Michigan Southern Division; Hon. Gerald E. Rosen; Settlement Fund - $295.1 million

  o ***In Re Global Crossing Ltd. Securities Litigation***; Case No. 02-cv-910; Southern District of New York; Hon. Gerald E. Lynch; Settlement Fund - $446 million

**Expert Witness:**

  o ***Estate of Mikulski v. Cleveland Electric Illuminating Co., Estate of Mikulski v. Centerior Energy Corp. et al, Estate of Mikulski v. Toledo Edison Co.***

  o Currently serving as an expert witness concerning the reasonable identification of class members, and notice and administration procedures.

**Pre-settlement/Pre-notice Affidavits & Declarations:**

  o ***In re Longtop Financial Technologies Limited Securities Litigation:*** *Case No. 11-cv-3658-SAS; Southern District of New York; Hon. Shira A. Scheindlin; Settlement Fund - $2.3 million*

  o ***In re HP Securities Litigation:*** *Case No. 3:12-CV-05980-CRB; Northern District of California; Hon. Charles R. Breyer; Settlement Fund - $100 million*

  o ***In re Bank of New York Mellon Corp. Forex Transactions Litigation:*** *Case No. 12-MD-2335 (LAK) (JLC); Southern District of New York; Hon. Lewis A. Kaplan; Settlement Fund - $335 million*

  o ***Bennett v. Sprint Nextel Corporation:*** *Case No. 2:09-cv-02122-EFM-KMH; District of Kansas; Hon. Eric F. Melgren; Settlement Fund - $131 million*

  o ***In re Prograf (Tacrolimus) Antitrust Litigation:*** *Case No. MDL No. 22242; District of Massachusetts*

  o ***Erickson v. Corinthian Colleges, Inc.:*** *Case No. 2:13-cv-07466-GHK-PJW; Central District of California; Hon. George H. King; Settlement Fund - $3.5 million*

**Speaking Engagements:**

| | |
|---|---|
| **2014** | • National Association of Attorneys General (NAAG) Fall Consumer Protection Seminar, Providence, Rhode Island<br>• 6th Annual Conference on Global Investor Protection, Frankfurt, Germany |
| **2013** | • 5th Annual Conference on Global Investor Protection, Frankfurt, Germany |
| **2011** | • Hedge Funds Care Investor Conference, New York, NY |
| **2010** | • Securities Industry and Financial Markets Association (SIFMA) Securities Conference, New York, NY |
| **2009** | • Three separate European Institutional Investor Conferences<br> o (Frankfurt, Germany; Paris, France; Zurich, Switzerland) |
| **2007** | • Bank Depository User Group (BDUG) Annual Conference, San Antonio, Texas |

**Continuing Legal Education Presentations:**

  o ***Settlement Administration from the Plaintiffs' Perspective***

  o Motley Rice, September 24, 2014
  o Spector Roseman, July 10, 2014
  o Sussman Godfrey, August 6, 2014

  o ***Data Privacy and Protection in Legal Administrations***

  o Duane Morris, March 29, 2016

**Articles:**

- o "The Lawdragon Lawyer Limelight: Stephen Cirami" – *Lawdragon*, April 2016

- o "Thinking Down the Road: 5 Things to Consider When Negotiating a Class Action Settlement," *American Lawyer and Corporate Counsel*, 2014

- o "Potential Pitfalls of Class Action Notice and Claims Administration in the 21st Century" – *Practicing Law Institute: Class Action Litigation Manual*, 2012

# EXHIBIT C



# FIRM RESUME
# 2016

1077 30th Street, NW, Suite 150 · Washington, DC 20007

One California Street, Suite 900 · San Francisco, CA 94111

# FINKELSTEIN THOMPSON LLP

FINKELSTEIN THOMPSON LLP ("the firm"), is a complex litigation firm, with offices in Washington, D.C. and San Francisco, CA, focusing primarily on suits involving antitrust violations, fraud and crime in the banking, securities and commodities industries, and consumer fraud.

By concentrating exclusively on litigation, rather than a generalized transactional practice, the firm avoids the conflicts of interest, both actual and philosophical, that can arise from multi-faceted representation, and is able to offer the kind of hard-hitting approach that modern complex litigation demands.  Since 1993, the firm has served in a leadership position in cases that have recovered many hundreds of millions of dollars for investors and consumers.

Because the outcome of litigation is often dependent on the strength of expert testimony, the firm has developed strong working relationships with nationally prominent outside consultants in the areas of securities, commodities, antitrust, banking, consumer fraud, marketing and economics.

## HISTORY

The firm was founded in March 1977 by Burton H. Finkelstein and Douglas G. Thompson, Jr. The firm's offices are located in Georgetown and in San Francisco in the Financial District.

## EXPERIENCE

The firm is involved in class action litigation in federal and state courts nationwide.  It has developed a reputation for successful and thorough representation of class clients against many of the largest and most powerful companies in the country.  As part of our efforts to serve our clients' interests in the most effective and efficient manner possible, the firm has established ongoing relationships with other class action law firms whose size, location or expertise complement our own.  We are proud to have won judgments and negotiated settlements that have recovered an aggregate of over one billion dollars for class members.

Douglas G. Thompson, Jr., one of the founding and named partners of the firm, has prosecuted and defended complex civil and criminal matters for over forty years.  The other partners and associates have extensive experience in a variety of complex litigation fields.  The firm has practiced before the Securities and Exchange Commission, Commodity Futures Trading Commission, Federal Trade Commission, Federal Communications Commission, U.S. Copyright Office, New York Stock Exchange, Chicago Board of Trade, National Association of Securities Dealers, National Futures Association, Financial Industry Regulatory Authority and in various state and federal trial and appellate courts across the country, in civil and criminal enforcement matters and in private damage litigation. The firm has considerable expertise and experience in defending and prosecuting complex financial class action claims.

## SECURITIES & COMMODITIES CLASS ACTION LITIGATION

Since its inception in 1977, the firm's securities litigation practice has extended across a wide range of shareholders' securities litigation, from accounting fraud, allegations of insider trading, proxy statement fights, and minority shareholder rights being violated, to cases alleging misstatements in prospectuses. The firm has litigated substantive federal issues under the Securities Act of 1933, the Securities Exchange Act of 1934, the Reform Act of 1995, tender offers under the Williams Act, derivative suits under State and Federal law, and unfair business practices claims.

Our clients have included institutional investors, pension funds, high-net worth individuals and retail investors. While few class action securities suits go to trial, substantial skill and experience is required to investigate, prepare, and litigate the underlying claims to successful resolution. The firm enjoys a national reputation for high-quality and successful recoveries for our clients.

The firm also selectively prosecutes actions pursuant to the Commodity Exchange Act regarding market manipulations involving commodity futures and options. To date, the firm has enjoyed considerable success in these matters, which are recognized as some of the most difficult causes of action to successfully pursue.

### SETTLED REPRESENTATIVE SECURITIES AND COMMODITIES CLASS ACTION CASES

1.  In re Merrill Lynch & Co., Inc. Research Reports Litigation, MDL 1484 (S.D.N.Y.) – Executive Committee member; Lead Counsel in six of the underlying actions; $125 million settlement achieved.

2.  In re Natural Gas Commodity Litigation, No. 03cv6186 (S.D.N.Y.) – Co-Lead Counsel; over $100 million achieved in settlements.

3.  In re Dairy Farmers Of America, Inc. Cheese Antitrust Litigation, No. 09-cv-03690 (N.D. Ill.) – Allocation Counsel for Core Period Claims; achieved allocation of 92.5% of $46 million settlement to Core Period Claimants.

4.  PaineWebber Securities Litigation, No. 94cv8547 (S.D.N.Y) – Executive Committee member; $200 million settlement achieved.

5.  Freeland v. Iridium World Communications, Ltd., No. 99cv1002 (D.D.C.) – Liaison Counsel and Executive Committee member; $47.5 million settlement achieved.

6.  Prudential Securities Litigation, MDL 1005 (S.D.N.Y.) – Executive Committee member & Co-Chair of Settlement Committee; $150 million settlement achieved.

7.  Kidder Peabody Securities Litigation, No. 94cv3954 (S.D.N.Y.) – Executive Committee member; $19 million settlement achieved.

8.  <u>Rudolph vs. UT Starcom, et al</u>, No. 3:07-CV-04578-SI (N.D.Ca.) – The firm serves as sole Lead Counsel in a securities fraud class action against UT Starcom and certain officers in connection alleged illegal backdating of executive stock options. $9.5 million settlement achieved

9.  <u>Holly Glenn v. Polk Audio, Inc.</u>, No. 99cv4768 (Md. Cir. – Baltimore) – Co-lead Counsel; $4.8 million settlement achieved (an increase of nearly 50% of shareholder buyout value).

10. <u>Grecian v. Meade Instruments, Inc.</u>, No. 06cv908 (C.D. Cal.) – Sole Lead Counsel on behalf of shareholders claiming securities fraud violations related to alleged illegal backdating of executive stock options. Settlement achieved for $3 million and corporate governance changes.

## ANTITRUST CLASS ACTION LITIGATION

Federal and state antitrust laws are primarily concerned with protecting the economy and promoting competition between businesses by preventing (i) collusion among competitors that might result in restraints on competition in a given industry or market, and (ii) anti-competitive conduct by a particular entity who holds monopoly power in a given industry or market.

The firm is involved in several cases on behalf of individuals and businesses that have been injured by the anti-competitive behavior of other companies. These cases involve allegations such as market manipulation, monopolization, price-fixing, and predatory practices. Below is a sample of the cases in which we have been intensively involved:

SETTLED REPRESENTATIVE ANTITRUST CLASS ACTION CASES

1.  <u>In re Dynamic Random Access Memory (DRAM) Antitrust Litigation</u>, No. M-02-1486 (N.D.Cal.) – Executive Committee member for indirect purchaser claims; settlement achieved for $310 million (on appeal).

2.  <u>In re Relafen Antitrust Litigation</u>, No. 01cv12239 (D. Mass.) – Executive Committee member in federal direct purchaser case, settlement achieved - $175 million.

3.  <u>Heliotrope General, Inc. v. Sumitomo Corporation, et al.</u>, Master Case No. 701679 (Cal. Super. - San Diego) – Co-Lead Counsel; multiple settlements achieved totaling $87.35 million.

4.  <u>In re Warfarin Sodium Antitrust Litigation</u>, MDL 1232 (D. Del.) – Discovery Committee member and Co-lead Counsel in state case; settlement achieved in the companion national case - $44.5 million.

5.     <u>Ryan Rodriguez v. West Publishing Corp. and Kaplan, Inc.</u>, No. CV-05-3222 R(MCx) (Cal. Central District Court) – An antitrust class action where FT LLP served as one of three law firms alleging nationwide national antitrust violations. $49 million settlement finally approved.

6.     <u>In re Reformulated Gasoline (RFG) Antitrust and Patent Litigation</u>, No. 05cv1671 (C.D. Cal.) – Co-Lead Counsel in a certified class action lawsuit that alleges antitrust and common law violations which resulted in increased prices for RFG for purchasers. $48 million settlement achieved

# CONSUMER CLASS ACTION LITIGATION

In federal and state courts throughout the country, the firm represents consumers who have been injured or defrauded.  Our cases involve individuals or classes of individuals who have been physically or economically damaged by the wrongdoing of others.   Some of our cases seek to obtain financial relief, medical monitoring, injunctions and revised notification for classes of plaintiffs.  Some of the cases we have brought include:

SETTLED REPRESENTATIVE SECURITY BREACH CLASS ACTION CASES

1.     <u>In Re TJX Companies Retail Security Breach Litigation</u>, MDL 1838 (D. Mass.) Counsel in class action lawsuit alleging statutory and common law violations that resulted in a security breach of consumers' debit and credit card information. $200 million settlement achieved.

2.     <u>Lockwood v. Certegy Check Serv., Inc.</u>, No. 8:07-cv-01434-SDM-TGW (M.D. Fla.) Counsel in class action lawsuit alleging common law violations that resulted in a security breach of consumers' personal and financial information.  Available benefits made to Settlement Class Members of over $500 million.

3.     <u>In re Countrywide Financial Corp. Customer Data Security</u>, MDL 1998 (W.D. Ky.) Co-lead counsel in class action lawsuit alleging violations of common law, the California Business and Professions Code, and the Fair Credit Report Act, for data breach involving consumers' personal and financial information.  Settlement resulted in a credit monitoring protection package for the class, the creation of an identity theft reimbursement fund of $5 million, and the creation of an expense reimbursement fund for class members of $1.5 million to compensate class members for actions taken as a result of the data breach.

SETTLED REPRESENTATIVE CONSUMER CLASS ACTION CASES

1.     <u>Gael M. Carter, et al. v. Associates Financial Services Co., Inc., et al.</u>, No. 96cv4652 (Tex. Dist. – Dallas County) – The firm played a pivotal role in pursuing the claims of millions of class members in a number of suits in states across the country against The Associates n/k/a Citifinancial, alleging consumer fraud relating to home equity and personal loan terms.  Settlements achieved in the state, federal and companion FTC cases totaling $240 million.

2. <u>Cavan et al. v. Sears Roebuck & Co. and Whirlpool Corp.</u>, No. 04CH10354 (Ill. Circuit Court - Cook County) – Co-Lead counsel for consumer class action based upon the sale of Calypso® washing machines. Nationwide settlement reached and approved by the Court.

3. <u>In re Diet Drugs Products Liability Litigation</u>, MDL 1203 (E.D. Pa.). Co-Chair of the Non-PMC litigation group prosecuting class certification of claims not advanced by Plaintiffs' Management Committee.

4. <u>Schulte v. Fifth Third Bank</u>, 1:09-cv-06655 (N.D. Ill.) – Co-lead counsel in a consumer class action alleging re-sequencing of consumer banking transactions in highest to lowest order with intention of maximizing overdraft fee revenue. Nationwide settlement resulted in a settlement fund of $9.5 million and injunctive relief valued at over $100 million. First re-sequencing/overdraft fee settlement in the nation where bank agreed to terminate high to low re-sequencing as part of relief to the class.

ONGOING REPRESENTATIVE SECURITY BREACH CLASS ACTION CASES

1. <u>Richardson, et al. v. Tricare Management Activity, et al.</u>, 1:11-cv-01961 (D.D.C.) Law suit alleging violations of the federal Privacy Act as a result of a security breach of insureds' personal and health information.

ONGOING REPRESENTATIVE CONSUMER CLASS ACTION CASES

1. <u>In re Avandia Marketing, Sales Practices and Products Liability Litigation</u>, MDL 1871 (E.D. Pa.) - FT serves as a member of the Plaintiffs Steering Committee and Co-Chair of the Class Action Sub-Committee. The suit alleges that SmithKline Beecham Corporation d/b/a GlaxoSmithKline used marketing schemes to deliberately conceal and affirmatively misrepresent the significant heart attack or heart-disease related risks associated with the use of the Avandia, Avandamet and Avandaryl – medications used to treat Type II diabetes.

ONGOING REPRESENTATIVE THIRD-PARTY PAYOR CLASS ACTION CASES

1. <u>United Benefit Fund v. GlaxoSmithKline LLC</u>, MDL 1871 (E.D. Pa.)- the firm serves a member of the Plaintiffs' Steering Committee, Co-Chairs the Class Action Sub-Committee, and is counsel of record for a third-party payor class action alleging that GSK created, monitored and/or controlled various marketing firms, physicians and ghostwriters to promote and disseminate – through sponsored events and publications – misleading messages about safety and efficacy relating to the use of Avandia.

## FALSE CLAIMS ACT LITIGATION

The firm maintains an active practice under the Federal False Claims Act (also known as "*qui tam*" litigation). Through representation of whistleblowers who have independent knowledge of government contract fraud, the firm seeks to secure the return of millions of dollars to federal and state treasuries. The firm has investigated and filed *qui tam* claims in connection with the student loan industry.

## BURTON H. FINKELSTEIN
Partner
(1937-2013)

BURTON H. FINKELSTEIN practiced securities litigation for more than forty years, first with the Securities and Exchange Commission, and then in private practice.  At the SEC, he was special trial counsel and an Assistant Director of the Enforcement Division, where he was in charge of the administrative, civil and criminal litigation nationwide enforcement program.   In 1970, he joined the New York firm of Phillips, Nizer, Benjamin, Krim & Ballon and was a partner in their Washington, D.C. office until 1977, when he and Mr. Thompson formed the firm now known as FINKELSTEIN THOMPSON LLP.

In private practice, Mr. Finkelstein participated in more than twenty securities fraud trials in cities throughout the United States, representing broker-dealers, principals and securities salesmen, attorneys, accountants, publicly and privately held companies and officers and directors of such companies.   He also represented companies and individuals in SEC investigations, and served as special counsel to public companies in conducting internal investigations.

Mr. Finkelstein earned a B.B.A. degree in accounting from City College of New York in 1959 and an L.L.B. degree from the University of Pennsylvania in 1962.  After military service and  a brief stint as law clerk to the General Counsel of the Federal Power Commission, he began his securities litigation career as trial counsel at the SEC's Washington Regional Office.

Mr. Finkelstein  appeared as a panelist in securities litigation and enforcement seminars for the Practicing Law Institute, New York Law Journal and the American Law Institute - American Bar Association (ALI-ABA).  He was an adjunct professor of law at Georgetown University Law School from 1979 to 1998.  His course was entitled "Securities and Financial Frauds - Enforcement and Litigation."

Mr. Finkelstein practiced in the Washington, D.C. office.

## DOUGLAS G. THOMPSON, JR.
Partner

DOUGLAS G. THOMPSON, JR. has specialized in administrative and civil trial and appellate litigation in private practice for over forty years.  His practice has been concentrated in the areas of securities, commodities, banking, communications, and other complex business and financial transactions.  Mr. Thompson has represented clients in federal court and before the Securities and Exchange Commission, the Commodity Futures Trading Commission, the Federal Trade Commission, the Federal Communications Commission, the Copyright Royalty Tribunal, and the Criminal Division of the Department of Justice. Mr. Thompson has litigated securities and commodities claims in failed savings and loan cases on behalf of the RTC and FDIC.  As lead counsel for the FDIC, Mr. Thompson won a jury verdict of more than $1 million after a lengthy trial involving commodities fraud issues.

Mr. Thompson received his A.B. and M.A. degrees in economics from Stanford University and his J.D. degree from Stanford Law School in 1969.  He taught at the Stanford Law School in 1969-70 and clerked for Judge Ben. C. Duniway of the United States Court of Appeals, Ninth Circuit, in 1970-71.  Following his clerkship, Mr. Thompson joined the law firm of Wilmer, Cutler & Pickering, Washington, D.C., where he was a litigator in communications and securities law.  In 1977, he joined with Mr. Finkelstein in the formation of the firm now known as FINKELSTEIN THOMPSON LLP.

Mr. Thompson is a member of the bar of the District of Columbia and the State of California and of several federal district and appellate courts.

Mr. Thompson practices in the Washington, D.C. office.

## L. KENDALL SATTERFIELD
Partner

KENDALL SATTERFIELD joined FINKELSTEIN THOMPSON LLP in 1985.  Mr. Satterfield practices in the fields of both antitrust and consumer fraud class action litigation. Additionally, he has represented private clients and federal banking agencies in civil and administrative litigation involving securities and commodities fraud, federal banking law and accountant malpractice.  Mr. Satterfield also represents Canadian broadcasters and television production companies in matters involving cable television copyright royalties before the United States Copyright Office and has practiced before the Federal Communications Commission.

Mr. Satterfield is a 1981 graduate of Ohio Northern University where he received a Bachelor of Sciences degree with Highest Honors in Business Administration.  He then attended Emory University where he received his Juris Doctor in 1984.  He is a member of the District of Columbia and Georgia Bars.

Mr. Satterfield practices in the Washington, D.C. office.

**MILA F. BARTOS**
Partner

MILA F. BARTOS has been with FINKELSTEIN THOMPSON LLP since January 1995. Ms. Bartos practices in the fields of both antitrust litigation and consumer fraud class action cases, including adulterated and toxic products.  She is a 1990 graduate of the University of Wisconsin - Madison where she received a joint Bachelor of Arts degree in English and Communications.  Ms. Bartos then attended the American University Washington College of Law where she received her Juris Doctor in 1993.  At American University, Ms. Bartos was a co-founder of the *American University Journal of Gender and Law* and was a member of the Editorial Board.

Ms. Bartos is the author of the article, "Law Firm Collaboration Via Extranets" published in the Law Library Resource Xchange.  She is also an active member of the Chairman's Council of the Appleseed Foundation.  Ms. Bartos is a member of the Maryland and District of Columbia Bars.

Ms. Bartos practices in the Washington, D.C. office.

# ROSEMARY M. RIVAS
Partner

ROSEMARY M. RIVAS heads Finkelstein Thompson LLP's San Francisco office. She represents consumers in complex and class action litigation in a wide variety of areas, including consumer fraud, civil rights, and antitrust violations.

Ms. Rivas has served, or is currently serving, in a leadership role in a number of cases. Her recent cases include: *In re: Volkswagen "Clean Diesel" MDL*, Case No. 15-MD-2672-CRB (JSC) (Plaintiffs' Steering Committee in nationwide class action against Volkswagen and related parties for falsely advertising its diesel vehicles; ongoing); *Lima v. Gateway*, Case No. SACV-09-1366 (C.D. Cal.) (Co-Lead Class Counsel in nationwide class action alleging defective monitors; achieved $195 refund for each monitor purchased); *Pappas v. Naked Juice*, Case No. 2:11-cv-08276 (C.D. Cal.) (Co-Lead Class Counsel in nationwide class action alleging mislabeled juices; achieved $9 million settlement and changes to the company's testing procedures and product labels); *Garcia v. Allergan, Inc.*, Case No. 09-cv-7088 (C.D. Cal.) (Co-Lead Class Counsel in nationwide class action alleging false marketing practices; achieved $7.75 million settlement and changes to company's training procedures); *In re Sony Other OS PS3 Litig.*, Case No. 10-1811 (N.D. Cal.) (Co-Lead Interim Counsel in proposed nationwide class action alleging false advertising; ongoing). She has also been instrumental in obtaining favorable appellate decisions on behalf of consumers in the areas of false advertising, federal preemption, and arbitration, such as: *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662 (9th Cir. 2014); *In re Sony PS3 "Other OS" Litig.*, 551 Fed. App. 916 (9th Cir. 2014); and *Probst v. Superior Court (Health Net of California)*, 2012 Cal. LEXIS 4476 (Ct. Appeal, 1st Dist., May 9, 2012).

In 2009, 2010, and 2011, Ms. Rivas was selected as a Rising Star by Law & Politics Magazine, which recognizes the best lawyers 40 years old or under or in practice for ten years or less. In 2015, Bay Area Legal Aid presented Ms. Rivas with the Guardian of Justice Award, for her work achievements in the law and her role in helping direct cy pres funds to ensure equal access to the civil justice system.

Ms. Rivas' recent speaking engagements include: *Section 17200: The Fertility of Man's Invention*, 2016 (The Bar Association of San Francisco); *Food Labeling and False Advertising Class Actions*, 2015 (The Bar Association of San Francisco); and *Class Actions: New Developments & Approaches for Strategic Response*, 2013 (American Bar Association).

Ms. Rivas is a member of the California bar and is admitted to practice in the Central, Eastern, Northern, and Southern U.S. District Courts of California. Ms. Rivas is also admitted to practice before the Ninth Circuit Court of Appeals. Previously, she served as a board member and Diversity Director of the Barristers Club of the San Francisco Bar Association. She graduated from San Francisco State University in 1997 and received a Bachelor of Arts in Political Science. She received her Juris Doctorate from the University of California, Hastings College of Law in 2000. Ms. Rivas is fluent in Spanish.

## MICHAEL G. McLELLAN
Partner


MICHAEL G. McLELLAN joined FINKELSTEIN THOMPSON LLP in May 2004. Mr. McLellan practices in the fields of securities, antitrust and consumer fraud litigation. He is a 1996 graduate of the University of South Carolina, where he received a Bachelor of Arts degree in English. Mr. McLellan also attended the University of South Carolina School of Law, where he received his Juris Doctor in 2003. During law school, Mr. McLellan served as Articles Editor for the South Carolina Law Review and was awarded membership in the Order of the Wig and Robe. Upon graduation, Mr. McLellan attended the American University Washington College of Law, where he received an LL.M. in Law and Government, magna cum laude in 2004. While pursuing his LL.M. degree, Mr. McLellan worked as an intern for the Securities and Exchange Commission in the Division of Enforcement and volunteered as a Constitutional Law teacher at Ballou Stay High School. He additionally worked as an independent researcher for the Association of Corporate Counsel.

Mr. McLellan is a member of the South Carolina and District of Columbia bars, and practices in the Washington, D.C. office.

## ROSALEE B. C. THOMAS
Associate

ROSALEE THOMAS has been associated with FINKELSTEIN THOMPSON LLP since October 2006 and practices in the fields of antitrust, consumer fraud and securities litigation. Ms. Thomas graduated from Columbia University in 1999, where she studied Political Science. She received her Juris Doctorate from Georgetown Law in 2004 and was recognized as a Pro Bono Pledge Honoree.  While in law school, Ms. Thomas participated in the Street Law Clinic and served as a student attorney with the D.C. Law Students in Court Clinical Program.  Ms. Thomas also completed a clerkship at the U.S. Consumer Product Safety Commission.

Ms. Thomas is a member of the New York, New Jersey and District of Columbia bars and is admitted to practice in the United States District Court for the District Courts of New Jersey, Southern District of New York, and the District of Columbia.

Ms. Thomas practices in the Washington, D.C. office.

## QUENTIN A. ROBERTS
Associate

QUENTIN A. ROBERTS joined FINKELSTEIN THOMPSON LLP's San Francisco office in March 2016.  Previously, Mr. Roberts worked at two other class action firms. His practice primarily focuses on consumer protection. Mr. Roberts graduated from the University of California, San Diego in 2010, where he studied Economics. He received his Juris Doctorate from the University of San Francisco School of Law in 2015 where he graduated *magna cum laude*. While in law school, Mr. Roberts received CALI Awards for Excellence in Criminal Law, Cyberlaw, Legal Research & Writing I and Legal Research and Writing II, and was a staff member of the *University of San Francisco Law Review*.

Mr. Roberts is a member of the California bar and the San Francisco Trial Lawyers Association and practices in the firm's San Francisco office.

## ROBERT O. WILSON
### Of Counsel

ROBERT WILSON re-associated as Of Counsel with FINKELSTEIN THOMPSON LLP since February 2015 and practices in the fields of *qui tam*, shareholder, consumer protection, and antitrust litigation. Mr. Wilson graduated from James Madison University in 2003, with a Bachelor of Arts in English, with a minor in Theatre. He graduated *cum laude* from George Mason University School of Law in 2008. While in law school, he served on the editorial board of the *George Mason University Civil Rights Law Journal*.

Mr. Wilson was an associate with the firm from 2011 to 2014. Before joining Finkelstein Thompson LLP, Mr. Wilson clerked for the Honorable David S. Schell of the Fairfax Circuit Court, in the 19th Judicial Circuit of Virginia, and practiced civil and criminal litigation in the Northern Virginia area.

Mr. Wilson's published works include *A Defense of Disclosure-based Settlements in US M&A Litigation*, Financier Worldwide.com (February 2013); *Free Speech v. Trial by Jury: The Role of the Jury in the Application of the Pickering Test*, 18 George Mason University Civil Rights Law Journal 389 (2008); and *Dura Pharmaceuticals: Loss Causation Redefined or Merely Clarified?*, Journal of Taxation and Regulation of Financial Institutions, September/October 2007, at 5 (with Donald J. Enright).

Mr. Wilson is a member of the Virginia and District of Columbia bars.

# EXHIBIT D



**HAUSFELD FIRM SUMMARY**

Hausfeld ranks among the world's top claimants' firms.  Recently named "the world's leading antitrust litigation firm" by *Politico*, Hausfeld is renowned for our skillful prosecution of complex and class-action litigation, we represent individuals, businesses, and organizations—domestically and internationally—in the areas of antitrust/competition law, human and civil rights, mass torts, environmental threats, securities fraud, and consumer protection.  For decades Hausfeld attorneys have vigorously advocated for aggrieved claimants, achieving noteworthy trial victories and settlements while contributing to the development of law in the United States and abroad. The firm has offices in Washington, D.C., New York, Philadelphia, San Francisco, Berlin, Brussels and London.

Hausfeld was founded by Michael D. Hausfeld, who is widely recognized as one of the country's top civil litigators and a leading expert in the fields of private antitrust/competition enforcement and international human rights.  The *New York Times* has described Mr. Hausfeld as one of the nation's "most prominent antitrust lawyers" while *Washingtonian Magazine* characterizes him as a lawyer who is "determined to change the world—and succeeding," noting that he "consistently brings in the biggest judgments in the history of law."

The firm has won plaudits from federal judges before whom it has appeared. In the International Air Transportation Surcharge Antitrust Litigation, for example, the firm was praised by Senior District Judge Charles Breyer for its efforts in achieving "really, an outstanding settlement in which a group of lawyers from two firms coordinated the work . . . and brought an enormous expertise and then experience in dealing with the case." The Court also stated that the firm's lawyers are "more than competent. They are outstanding." District Judge Morrison C. England Jr. has praised HLLP in an antitrust class action involving the processed tomato industry for having "the breadth of experience, resources and talent necessary to navigate a case of this import", saying it was one of the firms that stood out from the rest in seeking interim class leadership. And in the Vitamin C Antitrust Litigation, District Judge Brian Cogan praised plaintiffs' lawyers as "highly experienced antitrust lawyers" and that "[a]s to the quality of the plaintiffs' representation, I really can't say enough. I just think the way this case was handled was as good as it gets...it would be a pleasure to have any of you in front of me again on any case...[t]he representation could not have been any better." In another opinion in the same case, Judge Cogan said "I say that to my knowledge, there is no plaintiffs' class action firm with the capacity to deal with a case of this magnitude resident within this district.".

## LEADERSHIP IN LANDMARK LITIGATION

Courts have appointed Hausfeld and its attorneys as lead class counsel, co-lead class counsel, to the executive committee or steering committee in nearly 60 class-action antitrust, consumer protection, mass-tort, and sports and entertainment cases, with leadership positions in numerous other cases:



**Antitrust**

- *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-md-1775 (E.D.N.Y.)
- *In re Automotive Aftermarket Lighting Products Antitrust Litig.*, No. 09-ML-2007-GW (PJW) (C.D. Cal.)
- *In re Blue Cross Blue Shield Antitrust Litig.*, No. 13-mdl-2496 (N.D. Ala.)
- *Bruce Foods Corp. v. SK Foods, LP*, No. 2:09-cv-00027-MCE-EFB (E.D. Cal.)
- *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944-SC (N.D. Cal.)
- *In re Chocolate Confectionary Antitrust Litig.*, No. 08-mdl-1935 (M.D. Pa.)
- *In re Foreign Exchange Benchmark Rates Antitrust Litigation,* 13 Civ. 07789 (LGS) (S.D.N.Y.)
- *In re Fresh and Process Potatoes Antitrust Litig.,* No. 4:10-MD-2186-BLW (D. Id.) (Chair of Executive Committee)
- *In re International Air Passenger Surcharge Antitrust Litig.*, No. M:06-md-01793 (N.D. Cal.)
- *Jabo's Pharmacy, Inc. v. King Pharmaceuticals, Inc.*, No. 31, 973 (Cir. Ct. Cocke. Cty., TN)
- *In re Korean Ramen Antitrust Litig.,* No. C-13-04115-WHO (N.D. Cal.)
- *In re Municipal Derivatives Antitrust Litig.*, No. 08-cv-2516 (S.D.N.Y.)
- *In re New Jersey Tax Sales Certificates Antitrust Litig.*, No. 12-1893 (D.N.J.)
- *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C09-1967 CW (N.D. Cal.)
- *In re Processed Egg Products Antitrust Litig.*, No. 2:08-cv-04653 (E.D. Pa.)
- *In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 1:07-mc-00489-PLF-JMF (D.D.C.)
- *In re Transpacific Passenger Air Transport Antitrust Litig.*, No. 3:07-cv-05634 (N.D. Cal.)
- *In re Vitamin C Antitrust Litig.*, No. 1:06-md-01738-DGT-JO (E.D.N.Y.)
- *In re Vitamins Antitrust Litig.*, No. 1:99-md-01285 (D.D.C.)
- *In re LIBOR-Based Financial Instruments Antitrust Litig.*, No. 11-MD-2262 (S.D.N.Y.)
- *In re Methyl Methacrylate Antitrust Litig.*, No. 06-md-1768 (E.D. Pa.)
- *In re Municipal Derivatives Antitrust Litig.*, No. 08-cv-2516 (S.D.N.Y.)
- *In re New Jersey Tax Sales Certificates Antitrust Litig.*, No. 12-1893 (D.N.J.)
- *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C09-1967 CW (N.D. Cal.)
- *In re Optical Disk Drive Antitrust Litig.*, No. 10-md-02143 (N.D. Cal.)
- *In re OSB Antitrust Litig.*, No. 06-cv-0826 (E.D. Pa.)
- *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-02196 (N.D. Ohio)
- *In re Pressure Sensitive Labelstock Antitrust Litig.*, MDL No. 1556 (M.D. Pa.)
- *In re Processed Egg Products Antitrust Litig.*, No. 2:08-cv-04653 (E.D. Pa.)
- *In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 1:07-mc-00489-PLF-JMF (D.D.C.)
- *In re Transpacific Passenger Air Transport Antitrust Litig.*, No. 3:07-cv-05634 (N.D. Cal.)
- *In re Vitamin C Antitrust Litig.*, No. 1:06-md-01738-DGT-JO (E.D.N.Y.)

# HAUSFELD

- *In re Vitamins Antitrust Litig.*, No. 1:99-md-01285 (D.D.C.)
- *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC, et al.*, No. 0:15-cv-1714 (MDD) (S.D. Cal.)

## Consumer Protection
- *In re Honey Transshipping Litigation*, 1:13-cv-02905 (N.D. Ill.)
- *Kairoff v. Dropbox, Inc.*, 11-cv-02508 (N.D. Cal.)
- *In re Monsanto Company Genetically-Engineered Wheat Litig.,* No. 2:13-md-02473-KHV-KMH (D. Kan.) (Chair of the Co-Leads)
- *National Trucking Financial Reclamation Services, LLC v. Pilot Corp.*, 13-cv-00250 (E.D. Ark.)
- *Radosti, et al. v. Envision EMI, LLC*, No. 1:09-CV-00887-CKK (D.D.C.)
- *Ross v. Trex Co., Inc.*, No. 5:09-CV-00670 (N.D. Cal.)
- *In re Sony PS3 "Other OS" Litig.*, No. CV-10-1811-RS (N.D. Cal.)
- *In re: Target Corporation Customer Data Security Breach Litigation*, MDL No. 14-2522 (PAM/JJK) (D. Minn.) (Financial Institutions Cases Steering Committee)
- *In re Tyson Foods, Inc., Chicken Raised without Antibiotics Consumer Litig.*, No. 1:08-md-01982-RDB (D. Md.)
- *U.S. Hotel and Resort Management, Inc. et al v. Onity Inc.*, 0:13-cv-01499-SRN-FLN (D. Minn.)
- *Wolph v. Acer America Corp.*, No. CV-09-01314-VRW (N.D. Cal.)

## Mass Tort
- *In re Chinese-Manufactured Drywall Products Liability Litig.*, MDL No. 2047 (E.D. La.) (Of Counsel to Plaintiffs' Steering Committee)
- *In re National Football League Players' Concussion Injury Litig.*, No. 2:12-md-02323-AB (E.D. Pa.) (Plaintiffs' Executive Committee and Liaison Counsel)
- *In re Prempro Products Liability Litigation*, No. 4:03-cv-01507-WRW (E.D. Ark.) (Plaintiffs' Steering Committee)
- *In re Stryker Rejuvenate And ABG II Hip Implant Products Liability Litigation*, MDL No. 13-2441 (D. Minn.) (Plaintiffs' Steering Committee)

## Financial Services
- *In re Commodity Exchange, Inc. Silver Futures and Options Trading Litig.*, No. 1:11-md-02213-RPP (S.D.N.Y.)
- *MTB Investment Partners LP v. Siemens Hearing Instruments Inc.*, No. 2:12-cv-00340 (D. N. J.)

## Sports & Entertainment
- *O'Bannon v. NCAA*, No. 09-cv-03329 (N.D. Cal.)
- *Dryer v. Nat'l Football League*, No. 0:09-cv-02182-PAM-AJB (D. Minn.)
- *Eller v. Nat'l Football League*, No. 11-CV–639 (D. Minn.) ("*Eller I*")
- *Eller v. National Football League Players Assoc. et al.*, 11-CV-02623-SRN-JJG (D. Minn.)



("*Eller II*")
- *James v. UMG Recordings, Inc.*, No. 11-CV-1613-SI (N.D. Cal.)
- *Sister Sledge v. Warner Music Group*, 3:12-cv-00559-RS (N.D. Cal.)

---

### RECENT ACCOLADES AND ACHIEVEMENTS

• In April 2016, *Super Lawyers* recognized twelve Hausfeld DC attorneys as among the top in the nation fro. Michael Hausfeld, Brian Ratner, Walter Kelley, Jr., and Megan Jones were recognized as Super Lawyers for Antitrust and James Pizzirusso was recognized as a Super Lawyer for Class Actions. Notably, Michael Hausfeld received the additional distinction of a "Top 100" Super Lawyer in his practice. In addition, Timothy Kearns, Swathi Bojedla, Melinda Coolidge, Nathaniel Giddings and Sathya Gosselin were selected by Super Lawyers as 2016 Washington, DC Rising Stars in Antitrust, and Kristen Ward Broz was selected as a 2016 Washington, DC Rising Star for Class Actions.

• On April 12, 2016, Michael Hausfeld was named U.S. Plaintiff Competition Lawyer of the Year by *Global Competition Review – Who's Who Legal*.

• On April 5, 2016, Hausfeld won *Global Competition Review's* award for Litigation of the Year – Cartel Prosecution, for its work to date on the Foreign Exchange Benchmark Litigation, *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 1-13-CV-07789 (S.D.N.Y.)

• On March 31, 2016, Hausfeld associate, Swathi Bojedla was named as just one of four attorneys as a "Rising Star" in Sports Litigation, by *Law360*.

• As of December 2015, Hausfeld is the only claimants' firm to be ranked by the *Legal 500* and *Chambers & Partners* as a top tier firm in private enforcement of antitrust/competition law in both the United States and the United Kingdom.

• In December 2015, Michael Hausfeld was recognized by the *Financial Times* as one of the Top 10 Innovative Lawyers in North America.

• In November 2015, Hausfeld and fellow trial counsel won the American Antitrust Institute's award for Outstanding Antitrust Litigation Achievement in Private Law Practice for their trial and appellate victories in *O'Bannon v. NCAA*.

• In November 2015, *U.S. News & World Report – Best Law Firms* named Hausfeld to its top tier in both Antitrust Law and Litigation. Hausfeld was also recognized in New York, San Francisco, and Washington, DC in Antitrust Law, Litigation, and Commercial Litgation.

• In November 2015, *Chambers & Partners UK* ranked Hausfeld as Band 1 for



Competition Law: Private Enforcement: Claimant – London as well as to it Banking Litigation spotlight table. In addition, Hausfeld partners Anthony Maton, Nicola Boyle, and Lianne Craig were highlighted as Notable Practitioners in the field. According to the publication Hausfeld is:

> "[s]ynonymous with competition damages claims in the UK thanks to its leading role in developing the market in this area. Adept at handling class-style actions and can co-ordinate proceedings for large groups of claimants across different jurisdictions. Well placed to handle both standalone and follow-on actions."

• In July 2015, Hausfeld was ranked Antitrust – Nationwide, Civil Litigation/Class Actions, Band 1 and Antitrust – Nationwide, Cartels, Band 2 by *The Legal 500*. The publication writes that the team is known for:

> "Representing large companies, small and medium-sized businesses, as well as individuals, Washington DC firm Hausfeld LLP remains 'top-notch' in antitrust litigation… Hausfeld LLP is 'one of the most capable plaintiffs' firms involved in the area of civil cartel enforcement', and is handling some of the major cartel-related cases…"

• In May 2015, Hausfeld was ranked Antitrust – Nationwide, Band 1 by *Chambers & Partners*. The publication writes that the team is known for:

> "Market-leading plaintiffs' firm with considerable experience in antitrust class action suits and criminal cartel investigations. Has had numerous successes in the area resulting in major recovery or settlements for its clients…Michael Hausfeld is "a very successful and able antitrust litigator" and "one of the titans of the Plaintiffs Bar," according to interviewees. He regularly acts for individual opt-outs and plaintiff classes on a range of antitrust matters including allegations of price-fixing and monopolization."

• In April 2015, *Super Lawyers* recognized thirteen Hausfeld attorneys as among the top in the nation. Michael Hausfeld, Brian Ratner, Walter Kelley, Jr., and Megan Jones were recognized as Super Lawyers in Washington, DC, Michael Lehmann and Boney Sweeney were recognized as Super Lawyers in California, Brent Landau was recognized as a Super Lawyer in Pennsylvania, Melinda Coolidge, Timothy Kearns, Nathaniel Giddings and Kristen Ward Broz were recognized as Rising Stars in Washington, DC, and Jeannine Kenney was recognized as a Rising Star in Pennsylvania.

• In March 2015, Hausfeld was named to the *National Law Journal*'s "Plaintiffs Hot List" for the Fourth Year in a Row. The *National Law Journal* reports that:

> "Hausfeld's creative approaches underpinned key antitrust wins last year, including a trailblazing



victory for former college athletes over the use of their likenesses in television broadcasts and video games…" also noting that Hausfeld along with its co-counsel, "nailed down a $99.5 million settlement with JPMorgan Chase & Co. in January in New York federal court for alleged manipulation of market benchmarks. And it helped land nearly $440 million in settlements last year, and more than $900 million thus far, in multidistrict antitrust litigation against air cargo companies."

• In December 2014, *Law360* named Michael Hausfeld a Competition MVP. *Law360* writes that Hausfeld is:

"Michael Hausfeld scored a *game-changing victory* against the National Collegiate Athletic Association in an antitrust case, forcing the league to let universities pay student athletes and earning him a spot on Law360's list of Competition MVPs...convincing a California federal district judge with little knowledge of college sports that the NCAA's ban on compensating student athletes for the use of their names, images and likenesses violated federal antitrust law was *no simple feat*."

• In September 2014, *The National Law Journal* named Hausfeld as one of a select group of America's Elite Trial Lawyers, as determined by *"big victories in complex cases that have a wide impact on the law and legal business."* The award notes that Hausfeld is among those "*doing the most creative and substantial work on the plaintiffs side.*"

• In June 2014, *The Legal 500* named Hausfeld to the Top Tier of firms representing plaintiffs in antitrust matters for the sixth year in a row, stating that:

"Washington DC firm Hausfeld is a *'market transformer'*, and the *'most innovative firm with respect to antitrust damages'*. *'Driven by excellence'*, the team *'anticipates the evolving needs of clients'* and delivers *'outstanding advice not only in legal terms but also with a true entrepreneurial touch'*…The *'incredibly impressive'* Michael Hausfeld and Brian Ratner are *'highly skilled negotiators and litigators, and real fighters with an outstanding strategic sense'*. Megan Jones is also recommended."

**STERLING REPRESENTATION**

Given Hausfeld's depth of experienced lawyers, history, profile, and recent successes, the firm is widely considered to be a leader in the antitrust bar. Hausfeld lawyers have an exemplary record of:

- Leading or participating in the world's most significant plaintiffs' private antitrust-enforcement actions;
- Cutting-edge innovation in private antitrust enforcement in the US and abroad; and



- Building one of the largest and most talented plaintiffs' private antitrust enforcement teams in the US, the UK, and Europe.

As international cartels invade the marketplace—and global enforcement bodies struggle to keep up—Hausfeld is able to provide unparalleled legal advice and superior representation for claimants anywhere on the planet.  Hausfeld's unique position and skill sets are frequently acknowledged by leading defense firms as well, who commend Hausfeld attorneys (in public and in private) while seeking global

**COMPETITION MATTERS**

Hausfeld is a leading global firm in competition matters. The firm combines its U.S. offices on both coasts and vibrant European presence with a broad and deep network around the globe to offer clients the ability to seek redress or confront disputes in every corner of the world and across every industry. Hausfeld lawyers have achieved many precedent-setting legal decisions and settlements on behalf of clients involved in competition cases worldwide. They have negotiated some of the world's most complex settlement agreements and have collectively recovered or obtained judgments in the billions of dollars on behalf of clients.

Hausfeld lawyers have a consistent track record of:

- Successfully litigating and resolving the world's most significant plaintiffs' private competition/antitrust enforcement actions, recovering billions of dollars for their clients and businesses we have been appointed by Courts to represent; and

- Building a talented team of professionals representing one of the largest plaintiffs' private competition/antitrust enforcement teams in the U.S.

**Highlights**:

• Hausfeld serves as co-lead counsel on behalf of parties that engaged in foreign exchange ("FX") transactions with the world's largest banks and their subsidiaries. The lawsuit alleges that these banks colluded to manipulate FX benchmark rates - the WM/Reuters rates - at the expense of their counterparties. These rates have significant influence in the $5.3 trillion-a-day FX market and are based on actual trades in the FX market. As of May 2015, Hausfeld has announced settlements with four defendants, pushing plaintiffs' recovery to more than $800 million. In addition to monetary compensation, all four banks have agreed to cooperate with investors in their continuing litigation against the eight remaining defendants.



• Hausfeld serves as co-lead counsel on behalf of thousands of former Division I men's basketball and football players that allege that the NCAA, its members, and its commercial partners violated federal antitrust law by unlawfully foreclosing former players from receiving any compensation related to the use of their images and likenesses in television broadcasts, rebroadcasts, footage clips, and video games. In September 2013, the plaintiffs announced a settlement agreement with defendants Electronic Arts, Inc. and Collegiate Licensing Company. At the conclusion of a three-week bench trial in June 2014, the Court determined that the NCAA had violated the antitrust laws and issued a permanent injunction as requested by the plaintiffs. Law360 dubbed the Hausfeld-led trial team as "Legal Lions," citing this historic victory over the NCAA.

• Hausfeld represented direct purchaser plaintiffs in the first antitrust case in the U.S. against Chinese manufacturers. The plaintiffs allege that Chinese pharmaceutical companies conspired to fix prices and control export output of Vitamin C from December 1, 2001 to the present. In 2013, over the course of a three week jury trial, Hausfeld lawyers and their co-counsel, on behalf of class plaintiffs, presented evidence that Chinese vitamin C manufacturers had met and agreed to fix the price and limit the supply of vitamin C sold to distributors in the United States. The manufacturers presented an affirmative defense of foreign sovereign compulsion, attempting to persuade the jury that the Chinese government had compelled them to meet and reach these agreements. Just before closing arguments, defendants Weisheng Pharmaceutical and China Pharmaceutical Group agreed to settle, and to pay class members $22.5 million. Days later, the jury reached a verdict against the remaining defendants, rejecting their foreign sovereign compulsion defense, and finding that the class had suffered damages of $54.1 million as a result of defendants' actions over the course of the conspiracy. Judge Cogan entered a judgment for $153.3 million, trebling these damages under the Sherman Act (and subtracting the amount already paid in settlements with other defendants). Notably, these results were achieved strictly by lawyers in the private bar; no case was brought by the U.S. Department of Justice. And the settlements reached in this case were the first civil settlements with Chinese companies in a U.S. antitrust cartel case. As China's economic clout expands exponentially, the results of this case have wide implications in the global marketplace.

## NON-COMPETITION MATTERS

In addition to their cutting-edge work in the competition and antitrust fields, Hausfeld lawyers have been at the forefront of leading human rights, civil rights, environmental, mass tort, consumer, and other complex matters litigated in the United States and abroad.  Richard Lewis, for example, is presently lead counsel in an international environmental and human rights case involving drinking water contamination in Bhopal, India.  Mr. Lewis is also a member of the Plaintiff's Steering Committee in the federal Hormone Replacement Therapy ("HRT") mass-tort litigation as well as the Chinese-Manufactured



Drywall litigation and on the executive committee for the NFL concussions injury litigation.

**Highlights**:

- *Holocaust Litigation*

In the historic Swiss banking litigation, Michael Hausfeld served, pro bono, as co-lead counsel for Holocaust survivors against the Swiss banks that collaborated with the Nazi regime during World War II by laundering stolen funds, jewelry, and art treasures. Michael Hausfeld obtained a $1.25 billion settlement. *In re Holocaust Victim Assets Litig.*, No. CV 96-4849 (E.D.N.Y.).  He was also a lead counsel in litigation by survivors of World War II-era forced and slave labor against the German companies that profited from the labor of concentration camp inmates.  This litigation, which resulted in an unprecedented settlement of $5.2 billion for approximately two million claimants, was resolved through multinational negotiations that included both defendants and plaintiffs' counsel, and the governments of several countries.

- *In re Chinese-Manufactured Drywall Products Liability Litig.,* MDL No. 2047 (E.D. La.).

Richard Lewis helped try the *Germano v. Taishan* (2010) property damages and remediation matter on behalf of seven Virginia homeowners, and the *Taishan* class remediation damages case (2015). In *Germano,* the Court ordered plenary relief for the homeowners in the amount of $2.6 million and determined the standard for remediation of a damaged Chinese drywall home.  In *Taishan,* the Plaintiff class seeks $497M in remediation damages and is awaiting a decision from the Court.  In both trials, Mr. Lewis was instrumental in the *Daubert* briefing and argument as well as the trial testimony of several experts, and was successful in excluding or limiting significant portions of the defense experts' opinions.

- *In re The Exxon Valdez Litig.*, No. A89-095 Civ. (D. Alaska).

Michael Hausfeld was selected from dozens of attorneys around the country by federal and state judges in Alaska to serve as co-lead counsel for plaintiffs in the largest environmental case in United States history, which resulted in an initial jury verdict of more than $5 billion.

- *In re Diet Drug Litig.* (Fen-Phen), MDL No. 1203 (E.D. Pa.).

As a member of the Plaintiffs' Management Committee and Sub-Class Counsel, Richard Lewis played a major part in the success of the Fen-Phen diet drug litigation and settlement. Mr. Lewis and other plaintiffs' counsel achieved one of the largest settlements ever obtained in a mass tort case—$3.75 billion—on behalf of millions of U.S. consumers who used diet drugs that are associated with heart valve damage.

- *In re StarLink Corn Products Liability Litig.*, MDL No. 1403. (N.D. Ill.).



Richard Lewis was co-lead counsel and successfully represented U.S. corn farmers in a national class action against Aventis CropScience USA Holding and Garst Seed Company, the manufacturer and primary distributor of StarLink corn seeds. StarLink is a genetically modified corn variety that the United States government permitted for sale as animal feed and for industrial purposes but never approved for human consumption. Yet StarLink was found in corn products sold in grocery stores across the country and was traced to widespread contamination of the U.S. commodity corn supply. The settlement, which provided more than $110 million for U.S. corn farmers, was the first successful resolution of tort claims brought by farmers against the manufacturers of genetically modified seeds.

- *Roberts v. Texaco, Inc.*, 94-cv2015 (S.D.N.Y.).

Michael Hausfeld represented a class of African-American employees in this landmark litigation that resulted in what was at that time the largest race-discrimination settlement in history ($176 million in cash, salary increases, and equitable relief).

- *The Southern Farmers Association v. Shell (Christ Church, Barbados, W.I.)*

James Pizzirusso successfully represented dozens of farmers and landowners in Barbados whose crop lands and properties were contaminated as a result of Shell's negligence in allowing jet fuel to leak from underground pipelines. This was one of the first mass environmental settlements of its kind in Barbados.

---

**INDIVIDUAL REPRESENTATION HIGHLIGHTS**

- <u>FINRA Arbitration</u>

Hausfeld attorneys recently represented a public technology company, recovering millions of dollars that its investment advisor had invested in auction rate securities (ARS).

The client's investment advisor was aware that with any auction rate security, there exists the possibility that there will not be a sufficient number of buyers to match the number of auction rate securities that holders want to sell in any given auction. If this happens, the auction "fails" and the holders will not be able to sell their auction rate securities at par value. In 2007, the ARS market failed when major financial institutions stopped supporting auctions.

On behalf of its client, Hausfeld attorneys commenced an arbitration proceeding with the Financial Industry Regulatory Authority in November 2009. Discovery established that the investment advisor was clearly on notice of the vulnerability of the ARS market prior to the auction failures. Despite this awareness, it breached fiduciary obligations to the client to protect the liquidity of the investment portfolio. The matter was resolved in February 2011 through a settlement that restored liquidity to the



PAGE 11

client's investment portfolio.

Hausfeld was able to successfully and privately resolve this matter for its client in less than twenty-four months with very little disruption to the client's business operations.

*Hausfeld Offices*

**Washington, DC**

202.540.7200 ph
202.540.7201 fax
1700 K Street, NW Suite 650
Washington, DC 20006

**Philadelphia**

215.985.3270 ph
215. 985.3271 fax
325 Chestnut Street, Suite 900
Philadelphia, PA 19106

**San Francisco**

415.633.1908 ph
415.358.4980 fax
600 Montgomery Street, Suite 3200
San Francisco, CA 94111

**London**

(00 44) 20 7665 5000 ph
(00 44) 20 7665 5001 fax
12 Gough Square
London
EC4A 3DW

**Brussels**

0032 2 301 57 13 ph
0032 2 201 75 31 fax
480 Avenue Louis – 18th Floor
1050 Brussels
Brussels, Belgium

**New York**

646-357-1100 ph
212-202-4322 fax
33 Whitehall Street
14th Floor
New York, NY 10004

**Berlin**

(49 0) 30 8877 7193
Kurfürstendamm 218
Berlin, Germany 10719

*For more information about the firm please visit www.hausfeld.com*



### Attorney Profiles

James J. Pizzirusso

Mr. Pizzirusso is a partner in Hausfeld's Washington, DC office. He has a diverse practice centering on consumer protection and data security/privacy law, antitrust law (with an emphasis in agriculture), environmental torts, and sports and entertainment law. In addition to practicing law, he has served as a Visiting Professor at George Washington University Law School.

Mr. Pizzirusso has led Hausfeld's Consumer Protection practice group since the firm's inception and courts have personally appointed him as co-lead counsel in numerous successful class actions including: *In re Warner Music Group Corp. Digital Downloads Litig.*, No. CV-12-0559-RS (N.D. Cal.) (nationwide settlement of royalty dispute involving $11.5 million in past damages and future royalty increases in perpetuity); *James v. UMG Recordings, Inc.*, No. 11-CV-1613-SI (N.D. Cal.) (same); *Wolph v. Acer America Corp.*, No. CV-09-01314-VRW (N.D. Cal.) (disputed class involving defective computers certified on a nationwide basis, $22.7 million settlement later achieved); *Radosti v. Envision EMI, LLC*, No. 1:09-CV-00887-CCK (D.D.C.) ($17.5 million nationwide settlement); *In re Tyson Foods, Inc.*, Chicken Raised Without Antibiotics Consumer Litigation, C.A. 08-1982 (D. Md.) ($8 million nationwide settlement); *In re Honey Transshipping Litig.*, 1:13-cv-02905 (N.D. Ill.) ($3 million partial settlement).

Other cases in which he has or is currently serving as lead counsel include: *In re Monsanto Company Genetically-Engineered Wheat Litigation*, 2:13-md-02473-KHV-KMH (D. Kansas) (chair of lead counsel group); *U.S. Hotel and Resort Management, Inc. et al v. Onity Inc.*, 0:13-cv-01499-SRN-FLN (D. Minn.); and *In re Sony PS3 "Other OS" Litig.*, No. CV-10-1811-RS (N.D. Cal.) (motion to dismiss overturned in Ninth Circuit, case currently pending). He also been appointed to serve in a leadership capacity in several pending data breach cases including *In re Target Corporation Customer Data Security Breach Litig.*, MDL No. 14-25522 (D. Minn.) (steering committee on behalf of financial institutions, nationwide class certification granted), *In re The Home Depot, Inc. Customer Data Security Breach Litig.*, No. 14-md-02583 (N.D. Georgia) (chair of the PSC), *In re Premera Blue Cross Customer Data Breach Litig.*, No. 3:15-md-2633-SI (D. Or.) (Executive Leadership Committee). Mr. Pizzirusso has also been involved in defective housing product cases such as *Ross v. Trex Co., Inc.*, No. 5:09-CV-00670 (N.D. Cal.) (nationwide settlement) and *Pelletz v. Weyerhaeuser Company*, No. C08-0334 JCC (W.D. Wash.) (nationwide settlement).

In the antitrust arena, Mr. Pizzirusso represents clients alleging price fixing and collusion in various agricultural sectors. He is one of the firm's principal attorneys in *In re Processed Egg Products Antitrust Litig.*, No. 2:08-cv-04653 (E.D. Pa.) ($61 million in settlements reached, class certification granted against remaining defendants) and *In re Fresh and Process Potatoes Antitrust Litig.*, No. 4:10-



MD-2186-BLW (D. Idaho) ($19.5 million settlement reached). He was also involved in *In re: Southeastern Milk Antitrust Litig*., 2:08-md-01000 (E.D. Tenn.) ($300 million settlement).  Currently, Mr. Pizzirusso is one of the firm's attorneys working on *In re: Packaged Seafood Products Antitrust Litig*., MDL No. 2670.  He presently serves as Vice Chair of the American Bar Association's Food and Agriculture Antitrust Committee.

In the sports and entertainment area, Mr. Pizzirusso has represented several prominent musicians -- including Chuck D of Public Enemy, Sister Sledge ("We Are Family"); Gary Wright ("Dream Weaver"), and hip hop group The Black Sheep -- in seeking compensation for unpaid digital download royalties from their records labels. He also represented several prominent retired football players, including Jim Brown and Billy Joe Dupree, in the *Dryer v. Nat'l Football League*, No. 0:09-cv-02182-PAM-AJB (D. Minn.) ($50 million settlement) asserting copyright and publicity rights claims from the NFL's use of retired players' images and likenesses.

Mr. Pizzirusso's practice also includes domestic and international environmental and public health litigation. He successfully resolved the claims of numerous farmers and landowners in Barbados who suffered reduced crop yields and property damages as a result of a massive jet fuel spill. He has also represented farmers and other entities seeking damages related to unauthorized releases of genetically modified crops. Domestically, he has represented municipalities and individuals suffering harm related to lead paint and other toxic products.

In 2012, Mr. Pizzirusso was named as one of four "Rising Stars under 40" by Law360 in Consumer Protection and Privacy law. The International Who's Who of Competition Lawyers & Economists recognized him as one of the leading US competition lawyers for plaintiffs in 2014. Additionally, The Benchmark Plaintiff Guide to America's Leading Plaintiff's Firms and Attorneys recognized James as one of the country's top sixteen "Antitrust Litigation Stars" in 2012 and one of DC's "Local Litigation Stars" from 2013-2015. Mr. Pizzirusso has been asked to appear as a panelist at several conferences around the country and presented on topics including antitrust, consumer protection, toxic torts, and public interest litigation. He is also the author of several published papers.

# EXHIBIT E

CALVO FISHER & JACOB LLP

Guam   Saipan   San Francisco

## FIRM OVERVIEW

Calvo Fisher & Jacob LLP ("Calvo Fisher") has a broad-based litigation and transactional practice with a special emphasis on complex litigation, including multi-district litigation, class actions and cross-border disputes. The firm's trial and litigation team has extensive experience in federal and state courts across the United States, as well as in courts and tribunals internationally.

Calvo Fisher attorneys have broad experience and expertise in a wide range of litigation matters for defendants and plaintiffs, including contract disputes, antitrust and competition law, banking and financial services, professional liability, consumer class actions, employment law, construction disputes, and fiduciary matters.

With strong roots in Guam, Saipan and across the Pacific, Calvo Fisher is a destination firm for international companies seeking top level litigation capability in the region. The lawyers on our litigation team joined Calvo Fisher because they saw the opportunity to offer clients a more cost-effective model for complex litigation. Calvo Fisher attorneys, who worked for many years at larger law firms, have a long, winning record in litigating major disputes for leading regional, national, and international companies and are now able to offer these same companies their services from an efficient small firm platform.

With years of experience in litigation, arbitration and mediation in venues from California to New York to Tokyo, the firm's lawyers work closely with clients to develop and carry out a winning litigation strategy. Utilizing the experience and expertise of some of the region's top business lawyers as part of the litigation team, the firm offers an integrated approach to solving business problems that have turned into litigation.

CALVO FISHER & JACOB LLP

GUAM   SAIPAN   San Francisco

## CLASS ACTION PRACTICE

Calvo Fisher & Jacob LLP has extensive experience prosecuting and defending class actions in the state and federal courts. The following is a listing of representative class action matters handled by the firm's partners.

### California State Court

*Moen, et al. v. Regents of University of California.* Represents a certified class of retired university employees in action concerning retirement benefits.

*Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities Inc., et al*. Represents home loan bank in action concerning mortgage-backed securities.

*Federal Home Loan Bank of San Francisco v. Credit Suisse Securities (USA) LLC, et al*. Represents home loan bank in action concerning mortgage-backed securities.

*Leonard v. Hewlett-Packard Co.* Represented certified class of retirees of Hewlett-Packard in action for breach of contract to provide certain retirement benefits after Agilent was spun-out of H-P.

*Coscarart v. Major League Baseball*. Represented a certified class of former major league baseball players in an action arising out of alleged underpayments to the class members from a pooled royalty program managed by Major League Baseball. The class won a favorable jury verdict at trial.

*Jones v. Hewlett-Packard Co.* Represented a certified partial nationwide class of consumers in antitrust action challenging competitive practices of primary market seller.

*Nevins v. Oakland Raiders, et al.* Represented plaintiff in putative class action challenging administration of personal seat licenses under B&P Section 17200 and the California Consumer Legal Remedies Act.

*Ruelas v. Top Productions*, et al. Represented a certified class of low-wage workers for violations of overtime and rest break laws.

*Lazar, et al. vs. AMO, Inc. et al*. Represented a certified class of consumers throughout California who purchased Complete Moisture Plus contact lens solution, alleging false advertising.

*Leffert v. Amazon.com, Inc. et al.* Represented two manufacturing defendants who sold MP3 players in a state court action alleging false advertising of the devices' memory storage capacity in violation of California's Unfair Competition Law, Business & Professions Code Section 17200, *et seq.*

CALVO FISHER & JACOB LLP
Guam   Saipan   San Francisco

***PPG Flat Glass Cases***.  Represented a defendant in indirect purchaser class action in state court alleging price fixing of window glass used in residences and automobiles.

***Badie v. Bank of America NT&SA.***  Represented defendant bank in action challenging validity of change-of-terms notice requiring mandatory arbitration of some account holder lawsuits.

***Lien v. Barclays Bank***.  Represented defendant bank in an action alleging unconscionable credit card overlimit fees.

***Long v. Standard Federal Savings & Loan***.  Represented defendant in action challenging payment of mortgage payoff fee.

***Rudolfi v. Bank of America NT&SA***; ***Perdue v. Crocker National Bank***.  Represented the defendants in two separate actions challenging fees levied on deposit accounts for insufficient funds and deposited items returned.

***Cordellos v. City and County of San Francisco***.  Represented defendant city in a class action brought by blind and low-vision riders of public transit system for alleged violations of the Americans with Disabilities Act.

**Federal Court**

***Kraszewski v. State Farm***.  Represented defendant in multiple arbitrations in the claims and damages phase of sex-discrimination action.

***In re Sony PS3 "Other OS" Litigation***. Interim co-lead counsel for a class of consumers against Sony Computer Entertainment America arising out of Sony's decision to eliminate an advertised function on its Playstation 3 video game console.

***Simpao v. Government of Guam***, 369 Fed.Appx. 837 (9th Cir. 2010).  Represented the Government of Guam in a class action seeking refund of earned income tax credits that the government had allegedly withheld.  The case resulted in a $92 million settlement that was upheld on appeal.

***In re 901 Harrison Street***.  Represented defendant city in putative class action for alleged civil rights violations arising out of New Year's Eve arrests of gay revelers.

***In re Rodney King Riots***.  Represented defendant city and city officials in certified class action arising out of alleged civil rights violations suffered during arrests during San Francisco's riots after the Rodney King verdict.

***Ray v. BlueHippo Funding, LLC.***  Represented the defendant, which was a seller of personal computers, in a putative class action alleging violations of the California Consumer Legal Remedies Act, Unfair Competition Law and Unruh Act.

# C A L V O   F I S H E R   &   J A C O B   LLP

GUAM    SAIPAN    SAN FRANCISCO

***Memon v. Global Cyber Strategies, Inc., et al***.  Represented the defendant in putative class action for alleged unfair competition and email spamming in violation of state and federal law.

***In re Robert T. Harvey Sec. Litig.***  Represented the issuer and former directors in federal putative securities class action under Rule 10b-5 and state law alleging misrepresentations and omissions in multiple private placement memoranda.

***Warren v. Meris Laboratories, et al.***  Represented the corporation and individual officers and directors in certified federal securities class action challenging accounting treatment of acquisition costs under Rule 10b-5, resulting in summary judgment on behalf of all defendants.

C A L V O   F I S H E R   &   J A C O B   LLP

GUAM    SAIPAN    SAN FRANCISCO

## ATTORNEY PROFILES

**Kathleen V. Fisher**

Ms. Fisher is the managing partner of Calvo Fisher & Jacob LLP's San Francisco office. Ms. Fisher, who has been successfully trying cases for more than 30 years, has been lead attorney on many high-stakes matters over the course of her career, representing Marin Community Foundation in the Buck Trust litigation, Bank of America on high profile financial services class action matters, the executor of the estate of DHL Founder Larry Hillblom in what has been called the "World Cup" of probate litigation, and the Japanese bankruptcy trustee for EIE International in a precedent setting $200 million settlement.

Ms. Fisher is actively engaged in a general business litigation and trial practice, including complex cross-border litigation and class actions involving consumers, Title VII, and ERISA. She also has extensive experience in real property, professional liability, fiduciary, international, and ADR-related litigation. She has tried many jury and non-jury cases, including consumer class actions and unfair competition, criminal defense, labor and probate matters.

In 2011, *The Recorder* named Ms. Fisher one of "20 Women Leaders in the Law" in recognition of her standing as one of California's leading lawyers. The *Daily Journal* named her one of California's Top Women Litigators in 2008 and 2009 and she has been selected by her peers for inclusion in Northern California *Super Lawyers* (2007-2011).

Ms. Fisher was formerly a partner with Morrison & Foerster in San Francisco where she was lead counsel on a number of high-profile cases. She became an associate at Morrison in 1976 and a partner in 1982. She was worldwide Chair of the firm's Litigation Department from 1993 to 1996, longtime member of Morrison's Board of Directors, and formerly Managing Partner of the San Francisco office.

She has authored books and numerous articles on trial and ADR topics. She is also a frequent lecturer and panelist on a variety of topics in the civil litigation area for organizations such as the National Institute for Trial Advocacy, the American Bar Association, Continuing Education of the Bar, and the Northern District of California Federal Practice Program.

Ms. Fisher is active in professional and civic organizations. She is a member of the San Francisco Law Library Commission and has previously served on the Board of Directors of the Bar Association of San Francisco and various San Francisco-based non-profits. She is currrently a member of the board of directors of Pangaea Global AIDS Foundation. She has received numerous awards for community service, including the San Francisco AIDS Foundation's Leadership Award in 2004.

Ms. Fisher received her B.A. degree from the University of California at Los Angeles in 1971, *cum laude*, and her J.D. degree from the University of California, Davis Law School in 1976, Order of the Coif. She externed for Justice Raymond Sullivan of the California Supreme Court in 1976.