Rosemary M. Rivas (State Bar No. 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700/Facsimile: (415) 398-8704

Kathleen Fisher (State Bar No. 70838)
kfisher@calvofisher.com
**CALVO FISHER & JACOB LLP**
555 Montgomery Street, Suite 1155
San Francisco, California 94111
Telephone: (415) 373-8370/Facsimile: (415) 374-8373

James Pizzirusso (*pro hac vice*)
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200/Facsimile: (202) 540-7201

*Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| In re SONY PS3 "OTHER OS" LITIGATION | Case No. 4:10-CV-01811-YGR |
| --- | --- |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date:        January 24, 2017<br>Time:        2:00 PM<br>Judge:       Hon. Yvonne Gonzalez Rogers<br>Courtroom: 1, 4th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 24, 2017, at 2:00 p.m., in Courtroom 1, 4th Floor of the United States District Court for the Northern District of California, Oakland Courthouse, located at 1301 Clay Street, San Francisco, California 94612, before the Honorable Yvonne Gonzalez Rogers, Plaintiffs Derrick Alba, Jason Baker, James Girardi, Jonathan Huber, and Anthony Ventura hereby move for an order granting Class Counsel an award of $2,250,000.00 for attorney's fees and reimbursement of costs and incentive awards in the aggregate amount of $17,500.00 (or $3,500 for each named plaintiff).

This motion is based on this notice; the attached memorandum of points and authorities; the accompanying Declarations of Rosemary M. Rivas, James Pizzirusso, and Kathleen Fisher and exhibits thereto; and the argument of counsel and all records on file in this matter.

DATED: November 30, 2016                    Respectfully Submitted,

**FINKELSTEIN THOMPSON LLP**

By */s/ Rosemary M. Rivas*
    Rosemary M. Rivas

1 California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

**CALVO FISHER & JACOB LLP**

By: */s/ Kathleen Fisher*
    Kathleen Fisher

555 Montgomery Street, Suite 1155
San Francisco, California 94111
Telephone: (415) 374-8370
Facsimile: (415) 374-8373

**HAUSEFELD LLP**

By: */s/ James Pizzirusso*
    James Pizzirusso

1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     SUMMARY OF SETTLEMENT BENEFITS ....................................................... 3

III.    SUMMARY OF CLASS COUNSEL'S WORK IN THE CASE............................. 4

   A.   April 2010 – July 2010: Pre-Filing Investigation, Filing of the Complaints and Consolidation of
        the Actions .......................................................................................................... 4

   B.   September 2010-January 2014: Motion Practice and Subsequent Appeal ...................................... 6

   C.   October 2010 – December 2011 and January 2014 –August 2015: Plaintiffs    Conducted
        Extensive Discovery .............................................................................................. 7

   D.   July 2011 and August 2015—May 2016: Settlement Negotiations and Preliminary Approval...... 8

   E.   Supervision of the Settlement's Notice and Claims Processes. ...................................... 9

IV.     PLAINTIFFS' COUNSELS' TIME AND EXPENSES................................................. 10

V.      THE REQUESTED ATTORNEYS' FEES AND INCENTIVE AWARDS ARE  REASONABLE
        AND APPROPRIATE ........................................................................................... 11

   A.   Applicable Standards for an Appropriate Fee.......................................................... 11

   B.   Plaintiffs Are Entitled To A Fee Award Under The Consumers Legal Remedies Act and the
        Private Attorney General Statute. ........................................................................ 12

      1.   The Consumers Legal Remedies Act, Cal. Civ. Code § 1780(e) ........................................ 12

      2.   The Private Attorney General Statute, Cal. Code Civ. P. § 1021.5 .................................. 13

   C.   California Applies the Lodestar/Multiplier Method Of Calculating A Reasonable Fee ............... 14

      1.   Class Counsel's Lodestar ............................................................................. 15

      2.   Application of a Multiplier.......................................................................... 16

      3.   Comparison of the Amount Requested Against the Class Recovery ............................... 17

D.   Plaintiffs' Request for Reimbursement of Expenses ..................................................... 19

    1.   Mandatory Costs.......................................................................................... 19

    2.   Discretionary Costs ...................................................................................... 19

    3.   Prohibited Costs .......................................................................................... 20

E.   The Class Representative Should Receive a $3,500 Incentive Award for Their Efforts Helping to Secure the Settlement Benefits for the Entire Class. ............................................................... 21

VI.   CONCLUSION.................................................................................................... 22

TABLE OF CONTENTS
CASE NO. 4:10-CV-01811-YGR

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Californians for Disability Rights, Inc., et. Al. v. California Department of Transportation, et al.* (N.D. Cal. Dec. 13, 2010) 2010 U.S. Dist. LEXIS 141030 ...........................................................................16

*Camberis v. Ocwen Loan Serv. LLC* (N.D. Cal. Dec. 7, 2015) 2015 U.S. Dist. LEXIS 163826 .............22

*Champion Produce, Inc. v. Ruby Robinson Co.* (9th Cir. 2003) 342 F.3d 1016 ......................................11

*Clausen v. M/V New Carissa* (9th Cir. 2003) 339 F.3d 1049 ...................................................................19

*Coles v. City of Oakland,* (N.D. Cal. Jan. 4, 2007) 2007 WL 39304.........................................................16

*Collado v. Toyota Motor Sales, U.S.A., Inc.* (9th Cir. 2013) 550 Fed. Appx 368 ............................ 11, 18

*Exxon Mobil Corp. v. Allapattah Servs.* (2005) 545 U.S. 546 ................................................................11

*G.F. v. Contra Costa City.* (N.D. Cal. Nov. 25, 2015) 2015 WL 7571789 ...............................................16

*Ingram v. Coca-Cola Co.* (N.D. Ga. 2001) 200 F.R.D. 685.....................................................................22

*Jefferson v. Chase* (N.D. Cal. 2009) 2009 U.S. Dist. LEXIS 64607 ..................................................18, 19

*Jones v. Bath & Body Works, Inc.* (C.D. Cal. July 11, 2016) 2016 U.S. Dist. LEXIS 89681 ..................11

*Mangold v. California Pub. Utils. Comm'n* (9th Cir. 1995) 67 F.3d 1470 ..............................................11

*McIntosh v. McAfee, Inc.,* (N.D. Cal. Mar. 13, 2009) WL673976 ...........................................................16

*Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106 ...............................................................15

*Page v. Something Weird Video* (C.D. Cal. 1996) 960 F.Supp. 1438 ....................................................20

*Parkinson v. Hyundai Motor Am.* (C.D. Cal. 2010) 796 F.Supp.2d 1160 ..............................................19

*Rodriguez v. West Publ'g Corp.* (9th Cir. 2009) 563 F.3d 948 ...............................................................21

-iii-

*Singer v. Becton Dickinson & Co.* (S.D. Cal. June 1, 2010) 2010 U.S. Dist. LEXIS 53416 ...................22

*Sony PS3 "Other OS" Litig. v. Sony Computer Entm't Am., Inc.* (9th Cir. 2014) 551 Fed. Appx 916........6

*Tait v. BSH Home Appliances Corp,* 2015 U.S. Dist. LEXIS 98546 ...................................17,18

*Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043 ...........................................12

*Weeks v. Kellogg Co.* (C.D. Cal. Nov. 23, 2011) 2011 U.S. Dist. LEXIS 155472 ................................22

*Wilson v. Airborne, Inc.* (C.D. Cal. Aug. 13, 2008) 2008 U.S. Dist. LEXIS 110411 ..............................21

*Winterrowd v. Am. Gen. Annuity Ins. Co.* (9th Cir. 2009) 556 F.3d 815................................................15

*Wren v. RGIS Inventory Specialists* (N.D. Cal. Apr. 1, 2011) U.S. Dist. LEXIS 38667.........................22

## FEDERAL STATUTES

15 U.S.C. § 2301 ..............................................................................................................5

18 U.S.C. § 1030 ..............................................................................................................5

28 U.S.C. § 1332(d) .......................................................................................................11

## STATE CASES

*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43 ...........................................................17

*Gibson v. Bobroff* (1996) 49 Cal.App.4th 1202 ..............................................................20

*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140 .....................................12

*Hayward v. Ventura Volvo* (2003) 108 Cal.App.4th 509 ............................................. 12, 19

*In re Consumer Privacy Cases* (2009) 175 Cal.App.4th 545 ...........................................15, 17

*Ketchum v. Moses* (2001) 24 Cal.4th 1122 ....................................................................17

*Kim v. Euromotors West/The Auto Gallery* (2007) 149 Cal.App.4th 170 ................................12

*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761 ................................20

*Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19 ................................15

*Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331 ................................13, 14

*Meister v. Regents of Univ. of Cal.* (1998) 67 Cal.App.4th 437 ................................14

*Roos v. Honeywell Internat., Inc.* (2015) 241 Cal.App.4th 1472 ................................12, 14

*Ryan v. California Interscholastic Federation* (2001) 94 Cal.App.4th 1033 ................................14

*Science Appl. Int'l. Corp. v. Superior Court* (1995) 39 Cal.App.4th 243 ................................21

*Science Applications Internat. Corp. v. Superior Court* (1995) 39 Cal.App.4th 1095 ................................20

*Vasquez v. State of California* (2008) 45 Cal.4th 243 ................................13

*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440 ................................19

*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224 ................................17

**STATE STATUTES**

Cal. Bus. & Prof. Code, §§ 17200 *et seq.* ................................5

Cal. Bus. & Prof. Code, §§ 17500 *et seq.* ................................5

Cal. Civ. Code, §§ 1750 *et seq.* ................................5

Cal. Civ. Code, § 1780(e) ................................12, 19

Cal. Code Civ. Proc., § 1021.5 ................................13, 14

Cal. Code Civ. Proc., §§ 1033.5(a)(1), subds. (3)-(4), (7) ................................19

Cal. Code Civ. Proc., § 1033.5(b) ................................20, 21

Cal. Code Civ. Proc., § 1033.5(c) .......................................................................................... 20

**OTHER AUTHORITIES**

Fed. R. of Civ. P. 23(h) ..........................................................................................................11

Fed. R. of Civ. P. 30(b)(6) .............................................................................................. 8, 9, 10

TABLE OF AUTHORITIES
CASE NO. 4:10-CV-01811-YGR

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This action arose out of Defendant Sony Computer Entertainment America, LLC's ("Defendant," "SCEA") marketing and sale of the Sony PlayStation®3 ("PS3"), a traditional video gaming console that, unlike some of its competitors, could also be used as a computer, to play games online, and to watch Blu-Ray movies. Plaintiffs allege that in order to have computer functionality, SCEA marketed and sold the PS3 as having the ability to run another operating system, such as Linux (hereafter referred to as "Other OS"), in addition to the native game operating system. SCEA subsequently decided to remove the "Other OS" functionality via firmware update 3.21. Several million PS3 units were sold in the United States and ranged in price from approximately $400 to $600. Throughout the pendency of the case, Defendant has vigorously denied liability and disputed the propriety of this case.  Indeed, the case was initially dismissed only to be partially reversed by the Ninth Circuit Court of Appeals. Among other things, SCEA argued that it had the right to remove the Other OS pursuant to its terms of service and other purported agreements, and that the Other OS was not a core functionality of the PS3 that was material to the vast majority of purchasers. While Plaintiffs disagreed with SCEA's positions, Plaintiffs acknowledged that the Other OS function was geared more towards highly sophisticated computing specialists and not widely advertised.

This Court preliminarily approved the proposed class action settlement embodied in the Stipulation of Class Action Settlement & Release (Dkt. No. 259-1), negotiated by the Parties in this Action.[1]  Now, after almost six years of hotly-contested litigation, three different judges, discovery, and intense settlement negotiations that resulted in the Settlement, Plaintiffs move for an award of: (a) attorneys' fees and reimbursement of costs in the amount of $2.25 million; and (b) a $3,500 incentive award for each of the Class representatives. Notably, SCEA has agreed to pay this amount in addition to the relief provided by the Settlement and none of the funds the Court awards will diminish the amounts

---

[1] Unless otherwise stated, capitalized terms have the same meaning as in the Stipulation of Class Action Settlement & Release ("Settlement" or "Agreement"), attached as Exhibit B to the Declaration of Rosemary M. Rivas ("Rivas Decl.").

given to the Class. By the same token, any amount below $2.25 million not awarded to Class Counsel will be retained by SCEA. As discussed further below, Plaintiffs' requested fee of (after the deduction of expenses) is reasonable and reflects a significant discount off the collective lodestar in this case.

The Settlement's benefits, which directly resulted from the efforts of Class Counsel, are important. First, Defendant has agreed to pay $55.00 to every potential Class member who submits a valid claim showing, among other things, proof that he or she used the Other OS functionality, and $9.00 to all other Class Members who submit a valid claim and attesting, among other things, that they lost value and/or desired functionality or believed that they were otherwise injured as a consequence of the firmware update. Given the potential difficulty the parties had in identifying from SCEA's records the actual users of the Other OS feature, the Settlement had *no* limit on the number of valid claims that Defendant is required to pay. Second, Class Counsel enforced important consumer protection statutes, such as California's Consumers Legal Remedies Act and the Unfair Competition Law. Had it not been for this lawsuit and Class Counsel's efforts, including the appellate work that resulted in a favorable Ninth Circuit decision, Class members' claims here, which are modest, would have likely gone without redress.

For more than six years, Class Counsel worked on this case on a purely contingency basis. This work included extensive factual and legal investigation, motion practice on the pleadings followed by an appeal in the Ninth Circuit, extensive discovery (including review of tens of thousands of documents and taking and defending over a dozen depositions), two separate hard-fought settlement conferences overseen by the Honorable James Warren (Ret.) and later the Honorable Howard B. Weiner (Ret.), and months of painstaking negotiations over the settlement documents, which ultimately resulted in the settlement embodied in the Agreement. Class Counsel also oversaw the settlement administration process, including interviewing experienced settlement administrators and notice consultants, weighing competing and detailed proposed notice plans, overseeing the development of the settlement website at www.otherossettlement.com, and monitoring the on-going claims process (including amending it to make it consumer friendly). To date, Class Counsel have expended over 5,237 hours for a collective lodestar of $2,549,922.00 and the lodestar will continue growing. Thus, Class Counsel's request for a fee award of $2,186,105.41, and for reimbursement of costs and expenses in the amount of $63,894.59

are not only reasonable, but also warranted given the benefits attained for the Class and the enforcement of California's consumer protection statutes.

Finally, the Class Representatives provided valuable input and assistance throughout this litigation. They retained counsel, reviewed and authorized the filing of the complaint, produced their PS3s for imaging and other documents in their possession, appeared for deposition, stayed abreast of the litigation, and communicated with their lawyers regarding settlement. Because of this important and time consuming work on behalf of the Class, Class Counsel seek an incentive award of $3,500 for each of the Class Representatives, as well.

As explained in more detail below, the requested fee, expense and incentive awards are reasonable under applicable law and Plaintiffs respectfully request that the Court grant this motion in its entirety.

## II.    SUMMARY OF SETTLEMENT BENEFITS

Under the terms of the Settlement, the Class[2] is defined as: all persons in the United States who purchased a Fat PS3 model[3] in the United States between November 1, 2006, and April 1, 2010, from an unauthorized retailer for family, personal, and/or household use. Agreement ¶ 12.

SCEA will pay $55 to each Class member who utilized the Other OS functionality ("Consumer Class A") and submits a valid claim. *Id.* at ¶ 68(A). Consumer Class A claimants must attest under oath to their purchase of the product and installation of Linux, provide proof of their purchase or serial number[4] and PlayStation Network Sign-in ID, and submit some proof of their use of the Other OS

---

[2] Excluded from the Class are: (a) any persons who are employees, directors, officers, and agents of Defendant or its subsidiaries and affiliated companies; (b) any persons who timely and properly exclude themselves from the Settlement; and (c) the Court, the Court's immediate family, and Court staff. Agreement ¶ 12.

[3] A "Fat PS3" means the Sony PlayStation®3 computer entertainment console that was manufactured between approximately November 1, 2006 and September 2009 that included the Other OS functionality.  Agreement ¶ 20.

[4] After concerns were raised that some class members might no longer have their PS3s and thus have no serial number available, the parties agreed that class members could obtain a temporary ID from the claims administrator which SCEA would then cross check against internal records to ensure that the claimant was a member of the class. Assuming the rest of their claim is valid, they will then be eligible

functionality.  Exemplars of the types of acceptable proofs of use were attached to the Long Form Notice posted on the Settlement Website.

SCEA also agreed to pay $9.00 to each Class member who, at the time of purchase, knew about the Other OS, relied upon the Other OS functionality, and intended to use the Other OS functionality ("Consumer Class B") and submits a valid claim.  Agreement ¶ 68(B)(1)(a)(ii)(a).  Alternatively, a member of Consumer Class B may attest that he or she lost value and/or desired functionality or was otherwise injured as a consequence of Firmware Update 3.21 issued on April 1, 2010.  *Id.* at ¶ 68(B)(1)(a)(ii)(b). To present a valid claim, Consumer Class B claimants must also attest to their purchases and provide proof of purchase or a PS3 serial number and PlayStation Network Sign-in ID. *Id.* at ¶ 68(B)(1)(b)(i)-(ii).

The Parties' settlement provided for robust notice estimated to reach at least 77% of Class Members, including two rounds of direct notice via email to several million class members.[5]  As described in the Declaration of Stephen Cirami, submitted in connection with preliminary approval, the Notice Program combined direct and publication notice via the Internet and newspapers was robust. The Notice Program's execution will be explained in more detail in the forthcoming motion for final approval.

III.   **SUMMARY OF CLASS COUNSEL'S WORK IN THE CASE**

A.   **April 2010 – July 2010: Pre-Filing Investigation, Filing of the Complaints and Consolidation of the Actions**

In late March 2010, SCEA announced that it was going to remove the "Other OS" function from the PS3 via a firmware update issued April 1, 2010.[6]  Several law firms filed suit, including

to obtain the Settlement's benefits (under Class A or Class B) even though they may no longer have a proof of purchase or serial number available.  This change was promoted in the second round of notice as well as on the settlement website.

[5] The Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide states that it is reasonable to reach between 70% and 95% of class members.  *Id.* at 3.

[6] The facts stated herein are set forth in the accompanying Rivas, Pizzirusso and Fisher Declarations.

-4-

Finkelstein Thompson LLP, Hausfeld LLP and Calvo & Clark LLP (now Calvo Fisher & Jacob LLP), among several others, all of whom had independently and thoroughly investigated the facts and potential claims against Defendant, prepared and filed class action complaints beginning on April 27, 2010.[7] At the request of the Plaintiffs, the Honorable Richard Seeborg eventually consolidated the various pending cases as *In re Sony PS3 "Other OS" Litigation* and appointed Finkelstein Thompson LLP, Hausfeld LLP and Calvo Fisher & Jacob LLP as Interim Co-Lead Counsel.

After those three firms were appointed to serve as interim lead counsel, they began research for a Consolidated Class Action Complaint, including locating and analyzing Defendant's representations regarding the Other OS on the Internet, on product packaging, and other sources. They also analyzed Defendant's terms of service, analyzed the potential claims and defenses, and interviewed a number of PS3 owners who complained about SCEA's removal of the Other OS. Class Counsel then prepared and filed the Consolidated Class Action Complaint ("Consolidated Complaint") on July 30, 2010, alleging causes of action for statutory violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"); the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"); the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*; and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* Plaintiffs also alleged common law claims for breach of express warranty; breach of the implied warranty of merchantability; breach of the implied warranty of fitness for a particular purpose; conversion and unjust enrichment. Plaintiffs sought damages, restitution and injunctive relief. *Id.*

---

[7] Other firms also independently filed class action complaints. The names of all the cases filed in the Northern District are: *Ventura v. Sony Computer Entertainment America, Inc.,* Case No. CV-10-01811-RS; *Baker, et al. v. Sony Computer Entertainment America, LLC,* Case No. CV-10-01897-RS; *Densmore, et al. v. Sony Computer Entertainment America, Inc.,*Case No. CV-10-1945-RS; *Wright v. Sony Computer Entertainment America, Inc., et al.,* Case No. CV-10-01975-RS; *Huber v.Sony Computer Entertainment America, LLC,* Case No. CV-10-02213-RS; *Harper, et al. v. Sony Computer Entertainment America, Inc.,* Case No. CV-10-02197-RS; and *Benavides v. Sony Computer Entertainment America, Inc.,* Case No. CV-10-02612-RS.

### B.    September 2010-January 2014: Motion Practice and Subsequent Appeal

On September 10, 2010, SCEA moved to dismiss the Consolidated Complaint on several grounds, and moved to strike the class allegations. Dkt. Nos. 96-97. Plaintiffs researched and drafted oppositions to SCEA's motions which they filed on October 12, 2010, and SCEA filed its reply briefs on October 21, 2010. Dkt. Nos. 103-106. Judge Seeborg heard the motions on November 4, 2010, and on February 17, 2011, entered an order granting in part, and denying in part, the motion to dismiss (with leave to amend), and denied the motion to strike. Dkt. No. 108. According to Judge Seeborg, the Consolidated Complaint was deficient in the following respects: Plaintiffs had failed to allege that SCEA made express representations as to the *continued* availability of the "Other OS" functionality; Plaintiffs did not identify the particular representations on which they relied; Plaintiffs did not allege how SCEA had been unjustly enriched; and Plaintiffs did not show that Sony had assumed control or ownership of any of Plaintiffs' property, among other things. *Id.*

Plaintiffs invested additional significant time and effort in drafting the First Amended Consolidated Class Action Complaint ("First Amended Complaint") to address Judge Seeborg's concerns. Ultimately, Plaintiffs filed a very detailed First Amended Consolidated Complaint consisting of 341 paragraphs and almost 100 pages. Dkt. No. 165. On April 28, 2011, however, SCEA again moved to dismiss. Dkt. No. 168. Plaintiffs researched and drafted an opposition brief that they filed on April 18, 2011, and SCEA filed its reply brief on April 28, 2011. Dkt Nos. 173, 176. Judge Seeborg heard SCEA's motion to dismiss on July 21, 2011. Dkt. No. 179. On December 8, 2011, Judge Seeborg entered an order dismissing the entire action without leave to amend. Dkt. No. 185.

Plaintiffs filed a Notice of Appeal on December 22, 2011. Dkt No. 193. They prepared the record, appellate briefs and after full briefing by the Parties, the Ninth Circuit heard oral argument on October 11, 2013. Dkt. No. 32. In a memorandum dated January 6, 2014, the Ninth Circuit affirmed in part, and reversed in part, the dismissal of Plaintiffs' case. *See In re Sony PS3 "Other OS" Litig. v. Sony Computer Entm't Am., Inc.,* 551 Fed. Appx. 916 (9th Cir. 2014). Among other things, the Ninth Circuit held that the district court erred in dismissing the UCL claims for violations of the unlawful, unfair and fraudulent prongs, the FAL claim, and the CLRA claims for violations of Sections

-6-

1770(a)(5) and (a)(7). The Ninth Circuit affirmed the district court's dismissal of the remaining claims and remanded the case back to the district court.

Plaintiffs filed the Second Consolidated Class Action Complaint on May 29, 2014, which SCEA answered on June 27, 2014. Dkt. Nos. 213, 219. The parties then proceeded to active litigation and discovery.

### C.   October 2010 – December 2011 and January 2014 –August 2015: Plaintiffs Conducted Extensive Discovery

The Parties engaged in extensive discovery both before the appeal and afterwards. While SCEA's motions to dismiss and strike were pending, Plaintiffs served written discovery, including document requests and interrogatories.  Having reached an impasse on several discovery issues, such as whether Plaintiffs had to produce their PS3s and personal computers for SCEA's inspection and whether SCEA had to produce documents from its corporate parent in Japan, Plaintiffs researched, prepared and filed a motion for a protective order and a motion to compel other discovery on December 15, 2010. Dkt. No. 111-12. SCEA opposed Plaintiffs' motions to compel and for a protective order on January 18, 2011, and Plaintiffs researched, prepared and filed reply briefs on January 26, 2011. Dkt. No. 124-125, 142. For its part, SCEA filed a motion to compel discovery on December 15, 2010. Plaintiffs researched, drafted and prepared an opposition brief that was filed on January 18, 2011, and SCEA filed a reply brief on January 26, 2011. Dkt. No. 139.

After holding a lengthy hearing, (then Magistrate) Judge Edward M. Chen issued an order granting in part and denying in part Plaintiffs' motion to compel and motion for a protective order. Dkt. No. 152. Judge Chen ordered the Plaintiffs to produce their PS3s for imaging, but not their personal computers as requested by SCEA, and that Plaintiffs could direct focused discovery at SCEA's Japanese parent corporation. *Id.* Further discovery disputes arose, however, surrounding the details of the PS3 imaging process, the depositions of the named plaintiffs, and the scope of discovery to be served on SCEA's parent company. Both SCEA and Plaintiffs submitted carefully researched letter briefs to Judge Chen about the disputes. Dkt. Nos. 169-171. Judge Chen subsequently issued an order

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS & INCENTIVE AWARD
CASE NO. 4:10-CV-01811-YGR

regarding the disputes and letters on April 11, 2011. Dkt. No. 172. SCEA also deposed two of the named plaintiffs before the case was dismissed with prejudice by Judge Seeborg.

After the appeal was resolved in 2014, the Parties restarted discovery. SCEA deposed the remaining three named plaintiffs and imaged the PS3s of all of the named plaintiffs. Plaintiffs also responded to interrogatories and document requests propounded by SCEA.  Plaintiffs deposed seven (7) SCEA witnesses, three of whom were designated to testify on behalf of SCEA pursuant to Fed. R. Civ. P. 30(b)(6). Plaintiffs also reviewed tens of thousands of pages of documents produced by SCEA, as well as SCEA's responses to their interrogatories, and engaged in several meet and confers with SCEA about those responses.  If the parties had not settled, Plaintiffs anticipated filing motions to compel on several issues and had begun to prepare those, as well. In addition, in anticipation of class certification, Plaintiffs interviewed, retained, and worked extensively with several experts who were preparing to conduct surveys and provide other evidence in support of Plaintiffs' class certification motion.

### D.      July 2011 and August 2015—May 2016: Settlement Negotiations and Preliminary Approval

While SCEA's second motion to dismiss was pending in 2011, the Parties participated in an initial private mediation before the Honorable James L. Warren (Ret.) of JAMS. In preparation of the mediation, which was a full-day session and took place on July 7, 2011, the Parties prepared detail mediation briefs outlining the respective strengths and weaknesses of their claims and defenses.  The Parties were unable to reach a settlement that day and, once the case was dismissed, the Parties ended settlement discussions.

After Plaintiffs' win in the Ninth Circuit and the completion of additional discovery, the Parties renewed their settlement efforts.  The Parties participated in a second mediation before the Honorable Howard B. Weiner (Ret.) on August 20, 2015.  In preparation for the mediation, the Parties again prepared detailed mediation briefs that took into account the Ninth Circuit's 2014 decision as well as key evidence that had been discovered in the case in support of the Parties' respective positions. While the parties were unable to reach an agreement on all terms that day, they did make substantial

-8-

progress towards a term sheet and continued to engage in numerous discussions to see if a final resolution could be reached.

Over the next five months, the parties had numerous teleconferences and sought several stays until they finally signed a Memorandum of Understanding ("MOU") in January 2016. Once the MOU was fully executed, the Parties proceeded to draft the Agreement and ancillary documents which also proved to be difficult as the details of many terms regarding notice and proof requirements still needed to be negotiated. Indeed, it took nearly five months, and more stays, for the Parties to negotiate the final settlement terms and execute the Settlement Agreement.

The Parties finalized and executed the Settlement Agreement on June 17, 2016. Additionally, Plaintiffs prepared and filed a detailed motion for preliminary approval, which the Court heard on July 19, 2016. Pursuant to this Court's request, Plaintiffs then prepared and submitted supplemental briefing addressing the types of proof of use of the "Other OS" that Class Members could submit to claim $55. The Court granted preliminary approval on September 8, 2016.

### E. Supervision of the Settlement's Notice and Claims Processes.

While Class Counsel engaged in settlement discussions, they also interviewed a number of experienced settlement administrators and notice consultants. Class Counsel considered detailed proposed notice plans that were submitted by the candidates, and ultimately selected Garden City Group. After the Court preliminarily approved the Settlement, Class Counsel closely supervised the Settlement Administrator's activities. These efforts included reviewing and editing the final draft of the email notice; ensuring that the relevant documents and important deadlines were posted on the settlement website; ensuring that the online claims process properly functioned; supervising Garden City's Group's communications with Class members; and monitoring the on-going claims process. Class Counsel have also responded to Class member inquiries and assisted them with filing claims, and will continue to do so through distribution, should the Court grant final approval.

In addition, as described above in fn. 4, after the first round of email notice, Class Counsel noticed that the number of claims was below what they had anticipated (although the parties had no knowledge of the actual number of users of the Other OS function). After consulting with Garden City

Group and SCEA, one issue (raised in one of the three objections received to date) appeared to be that some class members had no proof of purchase and no longer had their PS3 units from which to obtain serial numbers.  Because those records were in SCEA's possession (albeit not in an easily accessible format), the Class Counsel negotiated an option with SCEA whereby class members who no longer possessed their units and could not obtain serial numbers could obtain a temporary ID number from Garden City which SCEA would then use to cross check against their own records to ensure that Class Members had purchased a PS3 and were not committing fraud.

## IV.   PLAINTIFFS' COUNSELS' TIME AND EXPENSES

To date, interim Class Counsel have expended 5,237.90 hours in professional time and incurred $93,515.50 in expenses since their investigation began in the spring of 2010.  Rivas Decl., Exh. E; Pizzirusso Decl., Exh. B; Fisher Decl., Attachment 2. Class Counsels' hours, lodestars and expenses are as follows.

| Firm | Hours | Lodestar Amount | Expenses |
|------|-------|-----------------|----------|
| Finkelstein Thompson LLP | 1,656.90 | $828,984.50 | $25,945.37 |
| Calvo Fisher & Jacob LLP | 1,919.90 | $892,750.00 | $19,426.28 |
| Hausfeld LLP | 1,661.10 | $891,187.50 | $48,143.85 |
| Total | 5,237.90 | $2,549,922.00 | $93,515.50 |

In addition, Class Counsel directed work to other firms who had been involved in the case, many of whom had clients who remained as class representatives. Class Counsel oversaw their work, directed their efforts, and periodically asked for and reviewed their time and expenses. Non-lead counsel have expended 4,037.3 hours in professional time, $2,008,868.75 in lodestar and $114,221.25 in expenses since their investigation began in the spring of 2010. A breakdown of these firm's hours, lodestars and expenses are set forth in Exhibit F attached to the Rivas Declaration.

//

**IV.    THE REQUESTED ATTORNEYS' FEES AND INCENTIVE AWARDS ARE REASONABLE AND APPROPRIATE**

**A.    Applicable Standards for an Appropriate Fee.**

At the conclusion of a successful class action, plaintiffs' counsel may move for an award of reasonable attorney fees. *See* Fed. R. Civ. P. 23(h). The first issue in assessing any such motion is to identify the applicable law, as both eligibility for a fee award and the method of calculating that award varies depending on whether state or federal law applies. The Court's jurisdiction in this case arises under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), which means the Court is sitting in diversity. *See Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 571 (2005) ("CAFA confers federal diversity jurisdiction over class actions . . . [.]").

In diversity actions, "state law governs both the right to recover attorney's fees and the computation of their amount." *Collado v. Toyota Motor Sales, U.S.A., Inc.,* 550 Fed. Appx. 368, 369 (9th Cir. 2013); *Champion Produce, Inc. v. Ruby Robinson Co.,* 342 F.3d 1016, 1024 (9th Cir. 2003) ("An award of attorneys' fees incurred in a suit based on state substantive law is generally governed by state law."); *Mangold v. Cal. Pub. Utils. Comm'n,* 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees."); *Jones v. Bath & Body Works, Inc.*, 2016 U.S. Dist. LEXIS 89681, at *22 (C.D. Cal. July 11, 2016) ("In diversity actions such as this one, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees."). Thus, California state law controls the method for determining fees here.

Plaintiffs filed this lawsuit alleging claims for violations of California's consumer protection statutes, including the CLRA, FAL and UCL. As California state law has governed Plaintiffs' claims in this action, it should also apply to Plaintiffs' motion for an award of attorney fees. *See, e.g., Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002) ("Because Washington law governed the claim, it also governs the award of fees."). California law suggests that Plaintiffs' fee request should be analyzed under a lodestar approach. *See Roos v. Honeywell Internat., Inc.,* 241 Cal. App. 4th 1472, 1490 (2015).

//

B.     Plaintiffs Are Entitled To A Fee Award Under The Consumers Legal Remedies Act and the Private Attorney General Statute.

### 1.     The Consumers Legal Remedies Act, Cal. Civ. Code § 1780(e)

Under the CLRA, one of the claims Plaintiffs alleged in the case, "[t]he court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to [the CLRA]." Cal. Civ. Code § 1780(e). As the California Supreme Court has observed, "the availability of costs and attorneys fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute." *Broughton v. Cigna Healthplans,* 21 Cal. 4th 1066, 1085 (1999); *see also Hayward v. Ventura Volvo,* 108 Cal. App. 4th 509 (2003) ("The provision for recovery of attorney's fees allows consumers to pursue remedies in cases as here, where the compensatory damages are relatively modest."). "Accordingly, an award of attorney fees to 'a prevailing plaintiff' in an action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by a pre-trial settlement agreement." *Kim v. Euromotors West/The Auto Gallery,* 149 Cal. App. 4th 170, 178-79 (2007).

California courts have adopted two approaches to determining when a party is a "prevailing plaintiff" entitled to a fee award under the CLRA. The first approach borrows from Section 1032 of the California Code of Civil Procedure and determines that a plaintiff is the prevailing party if he or she obtained a "net monetary recovery." *Kim,* 149 Cal. App. 4th at 179.  The second approach determines prevailing party status based on whether a party succeeded on a practical level. *Id.; see also Graciano v. Robinson Ford Sales, Inc.,* 144 Cal. App. 4th 140, 150-51 (2006).  Under this pragmatic approach, plaintiffs are considered prevailing parties "if they succeed on *any significant* issue in litigation which achieves *some of the benefit* the parties sought in brining suit." *Graciano*, 144 Cal. App. 4th at 154 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphasis added in *Graciano*).

Under either approach for determining prevailing party status, Plaintiffs qualify for an attorneys' fee award here. They alleged that SCEA violated the CLRA by advertising the PS3's Other OS function, and then later removing that function. They requested that SCEA compensate Class members for the loss of the function. Having achieved compensation for Class members through the Settlement,

-12-

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS & INCENTIVE AWARD
CASE NO. 4:10-CV-01811-YGR

Plaintiffs accomplished their primary litigation objection and thus are prevailing parties under both the "net monetary recovery" approach and *Graciano's* pragmatic approach.

> 2.     The Private Attorney General Statute, Cal. Code Civ. P. § 1021.5

Plaintiffs are also entitled to a fee award under Code of Civil Procedure § 1021.5, which the California Legislature enacted to codify the private attorney general doctrine previously developed by the courts. *Vasquez v. State of California,* 45 Cal. 4th 243, 250 (2008). The fundamental objective of the private attorney general doctrine is "to encourage suits enforcing public policies by providing substantial attorney fees to successful litigants in such cases." *Id.* Accordingly, Section 1021.5 authorizes an award of attorney fees to a "successful party" in any action that "has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." Code of Civ. Proc. § 1021.5; *see also Lyons v. Chinese Hosp. Ass'n,* 136 Cal. App. 4th 1331, 1344 (2006) ("Although section 1021.5 is phrased in permissive terms (the court 'may' award), the discretion to deny fees to a party that meets its terms is quite limited.").

Plaintiffs satisfy all requirements for an award of attorney fees under Section 1021.5:

- Plaintiffs qualify as a "successful party" under the statute for the same reasons they qualify as a "prevailing plaintiff" under the CLRA—they have achieved one of the primary benefits sought in bringing the lawsuit. *See Lyons,* 136 Cal. App. 4th at 1346 ("A 'successful' party means a 'prevailing' party.'''").

- Plaintiffs' case has conferred a significant benefit on a large class of persons by providing monetary relief to thousands of consumers who bought a PS3. They have also conferred a significant benefit on the public by enforcing important consumer protection rights and discouraging similarly unfair and deceptive treatment of consumers. *See Graham v. Daimler Chrysler Corp.,* 34 Ca1.4th 553,

578 (2004) ("It is well settled that attorney fees under section 1021.5 may be awarded for consumer class action suits benefiting a large number of people.").

• Without the incentive of an attorney fees award, Plaintiffs could not have afforded lawyers to litigate this case; their out-of-pocket losses were not significant enough to hire a lawyer and litigate an individual suit. *See Ryan v. California Interscholastic Federation,* 94 Cal. App. 4th 1033, 1044 (2001) ("As to the necessity and financial burden of private enforcement, an award *is appropriate where the cost of the* legal victory transcends the claimant's personal interest; in other words, where the burden of pursuing the litigation is out of proportion to the plaintiffs individual stake in the matter.").

• Finally, this is not a case where, in the interests of justice, attorney fees should be paid from the recovery. There is no common fund from which Plaintiffs' counsel could be paid, and Defendants have agreed to pay $2.25 million for attorney fees and expenses, subject to Court approval.

## C. California Applies the Lodestar/Multiplier Method Of Calculating A Reasonable Fee

To determine the amount of the fees to be awarded under the fee-shifting statutes at issue here, California courts apply the lodestar/multiplier method, particularly here where there is no common fund from which to seek fees. *See Roos v. Honeywell Internat., Inc.,* 241 Cal. App. 4th 1472, 1490 (2015) ("In fee-shifting cases, requests for attorney fees are typically measured under the lodestar method."); *Meister v. Regents of Univ. of California,* 67 Cal. App. 4th 437, 448-49 (1998) ("[T]he California Supreme Court intended its lodestar method to apply to a statutory attorney's fee award unless the statutory authorization for the award provided for another method of calculation"); *Lealao v. Beneficial California, Inc.* 82 Cal.App.4th 19, 26 (2000) ("[T]he primary method for establishing the amount of 'reasonable' attorney fees [in fee-shifting cases] is the lodestar method").

California's lodestar/multiplier method is a two-step process of fee calculation under which the Court first determines the lodestar (or touchstone) by "multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *In re Consumer Privacy Cases,* 175 Cal. App. 4th 545, 556 (2009). The Court may then enhance or reduce the lodestar by applying a multiplier to take into

account the contingent nature and risk associated with the action, as well as other factors such as the degree of skill required and the ultimate success achieved. *Id.*

### 1.     Class Counsel's Lodestar

Class Counsel have invested approximately 5,237.90 hours in the case and have a lodestar of $2,549,922.00, as detailed in the accompanying declarations of Rosemary M. Rivas, Kathleen Fisher, and James Pizzirusso. The aggregate is even higher, $4,558,790.75, when considering the reported lodestar of all plaintiffs' counsel.

In evaluating Class Counsel's lodestar, the Court should verify that both the time spent and the hourly rates reported are reasonable. The Court may adjust the lodestar figures, if appropriate, but should also clearly explain the basis for the adjusted figure. *See Moreno v. City of Sacramento,* 534 F.3d 1106, 1111-12 (9th Cir. 2008) ("Where the difference between the lawyer's request and the court's award is relatively small, a somewhat cursory explanation will suffice. But where the disparity is larger, a more specific articulation of the court's reasoning is expected.")

To assist the Court in evaluating the reasonableness of the time spent on this case, Class Counsel have presented detailed, sworn summaries of their work, and will also provide their daily time records if the Court believes it would be helpful. *See Winterrowd v. Am. Gen. Annuity Ins. Co.,* 556 F.3d 815, 827 (9th Cir. 2009) (when awarding fees under a California fee-shifting statute, "[t]estimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees"); *see also Procedural Guidance for Class Action Settlements* (available at http://www.cand.uscourts.gov/ClassActionSettlementGuidance) ("Declarations of class counsel as to hours spent on various categories of activities related to the action, together with hourly billing rate information may be sufficient, provided that the declarations are adequately detailed.").

Class Counsel have also submitted schedules of current hourly rates, as well as decisions of other courts approving those same or similar rates in past cases. *See McIntosh v. McAfee, Inc.,* 2009 WL 673976, *2 (N.D. Cal. Mar. 13, 2009) ("Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys who are engaged in similar

-15-

litigation charging similar rates.").[8] The reported rates are current rather than historical, which is appropriate to compensate Class Counsel for the delay in receiving payment for past services. *Coles v. City of Oakland,* 2007 WL 39304, *6 (N.D. Cal. Jan. 4, 2007) ("Under [California] state fee-shifting statutes, however, a fee applicant may be awarded a lodestar amount reflecting their present hourly rate . . . to compensate a fee applicant for delay in receiving payment."). Regardless, even if the hourly rates were harmonized and significantly decreased, or even if historical rates had been used, counsel's lodestar would significantly exceed any fee that the Court might award here.

### 2.     Application of a Multiplier

"Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *In re Consumer Privacy Cases,* 175 Cal. App. 4th at 556. Although all of these factors are important and can be considered, "the purpose of a fee enhancement is *primarily* to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases as a class." *See Ketchum v. Moses,* 24 Cal. 4th 1122, 1138 (2001) (emphasis added). Thus, in wholly-contingent consumer class actions like this one, California courts have approved fee awards with multipliers of 2 and even higher. *See, e.g., Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or even higher."); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008) (same). These cases recognize that a "lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.

---

[8] *See also G.F. v. Contra Costa Cty.*, 2015 WL 7571789, at *14 (N.D. Cal. Nov. 25, 2015) (court found that hourly rates of between $475-$975 for partners, $300-$490 for associates, and $150-$430 for litigation support and paralegals were reasonable); *Californians for Disability Rights, Inc., et. Al. v. California Department of Transportation, et al.*, 2010 U.S. Dist. LEXIS 141030, at *39 (N.D. Cal. Dec. 13, 2010) (rates of up to $835 per hour reasonable).

If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Ketchum,* 24 Cal. 4th at 1333 (quoting Leubsdorf, *The Contingency Factor in Attorney Fee Awards,* 90 Yale L.J. 473, 480 (1981)).

The risk Class Counsel assumed in representing PS3 owners was substantial. Indeed, Judge Seeborg dismissed the action early on with prejudice.  Despite Defendant's arguments in defense of the claims, including that consumers could only reasonable expect a product function's to last for the life of the warranty (in this case, one year), Plaintiffs nonetheless persevered and obtained an important and partial reversal of the dismissal order in the Ninth Circuit. Class Counsel also expended significant out of pocket costs, in additional to significant time, on experts, and depositions.  The result achieved for Class members and the skill exhibited in obtaining the settlement benefits would likely support a fee enhancement here; however, Plaintiffs are *not* seeking a fee enhancement. Instead, the requested fee award represents a significant reduction in their lodestar. Class Counsel's aggregate lodestar is $2,549,922 and the requested award after the deduction of the expenses identified below is merely 85% of Class Counsel's aggregate lodestar (not taking into account the additional time and expense that will be necessary to prepare and argue final approval and oversee the claims process). And if the Court considers the lodestars of all Plaintiffs' firms, which is $4,558,790.75, then the effective multiplier is .49. Thus, the requested fee with a negative multiplier is reasonable. *See, e.g., Tait v. BSH Home Appliances Corp.,* 2015 U.S. Dist. LEXIS 98546, at *45 (C.D. Cal. July 27, 2015) (finding that fees were reasonable where they constituted a negative multiplier of approximately .50 of the unadjusted lodestar).

### 3. Comparison of the Amount Requested Against the Class Recovery

Since this motion is being filed before the claims deadline to allow time for any class members to object,[9] the exact payment that SCEA will make to the Class is unknown at this time.

---

[9] The Court's Order directed that the Motion for Fees would be due on December 20, but also suggested that it should be filed 14 days before the deadline to object.  Dkt. No. 270 at 30. Because the deadline to object was listed as December 7, Plaintiffs Motion may have been due October 23, 2017, the

Class Counsel will provide the Court with the number of valid claims submitted and the total amount of money that SCEA will pay under the Settlement in the motion for final approval.

In any event, it is likely that the fee award requested will exceed the total payout to the Class. Nevertheless, using a percentage of the recovery method in this case (where there is no fund), or otherwise reducing the requested fee award because it is larger than the expected payment to the Class, is inappropriate. *See Collado,* 550 Fed. Appx. at 369 ("The district court abused its discretion by computing fees using a percentage of recovery method rather than a lodestar method."). Any of the requested funds that the Court does not award will simply be retained by SCEA and will not go to the Class.

As the court in *Jefferson v. Chase,* 2009 U.S. Dist. Lexis 64607, at *10 (N.D. Cal. 2009) explained in rejecting the defendant's challenge to a fee request of $600,000 because it was disproportionate to the $60,000 recovery to the Class members, "[d]isproportionality is not one of the factors that California courts have provided for determining whether to augment or diminish the fees award." *Id.* Rather, "the California courts have approved attorneys' fees where there is a significant disparity between the Plaintiffs' recovery and the lodestar fee award." *Id.; see also Hayward,* 108 Cal. App. 4th at 512 (affirming order granting fees that were significantly greater than the class recovery and stating that to "limit the fee award to an amount less than that reasonably incurred in prosecuting such a case, would impede the purpose underlying [the CLRA]"); *Vo v. Las Virgenes Mun. Water Dist.,* 79 Cal. App. 4th 440, 448 (2000) (holding that the trial court did not abuse its discretion in granting attorneys' fees 12.5 times the value of plaintiff's recovery); *Parkinson v. Hyundai*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) (awarding fees of $3,719,282.30 although class recovery was $1.2 million).

*//*

---

Wednesday before Thanksgiving.  Due to confusion as to the Order's deadlines, Plaintiffs are filing November 30, a week before objections are due, and will post the Motion to the Settlement website as soon as it is filed.

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS & INCENTIVE AWARD
CASE NO. 4:10-CV-01811-YGR

### D.      Plaintiffs' Request for Reimbursement of Expenses

The CLRA provides for an award of court costs to Plaintiffs in addition to an award of attorney fees. Cal. Civ. Code § 1780(e) ("[t]he court shall award court costs and attorney's fees to a prevailing plaintiff."). Because Plaintiffs' request for reimbursement of costs arises under California substantive law, the Court applies California law on costs rather than Local Rule 54-4. *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064 (9th Cir. 2003).

Class Counsel have incurred $93,515.50 in unreimbursed costs and expenses prosecuting this case on behalf of the class.[10] As explained below and detailed in the accompanying declarations, Plaintiffs seek a recovery of $27,850.63 as mandatory costs and $36,043.96 as discretionary costs, for a total recovery of $63,894.59 in costs. The remaining $29,620.91 are not taxable costs under California law, but may be considered by the Court in evaluating the fee to be awarded.

### 1.      Mandatory Costs

California Code of Civil Procedure §§1033.5(a)(1), (3)-(4),(7)  and (13) state that the Court must award costs for filing fees, deposition transcripts, service-of-process fees, witness fees and photocopies of exhibits to assist the court. Plaintiffs seek reimbursement of such costs in the amount of $63,894.59. Rivas Decl., Exh. E; Pizzirusso Decl., Exh. B; Fisher Decl., Attachment 2.

### 2.      Discretionary Costs

California Code of Civil Procedure section 1033.5(c) gives the Court discretion to award costs for "Items not mentioned in this section" if the costs are "reasonably necessary to the conduct of the litigation, rather than merely convenient or beneficial to its preparation." *Science App. Int'l Corp. v. Superior Court*, 39 Cal. App. 4th 1095, 1103 (1995). Plaintiffs seek recovery of the following expenses, which were reasonably necessary to the conduct of the litigation:

---

[10] Non-lead counsel have reported incurring an additional $114,221.25 in expenses. *See* Rivas Decl., Exh. F.

<u>Travel costs.</u>   With Court-appointed Class Counsel located in California and Washington, D.C., and plaintiffs located across the country including Tennessee and Illinois, attorney and plaintiff travel was required to attend proceedings in San Francisco, including the case management conference, oral arguments on the motions, and to attend the Plaintiffs' depositions. *Page v. Something Weird Video*, 960 F. Supp. 1438, 1447 (C.D. Cal. 1996) (travel costs necessary to attend hearings found recoverable under section 1033.5(c)). Class Counsel seek recovery of $24,150.95 in travel costs. Rivas Decl., Exh. E; Pizzirusso Decl., Exh. B; Fisher Decl., Attachment 2.

<u>Delivery Charges.</u> Class Counsel also incurred $2,018.01 for delivery of courtesy copies to the Court. *Id.*; *see also Ladas v. California State Auto. Assn.*, 19 Cal. App. 4th 761, 776 (Cal. Ct. App. 1993) (messenger charges related to filing documents with the court approved).

<u>Mediation Fees.</u>  Lastly, in connection with the July 2011 and August 2015 mediations, which ultimately led to a successful class settlement, Plaintiffs incurred $9,875.00 in mediation fees. *See* Rivas Decl., ¶ 54; *see also, e.g., Gibson v. Bobroff*, 49 Cal. App. 4th 1202, 1209 (1996) (awarding the costs of court-ordered mediation).

### 3.    Prohibited Costs

California Code of Civil Procedure § 1033.5(b) states that the Court is not to award certain categories of costs. *Science Appl. Int'l. Corp. v. Superior Court*, 39 Cal. App. 4th 243, 1103 (1995). Plaintiffs nevertheless identify these costs because the Court should be aware of the non-recoverable costs when the Court evaluates Plaintiffs' requested multiplier related to attorney fees.

<u>Expert Fees.</u>   Plaintiffs' counsel spent $49,873.23 on expert consultants to help them develop damages models in anticipation of filing a motion for class certification. Rivas Decl., ¶ 54.

<u>Other Expenses.</u>  Plaintiffs also incurred other expenses related to postage, telephone, copying, transcripts of court proceedings, factual and legal research, and other miscellaneous charges. *See* Rivas Decl., Exh. E; Pizzirusso Decl., Exh. B; Fisher Decl., Attachment 2.

//

**E.      The Class Representative Should Receive a $3,500 Incentive Award for Their Efforts Helping to Secure the Settlement Benefits for the Entire Class.**

Finally, Class Counsel seek an incentive award in the amount of $3,500 for each of the Class Representatives.  "Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (2009) (citing 4 ALBA CONTE ET AL., NEWBERG ON CLASS ACTIONS § 11:38 (4th ed. 2008)). These awards, generally sought after a settlement has been reached, "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59. The Court has discretion to approve incentive awards, and its consideration includes factors such as the amount of time and effort spent by the class representatives, the duration of the litigation, and the personal benefit (or lack thereof) enjoyed by the class representatives as a result of the litigation. *Wilson v. Airborne, Inc.,* 2008 U.S. Dist. LEXIS 110411, at *37 (C.D. Cal. Aug. 13, 2008).

Broadly speaking, Plaintiffs assisted Class Counsel with their investigation, analysis, and prosecution of the claims; the preparation of pleadings (including the complaints filed in this matter and declarations); participating in discovery, including responding to written discovery, producing their PS3s and documents for inspection, and appearing for deposition; settlement negotiations; and review and analysis of the parties' settlement papers. *See* accompanying Rivas Decl. ¶¶ 56-58. Moreover, time spent on this case, meant time spent away from family, friends, work, and various other activities.

$3,500 incentive awards are actually lower than what is presumptively reasonable in the Ninth Circuit district courts,[11] even where there is the prospect of minimal damages recoveries by individual class members. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (approving $5,000 incentive awards where class members would receive $12); *Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472, at *143 (C.D. Cal. Nov. 23, 2011) (approving incentive awards of $5,000 per named plaintiff, where settlement provided for the recovery by class members of $5 per box

---

[11] *See Camberis v. Ocwen Loan Serv. LLC*, 2015 U.S. Dist. LEXIS 163826, at *9 (N.D. Cal. Dec. 7, 2015) ("As this Court has recognized, . . . as a general matter, '$5,000 is a reasonable amount' [for service awards.") (citation omitted).

of cereal purchased during the class period, up to a maximum of $15 per class member, all subject to proportional reduction if all eligible claims exceeded the settlement fund); *see also Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667, at *109 (N.D. Cal. Apr. 1, 2011) (making $5,000 service awards to 20 named plaintiffs where "average award to class members was $207.69").  Also, the awards sought are modest compared with incentive awards in other cases. *See, e.g.*, *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *23 (S.D. Cal. June 1, 2010) ($25,000 award); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ($300,000 award).

Here, given the valuable and time-consuming aid rendered to the Class by the Plaintiffs in this case, Class Counsel respectfully submit that the requested incentive awards are fair and reasonable, and should be awarded.

## VI. <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion for attorneys' fees, costs, and incentive awards.

DATED: November 30, 2016     Respectfully Submitted,

                **FINKELSTEIN THOMPSON LLP**

                /s/ *Rosemary M. Rivas*
                 Rosemary M. Rivas

                One California Street, Suite 900
                San Francisco, California 94111
                Telephone: (415) 398-8700
                Facsimile: (415) 398-8704

                **CALVO FISHER & JACOB LLP**

                By: /s/ *Kathleen Fisher*
                 Kathleen Fisher

                555 Montgomery Street, Suite 1155
                San Francisco, California 94111
                Telephone: (415) 374-8370
                Facsimile: (415) 374-8373

                **HAUSEFELD LLP**

By: */s/ James Pizzirusso*
    James Pizzirusso

1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

*Class Counsel*

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS & INCENTIVE AWARD
CASE NO. 4:10-CV-01811-YGR