Rosemary M. Rivas (SBN 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Kathleen Fisher (SBN 70838)
kfisher@calvofisher.com
**CALVO FISHER & JACOB LLP**
555 Montgomery Street, Suite 1155
San Francisco, California 94111
Telephone: (415) 373-8370
Facsimile: (415) 374-8373

James Pizzirusso (pro hac vice)
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

*Class Counsel for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SONY PS3 "OTHER OS" LITIGATION | Case No. 4:10-CV-01811-YGR |
| | **NOTICE OF OBJECTIONS TO STIPULATION OF CLASS ACTION SETTLEMENT & RELEASE** |
| | Date: January 24, 2017 <br> Time: 2:00 p.m. <br> Judge: Honorable Yvonne Gonzalez Rogers <br> Courtroom: 1 – 4th floor |

Pursuant to Paragraph 38 of the Court's Order Granting Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class (Dkt. No. 270), entered on September 8, 2016, Plaintiffs hereby submit the attached objections (marked as Exhibits A-G) submitted to the Stipulation of Class Action Settlement & Release.

DATED: December 22, 2016

Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

By: */s/ Rosemary M. Rivas*
    Rosemary M. Rivas

One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

**CALVO FISHER & JACOB LLP**

By: */s/ Kathleen Fisher*
    Kathleen Fisher

555 Montgomery Street, Suite 1155
San Francisco, California 94111
Telephone: (415) 374-8370
Facsimile: (415) 374-8373

**HAUSEFELD LLP**

By: */s/ James Pizzirusso*
    James Pizzirusso

1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
*Class Counsel for Plaintiffs and the Class*

# EXHIBIT A

I was an original owner of both versions of ps3. It's not possible to obtain credit card stmts, recepits etc from closed accounts and a trashed ps3 that has been long gone. I've been a loyal supporter of Playstation but the requirements for this claim are ridiculous. I object that you are requiring proof of purchase from something nearly 10yrs old. With that being said I hope my loyalty and Playstation ID will suffice to be eligible for this claim. My ID is ███████████

I've owned and operated a Playstation since I was a child. I've had the same playstation id. You should be able to look up my console and serial number that way. Please don't tell me you can't because I'm certain my information was hacked from your network years ago.

Thanks,

Brandon Henton

# EXHIBIT B

Elliott Mitchell



Serial #: ██████████
PSN Id: ████████

November 2, 2016

In re Sony PS3 "Other OS" Litigation
c/o Garden City Group, LLC
P.O. Box 10312
Dublin, OH 43017-5912

Re: *In re Sony PS3 "Other OS" Litigation*, U.S. District Court, N.D. Cal.,
Case No. C10-1811-(YGR);

Dear Settlement Administrator,

As I do not have personal counsel involved in this matter, I appologize for any
errors made. According to the available information letters with objections are
supposed to go to the settlement administrator.

I have a fairly small issue with the terms of the settlement. At the time I
purchsed the "fat PS3" I was *fully* aware of the ability to install Linux and had
vague plans to experiment with the capability.

Unfortunately due to a debilitating medical condition those plans were never
realized. This medical condition has me rather easily distracted (writing this
letter has taken far longer than it should have) and I have a rather reduced
number of useful hours in a typical day.

I'm unsure of how much detail Sony kept about PS3s. I suspect their system
may have recorded that my device was turned on several times after the update
removing "Other OS" functionality was released, but my device wasn't updated
for a long period. The reason for this long delay was I did not wish to lose
the "Other OS" functionality. I was finally *forced* to update due to a game
*requiring* the latest firmware to function. BluRay playback functionality also
seemed likely to force an update as well.

I do not meet the formal terms to be included as part of Class A. Yet had I not
been being harmed by the *medical issue* (or if it had been fully treated sooner),
I would have met the qualification for class A. As such I ask the court that I be
compensated in accordance with the terms of class A.

I affirm what I have written here is the whole truth and nothing but the truth.

Sincerely,

*Elliott Mitchell*

Elliott Mitchell

## 1. Elliott Mitchell - P008355864




| MUST BE POSTMARKED ON OR BEFORE December 7, 2016 | In re Sony PS3 "Other OS" Litigation c/o Garden City Group, LLC P.O. Box 10312 Dublin, OH 43017-5912 (855) 720-1264 | PS3 |

Claim No: 8355864          Control No: 8454351504



Elliott Mitchell



**Claimant Information:**

Name:

| E | L | L | I | O | T | T | | H | | M | I | T | C | H | E | L | L | | | |

Street Address:

City:                                         State:      ZIP:

Daytime telephone:

Email address: *cclassign*

PS3 Serial Number:

PSN Network ID *cclassign*

If you are submitting this Claim Form on behalf of someone else, please explain why you have the right to do so.

**Payment information (check one)**

☐ I am eligible for a $55 settlement payment and have attached (or uploaded)
  1. Proof of purchase (receipt, credit card statement, other documentation showing the date and location of purchase or the PS3 Serial Number and PSN Network Sign-In ID); and
  2. Proof that I used the Other OS functionality

☒ I am eligible for a $9 settlement payment and have attached (or uploaded)
  1. Proof of purchase (receipt, credit card statement, other documentation showing the date and location of purchase or the PS3 Serial Number and PSN Network Sign-In ID)

The Claims Administrator may audit any and all claims.

QUESTIONS? CALL TOLL-FREE 1 (855) 720-1264
To view GCG's Privacy Notice, please visit www.GardenCityGroup.com/privacy

1

## Attestation

y signing below, you are signing under penalty of per ury. Signi ng under penalty of per ury means that the information you have provided in the Claim Form is true. It is a crime to submit a false Claim Form and sign under the penalty of per ury.

### Con umer Cla A Claimant Only

I declare under the penalty of per ury that I purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authori ed retailer for family, personal and or household use and have submitted authentic proof of my purchase or the PS3 Serial Number and the PSN Network Sign-In ID used with my PS3 between November 1, 2006 and April 1, 2010. I installed a Linux operating system on my Fat PS3 and I used the Other OS functionality. I further declare that all of the information I have submitted in and with this Claim Form is true and correct.

Executed this 18 day of October mont h 2016 at ████████ City and State

Print name:

### Con umer Cla B Claimant Only

I declare under the penalty of per ury that I purchased a at PS3 in the United States between November 1, 2006 and April 1, 2010 from an authori ed retailer for family, personal and or household use and have submitted authentic proof of my purchase or the PS3 Serial Number and the PSN Network Sign-In ID used with my PS3 between November 1, 2006 and April 1, 2010. At the time of my purchase, either (a) I knew about the Other OS functionality, relied upon the Other OS functionality in making my decision to purchase, and intended at the time of my purchase to use the Other OS functionality; or (b) I lost value and or desired functionality or was otherwise in ured as a consequence of Firmware Update 3.21, which was issued on April 1, 2010. I further declare that all of the information I have submitted in and with this Claim Form is true and correct.

Executed this 18 day of October mont h 2016 at ████████ City and State

Print name: *Elliott Mitchell*

## Checkli t

Please make sure that you have:

1. Signed the Certification above.

2. Submitted your proof of purchase or the PS3 Serial Number and the PSN Network Sign-In ID used with your PS3 between November 1, 2006 and April 1, 2010, and, if you are a Class A claimant, the other required documents.

3. ept a copy of your comple ted Claim Form for your files.

4. E-filed, emailed or mailed your Claim Form before December 7, 2016. If submitting by mail, mail your Claim Form to:

> **In re Sony PS3 "Other OS" Litigation**
> **c/o Garden City Group, LLC**
> **P.O. Box 10312**
> **Dublin, OH 43017-5912**

If submitting by e-mail, send your Claim Form to info otherOSsettlement.com.

### <u>BE SURE TO SIGN THIS FORM ABO E AND SUBMIT IT TO THE SETTLEMENT ADMINISTRATOR POSTMARKED OR SUBMITTED ELECTRONICALL NO LATER THAN DECEMBER 7, 2016.</u>

QUESTIONS? CALL TOLL-FREE 1 (855) 720-1264

2

**CONSUMER CLAIM FORM**
*In re Sony PS3 "Other OS" Litigation*
United State. Di trict Court, Northern Di trict of Califia
Ca e No. 10-C -01811-YGR



**PLEASE BE A ARE THAT THE DEADLINE FOR SUBMI TTING CLAIMS IS DECEMBER 7, 2016. CLAIMS SUBMITTED AFTER THIS DATE ILL NOT BE ACCEPTED.**

**TO:** All persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authori ed retailer for family, personal, and or household use.

**PLEASE READ THIS ENTIRE CLAIM FORM CAREFULL**

**TO BE ELIGIBLE TO RECEI E A PA MENT, OUR COMPLETED CLAIM FORM MUST BE POSTMARKED, EMAILED OR SUMBITTED ONLINE ON OR BEFORE DECEMBER 7, 2016. CLAIMS SUBMITTED AFTER THIS DATE ILL NOT BE ACCEPTED.**

<u>**ELIGIBILIT AND INSTRUCTIONS**</u>

**IT IS IMPORTANT TO FOLLO THESE INSTRUCTIONS CAREFULL OR OUR CLAIM MA BE RE ECTED.**

1. If you purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010, you may be eligible to receive a payment if you submit a valid and complete Claim Form.

2. The amount of the payment to which you are entitled depends on whether you submit a claim in Consumer Class A or Consumer Class . ou may submit one claim (in either Consumer Class A or Consumer Class , but not both) per console as long as you submit the Required Documentation set forth below.

Consumer Class A is: All persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authori ed retailer for family, personal and or household use and who used the Other OS functionality after installation of a Linux operating system on their Fat PS3.

Consumer Class is: All persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authori ed retailer for family, personal, and or household use.

3. If you are a member of Consumer Class A, you are eligible to receive a $55 payment if you submit the following documentation with your completed Claim Form.

    <u>Con umer Cla A: Re uired Documentation</u>

    (A) <u>Proof of Purchase.</u>
    The following are acceptable forms of proof of purchase:

    (a) A sales receipt, credit card statement or other documentation that shows the place and date of purchase; **OR**
    (b) the serial number of the Fat PS3 you purchased (found on the back of the console) and the PlayStation Network Sign-In ID that you used with your Fat PS3 console between November 1, 2006 and April 1, 2010.

    ( ) <u>Proof that ou Used The Other OS Functionality</u> .
    The following are acceptable forms of proof of use:

    (a) proof that you purchased a version of Linux that was compatible with and was installed on your Fat PS3 before April 1, 2010;
    (b) proof that you downloaded a version of Linux that was compatible with and was installed on your Fat PS3 before April 1, 2010;



(c) a screenshot (or picture) showing Linux operating on your Fat PS3;

(d) a screenshot (or picture) showing that a portion of your PS3 hard drive is still formatted for the Other OS with Linux installed;

(e) proof of communication between you and SCEA or a third party dated before December 31, 2010 that discusses your use of the Other OS or concerns with Update 3.21 due to your use, including but not limited to, copies of an email from or message board posting by you containing such discussion; or

(f) any other documentary proof that you used the Other OS before April 1, 2010 that the Settlement Administrator reasonably determines to be valid.

(C) <u>Attestation under penalty of perjury</u>.

To receive the $55 payment, you must attest on the Claim Form, under penalty of perjury, that you installed a Linux operating system on your Fat PS3 and used the Other OS functionality.

4. If you are a member of Consumer Class (or a member of Consumer Class A who does not have proof that you used Other OS functionality); you are eligible to receive a $9 payment if you submit the following documentation with your completed Claim Form:

## Consumer Class B: Required Documentation.

(A) <u>Proof of Purchase</u>.
The following are acceptable forms of proof of purchase:

(a) A sales receipt, credit card statement or other documentation that shows the place and date of purchase;
**OR**
(b) the serial number of the Fat PS3 you purchased (found on the back of your console) and the PlayStation Network Sign-In ID that you used with your Fat PS3 console between November 1, 2006 and April 1, 2010.

( ) <u>Attestation under penalty of perjury</u>.
In order to receive the $9 payment, you must attest on the Claim Form, under penalty of perjury, that:

(a) you knew about the Other OS functionality, relied upon the Other OS functionality in making your decision to purchase a Fat PS3, and intended at the time of your purchase to use the Other OS functionality; or
(b) you lost value and/or desired functionality or were otherwise injured as a consequence of Firmware Update 3.21, which was issued on April 1, 2010.

5. **Claim Forms that are incomplete will be considered invalid and will prevent you from receiving payment.**

6. If you need any help to determine whether you are eligible to submit a consumer claim, please contact the Settlement Administrator at 1 (855) 720-1264 or by email at info otherOSsettlement.com.

7. If your purchase fits the definition of either Consumer Class A or Consumer Class , complete the attached Claim Form or fill in the Claim Form online. Include all required proof applicable to your claim with your Claim Form. If you are submitting your Claim Form electronically, then you will have to upload all required documentary proof applicable to your claim.

8. The Claims Administrator has discretion that will be exercised in good faith to determine whether the proof you submit with your Claim Form to support your eligibility for a settlement payment is sufficient in accordance with the requirements of the Settlement.

9. To receive a payment, you must include your current mailing address on the Claim Form.

10. If you move after submitting your Claim Form, please send the Settlement Administrator your new address or contact the Settlement Administrator at the following toll-free number: 1 (855) 720-1264. It is your responsibility to keep a current address on file with the Settlement Administrator.

11. The Settlement Administrator will use the email address that you provide on your Claim Form to communicate with you if communications are necessary.

# EXHIBIT C

Jason Bowerman

██████████████████████

In re Sony PS3 "Other OS" Litigation
c/o Garden City Group, LLC
P.O. Box 10312
Dublin, OH 43017-5912

October 5, 2016

Claims Administrator,


     I am filling objections in the case of In re Sony PS3 "Other OS" Litigation, U.S. District Court, Northern District of California, Case No. 10-CV-01811-YGR. My PlayStation 3 Serial Number is ████████████████ and my PlayStation Network ID is ██████████████. I attest that I did know of Other OS function for the PlayStation 3 when I bought the game system and used the Other OS function extensively trying out several different Linux distributions such as Yellow Dog, Ubuntu, and Debian. I am representing myself in this class action lawsuit without counsel.

     My first objection is for excessive proof that Sony Computer Entertainment of America is requiring to prove the use of the Other OS option. All but one of valid options require screenshots or photographs with a date stamp to prove use of the Other OS which the class members had no knowledge they would need over six years later to prove they used the Other OS function. Also including the option of proof of purchase of a compatible Linux and was installed on the class member's Fat PS3 which would require screenshots or photographs with a date stamp. The only option that doesn't require screenshots or photographs that are date stamped is communication between a class member and SCEA or a third party discussing concerns about Update 3.21. Six years is an excessive time to hold on to communications between a class member and a third party about the removal of Other OS and also SCEA cares little about their customers considering the PlayStation Network has been hacked multiple times with over 77 million users information exposed and compromised. SCEA can't even guarantee that PlayStation Network users' credit card information wasn't stolen why should class members expect that they will even respond to removal of the Other OS function which supposedly was for security reasons but the PlayStation network was hacked multiple times after 3.21 firmware update. I wish to also object to having to release my PlayStation Network ID because why does SCEA need this information to prove class members used the Other OS function? I will release my own personal PlayStation Network ID for my proof of claim but under strong objection based on SCEA proven track record of data breaches.

I also object that this class action is limited to just the Linux OS when the claim members were free to use "Other OS" not just limited to the Linux OS. FreeBSD is another OS that by summer of the 2010 was supported for use for the PlayStation 3. That leads into my next objection that this class action lawsuit is limited of the usage of the Other OS from the PlayStation 3 launch in 2006 until April 1, 2010 at the release of the 3.21 firmware for the game system. The 3.21 firmware on April 1, 2010 was not a forced update and the Other OS could still be installed and used after this date as long as the user didn't install the firmware update so I object that the class action lawsuit is limited of the Other OS use until April 1, 2010.

Sony Computer Entertainment of America released the PlayStation 3 in 2006 and for over three years users were able to use the function of the Other OS. SCEA decided to remove functionality of the Other OS based on security but a year after the Other OS removal the PlayStation Network was subject to a widespread security breach which was the first of many such attacks. SCEA was baseless in the removal of the Other OS because they based it on security but there was no security breaches until the removal of the Other OS. SCEA true intention for the removal of the Other OS was to prevent the hacking of the PlayStation 3 console. SCEA has put excessive requirements for proof of use of the Other OS in order to reduce to number of class action members that can provide proof six years after the fact and I strongly object to the requirements. SCEA is forcing users of the PlayStation 3 to upgrade the firmware or else the will lose the option to play new games on the system. The price of the PlayStation 3 in 2010 was $299 and the price of a suitable replace PC to run another OS is worth more than $55 the class action lawsuit is providing and I object to the amount of the settlement. SCEA has removed a valuable function to an at least $299 purchase and the class action members should receive $75 with proof of purchase of a PlayStation 3 or a serial number for the console along with a sworn statement that they installed and used the Other OS functionality of the system without having to provide screenshots or photographs. Thank you for your time in this matter.

Sincerely,

Jason Bowerman

Jason Bowerman

CAPITAL DISTRICT 2000/2008

05 OCT 2015 PM 1 L

USA FOREVER

43017-391212

In re Sony PS3 "Other OS" Litigation
c/o Garden City Group, LLC
P.O. Box 10312
Dublin, OH 43017-5912

# EXHIBIT D

1  Joshua R. Furman, Bar No. 225461
   jrf@furmanlawyers.com
2  JOSHUA R. FURMAN LAW CORPORATION
   14724 Ventura Boulevard, Suite 509
3  Sherman Oaks, California  91403
   Telephone:  (818) 646-4300
4  Facsimile:   (818) 646-4301

5  *Attorney for Objector,*
   John Navarrete
6

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

11  IN RE SONY PS3 "OTHER OS"          CASE NO.  4:10-CV-01811-YGR
    LITIGATION
                                       **DECLARATION OF JOHN
12                                     NAVARRETE IN SUPPORT OF
                                       OBJECTIONS TO FINAL
13                                     APPROVAL OF CLASS ACTION
                                       SETTLEMENT**
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, John Navarrete, declare as follows:

1.    I object to the proposed settlement of this class action. I make the following declaration of my own personal knowledge. If called as a witness, I could and would testify to the following.

2.    At all times between 2006 and 2010 I was and still am a resident of the State of California. I am represented by counsel, Joshua Furman, and can be contacted through him. I authorize Mr. Furman to receive service of process on my behalf.

3.    My PlayStation Network screen name is, and was at all relevant times from 2006 to 2010, "███████".

4.    I purchased a "Fat PS3" from a Sony retail store on the day it was released in November 2006. I waited in line for approximately 20 hours in order to purchase the unit.

5.    I am an avid gamer and I purchased my Fat PS3 for my personal entertainment use at home.

6.    Since I purchased my Fat PS3 from a retail store over 10 years ago, I do not have a copy of the receipt or bank statement documenting the purchase.

7.    Sometime in late 2007 or early 2008, I discovered that the Fat PS3 was capable of running another operating system. At that time, I installed a Linux operating system on my Fat PS3. I do not recall which flavor of Linux I installed, but it was one of the many free varieties available to the public through open source distribution. The version of Linux that I installed ran properly on my PS3 and I used it to enhance my personal entertainment use of my PS3 at home.

8.    Between the time I installed Linux on my Fat PS3 and December 2009, I did not take any screenshots or pictures of Linux operating on my Fat PS3.

9.    Between the time I installed Linux on my Fat PS3 and December 2009, I did not take any screenshots or pictures depicting the partitioned hard drive of my Fat PS3.

10.     Between the time I installed Linux on my Fat PS3 and December 2009, I did not communicate with SCEA or any third party concerning my use of Linux on my Fat PS3.

11.     I do not have any documentary proof that I installed Linux on my Fat PS3.

12.     In December 2009, my Fat PS3 failed. I disposed of the unit by selling it to a third party for parts. I do not recall the identity of the third party. My best recollection is that I received $50 for the nonfunctioning Fat PS3.

13.     I have not retained any documentation concerning my Fat PS3 or the packaging from my Fat PS3 that may show the serial number of my Fat PS3. I have not owned a Fat PS3 for approximately seven years.

14.     I attempted to obtain the serial number of my old Fat PS3 from the Garden City Group by calling 1-855-720-1264 and pressing option 1 as per the instructions in the Consumer Claim Form published at otherossettlement.com, but the recording indicated that the office was closed—despite the fact that I called during business hours. If I am able to obtain the serial number at a later date, I will provide it.

I declare under penalty of perjury pursuant to the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 7th day of December 2016 at San Bernardino, California.


_____
John Navarrete

Joshua R. Furman, Bar No. 225461
jrf@furmanlawyers.com
JOSHUA R. FURMAN LAW CORPORATION
14724 Ventura Boulevard, Suite 509
Sherman Oaks, California 91403
Telephone: (818) 646-4300
Facsimile: (818) 646-4301

*Attorney for Objector,*
John Navarrete

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SONY PS3 "OTHER OS" LITIGATION | **CASE NO. 4:10-CV-01811-YGR**<br><br>**NOTICE OF INTENT TO APPEAR AND OBJECT TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

1  TO THE HONORABLE COURT, ALL PARTIES, AND THEIR
2  ATTORNEYS OF RECORD:

3  PLEASE TAKE NOTICE that Objector John Navarrete will appear through
4  his counsel of record at the final approval hearing in this matter scheduled for
5  January 24, 2017, for the purposes of objecting to this settlement and respectfully
6  requesting the Court not approve the same.

7  Mr. Navarrete's objections are provided in written form and submitted to the
8  Settlement Administrator in conformity with the Notice of Settlement.    Mr.
9  Navarrete reserves the right to raise additional objections at the hearing on this
10  matter.

11
12  Dated: December 7, 2016              JOSHUA R. FURMAN LAW CORP.

13
14                              By:  */s/ Joshua R. Furman*
15                                   Joshua R. Furman
                                     *Attorney for Objector,*
16                                   John Navarrete

17
18
19
20
21
22
23
24
25
26
27
28

Joshua R. Furman, Bar No. 225461
jrf@furmanlawyers.com
JOSHUA R. FURMAN LAW CORPORATION
14724 Ventura Boulevard, Suite 509
Sherman Oaks, California 91403
Telephone: (818) 646-4300
Facsimile: (818) 646-4301

*Attorney for Objector,*
John Navarrete

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SONY PS3 "OTHER OS" LITIGATION | **CASE NO. 4:10-CV-01811-YGR**<br><br>**OBJECTIONS TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

1    Objector John Navarrete respectfully objects to the proposed class action

2    settlement in this case as follows:

3    **I.   INTRODUCTION**

4         Like millions of others, Navarrete bought a Fat PS3 over ten years ago for

5    his personal entertainment.  After extensive heavy use by Navarrete, an avid gamer,

6    his PS3 failed in December 2009 and he disposed of the unit.  Navarrete has no

7    documentation of the unit and was unable to get information concerning his serial

8    number from the Settlement Administrator when he attempted to do so.  It is

9    unrealistic to expect that any typical consumer would save records from personal

10   entertainment purposes for over ten years.

11        Like many other avid gamers, Navarrete explored the full capability of his

12   Fat PS3, and installed a Linux operating system on his unit before it failed.  No

13   documentation exists of his use of Linux on his Fat PS3 for the simple reason that

14   no typical user would ever consider documenting what amounts to experimenting

15   with a computing unit for personal enjoyment.  Likewise, no typical user would

16   hold on to the proverbial "door stop" of a nonfunctioning Fat PS3 just so a forensic

17   analysis could be conducted of the hard drive at some hypothetical later date that a

18   class action might occur for SCEA's illicit disabling of Fat PS3 functionality.

19        Yet, in this proposed settlement Navarrete is relegated to making a claim for

20   less than 20% of what he would be entitled to if he had, through some odd twist of

21   fate, retained evidence of his personal use of Linux on his Fat PS3.    The

22   fundamental unfairness of this proposition, coupled with the huge difference in

23   claim amounts between the so-called "Class A" claims and the "Class B" claims

24   leads to a logical question: Who was looking out for the interests of each of the

25   separate "classes"?  Unfortunately, it appears that no one was.

26        In their motion for final approval, Class Counsel offers scant information

27   concerning the adequacy of the Class Representatives and sidesteps the obvious

28   conflict of interest between the two proposed subclasses.  (Doc. 259, pp. 10–11.)

1  In fact, in reviewing the public record, there is no indication that any Class
2  Representative has been appointed for any particular subclass, let alone any
3  evidence from which the Court could determine that any of the Class
4  Representatives adequately represents one of the proposed "subclasses."

5  This problem is borne out of the fact that the distinction between subclasses
6  in the proposed settlement is false. There is no distinction between the subclasses.
7  Separate designation of subclasses is proper when an identifiable subclass has a
8  common issue and injury different from another subclass. Here, all class members,
9  regardless of whether they have documentation of their use of Linux or not, have
10  the same issue and injury. The presence or absence of documentation makes no
11  substantive difference concerning the issues presented and the injury suffered. In
12  sum, there is no typicality/atypicality justification that legitimately allows Class
13  Counsel to offer $55 per claim to one subclass and $9 per claim to another.

14  On its face, the proposed agreement states that Class A members are those
15  who actually installed Linux on their Fat PS3's, and Class B members are those
16  who merely purchased the unit. (Doc. 259-1, p. 10, ¶¶ 44, 45.) However, practically
17  speaking, this is not the true definitions of the subclasses. The claim form makes
18  this clear. (Doc. 259-1, pp. 57 & 58 of 156.) The required documentation for the
19  two classes does not simply request that Class A claimants state under penalty of
20  perjury that they installed Linux, it requires ***documentation*** of this fact in the form
21  of screenshots or communications that somehow evidence the date and platform of
22  use.

23  The hurdle presented for Class A members to make such a claim is more like
24  a brick wall. There is no way consumers would reliably retain documentation of
25  their use of Linux. There may be a small subset of consumers whose original Fat
26  PS3s are still working and who have not updated or reformatted the units to erase
27  evidence of Linux (inadvertently in the case of unwitting software updates that
28  destroyed the other OS functionality). There may be a small subset of consumers

Objections to Final Approval of Class Action Settlement

1 who were so enamored with the other OS functionality that they happened to take
2 a screenshot of the software in action. But there is no legally cognizable basis for
3 saying that those who did so can get more than five times the amount of those who
4 did not.

5     When coupled with the fact that Class Counsel has **no idea** how many
6 claimants may be out there, let alone how many Class A claimants there are (Doc.
7 259, p. 9), the $55 per claim provision reeks of a deceptive motive to make the
8 settlement appear better than it actually is. Accordingly, the Court properly
9 considers the massive fees allowance for Class Counsel in the settlement, the full
10 amount of which was recently requested in Class Counsel's motion for fees. (Doc.
11 271.)

12     The free sailing and kicker provisions of the proposed settlement (Doc. 259-
13 1, p. 31, ¶ 107) are designed to effectively eliminate unnamed class members'
14 standing to challenge the fee and expense award itself. That does not make it
15 irrelevant to this objection on the ground that the settlement is inadequate or that
16 the class definitions are improper. In order to justify a $2,156,484.50 fee award
17 (total provided in free sailing provision, less costs claimed in fee motion), based on
18 a percentage-of-the-fund cross-check at 25 percent, the value to the class would
19 have to be at least $8,625,938. If all claimants submit claims without
20 documentation of a Linux installation, that would mean that over 958,437 claims
21 would need to be submitted—nearly 10 percent of **all** Fat PS3 purchasers.

22     Judge Conti of this Court has called a 10 percent response rate for a consumer
23 class action "rather generous" and explained that the presumptive response rate for
24 a claims process requiring more than a simple signature on a form must be
25 significantly less. *Walter v. Hughes Communs., Inc.*, No. 09-2136 SC, 2011 U.S.
26 Dist. LEXIS 72290, at *37-38 (N.D. Cal. July 6, 2011) ("A settlement that requires
27 claimants simply to sign a form will likely have a higher claims-filing rate than one
28 requiring claimants to provide narrative responses to questions and attach

1  documentation, all other things being equal.") (quoting Tiffany Allen, "Anticipating
2  Claims Filing Rates in Class Action Settlements" (Nov. 2008)).

3      In sum, this proposed settlement is flawed because it seeks to set up false
4  subclasses based only on which class members retained documentation of their use
5  of Linux—an open source software distributed on the internet for free. There is no
6  representative for each of the proposed subclasses and the subclasses themselves
7  fail to satisfy a reason for the distinction on legally cognizable grounds.

8      The total relief to the class is also inadequate, even given that Class Counsel
9  make no attempt to calculate the total relief to the class. In evaluating the
10 settlement, the proper assumption is that the vast majority of class members, like
11 Navarrete, have no documentation of the fact that they used Linux on their Fat PS3s.
12 It is also proper to assume that the response rate will be low—even among
13 purchasers that have the proper documentation. Accordingly, the false subclasses,
14 including the all-but illusory $55 per claim payments for Class A claimants are
15 presented only to justify Class Counsel's fee request and not for the benefit of the
16 class.

17     This settlement should be rejected because the class, including the proposed
18 subclasses, are inadequately represented and because the total benefit to the class is
19 too low.

20 **II.   LEGAL ARGUMENT**

21     **A.   The Standard for Approving Class Action Settlements**

22         **1.   General Principles of Federal Rule of Civil Procedure 23**

23     Class action settlements proposed under Federal Rule of Civil Procedure 23
24 are subject to a "universally applied standard." *National Rural Telecoms. Coop. v.*
25 *DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). Under this standard, final
26 approval for a class action settlement should only be granted where the proposed
27 settlement is "fundamentally fair, adequate, and reasonable." *Id. quoting* 5 Moore
28 Federal Practice, § 23.85 (Matthew Bender 3d ed.) *citing In re Pacific Enters. Sec.*

1   *Litig.*, 47 F.3d 373, 377 (9th Cir. 1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d

2   1268, 1276 (9th Cir. 1992), cert. denied 506 U.S. 953 [113 S.Ct. 408, 121 L.Ed.2d

3   333] (1992). *See also, Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir.

4   1998) ("District courts must be skeptical of some settlement agreements put before

5   them"), *citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621 [117 S.Ct.

6   2231, 138 L.Ed.2d 689] (1997).

7       Generally, the Ninth Circuit applies an eight-factor analysis to determine if

8   the proposed settlement meets this standard. The factors are: "[1] the strength of

9   plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further

10  litigation; [3] the risk of maintaining class action status throughout the trial; [4] the

11  amount offered in settlement; [5] the extent of discovery completed, and the stage

12  of the proceedings; [6] the experience and views of counsel; [7] the presence of a

13  governmental participant; [8] and the reaction of the class members to the proposed

14  settlement." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir.

15  1998), *citing Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

16      "Where, as here, the parties agree to settle the dispute prior to certification of

17  the class, the court must be particularly vigilant in its scrutiny of the settlement."

18  *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, C 06-3903 TEH (N.D. Cal. Oct. 22,

19  2008) p. 7, citing *Hanlon*, 150 F.3d at 1026.

20      As the court in *Hanlon* observed, of Supreme Court precedent:

21          The *Amchem* Court also noted the problem of counsel "not

22          prepared to try a case." Such counsel is, almost by definition,

23          inadequate because an inability or unwillingness to try a case

24          means the class loses all of the benefits of adversarial litigation.

25          "Class counsel confined to settlement negotiations could not use

26          the threat of litigation to press for a better offer." *Amchem*, 117

27          S.Ct. at 2248-2249. District courts must be skeptical of some

28          settlement agreements put before them because they are

presented with a "bargain proffered for ... approval *without benefit of an adversarial investigation*." *Id.* at 2249.

These concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or *when the class receives no monetary distribution but class counsel are amply rewarded*. *See, e.g., In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir.), cert. denied, 516 U.S. 824 (1995).

*Hanlon*, 150 F.3d at 1021 (emphasis added).

In this case, the *Linney* factors are conflated by the *Hanlon* analysis and only lead to the conclusion that this settlement is unapprovable.

## 2. Pre-Certification Settlements Are Subject to Heightened Scrutiny

Because of the "special difficulties" a court encounters evaluating a class action settlement prior to (and in conjunction with) certification of the class, there must be an even greater showing of fairness and "much stronger indications of sustained advocacy by the *de facto* class counsel" before the settlement can be approved. *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 805-806 (3rd Cir. 1995) (hereinafter "*General Motors*"), *citing Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 33 (3d Cir. 1971) ("[W]hen the settlement is not negotiated by a court designated class representative the court must be doubly careful in evaluating the fairness of the settlement to the plaintiff's class."); *In re General Motors Corp. Engine Interchange Lit.*, 594 F.2d 1106, 1125 (7th Cir. 1979) (attributing a need for heightened scrutiny of the settlement to the potential for collusive settlement); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (higher showing of fairness required in pre-certification settlements, and special focus on assuring adequate representation and the absence of collusion); *Malchman*

1  *v. Davis*, 706 F.2d 426, 434 (2d Cir. 1983); *Mars Steel v. Continental Ill. Nat'l Bank*
2  *& Trust*, 834 F.2d 677, 681 (7th Cir. 1987); *County of Suffolk v. Long Island*
3  *Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir. 1990); Manual for Complex Litigation
4  2d § 30.42 (citing the informational deficiencies faced by the court and counsel in
5  pre-certification settlements).

6  Class counsel who proceed directly to settlement negotiations without so
7  much as litigating past the threshold question of certification may be seen as
8  "confining" themselves to settlement and losing all benefit of the threat of litigation.
9  *See, Hanlon*, 150 F.3d at 1021–22, *quoting Amchem*, 117 S.Ct. at 2248-2249
10 ("Class counsel confined to settlement negotiations could not use the threat of
11 litigation to press for a better offer.")

12 Accordingly, when face with a pre-certification settlement, the court is well-
13 served to consider these questions posed by the Third Circuit in *General Motors*:

14       Is the relief afforded by the settlement significantly less than
15       what appears appropriate in light of the preliminary discovery?
16       Have major causes of action or types of relief sought in the
17       complaint been omitted by the settlement?  Did the parties
18       achieve the settlement after little or no discovery?  Does it appear
19       that the parties negotiated simultaneously on attorneys' fees and
20       class relief?  Even acknowledging the possibility of some
21       overpleading, these questions raise a red flag in this case.

22 *General Motors*, 55 F.3d at 806.

23  **B.    The Subclasses Must Be Properly Identified and Represented**

24 The settlement proponents have the burden of demonstrating that a proposed
25 class is properly subject to certification pursuant to Rule 23(a). *Amchen Prods. Inc.*
26 *v. Windsor*, 521 U.S. 591, 613–614 [117 S. Ct. 2231, 138 L. Ed. 2d 689] (1997); *In*
27 *re IPO Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). "[T]he requirement that there be
28 a class will not be deemed satisfied unless the description of it is sufficiently definite

so that it is administratively feasible for the court to determine whether a particular individual is a member." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1760, at 140 (3d ed. 2005). *See, In re A.H. Robins Co., Inc.*, 880 F.2d 709, 728 (4th Cir. 1989) ("Though not specified in the Rule, establishment of a class action implicitly requires both that there be an identifiable class and that the plaintiff or plaintiffs be a member of such class"), abrogated on other grounds, *Amchem Products, Inc.*, 521 U.S. at 591. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002).

Additionally, the proposed representatives promoting the settlement must be **both** typical of the class membership and adequate to represent the class. Fed. R. Civ. Proc. 23(a); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotations omitted).

"Whether the class representatives satisfy the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (internal quotation omitted).

The failure to identify specific subclass representatives and present evidence as to the representatives commonality with the other subclass members makes the subclasses uncertifiable. E.g., *Abdullah v. U.S. Sec. Assocs.*, No. CV 09-9554-GHK (Ex), 2011 U.S. Dist. LEXIS 156685, at *25-26 (C.D. Cal. Jan. 11, 2011); *In re Equity Funding Corp. of Am. Secs. Litig.*, 1976 U.S. Dist. LEXIS 17364, at *49

Objections to Final Approval of Class Action Settlement

(C.D. Cal. Mar. 26, 1976) (subclass representative must "insure adequate representation and counsel for the subclass"). See also, *In re Telectronics Pacing Sys.*, 168 F.R.D. 203, 221 (S.D. Ohio 1996) ("The Plaintiffs must come forward with the exact definition of each subclass, its representatives, and the reasons each subclass meets the prerequisites of Rule 23(a) and (b).").

As explained above, the presentation by Class Counsel is wholly inadequate for the Court to analyze whether the subclasses are adequately represented, or whether they are even subclasses at all. Contrary to the proffered grounds for the subclass definitions, the subclasses here do not meet the prerequisites of Rule 23(a) and (b). Instead, the membership in a subclass depends wholly on whether or not a class member has arbitrary documentation—not on the class members' rights or injury.

## C. Class Counsel Fee Provisions Indicate Collusion

While "clear sailing" agreements (¶ 107 of the proposed settlement), are theoretically acceptable, the Court must scrutinize them all the same—because a large fee award points to less than ideal motivations by Class Counsel. *See, Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328, fn. 20 (9th Cir. 1999) ("The evil feared in some settlements—unscrupulous attorneys negotiating large attorney's fees at the expense of an inadequate settlement for the client—can best be met by a careful district judge, sensitive to the problem, ***properly evaluating the adequacy of the settlement for the class*** and determining and setting a reasonable attorney's fee ... ."), *quoting Parker v. Anderson*, 667 F.2d 1204, 1214 (5th Cir. 1982) (alteration in original, emphasis added).

The presence of a "kicker" clause likewise indicates collusion. Courts have referred to kicker or reversion clauses—where unawarded attorneys' fees benefit only the defendant and not the class—as a "warning sign" and evidence of collusion. (*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)* (9th Cir. 2011) 654 F.3d 935, 949 ["[A] kicker arrangement reverting unpaid

attorneys' fees to the defendant rather than to the class amplifies the danger of collusion already suggested by a clear sailing provision. … The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees."]; *Mirfasihi v. Fleet Mortg. Corp.* (7th Cir. 2004) 356 F.3d 781, 785 ["the reversion of unclaimed refunds to the putative wrongdoer" is a "warning sign[ ]"].)

Judge Posner has characterized the kicker clause as "a gimmick for defeating objectors." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014). There is no justification for such a provision, and "at the very least there should be a strong presumption of its invalidity." *Pearson*, 772 F.3d at 787.

The "warning sign" of the kicker clause and free sailing agreement for Class Counsel should raise a red flag in this settlement. When that red flag is investigated, and the illusory $55 per claim amount rejected as immaterial, the total conceivable benefit to the class does not justify the fee award requested. To the contrary, it appears that this settlement was crafted to provide for a large attorney fee, and nothing else. The rights of the class should not be compromised for the primary purpose of enriching class counsel. The settlement should primary provide substantive benefit to the harmed membership instead.

## III.  CONCLUSION.

In light of the foregoing, Objector John Navarrete respectfully requests the Court deny final approval of this class action settlement.

Dated:  December 7, 2016           JOSHUA R. FURMAN LAW CORP.


By:   */s/ Joshua R. Furman*
                Joshua R. Furman
                *Attorney for Objector,*
                John Navarrete

attorneys' fees to the defendant rather than to the class amplifies the danger of collusion already suggested by a clear sailing provision. ... The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees."]; *Mirfasihi v. Fleet Mortg. Corp.* (7th Cir. 2004) 356 F.3d 781, 785 ["the reversion of unclaimed refunds to the putative wrongdoer" is a "warning sign[ ]"].)

Judge Posner has characterized the kicker clause as "a gimmick for defeating objectors." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014). There is no justification for such a provision, and "at the very least there should be a strong presumption of its invalidity." *Pearson*, 772 F.3d at 787.

The "warning sign" of the kicker clause and free sailing agreement for Class Counsel should raise a red flag in this settlement. When that red flag is investigated, and the illusory $55 per claim amount rejected as immaterial, the total conceivable benefit to the class does not justify the fee award requested. To the contrary, it appears that this settlement was crafted to provide for a large attorney fee, and nothing else. The rights of the class should not be compromised for the primary purpose of enriching Class Counsel. The settlement should primary provide substantive benefit to the harmed membership instead.

## III.  CONCLUSION.

In light of the foregoing, Objector John Navarrete respectfully requests the Court deny final approval of this class action settlement.

Dated:  December 7, 2016        JOSHUA R. FURMAN LAW CORP.


By:  **/s/ Joshua R. Furman**
          Joshua R. Furman
          *Attorney for Objector,*
          John Navarrete



US. POSTAGE
$12.50
PM 2-DAY
91406 0006
Date of sale
12/07/16
06 2S00
08282275
SSK

# P

## PRIORITY MAIL 2-DAY™

EXPECTED DELIVERY 12/12/2016      0 lb. 3.50 oz.

**SHIP
TO:**      **0006**

DUBLIN OH 43017

## USPS CERTIFIED MAIL™



9502 8000 1486 6342 0004 06

POSTAL SERVICE
.com



## JOSHUA R. FURMAN LAW
14724 Ventura Boulevard, Suite 509
Sherman Oaks, California 91403

In re Sony PS3 "Other OS" Litigation
c/o Garden City Group, LLC
PO BOX 10312
DUBLIN, OH 43017-5912

1   Joshua R. Furman, Bar No. 225461
    jrf@furmanlawyers.com
2   JOSHUA R. FURMAN LAW CORPORATION
    14724 Ventura Boulevard, Suite 509
3   Sherman Oaks, California  91403
    Telephone:   (818) 646-4300
4   Facsimile:    (818) 646-4301

5   *Attorney for Objector,*
    John Navarrete

6

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  IN RE SONY PS3 "OTHER OS"            **CASE NO.  4:10-CV-01811-YGR**
    LITIGATION
12                                        **NOTICE OF INTENT TO APPEAR
                                          AND OBJECT TO FINAL**
13                                        **APPROVAL OF CLASS ACTION
                                          SETTLEMENT**
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Objector John Navarrete will appear through his counsel of record at the final approval hearing in this matter scheduled for January 24, 2017, for the purposes of objecting to this settlement and respectfully requesting the Court not approve the same.

Mr. Navarrete's objections are provided in written form and submitted to the Settlement Administrator in conformity with the Notice of Settlement. Mr. Navarrete reserves the right to raise additional objections at the hearing on this matter.

Dated:  December 7, 2016                    JOSHUA R. FURMAN LAW CORP.


By:   */s/ Joshua R. Furman*
          Joshua R. Furman
          *Attorney for Objector,*
          John Navarrete

# EXHIBIT E

1  Sam A. Miorelli, E.I., Esq. (Fla. Bar # 99886) (*pro hac vice application to be filed upon transmittal of objection from the Settlement Administrator to the Court*)
2  **Law Office of Sam Miorelli, P.A.**
   764 Ellwood Avenue
3  Orlando, FL 32804
   Telephone: 352-458-4092
4  E-Mail: sam.miorelli@gmail.com
5
                    UNITED STATES DISTRICT COURT
6           FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
                                      )  Case No.: 4:10-CV-01811-YGR
8  In re SONY PS3 "OTHER OS" LITIGATION )
                                      )  **OBJECTION TO CLASS ACTION**
9                                     )  **SETTLEMENT OF ERIC MICHAEL**
                                      )  **LINDBERG**
10                                    )
                                      )  Date:        January 24, 2017
11                                    )  Time:        2:00 p.m.
                                      )  Judge:       Hon. Yvonne Gonzalez Rogers
12                                    )  Courtroom:   1, 4th Floor
                                      )
13                                    )
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.      Mr. Lindberg is a Class Member and intends to appear at the fairness hearing. ............................ 1

II.     The Court has a fiduciary duty to the unnamed members of the class. ........................................... 2

III.    The Settlement Agreement is not fair, reasonable, or adequate because the release is overbroad by failing to track the allegations of the complaint. ........................................ 3

IV.     The claims-made process is employed for no reason other than to depress Class recovery and renders the Settlement Agreement unreasonable. ........................................ 6

V.      The Settlement displays all of the *Bluetooth* indicia of Class Counsel self-dealing. .......................... 8

        A.      It is highly likely that a disproportionate amount of the total constructive settlement fund will be distributed to Class Counsel. .......................................... 8

        B.      The Settlement Agreement contains *Bluetooth*'s second warning sign: a clear sailing agreement. ....................................................................... 9

        C.      The kicker clause completes the *Bluetooth* trifecta and proves the unfairness of the Settlement Agreement. ................................................................ 11

VI.     The *Bluetooth* trifecta creates a Rule 23(g) representative adequacy problem with the Settlement Agreement and Class Counsel's ongoing representation of the class. ........................ 12

VII.    Class Counsel should not be allowed to characterize the Settlement Agreement as good for the Class without analyzing the maximum potential recovery at trial and comparing that to the outcome in this case. ............................................................. 13

VIII.   A class action settlement should not be approved when the primary beneficiaries are the class representatives and class counsel. ......................................................... 14

        A.      A large disparity between the recovery of the representative class member and the absent class members is not permitted under Ninth Circuit precedent. ................... 14

IX.     Class Counsel should not get more than 25% of whatever amount of money is actually paid to the absent class members. ........................................................... 16

X.      The Settlement Agreement violates Rule 23(h). ........................................................... 17

XI.     CONCLUSION ...................................................................................... 18

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

# TABLE OF AUTHORITIES

**Cases**

*Adderley v. National Football League Player's Assn.*, Case No. C 07-00943, 2009 WL 4250786 (N.D. Cal. Nov. 23, 2009) .................................................................................................................................. 6

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................... 2

*Bond v. Ferguson Enters, Inc.*, Case No. 1:09-CV-01662, 2011 WL 284962 (E.D. Cal. Jan. 25, 2011) ........... 5

*Boyd v. Avanquest North America, Inc.*, Case No. 12-cv-04391, 2015 WL 4396137 (N.D. Cal. July 17, 2015) ........................................................................................................................................... 5

*Burden v. Selectquote Ins. Services,* Case No. C 10-05966 SBA, 2013 U.S. Dist. LEXIS 16977 (N.D. Cal. Feb. 5, 2013) ..................................................................................................................... 7

*Custom LED, LLC v. eBay, Inc.*, Case No. 12-CV-01662, 2011 WL 284962 (N.D. Cal. Nov. 20, 2013) ............................................................................................................................................ 5

*Daniels v. Aeropostale West, Inc.*, Case No. C 12-05775, 2014 WL 2215708 (N.D. Cal. May 29, 2014) ........................................................................................................................................... 5

*De Leon v. Bank of Am., N.A. (USA)*, Case No. 6:09-cv-1251-Orl-28KRS, 2012 WL 2568142 (M.D. Fla. April 20, 2012) ............................................................................................................. 7

*Deatrick v. Securitas Security Services USA, Inc.*, Case No. 13-cv-05016-JST, 2016 WL 729622 (N.D. Cal. April 7, 2016) ..................................................................................................................... 7

*Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401 (9th Cir. 1989) ..................................... 3

*Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143 (3d Cir. 2005) ...................................................... 17

*Gallego v. Northland Group, Inc.*, 814 F.3d 123 (2d Cir. 2016) ................................................. 12

*Galloway v. Kan. City Landsmen, LLC*, Case No. 4:11-1020-CV-W-DGK, 2012 WL 4862833 (W.D. Mo. Oct. 12, 2012) ........................................................................................................... 7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................................... 8, 13

*Hendricks v. Starkist Co.*, Case No. 13-cv-00729-HSG, 2016 WL 692739 (N.D. Cal. Feb. 19 2016) .......... 5

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .............................................................................. 16

*Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir. 1983) ............................................... 15

*In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011) .............................................. 16

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

1  *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011)........................................passim

2  *In re Carrier IQ, Inc., Consumer Privacy Litig.,* Case No. 3:12-md-02330-EMC, 2016 WL 4474366

3      (N.D. Cal. Aug. 25, 2016) ................................................................................................ 8

4  *In re Dry Max Pampers Litig.,* 724 F.3d 713 (6th Cir. 2003).................................................. 12

5  *In re General Motors Corp. Pickup Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768 (3d. Cir. 1995)............. 2, 8

6  *In re High Sulfur Content Gasoline Prods. Liab. Litig.,* 517 F.3d 220 (5th Cir. 2008) ........................................ 17

7  *In re Razorfish, Inc. Sec. Litig.,* 143 F.Supp.2d 304 (S.D.N.Y. 2001)........................................... 12

8  *In re Relafen Antitrust Litigation,* 360 F.Supp.2d 166 (D. Mass. 2005) ..................................................... 2

9  *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516 (3d Cir. 2004)............................................. 2

10  *Int'l Precious Metals Corp. v. Waters,* 530 U.S. 1223 (2000) ................................................... 10

11  *Kakani v. Oracle Corp.,* Case No. C 06-06493, 2007 WL 1793774 (N.D. Cal. June 19, 2007)....................... 5

12  *LaGarde v. Support.com,* Case No. 12-0609 JSC, 2013 WL 1994703 (N.D. Cal. May 13, 2013).................... 9

13  *Lobatz v. U.S. W. Cellular of Cal., Inc.,* 222 F.3d 1142 (9th Cir. 2000) .......................................... 12

14  *Lovig v. Sears, Roebuck & Co.,* Case No. EDCV 11-00756-CJC, 2014 WL 8252583 (C.D. Cal.

15      Dec. 9, 2014)................................................................................................................ 5

16  *Malchman v. Davis,* 761 F.2d 893 (2d Cir. 1985) ..................................................................... 10

17  *McCown v. City of Fontana,* 565 F.3d 1097 (9th Cir. 2009) ........................................................ 16

18  *Mirfasihi v. Fleet Mortgage Corp.,* 356 F.3d 781 (7th Cir. 2004)..................................................... 3

19  *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948 (7th Cir. 2006)......................................................... 9

20  *Officers for Justice v. Civil Serv. Comm'n of San Francisco,* 699 F.2d 615 (9th Cir. 1982) .................... 13

21  *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir. 1989)...................................... 16

22  *Plummer v. Chemical Bank,* 668 F.2d 654 (2d Cir. 1982) ........................................................... 15

23  *Plummer v. Chemical Bank,* 91 F.R.D. 434 (S.D.N.Y. 1981) ..................................................... 15

24  *Radcliffe v. Experian Information Solutions, Inc.,* 715 F.3d 1157 (9th Cir. 2013) ....................12, 14, 15

25  *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277 (7th Cir. 2002) ............................................. 2

26  *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948 (9th Cir. 2009) ..................................................... 12

27  *Silber v. Mabon,* 957 F.2d 697 (9th Cir. 1992). ........................................................................ 3

28

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

*Smith v. Levine Leichtman Capital*, Case No. C 10-0010 JSW, 2012 U.S. Dist. LEXIS 163672 (N.D. Cal. Nov. 15, 2012) ......................................................................................................... 7

*Stanton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) .............................................................3, 8, 11

*Stokes v. Interline Brands, Inc.*, Case No. 12-cv-05527, 2014 WL 5826335 (N.D. Cal. Nov. 10, 2014) ...................................................................................................................................... 5

*Tijero v. Aaron Brothers, Inc.*, Case No. C 10-01089, 2013 WL 60464 (N.D. Cal. Jan. 2, 2013) ................... 5

*True v. American Honda Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ...................................... 3

*Vassalle v. Midland Funding, LLC*, 708 F.3d 747 (6th Cir. 2013) .......................................... 15

*Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991) ...................................... 10

**Rules**
Federal Rule of Civil Procedure 23 ....................................................................................2, 18

**Other Authorities**
American Law Institute, *Principles of the Law of Aggregate Litig.* (2010) .............................. 3

Elham Rizi, *Sony PlayStation 3 and the "yellow light of death"*, BBC Watchdog, Sept. 17, 2009, https://web.archive.org/web/20120410112538/http://www.bbc.co.uk/blogs/watchdog/2009/09/playstation3_and_the_yellow_li.html#more (archived on the Internet Archive Wayback Machine, April 2012) ...................................................................................................... 4

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide"* (2010), http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf .............................. 6

Herbert Newberg & Alba Conte, Newberg on Class Actions (4th ed. 2002). ............................. 2

William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 Tul. L. Rev. 813 (2003) ............................................................................... 11

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

I. **Mr. Lindberg is a Class Member and intends to appear at the fairness hearing.**

Eric Michael Lindberg ("Mr. Lindberg") is a Class Member (capitalized terms used in this Objection have the same meaning as used in the Settlement Agreement unless otherwise defined). Mr. Lindberg received as a Christmas gift from his parents a "Fat PS3" Serial No. ████████ ████ in 2006. Mr. Lindberg's parents purchased it for him new and immediately gave it to him that Christmas season. Mr. Lindberg was the first to open the Fat PS3 in question and registered it as his own with Sony, it is still registered to Mr. Lindberg's PSN account. Mr. Lindberg has always maintained all ownership interests in the Fat PS3 in question.

Mr. Lindberg's PSN Network ID is "████████" Mr. Lindberg is a member of Consumer Class B because he was not able to install Linux on his PS3 as he did not decide he was technically savvy enough to try to use that feature until sometime during the summer of 2010 when he had finished his first year of college studying to become an engineer. By this point, his PS3 had updated to Firmware Update 3.21 and he was no longer able to attempt the Linux install. Mr. Lindberg consequently lost desired functionality and value in his PS3 as a result of the removal of the "Other OS" functionality in Firmware Update 3.21.

Mr. Lindberg is represented by the Law Office of Sam Miorelli, P.A. As this case has a somewhat unusual objection procedure (where objections are filed by mail with the Settlement Administrator instead of directly with the Court), Mr. Miorelli will file his motion for *pro hac vice* admission to the Court shortly after this Objection is added to the case docket. Mr. Lindberg has objected in a class action settlement only one previous time in the past two years in *Patrick Hendricks v. Starkist Co.*, Case No. 13-CV-00729-HSG (N.D. Cal.). Mr. Miorelli has personally objected to unfair proposed class action settlements in the past two years in (a) *In re Carrier IQ, Inc., Consumer Privacy Litigation*, Case No. 12-md-02330-EMC (N.D. Cal.), (b) *In re: The Home Depot, Inc., Consumer Data Security Breach Litigation*, Case No. 14-md-02583-TWT (N.D. Ga.), (c) *Legg v. LabCorp*, Case No. 14-61543-CIV-ROSENBERG/BRANNON (S.D. Fla.), (d) *Zepeda v. PayPal, Inc.*, Case No. 10-cv-02500-SBA (N.D. Cal.), (e) *In re: Target Corporation Consumer Data Security Breach Litigation*, Case No. MDL No. 14-2522 (PAM/JJK) (Dist. Minn.), and (f) *In re Lithium Ion Batteries Antitrust Litigation*, Case No. 13-md-02420-YGR (N.D. Cal.). Mr. Miorelli is Mr. Lindberg's counsel of record in *Starkist*, and in the past two years

1    has also represented individuals objecting to unfair and illegal proposed class action settlements in (a)

2    *Edwards, et al. v. National Milk Producers Federation, et al.*, Case No. 11-cv-04766-JSW (N.D. Cal.) and (b)

3    *Chambers, et al. v. Whirlpool Corp., et al.*, Case No. 11-cv-01733-FMO-JCG (C.D. Cal.).

4        Mr. Lindberg hereby provides notice of intent to appear at the Fairness Hearing by and through

5    counsel. To the extent that other class members file objections which are not inconsistent with the

6    objections raised herein, Mr. Lindberg reserves the right to adopt those objections and address them at

7    the Fairness Hearing as well. To the extent that any objector participates in discovery relating to the

8    Settlement Agreement or seeks to unseal any portion of the record, Mr. Lindberg joins their motion to

9    do so and requests equal access to such proceedings. Mr. Lindberg also hereby requests the opportunity

10    to depose and cross-examine any witness presenting evidence in support of the Settlement Agreement.

11    **II.**     **The Court has a fiduciary duty to the unnamed members of the class.**

12        A district court must act as a "fiduciary for the class who must serve as a guardian of the rights

13    of absent class members." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004). "Both

14    the United States Supreme Court and the Courts of Appeals have repeatedly emphasized the important

15    duties and responsibilities that devolve upon a district court pursuant to Rule 23(e) prior to final

16    adjudication and settlement of a class action suit." *In re Relafen Antitrust Litigation*, 360 F.Supp.2d 166,

17    192-94 (D. Mass. 2005) (*citing, inter alia, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 623 (1997)

18    ("Rule 23(e) protects unnamed class members from 'unjust or unfair settlements' agreed to by

19    'fainthearted' or self-interested class 'representatives.'")); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277,

20    279-80 (7th Cir. 2002) ("district judges [are] to exercise the highest degree of vigilance in scrutinizing

21    proposed settlements of class actions").

22        "Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the

23    rights of absent class members . . . [T]he court cannot accept a settlement that the proponents have not

24    shown to be fair, reasonable and adequate." *In re General Motors Corp. Pickup Truck Fuel Tank Prods. Liab.*

25    *Litig.*, 55 F.3d 768, 785 (3d. Cir. 1995) ("*GM Pickup Truck*") (internal quotations and citations omitted).

26    "A trial court has a continuing duty in a class action case to scrutinize the class attorney to see that he

27    or she is adequately protecting the interests of the class." Herbert Newberg & Alba Conte, Newberg on

28    Class Actions § 13:20 (4th ed. 2002). "Because class actions are rife with potential conflicts of interest

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mahon*, 957 F.2d 697, 701 (9th Cir. 1992). *Accord Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members").

There should be no presumption in favor of settlement approval: "[t]he proponents of a settlement bear the burden of proving its fairness." *True v. American Honda Co.*, 749 F. Supp. 2d 1052, 1080 (C.D. Cal. 2010) *citing* 4 Newberg on Class Actions § 11:42 (4th ed. 2009). *See also* American Law Institute, *Principles of the Law of Aggregate Litig.*, § 3.05(c) (2010). It is also insufficient that the settlement happened to be at "arm's length" without express collusion between the settling parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (*quoting Stanton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003). Because of the danger of conflicts of interest, third parties must monitor the reasonableness of the settlement as well. *Id.*

### III. The Settlement Agreement is not fair, reasonable, or adequate because the release is overbroad by failing to track the allegations of the complaint.

The Release is overbroad as it releases a much wider set of potential complaints against Defendants than it compensates the Class for. The Settlement Agreement releases

> all claims … whether known or unknown, and regardless of legal theory, that arise from the purchase of a Fat PS3 and/or that relate to, are based on, concern or arise out of the allegations, facts or circumstances that were asserted or could have been asserted … in the Action. Released Claims include, but are not limited to, claims arising under the common laws and statutes of all fifty (50) states concerning [the removal of the Other OS functionality, change in the agreements with consumers, or issuance of Firmware Update 3.21].

(Settlement Agreement at ¶ 35). However, the Second Amended Consolidated Class Action Complaint ("2ACCAC") alleges only three California state law causes of action: (1) violation of the CLRA, (2) violation of California Business and Professions Code § 17500, *et seq.* (the False Advertising Law), and (3) violation of California Business and Professions Code § 17200, *et seq.* (the Unfair Competition Law).

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

1 (Dkt 213 at 58-69). The 2ACCAC makes no allegations of violations of the law of any state other than
2 California and makes no factual allegations supporting any cause of action against Sony other than
3 those related to the Other OS issue.

4    Yet nevertheless, the Release seeks to extinguish literally *any* claim a consumer might have
5 against Sony arising from their purchase of a Fat PS3 regardless of the nature of that claim's legal or
6 factual predicate (i.e. "that were asserted or could have been asserted … in the Action") and regardless
7 of what state's law might apply to a particular class member or a particular claim. Consequently, the
8 Release is dramatically broader than the complaint in a way which is impermissible and for which Class
9 Members are not being compensated *at all*, let alone fairly, reasonably, or adequately. The Release
10 language is far broader than is necessary to release the claims from the 2ACCAC and would encompass,
11 *inter alia*, personal injury claims related the purchase of a Fat PS3, breach of express or implied warranty
12 claims related to the quality or longevity of a Fat PS3[1], fraud, breach of contract claims, and
13 innumerable others.

14    The allegations and activities alleged in the 2ACCAC relate to the development of the PS3, its
15 sale, and ultimately Sony's false and deceptive statements regarding the Other OS functionality. (Dkt
16 213 at 12-51). There is no allegation of the many other problems, including the Yellow Light of Death
17 ("YLOD") issue. However, since it theoretically *could* have been raised in this litigation, the Release
18 would extinguish any claim a consumer has related to that or any other of innumerable other issues
19 with the Fat PS3. It also releases claims that consumers like Mr. Lindberg would have against Sony on
20 the same factual predicate under the applicable consumer protection laws of their own state; many of
21 which provide better standards or remedies than the California laws in the 2ACCAC.[2]

---

[1] This is not an academic concern. Fat PS3's have a well-known history of defects, some of which were
24 discussed in the 2ACCAC but also the so-called "Yellow Light of Death" which often occurred just
after expiration of the official Sony warranty but well before the proclaimed 10-year lifespan of the
25 device. Elham Rizi, *Sony PlayStation 3 and the "yellow light of death"*, BBC Watchdog, Sept. 17, 2009,
https://web.archive.org/web/20120410112538/http://www.bbc.co.uk/blogs/watchdog/2009/09/pla
26 ystation3_and_the_yellow_li.html#more (archived on the Internet Archive Wayback Machine, April
2012).
[2] This too is not an academic issue. States have widely varying consumer protection statutes and some
differ from California's in material ways which could be beneficial to a Class Member. For instance,
28 Illinois does not require a consumer to prove reliance and Florida allows recovery of *damages* instead of

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

1    This District routinely declines to approve overbroad releases that potentially cover claims not

2    within the operative complaint, particularly where, as here, Class Members are not compensated for

3    them. For example, in *Hendricks v. Starkist Co.*, Case No. 13-cv-00729-HSG, 2016 WL 692739 (N.D.

4    Cal. Feb. 19 2016), Judge Gilliam denied final approval of a settlement after objectors convinced the

5    Court that "the original release improperly extended beyond the scope of the facts in this action, which

6    were limited to the underfilling of StarKist tuna cans, not all claims 'related in any way' to the purchase

7    of StarKist Products." *Hendricks*, 2016 WL 692739 at *3. Many other class action settlements have been

8    shut down when courts recognized their overbroad releases too.[3]

9

10   restitution under California's UCL. Since Sony was losing money on the PS3, restitution might result in
11   a zero-dollar recovery, but at $600 price per device, *damages* could be a significant per-unit amount up to
     the full purchase cost, which would be almost 67x more than Mr. Lindberg stands to recover in the
12   Settlement Agreement.
     [3] *Bond v. Ferguson Enters, Inc.*, Case No. 1:09-CV-01662, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011)
13   (holding that a release for "unrelated claims of any kind or nature that class members may have against
     defendants" was overbroad); *Custom LED, LLC v. eBay, Inc.*, Case No. 12-CV-01662, 2011 WL 284962,
14   at *7 (N.D. Cal. Nov. 20, 2013) (holding that the original scope of the release was overbroad because it
     "improperly released any claim, known or unknown, 'arising out of or relating in any way to [the
15   product at issue] regardless of whether any such claim is based on the allegations in the complaint'");
     *Lovig v. Sears, Roebuck & Co.*, Case No. EDCV 11-00756-CJC, 2014 WL 8252583 at *2 (C.D. Cal. Dec.
16   9, 2014) (holding that the factual basis for the release "impermissibly extends beyond the factual
     predicate of the operative complaint" where the "terms of the release specifically identify claims that
17   'could have been asserted in the Action based on the facts pled in any of the complaints filed in the
     Action.'"); *Stokes v. Interline Brands, Inc.*, Case No. 12-cv-05527, 2014 WL 5826335 (N.D. Cal. Nov. 10,
18   2014) (Donato, Dist.J.) (denying preliminary approval when the release exceeded the claims stated in
     the complaint, holding "[w]hile a release need not slavishly echo the claims in the complaint, it must
19   appropriately track and not exceed them."); *Tijero v. Aaron Brothers, Inc.*, Case No. C 10-01089, 2013 WL
     60464 (N.D. Cal. Jan. 2, 2013) (Armstrong, Dist. J.) (denying preliminary approval for an overbroad
20   release of "any and all claims [. . .] arising out of or in any way relating to their employment with and/or
     termination of employment with the Defendant" since they did not track the complaint and released
21   unrelated claims); *Boyd v. Avanquest North America, Inc.*, Case No. 12-cv-04391, 2015 WL 4396137 (N.D.
     Cal. July 17, 2015) (Orrick, Dist.J.) (denying preliminary approval because the release covered more
22   causes of action than the complaint alleged and citing the lack of limitations of the release applying to
     future causes of action as a violation of *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)); *Daniels v.
23   Aeropostale West, Inc.*, Case No. C 12-05775, 2014 WL 2215708 (N.D. Cal. May 29, 2014) (Alsup, Dist.J.)
     (denying preliminary approval of a settlement that included a "overbroad release" of claims for "zero
24   cash" (78% of class members would receive $1-$25) and holding that class counsel was not authorized
     to settle a claim beyond the scope of the class certification. "No one should have to give a release and
25   covenant not to sue in exchange for zero (or virtually zero) dollars."); *Kakani v. Oracle Corp.*, Case No. C
     06-06493, 2007 WL 1793774 at *2-3, 5-6 (N.D. Cal. June 19, 2007) (Alsup, Dist.J.) (rejecting the
26   proposed settlement in part because of the "draconian scope" of the proposed release, which released
     and forever discharged the defendant from any and all claims that were or could have been asserted in
27   the complaint, whether known or unknown, precluded any attempt by class members to prosecute a
     lawsuit with respect to a released claim, and where the defendant would only have to pay some workers,
28   and even those a fraction of the worth of their claims); *Adderley v. National Football League Player's Assn.*,

-5-

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

1   This release has the same problematic characteristics the judges of this District and others

2   regularly cite when rejecting proposed class action settlements. Additionally, Class Counsel only

3   represents the Class to the extent of the Court's order granting pre-trial interim co-lead counsel. (Dkt

4   65). That order only appointed them on the basis of the complaints which the Court held were related

5   and consolidated into the instant case: all done on the basis of the allegations in the various complaints.

6   Thus, not only is the release too broad as a matter of law, it also exceeds Class Counsel's authorization

7   from the Court to act on behalf of the absent Class Members. The Class Members are not being

8   compensated to release these broad swaths of often-more-valuable claims and the Court must deny

9   final approval on this independently sufficient basis.

10  **IV.    The claims-made process is employed for no reason other than to depress Class recovery and renders the Settlement Agreement unreasonable.**

11

12      Class Counsel and Sony have designed a claims-made settlement which requires the estimated

13  10 million class members to submit claim forms in order to receive settlement payments. (Settlement

14  Agreement at ¶ 69). There is no explanation given for why a claims-made system is used and in this

15  case such a claims method is invalid since Sony knows the identity of many if not all class members

16  who, like Mr. Lindberg, registered their PS3 with Sony as part of accessing the PSN services.

17          In too many cases, the parties may negotiate a claims process which
            serves as a choke on the total amount paid to class members. When the
18          defendant already holds information that would allow at least some
            claims to be paid automatically, those claims should be paid directly
19          without requiring claim forms.

20  Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 6

21  (2010), http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.

22      Sony has *actual knowledge* of the identity of a significant portion of the Class Members who used

23  a Fat PS3 on the PSN, like Mr. Lindberg. There is no reason these Class Members should not receive

24  the recovery even if they do not file a claim form. Indeed, it appears the settling parties recognized that

25

26  _____

    Case No. C 07-00943, 2009 WL 4250786, at *2 n. 4 (N.D. Cal. Nov. 23, 2009) (Alsup, Dist.J.)
27  (settlement approved where release was modified to release only certified or asserted claims, after
    denial of earlier settlement with overbroad release of "any and all claims ... that relate in any way" to the
28  subject of the claims certified or alleged in the action).

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

the claims-made process was *actually functioning as a choke on claims* and made a modest adjustment to allow claims from persons who no longer possessed the Fat PS3. (Dkt 271 at 9:28-10:7). This does not relieve them from the original sin: an unnecessary claims-made process that still is entirely unnecessary **since the records are actually in Sony's possession!** (Dkt 271 at 10:3).

This District and other courts have recognized the frequent abuses in claims-made settlements and rejected approval when there is not an excellent *and articulated* reason to use such a process. *See, e.g. Deatrick v. Securitas Security Services USA, Inc.*, Case No. 13-cv-05016-JST, 2016 WL 729622 at *8 (N.D. Cal. April 7, 2016) (denying preliminary settlement approval when the settling parties did not explain why "a claims form is even necessary" because the defendant had the class members' contact information and concluding "that the claim form requirement puts unnecessary impediments in the path of plaintiffs receiving their due compensation for their injuries under the proposed settlement."); *Burden v. Selectquote Ins. Services*, Case No. C 10-05966 SBA, 2013 U.S. Dist. LEXIS 16977 at *3 (N.D. Cal. Feb. 5, 2013) (there is no reason for a claims process where defendant can "ascertain the identity and location of the class member" without such claims process); *Smith v. Levine Leichtman Capital*, Case No. C 10-0010 JSW, 2012 U.S. Dist. LEXIS 163672 at *8 (N.D. Cal. Nov. 15, 2012) (considering whether a claims submission process was proper when it was not necessary to identify most absent class members); *Galloway v. Kan. City Landsmen, LLC*, Case No. 4:11-1020-CV-W-DGK, 2012 WL 4862833 at *6 (W.D. Mo. Oct. 12, 2012) (rejecting approval of proposed settlement because, *inter alia*, claims-made process was onerous for requiring class members to "find old credit-card receipts (assuming they still have them), swear to the viability of their claim, and agree to submit additional information"), *later renegotiated and approved as a direct notification and payment settlement*, 2013 WL 3336636 at *4, *aff'd*, 833 F.3d 969 (8th Cir. 2016); *De Leon v. Bank of Am., N.A. (USA)*, Case No. 6:09-cv-1251-Orl-28KRS, 2012 WL 2568142 at *19 (M.D. Fla. April 20, 2012) (finding the proposed settlement "not reasonable" expressly because of the claims-made nature of the claims process).

The settling parties have provided no justification for the use of the claims-made process and in fact all of the evidence provided tangentially to that discussion points to the claims-made process being unreasonable as it functions to reduce claims. This is an additional independently sufficient basis to deny final approval of the Settlement Agreement as not being fair, reasonable, or adequate.

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

V.    **The Settlement displays all of the *Bluetooth* indicia of Class Counsel self-dealing.**

Because the interests of Class Counsel and the absent Class Members become adversarial at the fee-setting stage, the Court must pay "special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement…" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998); *accord Bluetooth*, 654 F.3d at 947. As stated previously, it is not enough that the settlement was reached during "arm's length" negotiations without explicit collusion, it must be objectively reasonable and *actively avoid* self-dealing by Class Counsel.

"If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members … than could otherwise have obtained." *Stanton v. Boeing*, 327 F.3d 938, 964 (9th Cir. 2003); *accord Bluetooth*, 654 F.3d at 947. This Court "must be particularly vigilant not only for explicit collusion but also for more subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations." *Bluetooth*, 654 F.3d at 947 (citing *Stanton*, 327 F.3d at 960). Mr. Lindberg does not need to prove that *explicit* collusion occurred, it is sufficient for him simply to point out the existence of signs of self-dealing. Indeed, explicit collusion is not the standard for self-dealing since even acquiescence is sufficient, "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Stanton*, 327 F.3d at 964 (quoting *GMC Pick-Up Truck*, 55 F.3d 768, 819-20 (3d Cir. 1995)); *accord Bluetooth*, 654 F.3d at 949. The Ninth Circuit, in *Bluetooth*, identified three possible (and nonexclusive) signs of self-dealing: (1) disproportionate distribution to counsel; (2) a clear sailing agreement; and (3) reversion of the excess fees to the defendant. *Bluetooth*, 654 F.3d at 949. Each is present here.

A.    It is highly likely that a disproportionate amount of the total constructive settlement fund will be distributed to Class Counsel.

As discussed *supra*, the Settlement Agreement's claims-made nature is *actually functioning* to reduce the number of claims. Since the vast majority of the class is likely to be only eligible for $9, the claims rate is likely to be significantly below 1%. *See, e.g., In re Carrier IQ, Inc., Consumer Privacy Litig.*, Case No. 3:12-md-02330-EMC, 2016 WL 4474366 at *4 (N.D. Cal. Aug. 25, 2016) (response rate of 0.14%

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

from a 30 million person class for a $138.35/each recovery and quoting the settlement administrator's declaration that "in our experience the claims rate in this settlement is consistent with many other settlement administrations with similar class characteristics."); *LaGarde v. Support.com*, Case No. 12-0609 JSC, 2013 WL 1994703 at *3 (N.D. Cal. May 13, 2013) (a $10 refund resulted in a claims rate of 0.17% of the class members despite a direct e-mail notice plan that reached 92% of the class members). "Given the tiny sum per person, who would bother to mail a claim." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (Easterbrook, J.)

Accepting the settling parties' estimate of a 10 million person class, the expected claims rate suggests less than 100,000 persons will file claims. In fact, if the rate is as low as *CarrierIQ* (which offered many times more money than the Settlement Agreement does), then perhaps less than 15,000 claims will be filed. But even if 100,000 claims are filed, and even if every single one is for $55 (clearly almost all will be for $9 as it is much simpler to prove), then the total class recovery will be at most $5.5 million. Given the fact that most claims are likely to be $9 instead of $55, **a more likely estimate is that the total class recovery will be less than $900,000.**[4]

Compare that recovery to Class Counsel's proposed $2.25 million fee and it instantly becomes clear who really benefits from the Settlement Agreement: the lawyers who will get more than twice as much money as the 10 million class members *combined!* It is likely that Class Counsel's proposed fee will be more than 71% of the total constructive fund and in a *CarrierIQ*-response-level could end up taking home almost 94% of the total. Class Counsel's request is outrageous in this comparative light and the first red flag to the Court that the Settlement Agreement is on the wrong side of *Bluetooth*.

B. The Settlement Agreement contains *Bluetooth*'s second warning sign: a clear sailing agreement.

The Settlement Agreement contains a textbook example of a clear sailing agreement: Class Counsel agrees not to seek or accept from Sony more than $2.25 million and Sony agrees not to object to Class Counsel's request of $2.25 million. (Settlement Agreement at ¶ 107-08); *Bluetooth***Error!**

---

[4] A word of caution is prudent here as even this estimate is likely on the high side. A *CarrierIQ*-level claims rate would result in a total class recovery of between $126,000 and $770,000.

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

***Bookmark not defined.***, 654 F.3d at 947; *accord Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014). "Such a clause by its nature deprives the court of the advantages of the adversary process." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991). This, of course, occurs right at the very moment when the interests of Sony and Class Counsel align *against* the absent class members.

> Because it's in the defendant's interest to contest that request in order to reduce the overall cost of the settlement, the defendant won't agree to a clear-sailing clause without compensation – namely a reduction in the part of the settlement that goes to the class members, as that is the only reduction class counsel are likely to consider. The existence of such clauses thus illustrates the danger of collusion in class actions between class counsel and the defendant, to the detriment of the class members.

*Redman*, 768 F.3d 622, 637; *see also Malchman v. Davis*, 761 F.2d 893, 907-08 (2d Cir. 1985) ("a 'clear sailing' clause creates the risk that a fee request within the negotiated ceiling will not be challenged, placing upon the courts the burden of examining the basis for the fee, unaided by the challenges of an adverse party.")

The Ninth Circuit's view of clear sailing agreements may be the most negative of any Court of Appeals, finding that the "very existence" of a clear sailing agreement "increases the likelihood that class counsel will have bargained away something of value to the class." *Bluetooth***Error! Bookmark not defined.**, 654 F.3d at 948 (quoting *Weinberger*, 925 F.2d at 525). As soon as a clear sailing clause enters a pre-certification class action settlement agreement, it "suggests, strongly" that it was used by the lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees" and the Court must place the fee request "under the microscope of judicial scrutiny." *Weinberger*, 925 F.2d at 518, 524-25; *accord Redman*, 768 F.3d at 637.[5]

---

[5] Majority opinions of the Courts of Appeals are not alone in their distaste for clear sailing agreements, Justice Sandra Day O'Connor issued a statement respecting the denial of a petition for a *writ of certiorari* for a class action settlement which included a clear sailing provision that distributed $13.3 million in attorneys' fees but only $6.49 million to class members in a deal, much like this one, that did not link the attorneys' fee to the class recovery. *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223 (2000). Justice O'Connor wrote that there could be several troubling consequences of "the approval of attorney's fees absent" any "inquiry into whether there must be some rational connection between the fee award and the amount of the actual distribution to the class." *Id.* "They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class." There are even calls in the academy for a *per se* ban

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

1   If a realistic outcome where Class Counsel sucks up around ¾ or more of the total available

2   cash in this case was not enough evidence that this is an unfair deal for absent Class Members, the clear

3   sailing provision should remove all doubt. The Court has a heightened duty to "peer into the provision

4   and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to

5   avoid awarding 'unreasonbly high' fees simply because they are uncontested." *Bluetooth*, 654 F.3d at 948

6   (quoting *Stanton*, 327 F.3d at 954). Mr. Lindberg's Objection shows the Court this bright red warning

7   flag, the Ninth Circuit now requires the Court to scrutinize, and ultimately deny, approval of the

8   Settlement Agreement.

9          C.   The kicker clause completes the *Bluetooth* trifecta and proves the unfairness of the
                Settlement Agreement.

10          If the two prior *Bluetooth* warning signs were not enough, the Settlement Agreement completes

11  the trifecta with a "kicker clause." A "kicker" is a provision that causes any reduction in attorneys' fees,

12  costs, or incentive awards to revert to the defendant rather than the class. *Bluetooth*, 654 F.3d at 947.

13  The "kicker" comes from the Settlement Agreement's structuring the attorneys' fee to be paid

14  separately from the class relief and specifying that any amount awarded less than $2.25 million would

15  stay with defendants rather than be paid to the absent class members. (Settlement Agreement at ¶ 109).

16  *Bluetooth* holds that the "kicker," in addition to being an independent warning sign of unfairness in a

17  settlement agreement, also "amplifies the danger" of the clear sailing provision. *Bluetooth*, 654 F.3d at

18  949. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the

19  class of that full potential benefit if class counsel negotiates too much for its fees." *Id.*

20          In the structure of this Settlement Agreement, the "kicker" not only amplifies the problems of

21  the clear sailing provision, but it also amplifies the unfairness of the claims-made nature of the

22  Settlement Agreement. That is because under a common fund case, if the Court agreed with Mr.

23  Lindberg and reduced the attorneys' fees, that reduction would inure to the benefit of the entire class.

24  But in this case, it would only benefit Sony because of the "kicker." Combined with the fact that the

25

26

27

28  on settlement agreements that incorporate a clear sailing provision. William D. Henderson, *Clear Sailing
    Agreements: A Special Form of Collusion in Class Action Settlements*, 77 Tul. L. Rev. 813, 816 (2003).

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

1  claims-made arrangement means a very small amount will be paid in the first place, the result is
2  everything pointing toward a much smaller payment by Sony than is suggested by the top-line numbers.
3  The economic reality is "that a settling defendant is concerned only with its total liability." *In re Dry*
4  *Max Pampers Litig.*, 724 F.3d 713, 717 (6th Cir. 2003).

5      The combination of an enormous fraction of the funds going to Class Counsel, the clear sailing
6  provision, and the "kicker" are three red flags that point toward a self-dealing settlement. The Court
7  should demand a "clear explanation" justifying this structure which plainly makes the class worse off
8  than a traditional common fund would. *See Bluetooth*, 654 F.3d at 949. Mr. Lindberg does not believe any
9  such explanation could be given, and as such, pursuant to the Ninth Circuit's holding in *Bluetooth*, the
10  Settlement Agreement should be denied.

11  **VI.    The *Bluetooth* trifecta creates a Rule 23(g) representative adequacy problem with the Settlement Agreement and Class Counsel's ongoing representation of the class.**

12
13      By agreeing to the Settlement Agreement, with its obvious indicia of self-dealing under the
    *Bluetooth* rules, Class Counsel has also rendered itself unable to adequately represent the Class as
14
    required by Federal Rule of Civil Procedure 23(g)(4). *See Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d
15
16  1142, 1147 (9th Cir. 2000) (class counsel breached their fiduciary duty to the class when they "agreed to
    accept excessive fees and costs to the detriment of class plaintiffs…"); *Gallego v. Northland Group, Inc.*,
17
18  814 F.3d 123, 129 (2d Cir. 2016) (affirming denial of class certification as "within the range of
    permissible decisions when it appeared that the intended result of the settlement was 'mass
19
    indifference, a few profiteers, and a quick fee to clever lawyers.'"); *In re Razorfish, Inc. Sec. Litig.*, 143
20
21  F.Supp.2d 304, 311 (S.D.N.Y. 2001) ("an excessive compensation proposal can cast in doubt the ability
    of proposed lead counsel to adequately represent the class."). Additionally, the Class Representatives,
22
23  have permitted this attempted money-grab under their supposedly-watchful eye likely because they
    hope to be paid $3,500 each – essentially paid by Sony for helping to sell out the overall recovery in
24
25  favor of a big unopposed fee but a small overall cost to Sony. This renders them all inadequate
    representatives pursuant to Rule 23(a)(4) for the Class moving forward if the Court denies final
26
    approval of the Settlement Agreement. *See Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157,
27
    1165 (9th Cir. 2013), *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 960 (9th Cir. 2009).
28

-12-

**VII.    Class Counsel should not be allowed to characterize the Settlement Agreement as good for the Class without analyzing the maximum potential recovery at trial and comparing that to the outcome in this case.**

Class Counsel argues that the Settlement Agreement is fair, reasonable, and adequate. Yet while Class Counsel describes the various risks to continued litigation, there is no discussion whatsoever of the estimated value of the claims to Class Members in a best-case-at-trial scenario. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) sets forth eight factors which "the district court must show it has explored" to "survive appellate review." *Hanlon*, 150 F.3d at 1026. However, that list, which the Ninth Circuit first complied in *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 699 F.2d 615, 625 (9th Cir. 1982) is "by no means an exhaustive list of relevant considerations, nor have we attempted to identify the most significant factors." *Officers for Justice*, 699 F.2d at 625 (citing cases from the Second, Fourth, Fifth, and Ninth circuits to compile the list).

As the standard is a "balancing of several factors," it is not sufficient to analyze the strength of the plaintiffs' case compared to the risk of further litigation through trial and the amount offered in settlement while ignoring Class Counsel's estimate of the maximum value of the case at trial. After all, without that best-case number in the balance, the analysis only has factors pointing in favor of approving a small-value settlement. That is exactly what Class Counsel's erroneous analysis has done.

Nowhere does Class Counsel evaluate to any extent what Class Counsel believed at the time of settlement the Class' best-case outcome at trial might have been. Instead Class Counsel simply recites, *ipsie dixit*, that Class Counsel believes (without any explanation why) that the claims are meritorious, that there is a risk that the Court might not certify the Class in the first place (without any explanation of the probability of that risk), that the outcome at trial is uncertain (without any analysis of the degree of uncertainty in *this particular case*), and that there would be costs to continued litigation. (Dkt 259 at 19:5-12). Class Counsel does not provide analysis, only rote recitation.

Class Counsel, as the movant, bears the burden of proving the Settlement Agreement is fair, reasonable, and adequate, within the Ninth Circuit's binding rules on interpreting that standard. This requires Class Counsel to present to the Court arguments on the required points of inquiry on which the Court can start its exacting scrutiny of this pre-certification settlement. Certainly Class Counsel has

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

1   not met that burden here where (even if the *ipsie dixit* sentences are counted) there are actually less

2   sentences of explanation than there are factors which Class Counsel is obliged to brief.

3         In particular, Mr. Lindberg points out that the worst offense of this is that Class Counsel

4   scrupulously avoids providing any opinion whatsoever of Plaintiffs' estimate of their best-case outcome

5   at trial. Even if Class Counsel had provided *some* legal analysis of the *Hanlon* factors, the failure of Class

6   Counsel to even state a best-case estimate for the Court to compare the Settlement Agreement against

7   should be a *per se* inadequacy requiring denial of final approval since there is no way for the Court to

8   balance any factors if one side of the scale is purposefully left empty. Consequently, as Class Counsel

9   has not met its burden to prove the Settlement Agreement is fair, reasonable, and adequate, (and

10   indeed, not even provided a complete legal argument in favor of its litigation position), the Court *must*

11   deny final approval of the Settlement Agreement.

12   **VIII.**   **A class action settlement should not be approved when the primary beneficiaries are the class representatives and class counsel.**

13

14         Under the Settlement Agreement and Class Counsel's Fee Motion, while Class Members will get

15   small cash payments, the Class Representatives will receive $3,500 cash each. Mr. Lindberg expects to

16   receive $9 if the Settlement Agreement is approved. This means that, even under the most generous

17   evaluation for Class Members getting $55, absent Class Members will receive about 1.57% of what the

18   class representatives do, a disparity of about 64x. Most Class Members like Mr. Lindberg will receive

19   0.257% of what the Class Representatives get, a disparity of about 389x.

20         These incentive awards are also purely conditional – they are only paid if the Settlement

21   Agreement with all of its many fatal defects is approved. (Settlement Agreement at ¶ 112-13). That

22   conditionality makes the incentive awards even more odious since it gives each Class Representative a

23   389x motive to not oppose the Settlement Agreement's final approval.

24       A.   <u>A large disparity between the recovery of the representative class member and the absent class members is not permitted under Ninth Circuit precedent.</u>

25         Courts around the country, including the Ninth Circuit, while often approving incentive awards

26   to class representatives, regularly reverse when those awards represent a large disparity when compared

27   to the absent class members. In *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157, 1165 (9th

28   Cir. 2013), the Ninth Circuit reversed an approved settlement due to a 6.67-192.3 times disparity

1 between class representatives' recovery and that of absent class members. *Id.*

2 The Sixth Circuit has also rejected a large, 374 times disparity between the named plaintiffs and

3 absent class members' treatment in *Vassalle v. Midland Funding, LLC*, 708 F.3d 747 (6th Cir. 2013). The

4 Sixth Circuit found the settlement was unfair and that the district court abused its discretion by

5 approving it. *Id.* at 756.. at 756.

6 The Second Circuit also is skeptical of the fairness of incentive payments. In *Plummer v. Chemical*

7 *Bank*, 668 F.2d 654 (2d Cir. 1982) representative class members received between $8,500 and $17,500

8 each. The district court held that "where representative plaintiffs obtain more for themselves by

9 settlement than they do for the class for whom they are obligated to act as fiduciaries, serious questions

10 are raised as to the fairness of the settlement to the class." *Plummer v. Chemical Bank*, 91 F.R.D. 434, 441-

11 42 (S.D.N.Y. 1981), *aff'd*, 668 F.2d 654 (2d Cir. 1982).

12 The Eleventh Circuit directly cited that same district court language in *Plummer* when it rejected

13 a class settlement which allocated approximately 6.25% of a lump sum settlement to the eight

14 representative class members, while the absent class members each received, on average, approximately

15 0.42% of the settlement. *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1146, 1148 (11th Cir. 1983). The

16 court found the 14.75 times disparity between representative and absent class member recovery was

17 facially unfair and reversed the district court's approval of the settlement. *Id.* at 1151.

18 In *Radcliffe* the disparity between the class representatives and the absent members of the class

19 was about 6 to 192 times, in *Vassalle* it was 374 times, in *Plummer* it was 8.5 to 17.5 times, and in *Holmes*

20 the disparity was 14.75 times. In each of those cases, the appellate court rejected the settlement as

21 unfair.

22 This District has also expressed concern about other proposed settlement agreements recently

23 before it which suggested large-multiple incentive awards. In *Napoleon Ebarle, et. al. v. Lifelock, Inc.*, 2016

24 WL 234364 (N.D. Cal. Jan. 20, 2016) , Judge Gilliam noted with caution that "Plaintiffs, thus far, have

25 provided no explanation for why the named Plaintiffs deserve an award 100 times greater than the

26 settlement value of the other Class Members." *Lifelock*, 2016 WL 234364 at *7.

27 In this case the disparity is likely to be about 389x. That disparity is well above the levels which

28 the Ninth, Second, and Eleventh Circuits have all rejected. This Court would invite error to approve

-15-

this much-worse disparity. Class certification is not appropriate when the class representative and class counsel bring a lawsuit to benefit not the class, but themselves. *See In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011). This Settlement Agreement, with its enormous attorneys' fee and thousands of times difference in recovery between the Class Representatives and absent Class Members appears to be just such a self-serving case and should be rejected.

### IX. Class Counsel should not get more than 25% of whatever amount of money is actually paid to the absent class members.

In the Ninth Circuit, the 25% benchmark for calculating a contingent attorneys' fee in a class action is settled law. *Bluetooth*, 654 F.3d at 942 (*citing Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989) (establishing that 25% of the fund is the "benchmark" award that should be given in common fund cases)). The "foremost" consideration in evaluating whether a fee award is reasonable is the benefit obtained for the class. *Bluetooth*, 654 F.3d at 942 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983); *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)). Class Counsel may argue that this is not a common fund case because of the "kicker" but this simply is not true. Sony is not ambivalent to how much they will pay and almost certainly negotiated this deal with an eye on their total likely amount to pay. As such, the outcome of the case can be evaluated as a constructive common fund *at least* for purposes of evaluating the reasonableness of the fee award.

Additionally, Class Counsel admits they missed the Court's deadline to file their motion for fees. While Mr. Lindberg is not currently inclined to press the timeline issue particularly aggressively, to the extent Class Counsel argues that any objection is filed out of time and that amount of time is less than 7 days, then Mr. Lindberg requests the Court, if it strikes such a theoretical objection, to also strike Class Counsel's fee motion in its entirety for also being impermissibly filed out of time. Class Counsel has not submitted sufficient evidence to support the lodestar as no detailed billing records are available for absent Class Members to evaluate the propriety of the work.

Since no claims information is currently available to Mr. Lindberg he cannot opine on a proper final attorneys' fee except to say that it should be tied to the actual total Class Recovery and awarded at a ratio of no more than 25% regardless of how that affects Class Counsel's claimed lodestar.

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

## X. The Settlement Agreement violates Rule 23(h).

In addition to its many other flaws, the Settlement Agreement violates Federal Rule of Civil Procedure 23(h) by impermissibly delegating distribution of attorneys' fees to the attorneys themselves without review by the Court or the Class. Rule 23(h) establishes procedures for Class Counsel to make an application for fees and expenses, rules which are designed to protect the Class. Instead, Class Counsel requests the Court award a lump sum, presumably for the lawyers to divide amongst themselves via secret agreement. (Dkt 271 at 1:22-24). This impermissibly relieves the Court of its responsibility to determine attorneys' fees and allocates it to a group of attorneys who themselves have a large stake in the outcome of those proceedings.

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008), is directly on point. The Fifth Circuit held that "the appointment of a committee does not relieve a district court of its responsibility to closely scrutinize the attorneys' fee allocation, especially when the attorneys recommending the allocation have a financial interest in the resulting awards." *Id.* at 227. "[T]he district court abdicated its responsibility to ensure that the individual awards recommended by the Fee Committee were fair and reasonable." *Id.* For a district court to allocate fees in an *ex parte* proceeding was "inconsistent with well-established class action principles and basic judicial standards of … fairness." *Id.*

The Fifth Circuit's *High Sulfur* decision had its roots in an opinion of Judge Ambro of the Third Circuit regarding Rule 23(h). In *Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143 (3d Cir. 2005), the Third Circuit considered the appeal of several class counsel challenging a district court's award and allocation of attorneys' fees. *Diet Drugs*, 401 F.3d at 145. Judge Ambro's concurring opinion asked whether it was appropriate for the district court to defer to class counsel's proposed allocation of attorneys' fees because "counsel have inherent conflicts." *Id.* at 172-3. Because class counsel "make recommendations on their own fees and thus have a financial interest in the outcome," Mr. Lindberg joins Judge Ambro in asking: "how much deference is due the fox who recommends how to divvy up the chickens?" *Id.* at 173.

Class Counsel's plan to divvy up the fees also cannot be reconciled with *High Sulfur* because such allocation would be made as part of an out of court, secret deal among the lawyers without any

-17-

1 judicial or Class Member involvement. This secrecy also suggests probable violation of Rule 23(e)(3). It

2 is unimaginable that the firms in this case do not have an agreement about whether and how much they

3 would be paid. Recall from Rule 23, "[t]he parties seeking approval must file a statement identifying any

4 agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Whatever these fee-split

5 agreements are, they should be filed with the Court and disclosed to the Settlement Class. Class

6 Counsel should be required to disclose any and all arrangements which have been made with other

7 plaintiffs' attorneys pursuant to this litigation overall and the Settlement Agreement specifically.

8    The Court also must be involved in allocating the fees because if one law firm has secretly

9 agreed to accept less than its lodestar or a smaller multiplier than is being requested from the Court, it is

10 the Settlement Class that is entitled to that giveback, not the law firm that has secretly extracted a

11 greater return than approved by the Court. *Cf. Bluetooth*, 654 F.3d at 949 (a giveback going to someone

12 other than the class is a sign of self-dealing because "there is no apparent reason the class should not

13 benefit from the excess allotted for fees"); *cf. also* Fed. R. Civ. P. 23(e)(3) (forbidding secret agreements

14 in class action settlements). Finally, putting control of the fee split in the hands of Class Counsel creates

15 an enormous incentive for the other attorneys in the case to not oppose this unfair Settlement

16 Agreement.

17 **XI.  CONCLUSION**

18    For the reasons set forth herein, the Settlement Agreement sets forth a class which cannot be

19 certified, a release which is too broad, and a settlement which is actually and procedurally unfair.

20 Therefore, Mr. Lindberg prays this honorable court:

21    (a) Deny final approval of the Settlement Agreement; and,

22    (b) Order replacement class representatives and Class Counsel to eliminate the conflict of

23      interest; or

24    (c) If the Court chooses to approve the Settlement Agreement, to:

25      i. Reduce the attorneys' fees to 25% of the total amount of money to be paid to

26       absent class members after the claims period closes;

27      ii. Refuse to award the unreasonable requested incentive payments; and

28

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

iii. Reserve jurisdiction to grant a *reasonable* incentive award to Mr. Lindberg and reasonable attorney's fees and costs to his counsel.

/////

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

**OBJECTOR CERTIFICATION**

I have read the foregoing and consent to its filing as my objection in the above-captioned case. Additionally, with regard to the factual assertions relating to my membership in the class set forth in Section I, I swear under penalty of perjury pursuant to 28 U.S.C. § 1746 that such assertions are true and correct. Executed this 7th Day of December, 2016.

Eric Michael Lindberg

Respectfully submitted,

DATED: December 7, 2016

/s/ Sam A. Miorelli, E.I., Esq.
Sam A. Miorelli, E.I., Esq. (*pro hac vice application to be filed upon transmittal of objection from Settlement Administrator to the Court*)
**Law Office of Sam Miorelli, P.A.**
764 Ellwood Avenue
Orlando, FL 32804
Telephone: 352-458-4092
E-Mail: sam.miorelli@gmail.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Objection to Class Action Settlement of Eric Michael Lindberg was transmitted via U.S.P.S. First Class Mail on December 7, 2016 to the following:

In re Sony PS3 "Other OS" Litigation
c/o Garden City Group, LLC
P.O. Box 10312
Dublin, OH 43017-3912

/s/ Sam A. Miorelli, E.I., Esq.
Sam A. Miorelli, E.I., Esq. *pro se*

OBJECTION TO CLASS ACTION SETTLEMENT OF ERIC MICHAEL LINDBERG

Law Office of Sam Miorelli, P.A.
764 Ellwood Avenue
Orlando, FL 32804

In re Sony PS3 "Other OS" Litigation
c/o Garden City Group, LLC
P.O. Box 10312
Dublin, OH 43017-3912


$3.460
US POSTAGE
FIRST-CLASS
FROM 32804
DEC 07 2016
stamps.com
0629000236638

# EXHIBIT F

I just wanted to submit my information since I'm not sure my claim went through. To the extent that my claim was not accepted, I wish to object to the settlement. If included in the settlement, I do not wish to object – it's just not worth the hassle, even though I am very unhappy, and feel that class counsel has not represented me fully.

I was a part of this litigation previously, but never received any notice that there was a settlement. I only learned of the settlement about a month ago, which did not give me a lot of time to figure out my options.

I am very unhappy with the lawyers representing me in this case, and feel like there has been zero effort put into contacting people who were harmed. I can only assume any money that isn't paid to the people who were harmed by SCA is going to the lawyers. I must assume that because I've never heard anything from them.

Included here is the correspondence I had with SCA at the time the Other OS feature was removed from Playstation 3's which were able to connect to the PSN.

My contact information is as follows (and was included in the settlement form)

Mason Apostol

Mason

 Gmail

## I use my PS3 as a computer. I used the install other OS feature to install Linux [Incident: 100909-000477]

**PlayStation Consumer Services** <playstation@mailnj.custhelp.com>          Sun, Sep 12, 2010 at 11:03 AM
Reply-To: PlayStation Consumer Services <playstation@mailnj.custhelp.com>
To

To update this question by email, please reply to this message. Because your reply will be automatically processed, you MUST enter your reply in the space below. Text entered into any other part of this message will be discarded.

[===> Please enter your reply below this line <===]

[===> Please enter your reply above this line <===]

**Subject**
I use my PS3 as a computer. I used the install other OS feature to install Linux

**Discussion Thread**
**Response (Dena L.)**          09/12/2010 08:03 AM
Hello Mason,

We apologize for any inconvenience you are having with the removal of the "Other OS" feature. We completely understand your frustration. Currently none of our newer PlayStation(R)3 computer entertainment system's are backwards compatible, and we have no current information suggesting they will be in the future. We understand how this can pose problems for some consumers as this was a leading feature in our release of the PlayStation(R)3 computer entertainment system. The reason we have decided to no longer allow this feature was to allow cost efficiency for you as the consumer to purchase our family of the PlayStation(R) products. We appreciate your feedback and continued support for our PlayStation(R) family line of products. Sony Computer Entertainment America (SCEA) receives great suggestions from our consumers, as well as from our own employees, and employees of our affiliates, on a daily basis. Please feel free to provide any ideas of feedback in the following link, so that we may better address this situation in the future.

http://share.blog.us.playstation.com/

Regards,
Dena L.
**Customer**          09/11/2010 06:43 PM
Dear Tyler R. (or other Sony Representative),
Thank you for your quick and candid response to my inquiry. However, I do not find the response I received satisfactory.
All I want to do is use my PS3 in the way I have been using it since I bought it. I spent approximately $1000 on the PS3, games, and accessories. I feel like Firmware Update 3.21 has greatly diminished the value of my purchases. I bought a PS3 to use as a computer. I bought a PS3 and a bunch of games to play online. Now, after Sony has my money, I am forced to choose which function I want to keep. I don't just feel inconvenienced. I feel like I am the victim of a high-tech bait-and-switch.

Please allow me to update my firmware to 3.21 and beyond without losing my Other OS functionality. If this is not possible, I request that you refund the money I spent on all the games I have that I can no longer enjoy.
My PS3 is an awesome device. I'd really like to keep buying and playing games on it, as well as using it as a computer in my living room.
Thank you for your time,
Mason Apostol

**Response (Tyler R.)**                                                                                      09/09/2010 12:38 PM

Hello Mason,

We apologize for any inconvenience you've in countered due to the required firmware update on the PlayStation(R)3 computer entertainment system. Unfortunately what you've stated is in fact true, if you update the firmware on the unit the Operating System will no longer be available. But if you don't update than you won't be able to enjoy online gaming.

As much as we would like to address all of your questions, there are certain topics that are simply out of the scope of this department within Sony Computer Entertainment America (SCEA). You have reached the Consumer Services Department within SCEA, and we handle all general inquiries for our PlayStation(R) family of products, warranty and repair information, installation and troubleshooting, general corporate business inquiries, PlayStation(R) Underground(TM) Club Membership inquiries, and third party software referrals, just to name a few.

Very specific questions on any particular product (e.g., manufacturing process), programming details of software or hardware, 'reasons or beliefs' on why a product did or did not include certain features, personal opinions, and personal contact information for developers, publishers, and other company employees, are some of the topics that cannot be addressed. Also, there are certain topics that we may not be able to address due to the fact that they are confidential and proprietary to SCEA.

Sony Computer Entertainment America (SCEA) has not released any details concerning the product, project, or development referenced in your email. SCEA and its affiliated companies are regularly engaged in extensive research and development in many areas of the computer entertainment industry. Hence, we cannot comment on future PlayStation(R) developments, projects, or products. We appreciate your enthusiasm and continued interest in our products, and hope you understand our position. You may however, visit our website at http://www.us.playstation.com/ and view our current press releases and future updates.

Regards,
Tyler R.

**Auto-Response**                                                                                            09/09/2010 12:14 PM

Thank you for contacting Sony Computer Entertainment America (SCEA).

You have received this auto-acknowledgement to confirm that we received your message. We will respond to your message within 24 - 48 hours. We appreciate your patience. We have also Included helpful service links and information that may be of immediate assistance to you.


Getting your system repaired/exchanged using the Internet
-------------------------------------------------------------------

If you are experiencing the following issues with your product, you will most likely need to have it replaced or serviced:

- Not getting any power
- None of your games or movies load or play
- System freezes or locks up at the main menu or XMB screen
- Cracked or damaged LCD screen on PSP portable

You can fill out our Online Service Request form by visiting https://service1.us.playstation.com and process your own service request quickly and easily using a computer. [This service is currently open for U.S. residents ONLY. Other

restrictions apply. Please see the Online Service Request page for additional details.]

Additional Troubleshooting
-------------------------------
We have also included links to our Knowledge Center Articles on some of our most commonly searched troubleshooting issues:


PLAYSTATION(R)3 computer entertainment system

- How to Restore Default Settings:
http://playstation.custhelp.com/cgi-bin/playstation.cfg/php/enduser/std_adp.php?p_faqid=278

- HDMI Picture & Sound Troubleshooting:
http://playstation.custhelp.com/cgi-bin/playstation.cfg/php/enduser/std_adp.php?p_faqid=262

- Wireless Network Troubleshooting:
http://playstation.custhelp.com/cgi-bin/playstation.cfg/php/enduser/std_adp.php?p_faqid=280

- Wired (Ethernet) Troubleshooting:
http://playstation.custhelp.com/cgi-bin/playstation.cfg/php/enduser/std_adp.php?p_faqid=285

- Firewall & Port Numbers for Online Gaming:
http://playstation.custhelp.com/cgi-bin/playstation.cfg/php/enduser/std_adp.php?p_faqid=241


PSP(R) portable entertainment system

- Setting up Infrastructure Mode:
http://playstation.custhelp.com/cgi-bin/playstation.cfg/php/enduser/std_adp.php?p_faqid=460

- Transferring Files from PC to PSP:
http://playstation.custhelp.com/cgi-bin/playstation.cfg/php/enduser/std_adp.php?p_faqid=474

- Updating System Software:
http://playstation.custhelp.com/cgi-bin/playstation.cfg/php/enduser/std_adp.php?p_faqid=265

- Browsing the Internet:
http://playstation.custhelp.com/cgi-bin/playstation.cfg/php/enduser/std_adp.php?p_faqid=80


PlayStation(R)Network

Recovering PlayStation Network Password:
http://playstation.custhelp.com/cgi-bin/playstation.cfg/php/enduser/std_adp.php?p_faqid=492

**Customer**                                                            09/09/2010 12:14 PM
I use my PS3 as a computer. I used the install other OS feature to install Linux. When I boot into the PS3 operating system to play games, it states that update 3.21 is available, but this update removes my install other OS feature.

I bought my PS3 specifically because I could use it both for online gaming with my friends, as well as a personal computer. If I install this update, I lose my computer, but if I don't, I can't play games online.

From what I have read on this site, there is no way to do both things. Is there a way I can do both? Is another update

coming that will fix this problem?

Thanks.

### Question Reference #100909-000477

|  |  |
|---|---|
| **Category Level 1:** | Online Gaming / Internet |
| **Date Created:** | 09/09/2010 12:14 PM |
| **Last Updated:** | 09/12/2010 08:03 AM |
| **Status:** | Closed |
| **First Name:** | Mason |
| **Last Name:** | Apostol |
| **PSN Sign-In ID:** | |
| **PSN Online ID:** | |
| **Voucher Code:** | |
| **Address Line 1:** | |
| **Address Line 2:** | |
| **City:** | |
| **State:** | |
| **Zip Code:** | |
| **Phone Number:** | ██████████ |
| **Error Code:** | |

### Service Request #

[---001:007215:05417---]

PHILADELPHIA PA 191

10 DEC 2015 PM 9

In Re P53 Other OS Litigation
c/o Garden City Group LLC
PO Box 10312
Dublin OH 43017-5912

43017-391212

# EXHIBIT G

In re: SONY PS3 "OTHER OS" )
LITIGATION                )   Case No. C-10-1811 (YGR)
                          )
                          )
                          )

*DEC 1 4 2016*

---

## OBJECTIONS OF PATRICK S. SWEENEY, PRO SE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT NOT TO APPEAR AT FAIRNESS HEARING

---

NOW COMES, Pro Se Objector PATRICK S. SWEENEY and hereby files these objections to the proposed settlement in this matter.

## I.    PROOF OF MEMBERSHIP IN CLASS

Patrick S. Sweeney, Pro Se ("Objector") has reviewed the Notice of Class Action Settlement ("Notice") in this matter and believes he is a member of the class as defined in that Notice. He has made a timely objection in this matter by mailing a copy of the Objection to the Settlement Administrator. His address and telephone number are listed at the conclusion of this objection.

## II.    NOTICE OF INTENT NOT TO APPEAR

Objector hereby gives notice that he does not intend to appear at the Fairness Hearing presently scheduled for 2:00 p.m. PDT on January 24, 2017, at the United States Courthouse, 1301 Clay Street, Courtroom 1, 4th Floor, Oakland, CA 94612.

## III.  REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1.  Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel nor any defense attorney (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case) to monitor the settlement process to its ultimate completion.

    It would obviously be more prudent to withhold a portion of Class Counsel's fee until the entire distribution process is complete. Furthermore, it would also be judicious to require Class Counsel (and perhaps Defense Counsel as well) to report back to this Honorable Court with a final summary and accounting of the disbursement process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

    Objector is aware that this is not the "usual" procedure in Class Action proceedings. Nonetheless, Objector submits the suggested process is an improvement to the present procedure which is the status quo in Class Action cases. Also nothing in the above proposed procedure violates the letter or spirit of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715,(the "Act")  Rule 23 F.R.C.P.(the "Rule") nor the body of case law developed (all three collectively referred to herein as "Class Action Policy"). Objector hereby urges this Honorable Court to adopt such a procedure as a "best practice standard "for Class Action settlements.

2.  The Notice is not adequate to inform a potential Class Member of the nature of the case including the entire settlement amount

3.  No amount of Attorney's Fees are to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorney's fees would elevate the

concerns raised herein regarding Paragraphs Nos. 1 & 2 above.

4.      Attorney Fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will award Class Counsel its fee of $2.25 million dollars notwithstanding the amount of relief which is actually paid to the Class Members. This practice would be considered inequitable at best and excessive at worse in many other area of the law when awarding attorney fees.

5.      The Attorney's Fee calculation may be unfair in that the percentage of the settlement amount might be to too high. After a review of the Docket it is impossible to decipher how much work Class Counsel did to achieve the result. Furthermore, Class Counsel's Memorandum of Law in Support of the Motion for Attorney's Fees appears to be a catalogue of cases whereby other lawyers were successful in obtaining excessive fee awards and not a compelling recitation of why the fees and costs are appropriate in this specific case.

6.      No fee request is reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, actual time entries, hours accumulated and reasonable costs incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the request.

7.      There are no receipts supporting the requests for litigation costs and expenses that Class Counsel intends to request to be paid or reimbursed from the Settlement Fund. Not only should the costs and expenses be estimated as closely as possible but that estimate should be itemized in as much detail as possible. Finally, a final accounting should submitted to the Court for final approval. Furthermore, it is unclear from the Notice who is paying for the cost of the settlement administration- the Defendant or the Settlement Fund.

8.  The Objector hereby adopts and joins in all other   objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

# IV.  CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;
2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.
3. Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Respectfully submitted,

_Patrick S. Sweeney_

Patrick S. Sweeney, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2016, I caused to be filed this Objection by mailing this Objection to Settle Administrator via U.S. Class Mail to: "In Re: Sony PS3 "Other" Litigation C/O Garden City Group, LLC, P. O. Box 10312, Dublin, OH, 43017- 5912" Said address which is the address stated in the Legal Notice of Settlement in this action. The Settlement Administrator will file this Notice of Appeal in the CM/ECF system thus effectuating service of this Objection on all CM/ECF registered attorneys in this case.

_Patrick S. Sweeney_

Patrick S. Sweeney, Pro Se

iv

MILWAUKEE WI
08 DEC 2016 PM 8

USA FOREVER
USA FOREVER

Sublyly

IN RE: July 15-3 "OTHER" LITIGATION
C/O GARDEN CITY GROUP LLC
P.O. BOX 10312
DUBLIN, OHIO 43017-5912

43017-351212