Rosemary M. Rivas (SBN 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700/Facsimile: (415) 398-8704

Kathleen Fisher (State Bar No. 70838)
kfisher@calvofisher.com
**CALVO FISHER & JACOB LLP**
555 Montgomery Street, Suite 1155
San Francisco, California 94111
Telephone: (415) 373-8370/Facsimile: (415) 374-8373

James Pizzirusso (*pro hac vice*)
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200/Facsimile: (202) 540-7201

*Class Counsel for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SONY PS3 "OTHER OS" LITIGATION | Case No. 4:10-CV-01811-YGR<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      January 24, 2017<br>Time:      2:00 PM<br>Judge:     Hon. Yvonne Gonzalez Rogers<br>Courtroom: 1, 4th Floor |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. - 1 -

II.   ARGUMENT ....................................................................................................... - 1 -

    A.    NAVARRETE'S OPPOSITION MUST BE VIEWED WITH SKEPTICISM BECAUSE HIS COUNSEL IS A PROFESSIONAL OBJECTOR WITH NO RECORD OF SUCCESS ................................................................................ - 1 -

    B.    NAVARRETE IS NOT AN AGGRIEVED CLASS MEMBER AND THUS LACKS STANDING TO OPPOSE FINAL APPROVAL .................................. - 2 -

    C.    NAVARRETE MISCHARACTERIZES THE CLAIMS RATE .......................... - 4 -

    D.    THE CLAIMS PROCESS WAS EFFECTIVE AND NOT "TOO INVOLVED" .- 6 -

    E.    THE CLAIMS MADE PROCESS IS NOT FUNDAMENTALLY UNFAIR ..... - 8 -

    F.    CLASS COUNSEL EFFECTIVELY REPRESENTED THE CLASS ................ - 9 -

    G.    *CY PRES* DISTRIBUTION OF A FIXED SETTLEMENT FUND IS UNNECESSARY .............................................................................................. - 10 -

III.  CONCLUSION ................................................................................................... - 10 -

i

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**CASE NO. 4:10-CV-01811-YGR**

# TABLE OF AUTHORITIES

### Federal Cases

*Collado v. Toyota Motor Sales, U.S.A., Inc.*, 550 F. App'x 368 (9th Cir. 2013) ........................... 6
*Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) ......................................... 5
*Custom LED, L.L.C. v. eBay, Inc.*, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ....................... 3
*Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454 (9th Cir. 2000) ............ 7,8
*Evans v. Linden Research, Inc.*, 2014 WL 1724891 (N.D. Cal. Apr. 29, 2014) ........................... 6
*Glass v. UBS Fin. Servs*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ......................................... 7
*Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084 (9th Cir. 2011) ............................................ 4
*GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ......................... 7
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................ 9
*Harris v. Vector Mktg. Corp.*, 2012 U.S. Dist. LEXIS 13797, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ........................................................................................................................................ 8
*In re Google Buzz User Privacy Litig.*, 2011 WL 7460099 (N.D. Cal. June 2, 2011) .................. 2
*In re Hydrocut Mktg. & Sales Practices Litig.*, 2013 WL 527618 (S.D. Cal. Sept. 17, 2013) ..... 1
*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................ 3
*In re Online DVD Rental Antitrust Litig.*, No. 4:09-md-02029 (9th Cir. 2012) ........................... 2
*Jefferson v. Chase Home Fin.*, 2009 U.S. Dist. LEXIS 64607 (N.D. Cal. July 10, 2009) ............ 7
*Knisley v. Network Assocs.*, 312 F.3d 1123 (9th Cir. 2002) ........................................................ 4
*Lemus v. H&R Block Enters. L.L.C.*, 2012 U.S. Dist. LEXIS 119026 (N.D. Cal. Aug. 22, 2012) 8
*Moore v. Verizon Communs., Inc.*, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ...................... 6
*Morales v. Stevco, Inc.*, 2012 U.S. Dist. LEXIS 68640 (E.D. Cal. May 16, 2012) ...................... 8
*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................... 5
*Pappas v. Naked Juice Co. of Glendora Inc.*, 2014 WL 12382279 (C.D. Cal. Jan. 2, 2014) ....... 2
*Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) ................................. 7
*Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537 (W.D. Wash. 2009) ............................................... 8
*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) ...................................................................... 2
*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ....................................................... 5
*Shames v. Hertz Corp.*, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) .......................................... 8
*TCT-LCD Flat Panel Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. 2012) .............................. 2
*Williams v. Costco Wholesale Corp.*, 2010 WL 2721452 (S.D. Cal. July 7, 2010) ..................... 7
*Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026 (9th Cir. 1997) ..................................... 6

*Wolford v. Gaekle* (*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*), 33 F.3d 29 (9th Cir. 1994) .................................................................................................................. 3, 4

*Zucker v. Occidental Petrol. Corp.*, 192 F.3d 1323 (9th Cir. 1999) ............................................. 4

**State Cases**

*Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509 (2003) ............................................................ 7

*Vo v. Las Virgenes Mun. Water Dist.*, 79 Cal. App. 4th 440 (2000) ............................................. 7

iii

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION  
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT  
CASE NO. 4:10-CV-01811-YGR**

## I. INTRODUCTION

Objector John Navarrete's Opposition to Motion for Final Approval of Class Settlement ("Opposition") (Dkt. No. 282) is nothing more than a re-hash of his previously submitted and meritless Objections to Final Approval of Settlement ("Objections"). Here, Navarrete adds only hyperbole about what he attempts to characterize as a "miserable" claims rate base on the final declaration submitted by the Settlement Administrator. But, just as he did in his Objections, Navarrete simply ignores salient facts such as the 86% reach achieved by the class notice, the significant risks posed by continued litigation on the merits outlined in Class Counsel's moving papers and the presumptions in favor of fairness to which the parties are entitled to based on six years of zealous advocacy and months of arms-length settlement negotiations including two mediations. In the end, Navarrete's claims rate "calculations" are transparently misleading and have no impact on the fairness of the Settlement. His plea for *cy pres* relief and his suggestion that an automatic payment to all PS3 owners, whether injured or not, would be better outcome for the class are not only baseless, but irrelevant because the Ninth Circuit has recognized repeatedly that the question is not whether a Settlement could be "prettier, smarter, or snazzier" but whether it is fundamentally fair in light of the risks of continued litigation and counsel's experience and judgment. This Settlement is fundamentally fair Navarrete's Opposition fails to establish anything to the contrary. Accordingly, the Court should enter a final approval order.

## II. ARGUMENT

### A. NAVARRETE'S OPPOSITION MUST BE VIEWED WITH SKEPTICISM BECAUSE HIS COUNSEL IS A PROFESSIONAL OBJECTOR WITH NO RECORD OF SUCCESS

Mr. Navarrete is represented by the Law Offices of Joshua Furman. As referenced in counsel's responses to Mr. Navarete's objections, Mr. Furman is a professional objector with absolutely no record of success and his objections here should therefore be viewed with extreme skepticism. *See In re Hydrocut Mktg. and Sales Practices Litig.*, 2013 WL 527618 (S. D. Cal. Sept. 17, 2013).

- 1 -

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:10-CV-01811-YGR**

Mr. Furman has repeatedly objected to class settlements on grounds similar to, if not identical to, the grounds he asserts here and he has yet to be successful. In *Schlesinger et al. v. Ticketmaster*, Los Angeles County Superior Court, Case No. BC304565, for example, Mr. Furman objected to the settlement on grounds, among others, that he did not receive notice, that the attorneys' fees were excessive, and the incentive awards were "unconscionable and indicative of collusion." His objections were overruled. *See Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) (objection based on excessive fees overruled); *see also In re Online DVD Rental Antitrust Litigation*, No. 4:09-md-02029 (9th Cir. 2012) (objection to fess overruled); *TCT-LCD Flat Panel Antitrust Litigation*, No. 3:07-md-01827 (N.D. Cal. 2012) (objection to fee award overruled). In *In re Google Buzz User Privacy Litigation*, No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011), Furman objected asserting collusion and challenging the adequacy of the settlement relief and the class notice. His objections were overruled again. Finally, in *Pappas v. Naked Juice Co. of Glendora Inc. et al*, No. LA CV11-08276 JAK (PLAX), 2014 WL 12382279 (C.D. Cal. Jan. 2, 2014), Mr. Furman objected to the settlement because it did not identify the maximum possible recovery at trial and because it provided more substantial recovery for class members who retained receipts. His objections were again overruled.

Mr. Furman objections here fare no better. None of them are properly supported and are therefore without merit. Accordingly, they should be similarly overruled.

### B.  NAVARRETE IS NOT AN AGGRIEVED CLASS MEMBER AND THUS LACKS STANDING TO OPPOSE FINAL APPROVAL

Not only is Navarrete's objection subject to skepticism because he is a serial objector[1] and is represented by a professional objector, but it should be viewed with additional skepticism because Navarrete admitted in the declaration he submitted in support of his objections that he was *not* injured by the removal of the Other OS functionality. In his declaration, he states that

---

[1] This is not Mr. Navarrete's first time objecting to a class settlement. Mr. Furman represented him in presenting an objection is *Schlesinger et al. v. Ticketmaster* Los Angeles County Superior Court, Case No. BC304565.

- 2 -

while he used the Other OS functionality, his PS3 broke in *2009* and he sold it for $50 for parts. *See*, Dkt. No. 281, Exh. D (Declaration of John Navarrete in Support of Objections to Settlement) ¶ 12.  Firmware Update 3.21, which removed the Other OS functionality, was not released until *April 1, 2010*.  Thus, Mr. Navarrete was not injured by the removal of the Other OS functionality—to the contrary, he was able to use the Other OS functionality for the entire time that he had his PS3.  It is therefore notable that Mr. Navarrete, who was not injured by any of the challenged conduct, is complaining about a settlement designed to provide actual and significant compensation (up to 18% of the 2010 purchase price of PS3) to Class Members who were actually injured.  And, it is further notable that in both his Objection and his Opposition, Mr. Navarrete advocates for windfall compensation to Class Members, like himself, who have suffered no injury.  This result, of course, flies in the face of settled law that one must be an aggrieved class member to object to a class action settlement and, to be an aggrieved class member, an individual must fall within the class definition and must also have been injured by the defendant's conduct.  *Custom LED, LLC v. eBay, Inc*, No. 12-CV-00350-JST, 2014 WL 2916871, at *6 (N.D. Cal. June 24, 2014) (overruling objection after concluding objector lacked standing to object to settlement because he failed to demonstrate he was an aggrieved class member); *see also In re First Capital Holdings Corp. Fin. Prod. Sec. Litig*., 33 F.3d 29, 30 (9th Cir. 1994) ("Simply being a member of a class is not enough to establish standing. One must be an aggrieved class member"); *In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1044 (N.D. Cal. 2008) (holding that a class member lacked standing to object to a settlement because he did not show that the defendant caused him any injury).  Thus, Navarrete's objections should be overruled out of hand.

Specifically, with respect to Mr. Navarete's objections as to fees, Article III requires "some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . . likely to be redressed by a favorable decision." *Wolford v. Gaekle* (*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*), 33 F.3d 29, 30 (9th Cir. 1994). In *In re First Capital Holdings*, a class member filed an objection to the plaintiffs' requested award of attorneys' fees as being too

- 3 -

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:10-CV-01811-YGR**

excessive. *Id*. The court held that the objector lacked standing to file the federal appeal, Rule 23(h)(2) notwithstanding, since the objector could neither show (i) she had been injured or (ii) how the injury could "likely be redressed by a favorable decision" by the federal court, both of which were necessary to confer standing. *Id*., at 30.

The Ninth Circuit has also held that where an objection does not show how granting the requested relief would benefit the objector or redress an injury, then there is fundamentally no standing to object. *See id*.; *see also Zucker v. Occidental Petroleum Corp*., 192 F.3d 1323, 1326 (9th Cir. 1999) cert. denied, 146 L. Ed. 2d 481, 120 S. Ct. 1671 (2000) (finding lack of standing where "it is hard to see how cutting plaintiffs' attorneys' fees can do [the class member] any good [because] he gets the same [settlement] whether the fee is cut or not . . ."); *Kinsley v. Network Assocs., Inc*., 312 F.3d 1123, 1126 (9th Cir. 2002) (finding lack of standing because objector could not demonstrate how vacating fee award would benefit objector). The Ninth Circuit has held that conjectural allegations that a fee award might be collusive or that reducing it might have resulted in a better outcome for the objector cannot meet the constitutional requirement that the injury be "concrete and particularized" and that the possibility of redress is not "conjectural or hypothetical." *Glasser v. Volkswagen of Am., Inc*., 645 F.3d 1084, 1089 (9th Cir. 2011).

Mr. Navarrete does not identify or explain how he has been aggrieved by the Settlement or how a reduction in the fee award would redress whatever wrong he asserts exists. To the contrary, Mr. Navarrete has not suffered any "injury," much less one that could be "redressed by a favorable decision" in this Court or in the Ninth Circuit.

**C.    NAVARRETE MISCHARACTERIZES THE CLAIMS RATE**

Mr. Navarrete's first argument is that Final Approval should be denied because the claims rate is "terrible." Opposition, p. 2. Mr. Navarrete, however, relies on the claims rate in isolation, giving no consideration at all to the contextual facts relevant to Final Approval. First, Mr. Navarrete ignores that courts generally analyze claims rates—or class member reaction—not in terms of the number of claims submitted, but in comparison to the number of objections in

- 4 -

light of the overall reach of the notice program. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (noting that an absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). As noted repeatedly in various submissions supporting Final Approval, the class notice reached ~86% of its target audience and included nearly seven million direct email notices delivered *twice*. Yet, there were only *five* timely objections. This creates a presumption of reasonableness that Navarrete simply ignores. *Id.; Cruz v. Sky Chefs, Inc*., No. C-12-02705 DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (holding "A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it"); *see Rodriguez v. W. Publ'g, Inc.*, 563 F.3d 948, 967 (9th Cir. 2009) (finding favorable class reaction of the class where only 54 of 376,301 putative class members objected);.

Second, Mr. Navarrete provided no analysis of the settlement terms in light of the risks of continued litigation, including the risk of loss on the merits. Class Counsel's moving brief discussed the potential difficulties on the merits, including SCEA's likely challenges to Plaintiffs' ability to prove classwide reliance and materiality created by the underlying facts. MPA in Support, p. 20. This Settlement provides relief to injured Class Members despite any potential reliance and materiality problems, a fact that Mr. Navarrete simply ignores.

Third, Mr. Navarrete overlooks facts developed through discovery in order to mischaracterize the claims rate as "abysmal." As Class Counsel's brief pointed out, discovery established that SCEA did not widely advertise or promote the PS3's Other OS functionality like it did with other features. Consequently, according to SCEA, most Class Members (more than 90% of them) were unaware that this functionality even existed and of the few who knew about it, less than 2% cared that it was removed. *See* SCEA's Response to Objections, p. 4. Moreover, it has been more than six years since the Other OS functionality was removed from the PS3 and the Fat PS3 has not been manufactured since 2009. Given the low degree of awareness of the Other OS and the age of the console, the claims rate is entirely reasonable. And, Mr. Navarrete glosses over the fact that every Class Member noticed could have submitted

- 5 -

a Class B claim by submitting a console serial number and PlayStation™ Network ID or by contacting the Settlement Administrator for a unique code to use in lieu of a serial number.

In short, Mr. Navarrete distorts the claims rate and then relies on it in isolation to support his already strained argument. He notably cites not a single case to supporting his reliance on the claims rate alone and there is none. *See Evans v. Linden Research, Inc.*, No. C-11-01078 DMR, 2014 WL 1724891, at *4 (N.D. Cal. Apr. 29, 2014) (approving settlement despite low claims rate"); *see also Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) (granting final approval of class action settlement with 3% claims rate). Thus, this argument fails.

### D. THE CLAIMS PROCESS WAS EFFECTIVE AND NOT "TOO INVOLVED"

Mr. Navarrete next seems to challenge fairness generally and attorneys' fees specifically by arguing that the "economic valuation" of the Settlement is too low ("a miserable $209,760" as he puts it) to support the amount of fees claimed. Opposition, p. 5: 8-28. He further argues that the "value to the class would have to be at least $8,625,938" to support the fee amount but Class Counsel "never even attempted to estimate a total value for the settlement." *See*, Opposition, p. 5:14-28. The argument is wholly unsupported.

As discussed in the opening brief, this court is sitting in diversity. Accordingly, California law applies. Plaintiffs' claims here are for violation of California's Unfair Competition Law, False Advertising Law and the Consumers Legal Remedies Act and it does not involve a common fund. Accordingly, the Court should follow California law and evaluate Class Counsel's lodestar in determining the appropriate amount of attorneys' fees. *See Collado v. Toyota Motor Sales, U.S.A., Inc.*, 550 Fed. Appx. 368, 369 (9th Cir. 2013) ("The district court abused its discretion by computing fees using a percentage of recovery method rather than a lodestar method."); *see also Williams v. MGM Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("[T]he district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar").

- 6 -

Under California law, "[d]isproportionality is not one of the factors that California courts have provided for determining whether to augment or diminish the fees award." *Jefferson v. Chase,* 2009 U.S. Dist. Lexis 64607, at *10 (N.D. Cal. 2009). Rather, "the California courts have approved attorneys' fees where there is a significant disparity between the Plaintiffs' recovery and the lodestar fee award." *Id.*; *see also Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509, 512 (2003) (affirming order granting fees that were significantly greater than the class recovery and stating that to "limit the fee award to an amount less than that reasonably incurred in prosecuting such a case, would impede the purpose underlying [the CLRA]"); *Vo v. Las Virgenes Mun. Water Dist.*, 79 Cal. App. 4th 440, 448 (2000) (holding that the trial court did not abuse its discretion in granting attorneys' fees 12.5 times the value of plaintiff's recovery); *Parkinson v. Hyundai*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) (awarding fees of $3,719,282.30 although class recovery was $1.2 million). Navarrete's reliance on *In re GMC Pick-Up Truck Fuel Tank rods. Liab. Litig.*, 55 F.3d 768 (3d Cir 1995), a Third Circuit case involving a common fund, is therefore misplaced.

Navarrete's remaining cases are likewise inapposite. Navarrete cites *Williams v. Costco Wholesale Corp*, 2010 WL 2721452 (S.D. Cal. July 7, 2010) and *Glass v. UBS Fin. Servs*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007), *aff'd,* 331 F. App'x 452 (9th Cir. 2009), presumably to show that because Class Counsel achieved "just over two percent" of the $8,625,938 "goal" that he calculated, the settlement is unreasonable. Neither *Williams* nor *Glass*, however, have any bearing on the outcome here. Both were wage and hour cases, both involved common funds and, accordingly, neither involved Lodestar calculations. If anything, the disparate "percentages of recovery" found adequate in *Williams* (75.6% of estimated losses) and *Glass* (25-35%) illustrate that that the relevant consideration is reasonableness of fees in light of the uncertainties involved in the litigation. See, *Glass* at *4(noting paucity of applicable law made continued litigation a significant risk thereby justifying fees). It is not a blind calculation based on guesswork. Indeed, the Ninth Circuit has confirmed that settlements must take into account the risks of litigation. *See In re Mego Financial Corp. Securities Litigation,* 213 F.3d 454, 459 (9th Cir., 2000) (noting "[A] cash settlement amounting to only a fraction of the potential recovery does not per se render

- 7 -

the settlement inadequate or unfair"). Mr. Navarrete ignored the risks of continued litigation and other salient facts in formulating his calculation. His argument is therefore unsupported and fails.

### E. THE CLAIMS MADE PROCESS IS NOT FUNDAMENTALLY UNFAIR

Mr. Navarrete next attacks the use of the claims-made process, arguing that SCEA should have just issued a payment to everyone who owned a PS3 as shown by PSN Account records. Mr. Navarrete also objected to the Settlement on this ground and his argument is addressed in Class Counsel's Response to Objections. The argument fares no better here. First, Mr. Navarrete ignores settled authority noting that there is nothing inherently unfair or unreasonable about the claims-made process, particularly where, as here, there are potential reliance and materiality concerns and class members have to self-identify. Claims made settlements are common and frequently approved. *See Shames v. Hertz Corp.*, 2012 WL 5392159, at *9 (S.D. Cal. Nov. 5, 2012) (noting "there is nothing inherently objectionable with a claims-submission process, as class action settlements often include this process, and courts routinely approve claims made settlements"); *see, e.g.*, *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 544 (W.D. Wash. 2009) (approving claims-made process that required submitting photographs); *Lemus v. H & R Block Enters. LLC*, 2012 U.S. Dist. LEXIS 119026, 2012 WL 3638550 (N.D. Cal. Aug. 22, 2012) (approving claims-made settlement where unclaimed funds reverted to the defendants); *Morales v. Stevco, Inc.*, 2012 U.S. Dist. LEXIS 68640, 2012 WL 1790371 (E.D. Cal. May 16, 2012) (recommending final approval of claims-made settlement); *Harris v. Vector Mktg. Corp.*, 2012 U.S. Dist. LEXIS 13797, 2012 WL 381202 (granting final approval of claims-made settlement) (N.D. Cal. Feb. 6, 2012).

Second, while Mr. Navarrete argues that the claims process here was "too cumbersome" he points only to the claims rate as support. Notably, Navarrete does not address the actual claims process employed here nor does he try to argue that any particular aspect of it rendered it "too cumbersome."

Third, the claims-made process cures a potential problem with identifying the class. Discovery revealed that there was no objective way to determine from SCEA's records who utilized the Other OS functionality and thus who is might be entitled to compensation other than

- 8 -

to ask the Class Members through the claims process. Indeed, had litigation continued, SCEA would have undoubtedly raised these manageability challenges at class certification and trial.

Last, Mr. Navarrete suggests (without any support) that the "vast majority of potential claimants saw the serial number requirement and gave up there, without digging through the notice website in order to find an alternative claims method . . . ." Opposition, p. 6:25-28. This is simply a misstatement of the claims process. Class members had alternatives to submitting serial numbers and they were notified of these alternatives in the follow-up notices. As stated previously, nearly seven million putative class members received direct notice (and many more received notice via publication) and thousands submitted claims. Accordingly, Mr. Navarrete's objection is not born out by the facts.

The question on final approval is whether a settlement is "fair adequate, and reasonable." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) at 1027. It is not whether a settlement "could be prettier, smarter, or snazzier." *Id.* At bottom, Mr. Navarrete's opposition to the claims process and proof requirements and the amount of the benefit are nothing more than a factually unsupported assertion that the Settlement terms could have or should have been different.

### F. CLASS COUNSEL EFFECTIVELY REPRESENTED THE CLASS

Here, Mr. Navarrete revisits his "proportionality" argument, asserting that the "discrepancy between the benefit to class members and fees to class counsel suggests 'a strong possibility of impropriety." His argument is again based solely on the claims rate and he concludes, based on it, that "this gargantuan fee request demonstrates that Class Counsel have worked to ensure they will receive a large fee while doing absolutely nothing to ensure that the class receives tangible benefits." Opposition, p. 8: 19-21. This argument is largely a repeat of the arguments set forth in Mr. Navarrete's objection and above, and all consistently ignore all of the information set forth in Class Counsel's fee petition and, most notably, that the "gargantuan fee" is represents a *significant* discount from counsel's collective lodestar of $4,558,790.75. Dkt. No. 271, p.10. The argument is meritless.

### G. *CY PRES* DISTRIBUTION OF A FIXED SETTLEMENT FUND IS UNNECESSARY

Last, Mr. Navarrete argues that the Settlement should have a *cy pres* component in order to "fix" its deficiencies. As shown above and in the parties' responses to Mr. Navarrete's objections, the Settlement is not defective; it is fair, adequate and reasonable. Accordingly, no fix is necessary. Moreover, this is not a common fund case where settlement funds may remain after distribution is complete. SCEA agreed to pay every valid claim the same exact amount. Lastly, this settlement provides "meaningful contribution" to the class in the form of cash payments to those who, unlike Mr. Navarrete, can confirm that they were actually injured by the conduct challenged in the lawsuit, not coupons or *cy pres* to unrelated charities. In short, the elements commonly associated with *cy pres* relief are absent and Mr. Navarrete's final objection is meritless.

## III. CONCLUSION

Based on the foregoing law and argument, Class Counsel respectfully requests that the Court enter an order granting Final Approval of the Settlement.

DATED: January 10, 2017                           Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

By: */s/ Rosemary M. Rivas*
    Rosemary M. Rivas
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

**CALVO FISHER & JACOB LLP**

By: */s/ Kathleen Fisher*
    Kathleen Fisher
555 Montgomery Street, Suite 1155
San Francisco, California 94111
Telephone: (415) 374-8370
Facsimile: (415) 374-8373

**HAUSEFELD LLP**

By: */s/ James Pizzirusso*
James Pizzirusso

1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

*Class Counsel for Plaintiffs and the Class*

- 11 -

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:10-CV-01811-YGR**