LUANNE SACKS (SBN 120811)
lsacks@srclaw.com
MICHELE FLOYD (SBN 163031)
mfloyd@srclaw.com
**SACKS, RICKETTS & CASE LLP**
177 Post Street, Suite 650
San Francisco, CA 94108
Telephone: 415-549-0580
Facsimile: 415-549-0640

CYNTHIA A RICKETTS (*Pro Hac Vice*)
cricketts@srclaw.com
**SACKS, RICKETTS & CASE, LLP**
2800 North Central Avenue, Suite 1230
Phoenix, AZ 85004
Phone: (602) 385-3370
Fax: (602) 385-3371

Attorneys for Defendant
SONY COMPUTER ENTERTAINMENT
AMERICA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SONY PS3 "OTHER OS" LITIGATION | Case No.: 4:10-cv-01811-YGR |
| | **DEFENDANT SONY COMPUTER ENTERTAINMENT AMERICA, LLC'S CONSOLIDATED RESPONSE TO OBJECTIONS TO PROPOSED CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................................1

II.    ARGUMENT ............................................................................................................1

    A.    THE SETTLEMENT SATISFIES THE *HANLON* FAIRNESS FACTORS ..........1

        1.    The Objectors Ignored the Significant Risk of Loss on the Merits .................2

        2.    The Objectors Also Ignored the Deficiencies in the Class Definition that Made Certification Unlikely ...............................................................................5

        3.    The Settlement followed Extensive Discovery ....................................................6

        4.    The Settlement is Presumptively Fair, Adequate, and Reasonable Because it Followed Two Mediations and Extensive Arms-Length Negotiations .....................7

        5.    No Government Entity or Official Objected to the Settlement .........................7

        6.    The Reaction of the Class Members Was Overwhelmingly Positive ...............7

    B.    None of the Five Timely Objectors Raised Any Issue Sufficient to Overcome the Presumption of Fairness .......................................................................................8

        1.    The Henton Objection Is Moot........................................................................8

        2.    The Mitchell Objection Is Improperly Based on His Personal Circumstance 9

        3.    The Bowerman Objection Is Unsupported and Baseless................................9

        4.    The Professional Objections are Baseless and Must Be Overruled ...............12

    C.    The Apostol and Sweeney Objections Should Be Overruled As Untimely ............15

III.    CONCLUSION ........................................................................................................17

-i-

# TABLE OF AUTHORITIES

## CASES

*Algarin v. Maybelline*, 300 F.R.D. 444 (S.D. Cal. 2014) .................................................6

*Banes v. Fleetboston Fin. Corp.*, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) ........................13

*Browning v. Yahoo! Inc.*, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ...................................11

*Cabral v. Supple LLC*, -- Fed. Appx. --; 2015 WL 3855142 (9th Cir. June 23, 2015) ..............4, 5

*Chambers , et al. v. Whirlpool Corp., et al.*, Case No. 11-cv-01733-FMO-JCG (C.D. Cal.) .......12

*Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ......................................1, 8

*City Partnership Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041 (1st Cir.1996) ...............7

*Edwards, et al. v. National Milk Producers Federation, et al.*, Case No. 11-cv-04766-JSW (N.D. Cal.) ........................................................................................................................12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................1, 2, 8, 9

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ...............................................6

*Hendricks v. Starkist Co.*, Case No. 13-CV-00729-HSG (N.D. Cal. 2016) ..............................12

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) .....................................................14

*In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070 (N.D. Cal. 2011) . 3

*In re Carrier IQ, Inc., Consumer Privacy Litigation*, Case No. 12-md-02330-EMC (N.D. Cal. 2016) .......................................................................................................................12

*In Re Cathode Ray Tube Antitrust Litig.*, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ...............14

*In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531 (N.D. Cal. 2012) ...............................12

*In re Clorox Consumer Litig.*, 301 F.R.D. 436 (N. D. Cal. 2014) .............................................5

*In re Google Buzz User Privacy Litigation* (Case No. 5:10-cv-00672) (N.D. Cal. 2010) ...........12

*In re Google Referrer Header Privacy Litig.*, 87 F. Supp.3d 1122 (N.D. Cal. 2015)..............2, 11

*In re Hydrocut Mktg. And Sales Practices Litig.*, 2013 WL 5275618 (S.D. Cal. Sept. 17, 2013) 12

*In re Lorazempam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002) ....................10

*In re Online DVD Rental Antitrust Litigation*, No. 4:09-md-02029 (9th Cir. 2012) ...................12

*In re Pacific Enterprises Securities Litig.*, 47 F.3d 373 (9th Cir. 1995) .......................................11

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1988) .................14

-ii-

*In re Sony Grand Wega Litig.*, 758 F. Supp. 2d 1077 (S.D. Cal. 2010)..............................3

*In re Toys R Us-Delaware, Inc. FACTA Litig.*, 295 F.R.D. 43887 Fed. R. Serv. 3d 968 (C.D. Cal. 2014)........................................................................................................................7

*In re Tracfone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993 (N.D. Cal. 2015), *reconsideration denied*, 2015 WL 4735521 (N.D. Cal. Aug. 10, 2015) ...................................13

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ............................14

*In re: The Home Depot, Inc., Consumer Data Security Breach Litigation*, Case No. 14-md-02583-TWT (N.D. Ga. 2016)..............................................................................12

*Legg v. LabCorp*, Case No. 14-61543-CIV- ROSENBERG/BRANNON (S.D. Fla. 2016)........12

*Lozano v. AT&T Wireless Serv., Inc.*, 504 F.3d 218 (9th Cir. 2007) ................................4

*Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992 (N.D. Cal. 2009) ...............................13

*Mazza v. Am. Honda Motor Company, Inc.*, 666 F.3d 581 (9th Cir. 2012) .......................6

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ..7, 8

*Neu v. Terminix Intern., Inc.*, 2008 WL 2951390, *3-4 (N.D. Cal. July 24, 2008) .......................4

*Officers for Justice v. Civil Serv. Comm'n of City and County of S.F.*, 688 F.2d 615 (9th Cir. 1982)................................................................................................................16

*Pappas v. Naked Juice Co. of Glendora Inc. et al* (Case No. 2:11-cv-08276) (C.D. Cal. 2011)..12

*Pardini v. Unilever United States, Inc.*, 2014 WL 265663 (N.D. Cal. Jan. 22, 2014)...................6

*Perrine v. Sega of America, Inc.*, 2015 WL 2227846 (N.D. Cal. May 12, 2015).....................4, 5

*Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909 (N.D. Cal. 2013) ........................................4

*Rodriguez v. West Publishing Corp.* (Case No. CV 05-3222 R(MCx)) (C.D. Cal. 2007)...........12

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir.2009) ....................................7, 8, 15

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021 (N.D. Cal. 1999)................................................................................................................13

*Schechter v. Crown Life Ins. Co.*, 2014 WL 2094323 (C.D. Cal. May 19, 2014) .........................2

*Schlesinger et al. v. Ticketmaster* (Case No. BC304565) (Los Angeles County Superior Court) 12

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999) ................4

*State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093 (1996)............................4

-iii-

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) .................................................... 10

*TCT-LCD Antitrust Litig.*, No. 07-md-01827 (N.D. Cal. 2007) .................................................... 12

*Tennille v. Western Union Co.*, 785 F.3d 422 (10th Cir. 2015), *cert. denied sub nom. Dorsey v.*

    *Tennille*, 136 S. Ct. 835, 193 L. Ed. 2d 719 (2016), and *cert. denied sub nom. Nelson v.*

    *Tennille*, 136 S. Ct. 835, 193 L. Ed. 2d 719 (2016) ..................................................... 15

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990) ................................................................ 2

*Zepeda v. PayPal Inc.*, Case No. 10-cv-02500-SBA (JCS) (N.D. Cal. 2014) ............................ 12

**RULES**

Fed. R. Civ. P. 23 ...................................................................................................................... 5, 14

Fed. R. Civ. Proc. 23(a)(3) .............................................................................................................. 6

**TREATISES**

Manual for Complex Litigation § 21.643 (4th ed.) .............................................................. 12,13

1

I.    **INTRODUCTION**

2          This Settlement is fair, reasonable, and adequate and the negligible number of objections

3   received are meritless.  The Settlement follows six years of contested litigation and months of

4   arms-length negotiation.  In the end, it avoids the uncertainty of continued litigation and trial by

5   providing class members with more in value than they likely would have obtained had the

6   litigation continued.  The low number of objections (only .00007% of those receiving direct

7   notice) evidences the settlement's inherent fairness.  Direct email notice, which reached nearly

8   seven million putative class members *twice*, was supplemented by a social media and publication

9   campaign that, combined, achieved an 86% reach.  The Settlement Administrator, however,

10  received only seven objections, two of which were untimely, one of which was moot, and two of

11  which were submitted by professional objectors.  The remaining two objections were baseless—

12  one was improperly based solely on the objector's personal circumstance and the other was

13  unsupported.  Moreover, none of the objections gave any weight to one of the Court's primary

    considerations here: the significant risk that the class representatives lose at trial.

14         A settlement is a compromise and, as such, it need not fully satisfy each individual Class

15  Member.  Accordingly, the objectors' burden is to establish that the settlement is unfair,

16  unreasonable, or inadequate to the class *as a whole*.  These objectors have failed in their

17  burden—their objections should be overruled as baseless and the Court should enter an order

18  granting final approval.

19  II.   **ARGUMENT**

20         A.    **THE SETTLEMENT SATISFIES THE *HANLON* FAIRNESS FACTORS**

21         The Court's consideration on final approval is whether the settlement terms are

22  fundamentally fair, reasonable, and adequate and not the product of collusion.  *See Hanlon v.*

23  *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566,

24  575 (9th Cir. 2004) (citation omitted).  Several factors inform the Court's determination of

25  fairness:  (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely

26  duration of further litigation; (3) the risk of maintaining class action status throughout the trial;

27  (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

28

-1-

proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.  *Id.*  When presenting objections, the objectors bear the burden of demonstrating that the Settlement fails this test.  *See In re Google Referrer Header Privacy Litig.*, 87 F. Supp.3d 1122, 1137 (N.D. Cal. 2015) (noting "objectors to a class action settlement bear the burden of proving any assertions they raise challenging the reasonableness of a class action settlement.") (citing *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990); *Schechter v. Crown Life Ins. Co.*, No. 13-cv-05596, 2014 WL 2094323, at *2 (C.D. Cal. May 19, 2014) (holding burden is on party challenging settlement to demonstrate, if he can, that settlement is so far "out of the ballpark" that it is inconsistent with the equitable objectives of approval) (citations and quotations omitted)).  The objectors argue that the settlement is unfair for a number of reasons, and the professional objectors cite the *Hanlon* factors in presenting their arguments. But merely cite to them is all they do—they do not follow up with any supporting facts, law, or even argument.  Thus, their challenges to the reasonableness of the Settlement fail.

### 1.    The Objectors Ignored the Significant Risk of Loss on the Merits

None of the objectors undertook any effort to discuss the strength or weakness of the Plaintiffs' case in light of the risk, expense, complexity, and likely duration of further litigation. Had they done so, they would have realized that the chances that Plaintiffs would prevail on the merits was slim.  The gravamen of Plaintiffs' complaint was the allegation that SCEA promised to maintain the Other OS functionality for the entire lifecycle of the PS3 entertainment console, which they suggested was about ten years.  *See* Second Amended Complaint ("SAC") ¶ 4.  Thus, Plaintiffs alleged that the removal of the Other OS functionality through Firmware Update 3.21 in April 2010, four years into the estimated lifecycle, constituted unfair competition and false advertising because SCEA advertised and sold the PS3 as having the Other OS functionality, but then disabled it.

Neither the allegations of the SAC nor discovery, however, supported Plaintiff's theory. First, use of the PS3 console was governed by two separate contracts, both of which expressly allowed SCEA to remove functionality from the PS3, including the Other OS functionality.  The

-2-

System Software License Agreement ("SSLA"), which governed use of the console software, disclaimed all warranties and stated expressly that all content and software is provided to PS3 purchasers on a revocable basis only, meaning SCEA can eliminate use at any time.  Declaration of Michele Floyd ("Floyd Decl."), ¶ 2, Exh. 1.  The SSLA further explained that updates and services, such as Firmware Update 3.21, could result in a loss of functionality.  *Id.*; SAC ¶ 223.

The PlayStation Network Terms of Service and User Agreement ("PSN ToSUA") also expressly authorized the removal of the Other OS functionality.  The PSN ToSUA governed use of the online PlayStation Network, of which all of the named Plaintiffs and the timely objectors were members.  The PSN ToSUA provided that software updates and services can change an operating system or cause other loss of functionality.  Floyd Decl. ¶ 3, Exh. 2 (". . . content or service may include automatic updates or upgrades which *may change your current operating system*, cause a loss of data or content *or cause a loss of functionalities* or utilities . . . .)

Second, the PS3 hardware warranty disclosed that firmware updates, such as Firmware Update 3.21, may cause functionality loss:

> . . . You understand and acknowledge that any time SCEA services your PS3 system . . . it may become necessary for SCEA to provide certain services to your PS3 system to ensure it is functioning properly in accordance with SCEA guidelines.  Such services may include the installation of the latest software or firmware updates . . . . You acknowledge and agree that some services may change your current settings . . . or *cause some loss of functionality*.

SAC ¶ 224 (emphasis added).

These contractual provisions and the hardware warranty cast significant doubt on Plaintiffs' ability to prevail on the merits because they allow the removal of console functionality.  But, there were additional problems with Plaintiffs' allegations.  Discovery confirmed that SCEA made no statement that was false when made, which some of the named Plaintiffs acknowledged in deposition.  *See* Floyd Decl., ¶¶ 4-7, Exhs. 3-6.  A statement false when made is an essential element of a false advertising claim under any of the California consumer protection statutes.  *See, e.g., In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075-76 (N.D. Cal. 2011); *In re Sony Grand Wega Litig.*, 758 F. Supp. 2d 1077, 1087 (S.D. Cal. 2010) (dismissing CLRA claim because plaintiff failed to allege

-3-

representations were untrue or misleading at the time they were made); *Neu v. Terminix Intern., Inc.*, No. C07-6472 CW, 2008 WL 2951390, *3-4 (N.D. Cal. July 24, 2008).

The existence of reliance, an element essential not only to the underlying merits but to certifying a class, was also doubtful.  The named Plaintiffs were unable to establish that they relied on any statement false when made nor were they able to establish the existence of a uniformly disseminated advertising statement that would support a presumption of reliance for purposes of class certification or for establishing their own claims.  *See* SAC ¶¶ 66-79; *see also* Floyd Decl., ¶¶ 4-7, Exhs. 3-6; *see, e.g., Cabral v. Supple LLC*, -- Fed. Appx. --; 2015 WL 3855142 (9th Cir. June 23, 2015) (holding "it is critical that the misrepresentation in question be made to all of the class members"); *Perrine v. Sega of America, Inc.,* No. 3:13-CV-01962 JD, 2015 WL 2227846 (N.D. Cal. May 12, 2015) (denying certification because class not limited to those actually exposed to the allegedly misleading advertising).

Discovery also confirmed that the Other OS functionality was removed in direct response to a hack, which provides the factual basis for a business justification defense.  *See* Dkt. 98, Exh. N, ¶ 21 ("the 'security concerns' … reflected Sony's concerns that the other OS Function might be used by 'hackers' to copy and/or steal gaming and other content.  In fact, the release of Update 3.21 came immediately following an announcement by a hobbyist named 'Geohot' claiming he had found a way to exert more control over the PS3 hardware than Sony intended"); *see also Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 922 (N.D. Cal. 2013) ("the test of whether a business practice is unfair 'involves the examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.  In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim…") (*citing Lozano v. AT&T Wireless Serv., Inc.*, 504 F.3d 218, 736 (9th Cir. 2007) and *South Bay Chevrolet v. Gen. Motors Acceptance Corp.,* 72 Cal. App. 4th 861, 886 (1999) (quoting *State Farm Fire & Cas. Co. v. Superior Court,* 45 Cal. App. 4th 1093, 1103-04 (1996) (ellipsis in original)).

-4-

1    Last, and most fundamentally, discovery indicated that the essential element of

2    materiality was lacking.  A consumer perception survey confirmed that *over 90 percent* of PS3

3    purchasers were unaware that the Other OS functionality existed at all, and less than two percent

4    of those who knew about it cared that it had been removed.  Floyd Decl. ¶ 8.  Thus, the

5    overwhelming majority of the class had no idea that the Other OS existed and those who did

6    placed little or no value on it.  These facts were important considerations in the parties'

7    settlement negotiations.

8            **2.      The Objectors Also Ignored the Deficiencies in the Class Definition
                        that Made Certification Unlikely**

9

10           Just as they ignored the significant risk of loss on the merits, the objectors ignored the

11   significant risks associated with attempting to certify a class.  Accordingly, none of the objectors

12   analyzed the fairness of the settlement in light of those risks.  Reliance, for example, is essential

13   to certifying a class—at a minimum Plaintiffs had to establish a misrepresentation uniformly

14   disseminated to the class.  *See Cabral*, 2015 WL 3855142; *Perrine*, 2015 WL 2227846.

15   Discovery, however, confirmed that the Other OS functionality was never advertised, was not

16   included on the box, and was not a "core feature" of the PS3 as Plaintiffs initially contended.

17   The public statements that they alleged in the SAC as the basis of their false advertising claims

18   were, in reality, a handful of disparate statements, some published obscurely, that few saw, no

19   one relied upon in deciding to purchase, and for the most part did not reference the Other OS

20   functionality at all.  Thus the statements would not have supported a presumption of reliance,

21   leaving Plaintiffs with a task fatal to class certification:  proving that each individual class

22   member relied on the challenged statements. *See In re Clorox Consumer Litig.*, 301 F.R.D. 436,

23   445-46 (N. D. Cal. 2014) (denying certification where plaintiffs unable to show that Clorox

24   included challenged advertising statements "on a significant portion of Fresh Step products or

25   that consumers actually saw it").

26           Plaintiffs also have typicality problems.  Rule 23 requires Plaintiffs to establish that they

27   suffered damage that is either the same or similar to the damage suffered by the class.  Fed. R.

28
                                                   -5-

Civ. Proc. 23(a)(3); *Algarin v. Maybelline*, 300 F.R.D. 444, 458 (S.D. Cal. 2014) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  Plaintiffs alleged that the Other OS was a purchase motivator and that they were harmed by its removal.  Information from a consumer survey shared with Plaintiffs' counsel confidentially during a mediation, however, showed that more than 90 percent of the absent class members were unaware of the Other OS functionality at the time of purchase and even those who knew about it placed no value on it.  Accordingly, there is no similarity of injury here—indeed, the vast majority of the class suffered no harm at all.

Last, Plaintiffs sought to certify a nationwide class based solely on three California consumer protection statutes.  Their class definition was potentially flawed because basic choice of law principles preclude the application of California law to transactions that occurred wholly outside the state.  *Mazza v. Am. Honda Motor Company, Inc.*, 666 F.3d 581, 591-92 (9th Cir. 2012); *Pardini v. Unilever United States, Inc.*, 2014 WL 265663, at *9 (N.D. Cal. Jan. 22, 2014).  Accordingly, Plaintiffs' class definition may have had to be modified to address other states' laws.

Despite the fact that certification was unlikely, the parties were able to reach an agreement that provided actual dollars to those individuals who knew about the Other OS functionality when they bought their PS3 (which would have been a required showing on the merits) and enhanced compensation to those few individuals who actually used it.  In short, the Settlement cures the reliance, typicality, ascertainability, and other shortcomings of the class definition and provides compensation to those who arguably may have been injured by the removal of the Other OS functionality.  Viewed in this light, the objections are trivial and must be overruled.

### 3.      The Settlement followed Extensive Discovery

The Objectors also disregarded the extensive discovery undertaken by the parties before reaching the Settlement.  This case has been ongoing since 2010.  During that time, there has been extensive motion practice and, as detailed in the motion for preliminary approval and

1    discussed above, extensive discovery that revealed significant problems with Plaintiffs' case both

2    on the merits and for certification.  *See* Dkt. 280, p. 18.

3              **4.      The Settlement is Presumptively Fair, Adequate, and Reasonable
                         Because it Followed Two Mediations and Extensive Arms-Length
4                        Negotiations**

5              The objectors also ignore the fact that the two mediations and extensive negotiations

6    between the parties, coupled with the Plaintiffs' counsels' experience and judgment, create a

7    presumption of fairness.  *In re Toys R Us-Delaware, Inc. FACTA Litig.*, 295 F.R.D. 43887 Fed.

8    R. Serv. 3d 968 (C.D. Cal. 2014) (finding settlement was "product of informed, arms-length

9    negotiations, and was therefore entitled to a presumption of fairness based on number of

10   mediations held) (citing *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 965 (9th

11   Cir.2009) ("[w]e put a good deal of stock in the product of an arms-length, non-collusive,

12   negotiated resolution"); *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D.

13   523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length

14   negotiation is presumed fair") (citing *City Partnership Co. v. Atlantic Acquisition Ltd. P'ship,*

15   100 F.3d 1041, 1043 (1st Cir.1996)))).  This Settlement was the result of months of serious,

16   arms-length negotiation including two mediations.  The second mediation, in August 2015,

17   resulted in an agreement on a basic settlement structure but not on the details of settlement.  Five

18   months of continued negotiations followed the second mediation before final settlement terms

19   were reached.  None of the objectors addressed these negotiations and none made any attempt to

     present facts sufficient to overcome this presumption of fairness.

20             **5.      No Government Entity or Official Objected to the Settlement**

21             Additionally, the Settlement Administrator provided the notice required under the Class

22   Action Fairness Act ("CAFA") on June 29, 2016, and no governmental entity or official objected

23   to the Settlement terms.  *See* Declaration of Stephen J. Cirami Regarding Notice and Settlement

24   Administration ("Cirami Decl."), ¶ 3 [Dkt. 277].

25             **6.      The Reaction of the Class Members Was Overwhelmingly Positive**

26             Courts weigh class member reaction by the number of objections received relative to the

27   overall reach of the settlement notice.  The absence of a large number of objections raises a

28                                                    -7-

strong presumption that a settlement is favorable to the class. *See Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 529 ("[i]t is established that the absence of a large number of objections to a proposed class settlement action raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.") (citations omitted). Here, the notice program reached 86% of the putative Class Members with nearly seven million Class Members receiving direct email notice twice. *See* Cirami Decl. ¶ 7. Yet, the Settlement Administrator received only seven objections, two of which were untimely. The number of objections was therefore negligible and falls squarely within the parameters of settlements that the Ninth Circuit has found presumptively reasonable. *See Rodriguez*, 563 F.3d at 967 (finding favorable class reaction of the class where only 54 of 376,301 putative class members objected; *Churchill Vill.*, 361 F.3d at 577 (affirming settlement where 45 of approximately 90,000 (i.e., .05%) class members objected).

In sum, this Settlement satisfies each of the *Hanlon* considerations. The objectors have presented nothing to overcome the presumptions of fairness to which the parties here are entitled. Accordingly, each objection can, and should, be dismissed on this basis alone.

**B.      None of the Five Timely Objectors Raised Any Issue Sufficient to Overcome the Presumption of Fairness**

Not only does the Settlement satisfy *Hanlon*, the five timely objectors raised nothing that casts doubt on the fairness of the Settlement terms. Of the five timely objections, one is moot, two are filed by professional objectors, which must be viewed with extreme skepticism and are baseless (one is brought on behalf of an individual who is not a class member and thus has no standing), and the remaining two are neither factually nor legally supported.

**1.      The Henton Objection Is Moot**

The objections submitted by Brandon Henton and Elliot Mitchell, both representing themselves, are moot and should therefore overruled. Mr. Henton objected to the serial number requirement for submitting a claim. The parties, however, ultimately allowed Class Members to submit claims without a serial number and notified Mr. Henton that his claim would be allowed. Because Mr. Henton objected to the fairness of the settlement only as to him and not as to the

-8-

1   class a whole, and because his objection was mooted by the decision to allow claims without

2   providing a serial number, his claim is moot.[1]

### 2.   The Mitchell Objection Is Improperly Based on His Personal Circumstance

4   Mr. Mitchell objected to the Settlement based on his own personal circumstance and did

5   not assert that any Settlement terms were unfair.  Specifically, he asserted that although he was

6   fully aware of the Other OS functionality and had "vague plans to experiment with the

7   capability" when he purchased the PS3, he suffered an unspecified "debilitating medical

8   condition" that somehow prevented him from downloading Linux and utilizing Other OS.

9   Accordingly, Mr. Mitchell wanted to be compensated under Consumer Class A rather than

10   Consumer Class B, even though he did not use the Other OS functionality.  His objection is

11   therefore improper and should be dismissed.

### 3.   The Bowerman Objection Is Unsupported and Baseless

13   Mr. Bowerman objected to the Settlement on three grounds: (1) that the proof of Linux

14   use required by the Settlement was excessive; (2) that Consumer Class A members should

15   receive $75 instead of $55; and (3) that the Settlement was improperly limited to Other OS use

16   prior to the April 1, 2010, release of Firmware Update 3.21.  None of these grounds have merit.

#### a.   Bowerman Submits No Evidence to Support His Objections to the Proof Requirements or the Benefit Amount

18   Bowerman's first two objections fail for a single reason.  The question on final approval

19   is whether a settlement is "fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1027.  It is not

20   whether a settlement "could be prettier, smarter, or snazzier." *Id.*   At bottom, Bowerman's

21   objections to the proof requirements and the amount of the benefit are nothing more than a

22   factually unsupported assertion that the Settlement terms could have or should have been

23   different—i.e., the proof requirements should have been less and the monetary benefit should

24   have been more.

---

[1] The Settlement Administrator notified class members in the reminder email notice that a serial number was not required.  Cirami Decl., ¶ 12.  The reminder email was sent to email addresses to which the initial notice was delivered but no claim was submitted.  *Id.*

-9-

1    Bowerman argues that the proof requirements are excessive because they require

2    submission of documents that are more than six years old, but other than cite to the passage of

3    time, he presents no evidence that this is so.  That this objection is baseless is shown by the facts

4    that: (1) this Court scrutinized and approved the "proof of use" requirements at preliminary

5    approval; (2) nearly seven million potential class members received direct notice of this

6    settlement and Mr. Bowerman was the *only* class member who objected to the Consumer Class A

7    proof requirement; and (3) many Class Members in fact satisfied the proof requirements.

8    Moreover, the Settlement provides six alternative methods for satisfying the proof requirements,

9    one of which is a catch-all intended to allow a claimant to submit any type of documentary proof

10   that the Class Member used the Other OS functionality.  *See* Settlement Agreement,¶ 68 ("any

11   other documentary proof that he or she used the Other OS functionality before April 1, 2010 that

12   the Settlement Administrator reasonably determines to be valid").  Last, Class Members who

13   cannot satisfy the Consumer Class A proof requirements can still submit a claim for $9 under

14   Consumer Class B.  This objection has no merit and should be dismissed summarily.  *See In re*

15   *Lorazempam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 378 (D.D.C. 2002) (noting

16   unsupported objections should be summarily dismissed).

17       Bowerman also asserts that the benefit should have been $75 instead of $55, but that

18   objection is based solely on his unsupported opinion of what the Other OS functionality was

19   worth.  The appropriate consideration, however, is not his opinion, but whether the negotiated

20   settlement amount reasonably takes into consideration the risks of continued litigation and the

21   likelihood of potential recovery.  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323-24 (3d Cir.

22   2011) ("the reasonableness of a proposed settlement is assessed by comparing the present value

23   of the damages plaintiffs would likely recover if successful [at trial], appropriately discounted for

24   the risk of not prevailing . . . with the amount of the proposed settlement").  As Bowerman

25   acknowledges in his objection, the PS3 was selling for approximately $299 in April 2010 when

26   the Other OS functionality was removed.  The negotiated $55 benefit therefore represents almost

27   20% of the purchase price which is more than fair compensation for the removal of a tangential

28   functionality that was never advertised and of which less than ten percent of the Class Members

-10-

were aware and even fewer cared about.  As the above discussion regarding the challenges of this case on the merits illustrated, the negotiated compensation to injured Class Members is more than adequate given the significant risks posed by continued litigation.

Moreover, the Court is entitled to presume that "through negotiations, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *In re Google Referrer Header Privacy Litig.,* 87 F. Supp. 3d 1122, 1131 (N.D. Cal. 2015) (internal quotations and citations omitted) (appeal pending); *see also In re Pacific Enterprises Securities Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."); *Browning v. Yahoo! Inc.*, No. 04-cv-01463-HRL, 2007 WL 4105971, *5 (N.D. Cal. Nov. 16, 2007) (overruling objection to settlement value because "settlement, as a product of compromise, typically offers less than a full recovery"). This Settlement is the product of two mediations and months of arm-length negotiations between the parties and is therefore presumptively reasonable.  Bowerman presents no facts or law sufficient to overcome the presumption of reasonableness.  He provides no substantiation or even rationale for his proposed $75 benefit which appears to be a number cut from whole cloth.  Last, to the extent that Bowerman believed a more favorable recovery could have been obtained, he was free to opt-out and proceed independently.  Accordingly, this objection is without merit and must be dismissed.

### b.     The Time Limitation Objection Is Unsupported

Last, Mr. Bowerman objects on the ground that the Class is improperly limited to Linux downloads (as opposed to other operating systems) and that it is improperly limited to use of Other OS only before April 1, 2010.  These objections are also factually unsupportable.  SCEA stopped manufacturing the Fat PS3 in September 2009 when the "Slim" model was released. The Slim PS3 had no Other OS functionality.  And, Firmware Update 3.21, which disabled the Other OS functionality, was released on April 1, 2010.  Because the class as defined includes only purchasers of Fat PS3's, the April 1, 2010, cut-off date was reasonable and serves to prevent fraudulent claims.  Moreover, if Class Members had not used the Other OS functionality

-11-

by April 1, 2010, when it was disabled, then those Class Members were not losing a functionality that they had been using and were therefore not harmed by Firmware Update 3.21.  This objection is meritless.

### 4.    The Professional Objections are Baseless and Must Be Overruled

The last two timely objections were submitted by "professional" objectors: The Navarette objection[2] and the Lindberg objection.[3]  *See In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (explaining that "professional" or "serial objector" is an attorney who "routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate change to the settlement, but does so for his own personal financial gain").  The motives of professional objectors are inherently suspect and should be viewed from the onset with skepticism.  *See In re Hydrocut Mktg. And Sales Practices Litig.*, Nos. 09md2087 BTM (KSC), 09cv1088 BTM (KSC) 2013 WL 5275618 at *5 n.3 (S.D. Cal. Sept. 17, 2013) (recognizing some objections are "made for improper purposes to the benefit only the objectors and their attorneys") (appeal pending) (quoting Manual for Complex Litigation § 21.643 (4th

---

[2] Mr. Furman has represented objectors in several lawsuits, including the following: *Schlesinger et al. v. Ticketmaster* (Case No. BC304565) (Los Angeles County Superior Court) (representing Navarette as the Objector, whom the court overruled in full in granting motion for final approval); *Rodriguez v. West Publishing Corp.* (Case No. CV 05-3222 R(MCx)) (C.D. Cal. 2007); *In re Google Buzz User Privacy Litigation* (Case No. 5:10-cv-00672) (N.D. Cal. 2010); *Pappas v. Naked Juice Co. of Glendora Inc. et al* (Case No. 2:11-cv-08276) (C.D. Cal. 2011); *In re Online DVD Rental Antitrust Litigation*, No. 4:09-md-02029 (9th Cir. 2012); *TCT-LCD Antitrust Litig.*, No. 07-md-01827 (N.D. Cal. 2007).  The objections he asserted in these suits were similar to those that he asserts here, including objections to the amount of attorneys' fees (including that class counsel failed to identify the maximum possible recovery), insufficient relief to the class, and asserting need for *cy pres* relief.  His objections were overruled in each case.

[3] The Law Offices of Sam Miorelli has an extensive history of objecting to settlements. Miorelli has represented objectors in the following matters: *Hendricks v. Starkist Co.*, Case No. 13-CV-00729-HSG (N.D. Cal. 2016); *Edwards, et al. v. National Milk Producers Federation, et al.*, Case No. 11-cv-04766-JSW (N.D. Cal.); *Chambers, et al. v. Whirlpool Corp., et al.*, Case No. 11-cv-01733-FMO-JCG (C.D. Cal.).  His objections to all were overruled and are pending appeal.  Additionally, Miorelli has *personally* objected in the following matters: *Legg v. LabCorp*, Case No. 14-61543-CIV- ROSENBERG/BRANNON (S.D. Fla. 2016); *In re Carrier IQ, Inc., Consumer Privacy Litigation*, Case No. 12-md-02330-EMC (N.D. Cal. 2016); *In re: The Home Depot, Inc., Consumer Data Security Breach Litigation*, Case No. 14-md-02583-TWT (N.D. Ga. 2016); *Zepeda v. PayPal Inc.*, Case No. 10-cv-02500-SBA (JCS) (N.D. Cal. 2014). None of these objections were sustained either.

-12-

1   ed.)); *see Banes v. Fleetboston Fin. Corp.*, No. 01-10395-NG, 2006 WL 6916834 at *1 (D. Mass.

2   Aug. 22, 2006) (noting "professional objectors can levy what is effectively an tax on class action

3   settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is

4   gained from the cost:  Settlements are not restructured and the class . . . gains nothing").  The

5   Navarette and Lindberg objections are typically "professional" and provide no basis for denying

6   final approval.

**a.      Mr. Lindberg is Not a Class Member and Has No Standing to Object**

7
8           Mr. Lindberg's objection is dispensed with easily—by his own admission, he is not a

9   class member and has no standing to object to the Settlement.  Mr. Lindberg states on the first

10  page of his objection that "he received as a Christmas gift from his parents a 'Fat PS3' … in

11  2006."  Dkt. 281, Exh. E, p. 1:3-5.  This, however, is at bottom a false advertising case with the

12  Class accordingly defined as "any and all persons in the United States who *purchased* a Fat PS3

13  in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for

14  family, personal, and/or household use."  Settlement Agreement ¶ 12 (emphasis added).  Because

15  Mr. Lindberg did not purchase his PS3 but received it as a gift, he is not a Class Member and has

16  no standing to object to the Settlement.[4]  *See San Francisco NAACP v. San Francisco Unified*

17  *Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) ("[N]onclass members have no standing

18  to object to the settlement of a class action."); *In re Tracfone Unlimited Serv. Plan Litig.*, 112 F.

19  Supp. 3d 993, 1008 (N.D. Cal. 2015), *reconsideration denied*, No. C-13-3440 EMC, 2015 WL

20  4735521 (N.D. Cal. Aug. 10, 2015) (finding that non-class member lacked standing to object to

21  settlement).  Accordingly, this Court cannot consider his objection.[5]

---

22  [4]  Because this is a false advertising case, those who did not purchase their PS3's cannot recover
23  because false advertising tests the materiality of and reliance upon a representation to the
     decision to purchase a product.  *See Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002-03
     (N.D. Cal. 2009).

24  [5]  Because Mr. Lindberg is not a Class Member and his objection therefore must be dismissed,
25  SCEA will not address the substance of them here but will be prepared to address them at the
     hearing in the event the Court is inclined to consider them.  SCEA does, however, disagree with
26  the position taken by Class Counsel regarding Mr. Lindberg's objection to the scope of the
     release.  Class Counsel state in their brief that personal injury and "yellow light of death" claims
27  are outside the scope of the release. While it is unclear what Mr. Lindberg and Class Counsel
     mean by "personal injury" and "yellow light of death" claims in this context, it is wholly

28

-13-

**b.** **Affording Different Relief to Class Members Does not Create a Conflict**

Mr. Navarette objected on the ground that Consumer Class A and B are uncertifiable "subclasses" because they have no representative and therefore cannot satisfy Rule 23's adequacy requirement. Dkt. 281, Exh. D. This objection fails for the simple reason that this Settlement involves only one Class: "any and all persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal, and/or household use. . . . ." Consumer Class A and Consumer Class B are not subclasses—they simply outline the different settlement benefits available to different Class Members depending on the degree of harm they allegedly suffered. And it is settled that varied relief or benefits among Class Members with different claims is not unusual, does not create "subclasses," and does not implicate Rule 23's adequacy requirement.

The adequacy requirement "seeks to uncover conflicts of interest between named parties and the class they represent." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516,532 (3d Cir. 2004) (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 313 (3d Cir. 1988)). Courts recognize that settlement relief can vary among class members without creating conflicts or problems of adequacy or typicality. *In Re Cathode Ray Tube Antitrust Litig.*, No. 07-cv-5944-JST, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ("the mere fact that relief varies among the different groups of class members does not demonstrate conflicting or antagonistic interests within the class or adequacy of representation issues). Subclasses, in contrast, become necessary only when certain members of the class have different and *conflicting* objectives or legal positions and the conflict strikes at the subject matter of the litigation. *See, e.g., Tennille v. Western Union Co.*, 785 F.3d 422, 431 (10th Cir. 2015), *cert. denied sub nom. Dorsey v.*

---

inappropriate for any party to speculate here as to whether or not such hypothetical claims fall within the scope of the release. The proper inquiry would be whether any subsequently asserted claim satisfies the "identical factual predicate" test. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). Therefore, it is impossible to determine now whether any particular future claim will or will not arise from the "identical factual predicate" as the claims asserted in this litigation. In the unlikely event that subsequent litigation involving these decade old consoles is filed, it will be up to the court presiding over that future litigation to determine whether the specific facts alleged therein satisfy the identical factual predicate test and thus fall within the scope of the release provided by the settlement class here.

*Tennille*, 136 S. Ct. 835, 193 L. Ed. 2d 719 (2016), and *cert. denied sub nom. Nelson v. Tennille*, 136 S. Ct. 835, 193 L. Ed. 2d 719 (2016).

Mr. Navarette points to no conflicting position between Consumer Class A and Consumer Class B, and there is none.  All Class Members were allegedly injured by the same conduct but in differing degrees which the Settlement accounts for—those who actually used the Other OS functionality presumably lost more by its removal than those who did not care about that functionality and/or never used it.[6]  Mr. Navarette provides no authority holding that similar facts create an insurmountable conflict.[7]

The remainder of Mr. Navarette's objection addresses the appropriateness of the amount of attorneys' fees and related provisions.  Those objections will be addressed in full by Class Counsel in their separately filed Plaintiffs' Response to Objections to the Proposed Class Action Settlement Agreement.

**C.      The Apostol and Sweeney Objections Should Be Overruled As Untimely**

A District Court has the discretion to overrule untimely objections to class settlements. *See Rodriguez*, 563 F.3d at 948 (finding that the District Court properly denied as untimely a class settlement objectors' motion, filed more than three weeks after deadline for filing objections).  Mr. Apostol's objection was postmarked on December 10, 2016, 3 days after the December 7, 2016, objection deadline.  Similarly, Sweeney's objection was postmarked on

---

[6]  Mr. Navarette's objection is particularly specious because the declaration he submitted in support of it confirms that he suffered no injury at all by the removal of the Other OS functionality.  Mr. Navarette states that his PS3 stopped functioning in 2009 and he sold the nonfunctioning console for $50.  *See* Dkt. 281, Exh. D (Declaration of John Navarette In Support of Objections to Final Approval of Class Action Settlement), ¶ 12.  Firmware Update 3.21 was not released until April 1, 2010.  Thus, Mr. Navarette was able to use the Other OS functionality for the entire time that owned his PS3 and he cannot claim to have been injured by a decision to remove that functionality made well *after* he disposed of his console.  Any settlement benefit Mr. Navarette receives, then, is a windfall.

[7]  Even if Consumer Class A and Consumer Class B are "subclasses" (which they are not), there is a representative for each.  Plaintiffs Anthony Ventura, Derek Alba, Jonathan Huber, and Jason Baker are Consumer Class A claimants because they testified that they used the Other OS functionality.  Plaintiff James Girardi is a Consumer Class B claimant because he did not use the Other OS functionality but knew about it when he purchased his PS3, allegedly relied upon it as part of his purchase decision, and testified that he intended to use it at the time of purchase. Thus, Mr. Navarette's objection is factually unsupported and fails.

-15-

1   December 8, 2016, the day after the deadline.  Because both are untimely, they should be

2   disregarded.

3           Even if they are considered on their merits, however, both fail because neither addressed

4   the fairness of the Settlement generally.  Mr. Apostol states that he did not receive notice of the

5   settlement (despite two rounds of direct email notice and a social media and publication

6   campaign achieving an 86% reach) and therefore was not sure if his claim "went through."

7   Apostol further indicates that he intends to withdraw his objection if his "claim went through."

8   Accordingly, his "objection" is not to the Settlement generally but instead involves his own

9   personal circumstance and must therefore be overruled.

10          Sweeney did not object to the general fairness of the Settlement either.  Instead, he

11  suggests an admittedly novel claims payment oversight procedure that he believes will

12  "improve" class action proceedings generally.  *See* Dkt. 281, Exh. G, p. 2 (stating "[c]laims

13  administration fails to require reliable future oversight, accountability, and reporting about

14  whether the claims process actually delivers what was promised").  It is settled, however, that a

15  class action settlement need not satisfy all class members.  *Officers for Justice v. Civil Serv.*

16  *Comm'n of City and County of S.F.,* 688 F.2d 615, 624 (9th Cir. 1982) ("it may be unavoidable

17  that some class members will always be happier with a given result than others").  The

18  consideration is overall fairness of specific settlement terms, which this objection does not

19  address.  Moreover, Garden City Group, the Settlement Administrator here, is well versed in

20  distributing class benefits and ensuring that the "claims process actually delivers what was

21  promised."  In fact, it has a process in place to confirm benefit distribution which Mr. Sweeney

22  did not address at all.  *See generally* Cirami Decl.  Accordingly, this objection is not only

23  untimely, but it is also improper and moot.

24          Sweeney also tries to object to the sufficiency of the notice program.  Dkt. 281, Exh. G,

25  p. 2, ¶ 2.  His objection, however, is refuted flatly by the Cirami Declaration which confirms

26  delivery of nearly seven million direct notice emails and a notice program with an overall reach

27  of approximately 86 percent, at a frequency of 2.43 times per Class Member.  Cirami Decl. ¶ 7.

28  This objection is without any factual support and must be overruled.

-16-

1

### III.    CONCLUSION

2          Based on the foregoing law and argument, SCEA respectfully requests that the Court

3    overrule each Objection to the Settlement and enter an order granting final approval of the

4    Settlement.

5

6    Dated: January 10, 2017                          Respectfully submitted,

7                                                     SACKS, RICKETTS & CASE LLP

8                                                     By: /s/ Michele Floyd
                                                     LUANNE SACKS
9                                                    CINDY RICKETTS
                                                     MICHELE FLOYD
10                                                   Attorneys for Defendant
                                                     SONY COMPUTER ENTERTAINMENT
11                                                   AMERICA LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28