Rosemary M. Rivas (SBN 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700/Facsimile: (415) 398-8704

Kathleen Fisher (State Bar No. 70838)
kfisher@calvofisher.com
**CALVO FISHER & JACOB LLP**
555 Montgomery Street, Suite 1155
San Francisco, California 94111
Telephone: (415) 373-8370/Facsimile: (415) 374-8373

James Pizzirusso (*pro hac vice*)
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200/Facsimile: (202) 540-7201

*Class Counsel for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SONY PS3 "OTHER OS" LITIGATION | Case No. 4:10-CV-01811-YGR <br><br> **PLAINTIFFS' RESPONSE TO OBJECTIONS TO THE PROPOSED CLASS ACTION SETTLEMENT** <br><br> Date:       January 24, 2017 <br> Time:       2:00 PM <br> Judge:      Hon. Yvonne Gonzalez Rogers <br> Courtroom: 1, 4th Floor |

# TABLE OF CONTENTS

I.    THE OBJECTIONS TO FINAL APPROVAL OF THE SETTLEMENT
      LACK MERIT ...................................................................................................... 1

      A.    The Proposed Settlement is Fair, Reasonable, and Adequate........................... 1

            1.    *Pro Se* Timely Objections.................................................................... 1
                  a.    Objection by Brandon Henton.................................................. 1
                  b.    Objection by Elliott Mitchell ................................................... 2
                  c.    Objection by Jason Bowerman .................................................. 3

            2.    Timely Objections from Serial Objectors ............................................ 5
                  a.    Objection by John Navarrete.................................................... 5
                  b.    Objection by Eric Lindberg ..................................................... 8

            3.    Untimely *Pro Se* Objection................................................................ 10
                  a.    Objection No. 6 by Mason Apostol ........................................ 10

            4.    Untimely Objections by Serial Objectors ........................................... 11
                  a.    Objection by Patrick Sweeney ............................................... 11

II.   THE OBJECTIONS TO THE MOTION FOR ATTORNEYS' FEES AND
      COSTS LACK MERIT .......................................................................................... 12

      A.    The Attorney Fee Request Does Not Undermine The Settlement's Fairness,
            Reasonableness Or Adequacy ........................................................................ 12

      B.    The Court is Required to Use the Lodestar Method Approved by California
            Courts to Award Fees ................................................................................... 13

      C.    Class Members Had Sufficient Opportunity to Review the Application
            for Attorneys' Fees....................................................................................... 15

      D.    There is No Justification for Delaying the Fee Award................................ 16

      E.    The Court Has Sufficient Information to Determine an Appropriate Award
            of Fees and Expenses .................................................................................. 16

      F.    The Requested Incentive Awards are Reasonable ......................................... 17

III.  CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

## Federal Cases

*Barnes v. FleetBoston Fin. Corp.*, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) ........................ 6

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ........................ 5

*Chavez v. PVH Corp.*, 2015 WL 9258144 (N.D. Cal. Dec. 18, 2015) ........................ 11

*Collado v. Toyota Motor Sales, U.S.A., Inc.*, 550 F. App'x 368 (9th Cir. 2013) ........................ 14

*Devlin v. Scardelletti*, 536 U.S. 1 (2002) ........................ 8

*Feder v. Elec. Data Sys. Corp.*, 248 F. App'x 579 (5th Cir. 2007) ........................ 9

*Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862

(N.D. Cal. Jan. 26, 2007) ........................ 9

*In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ................ 11

*In re Hydroxycut Mktg. & Sales Practices Litig.*, 2013 WL 5275618 (S.D. Cal. Sept. 17, 2013) ... 9

*In re Korean Air Lines Co. Antitrust Litig.*, 2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ............ 9

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 ........................ 18

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) ........................ 16

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................ 8

*In re TFT-LCD Antitrust Litig.*, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ........................ 11

*In re Tracfone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993 (N.D. Cal. 2015) ........................ 4

*In re Unitedhealth Group S'holder Derivative Litig.*, 631 F. Supp. 2d 1151

(D. Minn. 2009) ........................ 11

*Jefferson v. Chase Home Fin.*, 2009 U.S. Dist. LEXIS 64607 (N.D. Cal. July 10, 2009) ............ 14

*Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d 935 (9th Cir. 2011) ........................ 13

*Kent v. Hewlett-Packard Co.*, 2011 WL 4403717 (N.D. Cal. Sept. 20, 2011) ........................ 9

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988

(9th Cir. 2010) ........................ 15, 16

*Moore v. Verizon Communs., Inc.*, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ........................ 7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ........................ 5

*O'Keefe v. Mercedes-Benz U.S., L.L.C.*, 214 F.R.D. 266 (E.D. Pa. 2003) ........................ 5

*Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) ........................ 14,15

*Roberts v. Electrolux Home Prods.*, 2014 WL 4568632 (C.D. Cal. Sept. 11, 2014) ........................ 5

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................ 17, 18

*S.F. NAACP v. S.F. Unified Sch. Dist.*, 59 F. Supp. 2d 1021 (N.D. Cal. 1999) ........................ 9

PLAINTIFFS' RESPONSE TO OBJECTIONS
CASE NO. 4:10-CV-01811-YGR

*Shames v. Hertz Corp.*, 2012 U.S. Dist. LEXIS 158577 (S.D. Cal. Nov. 5, 2012) ....................... 13

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...................................................... 17

*Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) ...................... 16

*Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026 (9th Cir. 1997) ....................................... 14

**State Cases**

*Hayward*, 108 Cal. App. 4th 509 ....................................................................... 14

*In re Tobacco Cases II*, 240 Cal. App. 4th 779 (2015) ................................................... 4

*Vo v. Las Virgenes Mun. Water Dist.*, 79 Cal. App. 4th 440 (2000) .............................. 14

*Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224 (2001) ................................... 16

**Other**

Fed. R. Civ. P. 23(e)(4) .................................................................................. 9

*Marie Leary, Study of Class Action Objector Appeals in the Second, Seventh, & Ninth Circuit Courts of Appeals, Report to the Advisory Comm. on Appellate Rules of the Judicial Conf. of the U.S., Fed. Judicial Center, Oct. 2013*, 2013 WL 9861329 .......................................................... 6, 7

Pursuant to Paragraph 31 of the Court's Order Granting Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class, Dkt. No. 270, ("Preliminary Approval Order"), Plaintiffs Derrick Alba, Jason Baker, James Girardi, Jonathan Huber, and Anthony Ventura, ("Plaintiffs") hereby respond to the objections to the proposed class action settlement embodied in the Stipulation of Class Action Settlement and Release ("Agreement") submitted to the Settlement Administrator. *See* Preliminary Approval Order at ¶ 31 ("The Parties shall file any responses to any Class Member objections, and any reply papers in support of final approval of the Settlement or Class Counsel's Fee Application and Request for Plaintiff Service Awards, by no later than January 10, 2017.") (emphasis in original).

As of the time of this filing, the Claims Administrator has received five timely objections to the Settlement, and two untimely objections (in contrast to over 10,000 claims). As explained in detail below, all objections should be overruled, including three of these objections are by so-called "serial" or "professional objectors" (one of which is untimely) who often seek to hold up settlements in order to secure a payout to themselves with little to no work on behalf of the class.[1]

## I.   THE OBJECTIONS TO FINAL APPROVAL OF THE SETTLEMENT LACK MERIT

Plaintiffs' motion for final approval established that the Settlement was fair, adequate, and reasonable. Dkt. No. 280. None of the submitted objections show the contrary.

### A.   The Proposed Settlement is Fair, Reasonable, and Adequate.

#### 1.   *Pro Se* Timely Objections

##### a.   Objection by Brandon Henton

Objector Henton objects to the requirement that claimants submit a proof of purchase or serial number for their PS3. Dkt. No. 281, Exh. A. Henton asserts that he cannot obtain this information because his PS3 was purchased 10 years ago and is no longer in his possession. *Id.*

---

[1] Pursuant to paragraph 38 of the Preliminary Approval Order, copies of these objections have been redacted in conformity with paragraph 97 of Agreement and were filed with the Court on December 22, 2016 (Dkt. No. 281).

After receiving this objection and seeing a small number of similar concerns posted on the Internet, the Parties conferred and implemented a new procedure whereby a claimant who no longer had proof of purchase or a serial number could obtain a temporary ID number from the claims administrator which SCEA could then use to cross check against its own records to ensure the claimant had purchased a PS3. Dkt. No. 280-1 at ¶ 5. This new procedure was implemented on November 17, 2016, and communicated to the class via the Settlement Website and in the second direct email notice sent to all Class members to whom the initial email notice was successfully delivered but who had not yet submitted a claim between November 17 and 27, 2016. *Id*. This new procedure meant that a Consumer Class B claimant could file a claim without submitting any external evidence (other than the required claim form attesting to loss of value or desired functionality or being otherwise injured as a consequence of the Firmware Update). After this procedure was explained to Mr. Henton, he submitted a claim. As such, Mr. Henton's objection is moot.

### b. Objection by Elliott Mitchell

Mr. Mitchell's objection relates to the criteria for Consumer Class A. Objector Mitchell states that he was "*fully* aware of the ability to install Linux and had vague plans to experiment with the capability" but was prevented from doing so by a "medical condition." Dkt. No. 281, Exh. B.

First, it appears that Mr. Mitchell may at least be eligible for compensation as a Consumer Class B claimant. Second, the eligibility for the higher compensation available for Consumer Class A is rooted in the principle that such claimants can show *actual* usage of the Other OS function – and therefore can demonstrate concrete injury-in-fact and damage for their loss. Plaintiffs regret that Mr. Mitchell's medical condition prevented him from actually utilizing the Other OS function, but this does not alter the fact that he concedes he "never attempted to use the Other OS function" and thus cannot file a Class A claim. Moreover, as a result, if he were to proceed on an individual basis, SCEA would undoubtedly argue that he would face significant obstacles in proving the elements of an actionable claim and damages. Accordingly, Mr. Mitchell's objection does not

suggest that the criteria for inclusion in Consumer Class A is unreasonable or unfair because of his unique situation, albeit unfortunate, that prevented the actual usage of the Other OS function.

### c. Objection by Jason Bowerman

Objector Bowerman objects to the proof required to show use of the Other OS function for Consumer Class A. Dkt. No. 281, Exh. C. Specifically, he indicates that his understanding is that the only acceptable form of proof of Other OS usage is a screenshot with date stamps or copies of written communications regarding the Other OS. *Id*. He states that it is excessively burdensome to require claimants to locate and produce materials from such a long time ago. *Id*.

Mr. Bowerman is correct that the contemporaneous screenshots or communications he refers to would satisfy the claim requirements, but he is *incorrect* that these are the "only" acceptable forms of proof. The Long Form Notice explains that acceptable proof of use of the Other OS functionality also includes:

> (a) proof of purchase before April 1, 2010 of a version of Linux that is compatible with and was installed on your Fat PS3; (b) proof that you downloaded a version of Linux that was compatible with and was installed on your Fat PS3 prior to April 1, 2010; … (d) a screenshot (or picture) showing that a portion of your Fat PS3 hard drive is still formatted for the Other OS with Linux installed; … or (f) any other documentary proof you may have that shows that you used the Other OS functionality before April 1, 2010 that the Settlement Administrator determines to be valid.

Indeed, one form of proof (category (f)) is worded as broadly as possible to allow Class members to submit any other possible evidence that they have to prove use of the Other OS not listed in the Long Form Notice. In any event, the acceptable proof of use requirement was designed to be as comprehensive as possible while also addressing SCEA's concerns in preventing fraudulent claims from users who never actually utilized the Other OS feature. Accordingly, there are many forms of proof that could be offered besides the contemporaneous screenshots and communications to which Mr. Bowerman refers.

Mr. Bowerman further objects that the action was too limited, because it offered relief for people who used the Other OS for Linux but not other operating systems, such as Free BSD, or

PLAINTIFFS' RESPONSE TO OBJECTIONS
CASE NO. 4:10-CV-01811-YGR

after the Update was available.  Dkt. No. 281, Exh. C. The vast majority of users who utilized the Other OS did so for purposes of using Linux and the claims were based on the loss of the ability to install an alternate operating system like Linux.  Additionally, Mr. Bowerman notes that FreeBSD was only available for the PS3 after Update 3.21 was released in the Summer of 2010. *Id.* Linux was the only alternate operating system available before April 1, 2010.

Finally, Bowerman states that the payout for a Consumer Class A claim should be $75 instead of $55. Dkt. No. 281, Exh. C. The $55 figure was the product of months of negotiation between the Parties with the assistance of the Honorable Howard Weiner (Ret.) and a reasonable assessment and compromise of the damages incurred. Indeed, SCEA could argue that $55 is significantly higher than what a class member might hope to recover at trial given that the Other OS functionality was one feature of many in the PS3 and one which SCEA argues was not widely promoted. While Class A Class Members will receive  a percentage of the PS3's purchase price (18% if using the $299 figure the objector says he paid) as opposed to a full refund, the $55 figure is also consistent with the argument SCEA would make at trial that, even if Plaintiffs prevail on liability, under California law, a full refund is unavailable because the units still have substantial value as they can continue to be used to play video games, Blu-ray movies, and access the PlayStation Network, among other things. *See In re Tobacco Cases II*, 240 Cal. App. 4th 779, 796 (2015); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1004–05 (N.D. Cal. 2015).

In any event, a 18% monetary payment is consistent with other settlements deemed fair, reasonable and adequate. *See, e.g., Natl. Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (noting "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial") (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir.1982)); *Bellinghausen v. Tractor Supply*

*Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving settlement amounting to between 9% and 27% of defendant's potential exposure).

2. <u>**Timely Objections from Serial Objectors**</u>

a. **Objection by John Navarrete**

Objector Navarrete is represented by Attorney Joshua Furman, a "serial" or "professional objector." Public records indicate that Attorney Furman has filed at least seven (7) objections to class action settlements that Plaintiffs were able to locate, including at least one with the same client, Navarrete, who filed objections here. *See* accompanying Declaration of Rosemary M. Rivas ("Rivas Decl.") at ¶ 7.

"[R]epeat or 'professional objectors' file stock objections to class action settlements and then are often rewarded with a fee by class counsel to settle their objections. Most often, the objections are nonmeritorious." *Newberg on Class Actions* § 13:21 (5th ed. 2011) (footnotes omitted). "Federal courts are increasingly weary of professional objectors." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003) (citing cases); *see also Roberts v. Electrolux Home Prods., Inc.*, No. 13-cv-2339, 2014 WL 4568632, at *11 (C.D. Cal. Sept. 11, 2014) (rejecting "objections submitted by . . . professional objectors [because they did] not seek to benefit the Class and appear[ed] to [have] be[en] made for the improper purpose of delaying the Settlement to extract a fee"). As one court observed, professional (or "serial") objectors threaten to (and do) delay implementation of settlements, including distribution to class members, in order to extract cash payments from the class or their attorneys to drop their frivolous objections:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained

PLAINTIFFS' RESPONSE TO OBJECTIONS
CASE NO. 4:10-CV-01811-YGR

from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

*Barnes v. FleetBoston Fin. Corp.*, No. 01-cv-10395, 2006 WL 6916834, at *1, 3-4 (D. Mass. Aug. 22, 2006); *see also* Federal Judicial Center, *Manual for Complex Litigation* § 21.643, at 326 (4th ed. 2008) ("Some objections, however, are made for improper purposes, and benefit only the objectors and their attorneys (e.g., by seeking additional compensation to withdraw even ill-founded objections). An objection, even of little merit, can be costly and significantly delay implementation of a class settlement.").

As Justice Scalia has noted, though objections may be irrational in substance, it can be perfectly rational for serial objectors who seek to "'extract a fee by lodging generic, unhelpful protests'" and filing meritless appeals. *Devlin v. Scardelletti*, 536 U.S. 1, 22 n.5 (2002) (Scalia, J., dissenting) (quoting *Shaw v. Toshiba Am. Information Sys., Inc.*, 91 F. Supp. 2d 942, 973-74 & n.18 (E.D. Tex. 2000)).[2] Indeed, an October 2013 study by the Federal Judicial Center found that out of a total of 126 terminated objector appeals in the Second, Seventh and Ninth Circuit Courts of Appeals, objectors were successful on only three occasions. Marie Leary, *Study of Class Action Objector Appeals in the Second, Seventh, and Ninth Circuit Courts of Appeals, Report to the Advisory Committee on Appellate Rules of the Judicial Conference of the United States*, Federal Judicial Center, Oct. 2013, 2013 WL 9861329. Given Mr. Furman's history of serial objections (which were generally rejected) in other cases, his objection here should similarly be given short thrift.

As an initial matter, the Court's Preliminary Approval Order states that "[t]o be considered, an objection … ***must*** include the following: … (f) whether the objector is represented by counsel

---

[2] *See also* American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.08 cmt. a (2010) (discussing "cases in which fees are paid to objectors' counsel not because of valid objections but because objectors have threatened to prolong the process by appealing the settlement on insubstantial grounds, thereby delaying distributions to the class and class counsel"); *id.* cmt. b ("Some objections do not represent a good faith effort to improve the settlement but instead are simply an effort to secure fees for objecting counsel. A baseless objection, followed by an appeal after the objection is rejected, can delay the finalization of a settlement for months or even years.").

PLAINTIFFS' RESPONSE TO OBJECTIONS
CASE NO. 4:10-CV-01811-YGR

and, if so, the identity of such counsel, ***and all previous objections filed by the objector and their counsel within the last two years***." Preliminary Approval Order ¶ 24 (emphasis added). Navarrete's objection fails to disclose the previous objections filed by his counsel in the last two years. *See* Dkt. No. 281, Exh. D. Therefore, as it violated the Court's Preliminary Approval Order, the Court should reject it. *See, e.g., Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, *12 (N.D. Cal. Aug. 28, 2013) (overruling objections that were submitted because these objections "fail[ed] to comply with the procedural requirements for objecting to the Settlement."). Nevertheless, as indicated, Plaintiffs were able to uncover numerous similar (and meritless) objections that Navarrete's Counsel, Mr. Furman, has made in other cases and were rejected by courts. Rivas Decl. at ¶ 7.

Moreover, Mr. Navarrete failed to include his serial number or temporary claim number on his claim. He asserts that "I attempted to obtain the serial number of my old Fat PS3 from the Garden City Group by calling 1-855-720-1264 and pressing option 1 as per the instructions in the Consumer Claim Form published at otherossettlement.com, but the recording indicated that the office was closed - despite the fact that I called during business hours. If I am able to obtain the serial number at a later date, I will provide it." Dkt. No. 281, Exh. D. This assertion is belied by Garden City's Records.  Garden City's call center records indicate that that Mr. Navarrete made a single call to the Toll Free number IVR at 8:24 P.M. Eastern (5:24 Pacific) on the last day that claims could be filed, December 7, 2016. Mr Navarrete navigated the IVR, hung up, and has not called back since. *See* Rivas Decl., Exh. 10 at ¶ 3.

Even if the Court were to examine the substance of Navarrete's objections, they are meritless. Navarrete's counsel argues that the distinction between Consumer Class A and Consumer Class B is illusory, since it merely reflects whether a given person has "arbitrary documentation" of proof, not a difference in injury, and that this leaves those Class Members who are unable to offer proof of their injury without adequate representation. Dkt. No. 281, Exh. D. As explained above, the distinction in the consumer groups reflects the reality of what SCEA would

undoubtedly contend must be proven to prevail and obtain damages on the underlying claims; such distinctions are not arbitrary. And it is reasonable to offer differing amounts based on what the injury class members have suffered. *See, e.g., In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *8 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009) (rejecting objection to differential allocation to class members whose "legal claims are more valuable" than the claims of other class members).

The adequacy of the representation of the Class Members who no longer retain their PS3 units is reflected, among other ways, in the varying methods of proof that satisfy a Consumer Class A claim, including a "catchall" provision, as well as the fact that a claimant can submit a valid Consumer Class B claim without including any external proof at all, as discussed above.

The other objections raised by Mr. Navarrete regarding the alleged inadequate benefit to the Class and fees are addressed above with regard to Bowerman's objections and below and are without merit.[3]

### b.    Objection by Eric Lindberg

As a preliminary matter, Lindberg *concedes* that he received his Fat PS3 as a Christmas gift. Dkt. No. 281, Exh. E. Accordingly, he does not fall with the Class definition and is *not* a Class member.[4] Therefore, he has no standing to make objections in this suit and the Court should disregard them. Indeed, it is well-established that only members of the class have standing to object to a settlement. *See, e.g.,* Fed. R. Civ. P. 23(e)(4); *Kent v. Hewlett-Packard Co.*, 2011 WL 4403717, at *3 (N.D. Cal. Sept. 20, 2011) (non-class member objectors lack standing); *San Fran. NAACP v. San Fran. Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) (same); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *8 (N.D. Cal. Jan. 26, 2007) (same). And

---

[3] It does not appear that Mr. Furman or other serial objector counsel have ever actually represented plaintiffs in a class action lawsuit as opposed to making a career objecting to such settlements.

[4] The class is limited to "purchasers" of the PS3. Agreement at ¶ 12.

objectors, not Class Counsel or Plaintiffs, bear the burden of establishing their membership in the class. *See Feder v. Elec. Data Sys. Corp.*, 248 Fed. App'x. 579, at *2 (5th Cir. 2007) (objectors have burden of proving standing); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2013 WL 5275618, at *2 (S.D. Cal. Sept.17, 2013) (striking objection because objector had not carried his burden of proving class membership); *In re Korean Air Lines Co. Antitrust Litig.*, 2013 WL 7985367, at *2 (C.D. Cal. Dec. 23, 2013) (objectors lack standing for failure to show class membership).

Second, Lindberg is "represented" by Attorney Sam A. Miorelli. Notably, they appear to share an address. Dkt. No. 281, Exh. E. Lindberg disclosed in the objections that his attorney, Sam A. Miorelli, has filed objections (either *pro se* or on behalf of others) in a long list of proceedings in the past two years (and at least in one previous objection together).[5] Dkt. No. 281, Exh. E. Accordingly, as discussed above, the objections should be viewed with skepticism. The Court should also note that the objections Lindberg makes here are similar to those that he and/or Mr. Miorelli have made in countless class actions over the past two years. *See* Rivas Decl., Exhs. 1-2 (Miorelli objections). These arguments have been repeatedly rejected by the courts. *See id.* at ¶ 4(a), 4(b), 4(e) and Exh. 2. Here, Lindberg's are equally meritless.

Assuming the Court chooses to examine Lindberg's objections even though he is not a class member, Lindberg contends that the claims process is inherently flawed, that the Class Members are not adequately benefitted by the Settlement, that Class Counsel are self-dealing and colluding, that the attorneys' fees are too high, and that the attorneys are trying to bypass the Court's authority to award fees. Dkt. No. 281, Exh. D. All of these arguments – which are likely brought for the improper purpose of extorting money from Plaintiffs – are completely meritless on their face and for the reasons discussed above or in the Motion for Final Approval.

---

[5] For example, in one recent settlement, Mr. Miorelli objected *pro se* even though he was not an actual class member. *See In re Target In re: Target Corporation Customer Data Security Breach Litigation*, 2015 WL 7253765, at *2, n. 1 (D. Minn. Nov. 17, 2015).

Lindberg also contends that the release is overbroad because claims were brought under California law but other states' laws are also being released. This objection is illogical. This is a nationwide settlement and consumers in any states are allowed to make claims, thus all state law claims are released. This was particularly appropriate here since this action consolidated cases filed in other jurisdictions alleging other state laws (although generally asserting claims under California law since SCEA's terms had a California choice of law provision). Lindberg further suggests that the release is overbroad as purporting to, for example, release personal injury or unrelated product defect claims. This is simply untrue. The release does not bar personal injury claims or defect claims having nothing to do with the underlying action concerning the PS3's ability to install Linux. Agreement at ¶ 35.

Lindberg also objects to the claims made nature of the case and argues that SCEA could somehow identify all Class members and pay them. While Sony has records of users who created a PlayStation Network ("PSN") account, a PSN account holder is not necessarily a Class member as they may have received a Fat PS3 as a gift (like Mr. Lindberg) or otherwise be ineligible to make a claim. As the Agreement details, the eligible claimants here are those who purchased a Fat PS3 for family, personal or household use before April 1, 2010 and used the Other OS feature, were aware of it, or believe they were harmed by its removal. Agreement at ¶¶ 12 and 68. SCEA does not have records of who those individuals would be and thus they must self-identify. For those making claims under Class B, all they have to do is provide a serial number (or temporary ID if one is unavailable) and sign the Claim Form. The claims process was designed to be as easy as possible while still preventing fraud.

### 3. Untimely *Pro Se* Objection

#### a. Objection by Mason Apostol

This Objection from Mr. Apostol is post-marked December 10, 2016, three days after the objection deadline. Dkt. No. 281, Exh. F. It is untimely and per the Court's order should not be considered. *See* Preliminary Approval Order ¶ 24. *See also Chavez v. PVH Corp.*, 2015 WL 9258144, at *3 (N.D. Cal. Dec. 18, 2015), appeal dismissed (Feb. 4, 2016) ("On this basis [being

untimely] alone, the Court may 'refuse[ ] to consider the objection[s]' that have been made."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, *3 (N.D. Cal. Dec. 7, 2011); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, *35 n.9 (C.D. Cal. June 10, 2005) ("This Court received an untimely objection . . . . Due to its lateness, . . . the Court does not consider [this objection] in its analysis."); *In re UnitedHealth Grp. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1158 n.6 (D. Minn. 2009) (same).

In this Objection, Mr. Apostol states that he only learned of the proposed settlement "about a month ago" (early November) and is unhappy that counsel did not do more to contact him during the case.[6] Dkt. No. 281, Exh. F. It is not clear why if he knew of the settlement a month before his objection (and had proof sufficient for a Class A claim), he did not file a claim as it appears he would have been eligible for the $55 claim.

He also objects: "I can only assume any money that isn't paid to the people who were harmed by SCA is going to the lawyers." *Id*. As shown above, the Notice Program was executed effectively and the relief to the Class is completely separate from any award of attorneys' fees and expenses approved by the Court.

### 4.    Untimely Objections by Serial Objectors

#### a.    Objection by Patrick Sweeney

Mr. Patrick Sweeney's *pro se* objection is post-marked December 8, 2016, the day after the objection deadline. Dkt. No. 281, Exh. G.  It is untimely and per the Court's order should not be considered. Preliminary Approval Order ¶ 24 (*see* cases noted above).

Mr. Sweeney's objection should also not be considered because he is a "serial objector," who has made numerous frivolous objections in the past two years. *See* Rivas Decl., Exhs. 3-5. To have his objection considered, Mr. Sweeney was required by the Court's Preliminary Approval Order to disclose this information, but failed to do so.  Preliminary Approval Order at ¶

---

[6] Apostol also asserts that he was "involved in this litigation previously."  None of the Co-Lead Counsel represented Apostol and a PACER search yielded no cases with his name. Mr. Apostol also only objects to the extent his claim did not go through.  GCG did not receive his claim. Rivas Decl., Exh. 10 at ¶ 5.

24. Moreover, Mr. Sweeney was recently indicted by federal prosecutors for allegedly participating in a fraudulent loan scheme. Rivas Decl., Exh. 6. Finally, Mr. Sweeney failed to provide a serial number or a claim form to prove class membership and standing. As such, his objection should be rejected on these grounds, as well.

In any event, Sweeney contends that the Court should digress from the normal class action procedures and adopt a new set of procedures that require, among other things, the submission to the Court of a report and accounting regarding the claims process. Dkt. No. 281, Exh. G. Sweeney does not articulate any reason why a special ad hoc procedure would be warranted in this case. Sweeney's remaining objections, regarding the requested award of attorneys' fees, are addressed below and are without merit.

## II.   THE OBJECTIONS TO THE MOTION FOR ATTORNEYS' FEES AND COSTS LACK MERIT

### A.   The Attorney Fee Request Does Not Undermine The Settlement's Fairness, Reasonableness Or Adequacy

Objector Navarrete and non-Class member Lindberg make the meritless arguments that the Settlement should not be finally approved because it bears signs of collusion, namely, what Objectors call a "kicker" and a "clear sailing agreement". Dkt. No. 281, Exhs. D-E. Objectors are wrong.

According to Lindberg, a "'kicker' is a provision that causes any reduction in attorneys' fees, costs, or incentive awards to revert to the defendant rather than the class." Dkt. No. 281, Exh. E at 11. Here, however, the request for attorneys' fees is completely separate from the benefits to the class and has no bearing on the amount the Class members recover. Therefore, the concerns raised by the Ninth Circuit in *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011) about "kickers" simply do not exist here. *See Shames v. Hertz Corp.,* 2012 U.S. Dist. LEXIS 158577, at *46 (S.D. Cal. 2012). In any event, the Court will assure itself that any attorneys' fee award here is reasonable.

As to SCEA's agreement not to contest attorneys' fees and costs at or below $2.25 million, the Ninth Circuit has only stated that such "free sailing" agreements *may indicate collusion*. *Shames*, 2012 U.S. Dist. LEXIS 158577 at *43-44.[7] When considering that the litigation has lasted almost seven years, and that the settlement was negotiated after extensive discovery and motion practice with the assistance of Judge Howard Weiner (Ret.) and after the material terms of the settlement were negotiated, there is absolutely no evidence of collusion. Moreover, weighed against individual Class members' potential damages, the cash benefits of $55 or $9 are meaningful. The requested attorneys' fees are also well below Class Counsel's lodestar and do not reflect an attempt to collude with SCEA to obtain compensation.

**B.      The Court is Required to Use the Lodestar Method Approved by California Courts to Award Fees**

Next, Objector Sweeney and non-Class member Lindberg argue that the fee award should be limited to a percentage of the amount actually paid to the Class, or based on the value of the claims submitted. As Plaintiffs explained in their motion for attorneys' fees, using a percentage of the recovery method in this case (where there is no fund), or otherwise reducing the requested fee award based on the value of the claims submitted, is inappropriate. *See Collado v. Toyota Motor Sales, U.S.A., Inc.,* 550 Fed. Appx. 368, 369 (9th Cir. 2013) ("The district court abused its discretion by computing fees using a percentage of recovery method rather than a lodestar method."); *see also Williams v. MGM Pathe Communications Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997) ("[T]he district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar").

---

[7] This case is also distinguishable from *Bluetooth*, which provided for the creation of a $100,000 *cy pres* payment but no individual monetary payments to class members.

As the court in *Jefferson v. Chase,* 2009 U.S. Dist. Lexis 64607, at *10 (N.D. Cal. 2009) explained in rejecting the defendant's challenge to a fee request of $600,000 because it was disproportionate to the $60,000 recovery to the Class members:

> Under California consumer protection law, the size of Plaintiffs' recovery as compared to the fees award sought does not determine whether a reduction should be taken from the lodestar; on the contrary the state courts are clear in explaining that consumer protection may require precisely the outcome that Defendant challenges of a disproportionate award.

*Id.*

The court in *Jefferson* made clear that "[d]isproportionality is not one of the factors that California courts have provided for determining whether to augment or diminish the fees award." *Id.* Rather, "the California courts have approved attorneys' fees where there is a significant disparity between the Plaintiffs' recovery and the lodestar fee award." *Id.; see also Hayward v. Ventura Volvo*, 108 Cal. App. 4th at 512 (2003) (affirming order granting fees that were significantly greater than the class recovery and stating that to "limit the fee award to an amount less than that reasonably incurred in prosecuting such a case, would impede the purpose underlying [the CLRA]"); *Vo v. Las Virgenes Mun. Water Dist.,* 79 Cal. App. 4th 440, 448 (2000) (holding that the trial court did not abuse its discretion in granting attorneys' fees 12.5 times the value of plaintiff's recovery); *Parkinson v. Hyundai*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) (awarding fees of $3,719,282.30 although class recovery was $1.2 million).

Because this is not a common fund case and fees are to be paid separately from class relief, any of the requested funds that the Court does not award will simply not be paid by SCEA and would never have gone to the Class. SCEA agreed to pay all valid claims that were made regardless of what it also paid in fees. Further, reducing the fee award under a "percentage of the fund" approach, will frustrate the purposes underlying California's

robust consumer protection statutes, one of them being to adequately compensate lawyers who represent consumers with small claims.

### C.  Class Members Had Sufficient Opportunity to Review the Application for Attorneys' Fees

Contrary to Lindberg's assertions, the application for attorneys' fees was timely filed in that Class members had an adequate opportunity to review the application and submit comments to the Court.  Plaintiffs filed the application for attorneys' fees and expenses on December 1, 2016, well before the deadline of December 20, 2016 set by the Court,[8] and thus Class members had sufficient time to review and provide comments in objection to the Settlement by the objections deadline of December 7, 2016.

The only clear requirement set by the Ninth Circuit is that class counsel file their application for attorneys' fees, costs, and incentive awards before the deadline for filing objections. *See Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.,* 618 F.3d 988 (9th Cir. 2010) ("We do not adopt a bright-line rule of a time period that would meet Rule 23(h)'s requirement that the class have an adequate opportunity to oppose class counsel's fee motion"). Here, Plaintiffs filed their fee application before the objection deadline and provided Class members with almost a week to review and comment on the requested fees. *See, e.g., Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472, at *79-82 (C.D. Cal. Nov. 23, 2011) (one week sufficient for objectors to formulate objections). Accordingly, this objection lacks merit.

---

[8] Plaintiffs recognize that the Court's Order Granting Motion for Preliminary Approval and Class Action Settlement and Certification of Settlement Class ("Preliminary Approval Order") also provided elsewhere that Plaintiffs' application for attorneys' fees was due 14 days (or November 23) before the deadline for objections, which was in conflict with the provision of the Order setting December 20, 2016 as the deadline. Compare Preliminary Approval Order ¶ 30 with ¶ 38. Plaintiffs apologize to the Court for not catching the inconsistency and alerting the Court sooner. Upon realizing the inconsistency, Plaintiffs promptly filed the application for attorneys' fees on December 1, 2016 and had the papers posted on the settlement website.

PLAINTIFFS' RESPONSE TO OBJECTIONS
CASE NO. 4:10-CV-01811-YGR

**D.** <u>There is No Justification for Delaying the Fee Award</u>

Sweeney, who filed an untimely objection, argues that some portion of any fee award should be withheld to "assure Class Counsel's continuing oversight and involvement in implementing the settlement". Dkt. No. 281, Exh. G at 2. This request is contrary to established authority. "Numerous courts have directed that the entire fee award be disbursed immediately upon entry of the award, or within a few days thereafter." *In re NasdaqMarket-Makers Antitrust Litig.,* 187 F.R.D. 465, 479 (S.D.N.Y. 1998) (citing cases). Class Counsel are professionals and would never abandon their fiduciary duties to the Class. There is simply no justification for delay of any fee award the Court approves and Sweeney's objection should be rejected.

**E.** <u>The Court Has Sufficient Information to Determine an Appropriate Award of Fees and Expenses</u>

Untimely Objector Sweeney incorrectly argues that no fee request or costs award is reasonable in the absence of "documentation, including detailed billing records (including hourly rates of the professionals, actual time entries, hours accumulated and reasonable costs), which can be evaluated by Class Members[.]" Class Counsel provided detailed declarations explaining the work performed in the case, hourly rates, and the costs expended. Dkt. Nos. 272-274. This is sufficient under California law, which governs fees here. *See Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 255 (2001) ("California case law permits fee awards in the absence of detailed time sheets . . . An experienced trial judge is in a position to assess the value of the professional services rendered in his or her court") (citations omitted). Moreover, the Court's Procedural Guidance for Class Action Settlements does not require class counsel to submit detailed time records but instead to provide detailed declarations.[9] Class Counsel, however, are prepared to submit detailed time records should the Court request them.

Sweeney also demands a final accounting and says that it is "unclear from the Notice who is paying for the cost of settlement administration – the Defendant or the settlement fund."

---

[9] Available at http://www.cand.uscourts.gov/ClassActionSettlementGuidance (last visited January 6, 2017).

PLAINTIFFS' RESPONSE TO OBJECTIONS
CASE NO. 4:10-CV-01811-YGR

Sweeney is unfamiliar with the Settlement's terms and appears to have cut and pasted an objection from another case; there is no "settlement fund" and Defendant is paying for the cost of notice and settlement administration, as set forth in the Settlement Agreement. Moreover, Defendant is paying all valid claims – regardless of the amount of any attorneys' fees and cost award and notice and settlement administration costs. Accordingly, Sweeney's objections should be rejected.

Finally, the requested award of attorneys' fees and expenses is clearly supported alone on the lodestars of Class Counsel, who have managed and prosecuted this matter since its inception. Courts generally award a single amount and allow Class Counsel to distribute fees amongst themselves and other firms that have assisted them throughout the litigation. In any event, should the Court request, upon entry of any award of attorneys' fees and expenses, Class Counsel can make recommendations as to how the attorneys' fees should be distributed. And there are no side fee agreements to disclose in this case – so Mr. Lindberg's objection on that regard is specious.

### F.     The Requested Incentive Awards are Reasonable

Plaintiffs have been involved in this case for almost seven years; they sat for lengthy depositions, produced their PS3s for inspection, participated in reviewing the pleadings, in discovery, and in settlement. A few objectors believe that the Plaintiffs should not receive incentive awards, but incentive awards (also known as "service awards") are typically awarded to named plaintiffs to compensate them "for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action." *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003). *See also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases"). Moreover, the amount requested for the Plaintiffs—$3,500 each—is below the "presumptively reasonable" amount of $5,000. *See, e.g., In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015) (citation omitted). Therefore, the proposed incentive awards are reasonable and consistent with what other Courts have awarded.

## III.   <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs respectfully request that the Court grant the motions for final approval and for attorneys' fees, expenses and incentive awards.

DATED: January 10, 2017                  Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

By: <u>*s/Rosemary M. Rivas*</u>
     Rosemary M. Rivas

One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Kathleen Fisher
kfisher@calvofisher.com
**CALVO FISHER & JACOB LLP**
555 Montgomery Street, Suite 1155
San Francisco, California 94111
Telephone: (415) 373-8370
Facsimile: (415) 374-8373

James Pizzirusso
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

*Class Counsel for Plaintiffs and the Class*

PLAINTIFFS' RESPONSE TO OBJECTIONS
CASE NO. 4:10-CV-01811-YGR