UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE SONY PS3 "OTHER OS" LITIGATION** | Case No. 10-cv-01811-YGR<br><br>**ORDER DENYING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITHOUT PREJUDICE**<br><br>**DKT. NO. 271, 280, 290** |

The unopposed Motion of Plaintiffs for Final Approval of Class Action Settlement and Certification of Settlement Class is **DENIED WITHOUT PREJUDICE**. (Dkt. No. 280) Plaintiffs' Motion for Award of Attorneys' Fees, Costs, and Incentive Awards (Dkt. No. 271) is also **DENIED WITHOUT PREJUDICE**.[1]

The Court has concerns, based upon how the notice and claims process preceded, the results it produced, and the disproportionality of the attorneys' fees versus the class recovery, that the settlement agreement is not fair, reasonable, and adequate. At the hearing, counsel argued that the actual class size was much smaller than the numbers of fat PS3s sold, such that the claims rate was effectively quite robust.

**II. APPLICABLE STANDARDS**

A court may approve a class action settlement binding the absent class members only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The decision to approve or reject a proposed settlement is committed to the "sound discretion" of the Court. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Although Rule 23(e) authorizes the court to approve or reject a settlement, it "does not authorize the court to require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.,* 475

---

[1] The Court has considered the objections filed and/or submitted to the class administrator by the seven objectors. As explained herein, the Court does not find that any of the objections were untimely. The Court **DENIES** the Administrative Motion for Leave to File a Reply, submitted by objector Eric Michael Lindberg. (Dkt. No. 290.) His counsel appeared at the final approval hearing and made his reply arguments on the record.

U.S. 717, 726 (1986); *Molski v. Gleich,* 318 F.3d 937, 946 (9th Cir. 2003) (district court cannot unilaterally modify provisions of a consent decree through its order approving the decree).

The court must pay "undiluted, even heightened, attention" to class certification and fairness requirements in a settlement approval context. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement …. [and settlement] agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The Ninth Circuit has identified a non-exhaustive list of factors to guide the final approval inquiry, including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). The "foremost" consideration in evaluating whether a fee award is reasonable is the benefit obtained for the class. *In re Bluetooth*, 654 F.3d at 942 (internal citations omitted). Further, the Court must look for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth,* 654 F.3d at 947 (internal citations omitted). A few such signs are: (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id.*[2]

---

[2] Plaintiffs contend that California law applies, and that California courts have approved attorneys' fees where there is a significant disparity between the class recovery and the lodestar fee award. The Court notes that the cases cited by Plaintiffs were ones with significantly less discrepancy between the fees and the class recovery. Nevertheless, the cases cited do not preclude the Court from considering disproportionality, as stated by the Ninth Circuit in *Bluetooth*.

## II.   DISCUSSION

### A.   The Claims Process As Set Forth In the Settlement Agreement

The parties sought to certify two classes:

> Consumer Class A: "All persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal and/or household use and who used the Other OS functionality after installation of a Linux operating system on their Fat PS3."
>
> Consumer Class B: "All persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal, and/or household use."

(Rivas Decl. ISO Motion for Preliminary Approval, Dkt. No. 259-1, Exh. A, [Settlement Agreement] at Exh. 1 [Consumer Claim Form].)  Under the terms of the settlement agreement, Consumer Class A members will receive $55 and Consumer Class B members will receive $9.

As to both Consumer Class A and Consumer Class B, the original claim form submitted as part of the preliminary approval process required that claimants provide proof of purchase of a Fat PS3 in the relevant time frame, which could be shown by providing either:

> (a) A sales receipt, credit card statement or other documentation that shows the place and date of purchase; **OR**
>
> (b) the serial number of the Fat PS3 you purchased (found on the back of the console) *and the PlayStation Network Sign-In ID that you used* with your Fat PS3 console between November 1, 2006 and April 1, 2010.

(*Id.*, emphasis supplied.)  Consumer Class B membership required one additional step: a statement under penalty of perjury that either:

> (a) [the claimant] knew about the Other OS functionality, relied upon the Other OS functionality in making your decision to purchase a Fat PS3, and intended at the time of your purchase to use the Other OS functionality; or
>
> (b) [the claimant] lost value and/or desired functionality or [was] otherwise injured as a consequence of Firmware Update 3.21, which was issued on April 1, 2010.

(*Id.*)  Consumer Class A members also were required to provide both proof of purchase of a Fat PS3 and proof of use of the Other OS functionality by providing **both**: (1) a statement under

3

1  penalty of perjury that the claimant installed a Linux operating system on their Fat PS3 and used
2  the Other OS functionality; and (2) proof of their use of the Other OS functionality in one of the
3  following ways:

> (a) proof that you purchased a version of Linux that was compatible with and was installed on your Fat PS3 before April 1, 2010;
>
> (b) proof that you downloaded a version of Linux that was compatible with and was installed on your Fat PS3 before April 1, 2010;
>
> (c) a screenshot (or picture) showing Linux operating on your Fat PS3;
>
> (d) a screenshot (or picture) showing that a portion of your PS3 hard drive is still formatted for the Other OS with Linux installed;
>
> (e) proof of communication between you and SCEA or a third party dated before December 31, 2010 that discusses your use of the Other OS or concerns with Update 3.21 due to your use, including but not limited to, copies of an email from or message board posting by you containing such discussion; or
>
> (f) any other documentary proof that you used the Other OS before April 1, 2010 that the Settlement Administrator reasonably determines to be valid.

(*Id.*)

Some 10 million Fat PS3s were sold in the United States in the relevant time frame, meaning that about 10 million consumers were in the group that could submit a claim form to establish membership in either Consumer Class A or Consumer Class B. According to the parties, the proof requirements imposed on both classes were based upon Sony's concerns that only a very limited subset of Fat PS3 purchasers was aware of the Other OS functionality and actually cared about it, as well as concerns that consumers would submit fraudulent claims.

**B.     How the Notice and Claims Process Actually Worked**

The Court entered its Order Granting Preliminary Approval of Class Action Settlement and Certification of Settlement Class the class action settlement on September 8, 2016. (Dkt. No. 270, "Preliminary Order.") On September 21, 2016, Sony provided the class administrator email addresses of all potential class members based upon data in its Playstation Network database. Though it is not specifically set forth, the information in that database seems to include, at least, the name, email address, and serial number of the users' Playstation unit, indicating whether the

4

unit is a Fat PS3. Though there were about 12 million email addresses provided to the administrator, ultimately some 4.5 million of those were determined to be invalid addresses. (Cirami Decl. ¶ 10.) A total of 6,956,093 initial email notices were delivered. (*Id.* ¶ 11.)

These initial notices went out between September 28, 2016, and October 20, 2016.[3] Claims were required to be submitted no later than December 7, 2016,[4] and objections were required to be submitted no later than December 22, 2016.[5] Midway through the claims period, a claimant objected that he had no way of proving that he had purchased a PS3 because he no longer had a proof of purchase or access to his serial number since his PS3 unit had been discarded. It is worth noting that the class period here encompassed purchases between November 1, 2006 and April 1, 2010, or six to ten years prior to the brief, six-week claims window in 2016. In response to these and similar concerns posted on the Internet, the parties apparently agreed to implement what they termed an alternative method for obtaining proof of purchase.

In their brief, plaintiffs indicate that the process required the claimant to provide a Playstation ID in order to obtain a "temporary ID" from the Settlement Administrator, which Sony would then use to check against its own records to verify purchase of a Fat PS3. The record is devoid of any declaration specifically stating how the process worked. The claims administrator's declaration says: "Upon direction from the parties, the Reminder Email Notice also included instructions for Class Members that could not locate their Fat PS3 Serial Number to contact GCG to obtain a temporary serial number." (Cirami Decl. ISO Final Approval, ¶ 12.) He further states that a "reminder email" was sent at some time between November 17 and 27, 2016, to the

---

[3] The "Notice Date" set by the Court's Preliminary Order was 45 days after September 8, 2016, *i.e.* October 23, 2016. (Preliminary Order ¶ 13.) Thus, the rolling email notices up to October 20, 2016, were within the required time frame.

[4] The Claims Deadline was 45 days after the Notice Date, *i.e.* 45 days after October 23, or December 7, 2016. (Preliminary Order ¶ 21.)

[5] While the Opt-Out Deadline was set at 45 days following the Notice Date (Preliminary Order at ¶ 22), the Objection Deadline was set at ***60 days*** from the Notice Date, *i.e.* 60 days after October 23, 2016 or ***December 22, 2016***. (Preliminary Order ¶ 24.) The parties seem to have mistakenly believed the Claims and Objection deadlines were the same, since the class notices and website contained that same incorrect date (December 7, 2016) for submitting objections. Consequently, the parties' assertion that certain objections herein were untimely is incorrect.

5

"6,954,037 potential Class Members who received [the first email notice] but who had not yet submitted a Claim Form" at the email addresses provided by Sony. (*Id.*) The reminder email said, in part, "[i]f you know your PSN Sign-In ID, but cannot obtain the serial number because you no longer have your Sony "Fat" PS3, please call Garden City Group at 1-855-720-1264 for assistance and press Option 1." (*Id.* at Exh. D.) Plaintiffs' counsel's declaration on this issue simply quotes the administrator's declaration that the reminder email included instructions to call Garden City Group to obtain a temporary serial number, and states "I was informed that the instructions for obtaining a temporary serial number were also uploaded to the Settlement Website on November 17, 2016 and remained on the website throughout the remainder of the claims period." (Rivas ISO Final Approval, ¶ 5.) The purpose of the temporary serial number remains obscure. Indeed, the process appears to be completely circular: notices were emailed to potential class members based on the information in Sony's Playstation Network ID database, but then class members were required to provide their Playstation Network ID to Sony to look up the associated Fat PS3 serial number in the database. This "remedial" process begs the question of why the claimants were required to provide receipts or serial numbers in the first place, *i.e.* if Sony already had that information in its database and could simply confirm the claim by using the claimant's Playstation Network ID. Given the relatively small amount Consumer Class B members would receive, imposing unnecessary requirements could only serve to deter claims without any apparent justification.[6]

As to Consumer Class A, some 589 claims, or approximately 25% of the Consumer Class A claims submitted, were rejected for insufficiency of proof as to whether they used the Other OS functionality. The claims administrator's declaration regarding invalid Consumer Class A claims (Dkt. No. 285) states that 31 claims were rejected because no documents were submitted to show proof of use, and the other 558 claims were rejected because of insufficient documentation. The invalid claim log, attached as an exhibit, briefly states the nature of the documents offered to

---

[6] Though the information does not appear in the record, at the hearing Sony's counsel indicated that 1.2% of the Consumer *Class B* claims (or approximately 107 claims), were rejected. (Hearing Transcript 35:18-20.) No reasons for rejecting the claims were offered.

support the Other OS use requirement. A significant number of the notes in the "reason for inadequacy" column of the log state that the claimant provided an affidavit or statement that they utilized the Other OS functionality. Another significant proportion included documentation about Yellow Dog Linux OS software, a free download that would not have any receipt associated.[7] It is notable that, despite changing the proof of purchase requirements for the PS3 unit, based on a complaint that the claimant no longer had the unit in his possession, the parties made no such change to the proof of use requirement. Obviously, if the claimant no longer had the unit in their possession, providing proof in the form of a screenshot of the hard drive partition or the Linux OS operating on the machine would also be impossible.

Most significantly, the claims rate here -- 11,300 claims out of approximately 10 million units sold – appears quite low. The parties contend that the effective claims rate is not as low as these numbers would indicate, because information available to them suggests that the number of purchasers who utilized or cared about the Other OS feature was small. Counsel have represented, without providing any evidence, that: (a) Sony was aware that approximately 40,000 individuals did not download Firmware Update 3.21; (b) Sony received 620 inquiries or complaints related to Firmware Update 3.21; and (c) a now-inaccessible an internet list-serve, previously maintained by an employee of third party Sony Electronics to communicate with "people who were in the Linux community" had members that numbered "in the thousands at most." (Prelim Hearing Tr. at 6:24-17:4.)

Sony has also argued that, despite Plaintiffs' allegations to the contrary, the advertising and promotion of the Other OS feature was not widespread, but was only known and promoted in certain niche websites for advanced users. However, no evidence of these limiting considerations is offered to justify estimating the class to be less than 1% of the total purchasers. Counsel's failure to provide more than argument about the basis for its estimate of the class size, and thus the claims rate, leaves the Court without a basis for any confidence that the class settlement fairly and

---

[7] Still other notations about why the claim was rejected are simply too cryptic to provide an adequate explanation ("document is a photo of a serial number," "image is of a bar code on the outside of a box"). It is unclear whether claimants were given an opportunity to correct or explain the images they uploaded.

7

adequately compensates the number of people who were using the Other OS functionality before Sony introduced Firmware Update 3.21 and were injured by the loss of that functionality.

### C. The Attorneys' Fees

Counsel have not provided more than the most summary information to substantiate their multi-million dollar lodestar. This lack of evidence is all the more concerning in light of the fact that the litigation here never progressed beyond a motion to dismiss and an appeal of that motion. While some discovery was apparently conducted, that discovery does not nearly approach the level that would have been required to take the case to class certification, or beyond. Without billing records or some more detailed explanation of the basis for the fee request, the Court is without sufficient information to determine whether the request is reasonable.

## III. CONCLUSION

For the reasons stated herein, the motions are **DENIED WITHOUT PREJUDICE**.

The Court sets a case management conference for **February 13, 2017**, at 2:00 p.m. to discuss next steps in this litigation. An updated case management statement shall be filed no later than **February 3, 2017**.

**IT IS SO ORDERED.**

This terminates Docket Nos. 271, 280, and 290.

Dated: January 31, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**