Kathleen V. Fisher (SBN 70838)
kfisher@calvofisher.com
**CALVO FISHER & JACOB LLP**
555 Montgomery Street, Suite 1155
San Francisco, California 94111
Telephone: (415) 373-8370
Facsimile:  (415) 374-8373

James Pizzirusso (pro hac vice)
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile:  (202) 540-7201

Gordon M. Fauth, Jr. (SBN 190280)
gfauth@finkelsteinthompson.com
Of Counsel
**FINKELSTEIN THOMPSON LLP**
100 Pine Street, Suite 1250
San Francisco, California 94111
Direct Telephone: (510) 238-9610
Telephone: (415) 398-8700
Facsimile:  (415) 398-8704

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SONY PS3 "OTHER OS" LITIGATION | Case No. 4:10-CV-01811-YGR |
| | **PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** |
| | Date:          October 10, 2017<br>Time:          2:00 p.m.<br>Judge:         Hon. Yvonne Gonzalez Rogers<br>Courtroom: 1, 4th Floor |

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

      **PLEASE TAKE NOTICE** that on October 10, 2017[1] at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 1, 4th Floor of the United States District Court, Oakland Courthouse, located at 1301 Clay Street, Oakland, California, 94612, before the Honorable Yvonne Gonzalez Rogers, Plaintiffs Derrick Alba, Jason Baker, James Girardi, Jonathan Huber, and Anthony Ventura, ("Plaintiffs") will, and hereby do, move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for an order:

      1.     Preliminarily approving the new Stipulation of Class Action Settlement and Release ("New Settlement" or "New Settlement Agreement") they have reached with Defendant in this matter on or around August 24, 2017;

      2.     Granting provisional certification of the Class, and appointing the foregoing named plaintiffs as the class representatives and Kathleen V. Fisher of Calvo Fisher & Jacob LLP; Gordon M. Fauth, Jr. of Finkelstein Thompson LLP; and James Pizzirusso of Hausfeld LLP, as Class Counsel;

      3.     Approving the Parties' proposed Notice Program, as set forth in the New Settlement, and directing notice of the proposed Settlement to the Class;

      4.     Appointing Garden City Group, LLC ("GCG") as Settlement Administrator to carry out the duties related to settlement administration, including but not limited to sending notice, as set forth in the New Settlement Agreement;

      5.     Approving the Parties' proposed Claim Form, and approving the procedures set forth in the New Settlement for Class Members to submit claims, exclude themselves from the Class, and object to the New Settlement;

      6.     Setting a schedule for the final approval process and for Plaintiffs' motion for service awards to the named plaintiffs and attorneys' fees and costs; and

      7.     Staying all non-settlement related proceedings in this case pending final approval of the

---

[1] The Parties initially agreed to a Preliminary Approval Hearing date of October 3, 2017. However, due to a scheduling conflict, the Parties now propose a Hearing date of October 10, 2017.

proposed New Settlement.

The grounds for this motion are that the proposed New Settlement is fair, adequate and reasonable, and that the other requested relief is well-grounded in law and fact, as set forth in the accompanying memorandum of points and authorities. This motion is based on the Declaration of Kathleen V. Fisher submitted herewith, and the exhibits thereto; the Declaration of Stephen Cirami submitted herewith, and the exhibits thereto; the attached supporting memorandum of points and authorities; the pleadings and papers on file in this action, and the oral argument of counsel, if any, presented at the hearing on this motion.

DATED: September 1, 2017          Respectfully submitted,

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

**CALVO FISHER & JACOB LLP**

By: */s/ Kathleen V. Fisher*
    Kathleen V. Fisher

555 Montgomery Street, Suite 1155
San Francisco, California 94111
Telephone: (415) 374-8370
Facsimile:  (415) 374-8373

**HAUSEFELD LLP**

By: */s/ James Pizzirusso*
    James Pizzirusso

1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile:  (202) 540-7201

**FINKELSTEIN THOMPSON LLP**

By: */s/ Gordon M. Fauth, Jr.*
    Gordon M. Fauth, Jr.

100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile:  (415) 398-8704

**PLANTIFF'S NOTICE OF MOTION & RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MPA**
CASE NO. 4:10-CV-01811-YGR

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................... 1

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND AND PROCEDURAL SUMMARY ...................................................... 4

    A.   The Consolidated Action ...................................................................................... 4

    B.   SCEA's Challenges to the Pleadings and Subsequent Appeal ............................ 4

    C.   The Parties Took Significant Discovery in the Case ........................................... 5

    D.   The Prior Settlement ............................................................................................ 6

    E.   Prior Claims Process ............................................................................................ 8

    F.   Court's Rejection of Prior Settlement .................................................................. 9

    G.   Mediation with Justice Lambden and New Settlement ...................................... 10

III.  THE NEW SETTLEMENT TERMS ............................................................................. 11

    A.   Monetary Payments ........................................................................................... 11

    B.   Dissemination of Notice to the Settlement Class .............................................. 12

    C.   Service Award and Attorneys' Fees and Costs .................................................. 13

    D.   Release Provisions ............................................................................................. 14

IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ................... 15

    A.   The Class Satisfies the Numerosity Requirement ............................................. 15

    B.   The Class Satisfies the Commonality Requirement .......................................... 15

    C.   Plaintiffs Meet the Typicality Requirement ...................................................... 16

    D.   Plaintiffs Satisfy the Adequacy Requirement ................................................... 16

    E.   The Class Satisfies the Criteria of Rule 23(b) .................................................. 17

        1.   Common Questions Predominate ........................................................... 17

        2.   A Class Action Is The Superior Method For The Fair And Efficient
             Adjudication Of This Controversy ......................................................... 18

    F.   Certification of a Nationwide Settlement Class is Appropriate......................... 19

V.    PRELIMINARY APPROVAL IS APPROPRIATE........................................................ 21

    A.   The Settlement Approval Process ...................................................................... 21

**PLANTIFF'S NOTICE OF MOTION & RENEWED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MPA**
CASE NO. 4:10-CV-01811-YGR

B.   The New Settlement is the Product of Well-Informed, Vigorous and Thorough Arm's-Length Negotiations .................................................. 22

C.   The New Settlement Bears No Obvious Deficiencies and There is No Preferential Treatment .................................................. 22

D.   The New Settlement Falls Within the Range of Possible Approval .................................... 23

VI.    NOTICE .................................................................................................................. 24

VII.   CONCLUSION .......................................................................................................... 25

**PLANTIFF'S NOTICE OF MOTION & RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MPA**
CASE NO. 4:10-CV-01811-YGR

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997).................................................................................................. 18, 19

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
    133 S. Ct. 1184 (2013)................................................................................................ 17

*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001) ...................................................................................... 16

*Arnold v. FitFlop USA, LLC,*
    No. 11-CV-0973 W (KSC), 2014 WL 1670133 (S.D. Cal. Apr. 28, 2014) ...................................... 20

*Burden v. SelectQuote Ins. Servs.,*
    No. C 10-05966 SBA, 2013 WL 1190634 (N.D. Cal. Mar. 21, 2013)........................................ 21, 22

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974).................................................................................................. 24

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    131 S. Ct. 2179 (2011)................................................................................................ 18

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1988) ...............................................................................*passim*

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ...................................................................................... 16

*In re HP Laser Printer Litig.,*
    No. SACV 07-0667 AG (RNBx), 2011 WL 3861703 (C.D. Cal. Aug. 31, 2011) ............................ 24

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
    962 F. Supp. 450 (D.N.J. 1997) .................................................................................. 19

*In re Sony PS3 "Other OS" Litig. v. Sony Computer Entm't Am., Inc.,*
    551 Fed. Appx. 916 (9th Cir. 2014)............................................................................... 5

*In re Tableware Antitrust Litig.,*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007)........................................................................ 21, 22

*In re Tobacco Cases II,*
    240 Cal. App. 4th 779 (2015) ..................................................................................... 24

*In re Zurn Pex Plumbing Prods. Liab. Litig.,*
    No. 08-MDL-1958 ADM/AJB, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) ................................ 22

-iii-

**PLAINTIFF'S NOTICE OF MOTION & RENEWED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MPA**
CASE NO. 4:10-CV-01811-YGR

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ................................................................. 19

*Miller v. Ghirardelli Chocolate Co.*,
    No. 12-cv-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015) ................... 20

*Moshogiannis v. Sec. Consultants Group, Inc.*,
    No. 5:10-cv-05971 EJD, 2012 WL 423860 (N.D. Cal. Feb. 8, 2012) ................ 18

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    238 F.R.D. 482 (C.D. Cal. 2006) ............................................................... 19

*Parkinson v. Hyundai Motor Am.*,
    258 F.R.D. 580 (C.D. Cal. 2008) ............................................................... 20

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................... 19, 20, 24

*Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.)*,
    516 F.3d 1095 (9th Cir. 2008) ................................................................. 21

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................... 23

*Sullivan v. Oracle Corp.*,
    662 F.3d 1265 (9th Cir. 2011) ................................................................. 20

*Thomas v. Baca*,
    231 F.R.D. 397 (C.D. Cal. 2005) ............................................................... 18

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ................................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ........................................................................... 16

*Westways World Travel, Inc. v. AMR Corp.*,
    218 F.R.D. 223 (C.D. Cal. 2003) ............................................................... 19

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ................................................................... 18

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ................................................................. 18

**PLAINTIFF'S NOTICE OF MOTION & RENEWED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MPA**
CASE NO. 4:10-CV-01811-YGR

**Other Authorities**

CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS § 11.25 (4th ed. 2002) ...................................... 21, 22

CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ......................................... 21

MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004) ............................................................ 21

MANUAL FOR COMPLEX LITIGATION § 21.311 (4th ed. 2004) .......................................................... 24

MANUAL FOR COMPLEX LITIGATION § 21.312 (4th ed. 2004) ...................................................... 24, 25

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004) .......................................................... 21

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. 15

Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 15

Fed. R. Civ. P. 23(a)(2) ...................................................................................................... 15

Fed. R. Civ. P. 23(a)(3) .................................................................................................. 16, 17

Fed. R. Civ. P. 23(b)(3) ........................................................................................ 17, 18, 19, 20

Fed. R. Civ. P. 23(e) ........................................................................................................... 1

Fed. R. Civ. P. 30(b)(6) ........................................................................................................ 6

-v-

**PLAINTIFF'S NOTICE OF MOTION & RENEWED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MPA**
CASE NO. 4:10-CV-01811-YGR

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Derrick Alba, Jason Baker, James Girardi, Jonathan Huber, and Anthony Ventura, hereby submit this renewed motion for preliminary approval of the new Stipulation of Class Action Settlement and Release ("New Settlement" or "Agreement")[2] they reached on or around August 24, 2017 with Defendant Sony Computer Entertainment America LLC, currently known as Sony Interactive Entertainment America LLC (referred to herein as "Defendant" or "SCEA").

The action arose out of SCEA's marketing and sale of the Sony PlayStation®3 ("PS3"). Plaintiffs allege that SCEA marketed the PS3 as having the ability to run an operating system in addition to the native game operating system ("Other OS"), and that SCEA subsequently removed the "Other OS" functionality via firmware update 3.21, harming PS3 purchasers. Throughout the pendency of the case, Defendant has denied liability. Defendant has argued that it had the right to remove the Other OS pursuant to its terms of service and other purported agreements, and that the Other OS was not a functionality that was material to the vast majority of purchasers.

After nearly seven years of litigation, a denial of final approval of the initial settlement, a third mediation, and many additional months of negotiations, the parties have entered into the New Settlement Agreement. The New Settlement confers substantially more benefits on the Class compared to the prior settlement ("Prior Settlement") that the Court rejected in its January 31, 2017 Order Denying Plaintiffs' Motion for Final Approval of Class Action Settlement Without Prejudice. (Dkt. No. 300 ("Order Denying Final Approval").) The New Settlement, which was reached with the help of the Honorable James Lambden (Ret.), also addresses each of the Court's concerns raised in the Order Denying Final Approval.

One of the Court's chief concerns was that the claims rate was "quite low": 11,300 claims out of approximately 10 million PS3 units sold. (*Id.* at 7:10-11.) The low claims rate was not the result of any

---

[2] Unless otherwise stated, capitalized terms have the same meaning as in the Agreement, attached as Exhibit B to the accompanying Declaration of Kathleen V. Fisher ("Fisher Decl.").

flaw in the notice procedure, which was very successful and reached millions of PS3 users. While the parties believed that the claims rate reflected the fact that the number of purchasers who actually utilized or cared about the Other OS feature was relatively small, the Court concluded that there was not enough evidence in the record to support this contention. (*Id*. 7:12-13.) Instead, the Court determined that the claims process was just too burdensome, given the forms of proof that claimants were required to submit and "the relatively small amount" certain claimants would receive for a valid claim ($9 or $55). (*Id*. at 6:17-19.)

To address these concerns and improve the claims rate, the claims process in the New Settlement dispenses with any requirement for extrinsic proof. To submit a valid claim, claimants now need only (1) sign the claim form attesting that they used or knew about the Other OS functionality, or believed that they lost value or functionality or were otherwise injured as a result of the firmware update and (2) provide identifying information (their PS3 serial number, PlayStation Network Sign-In ID (email address), *or* their PlayStation Network Online ID). The class definition has been refined to conform to these criteria and it now more accurately reflects the parties to whom compensation is potentially due.  As a result, the class size here is much smaller than those who purchased a PS3 unit, as well.

The New Settlement also substantially increases the potential recovery for each individual claimant and the Class as a whole. Under the Prior Settlement, SCEA agreed to pay $55.00 to each Class member who submitted a valid claim showing proof that he or she used the Other OS functionality (Class A), and $9.00 to all other Class Members who submitted a valid claim attesting that they lost value and/or desired functionality or were otherwise injured as a consequence of the firmware update (Class B). If all claims had been paid under the Prior Settlement, SCEA would have paid approximately $128,975 to Class A claimants and $80,730 to Class B claimants.

Under the New Settlement, SCEA has agreed to create a Settlement Fund worth $3.75 million. Assuming the Court grants fees and expenses of $1.25 million and notice costs of approximately $300,000 - $400,000 (depending on the number of claims submitted), then more than $2 million will be left to claimants - a nearly ten-fold increase in the amount of the payout to the Class. The New Settlement also does not divide the claims of Class Members into different groups or types of claims.

Rather, each claimant is entitled to a pro rata share not to exceed $65 per claimant (subject to a pro rata reduction if the total claims exceeds that amount or, if less than that amount is claimed, the parties may move the Court for an order distributing the remainder of the funds). While the exact dollar amount that Class Members will receive will depend on the number of valid claims that are filed, as well as the amount of certain other payments that are designated to come from the Settlement Fund, this will be a significant improvement over the Prior Settlement.

In addition to paying claims, the Settlement Fund will be used to pay the costs of administering the settlement and paying attorney's fees. While the Court previously expressed concern regarding "the disproportionality of the attorneys' fees versus the class recovery," (Order Denying Final Award at 1:13-15, 8), the attorneys now are only seeking up to one-third of the Settlement Fund ($1.25 million) – approximately one-half of what they sought previously. This will mean that the attorneys will receive, at most, pennies on the dollar, given that their collective lodestar and expenses well exceeds $5 million. The benefit to the Class will be substantially greater than any payment to the attorneys.

To ensure a significant claims rate, the parties propose to implement a notice procedure that is similar to the successful procedure used in the Prior Settlement (with email and paid media), but will also include additional internet advertising targeted to reach the greatest number of potential Class Members. Claimants who previously submitted claims will *not* be required to submit new claim forms. Rather, they will automatically be deemed claimants under the New Settlement. This includes claimants whose claims were previously rejected. One of the Court's concerns with the Prior Settlement was that claims were rejected at a high rate. (*See id*. 6:20-22.) This was due to claimants' insufficient extrinsic proof. Since such extrinsic proof is no longer required, this will no longer pose an obstacle to payment of such claims and will increase the claims rate.

In sum, by creating a fund, eliminating the proof requirements, and raising the potential payout per claim, the parties are optimistic that a substantial number of new claims will be submitted. By re-structuring the settlement based on the Court's concerns, the parties have also guaranteed that the benefit to the Class as a whole under the New Settlement will be many times higher than under the Prior Settlement. The Parties believe the terms of the New Settlement are fair, reasonable and adequate, and respectfully request that the Court grant this motion.

## II. BACKGROUND AND PROCEDURAL SUMMARY

### A. The Consolidated Action

Various plaintiffs filed several class action cases against SCEA arising out of the PS3's "Other OS" functionality beginning on April 27, 2010.[3] The Honorable Richard Seeborg consolidated the cases as *In re Sony PS3 "Other OS" Litigation* and appointed the firms of Finkelstein Thompson LLP, Hausfeld LLP and Calvo & Clark LLP (now Calvo Fisher & Jacob LLP) as Interim Co-Lead Counsel. (Dkt. No. 65.)

Plaintiffs filed the Consolidated Class Action Complaint ("Consolidated Complaint") on July 30, 2010, alleging causes of action for statutory violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"); the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"); the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*; and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (*See* Dkt. No. 76.) Plaintiffs also alleged common law claims for breach of express warranty; breach of the implied warranty of merchantability; breach of the implied warranty of fitness for a particular purpose; conversion and unjust enrichment. *Id.* Plaintiffs sought damages, restitution and injunctive relief. *Id.*

### B. SCEA's Challenges to the Pleadings and Subsequent Appeal

On September 10, 2010, SCEA moved to dismiss the Consolidated Complaint on several grounds, and moved to strike the class allegations. (Dkt. Nos. 96-97.) Plaintiffs filed oppositions to SCEA's motions on October 12, 2010, and SCEA filed its reply briefs on October 21, 2010. (Dkt. Nos. 103-106.) Judge Seeborg heard the motions on November 4, 2010, and on February 17, 2011, entered an order granting in part, and denying in part, the motion to dismiss (with leave to amend), and denied the motion to strike. (Dkt. Nos. 108, 161.) According to Judge Seeborg, the Consolidated Complaint was deficient in the following respects: Plaintiffs had failed to allege that SCEA made express representations as to the *continued* availability of the "Other OS" functionality; Plaintiffs did not

---

[3] On April 27, 2010, the case titled *Ventura v. Sony Computer Entertainment America Inc.* ("*Ventura*"), 3:10-cv-01811-RS was filed in the United States District Court for the Northern District of California. Several additional plaintiffs filed cases in the weeks thereafter.

identify the particular representations on which they relied; Plaintiffs did not allege how SCEA had been unjustly enriched; and Plaintiffs did not show that SCEA had assumed control or ownership of any of Plaintiffs' property, among other things. (Dkt. No. 161.)

Plaintiffs filed the First Amended Consolidated Class Action Complaint on March 9, 2011. (Dkt. No. 165.) On April 28, 2011, SCEA again moved to dismiss. (Dkt. No. 168.) Judge Seeborg heard SCEA's motion to dismiss on July 21, 2011. (Dkt. No. 179.) On December 8, 2011, Judge Seeborg entered an order dismissing the action without leave to amend. (Dkt. No. 185.)

Plaintiffs filed a Notice of Appeal on December 22, 2011. (Ninth Circuit Case 11-18066, Dkt No. 193.) The Ninth Circuit heard oral argument on October 11, 2013. (Dkt. No. 32.) On January 6, 2014, the Ninth Circuit affirmed in part, and reversed in part, the dismissal of Plaintiffs' case. *See In re Sony PS3 "Other OS" Litig. v. Sony Computer Entm't Am., Inc.*, 551 Fed. Appx. 916 (9th Cir. 2014). The Ninth Circuit held that the district court erred in dismissing the UCL claims for violations of the fraud and unfair prongs, the FAL claim, and the CLRA claims for violations of Sections 1770(a)(5) and (a)(7). The Ninth Circuit affirmed the district court's dismissal of the remaining claims and remanded the case back to the district court.

Plaintiffs filed the Second Consolidated Class Action Complaint on May 29, 2014, which SCEA answered on June 27, 2014. (Dkt. Nos. 213, 219.)

### C.    The Parties Took Significant Discovery in the Case

The Parties engaged in extensive discovery both before and after the appeal. (*See* Dkt. No. 259-1 ¶ 9.) While SCEA's motions to dismiss and strike were pending, each party served written discovery. (*Id.*) Having reached an impasse on several discovery issues, such as whether Plaintiffs had to produce their PS3s and personal computers for SCEA's inspection, Plaintiffs moved for a protective order and filed a motion to compel other discovery on December 15, 2010. (Dkt. No. 111-112.) SCEA opposed Plaintiffs' motions to compel and for a protective order on January 18, 2011, and Plaintiffs filed reply briefs on January 26, 2011. (Dkt. Nos. 124-125, 142.) SCEA filed a motion to compel discovery on December 15, 2010. (Dkt. Nos. 116, 131, 139.)

After hearing oral argument, (then Magistrate) Judge Edward M. Chen issued an order granting in part and denying in part Plaintiffs' motion to compel and motion for a protective order. (Dkt.

No. 152.) Judge Chen ordered the Plaintiffs to produce their PS3s for imaging, but not their personal computers as requested by SCEA, and that Plaintiffs could direct focused discovery at SCEA's Japanese parent corporation. (*Id.*) Further discovery disputes arose, however, surrounding the details of the PS3 imaging process, the depositions of the named plaintiffs, and the scope of discovery to be served on SCEA's parent company. Judge Chen issued an order regarding the disputes on April 11, 2011. (Dkt. No. 172.) SCEA also deposed two of the named plaintiffs before the case was dismissed with prejudice by Judge Seeborg. (Dkt. No. 259-1 ¶ 10.)

After the appeal was resolved in 2014, the Parties restarted discovery. (*Id.* ¶ 11.) SCEA deposed the remaining three named plaintiffs and inspected the PS3s of all of the named plaintiffs. (*Id.*) Plaintiffs also responded to interrogatories and document requests propounded by SCEA. (*Id.*) Plaintiffs deposed six SCEA witnesses, three of which were designated to testify on behalf of SCEA pursuant to Fed. R. Civ. P. 30(b)(6). (*Id.*) Plaintiffs also reviewed approximately tens of thousands of pages of documents produced by SCEA, as well as SCEA's responses to their interrogatories. (*Id.*; Dkt. No. 272, Declaration of Rosemary M. Rivas in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, and Incentive Award ("Rivas Decl.") ¶ 31.)

### D. The Prior Settlement

While SCEA's second motion to dismiss was pending in 2011, the Parties participated in an initial private mediation before the Honorable James L. Warren (Ret.) of JAMS on July 7, 2011. (Dkt. No. 259-1 ¶ 13; Rivas Decl. ¶ 21.) The Parties were unable to reach a settlement that day and, once the case was dismissed, the Parties ended settlement discussions. (Dkt. No. 259-1 ¶ 13.)

After the appeal and additional discovery was completed, the Parties renewed their settlement efforts. (*Id.* ¶ 14.) The Parties participated in a second mediation before the Honorable Howard Weiner (Ret.) on August 20, 2015. (*Id.*) In preparation for the mediation, the Parties again prepared detailed mediation briefs that took into account the Ninth Circuit's decision from 2014 as well as key evidence that had been discovered in the case in support of the Parties' respective positions. (*Id.*) While the parties were unable to reach an agreement on all terms that day, they did make substantial progress and continued to engage in discussions. (*Id.*)

Over the next five months, the parties had numerous teleconferences until they finally signed a Memorandum of Understanding ("MOU") in January 2016. (*Id.* ¶ 15.) Once the MOU was fully executed, the Parties proceeded to draft the Prior Agreement and ancillary documents which also proved to be difficult as the details of many key terms still needed to be negotiated. (*Id*.) Indeed, it took nearly five months for the Parties to negotiate and execute the Prior Settlement Agreement. (*Id.* ¶ 36.)

Under the Prior Settlement, SCEA agreed to pay $55 to each Class Member who utilized the Other OS functionality (Consumer Class A) and submitted a valid claim. (Rivas Decl., Ex. B [Prior Settlement] at ¶ 68(A)(1).) Consumer Class A claimants were required to attest under oath to their installation of Linux and submit proof of their use of the Other OS functionality. (*Id.* at ¶ 68(A)(1)-(2).) Under the Prior Settlement, claimants were also required to provide proof of their purchase or their PS3 unit's serial number and PlayStation Network Sign-in ID. (*Id*. at ¶ 68(A)(1)(b).) The Prior Settlement set forth a list of acceptable proofs of use. (*See id.* at ¶ 68(A)(1)-(2); *see also* Dkt. No. 270 ("Preliminary Approval Order") ¶¶ 16, 18; Rivas Decl. ¶¶ 40-42.) SCEA also agreed to pay $9.00 to each Class Member who, at the time of purchase, knew about the Other OS, relied upon the Other OS functionality, and intended to use the Other OS functionality (Consumer Class B) and submitted a valid claim. (*See* Rivas Decl., Ex. B [Prior Settlement] at ¶ 68(B)(1)(a)(ii)(a).) Alternatively, a member of Consumer Class B could attest that he or she lost value and/or desired functionality or was otherwise injured as a consequence of Firmware Update 3.21. (*Id.* at ¶ 68(B)(1)(a)(ii)(b).) To present a valid claim, Consumer Class B claimants were also required to attest to their purchases and provide proof of purchase or a PS3 serial number and PlayStation Network Sign-in ID. (*Id.* at ¶ 68(B)(1)(b)(i)-(ii).)

After reaching the Prior Settlement, Plaintiffs filed a Motion for Preliminary Approval, which this Court heard on July 19, 2016. (Dkt. Nos. 259, 263.) At the hearing, the Court directed Plaintiffs to supplement the record with certain exemplars of the forms of proof that could be used to satisfy the claims process. (Dkt. No. 268.)

On September 8, 2016, the Court issued its Order preliminarily approving the Prior Settlement and ordering notice to the Class. (*See* Preliminary Approval Order.) The Court provisionally certified a Settlement Class and found that the requirements of Rule 23(a) and Rule 23(b)(3) were provisionally

satisfied for that purpose. (*Id*. ¶¶ 3-5.) The Court approved the Notice Program, finding that it was "the best notice practicable under the circumstances." (*Id.* ¶ 10.)

In the order preliminarily approving the Prior Settlement, the Court appointed Class Counsel as James J. Pizzirusso of Hausfeld LLP, Rosemary M. Rivas[4] of Finkelstein Thompson LLP, and Kathleen V. Fisher of Calvo Fisher & Jacob LLP. (*Id.* ¶ 7.) The Court appointed Plaintiffs Anthony Ventura, Jason Baker, James Girardi, Derek Alba, and Jonathan Huber as class representatives for the provisionally approved Class. (*Id.* ¶ 8.) The parties thereafter moved forward with the claims process.

### E. Prior Claims Process

The prior notice program was successful, with the previous Settlement Administrator, Garden City Group, LLC ("GCG"), determining that the measured portion of the Notice Program reached approximately 86% of the target audience of people 18 years of age or older who own a PlayStation or web-enabled console.[5] (Dkt. No. 277 [Cirami Decl.] ¶ 7.)

During the claims process it became clear that some Class Members had no proof of purchase and no longer had their PS3 units from which to obtain serial numbers. (Rivas Decl. ¶ 42.) The parties created a procedure whereby Class Members who no longer had their PS3 units could obtain a temporary ID number from the claims administrator which SCEA would then use to cross check against its own records to verify that Class Members had purchased a PS3. (*Id*.; Dkt. No. 277 ¶ 12, Ex. D.) This procedure was implemented during the claims process and communicated to the Class via the second round of email notice and the Settlement Website.

Class Members were required to submit a completed Claim Form to GCG by December 7, 2016. GCG received 2,346 timely Consumer Class A Claim Forms and 8,970 timely Consumer Class B Claim Forms. (Dkt No. 277 ¶ 31.) With respect to Consumer Class A claims, some 589 of 2,346 claims (or approximately 25% of Consumer Class A) were rejected for insufficient proof as to whether they used the Other OS functionality. (Dkt. No. 285 ¶ 4; Order Denying Final Approval at 6:20-7:9.) As to

---

[4] Ms. Rivas has since withdrawn as counsel since she left her firm and Gordon M. Fauth, Jr. has now appeared in her place.

[5] The Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide states that it is reasonable to reach between 70% and 95% of class members. (Dkt. No. 259-1, Ex. B at ¶¶ 9-19.)

Consumer Class B, approximately 107 of 8,970 claims were rejected (1.2%). (Order Denying Final Approval at fn. 6.) At the time that the Prior Settlement was rejected, the parties were preparing to send letters to those with rejected claims to allow consumers an opportunity to cure, but those efforts were stopped when the Court denied final approval.

The Prior Settlement resulted in a low number of opt-outs: the settlement administrator received only 27 requests to be excluded from the Class. (Dkt. No. 277 ¶ 33.) GCG also received 7 objections to the Prior Settlement, of which three were filed by "serial objectors" asserting boilerplate objections that are usually summarily rejected by courts. (*Id.* ¶ 32, Ex. J.)

### F. Court's Rejection of Prior Settlement

On January 31, 2017, after the process was completed and a fairness hearing held, the Court issued an Order Denying Plaintiffs' Motion for Final Approval of Class Action Settlement Without Prejudice. (Dkt. No. 300.) The Order identified numerous concerns with "how the notice and claims process proceeded, the results it produced, and the disproportionality of the attorneys' fees versus the class recovery." (*Id.* at 1:13-14.) More specifically, these concerns included the following:

(i) "[m]ost significantly" to the Court, the claims rate appeared "quite low": 11,300 claims out of approximately 10 million PS3 units sold (*Id.* at 7:10-11);

(ii) while the parties asserted that the effective claims rate was not as low as it appeared "because information available to them suggests that the number of purchasers who utilized or cared about the Other OS feature was small," the Court concluded that there was not sufficient evidence in the record to support this contention (*Id.* at 7:12-13);

(iii) the claims process was too burdensome, given the forms of proof that claimants were required to submit with their claims and "the relatively small amount" certain claimants would receive for a valid claim (*Id.* at 6:17-19);

(iv) there was a relatively high number of claims that were rejected by the claims administrator for insufficient proof (approximately 25% of the Consumer Class A claims) (*Id.* at 6:20-22); and

(v) while the Order did not elaborate on "the disproportionality of the attorneys' fees versus the class recovery," the Court did express concerns about the inadequacy of the evidence

supporting Plaintiffs' counsels' fee petition. (*Id*. at 1:13-15, 8.)

In addressing the procedure whereby Class Members who no longer had their PS3 units could obtain a temporary ID number from the Settlement Administrator, the Court stated:

> This "remedial" process begs the question of why the claimants were required to provide receipts or serial numbers in the first place, *i.e.* if Sony already had that information in its database and could simply confirm the claim by using the claimant's Playstation Network ID. Given the relatively small amount Consumer Class B members would receive, imposing unnecessary requirements could only serve to deter claims without any apparent justification.

(*Id*. at 6:14-19.) The Court's concerns regarding the proof of purchase requirement (required for both Class A and Class B claimants) mirrored its concerns regarding the proof of use requirements for Consumer Class A in general:

> It is notable that, despite changing the proof of purchase requirements for the PS3 unit, based on a complaint that the claimant no longer had the unit in his possession, the parties made no such change to the proof of use requirement. Obviously, if the claimant no longer had the unit in their possession, providing proof in the form of a screenshot of the hard drive partition or the Linux OS operating on the machine would also be impossible.

(*Id*. at 7:4-9.)

After issuing the Order Denying Final Approval, the Court held a case management conference on February 13, 2017. At the conference, the Court indicated that it was not willing to reconsider approval of the Prior Settlement. (Further Case Management Hr'g Tr. at 10:25-11:4, 16:16-17, Feb. 13, 2017.) Following the status conference, counsel for the parties agreed that any new settlement needed to be entirely re-structured to address the Court's concerns and the parties discussed attending a new mediation.

### G.     Mediation with Justice Lambden and New Settlement

On April 6, 2017, the parties attended a day-long mediation session with the Hon. James Lambden, Ret., of ADR Services, Inc. (*See* Declaration of Kathleen V. Fisher ("Fisher Decl."), filed herewith, ¶ 2.) Although the parties did not reach an agreement that day, they did make substantial progress and thereafter continued to negotiate with Justice Lambden's assistance. (*Id*.) The parties eventually reached an agreement in principle, although certain outstanding issues required further negotiation and assistance from Justice Lambden. (*Id*.) One lingering dispute related to what cap to set

on claim amounts. (*Id.* ¶ 3.) Justice Lambden made a mediator's proposal that a cap should be set at $65 and both parties accepted his decision. (*Id.* ¶ 3, Ex. A.) The parties entered into the New Settlement on August 24, 2017. (*Id.* ¶ 4, Ex. B.)

## III.   THE NEW SETTLEMENT TERMS

### A.   Monetary Payments

Under the terms of the New Settlement, the Class[6] is defined as: all persons in the United States who purchased a Fat PS3 model[7] in the United States between November 1, 2006, and April 1, 2010, from an authorized retailer for family, personal, and/or household use and who: "(1) used the Other OS functionality; (2) knew about the Other OS functionality; or (3) contends or believes that he or she lost value or desired functionality or was otherwise injured as a consequence of Firmware Update 3.21 and/or the disablement of Other OS functionality in the Fat PS3." (Agreement ¶ 12.)

SCEA will pay to the Settlement Administrator the sum of $3,750,000 to create the Settlement Fund. (*Id.* ¶ 71.) The Settlement Fund will be used to pay, in the following order: (1) Class Notice and Administration Costs; (2) Attorneys' Fees and Costs to Class Counsel; (3) Service Awards to the Plaintiffs; and (4) Valid Claims submitted by Settlement Class Members. (*Id.*)

To receive compensation from the Settlement Fund, each Settlement Class Member must submit a timely and complete Claim Form, either by mail or electronically. (*Id.* ¶ 72.) (The Claim Form is attached to the Agreement as Exhibit 1.) To submit a valid claim, claimants must attest, under penalty of perjury, that they: "(1) used the Other OS functionality; (2) knew about the Other OS functionality; or (3) contend or believe that [they] lost value or desired functionality or were otherwise injured as a consequence of Firmware Update 3.21 and/or the disablement of Other OS functionality in the Fat PS3." (Agreement, Ex. 1.) Claimants must also provide at least one of the following: (1) their

---

[6] Excluded from the Class are: (a) any persons who are employees, directors, officers, and agents of [Defendant] or its subsidiaries and affiliated companies; (b) any persons who timely and properly exclude themselves from the Settlement; and (c) the Court, the Court's immediate family, and Court staff. (Agreement ¶ 12.)

[7] A "Fat PS3" means the Sony PlayStation®3 computer entertainment console that was manufactured between approximately November 1, 2006 and September 2009 that included the Other OS functionality. (Agreement ¶ 19.)

PS3 serial number; (2) the PlayStation Network Sign-In ID (email address) they used to create a PlayStation account associated with their Fat PS3; or (3) the PlayStation Network Online ID (the handle they chose for communicating and game play on the PlayStation Network) associated with the PlayStation account they used with their Fat PS3. (*Id.*)

Claimants who previously submitted claims will *not* be required to submit new claims forms. (*Id.* ¶ 72.) Rather, they will automatically be deemed valid claimants under the new Settlement. (*Id.*)

Settlement benefits will be distributed to Valid Claimants on a pro rata basis up to and including the sum of $65 per valid Claim. (*Id.*) To the extent there is any money remaining in the Settlement Fund after payment of the Settlement Administrator's costs, and after accounting for any funds designated by the Court to pay the requested attorney's fees and costs for Class Counsel and the requested service awards to the named Plaintiffs, the parties will meet and confer as to how the leftover funds should be distributed and either party may move the Court for an order determining the most appropriate disposition of the leftover funds. (*Id.* ¶ 73.) The question of what do with the leftover funds, if any, will be resolved before any payment is mailed to the Class, so that under all circumstances only a single payment would be mailed to the Class. (*Id.*)

## B. Dissemination of Notice to the Settlement Class

The New Settlement, as before, provides for robust notice and is designed to reach as many class members as possible. The Notice Program, as before, comports with due process and is the best notice practicable under the circumstances.

The proposed Notice Program is set forth in detail in the Declaration of Stephen Cirami ("Cirami Decl.").[8] Mr. Cirami is the Executive Vice President and Chief Operating Office of Garden City Group, LLC ("GCG"), the Parties' proposed settlement administrator.[9] The Notice Program calls for direct notice via email (followed by subsequent rounds of emailed notice). (Agreement ¶¶ 79(A)(i), (ii), 80; Cirami Decl. ¶¶ 13, 15-16.) SCEA previously provided GCG with an electronic database that is reasonably calculated to include the email addresses of all Class Members known by SCEA through its

---

[8] Mr. Cirami's declaration is attached as Exhibit C to the Fisher Declaration.

[9] While the Agreement is silent regarding who shall serve as settlement administrator, the Parties have subsequently agreed on GCG as the proposed settlement administrator.

PlayStation Network Database. (Agreement ¶ 79(A)(i).) If the Court issues the Preliminary Approval Order, SCEA will update the content of the previously provided database. (*Id.*) The Settlement Administrator will send the Short Form Notice, in the form approved by the Court, to Class Members, via email, along with a link to the Settlement Website. (Agreement ¶ 79(A)(ii); Cirami Decl. ¶ 15.) It will also send a follow-up email notice to Class Members who have not submitted claims and for whom it did not receive a bounce-back in response to the first round of email notice. (Agreement ¶ 80; Cirami Decl. ¶ 15.)

Additionally, the Notice Program provides for targeted online advertisements, social media outreach, and gmail advertisements designed to reach as many Class Members as possible. (Cirami Decl. ¶¶ 13-14, 17-28.) Further, the Settlement Administrator will utilize and maintain a Settlement Website, where notice of the Settlement and key documents will be available, including the Long Form Class Notice and Short Form Notice. (Agreement ¶¶ 79(B), 81.)

The Long Form Class Notice, which will be available on the Settlement Website, describes the material terms of the New Settlement and the procedures that Class Members must follow to receive payments under the Settlement. (*Id.* ¶ 79(B), Ex. 4.) The Long Form Class Notice also describes the procedures Class Members must follow to request exclusion or to object to the Settlement. (*Id.* ¶¶ 79(B)(ii), (iii).) Any Class Member who wishes to be excluded from the New Settlement need only make a timely opt-out request. (*Id.*) The procedures for opting-out are those commonly used in class action settlements; they are straightforward and described in the notice. (*Id.*) The Short Form Notice provides a summary of the foregoing. (*Id.* Ex. 6.)

The reasonable costs of the Settlement Administrator to administer the Settlement, including providing Class Notice, processing and evaluating Claims, and performing other tasks as provided in the New Settlement shall be paid from the Settlement Fund. (*Id.* ¶ 71.)

### C.     Service Award and Attorneys' Fees and Costs

Pursuant to the New Settlement, Class Counsel intends to request that the Court approve a Service Award for each of the Class Representatives in an amount not to exceed Three Thousand Five Hundred dollars ($3,500) each. (*Id.* ¶ 114.) Counsel intend to request an incentive award of $3,500 for each named Plaintiff to recognize them for their efforts during the action that resulted in the New

Settlement, including: retaining counsel; reviewing and authorizing the filing of the original and amended complaints; responding to discovery, including having their depositions taken and producing their PS3s for inspection; reviewing the proposed Settlement (both the Prior and New Settlements); and keeping abreast of the litigation. (Fisher Decl. ¶ 7.)

Additionally, Counsel will apply to the Court for an award of attorneys' fees and reimbursement of expenses, to be paid out of the Settlement Fund. (Agreement ¶ 111.) The Notice informs class members that Counsel will request an award of attorneys' fees and costs in an amount not to exceed one-third of the Settlement Fund, or $1.25 million. (Fisher Decl. ¶ 6.) Any attorneys' fees and expenses awarded by the Court will be paid out of the Settlement Fund. (Agreement ¶ 111.) Interim Co-Lead Counsel's firms have worked on the case since 2010, and have incurred significant time and expenses, amounting to a lodestar that is several times higher than the $1,250,000.00 that will be requested. (Fisher Decl. ¶ 6.) Indeed, as of the Prior Settlement, the collective lodestar and expenses of all counsel exceeded $4.8 million. (Rivas Decl., Exs. C, E, F; Dkt No. 273, Exs. A-B; Dkt. No. 274, Attachs. 1-2.) Since then, Counsel have invested substantial additional time in negotiating the New Settlement.

### D.   Release Provisions

Each Class member who does not timely submit a valid request to opt out of the New Settlement will release "all claims, demands, rights, and liabilities," whether "known or unknown," that arise from the purchase of a Fat PS3 and "relate to, are based on, concern or arise out of the allegations, facts, or circumstances that were asserted or could have been asserted (whether individually or on a class-wide basis) in the Action." (Agreement ¶ 35.) The Released Claims include, but are not limited to, claims arising under the common laws and statutes of all fifty (50) states concerning: (a) whether SCEA falsely advertised or marketed the Fat PS3's Other OS functionality; (b) the disabling of the Other OS functionality in the Fat PS3; (c) the issuance of Firmware Update 3.21; and/or (d) whether the System Software License Agreement and/or PlayStation Network Terms of Service and User Agreement enable SCEA to alter, remove or modify the features and/or functions of the Fat PS3. (*Id.*)

The Released Parties are: SCEA and each of its current and former parents, subsidiaries, divisions, and affiliated individuals and entities, successors, predecessors, assigns, joint ventures, distributors, retailers, developers and/or licensees and each and all of their respective officers, partners,

directors, servants, agents, shareholders, members, managers, principals, investment advisors, consultants, employees, representatives, attorneys, accountants, lenders, underwriters and insurers. (*Id.* ¶ 36.)

## IV.  **CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

For settlement purposes only, Plaintiffs request that the Court provisionally certify the following proposed Class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> [A]ll persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal, and/or household use and who:  (1) used the Other OS functionality; (2) knew about the Other OS functionality; or (3) contends or believes that he or she lost value or desired functionality or was otherwise injured as a consequence of Firmware Update 3.21 and/or the disablement of Other OS functionality in the Fat PS3.

(Agreement ¶ 12.) This proposed settlement class is substantially narrower than the settlement class proposed as part of the Prior Settlement.[10] Evidence relating to the size of the new proposed Class will be filed separately by SCEA.

Because the proposed Class meets all the requirements of Rule 23 as explained below, the Class should be certified for settlement purposes.

### A.  **The Class Satisfies the Numerosity Requirement**

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that "the class [be] so numerous that joinder of all members is impracticable." Numerosity is undisputed. Plaintiffs allege, and discovery confirmed, that Defendant sold over 10 million PS3s during the relevant time frame. While it is impossible to determine the precise number of those 10 million purchasers who used or knew about the Other OS functionality, or who contend or believe that they lost value or desired functionality or were otherwise injured as a consequence of the disablement of Other OS functionality, evidence suggests that the class size is only a fraction of the total number of PS3 purchasers.

### B.  **The Class Satisfies the Commonality Requirement**

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class."

---

[10] Under the Prior Settlement, Consumer Class B was defined as "[A]ll persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006, and April 1, 2010, from an authorized retailer for family, personal, and/or household use." (Preliminary Approval Order ¶ 3.)

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). This means that the class members' claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* This requirement is also satisfied.

The commonality requirement is met for the Class because the claims of all Class Members arise from the same contention, namely, that Defendant unlawfully removed the Other OS, functionality that Plaintiffs contend it extensively marketed. Thus, the determination of whether Defendant's removal of the functionality violated an obligation created by alleged marketing will resolve a central issue on a class-wide basis.

## C. Plaintiffs Meet the Typicality Requirement

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement is also satisfied.

Courts consistently find that the typicality requirement is met if the claims arise from a common course of conduct. Typicality does not require the claims to be substantially identical. *Armstrong v. Davis*, 275 F.3d 849, 868-869 (9th Cir. 2001). Rather, the Ninth Circuit has found typicality if the "unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Id.* (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Plaintiffs have the same claims as the members of the Class they seek to represent, and they must satisfy the same legal elements that Class Members must satisfy, including with respect to the CLRA, FAL, and UCL claims alleged in the operative complaint. They share identical legal theories with the proposed Class Members, based on allegations that SCEA marketed and sold PS3s with the Other OS functionality that SCEA removed. Their alleged injuries are similar, too. Thus, Rule 23(a)(3) is satisfied.

## D. Plaintiffs Satisfy the Adequacy Requirement

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named

plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988).

There are no conflicts of interest alleged or that could possibly exist here. Plaintiffs seek the exact same remedy as all Class Members: namely, relief to address the claims that Defendant misrepresented its product by marketing the Other OS functionality and then removing it. Plaintiffs' interests therefore, are perfectly aligned with the interests of the Class.

The Plaintiffs' Counsel's adequacy is evidenced by their successful appeal of the dismissal of the case, as well as the New Settlement negotiated with Defendant, which provides for important relief to the Class. Further, Plaintiffs' counsel are highly experienced in class action litigation, and have been involved in many class action settlements and actions which further warrants preliminary approval of the New Settlement. (Dkt. No. 259-1, Exs. C-E.)

### E. The Class Satisfies the Criteria of Rule 23(b)

To certify a class under Rule 23(b)(3), this Court must find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

Both criteria are met in this case. The primary purpose behind Rule 23(b)(3) is the vindication of the rights of people who would not have the economic power or incentive to bring a wrongdoer into court to redress a wrong imposed on them.

#### 1. Common Questions Predominate

"The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether [the] proposed classes [is] sufficiently cohesive to warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009). Predominance considers whether "questions of law or fact common to the class will 'predominate over any questions affecting only individual members' as the litigation progresses." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013). "Thus, this requirement is essentially a heightened commonality inquiry: do the common legal and factual questions appear more significant

than the individualized legal and factual questions?" *Thomas v. Baca*, 231 F.R.D. 397, 402 (C.D. Cal. 2005). This analysis starts with the underlying causes of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).

In analyzing whether common questions predominate, the Court must evaluate whether proving the elements of the claims can be done through common evidence applicable to the class as a whole, or whether proof will be overwhelmed with individual issues. *See Hanlon*, 150 F.3d at 1022. As the Supreme Court has noted, predominance is readily met in cases alleging consumer fraud. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

The legal and factual issues central to each of Plaintiffs' claims are common to all Class Members and predominate over any individualized issues. Plaintiffs' claims center on one question: the alleged harm caused by SCEA's marketing and subsequent removal of the Other OS functionality from the PS3. This common question predominates over any individual questions that might exist because Defendant's alleged conduct affected all Class Members in the same manner as the PS3 was sold nationwide with the same alleged misrepresentations. This weighs in favor of finding the requirements of Rule 23(b)(3) satisfied. *Moshogiannis v. Sec. Consultants Group, Inc.*, No. 5:10-cv-05971 EJD, 2012 WL 423860, at *4 (N.D. Cal. Feb. 8, 2012). As one court noted in *Johns v. Bayer Corp*, "these predominant questions are binary – advertisements were either misleading or not, and Bayer's prostate health claim is either true or false." 280 F.R.D. 551, 557 (S.D. Cal. 2012)

Moreover, under the California consumer protection laws at issue, whether consumers were likely to be deceived is an objective standard and most importantly, the focus is on the defendant's conduct, not the plaintiff's. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *see also Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089, 1094 (9th Cir. 2010). Given the objective standard and focus on Defendant's conduct, common questions of law and fact predominate.

### 2.   A Class Action Is the Superior Method for the Fair and Efficient Adjudication of this Controversy

This case also meets the second requirement of Rule 23(b)(3): that the class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors for courts to consider:

> (A) [T]he interest of members of the class in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by . . . members of the class; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Each of these factors counsels in favor of certifying the Settlement Class here.

First, there is little incentive for Class Members to individually control separate actions. Each Class Member's individual claim is too small to justify the potential litigation costs that would be incurred by prosecuting these claims individually. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001). Because the claims of each Class Member in this case are small and virtually identical, no one member of the Class would have a materially greater interest in controlling the litigation. *See Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 240 (C.D. Cal. 2003). Second, Plaintiffs are unaware of any other actions by Class Members against Defendant asserting similar claims as here. This factor also militates in favor of certification. Third, certification is superior because concentrating this litigation in one forum would not only prevent the risk of inconsistent outcomes but would also "reduce litigation costs and promote greater efficiency." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 493 (C.D. Cal. 2006). Finally, the question here is "whether reasonably foreseeable difficulties render some other method of adjudication superior to class certification." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 525 (D.N.J. 1997). As the Supreme Court has held, manageability issues will not foreclose certification for settlement purposes. *See Amchem Prods.*, 521 U.S. at 620.

Therefore, there are no serious manageability difficulties presented by conditionally certifying this case for settlement purposes.

### F. Certification of a Nationwide Settlement Class is Appropriate

Fed. R. Civ. P. 23(b)(3) allows the certification of a nationwide class under California law on the facts of this case. For a state's substantive law to be selected in a constitutionally permissible manner and applied to citizens outside of that state, that state must have a "significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *See Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011)

(citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985)).

Here, SCEA's contacts with California are substantial. SCEA is an American corporation with its principal place of business in California, where SCEA's marketing department is located. Moreover, in its Terms of Service and User Agreement ("TOS"), which all users had to agree to prior to signing into the PSN and to which SCEA contends all users are bound, SCEA states: "Except as otherwise required by applicable law, this Agreement shall be construed and interpreted in accordance with the laws of the State of California applying to contracts fully executed and performed within the State of California." (Dkt. No. 98-5 at 14.)

Accordingly, application of California law to the nationwide claims here is neither arbitrary nor unfair. *See Sullivan*, 662 F.3d at 1271 (application of California law to nonresidents appropriate where defendant was headquartered in California, defendant's alleged decision to deny plaintiffs overtime pay was made in California, and where alleged work at issue was performed in California).

To the extent the Court is concerned about variations in the substantive laws of the various states, such variations do not preclude the certification of a nationwide settlement class. The nationwide settlement of a Rule 23(b)(3) action asserting California law claims is appropriate so long as there is a common nucleus of facts and potential legal remedies shared between resident and nonresident class members. *See Hanlon*, 150 F.3d at 1022-23 (nationwide settlement of consumer class action appropriate given that "although some class members may possess slightly differing remedies based on state statute or common law, the actions asserted by the class representatives are not sufficiently anomalous to deny class certification."); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D. Cal. 2008).

Further support for provisionally certifying a nationwide class comes from the numerous approvals of class action settlements by California federal courts in which California law claims were asserted on a nationwide basis. *See, e.g., Arnold v. FitFlop USA*, LLC, No. 11-CV-0973 W (KSC), 2014 WL 1670133, at *6 (S.D. Cal. Apr. 28, 2014); *Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 WL 758094, at *4 (N.D. Cal. Feb. 20, 2015).

# V. PRELIMINARY APPROVAL IS APPROPRIATE

## A. The Settlement Approval Process

The law favors settlement, particularly in class actions and complex cases where substantial resources can be conserved by avoiding the time, costs and rigors of prolonged litigation. *Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.)*, 516 F.3d 1095, 1101 (9th Cir. 2008); CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("NEWBERG") ("By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise").

The first step toward effecting a proposed class-wide settlement is preliminary approval. *See* MANUAL FOR COMPLEX LITIGATION § 13.14 at 173 (4th ed. 2004) ("MANUAL") ("This [approval of a settlement] usually involves a two-stage procedure. First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing."); *see also id.*, § 21.632, at 320 ("Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation….") (footnote omitted); NEWBERG § 11.25 at 38-39 (discussing the two-step approval process).

At the preliminary approval stage, the Court asks whether "'[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval….'" *See*, *e.g.*, *Burden v. SelectQuote Ins. Servs.*, No. C 10-05966 SBA, 2013 WL 1190634, at *3 (N.D. Cal. Mar. 21, 2013) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). Put another way, the Court should "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms . . . [.]" MANUAL § 21.632, at 321.

Because a preliminary evaluation of the New Settlement will reveal no "grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation for attorneys," and because the settlement "appears to fall within the range of possible approval," Plaintiffs submit that the New Settlement passes this initial

evaluation. *See* NEWBERG § 11.25; *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079-80. Accordingly, as demonstrated below, the Court should grant preliminary approval.

### B. The New Settlement is the Product of Well-Informed, Vigorous and Thorough Arm's-Length Negotiations

In considering preliminary approval, the Court must ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ." *Hanlon*, 150 F.3d at 1027 (internal quotes and citations omitted). As set forth above, the New Settlement was achieved only after years of litigation, including extensive motion practice on Defendant's challenges to the pleadings, the appeal, the mediation briefs, depositions and document analysis, three in-person mediations and months of extensive negotiations between the Parties. Further, Plaintiffs and the Class were represented throughout the litigation by dedicated counsel, court-appointed Interim Co-Lead Counsel with extensive experience in class action litigation. Based on the foregoing, Interim Co-Lead Counsel were well-situated to evaluate the strength and weaknesses of Plaintiffs' claims. Far from being the product of anything inappropriate, the New Settlement is the result of long, hard-fought, adversarial work, such that it is worthy of preliminary approval by the Court. *Cf. Hanlon*, 150 F.3d at 1027 (no basis to disturb settlement where there was no evidence suggesting that the settlement was negotiated in haste or in the absence of information).

### C. The New Settlement Bears No Obvious Deficiencies and There is No Preferential Treatment

The New Settlement bears no obvious deficiencies. *See Burden*, 2013 WL 1190634, at *3. There are no patent defects that would preclude its approval by the Court, such that notifying the class and proceeding to a formal fairness hearing would be a waste of time. *See* NEWBERG § 11.25 (referring to the Court's inquiry as to, inter alia, "obvious deficiencies"). An examination of the New Settlement will reveal no apparent unfairness, and no "unduly preferential treatment of a class representative or segments of the Settlement Class, or excessive compensation for attorneys." *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2012 WL 5055810, at *6 (D. Minn. Oct. 18, 2012).

-22-

**PLAINTIFF'S NOTICE OF MOTION & RENEWED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MPA**
CASE NO. 4:10-CV-01811-YGR

To the contrary, the New Settlement provides cash relief to all qualified Class Members on an even, pro rata basis. Moreover, with respect to the service awards of $3,500.00 to the named Plaintiffs, the Ninth Circuit has recognized that such awards are permissible and do not render a settlement unfair or unreasonable. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

Finally, as for attorneys' fees, Plaintiffs' counsel intend to apply for fees and reimbursement of expenses not to exceed one-third of the Settlement Fund (or $1.25 million), which is several times less than their collective lodestar and expenses. (Fisher Decl. ¶ 6; Rivas Decl., Exs. C, E, F; Dkt No. 273, Exs. A-B; Dkt. No. 274, Attachs. 1-2.) Thus, there are no obvious deficiencies preventing preliminary approval of the New Settlement.

### D. The New Settlement Falls Within the Range of Possible Approval

Finally, the Court must determine whether the proposed settlement falls within the range of possible approval. To determine whether an agreement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

These factors weigh in favor of preliminary approval. While Interim Co-Lead Counsel believe that the Class's claims are meritorious, SCEA vigorously disputes this, and has argued that it never advertised the Other OS functionality on the product box or its website. Further, there is a risk that the Court may deny class certification or, after initial certification, subsequently decertify any class due to unanticipated individualized issues. The outcome of a trial (and potential post-trial appeals) are inherently uncertain in terms of both outcome and duration. Continued litigation would involve considerable costs and a significant investment of time by the parties and their respective counsel and would burden the resources of the Court.

Moreover, while Class Members will receive a portion of the PS3's purchase price (e.g., 16% on a $65 payout on a unit that cost $400), this is consistent with any argument SCEA would make at

trial that under California law a full refund is unavailable because the units still have some value as they can continue to be used to play video games, Blu-ray movies, and access the PlayStation Network, among other things. *See In re Tobacco Cases II*, 240 Cal. App. 4th 779, 796 (2015).

While Interim Co-Lead Counsel, who are experienced in consumer class action litigation, believe the claims have merit, they also believe the proposed settlement is fair, reasonable, adequate, and is in the best interest of the Settlement Class in light of all known facts gathered through the lengthy discovery process in this case and the applicable standards on class certification and the proof requirements necessary to obtain damages under the alleged claims. (Fisher Decl. ¶ 5.) Consideration of the foregoing factors weighs in favor of preliminary approval.

## VI. <u>NOTICE</u>

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise . . . [.]'" MANUAL § 21.312, at 293. In order to protect the rights of absent Class Members, the Court must direct the best notice practicable to Class Members. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Additionally, "Rule 23 … requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the 'best notice practicable under the circumstances.'" MANUAL § 21.311 at 287.

In this case, the proposed Notice Program includes individual notice via electronic mail, a strong Internet component to reach Class Members nationwide, and a settlement website. (Agreement ¶¶ 79-81.) *See In re HP Laser Printer Litig.*, No. SACV 07-0667 AG (RNBx), 2011 WL 3861703, at *3 (C.D. Cal. Aug. 31, 2011) (approving a notice plan utilizing direct email notice, publication of notice in print publications, advertisements on websites, and "providing a link on both notice forms to a settlement website").

As for the settlement notice itself, it will comport with due process because it will:

- define the class;
- describe clearly the options open to class members and the deadlines for taking action;
- describe the essential terms of the proposed settlement;

- disclose that no special benefits other than service awards approved by the Court will be provided to the class representatives;

- provide information regarding attorney fees;

- indicate the time and the place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- describe the method for objecting to or opting out of the settlement;

- explain the procedures for allocating and distributing settlement funds and clearly set forth the variations among different categories of class members;

- confirm that there are no non-monetary benefits provided under the settlement;

- provide information that will enable class members to estimate their individual recoveries; and

- prominently display the address and phone number of class counsel and how to make inquiries.

MANUAL § 21.312 at 295 (citation omitted). Here, the Long Form Class Notice and Short Form Notice attached to the New Settlement satisfy these requirements. (Agreement, Exs. 4 and 6.)

The Notice Program and documents are designed to afford notice in a comprehensive and reasonable manner. Plaintiffs respectfully ask the Court to approve them.

## VII.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs request that the Court enter the submitted Order Preliminarily Approving Class Action Settlement and Certification of Settlement Class which: (1) preliminarily approves the Settlement; (2) appoints GCG as Settlement Administrator, (3) directs dissemination of notice to Class; and (4) sets a date of March 13, 2018 for the final approval hearing.


DATED: September 1, 2017          Respectfully submitted,

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

**CALVO FISHER & JACOB LLP**

By: <u>*/s/ Kathleen V. Fisher*</u>
      Kathleen V. Fisher

555 Montgomery Street, Suite 1155
San Francisco, California 94111
Telephone: (415) 374-8370
Facsimile: (415) 374-8373

**HAUSFELD LLP**

By: */s/ James Pizzirusso*
    James Pizzirusso

1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

**FINKELSTEIN THOMPSON LLP**

By: */s/ Gordon M. Fauth*
    Gordon M. Fauth

100 Pine Street, Suite 1250
San Francisco, California 94111
Direct Telephone: (510) 238-9610
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

**Filer's Attestation**

I, Kathleen V. Fisher, hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.

DATED: September 1, 2017        Respectfully submitted,

**CALVO FISHER & JACOB LLP**

By: */s/ Kathleen V. Fisher*
    Kathleen V. Fisher

-26-

**PLAINTIFF'S NOTICE OF MOTION & RENEWED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MPA**
CASE NO. 4:10-CV-01811-YGR