Sam A. Miorelli, E.I., Esq. (FL Bar # 99886, *pro hac vice*)
**Law Office of Sam Miorelli, P.A.**
4715 N Harbor City Blvd.
Melbourne, FL 32935
Phone: (352) 458-4092
E-Mail: sam.miorelli@gmail.com

Grant F. Atkinson (SB# 293760)
**Framework Law Group PC**
1275 E 6th Street
Suite 8A
Los Angeles, CA 90021
Phone: (847) 987-7361
E-Mail: grant@frameworklaw.com

*Attorneys for Objector Eric Lindberg and Susan Lindberg*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re SONY PS3 "OTHER OS" LITIGATION | Case No. 4:10-CV-01811-YGR |
| ——————————————————<br><br>ERIC MICHAEL LINDBERG and SUSAN LINDBERG,<br><br>    Objectors. | **NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND MEMORANDUM IN SUPPORT**<br><br>Date:  May 29, 2018<br>Time:  2:00 p.m.<br>Courtroom: 1, 4th floor<br>Judge:  The Honorable Yvonne Gonzalez Rogers |

## NOTICE OF MOTION AND MOTION

TO ALL THE PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 29, 2018, at 2:00 p.m. or as soon thereafter as the matter may be heard by the Honorable Judge Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 1, Objectors Eric Michael Lindberg and Susan Lindberg will and hereby do move the Court for an order (i) awarding objectors attorneys' fees of $75,000; (ii) awarding objectors expenses of $1,360.15; and

(iii) awarding Eric Lindberg an incentive award of $3,500, with the collective $79,860.15 to be paid out of class counsel's fee award.

This motion is based on this Notice of Motion and Motion for Attorneys' Fees, Costs, and an Incentive Award, and the following memorandum of points and authorities, and such other materials as the Court may consider.

PLEASE TAKE FURTHER NOTICE that, in accordance with Local Rule 54-5(b)(1), counsel for the Lindbergs met and conferred with class counsel for the purpose of attempting to resolve disputes with respect to this motion. Plaintiffs oppose this motion.

Counsel for the Lindbergs attempted to meet and confer with defendants for the purpose of attempting to resolve disputes with respect to this motion. Defendants refused, in writing, to engage in such a meet and confer conference.

PLEASE TAKE FURTHER NOTICE that, in accordance with Local Rule 7-2, a proposed Order is attached.

## STATEMENT OF COURT ACTION SOUGHT

The Lindbergs move the Court to enter an order awarding them attorneys' fees in the amount of $75,000, expenses in the amount of $1,360.15, and an incentive award of $3,500, with all amounts to be paid out of class counsel's fee award.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION.................................................................................i

STATEMENT OF COURT ACTION SOUGHT .............................................................ii

TABLE OF CONTENTS ...................................................................................................iii

TABLE OF AUTHORITIES .............................................................................................iv

SUMMARY OF ARGUMENT ...........................................................................................1

STATEMENT OF RELEVANT FACTS ............................................................................2

ARGUMENT.........................................................................................................................6

   I.    This motion is properly before the Court. .......................................................6

     A.   The Lindbergs have taken an extremely conservative approach to this topic and continue to do so in the face of intractable and incoherent opposition...........................................................7

   II.   The Lindbergs are entitled to attorneys' fees for the benefit attributable to their objection and overall participation in the case. ..........................................................8

     A.   The Court's rejection of the first settlement agreement closely followed the Lindberg Objection's reasoning.............................................................8

     B.   The new settlement agreement cured other defects raised in the Lindberg Objection *expressly* in response to the Lindberg Objection's arguments. ..................................................9

     C.   Any argument that the Court would or should have rejected the first settlement approval on its own without the benefit of objections is refuted by the settling parties' own statements supporting final approval....................................................10

     D.    The new settlement entitles the Lindbergs to attorneys' fees, costs, and an objector incentive award. 11

   III.   A total fee award of 3.30% of the benefit conferred is reasonable. .....................................................15

   IV.   Undersigned counsel's lodestar of $48,301.20 provides a reasonable cross-check. .........................16

   V.   The attorneys' fee award should be paid by Class Counsel, rather than the class. ............................17

   VI.   The requested expenses reimbursement is reasonable. .....................................................19

   VII.   The Lindbergs are entitled to an incentive award. ................................................20

CONCLUSION....................................................................................................................21

CERTIFICATE OF SERVICE .........................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Chambers v. Whirlpool Corp.*, 214 F.Supp.3d 877, 905 (C.D. Cal. 2016) ...................................12

*Commonwealth Electric Co. v. Woods Hole*, 754 F.2d 46, 49 (1st Cir. 1985) ............................19

*Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 396 (D.N.J. 2012) ....................................15

*Edwards v. Nat'l Milk Prods Fed.*, Case No. 11-cv-04766-JSW, 2017 WL 4581926 at *3 (N.D. Cal. Sept. 13, 2017)..............................................................................................................................17

*Edwards v. Nat'l Milk Prods. Fed.*, Case No. 11-cv-04766-JSW, 2017 WL 3616638 at *4 (N.D. Cal. June 26, 2017)..............................................................................................................................12

*Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994 ..............................................................11

*Great Neck Capital Appreciation Inv. P'ship v. PriceWaterhouseCoopers* provides pertinent discussion of this issue. 212 F.R.D. 400, 416-17 (E.D. Wis. 2002)........................................................................19

*Gutierrez v. Wells Fargo, NA*, No. 07-cv-05923 WHA, 2015 WL 2438274, at *6 (N.D. Cal. May 21, 2015) ...11

*Hendricks v. StarKist Co.*, this Court found it "appropriate and justified" to pay objectors' $150,000 fee out of class counsel's fee fund. No. 13-cv-00729-HSG, 2016 WL 5462423, at *16 (N.D. Cal. Sept. 29, 2016)...18

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ....................................................................13

*In re Apple Inc. Sec. Litig.*, No. 5:06-CV-05208, 2011 WL 1877988, at *5 (N.D. Cal. May 17, 2011)...............20

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).....................1, 12, 15, 16

*In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2012 WL 3854501, at *11 (W.D. Wash. Jun. 12, 2012) ...14

*In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) ......................................19

*In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 701 (9th Cir. 2018) ................................12

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 197 (E.D. Pa. 2000) ......................19

*In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) ..............................19

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F. Supp. 2d 563, 572 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695 (3d Cir. 2004)........................................................................................................15

*In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. 2011) ..........................16

*In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 748 (7th Cir. 2011)....................................16

*Lan v. Ludrof*, Case No. 1:06-cv-114, 2008 WL 763763, at *28 (W.D. Pa. Mar. 21, 2008)..............................16

*Lane v. Facebook*, 696 F.3d 811, 830 (9th Cir. 2012) (Kleinfeld, J. dissenting), *rehearing en banc den'd*, 709 F.3d 791 (2013), *cert den'd* 134 S. Ct. 8 (2013).............................................................................14

*McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 660 (E.D. Pa. 2015).........................15, 18

*Neslin v. Wells*, 104 U.S. 428, 437 (1882) .................................................................................. 17

*Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) .................................................. 12

*Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014) ...................................... 12

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002) .......................... 2, 11

*Rodriguez v. Disner*, 688 F.3d 645, 658-59 (9th Cir. 2012) ........................................ 1, 11, 17

*Rodriguez v. W. Pub'g Co.*, 563 F.3d 948, 963 (9th Cir. 2009) ........................................ 11

*Rodriguez v. W. Publishing Corp.*, 602 Fed. Appx. 385 (9th Cir. 2015) ............................ 15

*Saks v. Parilla, Hubbard, & Militzok*, 67 Cal.App.4th 565, 567, 79 Cal.Rptr.2d 120, 121 (Cal. Ct. App. 1998). 3

*Stanton v. Boeing*, 327 F.3d 938, 964 (9th Cir. 2003) ...................................................... 9

*Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 747 (7th Cir. 2011) ............................ 12

*United Steelworkers of Am. v. Sadlowski*, 435 U.S. 977, 979 (1978) .............................. 17

*Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) .............................. 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) .................... 15

*Wilson v. SW Airlines*, 880 F.2d 807, 816 (5th Cir. 1989) ............................................ 18

*Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999) .................. 11

**Other Authorities**

Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809 (2000) .................................................................................................. 15

**Rules**

11th Cir. R. 25 .......................................................................................................................... 3

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND MEMORANDUM IN SUPPORT

**SUMMARY OF ARGUMENT**

Objectors who provide a material benefit to the class through their objections are entitled to fees as a matter of law. *See Rodriguez v. Disner*, 688 F.3d 645, 658-59 (9th Cir. 2012) ("*Rodriguez II*"). This Court's order denying the first proposed settlement agreement adopted key objection arguments by Objectors Eric and Susan Lindberg relating to class counsel's excessive fee request and the unfairness of the overall settlement agreement. That initial settlement would have distributed $2.25 million to class counsel but just $209,705 to all of the 10 million class members combined. The Lindbergs argued that the settlement agreement was deeply flawed with, *inter alia*, an unreasonable claims process leading to a low claims rate, overbroad release, disproportionate attorneys' fee, *Bluetooth* indicia of self-dealing, and an insufficiently documented lodestar. *See* Dkt. 277 at 91-116; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The Court adopted several of their arguments and denied final approval of the first settlement agreement. Dkt. 300.

After further litigation, the settling parties reached a new settlement agreement which responds to the Court's reasons for denying final approval and responds to issues raised by the Lindbergs in their objection. As a direct result, the class will receive an additional $2,272,795 (even if all requested attorneys' fees, costs, and incentive awards are paid as requested by class counsel)[1] and the settlement terms are also significantly more favorable in their non-pecuniary elements. Based on this increase in pecuniary benefit for the class, the Lindbergs seek $75,000 in attorneys' fees, or a modest 3.30% of the increased benefit to the class, plus their expenses of $1,360.15 and an incentive award of $3,500. The total award should be paid from any class counsel fee award so that the class is not double-billed for attorneys' work winning them over $2.27 million in direct benefit.

Any argument by Plaintiffs that the Court would have rejected the first settlement and its disproportionate 92% fee request even if no one had objected begs the question: if the first settlement was

---

[1] Calculated by subtracting from the $3.75M gross settlement amount $1.25M of class counsel's requested attorneys' fees and costs and subtracting $17,500 in Plaintiffs' requested incentive awards to result in a total expected cumulative payment to the class members of $2,482,500. That is then compared to the prior total expected payment to the class of a cumulative $209,705.

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND
MEMORANDUM IN SUPPORT

so obviously unreasonable, why would class counsel—as a fiduciary of the class—make such a request to begin with? The reality is that numerous courts in this Circuit—including this one—have granted final approval of settlements with extremely-low claims rates and/or attorneys' fees which constitute a large fraction of the total settlement. It was appropriate for the Lindbergs to submit briefing and provide an adversarial setting to test the reasonableness of the first settlement agreement. As the Court properly concluded, the first settlement agreement was unfair and the accompanying fee request was unreasonable.

The new settlement agreement's vastly improved terms demonstrate that the Court, and the Lindbergs, were correct that a better deal was to be had for the class. Objectors cannot know in advance, when deciding whether to object, how a court would rule without the advantage of the objector's adversarial briefing or whether another class member will object on similar grounds. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002). When an objector becomes involved in a case, the investment of time and resources generally cannot be divided argument by argument because he must analyze the settlement and fee request holistically and issues often overlap. Class counsel's own request reflects that indivisibility, as the declarations supporting their claimed lodestar do not even break out which lawyers did what work, let alone how many hours were spent on successful claims and how many on unsuccessful ones or how many hours were spent on one stage of the litigation or the other.

For these reasons and as further explained herein, the Court should grant this motion.

## STATEMENT OF RELEVANT FACTS

In 2006, Eric Lindberg asked his parents for a Sony PS3 as his Christmas present. Dkt. 290-3 at ¶ 2. One of the reasons Eric wanted the PS3 was because he had conducted internet research and was aware of and wanted to have access to the Other OS functionality. *Id.* Eric was 15 years old at the time. Dkt. 290-2 at ¶ 2. Susan Lindberg, his mother, bought the Fat PS3 for him on his behalf due to his age. *Id.*

The Lindbergs always considered the PS3 to be owned by Eric. *Id.* at ¶ 3-4. When this class action came up, the Lindbergs believed Eric was entitled to the settlement payment and it was Eric who believed the settlement was unfair to him, so he secured counsel and filed the objection. The Lindberg Objection argued, *inter alia*, that (1) the claims process in the first settlement agreement was unreasonable and would

result in a depressed claims rate (Dkt. 277 at 101-102), (2) the first settlement agreement had significant *Bluetooth* indicia of self-dealing (Dkt. 277 at 103-107), (3) the attorney's fees were vastly disproportionate to the class' recovery (Dkt. 277 at 109-111), (4) class counsel had not presented sufficient evidence to support their claimed lodestar (Dkt. 277 at 111), and (5) the release was overbroad (Dkt. 277 at 98-101). At the preliminary approval hearing for the second settlement agreement, counsel for Defendant characterized some of the objections to the first settlement agreement as "very detailed." Dkt. 340 at 11:15. The Lindberg objection was the longest and most-detailed objection filed against that first settlement agreement.

In a pattern which this Court ultimately cited as part of its reason to reject final approval, the settling parties' response to the Lindberg Objection was to play disingenuous games about whether the proper class member was Eric or his mother, *argumentum ad hominem*, and false statements. *See* Dkt. 286 at 8; 288 at 13. Mr. Lindberg promptly followed the procedures of Federal Rule of Civil Procedure 11 and demanded, at least, that the false statements be withdrawn. Declaration of Sam A. Miorelli, E.I., Esq. in Support of Motion for Attorneys' Fees, Costs, and Objector Incentive Award ("Miorelli Decl.") at ¶ 8. To their credit, upon finding out Eric's age in 2006, Defendant did not object to Susan Lindberg's joinder of Eric's claim and objection. Dkt. 290 at 2. Defendant also revised its filings to remove the false statements. Dkt. 291.

Plaintiffs took a more strident position: they demanded unnecessary administrative filings, made frivolous threats against undersigned counsel and the Lindbergs, and doubled down with five pages of *argumentum ad hominem*. Miorelli Decl. at ¶11; Dkt. 293. Notable among the unprofessional[2] vitriol was the lack of any argument (other than based on the time of her filing) that Susan Lindberg was not a class

---

[2] This Court's Guideline 7(b) for Professional Conduct requires "A lawyer should avoid denigrating the intelligence, ethics, morals, integrity, or personal behavior of the opposing party, counsel, or witness, unless such matters are at issue in the proceeding." The Eleventh Circuit prohibits "*ad hominem* or defamatory language" in filings and warns that a document filed including such may be partially or completely stricken and that the party filing a document with such language may be ordered to justify themselves by the court. 11th Cir. R. 25-6(a)(1), 25-6(b) (Dec. 2015). The California Fourth District Court of Appeal has called *argumentum ad hominem* "indecorous and unprofessional" and "completely unrelated to the legal issue presented." *Saks v. Parilla, Hubbard, & Militzok*, 67 Cal.App.4th 565, 567, 79 Cal.Rptr.2d 120, 121 (Cal. Ct. App. 1998).

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND MEMORANDUM IN SUPPORT

member. Despite the vitriol, Plaintiffs also amended their filing to remove the false statements which had prompted Eric's Rule 11 demand. Dkt. 294, 295.

At the final fairness hearing, undersigned counsel appeared before the Court representing both of the Lindbergs. Dkt. 306 at 2-4. Nobody raised any objection to this representation and as such both Lindbergs' appearance and participation at the first final fairness hearing. Dkt. 306.

The Court denied final approval and the attorneys' fee request for four primary reasons: (1) low claim rate due to a burdensome process coupled with a high claims rejection rate (Dkt. 300 at 6-7); (2) concerns about *Bluetooth* indicia of self-dealing (Dkt. 300 at 2); (3) a disproportionate attorneys' fee compared to the total class recovery (Dkt. 300 at 1); and (4) insufficient evidence to support class counsel's claimed lodestar (Dkt. 300 at 8). The Court also denied the Lindbergs' administrative motion seeking to reply since the arguments in the proposed reply had been entered into the record orally at the fairness hearing. *Id.* at 1.

In the intervening year, the settling parties made a dramatically improved settlement worth "at least ten times what the previous settlement was going to pay out." Dkt. 340 at 3:10-11. The new settlement, as presented to the Court at the preliminary approval hearing, provides "that those who submitted claims in the first settlement will not have to resubmit claims." *Id.* at 4:16-17. Class counsel admitted that "one of the key things that was holding people back from making claims the first round was the proof requirements. So we have eliminated those." *Id.* at 5:2-5.

The new Settlement Agreement also has a narrower release. Defendants admit that this was specifically crafted in consideration of the Lindberg Objection (which argued that the prior release was overbroad). Dkt. 337 at 18-19. The new settlement agreement also cures the *Bluetooth* defects identified in the Lindberg Objection. Dkt. 337 at 1.

According to Plaintiffs' motion for preliminary approval of the new settlement agreement, claimants under the prior settlement "will automatically be deemed claimants under the New Settlement. This includes claimants whose claims were previously rejected." Dkt. 331 at 3:17-19. Mr. Lindberg was a claimant under the prior settlement. Dkt. 277 at 96. Neither Eric's claim nor Susan's joinder was rejected by

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND
MEMORANDUM IN SUPPORT

the Settlement Administrator or the Court. Consequently, the new settlement agreement includes Eric as a valid class member.

Even while admitting that the new settlement agreement was specifically crafted to address valid complaints from the Lindbergs which resulted in the Court denying final approval in 2017, Plaintiffs have continued unprofessionally attacking that successful objection with *argumentum ad hominem*. Dkt 331 at 9.

The Lindbergs, agreeing that the new settlement agreement is significantly improved, support approval of the new settlement agreement. They seek attorneys' fees, costs, and an incentive award for their critical role in causing this improvement. When they attempted to meet and confer in an effort to eliminate or reduce disputes, Plaintiffs claimed, contrary to their own filings before this Court, that Eric is not a class member and that neither Eric nor Susan could claim responsibility for the benefit of their successful objection. Miorelli Decl. at ¶ 18. Defendants refused to meet and confer. *Id.*

In light of that (and despite conviction that Eric was a class member under the old settlement agreement and is also one under the new settlement agreement), Susan filed her own claim for the same PS3 prior to the second settlement claims deadline. That claim is #386A1F1FB6.[3] This is exactly the burdensome and convoluted claims problem that infected the first settlement agreement apparently lingering on today.[4]

Undersigned counsel has consistently worked to limit costs and efficiently litigate the case. As set forth in the attached declarations, the Law Office of Sam Miorelli, P.A. has accumulated a lodestar of $46,546.20 with unreimbursed expenses of $1,360.25. Framework Law Group PC has accumulated a lodestar of $1,755. The attorneys fee award sought herein would constitute a 1.55 multiplier.

---

[3] The Lindbergs do not intend to have two claims for one PS3, but in light of the contradictory positions of the settling parties between their written court filings and their statements in attempted meet and confer, they felt no choice but to protect their position by having Susan re-file a claim.

[4] While the Lindbergs support final approval generally due to the improved settlement. The Court still has a fiduciary duty to conduct its own independent analysis. The Lindbergs suggest to the Court that their miserable experience in this case with disputes about who is or is not a class member for their PS3 suggest the old problems may well linger just below the surface, this requires inquiry from the Court before granting final approval, no matter the Court's decision on this Motion.

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND MEMORANDUM IN SUPPORT

**ARGUMENT**

**I.      This motion is properly before the Court.**

Eric Lindberg was a class member under the prior settlement agreement and properly filed a claim and an objection. Dkt. 277 at 96. In response to arguments against his class membership, Susan Lindberg, his mother, joined his objection in a writing submitted to the Court before the first final fairness hearing. Dkt. 290. That joinder was reiterated orally by undersigned counsel at the first final fairness hearing and was not objected to by either of the settling parties. Dkt. 306. In not objecting to undersigned counsel's express declaration of joint representation at the first final fairness hearing, Plaintiffs waived the argument that neither Eric nor Susan Lindberg was properly before the Court objecting to the final approval of the settlement. If neither Eric nor Susan were legitimately part of the case, it would have been inappropriate for undersigned counsel to address the Court at the first final fairness hearing regarding the first settlement agreement. Plaintiffs had ample opportunity to express an objection at the hearing, but did not. Defendants waived any argument against the Lindbergs' class membership when they did not oppose the Lindbergs' written efforts to join Susan to the claim and objection.

Even if the settling parties' silence at the first final fairness hearing did not waive arguments against the Lindbergs' class membership, the terms of the new settlement agreement clearly includes Eric as a class member. The new settlement agreement provides that "[a]ny Settlement Class Member who previously submitted a Claim Form will be automatically included and will not be required to submit an additional Claim Form." Dkt. 331-1 at 24-25 ¶ 72. In support of their arguments for preliminary approval, Plaintiffs explained to the Court that this means that "Claimants who previously submitted claims will *not* be required to submit new claim forms. Rather, they will automatically be deemed claimants under the New Settlement. This includes claimants whose claims were previously rejected." Dkt. 331 at 3:17-19.

Defendants agreed and stated that the new settlement agreement "[d]oes not require the re-submission of claims submitted under the prior settlement, even those the settlement administrator rejected." Dkt. 337 at 1:21-22.

At the preliminary approval hearing, class counsel reiterated the point: "of course, we have also agreed that those who submitted claims in the first settlement will not have to resubmit claims. The 11,300

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND
MEMORANDUM IN SUPPORT

who made claims will just automatically be able to participate in this round as well." Dkt. 340 at 4:16-19. Defendants did not dispute this characterization at the preliminary approval hearing.

Eric filed a claim under the prior settlement agreement. That claim was not denied and the Court did not rule he was not a class member. Thus, pursuant to the terms of the new settlement agreement and its on-the-record explanation by both proponent sides of the agreement, Eric is a class member. If even a rejected claim under the old settlement agreement is now a valid claim, then certainly a not-rejected claim from the old settlement agreement must also be a valid claim.

To the extent that either of the settling parties argues otherwise, such argument would be directly contradicted by the statements they each made to induce this Court to grant preliminary approval of the new settlement agreement. The Court should respond to such argument either by rejecting it out of hand or revisiting its prior preliminary approval decision as one based on a fraud which should be reconsidered. This, of course, would preclude final approval.

### A. The Lindbergs have taken an extremely conservative approach to this topic and continue to do so in the face of intractable and incoherent opposition.

While the Lindbergs are convinced that Eric is a proper class member under the new settlement agreement and the old one too, they have taken a very conservative approach to the issue throughout. When faced with arguments against his class membership on the old settlement agreement, they brought Eric's mother to join and cure any conceivable defect. Today, faced with even more far-fetched potential opposition to Eric's class membership, Susan filed a prophylactic claim to eliminate disputes.

Their position remains the same as ever: Eric is the class member. But Susan, like any mother, is happy to protect her son's rights regarding *his* PS3. There is no intent to have two claims for this PS3, and the Lindbergs believe the claim belongs to Eric. But to the extent the settling parties argue otherwise (and in the unlikely event that argument persuades the Court), Susan has been and continues to participate in the case to protect the interest that she and Eric believe is *his*.

## II.     The Lindbergs are entitled to attorneys' fees for the benefit attributable to their objection and overall participation in the case.

The new settlement agreement was only possible because the Court rejected final approval of the first settlement after receiving the arguments presented in the Lindberg Objection and by undersigned counsel at the final fairness hearing. The Lindbergs support the new settlement agreement as an enormous improvement. Other class members obviously agree. The prior settlement agreement had less than 12,000 claims, and likely would have only distributed about $209,705 to all of the class members combined. The new settlement agreement has over 52,399 claims (as of about 1.5 months before the claims filing deadline). This over 4.64-times improvement in class participation will result in $2,272,795 of *additional* money going to class members, almost an 11-times increase. The Lindbergs are proud of the part they played in achieving this important consumer protection victory.

### A.   The Court's rejection of the first settlement agreement closely followed the Lindberg Objection's reasoning.

The Court rejected final approval of the first settlement agreement after considering the Lindberg Objection for the following reasons: (1) low claim rate due to a burdensome process coupled with a high claims rejection rate (Dkt. 300 at 6-7); (2) concerns about *Bluetooth* indicia of self-dealing (Dkt. 300 at 2); (3) a disproportionate attorneys' fee compared to the total class recovery (Dkt. 300 at 1); and (4) insufficient evidence to support class counsel's claimed lodestar (Dkt. 300 at 8). The settling parties generally agree that these were the motivating topics in the Court's holding. Dkt. 331 at 9-10; Dkt. 337 at 1, 12-18.

The Lindberg Objection argued, *inter alia*, that (1) the claims process in the first settlement agreement was unreasonable and would result in a depressed claims rate (Dkt. 277 at 101-102), (2) the first settlement agreement had significant *Bluetooth* indicia of self-dealing (Dkt. 277 at 103-107), and (3) that the attorney's fees were vastly disproportionate to the class' recovery (Dkt. 277 at 109-111), and (4) that class counsel had not presented sufficient evidence to support their claimed lodestar (Dkt. 277 at 111). Undersigned counsel also addressed these points to the Court orally at the final fairness hearing. Dkt. 306 at 15-17. These Lindberg Objection points match one-to-one with the reasons the Court gave for denying final approval of the first settlement agreement.

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND MEMORANDUM IN SUPPORT

The Lindberg Objection exclusively presented arguments not just *that* the claims process would depress class claims but also *why* that created a Federal Rule of Civil Procedure 23 problem for granting final approval. Dkt. 277 at 102. It also was the only timely objection that argued that class counsel had presented insufficient evidence to support their lodestar fee request. Dkt. 277 at 111. Finally, the Lindberg Objection's treatment of the *Bluetooth* problems in the first settlement agreement was approximately four-times more thorough than the next most-detailed objection to raise the point. *Compare* Dkt. 277 at 103-107 *with* Dkt. 277 at 85-86. Thus it is clear that the Court benefited from the Lindberg Objection in its analysis.

The Lindberg Objection was especially prescient about the depressed claims rate, which predicted that the convoluted settlement procedure would result in low claims rates. Dkt. 277 at 101-102. While no objector could not have known it at the objection postmark deadline, less than 1% of potential claimants made a claim for the first settlement agreement. Dkt. 300 at 7. The Court expressly cited the convoluted claims process and attendant miniscule claims rate as its reason for being "without a basis for any confidence that the class settlement fairly and adequately compensates the number of people who were using the Other OS functionality before Sony introduced Firmware Update 3.21 and were injured by the loss of that functionality." *Id.* at 7-8.

**B. The new settlement agreement cured other defects raised in the Lindberg Objection *expressly* in response to the Lindberg Objection's arguments.**

In addition to increasing class participation, the Lindberg Objection motivated the settling parties to resolve the obvious *Bluetooth* issues from the first settlement agreement. Assuming the Court approves the new settlement agreement in line with class counsel's motion, the lawyers will take over $1 million less in fees and costs than they requested previously. As explained in the Lindberg Objection, "[i]f fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members . . . than could otherwise have obtained." Dkt. 281 at 50 (quoting *Stanton v. Boeing*, 327 F.3d 938, 964 (9th Cir. 2003)). Class counsel's new fee motion itself admits of this basic math as it points out that the new settlement agreement gives "the best possible notice and compensation for Class members . . . even at the expense of Plaintiffs' attorneys' own compensation." Dkt. 346 at 3. In following the Lindberg Objection's logic, class counsel

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND
MEMORANDUM IN SUPPORT

admits the Lindbergs and the Court were right in 2017 when they saw that class counsel compensation had prevailed over recovery for class members in violation of *Bluetooth*. Defendant admits the same, and explicitly points out that the new settlement resolves the Lindberg Objection's trio of *Bluetooth*-based complaints. Dkt. 337 at 17:9-16.

Defendant also admitted that the Lindberg Objection motivated a narrower release in the new settlement agreement. The new release "is limited to claims 'that arise out of or in any way relate to the subject matter of the Action and the Released Claims that were or could have been alleged in the Action.'" Dkt. 337 at 18:2-4 (quoting the new settlement agreement at ¶35). This is exactly the type of change the Lindberg Objection demanded and is a significant benefit to the class exclusively due to the Lindbergs' participation in the case. Dkt. 277 at 3-6.

### C. Any argument that the Court would or should have rejected the first settlement approval on its own without the benefit of objections is refuted by the settling parties' own statements supporting final approval.

The settling parties may argue that the Court was correct to reject the first settlement on the grounds that it did, and as such would have done it on its own, thus denying the Lindbergs' entitlement to fees. This argument, if made, would be conclusively refuted by the settling parties' contemporaneous statements in support of final approval of the first settlement agreement.

The settling parties argued vociferously that the first settlement agreement should have been approved despite an abysmal claims rate and enormous claims rejection rate. Class counsel insisted that it only "appears that the claims rate is very low" when, in her view, it was actually a high "50 percent claims rate." Dkt. 306 at 20:1-2 and 22:7-8.

Defendants cheerfully defended the claims rate on the basis of a theoretically-large "reach of notice." *Id.* at 32:5-6. Helpfully adding, "[i]n addition to that, there were Tweets. There were press releases." *Id.* 33:6-7. Both defenses of the low claims rates were facially absurd, but someone has to fight even absurdities and the Lindbergs successfully fought them off by objecting. Any argument today that the Court could have done it on its own begs the question: why did the settling parties present frivolous arguments at the time?

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND MEMORANDUM IN SUPPORT

### D. The new settlement entitles the Lindbergs to attorneys' fees, costs, and an objector incentive award.

The Lindberg Objection achieved, and should be credited with, a total benefit to the class of $2,272,795 and significant non-pecuniary benefits in the form of elimination of *Bluetooth* defects and a narrower release. The Lindbergs are thus entitled to a share of the total attorneys' fees awarded in this case because their objection realized a substantial pecuniary benefit to the class. *See Rodriguez II,* 688 F.3d at 658-59 (objectors are entitled to attorneys' fees when they confer a substantial benefit on the class); *Rodriguez v. W. Pub'g Co.*, 563 F.3d 948, 963 (9th Cir. 2009) ("*Rodriguez I*") (finding it "clearly erroneous" to deny fees to objectors who successfully objected to incentive awards, thereby augmenting the class's net fund by $325,000); *Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994) (error to deny fees to objector who benefited the class in the form of reduced counsel fees).

Class counsel may argue that Objector Lindberg is not entitled to attorneys' fees because the Court would have rejected the first settlement agreement *sua sponte*, regardless of whether any objections were filed, or based on the objections filed by other objecting class members. Neither is a meritorious reason to deny the requested attorneys' fees. First, an objector cannot know in advance what a court will decide to do with respect to any particular issue. *See Reynolds*, 288 F.3d at 288 ("objectors must decide whether to object without knowing what objections may be moot because they have already occurred to the judge."). When the court denies class counsel's fee request "[i]n the wake of [an] objection," the Ninth Circuit "cannot let stand a ruling that [o]bjectors did nothing that increased the fund or substantially benefitted the class members." *Rodriguez I*, 563 F.3d at 963. Provided that the court had not already been focused on the issue, it is "clearly erroneous" to deny objector fees on the ground that objector's counsel "did not add anything." *Id.* This is especially true in the class action settlement context, where the only ostensibly adverse parties— the defendants—are concerned solely with their bottom-line payment and are indifferent to how the common fund is allocated among the class and the plaintiffs' attorneys and rarely submit adversarial briefing to aid a court's review of a fee request. *See Gutierrez v. Wells Fargo, NA*, No. 07-cv-05923 WHA, 2015 WL 2438274, at *6 (N.D. Cal. May 21, 2015); *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999) ("The contribution [the objector's] attorney made, by providing an adversarial context

1   in which the district court could evaluate the fairness of attorneys' fees, was substantial."). Worse are cases

2   like this where the defendant, in a "clear sailing" agreement, promises not to object to the attorneys' fee

3   request. *See* First Settlement Agreement at ¶107-108; *Bluetooth*, 654 F.3d at 947; *accord Redman v. RadioShack*

4   *Corp.*, 768 F.3d 622, 637 (7th Cir. 2014). Our judicial system is premised on adversarial presentation;

5   without it, a district court generally is ill-equipped to perform an investigatory function, and the settling

6   parties have no incentive to suggest the court should scrutinize their bargained-for agreement. *See Pearson v.*

7   *NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014).

8       Failing to award attorneys' fees would be an even more glaring error here where defendants have

9   admitted they also made non-pecuniary changes that improved the settlement *directly in response to* the

10   Lindberg Objection. Dkt 337 at 18-19.

11       While this Court may have rejected the prior settlement agreement and excessive attorneys' fee

12   request on its own, Objector Lindberg could not have known that in advance of the objection deadline.

13   Indeed, there is no shortage of examples of courts in this Circuit, including this one, granting final approval

14   of settlements with extremely-low claims rates and/or attorneys' fees which constitute a large fraction of

15   the total settlement. *See, e.g., In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 701 (9th Cir. 2018)

16   (reversing a settlement which awarded $9 million in attorney' fees and costs against a nominal $44 million

17   fund value but whose new claims attributable to the attorneys' fees were just a small fraction of the overall

18   fund); *Chambers v. Whirlpool Corp.*, 214 F.Supp.3d 877, 905 (C.D. Cal. 2016) (awarding $14.8 million of

19   attorneys' fees in a coupon-settlement case with a class member response rate of 3.7%); *Edwards v. Nat'l*

20   *Milk Prods. Fed.*, Case No. 11-cv-04766-JSW, 2017 WL 3616638 at *4 (N.D. Cal. June 26, 2017) (granting

21   final approval and a 2x lodestar multiplier despite a 5.2% claims rate).

22       Awarding objectors fees is often a matter of "wrestling with a problem of joint causation" of both

23   objectors' and plaintiffs' counsel. *Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 747 (7th Cir. 2011). "The

24   fact that these efforts were successive rather than simultaneous has no significance. [Class] counsel created

25   an asset—the expected gain from the lawsuits—the value of which they did not realize. The efforts of the

26   other lawyers enabled the full value to be obtained." *Id.* Simply put, while class counsel and defendants

27

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND
MEMORANDUM IN SUPPORT

were at the table to negotiate the new settlement, had the Lindbergs not intervened in the case and given the Court reasons to reject the previous settlement agreement, there might not have been a new negotiation in the first place. As a result, the class—the harmed individuals—recovered an additional $2,272,795. Because of this "joint causation," the Lindbergs do not claim entitlement to a full 25% of the $2.27 million. They are entitled to claim half of that amount, but instead of seeking $284,099.38, an amount that could be characterized as an excessive windfall, the request is limited to a far more modest 3.3%.

Class counsel also may argue that the Lindbergs should only recover that portion of fees that are attributable to work on prevailing arguments. First, even if the Court were conducting a full baseline lodestar analysis,[5] that methodology does not recommend an idea-by-idea, contention-by-contention inquiry, given the success of the Lindbergs' participation on the whole. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results ... the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit…. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.").

Second, that argument would set an egregious double standard for objectors. There is no evidence class counsel reduced their lodestar for time spent researching or advancing specific positions that ultimately were not meritorious. They also seek to recover expenses in full, including for ultimately-unsuccessful portions of the litigation like the prior settlement agreement's failed approval efforts. Moreover, the Lindbergs could not have raised the arguments the Court cited and the settling parties directly addressed in the new settlement agreement without putting in the time to analyze the entire first settlement as a necessary precondition. It would be nearly impossible to separate out which hours were spent specifically on which arguments and determine an appropriate division of their time spent on the case as a whole, such as preparing for and attending the fairness hearing. Additionally, the settling parties increased the time that undersigned counsel had to devote to the case as a whole by making unprofessional

---

[5] To be clear, Objector Lindberg submits his lodestar as a crosscheck against the percentage-based request. *See* sections III-IV, *infra*.

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND MEMORANDUM IN SUPPORT

1   and false *ad hominem* attacks, to which undersigned counsel had to respond with a Rule 11 safe harbor letter

2   and its attendant attachments as well as a proposed reply and attendant administrative motion and

3   declarations to ensure the Court had an accurate record before it at the fairness hearing. Miorelli Decl. at

4   ¶8-12. However, all class members benefited by the litigation as the Court noted in refusing to remove the

5   offending documents from the docket despite the corrected filings since it flagged for all and created a

6   permanent public record of the unprofessional behavior. Dkt. 299.

7     If the Court were to exclude any time based on an argument-by-argument analysis, it would create

8   perverse incentives. It would mean there are no consequences to class counsel just because their attempt to

9   take extra money from the class[6] was so blatant that it did not take much time for an objector's attorneys to

10  devise a response to that particular defect. And it would mean there are no consequences to parties making

11  false accusations, in violation of this District's professionalism guidelines, to discredit objectors seeking to

12  redirect funds that rightly belong to the class back to the class members. Just because abusive and hostile

13  treatment of objectors is commonplace does not make it right. As has been the all-too-customary

14  experience of undersigned counsel, class counsel here adopted a "hammer and tongs" approach that was

15  unwarranted. *In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2012 WL 3854501, at *11 (W.D. Wash. Jun.

16  12, 2012).

17    Awarding objector's fees as a percentage of the benefit conferred on the class avoids these pitfalls.

18  *See* section III, *infra*.  In some cases, it may take objectors considerably less time to raise a meritorious

19  argument to an unlawful settlement or excessive fee request than it does to respond to *ad hominem* attacks.

20  In order to realize the promise of the "critically valuable service"[7] that informed good-faith objectors

21  provide, those objectors who do confer material benefits upon the class should be encouraged and

22  compensated.

23

24    [6] It bears repeating here that in addition to making the class $2.27 million poorer, the prior

25  settlement agreement would have made class counsel about $1 million richer.

26    [7] *Lane v. Facebook*, 696 F.3d 811, 830 (9th Cir. 2012) (Kleinfeld, J. dissenting), *rehearing en banc den'd*,

27  709 F.3d 791 (2013), *cert den'd* 134 S. Ct. 8 (2013).

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND
MEMORANDUM IN SUPPORT

In short, objection entails risk. *Rodriguez v. W. Publishing Corp.*, 602 Fed. Appx. 385 (9th Cir. 2015) (*"Rodriguez III"*) (reversing district court's conclusion that class action objection is a "matter which [has] little risk"). Miorelli Decl. at ¶ 5, 8-9, 11, 24-26, 28. There is no guarantee a court will honor objections and even a successful objection may merely scuttle a settlement without class benefit creating an entitlement to attorneys' fees; and class counsel may still challenge an objector's entitlement to fees even after an objection results in improvement in direct benefit to the class. *See, e.g., McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 660 (E.D. Pa. 2015).

## III.    A total fee award of 3.30% of the benefit conferred is reasonable.

The difference in class member recovery as a result of the Lindberg Objection is the additional $2,272,795 that is likely to be distributed to the class. Class counsel seeks, and the Lindbergs endorse, fee awards based primarily on the percentage-of-recovery method, consistent with the broader trend of courts recognizing that this method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see generally* Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809 (2000) (citing authorities that show a "broad consensus that percentage-based formulas harmonize the interests of agents and principals better than time-based formulas like the lodestar approach"). So as to align objectors' interests with those of the class, they too should be awarded fees on a percentage basis, with the lodestar crosscheck guarding against undeserved windfalls.

The benchmark for a reasonable award in the Ninth Circuit in a case alleging economic inquiry is 25% of the class benefit. *Bluetooth*, 654 F.3d at 942. Splitting that 25% with class counsel would entitle an objector to 12.5% of the benefit, and many courts agree that objectors' counsel are entitled to a similar recovery for their efforts as class counsel. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F. Supp. 2d 563, 572 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695 (3d Cir. 2004) (awarding objector same percentage of their share of class recovery as class counsel for their share of class recovery); *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 396 (D.N.J. 2012) (awarding the Center for Class Action Fairness

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND
MEMORANDUM IN SUPPORT

"10.5% of the benefit conferred, well within the range of acceptable percentages-of-recovery"); *see also In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 748 (7th Cir. 2011) (finding an award of $2.7 million (3.8% of the benefit conferred) "was too small" and concluding that objector's counsel was entitled to $4.125 million (5.9% of the benefit conferred); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. 2011) (finding that "10% [of $3 million benefit conferred] is reasonable and appropriate to reflect Objectors' time, effort, ingenuity and success in increasing the kitty for the benefit of the Class"); *Lan v. Ludrof*, Case No. 1:06-cv-114, 2008 WL 763763, at *28 (W.D. Pa. Mar. 21, 2008) (awarding objector 25% of the increase in benefit to the class).

Here, objectors would be legally entitled to a fee award of over $284,099.38 (12.5% (or half of the 25% benchmark) of $2,272,795). Objector Lindberg, however, is seeking a mere 3.3% of the over $2.27 million increased pecuniary benefit—$75,000 in attorneys' fees—and a fraction of the legally justified 12.5%.

An award of 3.3% is facially reasonable and well below the 26.3% that class counsel seeks and which the Lindbergs do not oppose; it is approximately one-eighth of class counsel's request (and one-eighth of the overall 25% benchmark). The Lindbergs limit their request to far less than they would be entitled to avoid any appearance of excess.

## IV.   Undersigned counsel's lodestar of $48,301.20 provides a reasonable cross-check.

District courts utilize a lodestar cross-check because "the lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate.'" *Bluetooth*, 654 F.3d at 945. A lodestar cross-check confirms the reasonableness of this attorneys' fee request.

The lodestar of $48,301.20 reflects an efficiently litigated objection. It includes 136.1 hours billed by Sam Miorelli and 5.4 hours billed by Grant Atkinson. The lodestar is conservative with Atkinson's rates based on the hourly fee he bills his paying clients in his role as Managing Partner at his firm Framework Law Group PC and Miorelli's rates following the most-recent U.S. Attorney's Office Attorney's Fees Matrix 2017-2018. Miorelli Decl. ¶ 20-21, Declaration of Grant Atkinson ("Atkinson Decl.") ¶ 10. Both attorneys' hourly rates are less than the hourly rates charged by almost all of class counsel's associate

attorneys; in some cases over $100 per hour less. *See, e.g.* Dkt 346-1 at 94. The Lindbergs' attorneys reviewed approximately 23 documents from the record of this case that totaled approximately 739 pages, a significant task for a small legal team without support staff to perform in just a few days. Miorelli Decl. ¶ 6. They then prepared an objection which opposed final approval and the fee motion for several reasons, cited 50 cases plus other authorities, fended off false *ad hominem* attacks, joined Susan Lindberg to the case, prepared for and attended the fairness hearing, and tracked over a year of further litigation, all in a reasonable 141.5 hours. *See* Miorelli Decl. ¶ 6-17; Atkinson Decl. ¶ 4-5.

The request for $75,000 in fees reflects a modest 1.55 multiplier of the lodestar. This is presumptively reasonable for an objection with this level of success. *See Edwards v. Nat'l Milk Prods Fed.*, Case No. 11-cv-04766-JSW, 2017 WL 4581926 at *3 (N.D. Cal. Sept. 13, 2017) (awarding the primary objector who provided the most benefit to the class a 1.6x lodestar multiplier)

The Lindbergs' legal team has objected in about a dozen cases to-date and, including this case, has caused almost $7.2 million in improvements to cases for class members in addition to significant improvements to terms and conditions, such as causing geographic restrictions to be removed from a pure coupon settlement. Miorelli Decl. ¶ 25. They have never received remuneration related to an objection without such award being approved by a court. *Id.* The amount of work in this case is representative of the number of hours needed in each class action case they work on. *Id.* at ¶ 23.

## V. The attorneys' fee award should be paid by Class Counsel, rather than the class.

"[T]he 'common benefit' theory is premised on a court's equity power." *United Steelworkers of Am. v. Sadlowski*, 435 U.S. 977, 979 (1978); *accord Rodriguez II*, 688 F.3d at 654. As between class members and class counsel, "equity requires that the loss, which in consequence thereof must fall on one of the two, shall be borne by him by whose fault it was occasioned." *Neslin v. Wells*, 104 U.S. 428, 437 (1882). The objectors' fees thus should be borne by class counsel, who had complete responsibility for the inadequately documented lodestar fee request and who had a fiduciary duty to avoid *Bluetooth* problems, an unfair claims process, and the many other problems found in the first settlement. The class should not have to pay twice for a benefit they should have received at the outset. (If class counsel is awarded their requested fees and

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND
MEMORANDUM IN SUPPORT

then the requested objector fees are deducted, class counsel will still be compensated with over $1 million in fees and cost reimbursement for their work and their net fee will be only slightly below the 25% benchmark despite all of the additional unnecessary litigation they caused with, *inter alia*, improper *ad hominem* attacks.) It would be inequitable if the class were double-billed for the Lindbergs' success. *See McDonough*, 80 F. Supp. 3d at 662 (debiting objector's fee award from class counsel's award because class benefit was only achieved on the "second try").

Perhaps this is why many courts across the nation have held that objector fees should be paid out of class counsel's award.[8] Most recently, in *Hendricks v. StarKist Co.*, this Court found it "appropriate and justified" to pay objectors' $150,000 fee out of class counsel's fee fund. Case No. 13-cv-00729-HSG, 2016 WL 5462423, at *16 (N.D. Cal. Sept. 29, 2016). There, it was the "acquiescence" of class counsel to defendant's overbroad release that necessitated objector participation. *Id.* Here it was class counsel's overzealousness for their fees without regard to a claims process that prevented most class members from participating and numerous other defects. It would be highly inequitable to require the class to foot the bill for **both** class counsel **and** objector's counsel, when class counsel alone created the necessity of objection by tendering an unreasonable settlement and fee request in the first place. *Cf. Wilson v. SW Airlines*, 880 F.2d 807, 816 (5th Cir. 1989) ("class counsel … asked for unreasonably high enhancements and additional fees. Indeed, class counsel produced a figure that would exhaust the entire surplus…. [F]or this reason we hold that, although class counsel's conduct does not destroy its equitable claim, it does diminish it.").

It is not punitive when objectors' fees are paid from the same pot awarded to class counsel. Rather, doing so recognizes several realities, equities, and best practices of settlement and class representation. The court's opinion in *Great Neck Capital Appreciation Inv. P'ship v. PriceWaterhouseCoopers* provides pertinent

---

[8] *E.g.*, *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, MDL No. 09-2067, 2014 WL 4446464, at *10 & n.1 (D. Mass. Sept. 8, 2014) (same); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-17 (N.D. Ohio 2010) (same); *Parker v. Time Warner Entm't Co.*, 631 F. Supp. 2d 242, 277 (E.D.N.Y. 2009) (same); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F. Supp. 2d at 573 (same); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 2 F. Supp. 2d 175, 176 (D. Mass. 1998) (same); *In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F. Supp. 2d 1208, 1215 (D.N.M. 1998) (same); *In re Citigroup Sec. Litig.*, No. 07-cv-9901 (SHS), Dkt. No. 286, Order at 1-2 (S.D.N.Y. Sept. 10, 2013) (same with objector's expenses).

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND MEMORANDUM IN SUPPORT

discussion of this issue. 212 F.R.D. 400, 416-17 (E.D. Wis. 2002). There, the court recognized its equitable discretion to impose the burden of paying objector fees on the class but correctly declined to do so, based on its recognized fiduciary obligation to safeguard the class funds. *Id.* at 417. Instead, the court awarded the objector fees from "class counsel and the defendants as they may agree but without diminution of the sum awarded to the class." *Id.*; *accord In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 197 (E.D. Pa. 2000) (Objectors' "fees and costs will be taken from class counsel's award to avoid dilution of the settlement fund.").

Awarding fees from class counsel's award is also good public policy. It provides a practical incentive for class counsel to avoid proffering settlements that have a high probability of being objectionable to class members and to the courts. Plenty of unfavorable settlements and excessive fee requests are approved quickly, quietly, and unopposed, without a single objection filed. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 FJC survey of several federal districts that reported between 42% and 64% of settlements engendered no filings by objectors); *see generally In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) ("No class member objected either—but why should he have? His gain from a reduction, even a large reduction, in the fees awarded the lawyers would be miniscule."). Add to that the reality that small teams like the Lindbergs' have extremely limited resources themselves, and it is readily apparent why class counsel must be encouraged to submit good requests on their own. If they are not even responsible for paying the comparatively minimal fees of successful objectors, then there will be little if any incentive for them to request reasonable amounts of fees supported by reasonable settlement terms from the very outset. "Outside-chance opportunity for a megabucks prize must cost to play." *Commonwealth Electric Co. v. Woods Hole*, 754 F.2d 46, 49 (1st Cir. 1985).

## VI.     The requested expenses reimbursement is reasonable.

As part of a fee award, counsel "may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008). The Lindbergs' attorneys incurred $1,360.15 in expenses litigating this matter, the breakdown of those expenses is set forth in the Miorelli declaration. Those costs were for (a) court fees, (b)

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND
MEMORANDUM IN SUPPORT

FedEx/USPS costs billed at the Law Office of Sam Miorelli, P.A.'s discounted FedEx and Stamps.com rates, (c) travel expenses for travel to the fairness hearing, (d) copying costs, and (e) PACER fees for downloading documents and dockets for this case. Miorelli Decl. ¶ 26-27. Each of these costs would normally be paid by the Lindbergs as part of their contingent-fee arrangement and would normally be paid by any other client of undersigned counsel in a non-contingency matter. *Id.* at ¶ 27. None of the requested expenses are for overhead or Westlaw/Lexis. *Id.* These expenses are approximately one-third of what undersigned counsel normally budgets for a case such as this one, and that efficiency weighs in favor of approval of the expenses. *Id.* at ¶ 27.

**VII.    The Lindbergs are entitled to an incentive award.**

Incentive awards are proper to award to objectors like the Lindbergs who confer a benefit on the class. *In re Apple Inc. Sec. Litig.*, No. 5:06-CV-05208, 2011 WL 1877988, at *5 (N.D. Cal. May 17, 2011). In *Apple*, the court awarded an objector an incentive award when their objection resulted in a proposed $2.5 million donation to a university instead being redirected to the class members as part of the settlement fund. *Id.* The Court gave the objector an incentive award as well as awarding fees that resulted in a $836/hour rate for this improvement to "compensate [the objector] and his counsel for their contributions to this litigation." *Id.*

The Lindbergs have opposed a $3,500 incentive award to the class representatives and only request that amount in as much as it is the same as the amount class counsel requests for the class representatives. To the extent the Court chooses to award less to the class representatives, the Lindbergs believe it is appropriate for their incentive award to be the same as the other class representatives', whatever that amount may be. A comparison of the outcome also supports an incentive award for the Lindbergs. The net recovery for the class if approved according to class counsel's request will be $2,482,500, which divided across five class representatives is $496,500 each. The Lindberg Objection resulted in $2,272,795 of that net recovery which otherwise would have remained with Sony or class counsel, meaning that on a per-litigant basis, the Lindbergs are responsible for about $1.78 million more per-litigant than each of the class

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND
MEMORANDUM IN SUPPORT

representatives. A $3,500 incentive award for this work is clearly reasonable on the same logic and to the same extent that class counsel seeks equivalent awards to the representatives.

Finally, the Lindbergs faced the ignominy of both settling parties' *ad hominem* attacks which were initially laced with falsehoods. *See* Miorelli Decl. ¶ 8. None of the class representatives had such things said about them by defendant, and the Lindbergs should not have had such things said about them and their counsel. Dkt. 290-3 at ¶4. Nevertheless, this behavior is common and clearly intended to chill objections. *See* Miorelli Decl. ¶ 5, 28. If it had succeeded, the class would not have had the benefit of the adversarial system and may have received a $2.27 million lower recovery. This factor weighs heavily in favor of granting an incentive award.

## CONCLUSION

For the foregoing reasons, the Lindbergs respectfully ask the Court to award their attorneys $75,000 in fees and $1,360.15 in expenses, and award Eric Michael Lindberg (or in the alternative, his mother Susan) a $3,500 incentive award.

Dated: April 23, 2018                    Respectfully submitted,

                                         */s/ Sam A. Miorelli*
Grant F. Atkinson (SB# 293760)           Sam A. Miorelli (*pro hac vice*)
**Framework Law Group PC**               **Law Office of Sam Miorelli, P.A.**
1275 E 6th Street                        4715 N Harbor City Blvd.
Suite 8A                                 Melbourne, FL 32935
Los Angeles, CA 90021                    Telephone: 352-458-4092
Telephone: (847) 987-7361                E-Mail: sam.miorelli@gmail.com
E-Mail: grant@frameworklaw.com

                    *Attorneys for Objectors Eric Lindberg and Susan Lindberg*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing motion and attached exhibits using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case.

DATED this 23rd day of April, 2018.

/s/ Sam A. Miorelli
Sam A. Miorelli

NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND MEMORANDUM IN SUPPORT