**Law Office of Sam Miorelli, P.A.**
Sam A. Miorelli (Florida Bar No. 99886, *pro hac vice*)
4715 N Harbor City Blvd
Melbourne, FL 32935
Telephone: (352) 458-4092
E-Mail: sam.miorelli@gmail.com

**Framework Law Group PC**
GRANT ATKINSON (SBN 293760)
1275 E. 6th Street, Suite 8A
Los Angeles, CA 90021
Telephone: (847) 987-7361
E-Mail: grant@frameworklaw.com

*Attorneys for Objectors Eric Lindberg and Susan Lindberg*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISON

| | |
|---|---|
| In re SONY PS3 "OTHER OS" LITIGATION | Case No.: 4:10-CV-01811-YGR |
| ERIC MICHAEL LINDBERG and SUSAN LINDBERG, | **DECLARATION OF SAM A. MIORELLI, E.I., ESQ. IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND OBJECTOR INCENTIVE AWARD** |
| Objectors. | |

I, Sam A. Miorelli, E.I., Esq., declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a sole practitioner through the Law Office of Sam Miorelli, P.A. and am lead counsel to Objectors Eric Michael Lindberg and Susan Lindberg. I am an attorney licensed to practice law in the State of Florida and am admitted before this court *pro hac vice*. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them.

2. My firm's lodestar for work performed in this matter is $46,546.20, and the Law Office of Sam Miorelli, P.A. has incurred $1,360.15 in unreimbursed expenses, as set forth in more detail below.

3. I have been a member of the Florida Bar since October 2012. I began my career as an appellate litigator and then transitioned into an in-house position in 2013. Since that transition I

have maintained the Law Office of Sam Miorelli, P.A. where I do all of my legal work for select clients where that representation does not conflict with my day job. Most of my legal work consists of drafting construction contracts, handling first and third-party insurance claims, and objecting to a small fraction of the problematic class action settlements I encounter.

4. Over the Thanksgiving holiday 2016, I learned about the instant case from Mr. Lindberg. I investigated the documents available on the Settlement Administrator's website and discussed them with Mr. Lindberg. It was immediately apparent that there were concerning aspects to the first settlement agreement, but we agreed not to make a decision regarding whether to object until we had a chance to review class counsel's motion for attorneys' fees. After class counsel's motion was filed, it was readily apparent that the first settlement agreement was not acceptable and Mr. Lindberg instructed me to proceed with preparing an objection.

5. Having objected in class actions before, I warned Mr. Lindberg that sometimes plaintiffs' lawyers in these cases treat objectors very harshly and even use *ad hominem* attacks. Mr. Lindberg was also aware of this pattern of behavior due to his and my ongoing discussions of plaintiffs' lawyers' behavior in other class action cases I was litigating at the time, including one representing him. I also warned him that they might make financial threats against him if he objected. Mr. Lindberg recognized the risk to his reputation, but bravely decided to object to the first settlement anyway.

6. What followed was a sprint, including a furiously busy weekend, of legal research and writing since the time between the late filing of class counsel's fee motion and the objection deadline was very short. I downloaded from PACER and the class website and read about 23 documents, consisting of approximately 739 pages. I also reached out to my co-counsel to bring him on board for the case. I read all of the documents, notated each of them regarding their content and importance, conducted legal research on Westlaw, researched the Court's local rules and standing order, and wrote the objection. I engaged in several rounds of edits with Mr. Lindberg and Mr. Atkinson which ultimately resulted in a final objection which was printed and mailed shortly before the postal deadline in Orlando. While I took the lead on the work, Mr. Atkinson and Mr. Lindberg

both made significant and important contributions to the overall quality of the work presented to the Court. From start through mailing the objection, I worked 44.3 hours on the case.

7. Having met the filing deadline, I worked with Mr. Atkinson to prepare the documents to apply for admission *pro hac vice*. Shortly after the objections were filed by the Settlement Administrator, we moved for and I was granted *pro hac vice* admission.

8. The Settling Parties wasted no time in filing responses to the objection which (a) engaged in the same anti-class-member claims-reducing antics which the Court noted in ultimately rejecting the first settlement agreement (arguing that Mr. Lindberg was not a class member) and (b) engaged in impermissible and false *argumentum ad hominem* against Mr. Lindberg and his legal team. We responded appropriately by drafting proposed Federal Rule of Civil Procedure 11 motions, accompanying declarations, proposed orders, and safe harbor letters. We transmitted these by e-mail and USPS to the settling parties on January 13, 2017. Between the time the objection was filed and the time the Rule 11 safe harbor letters and their attachments were sent, I worked an additional 24.0 hours.

9. In light of the arguments, which I believed to be non-meritorious, that Mr. Lindberg was not a class member, we approached his mother to see if she was willing to help protect his rights. I prepared new declarations for the Lindbergs to respond defending their class membership, had extensive discussions with Mrs. Lindberg about the risk she took by joining the case due to the acrimonious and unprofessional way the settling parties had treated objectors, and prepared a proposed reply as well as administrative motion seeking leave to file the same. The administrative motion was, like the involvement of Mrs. Lindberg, entirely prophylactic. I did not believe they were necessary, but we decided to pursue them out of caution in light of arguments from class counsel with a goal of making sure the objection was heard and the class' interests protected.

10. The following week, after extensive discussions which were generally cordial with their counsel, defendants: (1) corrected their filings before the Court to remove the false statements and (2) did not object to Susan Lindberg's joinder of the claim and objection and the administrative motion to file an objector reply in advance of the first final fairness hearing.

11. Discussions with Plaintiffs were less pleasant and were regularly peppered with threats, both oral and by e-mail, to bring frivolous sanctions motions against the Lindbergs and their counsel. Nevertheless, Plaintiffs also removed their false statements in new filings before the Court in advance of the first final fairness hearing.

12. I finalized and filed the proposed reply, the declarations, and the (in my opinion unnecessary, but demanded by class counsel) administrative motion seeking leave to have them before the Court in advance of the hearing. I also spent several hours preparing my speaking notes for the hearing. The total amount of time I worked on the case between sending the Rule 11 safe harbor letters and the start of my all-day trip to California for the first final fairness hearing was an additional 24.7 hours.

13. In an effort to reduce costs, I traveled to the first final fairness hearing in a 24 hour marathon that kicked off with a 6 a.m. flight departing Orlando the morning of the hearing followed by a red-eye return flight the same night, landing back in Orlando just before 6 a.m. the following morning. This dramatically cut costs since no hotel stay was needed. It required taking a vacation day from my day-job to attend the hearing.

14. At the first fairness hearing, I was one of only two counsel for objectors to present arguments to the Court. Before the hearing, I coordinated my oral presentation with the other objector counsel in the interest of saving time. The Court heard my arguments in a lively discussion. Neither Plaintiffs nor Defendant objected to my appearance before the Court.

15. After the hearing I had a short discussion of our impression of the future of the case with counsel for the other objector and I also had telephone discussions of the hearing with co-counsel and the Lindbergs. The trip for the hearing was exactly 24 billable hours.

16. The Court's order denying final approval largely vindicated our view of the first settlement agreement. I reviewed that decision and briefed Mr. Lindberg and my co-counsel and discussed probable next steps in the case. Since then I have kept up with all of the filings in the case and provided Mr. and Mrs. Lindberg regular updates. When the second settlement agreement

received preliminary approval and the attorneys fee motion was filed, I re-evaluated the case and briefed Mr. Lindberg.

17. In my opinion, the new settlement agreement is a significant improvement on all fronts. The settling parties have admitted that many of the changes are directly responsive to the objection we filed. The financial impact of the settlement agreement to the class is dramatically improved and the terms are more favorable in several significant regards. I expressed this opinion to my clients, who agreed and who authorized a filing for attorneys' fees, costs, and an incentive award. My work up until the time I started preparing the attorneys' fee, costs, and incentive award motion was an additional 19.1 hours, resulting in a grand total of 136.1 hours worked on the case.

18. I promptly requested a meet and confer phone call with class counsel and defendants. Telephone meet and confer sessions were held with class counsel. Class counsel indicated they would oppose the motion on the basis that they do not believe Eric Lindberg was ever a class member and is not one now. Defendants explicitly denied my e-mailed and voicemail-made requests for a meet and confer call.

19. In light of class counsel's indication that they still will argue that Mr. Lindberg is not a class member, Susan Lindberg re-filed a claim using the class website in advance of the claims deadline. I believe any argument that Mr. Lindberg is not a class member under the second settlement agreement is explicitly foreclosed by its own terms and by oral and written representations of the meaning of the second settlement agreement before the Court at the preliminary approval stage. The Lindbergs do not and never have intended to have more than one claim for the single PS3. They and I believe Eric is the proper class member, but they have cautiously taken all steps necessary to protect Eric's rights, including having his mother step in to do so. Involving Mrs. Lindberg, then and now, is truly unnecessary work which only has been done due to the intransigence of the settling parties.

20. I am a lawyer with 5.5 years of experience and I believe my hourly rate of $346 is fair. That belief is informed by the hourly rates claimed in this case for class counsel. (Dkt 346). The lowest rate billed for the lowest-ranking associate at any of class counsel's firms was $300 per

hour, and the lowest rate billed for a partner was $450 per hour. (Dkt 346-1 at 89, 108, 112). Class Counsel's blended average lodestar claimed in this case for lawyers is $635.58 per hour, 84% higher than my hourly rate.[1] Independent of this case I am also informed in setting my fee by the fee I charged when I was a full-time appellate litigator from 2012-2013 when my rate was $350 per hour at Brownstone, P.A. with offices in Winter Park, FL, which is adjacent to Orlando, FL. This is verified by the current U.S. Attorney's Office Matrix for 2015-2018 which indicates an hourly rate of $346 per hour for attorneys with 4-5 years of experience.

21. My rate has been awarded in other cases in this District where my client's objection resulted in an improved outcome for the class. *Edwards v. Nat'l Milk Prods Fed.*, Case No. 11-cv-04766-JSW, 2017 WL 4581926 at *3 (N.D. Cal. Sept. 13, 2017). It was also the basis of the settlement of an appeal which was approved in March by Judge Edward Chen of this District. *In re Carrier IQ, Inc., Cons. Priv. Litig.*, Case No. 12-md-2330-EMC, Dkt 516 (N.D. Cal. Mar. 9, 2018). My rate is also informed (though generally this factor suggests my rate should be much higher) by the declarations of other lawyers in other class action cases in which I am involved. It is on this basis that I am also confident that Mr. Atkinson's rate is reasonable.

22. My rate is set by me alone and is the same no matter what geographic location I am practicing in. I update it on an annual basis and use it regardless of the payment arrangements I have with a client regarding contingency.

23. **At my hourly rate of $346 per hour, my total lodestar is $46,546.20.** The time figures described in this declaration come from my contemporaneous, tenth-of-an-hour-based time records maintained by the Law Office of Sam Miorelli, P.A. in the ordinary course of business. They reflect all hours worked on tasks to represent the interests of Mr. Lindberg in his capacity as a member of the Class and Mrs. Lindberg to the extent that she would be found as the proper class member instead. A detailed report of my work performed on this case will be made available for the Court's *in camera* review if requested. Combined with Mr. Atkinson's time (explained in his

---

[1] Class Counsel's blended average attorney lodestar was calculated from the lawyer hours and billings set forth in Exhibit E to the Fauth Declaration (Dkt 346-1).

declaration), the total lodestar is $48,301.20. I am confident this amount of time is reasonable when compared to the other cases in which I have worked on objections.

24. Mr. Atkinson and I took on significant risk undertaking this litigation. Class action objectors, regardless of their motives, are often the most derided creature in a federal courtroom. *Argumentum ad hominem* is so common against objectors that it is often hard to find local counsel for a case: not because of any lack of interest and willingness, but instead out of concern of avoiding mudslinging. If not for Mr. Atkinson's courage, the Lindbergs may have had to proceed *pro se* in the instant action.

25. The work on this case was a significant commitment. The Law Office of Sam Miorelli, P.A. is not my primary source of income. Yet taking on a case like this necessarily involves a significant outlay of time and resources, including the burden of traveling across the country to appear before the Court. I have no support staff and effectively all of my work is done during nights and weekends. This case was particularly burdensome as most of the work had to be done in just a few days, which meant a marathon weekend and a series of late nights. My work objecting in cases, including this one, has resulted in approximately $7.2 million in financial improvements to settlements for class members as well as terms improvements including, for example, removing a geographical restriction on a pure-coupon settlement. The Law Office of Sam Miorelli, P.A. and I personally have never been compensated related to a class action settlement without court approval of such.

26. In addition to the work above, the Law Office of Sam Miorelli, P.A. incurred the following expenses related to the objections, as follows:

| Expense Type | Amount |
| --- | --- |
| Court and Transcript Fees | $ 326.20 |
| PACER | $ 33.90 |
| Travel Expenses | $ 909.12 |
| FedEx / USPS | $ 87.18 |
| Copying Costs (15¢/page) | $ 3.75 |
| **TOTAL** | **$ 1,360.15** |

27.     The Law Office of Sam Miorelli, P.A. has discounted rates for FedEx and USPS and the costs reflected are at those lower, discounted rates, not list-price. The costs reflected above are the normal costs which the Lindbergs, as contingent fee clients, would normally be otherwise required to reimburse the Law Office of Sam Miorelli, P.A. for. Normally in a case such as this, we advise clients to budget approximately $4,500 for such costs, so the amount in this case is significantly less than expected.

28.     Mr. Lindberg and his monther similarly faced significant risk pursuing this objection, including the previously-discussed reputational risk. Mr. Lindberg and his mother both faced the possibility of having to take vacation days from his day job to submit to a deposition and other discovery. It is my experience that such depositions are usually used to attempt to embarrass and demean objectors and I made them aware of such risk. Throughout the year-and-a-half of this case, Mr. Lindberg has been actively engaged at every step. Mrs. Lindberg has also been actively engaged since she became involved. They were both subject to unprofessional *argumentum ad hominem*, some of it also including explicit falsehoods, and such attacks have continued even through to the second settlement agreement's supporting documents. I believe they should be contemplated for the risk they took, the time they spent, and the reputational and emotional injury the settling parties unprofessionally inflicted upon them.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 23, 2018.

*/s/ Sam A. Miorelli*
Sam A. Miorelli, E.I., Esq.

DECLARATION OF SAM A. MIORELLI, E.I., ESQ. IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND OBJECTOR INCENTIVE AWARD