1  Kathleen Fisher (SBN 70838)
   kfisher@calvofisher.com
2  **CALVO FISHER & JACOB LLP**
3  555 Montgomery Street, Suite 1155
   San Francisco, California 94111
4  Telephone: (415) 373-8370
   Facsimile: (415) 374-8373
5
6  James Pizzirusso (pro hac vice)
   jpizzirusso@hausfeld.com
7  **HAUSFELD LLP**
8  1700 K Street NW, Suite 650
   Washington, DC 20006
9  Telephone: (202) 540-7200
   Facsimile: (202) 540-7201
10
11 Gordon M. Fauth, Jr. (SBN 190280)
   gfauth@finkelsteinthompson.com
12 Of Counsel to
   **FINKELSTEIN THOMPSON LLP**
13 100 Pine Street, Suite 1250
   San Francisco, California 94111
14 Direct Telephone: (510) 238-9610
   Telephone: (415) 398-8700
15 Facsimile: (415) 398-8704
16
17 *Class Counsel for Plaintiffs and the Class*

18                **UNITED STATES DISTRICT COURT**

19              **NORTHERN DISTRICT OF CALIFORNIA**

20

21 In re SONY PS3 "OTHER OS" LITIGATION      Case No. 4:10-CV-01811-YGR

22                                           **PLAINTIFFS' OPPOSITION TO**
                                             **OBJECTOR FEE PETITION**
23
24                                           Date:      May 29, 2018
                                             Time:      2:00 p.m.
25                                           Judge:     Honorable Yvonne Gonzalez Rogers
                                             Courtroom: 1, 4th floor
26

27

28

---

PLAINTIFFS' OPPOSITION TO OBJECTOR FEE PETITION
Case No. 10-CV-01811-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.    STATEMENT OF RELEVANT FACTS .................................................... 2

     A.   The Prior Settlement ........................................................................ 2

     B.   Lindberg Objection .......................................................................... 3

     C.   Court's Rejection of Prior Settlement ............................................. 4

     D.   New Settlement ................................................................................ 5

     E.   Results of New Settlement ............................................................... 6

     F.   Lindberg Fee Petition ...................................................................... 6

III.   ARGUMENT .......................................................................................... 7

     A.   Eric Lindberg's Objection Was Not Properly Before the Court ....... 7

     B.   The Lindberg Objection Did Not Substantially Benefit the Class .... 9

         1.   The Court Independently Reached Its Conclusions Regarding the Prior Settlement .......................................................................... 9

         2.   The New Settlement Responded to the Court's Order Denying Final Approval, Not the Lindberg Objection ......................................... 11

     C.   The Lindbergs Seek an Unreasonable Amount of Fees .................. 13

     D.   The Lindbergs' Request for a Service Award Should Be Denied ...... 16

IV.   CONCLUSION ..................................................................................... 16

I

PLAINTIFFS' OPPOSITION TO OBJECTOR FEE PETITION
Case No. 10-CV-01811-YGR

# TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE(S)**

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) .................................................................................. 8

*Casey v. Lewis*,
4 F.3d 1516 (9th Cir. 1993) ................................................................................... 8

*Donnally v. Nationstar Mortg.*,
No. 13-CV-1003-BEN (BLM), 2014 WL 2525845 (S.D. Cal. June 3, 2014) ............ 8

*Edwards v. Nat'l Milk Producers Fed'n*,
No. 11-cv-04766-JSW, 2017 WL 4581926 (N.D. Cal. Sept. 13, 2017) ................... 14

*Feder v. Elec. Data Sys. Corp.*,
248 Fed. App'x. 579 (5th Cir. 2007) ....................................................................... 7

*Glass v. UBS Fin. Servs., Inc.*,
No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ......................... 7

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) .................................................................................. 13

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
Nos. 09md2087 BTM (KSC), 09cv1088 BTM (KSC),
2013 WL 5275618 (S.D. Cal. Sept.17, 2013) .......................................................... 7

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
No. CV 07-05107 SJO (AGRx), 2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ........ 7

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
No. C 07- 05634 CRB, 2015 WL 4776946 (N.D. Cal. Aug. 13, 2015) ..................... 11

*In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*,
19 F.3d 1291 (9th Cir. 1994) .................................................................................. 13

*In re: Target Corp. Customer Data Sec. Breach Litig.*,
MDL No. 14-2522 (PAM/JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015),
*reversed and remanded on other grounds*, 847 F.3d 608 (8th Cir. 2017) .............. 8

*Kent v. Hewlett-Packard Co.*,
No. 5:09-cv-05341-JF (HRL), 2011 WL 4403717 (N.D. Cal. Sept. 20, 2011) ......... 7

*Knisley v. Network Assocs., Inc.*,
312 F.3d 1123 (9th Cir. 2002) ................................................................................ 9

II

*Moore v. Verizon Commc'ns Inc.*,
  No. C 09-1823 SBA, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013)..........................8

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) ..............................................................................13

*Rodriguez v. Disner (Rodriguez II)*,
  688 F.3d 645 (9th Cir. 2012) ............................................................9, 11, 12, 13

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..............................................................................13

*Rose v. Bank of Am. Corp.*,
  No. 5:11-cv-02390-EJD, 2015 WL 2379562 (N.D. Cal. May 18, 2015) ...........11

*S.F. NAACP v. S.F. Unified Sch. Dist.*,
  59 F. Supp. 2d 1021 (N.D. Cal. 1999) ...................................................................7

*Singer v. Becton Dickinson and Co.*,
  No. 08-CV-821-IEG (BLM) 2010 WL 2196104 (S.D. Cal. June 1, 2010) ..................14

*United States v. Hays*,
  515 U.S. 737 (1995)...............................................................................................8

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...............................................................9, 13, 14

**STATUTES**

Cal. Bus. & Prof. Code § 17200 .................................................................................2

Cal. Bus. & Prof. Code § 17500 .................................................................................2

Cal. Civ. Code § 1750.................................................................................................2

**RULES**

Fed. R. Civ. P. 23(e)(4)...............................................................................................7

PLAINTIFFS' OPPOSITION TO OBJECTOR FEE PETITION
Case No. 10-CV-01811-YGR

1    **I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

2           Plaintiffs oppose objectors Eric Lindberg and Susan Lindberg's ("Lindbergs") motion for

3    attorneys' fees, costs and an incentive award. (Dkt. No. 348.) Nothing in the record suggests that the

4    objection filed by Eric Lindberg assisted the Court in assessing the fairness of the prior settlement or

5    aided the class. Even if Mr. Miorelli, counsel for the Lindbergs, did assist the Court, however, the

6    burden under which Mr. Miorelli could obtain fees (particularly fees well in excess of his reported

7    lodestar when class counsel are seeking significantly less than their lodestar), remains high. For this

8    reason, and others discussed herein, the Court should deny his Motion.

9           The two main reasons that the Court rejected the prior settlement were that: (1) it had a

10   burdensome proof requirement that depressed the claims rate; and (2) there was a disproportionate ratio

11   of the requested attorneys' fees to class recovery. (Dkt. No. 300 at 3-8.) These were the *same* two

12   issues that the Court had concerns about at the preliminary approval hearing, months before Eric

13   Lindberg filed his objection. Indeed, as the Court later stated at the final approval hearing on the prior

14   settlement: "I expressed concerns at the outset with the nature of this settlement, and **I do believe with**

15   **or without the objections that have been made that we would be in the exact same place**." (Dkt.

16   No. 306 [January 24, 2017, Hearing Transcript on Motion for Final Approval of Class Settlement] at

17   18:17-19 (emph. added).) That is, the Court did not rely on Eric Lindberg's objection in denying the

18   motion for final approval. It was *the Court's* analysis and order, and the parties' commitment to

19   addressing the Court's concerns, that led to the settlement being restructured, not Lindberg's objection.

20   Because the objection did not cause an increase in the settlement fund or otherwise substantially benefit

21   the class, no attorneys' fees are warranted.

22          The motion should also be denied because of jurisdictional and procedural defects. Because Eric

23   Lindberg did not purchase a Fat PS3 unit he is not a class member and did not have standing to submit

24   an objection in the first place. The efforts by his mother Susan to correct those defects ignored

25   mandatory requirements set forth in this Court's orders and have been ineffective and untimely.

26          The Lindbergs also seek an unreasonable amount of fees. The Lindbergs claim they are

27   "entitled" to seek fees of $284,099.38 and are being "conservative" in only seeking $75,000, plus costs.

28   Mr. Miorelli is a serial objector (Eric Lindberg, his roommate at the time the objection was filed, was

an objector with Mr. Miorelli on at least one other recent case) who had to do minimal actual work on the objection. A substantial amount of the hours billed are simply not defensible. Further, the Lindbergs seek a 1.55 multiplier on their attorney's lodestar, despite taking on no real financial risk (Mr. Miorelli admits that he submits objections to class actions as a side business that does not interfere with his day job), doing minimal work, and making no contribution to the ultimate outcome. In contrast, Plaintiffs' Counsel, who have worked on this case for seven years, have collectively contributed thousands of hours of work, have taken on a high degree of risk, and have at all times put the interest of the class above themselves, will at best have an effective multiplier of *negative* 5.75 (or 17.5% of their collective lodestar), meaning that each of Class Counsel's firms are taking on hundreds of thousands of dollars of losses (including additional losses in responding to this motion). The Lindbergs' effort to obtain a windfall for their unhelpful objection in this context is galling and unwarranted.

The Lindbergs also seek a service award, *despite* having objected to the class representatives receiving such an award. The class representatives have been deposed, have had their computers examined by Defendant, have spent countless hours helping with the preparation of pleadings, and have otherwise performed a high degree of service. The Lindbergs did not sit for deposition, attend hearings, or perform any comparable service. No basis exists for service awards to them.

Plaintiffs respectfully request that the motion be denied.

## II.   STATEMENT OF RELEVANT FACTS

### A.  The Prior Settlement

This case involves a class action settlement of claims brought in 2010 against Defendant Sony Computer Entertainment America LLC, currently known as Sony Interactive Entertainment America LLC (referred to herein as "Defendant" or "SCEA") pursuant to the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL"); the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA"); and the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. ("FAL").

In June 2016, after a dismissal order, a successful appeal to the Ninth Circuit, multiple mediations and months of negotiations, the parties reached their first settlement agreement ("Prior Settlement"). (Dkt. No. 259-1.) The class was defined in the Prior Settlement as "any and all persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006 and April

1, 2010 from an authorized retailer for family, personal, and/or household use." (Dkt. No. 259-1 at ¶ 12.)

After reaching the Prior Settlement, Plaintiffs filed a Motion for Preliminary Approval, which this Court heard on July 19, 2016. (Dkt. Nos. 259, 263.) The Settlement was "claims-made" whereby Sony agreed to pay all valid claims that were submitted. Class Members were able to submit claims during the claims period, which ran from September 25, 2016 until December 7, 2016. This claims structure was designed to prevent fraudulent claims, but also to ensure compensation to anyone who believed that they were financially harmed by the Firmware Update. (Dkt. No. 280 at 10:12-13.)

On September 8, 2016, the Court issued its Order preliminarily approving the Prior Settlement and ordering notice to the Class. (*See* 2016 Preliminary Approval Order, Dkt. No. 270.) The Court provisionally certified a Settlement Class and found that the requirements of Rule 23(a) and Rule 23(b)(3) were provisionally satisfied for that purpose. (*Id.* at ¶¶ 3-5.) The parties thereafter moved forward with the notice and claims process called for in the Prior Settlement.

Class Members were required to submit a completed Claim Form by December 7, 2016. The settlement administrator, Garden City Group LLC ("GCG"), received 2,346 timely Consumer Class A Claim Forms and 8,970 timely Consumer Class B Claim Forms. (Dkt. No. 277 at ¶ 31.) GCG also received 7 objections to the Prior Settlement, of which three were filed by "serial objectors." (*Id.* at ¶ 32, Ex. J.)

**B. Lindberg Objection**

One of the objections was brought by attorney Sam A. Miorelli on behalf of objector Eric Lindberg. (Dkt. No. 281 at 38-63.) At the time the objection was filed, Mr. Lindberg and Mr. Miorelli shared the same address. (Dkt. No. 290-3 at ¶ 1.) In his declaration, Mr. Lindberg indicated that he had not actually bought a PS3 unit. (Dkt. No. 281 at 38; Dkt. No. 290-3 at ¶ 1.) He also disclosed in the objections that his attorney, Mr. Miorelli, had filed objections (either *pro se* or on behalf of others) in some 8 proceedings in the past two years, and that Mr. Miorelli was representing Mr. Lindberg as an objector in at least one other class action. (Dkt. No. 281 at 43-44.)

On January 10, 2017, Plaintiffs filed their Response to Objections (Dkt. No. 286), which was supported by the Declaration of Rosemary M. Rivas (Dkt. No. 286-1.) In their Response to Objections,

Plaintiffs pointed out, among other issues, that because Mr. Lindberg had not purchased a PS3 unit he was not actually a class member (defined in the settlement agreement as "any and all persons in the United States who purchased a Fat PS3 in the United States between November 1, 2006 and April 1, 2010 from an authorized retailer for family, personal, and/or household use") and therefore did not have standing to object. (Dkt. No. 286 at 12-13.)

Mr. Lindberg attempted to correct the defect. His mother, Susan Lindberg, filed a declaration on January 18, 2017, taking the position that it was "ridiculous" that her son would not be considered a class member just because she, and not her son, had actually purchased the PS3 unit and asserting, "I believe that I have already assigned that right to my son years and years ago." (Dkt. No. 290-2 at ¶ 7.) Susan Lindberg did not file a claim as part of the claims process in the Prior Settlement. (*See id., generally; see also* Dkt. Nos. 281, 286.)

### C.  Court's Rejection of Prior Settlement

On January 24, 2017, after the claims process was completed, the Court held a fairness hearing. Mr. Miorelli appeared on behalf of the Lindbergs and argued, among other issues, that Eric Lindberg had standing as class member. (Dkt. No. 306 at 13-15.) The Court did not issue a decision on that question. (*See id.*)

January 31, 2017, the Court issued an Order Denying Plaintiffs' Motion for Final Approval of Class Action Settlement Without Prejudice. (Order Denying Final Approval, Dkt. No. 300.) The Order identified numerous concerns with "how the notice and claims process proceded, the results it produced, and the disproportionality of the attorneys' fees versus the class recovery." (*Id.* at 1:13-14.) More specifically, these concerns included the following:

(i)      "[m]ost significantly" to the Court, the claims rate appeared "quite low": 11,300 claims out of approximately 10 million PS3 units sold (*id.* at 7:10-11);

(ii)      while the parties asserted that the effective claims rate was not as low as it appeared "because information available to them suggests that the number of purchasers who utilized or cared about the Other OS feature was small," the Court concluded that there was not sufficient evidence in the record to support this contention (*id.* 7:12-13);

(iii)      the claims process was too burdensome, given the forms of proof that claimants were

PLAINTIFFS' OPPOSITION TO OBJECTOR FEE PETITION
Case No. 10-CV-01811-YGR

1    required to submit with their claims and "the relatively small amount" certain claimants

2    would receive for a valid claim (*id*. at 6:17-19);

3    (iv)    there was a relatively high number of claims that were rejected by the claims

4            administrator for insufficient proof (approximately 25% of the Consumer Class A

5            claims) (*id*. at 6:20-22); and

6    (v)     while the Order did not elaborate on "the disproportionality of the attorneys' fees versus

7            the class recovery," the Court did express concerns about the inadequacy of the evidence

8            supporting Plaintiffs' counsels' fee petition. (*Id*. at 1:13-15, 8.)

9        After issuing the Order Denying Final Approval, the Court held a case management conference

10   on February 13, 2017. Following the status conference, counsel for the parties agreed that any new

11   settlement needed to be re-structured to address the Court's concerns and the parties discussed

12   attending a new mediation.

13   **D.  New Settlement**

14       On April 6, 2017, the parties attended a day-long mediation session with the Hon. James

15   Lambden, Ret., of ADR Services, Inc. (Dkt. No. 331-1 at ¶ 2.) Although the parties did not reach an

16   agreement that day, they did make substantial progress and thereafter continued to negotiate with

17   Justice Lambden's assistance. (*Id*.) The parties eventually entered into a new settlement agreement

18   ("New Settlement") on August 24, 2017. (*Id.* at ¶ 4, Ex. B (New Settlement).)

19       Under the terms of the New Settlement, the Class is defined as: all persons in the United States

20   who purchased a Fat PS3 model in the United States between November 1, 2006, and April 1, 2010,

21   from an authorized retailer for family, personal, and/or household use and who: "(1) used the Other OS

22   functionality; (2) knew about the Other OS functionality; or (3) contends or believes that he or she lost

23   value or desired functionality or was otherwise injured as a consequence of Firmware Update 3.21

24   and/or the disablement of Other OS functionality in the Fat PS3." (New Settlement at ¶ 12.)

25       Defendant agreed to pay to the Settlement Administrator the sum of $3,750,000 to create the

26   Settlement Fund. (*Id.* at ¶ 71.) The Settlement Fund will be used to pay, in the following order: (1)

27   Class Notice and Administration Costs; (2) Attorneys' Fees and Costs to Class Counsel; (3) Service

28   Awards to the Plaintiffs; and (4) Valid Claims submitted by Settlement Class Members. (*Id.*)

To receive compensation from the Settlement Fund, each Settlement Class Member must submit a timely and complete Claim Form, either by mail or electronically.[1] (*Id.* at ¶ 72.) Settlement benefits will be distributed to Valid Claimants on a pro rata basis up to and including the sum of $65 per valid Claim. (*Id.*)

On November 21, 2017, the Court issued its Order preliminarily approving the New Settlement and ordering notice to the Class. (Dkt. No. 344.)

Based on the Preliminary Approval Order, the deadline for claims, objections and opt-out was determined to be April 15, 2018; the deadline for the motion for final approval of the New Settlement was May 8, 2018; and the fairness hearing was set for May 29, 2018. (*Id.* at ¶¶ 20, 22, 24, 31, and 33.) On March 6, 2018, Class Counsel filed their Renewed Motion for Award of Attorney's Fees, Costs, and Incentive Awards. (Dkt. No. 346.)

**E.   Results of New Settlement**

A full accounting of the results of the New Settlement claims process will be submitted on May 8, 2018, with Plaintiffs' motion for final approval of settlement and a declaration by the settlement administrator GCG regarding notice and settlement administration. These submissions will show that the settlement administrator has received more than 263,000 timely Claim Forms and at least 27 late Claim Forms. This is in addition to 11,328 Claim Forms received under the Prior Settlement. The submissions will also show that as of May 5, 2018, no new objections were received.

**F.   Lindberg Fee Petition**

On April 23, 2018, the Lindbergs filed a motion for attorney's fees, costs, and an incentive award. (Dkt. No. 348.) Mr. Miorelli submitted a declaration stating, "In light of class counsel's

---

[1] To submit a valid claim, claimants must attest, under penalty of perjury, that they: "(1) used the Other OS functionality; (2) knew about the Other OS functionality; or (3) contend or believe that [they] lost value or desired functionality or were otherwise injured as a consequence of Firmware Update 3.21 and/or the disablement of Other OS functionality in the Fat PS3." (New Settlement, Ex. 1.) Claimants must also provide at least one of the following: (1) their PS3 serial number; (2) the PlayStation Network Sign-In ID (email address) they used to create a PlayStation account associated with their Fat PS3; or (3) the PlayStation Network Online ID (the handle they chose for communicating and game play on the PlayStation Network) associated with the PlayStation account they used with their Fat PS3. (*Id.*)

PLAINTIFFS' OPPOSITION TO OBJECTOR FEE PETITION
Case No. 10-CV-01811-YGR

1    indication that they still will argue that Mr. Lindberg is not a class member, Susan Lindberg re-filed a

2    claim using the class website in advance of the claims deadline." (Dkt. No. 348-1 at ¶ 19.) Despite Mr.

3    Miorelli's use of the term "*re-filed*," it is actually undisputed that Susan Lindberg did not file a claim as

4    part of the claims process in the Prior Settlement. (*See* Dkt. Nos. 290-2, 281, 286.)

5    **III.    ARGUMENT**

6        **A.  Eric Lindberg's Objection Was Not Properly Before the Court**

7            Objectors, not Class Counsel or Plaintiffs, bear the burden of establishing their membership in

8    the class. *See Feder v. Elec. Data Sys. Corp*., 248 Fed. App'x. 579, at *2 (5th Cir. 2007) (objectors

9    have burden of proving standing); *In re Hydroxycut Mktg. & Sales Practices Litig*., Nos. 09-md-2087

10   BTM (KSC), 09-cv-1088 BTM (KSC), 2013 WL 5275618, at *2 (S.D. Cal. Sept.17, 2013) (striking

11   objection because objector had not carried his burden of proving class membership); *In re Korean Air

12   Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO (AGRx), 2013 WL 7985367, at *2 (C.D. Cal.

13   Dec. 23, 2013) (objectors lack standing for failure to show class membership).

14            Here, it is undisputed that Eric Lindberg received his Fat PS3 as a Christmas gift and did not

15   actually purchase it himself. (Dkt. No. 281, Exh. E.) Therefore, he does not fall within the Class

16   definition, is *not* a Class member, and had no standing to make objections in this suit. *See, e.g.*, Fed. R.

17   Civ. P. 23(e)(4); *Kent v. Hewlett-Packard Co*., No. 5:09-cv-05341-JF (HRL), 2011 WL 4403717, at *3

18   (N.D. Cal. Sept. 20, 2011) (non-class member objectors lack standing); *S.F. NAACP v. S.F. Unified

19   Sch. Dist*., 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) (same); *Glass v. UBS Fin. Servs., Inc*., No. C-

20   06-4068 MMC, 2007 WL 221862, at *8 (N.D. Cal. Jan. 26, 2007) (same). Because Eric Lindberg did

21   not have standing, the parties did not believe that his objections warranted any consideration and urged

22   the Court to disregard them. (*See* Dkt. No. 294 at 12:20-21.) Nevertheless, the Court entertained

23   argument from Mr. Miorelli. (Dkt. No. 306 at 13-17.)

24            Where a party lacks standing, he cannot obtain any relief or benefits from the Court. *Cf. Bates v.

25   United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("Standing is a threshold matter central to

26   our subject matter jurisdiction. We must assure ourselves that the constitutional standing requirements

27   are satisfied before proceeding to the merits.") (citing *United States v. Hays*, 515 U.S. 737, 742

28   (1995); *Casey v. Lewis*, 4 F.3d 1516, 1524 (9th Cir. 1993)). It follows that because Eric Lindberg did

**PLAINTIFFS' OPPOSITION TO OBJECTOR FEE PETITION**
Case No. 10-CV-01811-YGR

1  not have standing to object, he has no basis to seek an award of attorneys' fees here based on his

2  objection.[2] *See Donnally v. Nationstar Mortg.*, No. 13-CV-1003-BEN (BLM), 2014 WL 2525845, at

3  *2 (S.D. Cal. June 3, 2014) ("Where the Plaintiff lacks standing, this Court does not have the power to

4  grant relief.")

5         Susan Lindberg's January 18, 2017 declaration did not correct the jurisdictional defect. (Dkt.

6  No. 290-2.) First, her request to join Eric Lindberg's objection should not be considered because it was

7  submitted a month after the objection deadline on December 22, 2016.[3] (*See* Dkt. No. 300 at 5 n.5.)

8  Second, because Susan Lindberg never disclosed whether she had filed previous objections in the last

9  two years, her "joinder" violated the Court's Preliminary Approval Order for the Prior Approval and,

10  under the terms of the Court's order, should therefore not be considered. (Dkt. No. 270 at ¶ 24 ("[t]o be

11  considered, an objection … must include the following: … (f) whether the objector is represented by

12  counsel and, if so, the identity of such counsel, and all previous objections filed by the objector and

13  their counsel within the last two years."); *see also* Dkt. No. 344 at ¶ 24; *see also Moore v. Verizon

14  Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *12 (N.D. Cal. Aug. 28, 2013) (overruling

15  objections that "fail[ed] to comply with the procedural requirements for objecting to the Settlement.").

16         Finally, the Lindbergs contend that the standing problems are resolved by the fact that the New

17  Settlement agreement provides that "[a]ny Settlement Class Member who previously submitted a Claim

18  Form will be automatically included and will not be required to submit an additional Claim Form."

19  (Dkt. No. 348 at 6:16-19 (quoting Dkt. No. 331-1, Ex. B at ¶ 72).) But the fact that Eric Lindberg was

20  not required to submit an additional claim form does not mean that he is somehow now a class member

21  and also does not retroactively bestow him with standing for his objection (much less turn his

22

23  [2] It is noteworthy that this type of standing problem has not constrained Mr. Lindberg's attorney, Sam

24  Miorelli; for example, Mr. Miorelli has objected *pro se* even though he was not an actual class member.
   *See In re: Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522 (PAM/JJK), 2015 WL

25  7253765, at *2, n. 1 (D. Minn. Nov. 17, 2015), *reversed and remanded on other grounds*, 847 F.3d 608
   (8th Cir. 2017).

26  [3] In the Order Denying Motion for Final Approval on January 31, 2017, the Court found that "As

27  explained herein, the Court does not find that any of the objections were untimely." (Dkt. No. 300 at 1,
   n.1.) However, this was before Plaintiffs had responded to Susan Lindberg's "joinder" in Eric

28  Lindberg's objection (done here) and identified the timeliness problem.

previously submitted invalid claim into a valid one). Nor does Susan Lindberg's filing of a claim under the New Settlement claim procedure cure the problems that existed at the time that the objection was filed.

For the foregoing reasons, Eric Lindberg's objection was not properly before the Court when the Court denied the motion for final approval. As such, the added benefits to the class from the New Settlement cannot be deemed a result of the objection.

## B.  The Lindberg Objection Did Not Substantially Benefit the Class

"Under certain circumstances, attorneys for objectors may be entitled to attorneys' fees from the fund created by class action litigation." *Rodriguez v. Disner (Rodriguez II)*, 688 F.3d 645, 658 (9th Cir. 2012). In order to receive an award of attorneys' fees, objectors must show that they increased the fund or "substantially enhanced the benefits to the class" under the settlement through the objection alone. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002).

The Lindberg objection did not substantially benefit the class. First and foremost, the Court independently identified the problems with the Prior Settlement months before Eric Lindberg filed the objection and ultimately rejected the Prior Settlement based on those same issues. Second, the New Settlement, which substantially increases the benefits to the class, responded to the Court's concerns, not the Lindbergs'. Accordingly, the Lindberg objection did not contribute anything to the class.

### 1.  The Court Independently Reached Its Conclusions Regarding the Prior Settlement

The Lindbergs contend that had they "not intervened in the case and given the Court reasons to reject the previous settlement agreement, there might not have been a new negotiation in the first place." (Mot. at 13.) But the Lindberg objection did not actually add anything to the case. As the Court stated at the final approval hearing regarding the Prior Settlement: "I expressed concerns at the outset with the nature of this settlement, and **I do believe with or without the objections that have been made that we would be in the exact same place**." (Dkt. No. 306 at 18:17-19.)

Indeed, at the hearing on the motion for preliminary approval, the Court identified the two main problems that, as it turned out, undermined the Prior Settlement at final approval, as well. Specifically, the Court noted that the documentation required to submit a claim was "somewhat onerous." (Dkt. No. 266 at 4:19 [July 19, 2016, Hearing Transcript on Motion for Preliminary Approval of Class

9

Settlement].) Stating that the potentially burdensome claim requirements were the Court's "primary concern" (*id*. at 13:14), the Court closely questioned Plaintiffs' counsel about how realistic it would be for the class members to actually have the required proof, especially given how old the case was. (*Id*. at 5:12-20; 6:9-10, 8-9.) Plaintiffs' counsel explained the dilemma: "On the one hand, Defendant was insistent that you need some proof of use requirement, otherwise we may get illegitimate claims"; on the other hand, "We don't want to stifle claims. So that's why we came up with a list of potential methods, and we think class members should be able to satisfy at least one of the methods." (*Id*. at 7:2-8.) Moreover, given that the named representatives had proof to meet the requirements, Plaintiffs' counsel believed class members likely would, as well.  (*Id*. at 5:21-24.) The Court responded that it would wait to see the results of the claims process, but reiterated the concern that the process was too "cumbersome" and that the proof required would no longer be available to some claimants. (*Id*. at 8:5-12, 9.)

The Court also noted that the parties had "no real idea about how much the class is going to receive, and yet you want upwards of $2 million in attorneys' fees." (*Id*. at 4:12-15.) The Court repeatedly inquired how it could preliminarily approve a settlement under such circumstances. (*Id*. at 9:25-10:3.) Plaintiffs' counsel believed that the claims rate would be higher than it was but had no specific knowledge of how many claims would likely be filed since Sony lacked records to indicate who was definitely in the class.  (*Id*. at 4:25-5:5, 11:21-12:3, 15.)

In denying the motion for final approval, the Court found that the claims process did ultimately turn out to be too burdensome, which depressed the claims rate and thereby created "the disproportionality of the attorneys' fees versus the class recovery." (Dkt. No. 300 at 1:13-15, 6-8.) That is, the Court had identified the two critical issues that formed the basis for its decision to deny final approval independent of anything in the Lindberg objection.

Courts "generally do not award objectors attorneys' fees where the 'court did not rely on the Objectors' arguments in issuing its decision.'" *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 CRB, 2015 WL 4776946, at *1 n.1 (N.D. Cal. Aug. 13, 2015) (quoting *Rose v. Bank of Am. Corp.*, No. 5:11-cv-02390-EJD, 2015 WL 2379562, at *2 (N.D. Cal. May 18, 2015)); *cf. Rodriguez II*, 688 F.3d at 660 (district court erred in ruling that the objectors' actions "did not add

1   anything" to its decision, where the court had not focused on the decisive issue before the objectors

2   raised it). Because the Court did not rely on the Lindberg objection to deny the motion for final

3   approval, there is no basis for granting the Lindbergs' motion for fees here.

### 2. The New Settlement Responded to the Court's Order Denying Final Approval, Not the Lindberg Objection

6   After issuing the Order Denying Final Approval, the Court held a case management conference

7   on February 13, 2017. At the status conference, counsel for Sony suggested that the Court's concerns

8   might be addressed by, for instance, augmenting the record with evidence about the number of

9   purchasers who knew or cared about the Other OS feature, or correcting the administrative procedures

10  that led to the rejection of so many claims. (Dkt. No. 314 at 9-10 [Transcript of February 13, 2017

11  Further Case Management Conference].) The Court responded that it was not willing to reconsider

12  approval of the Prior Settlement. *(Id.* at 10:25-11:4.)

13  Following the status conference, counsel for the parties agreed that the settlement needed to be

14  re-structured to obtain the Court's final approval. Counsel for Plaintiffs also believed that any changes

15  to the settlement should be negotiated with a highly-esteemed mediator, such as the Honorable James

16  Lambden (Ret.). The New Settlement that was eventually negotiated over the next six months, through

17  mediation and the participation of Justice Lambden, was in response to the Court's order and

18  statements at the hearings and status conference, not the Lindberg objection. This is clearly reflected in

19  the actual terms of the New Settlement, which track the Court's concerns, not the Lindbergs'.

20  <u>Claims Process</u>. The Lindberg objection states that "[t]he settling parties have provided no

21  justification for the use of the claims-made process" and argued that Sony could somehow identify all

22  Class members and pay them. (Dkt. No. 281 at 49 (Exh. E at 7:25-26).) This objection (which is

23  incorrect) had no bearing on the New Settlement, which again is claims-based. The increased claims

24  rate is a result of the relaxed proof requirement, which was originally raised by the Court as its primary

25  concern, not the Lindbergs, as shown above.[4]

26  _____

27  [4] The Lindberg objection said the parties had not articulated any reason for a claims made process. In

28  fact, the parties designed the process (i) so that the people actually harmed would benefit and (2) to avoid fraud.

**PLAINTIFFS' OPPOSITION TO OBJECTOR FEE PETITION**
Case No. 10-CV-01811-YGR

1       Attorneys' Fees. The Lindberg objection contended that: (1) Plaintiffs' counsel sought an

2   amount that was disproportionate to the class members' recovery; (2) the clear-sailing provision

3   indicated collusion; and (3) the claims process coupled with the clear sailing provision in effect created

4   a reversion. (Dkt. No. 281 at 50 (Exh. E at 8:20-22).) These objections were not unique. Objector John

5   Navarrete raised the same issues. (Dkt. No. 281 at 28, 31-32 (Exh. D at 6:3-7, 9:14-10:18).) More

6   importantly, as shown above, the fundamental defect regarding the proportionality of the attorneys' fees

7   was actually raised by the Court six months earlier. The New Settlement was restructured to address the

8   Court's concerns with proportionality; because the parties did not know how many claims would be

9   filed (as the Court originally noted), the only way to ensure proportionality was to adopt a common

10  fund approach, which the parties did. Moreover, in order to ensure that as many funds as possible

11  would go to class members, even though Class Counsel were already taking a significant "haircut" on

12  their fees, they agreed to do so even further to benefit the class. Mr. Miorelli, however, seeks

13  significantly more than his lodestar.

14      Objectors who "do not add any new legal argument or expertise, and do not participate

15  constructively in the litigation" are not entitled to attorneys' fees. *Rodriguez II*, 688 F.3d at 659.

16  "Nor is it error to deny fees to objectors whose work is duplicative, or who merely echo each others'

17  arguments and confer no unique benefit to the class." *Id*. at 658-59 (citing *Reynolds v. Beneficial Nat'l*

18  *Bank*, 288 F.3d 277, 288–89 (7th Cir. 2002); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*

19  *(WPPSS)*, 19 F.3d 1291, 1298 (9th Cir. 1994)). Because the Lindberg objection did not add any new

20  argument or unique benefit on this issue, there is no basis for awarding the Lindbergs fees.

21      Scope of Release. The Lindberg objection states that the release in the Prior Settlement was

22  overbroad because the claims were brought under California law but other states' laws are also being

23  released, many of which "provide better standards or remedies than the California laws." (Dkt. No. 281

24  at 46 (Exh. E at 4:14-21).) The objection also stated that the release was too broad because it "seeks to

25  extinguish literally *any* claim a consumer might have against Sony arising from their purchase of a Fat

26  PS3," including personal injury suits. (Dkt. No. 281 at 46 (Exh. E at p. 4:4-6).) At the Final Approval

27  Hearing, the Court raised issues regarding the scope of the release and counsel for the parties argued

28  that the concerns about an overly broad release did not apply here. (Dkt. No. 306 at 33-34.)

PLAINTIFFS' OPPOSITION TO OBJECTOR FEE PETITION
Case No. 10-CV-01811-YGR

Despite the Lindbergs' concerns, the release in the New Settlement remains nationwide, including "claims arising under the common laws and statutes of all fifty (50) states." (Dkt. No. 335-1 (Exh. B at ¶ 35).) While there was no defect in the original release language, the parties narrowed the language to make this even clearer, stating that the release is limited to claims "that arise out of or in any way relate to the subject matter of the Action and the Released Claims and that were or could have been alleged in the Action." (Dkt. No. 335-1 (Exh. B at ¶¶ 35, 117).)

The new release language has not increased the recovery for the class, or otherwise "substantially enhanced the benefits to the class." *Vizcaino*, 290 F.3d at 1052. "[O]bjectors who do 'not increase the fund or otherwise substantially benefit the class members' are not entitled to fees, even if they bring 'about minor procedural changes in the settlement agreement.'" *Rodriguez II*, 688 F.3d at 658 (quoting *Vizcaino*, 290 F.3d at 1051; other citation omitted). The change to the release language, also raised by the Court, is at most a minor change that does not warrant an award to the Lindbergs.

In sum, unlike in the cases cited by the Lindbergs, including *Rodriguez II,* 688 F.3d at 658-59, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009), and *Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994), the Lindberg objection did not cause a substantial (or any) increase to the class's recovery or otherwise confer a substantial benefit on the class. Therefore, the Lindbergs are not entitled to fees and costs. *See Vizcaino*, 290 F.3d at 1052 ("In the absence of a showing that objectors substantially enhanced the benefits to the class under the settlement, as a matter of law they were not entitled to fees….").

### C.  The Lindbergs Seek an Unreasonable Amount of Fees

In determining the proper amount of fees for an objector, a court should consider the same factors as with class counsel's fee award. *See Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766-JSW, 2017 WL 4581926, at *2 (N.D. Cal. Sept. 13, 2017). In the Ninth Circuit, where the common fund approach predominates, district courts may "choose either the percentage-of-the-fund or the lodestar method" in determining the appropriate amount of attorney's fees. *See Vizcaino*, 290 F.3d at 1047. "Regardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable." *Singer v. Becton*

1     *Dickinson and Co.*, No. 08-CV-821-IEG (BLM) 2010 WL 2196104, at *8 (S.D. Cal. June 1,

2     2010).

3          The Lindbergs contend that they are entitled to seek fees in the amount of $284,099.38 but

4     are "conservatively" only seeking $75,000. (Dkt. No. 348 at 18:5-6.) First, Mr. Miorelli's lodestar of

5     $46,546.20 (billed at $346 per hour) is itself unreasonable. He billed 44.3 hours to prepare the

6     Lindberg objection, which is excessive. (Dkt. No. 348-1 at ¶ 6.) He billed 24 hours for his brief

7     appearance at the final approval hearing. (*Id.* at ¶¶ 13-15.) Perhaps most inexplicably, he billed

8     24 hours for drafting proposed Federal Rule of Civil Procedure 11 motions, accompanying

9     declarations, proposed orders, and safe harbor letters. (*Id.* at ¶ 8.) This was to address the alleged "*ad

10    hominem*" arguments and "unprofessional" conduct by Plaintiffs' counsel.

11         Counsel takes these accusations seriously. There were no "*ad hominem*" arguments, nor any

12    conduct to justify the hours Mr. Miorelli billed. As stated above, in their Response to Objections,

13    Plaintiffs pointed out that because he had not purchased a Fat PS3 unit, Eric Lindberg was not a class

14    member and therefore did not have standing to object. (Dkt. No. 286 at 12-13.) This was clearly not an

15    "*ad hominem*" argument or an "unprofessional" position to take. Plaintiffs' counsels' duties run to the

16    class, not to non-class members seeking a windfall by objecting to a settlement.

17         Mr. Miorelli shortly thereafter served a Rule 11 letter on Plaintiffs' counsel asserting that

18    certain statements in the Response to Objections and supporting declaration were inaccurate. Again, the

19    statements in question were not "*ad hominem*" attacks. The Response to Objections originally stated

20    that Mr. Miorelli *and* Mr. Lindberg had participated in a long line of objections over the past two years,

21    when in fact it was just Mr. Miorelli who had been involved in the long line of objections during that

22    time period, only one of which included Mr. Lindberg (besides the present case). (*Compare* Dkt. No.

23    286 at 13:9-15 (original response) *with* Dkt. No. 294 at 13:9-15 (corrected response).) Further, the

24    supporting declaration, in listing the status of various objections to class actions filed by Mr. Miorelli,

25    included a description of a court order and a copy of the same striking one of Mr. Miorelli's objections

26    for violating the court's rules and being untimely; in fact, the order in question had been later vacated.

27    (*Compare* Dkt. No. 286-1 at ¶ 4(d) (original Rivas Decl.) with Dkt. No. 295 at ¶ 4(d) (corrected).) In

28    good faith, when raised, Plaintiffs promptly filed an administrative motion to remove the statements

and filed corrected versions of both documents. (Dkt. No. 296.)

Neither statement in question was remotely "*ad hominem*." The purpose of the statements was to show that Mr. Miorelli had been a serial objector in a large number of class actions over a short period of time, and that this was not the first time that Mr. Lindberg (who shared the same address as Mr. Miorelli) had objected to a class action with Mr. Miorelli as his counsel. These facts, which are undisputed, bear on the motive of the objection, the strength of the arguments, and the amount of actual work that went into fashioning the objection. (*See* Dkt. No. 281, Exh. E.) Further, if Mr. Miorelli had simply called Plaintiffs' counsel and alerted them to the impreciseness and inaccuracy of the statements in question, Plaintiffs' counsel would have gladly corrected them. This should have taken 10 minutes of billable work, not 24 hours.

It is also inappropriate for the Lindbergs to seek "a *modest* 1.55 multiplier of the lodestar" resulting in a request for $75,000 in fees. (Dkt. No. 348 at 22:8-9) (emphasis added). In determining the appropriate multiplier, if any, on a lodestar calculation, the Court may consider factors that include: (1) the amount involved and the results obtained; (2) the time and labor required; (3) the novelty and difficulty of the questions involved; (4) the skill requisite to perform the legal service properly; (5) the preclusion of other employment by the attorney due to acceptance of the case; (6) the customary fee; (7) the experience, reputation, and ability of the attorneys; and (8) awards in similar cases. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011). Not one of these factors supports the Lindbergs' argument: the objection did not result in a substantial benefit to the class, the time and labor and skill involved were minimal, and Mr. Miorelli took on no significant risk and had to forgo no other employment. (*See* Dkt. No. 348-1 at ¶ 3.)

Mr. Miorelli's requests for a multiplier of 1.55 is particularly unwarranted given that Plaintiffs' counsel has submitted a fee request that will result, at best, in an effective multiplier of *negative* 5.75 (or 17.5% of their collective lodestar), not including the additional time they have spent responding to this motion and final approval. (*See* Dkt. No. 346 at 20:22-21:3.) Plaintiffs' counsel have worked on this case for seven years, including an appeal and partial reversal in the Ninth Circuit, have collectively contributed thousands of hours of work, have forgone a tremendous amount of remunerative work, and have at all times put their duties to the Class and their professional duties to the Court above any other

consideration (notwithstanding Mr. Miorelli's sniping to the contrary). The result of this will be a collective loss of millions of dollars to class counsel. Mr. Miorelli, who admits that he submits objections to class actions as a side business, may not appreciate the real world effect of this on Plaintiffs' counsel. Regardless, his request for fees and, in particular, a positive multiplier in this context should be denied, given that he has added no real benefit to the case and has performed minimal work without any significant risk.

**D.  The Lindbergs' Request for a Service Award Should Be Denied**

The Lindbergs state that they "have opposed a $3,500 incentive award to the class representatives and only request that amount in as much as it is the same as the amount class counsel requests for the class representatives." (Dkt. No. 348 at 20:17-18.) It is not clear how the Lindbergs can in good faith object to the named class representatives receiving a service award, and then simultaneously seek such awards themselves.

The Class Representatives have performed tremendous services. They engaged counsel and assisted counsel with their investigation, analysis, and prosecution of the claims; they assisted in the preparation of pleadings (including the complaints filed in this matter and declarations); participated in discovery, including responding to written discovery, producing their PS3s and documents for inspection, and appearing for deposition; participated in settlement negotiations (including the most recent); and reviewed the parties' settlement papers. (*See* Dkt. No. 271-1 at ¶¶ 56-58; Dkt. No. 346-1 at ¶¶ 71-73.) Moreover, the time the Class Representatives spent on this case meant time spent away from family, friends, work, and various other activities. The Lindbergs have not shown any comparable level of involvement or personal inconvenience warranting a service award. Indeed, given that Mr. Miorelli and Mr. Lindberg shared an address, it is unlikely that Mr. Lindberg's objection involved any real work.

**IV.   CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Lindbergs' motion for fees, costs and a service award be denied.

PLAINTIFFS' OPPOSITION TO OBJECTOR FEE PETITION
Case No. 10-CV-01811-YGR

DATED: May 7, 2018                     Respectfully submitted,

                                       *Class Counsel for Plaintiffs and the Class*

                                       **CALVO FISHER & JACOB LLP**

                                       By: */s/ Kathleen Fisher*
                                            Kathleen Fisher

                                       555 Montgomery Street, Suite 1155
                                       San Francisco, California 94111
                                       Telephone: (415) 374-8370
                                       Facsimile: (415) 374-8373

                                       **HAUSFELD LLP**

                                       By: */s/ James Pizzirusso*
                                            James Pizzirusso

                                       1700 K Street NW, Suite 650
                                       Washington, DC 20006
                                       Telephone: (202) 540-7200
                                       Facsimile: (202) 540-7201

                                       **FINKELSTEIN THOMPSON LLP**

                                       By: */s/ Gordon M. Fauth*
                                            Gordon M. Fauth

                                       100 Pine Street, Suite 1250
                                       San Francisco, California 94111
                                       Direct Telephone: (510) 238-9610
                                       Telephone: (415) 398-8700
                                       Facsimile: (415) 398-8704


                          **Filer's Attestation**

        I, Kathleen V. Fisher, hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.

DATED: May 7, 2018                     Respectfully submitted,

                                       **CALVO FISHER & JACOB LLP**

                                       By: */s/ Kathleen V. Fisher*
                                            Kathleen V. Fisher

PLAINTIFFS' OPPOSITION TO OBJECTOR FEE PETITION
Case No. 10-CV-01811-YGR