Sam A. Miorelli, E.I., Esq. (FL Bar # 99886, *pro hac vice*)
**Law Office of Sam Miorelli, P.A.**
4715 N Harbor City Blvd.
Melbourne, FL 32935
Phone: (352) 458-4092
E-Mail: sam.miorelli@gmail.com

Grant F. Atkinson (SB# 293760)
**Framework Law Group PC**
1275 E 6th Street
Suite 8A
Los Angeles, CA 90021
Phone: (847) 987-7361
E-Mail: grant@frameworklaw.com

*Attorneys for Objector Eric Lindberg and Susan Lindberg*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| In re SONY PS3 "OTHER OS" LITIGATION | Case No. 4:10-CV-01811-YGR |
| | **REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD** |
| ERIC MICHAEL LINDBERG and SUSAN LINDBERG, <br><br> Objectors. | Date: May 29, 2018 <br> Time: 2:00 p.m. <br> Courtroom: 1, 4th floor <br> Judge: The Honorable Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................................ iii

INTRODUCTION ................................................................................................................................ 1

    I.    The Lindbergs conferred a substantial benefit on the class and are entitled to fees. ......................... 2

        A.    Plaintiffs' arguments against the Lindbergs' class membership are contradicted by their own statements and the terms of the settlement agreement; have never been adopted by the Court; are raised belatedly; and ultimately show the same anti-class-member bias that motivated the Court to reject the first settlement agreement. ................................................................................................... 2

        B.    Under Ninth Circuit law, the Lindbergs conferred a substantial benefit on the class and are entitled to fees. ....................................................................................................................................... 5

    II.    The Lindbergs' fee request, amounting to just 3.3% of the benefit conferred, is not excessive. ....... 8

        A.    Plaintiffs have conceded by default that 3.3% of the benefit conferred is a reasonable attorneys' fee for a $2.27 million class recovery improvement. ................................................................................. 8

        B.    Plaintiffs' complaints about the lodestar cross-check have no basis in fact or law. ............................ 8

        C.    Plaintiffs argue *Bluetooth* should control the lodestar cross-check for this fee request but fail to recognize that each factor supports the $75,000 requested. .................................................................. 10

        D.    Plaintiffs' claim that the Lindbergs' counsel's billings are excessive has no basis in fact or law, and the only explanation Plaintiffs provide is contradicted by Class Counsel's contemporaneous e-mails. 11

        E.    The Lindbergs continue to take steps which reduce fees and will result in an earlier payment to the class. ........................................................................................................................................... 12

    III.    To the extent the Court grants the class representatives an incentive award, it should also grant one to the Lindbergs. ................................................................................................................................ 13

CONCLUSION .................................................................................................................................. 14

CERTIFICATE OF SERVICE ........................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Edwards v. Nat'l Milk Prods. Fed.*, Case No. 11-cv-04766-JSW, 2017 WL 4581926 (N.D. Cal. Sept. 13, 2017) 9

*Frank v. Gaos*, 869 F.3d 737 (9th Cir. 2017), *cert. granted*, __ S.Ct. __, 584 U.S. __, 2018 WL 324121 (Apr. 30, 2018) (No. 17-961) ........................................................................................................................... 11

*Hendricks v. Starkist Co.*, Case No. 13-cv-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ............. 7

*In re Apple Inc. Sec. Litig.*, No. 5:06-CV-05208, 2011 WL 1877988 (N.D. Cal. May 17, 2011) ........................... 2

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ............................................... 5, 10

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) ......................................................................... 10

*In Re: Subway Footlong Sandwich Marketing & Sales Pract. Litig.*, 869 F.3d 551 (7th Cir. 2017) .............. 10

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616 (1970) ................................................................... 7

*Revson v. Cinque & Cinque*, 211 F.3d 71 (2d Cir. 2000) ................................................................................. 4

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) .......................................................................................... 7

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) ............................................................ 1, 7

*Saks v. Parilla, Hubbard, & Militzok*, 67 Cal.App.4th 565, 79 Cal.Rptr.2d 120 (Cal. Ct. App. 1998) ............. 4

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ............................................................................ 7

**Rules**

11th Cir. R 25-6 ................................................................................................................................................ 4

3d Cir. R. 28.1(d) (1995) .................................................................................................................................. 4

Federal Rule of Civil Procedure 23 ................................................................................................................. 4

N.D.Cal. Guidelines for Professional Conduct, 7(b) ....................................................................................... 4

**Other Authorities**

California State Bar, *California Attorney Guidelines of Civility and Professionalism*, 6 (April 18, 2007) ...... 4

Theodore Eisenberg & Goeffrey P. Miller, *The Role of Opt-Outs & Objectors in Class Action Litig.: Theoretical & Empirical Issues*, 57 VAND. L. REV. 1529 (2004) ............................................................................... 11

## INTRODUCTION

Plaintiffs oppose the Lindbergs' fee request of $75,000—3.30% of the benefit achieved—on the grounds that objectors conferred no substantial benefit to the class. They argue that the Court "did not *rely* on [objectors'] arguments in coming to its own conclusion on class counsel's fee award." Plaintiffs' Opposition to Objector Fee Petition "Opp" at 4 (emphasis added). But plaintiffs' approach contravenes Ninth Circuit law. Under *Rodriguez v. West Publ'g Corp.* ("*Rodriguez I*"), denying fees on such grounds would be "clearly erroneous" absent a finding that the Court had been "focused" on the objectors' successful arguments prior to when the Lindberg Objection was filed. 563 F.3d 948, 963 (9th Cir. 2009). The Court may have had concerns about the anti-class-member characteristics of the first proposed settlement prior to the Lindberg Objection, but the scale of the unfairness only came to full light after the objections and arguments at the first fairness hearing. Additionally, of the four grounds for denying final approval of the first settlement agreement, only two were even remotely discussed prior to the Lindberg Objection and the other two (*Bluetooth* indicia of self-dealing and inadequately-justified lodestar) were not in the record at all before the Lindberg Objection. The settling parties have also admitted that several features of the new settlement agreement respond directly to the Lindberg Objection, not just this Court's prior opinions.

Plaintiffs' continued anti-class-member arguments regarding Eric and Susan Lindberg is both incredible and telling. Class Counsel is supposed to represent class members. Yet in this case, bizarrely, Class Counsel rests their opposition to a Lindberg fee award on an argument this Court has never endorsed: that Eric was not a class member and that Susan Lindberg could not have joined her son's objection to cure the perceived defect. Incredibly, Plaintiffs make this argument while at the same time telling the Court that they intended under the prior settlement agreement to give other class members a chance to cure the defects found by the Settlement Administrator, an obvious double-standard. Dkt. 331 at 9:2-4. Class Counsel's continued pursuit of aggressively anti-class-member tactics like this raises concerns about whether final approval is appropriate even for the new settlement agreement. *Bluetooth* cautions to look out for indicia of self-dealing, Class Counsel's opposition not only to Eric's membership, but Susan's attempt to cure Class Counsel's claimed defect (setting aside whether that claim was accurate) raises serious questions about *explicit* self-dealing still today.

Plaintiffs' least-credible response is that the Lindbergs' fee request is excessive. First, they oppose the amount of time spent preparing the objection without any explanation of why they think the amount of time was excessive. Opp. at 13-14. They similarly do not explain how the Court should correlate their current claim that they would have "gladly corrected" their false and sanctionable *ad hominem* arguments with former class counsel Rosemary Rivas' verbal and written threats of frivolous sanctions motions and Ms. Rivas' statement that "we don't believe there was anything inappropriate or false about the language we used." Dkt. 293-1 at 59.

Plaintiffs also propose this Court should adopt the *Bluetooth* factors to evaluate the lodestar cross check. While Plaintiffs provide almost zero analysis of the legal standard they propose, the Lindbergs show herein that the *Bluetooth* factors all indicate the lodestar cross-check is reasonable.

Finally, Plaintiffs argue that the Lindbergs should not receive an incentive award because of Plaintiffs' unfounded allegations regarding Mr. Lindberg's amount of involvement in the case. As yet another wild allegation, it does not address the question: did the Lindbergs' objection confer a benefit on the class? *In re Apple Inc. Sec. Litig.*, No. 5:06-CV-05208, 2011 WL 1877988, at *5 (N.D. Cal. May 17, 2011).

Since Plaintiffs did not even argue the Lindbergs' costs should not be paid, they've conceded the point and the costs should be awarded by default. Similarly, Plaintiffs have not argued the requested Objector fees, costs, and incentive awards should not be deducted from Class Counsel's fee. As such, whatever amount the Court awards should be deducted from any Class Counsel award.

**I.    The Lindbergs conferred a substantial benefit on the class and are entitled to fees.**

   **A. Plaintiffs' arguments against the Lindbergs' class membership are contradicted by their own statements and the terms of the settlement agreement; have never been adopted by the Court; are raised belatedly; and ultimately show the same anti-class-member bias that motivated the Court to reject the first settlement agreement.**

Eric Lindberg was a class member under the prior settlement agreement and properly filed an objection. Dkt. 277 at 96. In response to arguments against his class membership, Susan Lindberg, his mother, joined his objection. Dkt. 290. While the Settlement Administrator denied other claims under the first settlement agreement, Eric's claim was not denied and the Court did not rule he was not a class member. Thus, pursuant to the terms of the new settlement agreement and its on-the-record explanation by both

proponent sides of the new settlement agreement, Eric is a class member and would be one even if the Settlement Administrator had ruled his claim invalid in 2017 (which it did not). Dkt. 331-1 at 24-25 ¶ 72; 331 at 3:17-19; 337 at 1:21-22 (where the settling parties each state that even rejected former claimants are now accepted class members). At the very least, Susan's prophylactic re-filed claim for the second settlement, which Plaintiffs do not dispute is properly filed, should have conclusively resolved the matter.

Plaintiffs' response repeats the problems that doomed the prior settlement agreement. They argue that the Lindbergs' first objection was defective and that their reasonable attempted remedy of the *claimed* defects was not only ineffective, but that *no remedy could have been effective*. Opp. at 8. This is the same gotcha-style behavior the Court commented upon when it rejected the high-reject-rate in the first settlement. Dkt. 300 at fn.7. Plaintiffs do not explain how the Court's entertainment of argument by the Lindbergs' counsel at the first fairness hearing and refusal to rule in favor of Plaintiffs' arguments against the Lindbergs' class membership does not resolve the topic in the Lindbergs' favor.

Plaintiffs also claim to have discovered, *a year later*, a new ground to oppose Susan Lindberg's joinder[1]: that she did not declare how many times in the past two years she has objected to class action settlements. Opp. at 8. This argument was waived by Plaintiffs in 2017 when they did not raise it and should not be entertained today. Even if this alleged-defect was not raised by Plaintiffs over a year late, requiring objectors make such a declaration is exactly the lawyer-serving provision which *Bluetooth* forbids. Mrs. Lindberg declaring whether she has objected to a class action settlement in the past two years has no conceivable benefit to the class: its only utility is to facilitate *argumentum ad hominem* from plaintiffs' attorneys.

### 1. A settlement term whose only utility is facilitation of *argumentum ad hominem* cannot be enforced.

This case shows how these *ad hominem* attacks are used: Plaintiffs have punctuated every single filing related to the Lindbergs with commentary on their view of the Lindbergs' or their counsels' litigation tactics

---

[1] The Lindbergs never believed that Susan's joinder was necessary and contend that under the old settlement agreement, Eric was a class member. The joinder topic was only necessary because of Plaintiffs' vitriolic opposition to Eric's participation in the case which threatened to deprive him of his rights. In hindsight, it is clear why Plaintiffs used a "hammer and tongs" approach: Eric's objection cost Class Counsel over $1 million in attorneys' fees.

in prior cases. Dkt. 286 at 9; 293 at 3; 293-1 at 15-25 (putting Mr. Miorelli's personal financial records in Class Counsel's declaration supposedly in support of an opposition to the Lindbergs' Administrative Motion but which never cited those financial records in the motion, an obvious intimidation tactic). Nevertheless, today Plaintiffs claim those were not *ad hominem* attacks because somehow Class Counsel's opinion of Mr. Miorelli and copies of his financial records "bear on the motive of the [current] objection." Opp. at 15:6. Even if the factual part of Plaintiffs' claim was credible, legally it is indefensible. An objector's motive is irrelevant and Plaintiffs notably do not cite any law saying otherwise.[2] At final approval of a proposed settlement, the only relevant considerations are those in Federal Rule of Civil Procedure 23. No part of Rule 23 authorizes or contemplates that the motives of an objector has anything to do with whether a court should approve a pre-certification settlement as fair, reasonable, and adequate for absent class members.

*Ad hominem* arguments are banned by this District's professionalism rules and by the rules of other courts nationwide. N.D.Cal. Guidelines for Professional Conduct, 7(b), *accord* 11th Cir. R 25-6 *and* 3d Cir. R. 28.1(d) (1995). *See also Revson v. Cinque & Cinque*, 211 F.3d 71, 82 (2d Cir. 2000) ("In the ordinary litigated matter, the court and counsel are not involved except in their professional capacities, and irrelevant personal or *ad hominem* attacks on them merely distract from the merits of the litigation."); *Saks v. Parilla, Hubbard, & Militzok*, 67 Cal.App.4th 565, 567, 79 Cal.Rptr.2d 120, 121 (Cal. Ct. App. 1998) (calling *argumentum ad hominem* "indecorous and unprofessional" and "completely unrelated to the legal issue presented"). The California State Bar agrees that *argumentum ad hominem* is improper: "[a]n attorney should not make ad hominem attacks on opposing counsel." Cal. State Bar, *Cal. Att'y Guidelines of Civility & Prof.*, 6 (April 18, 2007). Since the only reason for such a "disclose prior objections" clause is to make unprofessional, indecorous, and irrelevant *ad hominem* arguments easier for attorneys, it cannot be enforceable in this District. To the extent Plaintiffs seek to belatedly enforce this term against the Lindbergs, this Court, reviewing the currently-proposed pre-

---

[2] Objector blackmail is a fantasy: objectors cannot be paid without a willing payor. If a plaintiffs' attorney pays an objector to withdraw their objection in a covert transaction, who really is the bad actor? The objector who walks away from an acrimonious, *ad hominem*-laced proceeding, or the class counsel who silences the only opposition to his mega-bucks payday? The Lindbergs have never been compensated for a class action objection and their counsel have never accepted remuneration related to class actions without explicit approval of such by the court of competent jurisdiction.

certification settlement agreement, has a duty to consider whether it has any benefit to the class. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (holding that the district court's approval order must affirmatively show "that the settlement is not the product of collusion among the negotiating parties." (internal quotation omitted)). If it only benefits Class Counsel, then the settlement itself could not withstand Rule 23(e) and *Bluetooth* scrutiny. *Id.*

## B. Under Ninth Circuit law, the Lindbergs conferred a substantial benefit on the class and are entitled to fees.

Plaintiffs argue that objectors are not entitled to fees because the objection "did not actually add anything to the case." Opp. at 9. The grounds the Court laid out for rejecting final approval of the first settlement, the litigation history of this case, and even the settling parties' own statements supporting the new settlement conclusively refute Plaintiffs' argument. The class will get $2.27 million more because the Lindberg Objection made a new settlement possible, a substantial benefit if ever there was one.

### 1. The Court followed the Lindberg Objection's arguments when it rejected final approval of the first settlement agreement.

This Court's opinion laid out four reasons for rejecting the first settlement agreement, each of which was raised by the Lindberg Objection: (1) low claim rate due to a burdensome process coupled with a high claims rejection rate (*Compare* Dkt. 300 at 6-7 *with* Dkt. 277 at 101-102); (2) concerns about *Bluetooth* indicia of self-dealing (*Compare* Dkt. 300 at 2 *with* Dkt. 277 at 103-107); (3) a disproportionate attorneys' fee compared to the total class recovery (*Compare* Dkt. 300 at 1 *with* Dkt. 277 at 109-111); and (4) insufficient evidence to support class counsel's claimed lodestar (*Compare* Dkt. 300 at 8 *with* Dkt. 277 at 111). Undersigned counsel also addressed these points to the Court orally at the final fairness hearing. Dkt. 306 at 15-17.

Prior to the Lindbergs filing the instant motion, the settling parties and the Lindbergs generally agreed in their understanding of structure of the Court's opinion rejecting the first settlement. Plaintiffs' "Statement of Relevant Facts" opposing the instant motion characterized the Court's holding as a five-item list which only differs from the Lindbergs' four-item list in that Plaintiffs split the issues the Lindbergs characterize as No. 1 into four points and consolidate the issues the Lindbergs see as Nos. 2-4 into a single point. *Compare* Mot. at 2-3 *with* Opp. at 4-5. Defendants generally joined the Lindbergs in treating the Lindbergs' issues Nos. 1-3 as single topics (Dkt. 337 at 13-14 and 16), and are silent on the Lindbergs' issue No. 4. *Compare* Mot. at

2-3 *with* Dkt. 337 at 13-14 and 16. Yet by the time Plaintiffs reach the analysis section of their opposition to the instant motion, they inexplicably only see "two critical issues that formed the basis for [the Court's] decision to deny final approval." *Compare* Opp. at 10:22-23 *with* Opp. at 4-5 *and* Dkt. 331 at 9-10.

No matter how you count the reasons, the Lindberg Objection was the only written argument before the Court at the first fairness hearing setting forth the legal basis why each of the Court's ultimately-cited reasons for rejecting the first settlement was legally required. Plaintiffs do not contest this fact.

Even if the Court was concerned with some aspects of the first settlement agreement prior to the Lindberg Objection, an orally expressed concern is a long way from a detailed brief explaining how the problems **dictate** rejecting the settlement. For example: while the Court expressed concerns about the claims process pre-objection, it was the Lindberg Objection which connected the dots from a convoluted settlement procedure to a low claims rate and finally to how that *structure* rather than just its result required rejecting final approval under Rule 23(e). Dkt. 277 at 101-102. The Lindberg Objection was also the only explanation of how the unfair claims process also caused in a *Bluetooth* defect due to excessive fees. *Id.* at 8-9.

**2. Defendants, who have nothing to lose by telling the truth, admit the settling parties removed the *Bluetooth* self-dealing provisions in response to the Lindberg Objection.**

Only the Lindberg Objection showed how the convoluted claims-made process and kicker provisions, which benefited only Sony, likely were negotiated in exchange for a clear-sailing provision which benefited only Class Counsel. *Id.* at 9-12. That structure was designed to frustrate attempts to cure the first settlement agreement's unfairness: millions to class counsel, a pittance to class members, and an overbroad release for the corporate defendant. This "*Bluetooth* trifecta" has been remedied by the settling parties in the new settlement agreement by (1) removing the clear-sailing and kicker provisions, (2) improving the value of the settlement to class members by $2.27 million, and (3) reducing attorneys' fees by over $1 million. Defendants admit they resolved these *Bluetooth* issues **because of** the Lindberg Objection. Dkt. 337 at 17:9-16. Defendants have nothing to lose by telling the truth about the provenance of these changes, Plaintiffs did not disagree with Defendants' explanation of who to credit with the change until after the Lindbergs filed the instant fee motion.

### 3. The Lindberg Objection caused the settling parties to narrow the release in the second settlement agreement, another significant benefit to the class.

The Lindberg Objection showed that the release was overbroad in the first settlement agreement. Dkt. 277 at 98-101. Defendants credit the Lindberg Objection as the motivation for narrowing the release, which is a significant non-liquidated benefit to the class. Dkt. 337 at 18:2-4 (quoting the new settlement agreement at ¶ 35). This is just the sort of "new legal arguments or expertise" and constructive participation in the litigation that entitles the Lindbergs to a fee award not just on the basis of increased value, but also on equitable principles. *Rodriguez v. Disner*, 688 F.3d 645, 659 (9th Cir. 2012) ("*Rodriguez II*").

Plaintiffs admit the release is "narrowed," which under the law of the Ninth Circuit and this District is sufficient to grant attorneys' fees *on its own*. Opp. at 13:3. Plaintiffs also admit that the Court first raised a concern about the scope of the release *after* it had the benefit of the Lindberg Objection. Opp. at 12:26-28. Despite these admissions, Plaintiffs declare, *ipse dixit*, that a narrowed release "is at most a minor change." Opp. at 13:12. Defendant's citation of the narrower release as a new reason for the Court to approve the second settlement proves this is not "minor." A narrower release is a valid and sufficient basis for objector fee entitlement. *See, e.g. Hendricks v. Starkist Co.*, Case No. 13-cv-00729-HSG, 2016 WL 5462423 at *15-16 (N.D. Cal. Sept. 29, 2016); *Rodriguez v. Disner*, 688 F.3d 645, 659-60 (9th Cir. 2013); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92, 90 S.Ct. 616 (1970). Plaintiffs have neither explained nor cited any case supporting their view that the release, which Plaintiffs admit is narrowed, is a "minor change" ineligible for fees.

Indeed, Plaintiffs' overall approach resembles that of the district court in *Rodriguez I*, which refused to grant an objector's fee request "on the footing that [o]bjector's counsel 'did not add anything' to its decision to deny incentive awards." 563 F.3d at 963. The Ninth Circuit reversed, finding this line of reasoning "clearly erroneous," because "[t]he court was not focused on the incentive agreements before objectors took exception to them." *Id.* It decided that it could not "let stand a ruling that objectors did nothing that increased the fund or substantially benefitted the class members." *Id.* (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002)).

Plaintiffs also do not explain how Objector Navarette's mention of a similar issue to the Lindbergs affects the Lindbergs' entitlement to fees. Dkt. 349 at 12:4-5. Perhaps if both Objector Navarette and the Lindbergs sought fees for the same topic this might have relevance, but as they do not, it does not.

**II. The Lindbergs' fee request, amounting to just 3.3% of the benefit conferred, is not excessive.**

The Lindbergs request a modest fee of 3.3% of the $2.27 million benefit conferred on the class. Plaintiffs argue that this request is excessive on three grounds: that objectors bore "minimal" risk, that the hours worked were unreasonable, and that the lodestar multiplier is unwarranted. Opp. at 13-16. These arguments all fail.

**A. Plaintiffs have conceded by default that 3.3% of the benefit conferred is a reasonable attorneys' fee for a $2.27 million class recovery improvement.**

The Lindbergs seek fees on the basis of a percentage of the benefit conferred, not on the basis of their lodestar. Mot. at 15-16. Undersigned counsel's lodestar is only provided as a cross-check so that the Court can be satisfied that the amount requested is not a windfall. *Id.* Plaintiffs make no argument whatsoever that 3.3% of the benefit is an unreasonable percentage for a $2.27 million improvement for the class, and, as such, concede the point by default.

**B. Plaintiffs' complaints about the lodestar cross-check have no basis in fact or law.**

Plaintiffs' argument regarding the lodestar cross-check is an *ipse dixit* declaration that "the objection did not result in a substantial benefit to the class, the time and labor and skill involved were minimal, and Mr. Miorelli took on no significant risk and had to forgo no other employment." Opp. at 15:19-21. First, arguing that $2.27 million more to class members and a narrower release is not "a substantial benefit to the class" is incredible chutzpah. For Plaintiffs' other two points, they provide no legal citations, no analysis, and no explanation. Each is both baseless and wrong.

Obviously $2.27 million is an enormous benefit to the class. The prior settlement agreement had 11,328 claims, and likely would have only distributed about $209,705 to all of the class members combined. Dkt. 300 at 7. The new settlement agreement has around 197,212 claims, a 17.45-times increase that will fully distribute the common fund. Dkt 350-1 at ¶ 27. This mammoth participation increase shows that the class believes the new settlement is a benefit to them or they would not have made new claims. Almost 186,000 **more** class members will share $2,272,795 of **additional** money because the Lindbergs were successful at stopping the prior settlement from being approved.

Class Counsel treats the near-calamity of the prior settlement as though they were an innocent bystander. *See, e.g.* Dkt. 350 at §II.E and F. But like all proposed settlements, Class Counsel was the motivating

force and stood to profit an extra $1 million had their effort succeeded. If Class Counsel really believed the first settlement was bad and that this Court should not have approved it, they could have withdrawn it at any time. In fact, had they believed so at the time, they would have had a *duty* to withdraw it. The truth is Class Counsel loved the old settlement agreement, peppered it with provisions which could only conceivably benefit the lawyers, and fought for its approval. Because the Lindbergs objected, the entire class will share $2.27 million in extra recovery, and unlike Class Counsel seeking 33.33% of the whole, the Lindbergs request just 3.3% of <u>only the improvement</u>.

Also contrary to Plaintiffs' *ipse dixit* assertion, the time, labor, and skill required in this case was similar to that of other successful class action objections prosecuted by undersigned counsel. Several of them in this District have resulted in approved objector attorneys' fees that are similar to that requested here. Just last year, undersigned counsel represented a class member in *Edwards v. Nat'l Milk Prods. Fed.*, Case No. 11-cv-04766-JSW, 2017 WL 4581926 (N.D. Cal. Sept. 13, 2017). The objectors were successful at causing a multi-million-dollar improvement for the class by convincing the Hon. Jeffrey S. White to reallocate excessive attorneys' fees to the class. *Id.* at *2. Judge White reviewed a very similar fee request motion and very similar fee declaration, finding the hours and billing was reasonable in awarding attorneys' fees. *Id.* at *3. That case also approved a lodestar cross-check of 1.6x for the lead objector who assisted the Court in resolving the issues. *Id.* at *2. Comparing the cases, the Lindbergs seek almost exactly the same fraction of the improvement as a percentage-based fee (3.3% here vs. 3.23% in *Edwards*) and almost the same lodestar multiplier as was awarded to the lead objector there (1.55x here vs. 1.6x in *Edwards*). Plaintiffs have shown no reason why this Court should not follow the precedent of Judge White in this District and award a similar percentage fee for this multi-million-dollar improvement for absent class members.

Finally, Plaintiffs argue, *ipse dixit*, that objectors had minimal risk exposure. The facts cannot support this argument and Plaintiffs provided no supporting legal arguments. The Lindbergs' counsel have not been paid by their clients and they risked receiving *no payment* for their work. Indeed, objectors face the additional risk of nonpayment even when the objection is successful where, like here, Class Counsel challenges an objector's entitlement to fees. While the Lindbergs' counsel have other employment, their time is valuable and limited like anyone's. Mr. Atkinson is full-time in private practice and Mr. Miorelli used valuable paid

Case No: 4:10-CV-01811-YGR 9
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD

vacation time to attend this Court's last fairness hearing. Certainly these were real risks and costs for the Lindbergs' counsel.

### C. Plaintiffs argue *Bluetooth* should control the lodestar cross-check for this fee request but fail to recognize that each factor supports the $75,000 requested.

Plaintiffs urge this Court to analyze the lodestar cross-check using the eight *Bluetooth* factors. Opp. at 15. The Lindbergs have no objection to this framework as each of the *Bluetooth* factors supports the requested fee. As discussed *supra*, the results obtained are excellent: $2.27 million in additional cash to 186,000 additional class members. Also discussed *supra*, the time and labor required were similar to that in other successful multi-million-dollar class action improvements caused by successful objections, and the fee award sought is similar to the objector fees approved in other cases in this District.

Since Plaintiffs did not evaluate the other *Bluetooth* factors (despite proposing the standard), the Lindbergs will. First, the novelty and difficulty of the questions in a class action objection are always significant. Each case is new to an objectors' counsel, who must quickly evaluate hundreds or thousands of pages of litigation history to even make an initial evaluation of whether the settlement is fair and lawful. Once the client decides to object, the difficulty increases significantly as the attorneys work to research, analyze, and concisely write an objection addressing each and every point. All of this must be done in an extremely compressed timeframe since many of the relevant details are not public until class counsel files their motion for attorneys' fees. In this case, that motion was filed barely a week before the objection deadline, which further compressed the timeline and demanded herculean efforts. Dkt. 348-1 at ¶ 6.

This high complexity demands significant skill to perform objector services properly. One way to evaluate the requisite level of skill is to look at the state of the market for objectors' counsel. As far as undersigned counsel are aware, there are only a few private-practice attorneys who regularly file <u>successful</u> objections in consumer class action cases. Probably the most notable and skilled attorneys in this field are those of the Center for Class Action Fairness ("CCAF"), who have won several appeals,[3] have caused millions of dollars of improvements for absent class members, and who recently were granted *certiorari* in an

---

[3] *See, e.g. Bluetooth*, 654 F.3d 935; *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In Re: Subway Footlong Sandwich Marketing & Sales Pract. Litig.*, 869 F.3d 551 (7th Cir. 2017).

Case No: 4:10-CV-01811-YGR 10
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD

outrageous case where the class received $0 but the lawyers received $8.5 million. *See Frank v. Gaos*, 869 F.3d 737 (9th Cir. 2017), *cert. granted*, __ S.Ct. __, 584 U.S. __, 2018 WL 324121 (Apr. 30, 2018) (No. 17-961). If this business was easy and did not require significant skill to do well, presumably more private attorneys would participate, as the rate of objections is very low as a percentage of all class action cases, on the order of just 1%. Theodore Eisenberg & Goeffrey P. Miller, *The Role of Opt-Outs & Objectors in Class Action Litig.: Theoretical & Empirical Issues*, 57 VAND. L. REV. 1529, 1532 (2004).

While undersigned counsel cannot claim CCAF's track record, they and their clients have, including this case, helped cause approximately $7.2 million in financial as well as terms improvements like the narrowed release in this case. Dkt. 348-1 at 7. Despite being young attorneys, this growing track record speaks to their increasing reputation and ability, which *Bluetooth* says weighs in favor of the requested fee.

**D. Plaintiffs' claim that the Lindbergs' counsel's billings are excessive has no basis in fact or law, and the only explanation Plaintiffs provide is contradicted by Class Counsel's contemporaneous e-mails.**

Plaintiffs do not oppose undersigned counsels' hourly rates, Mr. Atkinson's number of hours billed, or that the objection and Rule 11 documents are items for which an objectors' counsel can properly bill time (Plaintiffs only dispute the quantum), so the Court should consider those points conceded. *See* Opp. at 14.

Regarding the 44.3 hours billed in the preparation of the Lindberg Objection, Plaintiffs declare the number of hours "excessive," but do not say why or explain what they believe a reasonable amount of time spent would be. *Id.* Had they performed any analysis of this or other objector fee award cases, they would see that the number of hours in this case is both reasonable and a similar amount of time spent compared to other objections where courts in this District have awarded fees. For example, in *Edwards*, counsel spent 79.8 hours (for Mr. Miorelli alone) from the start of the case until the end of the fairness hearing. *See Edwards*, Dkt. 488. Here, deducting the time required to correct the settling parties' sanctionable statements about the Lindbergs and their counsel, the time spent from the start through the end of the first fairness hearing was 69.0 hours for Mr. Miorelli. Dkt. 348-1 at 2-4. Since Plaintiffs did not explain why they believe 44.3 hours preparing the Lindberg Objection was unreasonable, there is nothing more to reply to than to point out that Judge White found almost 11 additional hours a reasonable billing for a similar scope of work. Plaintiffs must bring more than a single *ipse dixit* sentence to attack the hard work on this case.

Plaintiffs at least *explained* their complaint about the time undersigned counsel spent responding to Plaintiffs' false, unprofessional, and sanctionable statements in their responses to the Lindberg Objection. Opp. at 14-15. Plaintiffs do not complain that it took Mr. Miorelli too much time to do the work *actually done*. Instead Plaintiffs argue that it should not have been done at all because they claim they would have withdrawn their false, unprofessional, and irrelevant statements on their own. Opp. at 15:7-10. This is revisionist and contradicted by Rosemary Rivas' contemporaneous e-mails which are already in this Court's record.

After receiving the Lindbergs' Rule 11 safe harbor letter and its attachments, Ms. Rivas and Mr. Miorelli had a telephone discussion. After that discussion, Ms. Rivas sent Mr. Miorelli a follow up e-mail setting out (in less colorful terms than she had on the call) the position she took on the call. Dkt. 293-1 at 59. In that e-mail, Ms. Rivas denied that there was "anything inappropriate or false about the language we used," and made an ultimately-idle threat to make a Rule 11 motion of her own. *Id.* Two days later she filed a declaration which, *inter alia*, included copies of Mr. Miorelli's private financial records. *Id.* at 15-25. Class Counsel clearly intended this maneuver to embarrass the Lindbergs' counsel and scare them off the case. Luckily for the class, this tactic failed and $2.27 million more is heading their way soon.

To the Court's tremendous credit, it did not countenance Class Counsel's misbehavior and refused to remove the offending filing from the Court's record so that the fact of Class Consel's false statements remained in the public record. (Dkt. 299). A year later, this Court should not endorse Plaintiffs' revisionist account of their own behavior. It is only equitable that objectors' counsel be compensated for this time – and it would be more equitable for those funds to come out of Cass Counsel's fees.

**E. The Lindbergs continue to take steps which reduce fees and will result in an earlier payment to the class.**

The new settlement agreement is much better, but not beyond rational objection. There are still valid basis to question whether this settlement should be approved. For example, a 33.3% attorneys fee is still significantly above the benchmark. Also, the settling parties' use of *argumentum ad hominem* against objectors could provide a useful vehicle to ask this Court to create Northern District of California precedent banning such practices. The Lindbergs decided, in a showing of goodwill toward their fellow class members, not to pursue those topics and instead to support final approval due to the significant improvement. The Lindbergs'

goodwill shows that they are not indifferent to the costs of continued litigation even if there are valid points that could have been pursued.

The Lindbergs have taken other steps to reduce costs and fees, such as (a) Mr. Miorelli's 24 hour one-day trip to the first fairness hearing instead of flying the day before or after and thus requiring a hotel accommodation, and (b) their decision to send Mr. Atkinson to argue the instant motion before the Court, which will reduce billable travel time and costs compared to if Mr. Miorelli's attended. These efforts should weigh significantly in favor of granting objector attorneys' fees.

**III. To the extent the Court grants the class representatives an incentive award, it should also grant one to the Lindbergs.**

Plaintiffs are correct that the Lindbergs do not believe any incentive award should be paid in this case. *See* Opp. at 16. But if incentive awards are going to be made, they should at least be made on an even-handed basis. Plaintiffs point out that the class representatives (a) "engaged and assisted counsel with their investigation, analysis, and prosecution of the claims," (b) "assisted in the preparation of pleadings," (c) participated in discovery, (d) participated in settlement negotiations, and (e) "reviewed the parties' settlement papers." *Id.* With regard to (a), (b), and (e), the same can be said about the Lindbergs who retained counsel and assisted in the preparation of not just the objection, but also the Rule 11 documents, joinder filings, and the instant motion. With regard to (c), the Lindbergs had to be prepared to participate in pre-final-hearing discovery since that is often granted against objectors and sometimes their counsel too.

The time the Lindbergs spent on this case was no less inconvenient than the time class representatives spent. Just like the class representatives, the Lindbergs also have "family, friends, work, and various other activities." Opp. at 16:19-20. Unlike the Lindbergs, however, the class representatives did not suffer the ignominy of having lawyers for the settling parties make false, unprofessional, and sanctionable statements about them and their counsel before this Court. Withdrawing the statements did not provide a complete cure for the Lindbergs. Whatever amount of time spent on the case that the Lindbergs lack compared to the class representatives is more than made up for by the undignified treatment they endured. This District has held that being subjected to such *argumentum ad hominem* is a valid basis for granting an objector an incentive award. *Edwards*, 2017 WL 4581926 at *3. The Lindbergs are deserving, if for no other reason, than for this one.

Economically, on a per-class-representative basis, the Lindbergs also are responsible for much more success than the class representatives. The net recovery for the class if the new settlement is approved according to class counsel's request will be $2,482,500, which divided across five class representatives is $496,500 each. The Lindberg Objection resulted in $2,272,795 of that net recovery which otherwise would have remained with Sony or class counsel, meaning that on a per-in-court-litigant basis, the Lindbergs are responsible for about $1.78 million more than each of the class representatives.

Consequently, the Lindbergs respectfully request that whatever incentive award is made to the class representatives, the same be made to them. The Lindbergs seek $3,500 only because it is the same as Class Counsel seeks for the class representatives. If the class representatives are instead awarded $350, $35, or even $0, the Lindbergs believe it would be fair and appropriate for their incentive award to be the same amount.

## CONCLUSION

For the foregoing reasons, the Lindbergs respectfully ask the Court to award $75,000 in attorneys' fees and $1,360.15 in expenses, and award Eric Michael Lindberg (or in the alternative, his mother Susan) a $3,500 incentive award or whatever amount is awarded to the other class representatives.

Dated: May 14, 2018

|  |  |
|---|---|
| Grant F. Atkinson (SB# 293760)<br>**Framework Law Group PC**<br>1275 E 6th Street<br>Suite 8A<br>Los Angeles, CA 90021<br>Telephone: (847) 987-7361<br>E-Mail: grant@frameworklaw.com | Respectfully submitted,<br><br>*/s/ Sam A. Miorelli*<br>Sam A. Miorelli (*pro hac vice*)<br>**Law Office of Sam Miorelli, P.A.**<br>4715 N Harbor City Blvd.<br>Melbourne, FL 32935<br>Telephone: 352-458-4092<br>E-Mail: sam.miorelli@gmail.com |

*Attorneys for Objectors Eric Lindberg and Susan Lindberg*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing motion and attached exhibits using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case.

DATED this 14th day of May, 2018.

*/s/ Sam A. Miorelli*
Sam A. Miorelli