Sam A. Miorelli, E.I., Esq. (FL Bar # 99886, *pro hac vice*)
**Law Office of Sam Miorelli, P.A.**
4715 N Harbor City Blvd.
Melbourne, FL 32935
Phone: (352) 458-4092
E-Mail: sam.miorelli@gmail.com

Grant F. Atkinson (SB# 293760)
**Framework Law Group PC**
1275 E 6th Street
Suite 8A
Los Angeles, CA 90021
Phone: (847) 987-7361
E-Mail: grant@frameworklaw.com

*Attorneys for Objector Susan Lindberg*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re SONY PS3 "OTHER OS" LITIGATION | Case No. 4:10-CV-01811-YGR |
| | **MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD** |
| SUSAN LINDBERG,<br>   Objector. | Date: October 1, 2019<br>Time: 2:00 p.m.<br>Courtroom: 1, 4th floor<br>Judge: The Honorable Yvonne Gonzalez Rogers |

## NOTICE OF MOTION AND MOTION

TO ALL THE PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 1, 2019, at 2:00 p.m. or as soon thereafter as the matter may be heard by the Honorable Judge Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 1, Objector Susan Lindberg will and hereby does move the Court for an order (i) awarding objectors attorneys' fees of $18,934.80; (ii) awarding objectors expenses of $672.42; and (iii) awarding Susan Lindberg an incentive award of $1,750, with the collective $21,357.22 to be paid out of either (a) any residual after the second distribution is completed or (b) class counsel's fee award.

This motion is based on this Notice of Motion and Motion for Attorneys' Fees, Costs, and an Incentive Award, the following memorandum of points and authorities, the attached Declaration of Sam Miorelli, and such other materials as the Court may consider.

PLEASE TAKE FURTHER NOTICE that, in accordance with Local Rule 54-5(b)(1), counsel for Objector Lindberg met and conferred with Class Counsel for the purpose of attempting to resolve disputes with respect to this motion. Plaintiffs oppose this motion.

Counsel for Objector Lindberg attempted to meet and confer with Defendant for the purpose of attempting to resolve disputes with respect to this motion. Defendant did not respond to e-mail and repeated telephone attempts to contact their counsel. Counsel for Objector Lindberg is consequently unaware of Defendant's position on this motion.

PLEASE TAKE FURTHER NOTICE that, in accordance with Local Rule 7-2, a proposed order is attached.

**STATEMENT OF COURT ACTION SOUGHT**

Mrs. Lindberg moves the Court to enter an order awarding attorneys' fees in the amount of $18,934.80, expenses in the amount of $672.42, and an incentive award of $1,750, with all amounts to be paid out of (a) any residual after the second distribution is completed or (b) class counsel's fee award.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................................. i

STATEMENT OF COURT ACTION SOUGHT ................................................................................ ii

TABLE OF CONTENTS ..................................................................................................................... iii

TABLE OF AUTHORITIES ................................................................................................................ iv

SUMMARY OF ARGUMENT ............................................................................................................ 1

STATEMENT OF RELEVANT FACTS ............................................................................................. 2

ARGUMENT ......................................................................................................................................... 3

    I.    Objector Lindberg is entitled to attorneys' fees for the benefit attributable to her continued participation in the case. ........................................................................................... 3

        A.    The Court's order for a second distribution followed Objector Lindberg's arguments ................... 4

        B.    Any argument that the Court would or should have rejected the *cy pres* proposal or ordered a second distribution on its own without the benefit of an adversarial setting is refuted by the Class Counsel's reply opposing a second distribution. ................................................................. 4

        C.    The second distribution entitles Objector Lindberg to attorneys' fees, costs, and an objector incentive award. .................................................................................................................. 6

    II.    Undersigned counsel's lodestar is reasonable. ................................................................... 10

    III.    The attorneys' fee award should not reduce the Class' second distribution. .................... 10

    IV.    The requested expenses reimbursement is reasonable and may be awarded by the Court as a discretionary cost under California law. ................................................................. 12

    V.    Objector Lindberg is entitled to an incentive award to equal the representative plaintiffs' ............. 13

CONCLUSION .................................................................................................................................... 14

CERTIFICATE OF SERVICE ............................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 2 F. Supp. 2d 175 (D. Mass. 1998) .................................................. 11

*Frank v. Gaos*, 139 S.Ct. 1041 (2019) ................................................................................................................... 8

*Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994) ............................................................................................. 6

*Great Neck Capital Appreciation Inv. P'ship v. PriceWaterhouseCoopers*. 212 F.R.D. 400 (E.D. Wis. 2002) ............. 11

*Gutierrez v. Wells Fargo, NA*, No. 07-cv-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) ............... 7

*Hendricks v. StarKist Co.*, Case No. 13-cv-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ........... 11

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................................................................... 8

*In re Apple Inc. Sec. Litig.*, No. 5:06-CV-05208, 2011 WL 1877988 (N.D. Cal. May 17, 2011) ........................ 13

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........................................................... 5

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, MDL No. 09-2067, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) .................................................................................................................................................................. 11

*In re Citigroup Sec. Litig.*, No. 07-cv-9901 (SHS) (S.D.N.Y. Sept. 10, 2013) .................................................... 11

*In re Google Buzz Privacy Litig.*, Case No. C 10-00672JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ......... 8

*In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F. Supp. 2d 1208 (D.N.M. 1998) ....................................... 11

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) .................................................... 11

*In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................... 12

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F. Supp. 2d 563 (D.N.J. 2003) ............................... 11

*Knisley v. Network Asscociates, Inc.*, 312 F.3d 1123 (9th Cir. 2002) .................................................................. 5

*Lane v. Facebook*, 696 F.3d 811, 830 (9th Cir. 2012) (Kleinfeld, J. dissenting), *rehearing en banc den'd*, 709 F.3d 791 (2013), *cert den'd* 134 S. Ct. 8 (2013) ............................................................................................................ 9

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) ......................................................... 11

*McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626 (E.D. Pa. 2015) ........................................................... 9, 11

*Neslin v. Wells*, 104 U.S. 428 (1882) .................................................................................................................. 10

*Parker v. Time Warner Entm't Co.*, 631 F. Supp. 2d 242 (E.D.N.Y. 2009) ....................................................... 11

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) ......................................................................................... 7

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) ............................................................................... 6

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) .................................................................. 2, 7

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) ............................................................................ 1, 6, 10

*Rodriguez v. W. Pub'g Co.*, 563 F.3d 948 (9th Cir. 2009) .......................................................................... 6, 7

*Rodriguez v. W. Publishing Corp.*, 602 Fed. Appx. 385 (9th Cir. 2015) ........................................................ 9

*Trans Union Corp. Privacy Litig.*, 629 F.3d 741 (7th Cir. 2011) .................................................................. 8

*United Steelworkers of Am. v. Sadlowski*, 435 U.S. 977 (1978) ................................................................ 10

*Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999) ........................................................ 7

**Other Authorities**

§ 3.07, Principles of the Law of Aggregate Litigation, American Law Institute (2010) ................................ 4

**SUMMARY OF ARGUMENT**

Objectors who provide a material benefit to the class through their objections are entitled to fees as a matter of law. *See Rodriguez v. Disner*, 688 F.3d 645, 658-59 (9th Cir. 2012) ("*Rodriguez II*"). This Court's order denying Class Counsel's request to distribute a large fraction of the amount of money designated for the Class and ordering a second distribution followed the arguments presented *exclusively* by Objector Susan Lindberg. As such, Mrs. Lindberg is entitled to an attorneys fee award.

Of the initial $2.3 million the Class should have received, Class Counsel proposed to distribute almost one-third, $578,904.59 to a *cy pres* instead of the Class. Dkt. 380. In so moving, Class Counsel characterized that amount of money as not "a significant benefit to the class." Dkt 384 at 7:5-12. Yet not so long ago, Class Counsel called the first settlement agreement's proposed cumulative $209,705 payout "a substantial benefit to the Class." Dkt. 280 at 2:6-7. Class Counsel never explained why $209,705 was "substantial" in 2016 but almost three times as much in 2019 is not.

Just as in 2016, Objector Lindberg had to come before the Court and point out that when the choice was Class Counsel's interests (this time the organization formerly known as Trial Lawyers for Public Justice) or the Class', the only person looking out for the Class was a sole objector, not the well-paid lawyers supposedly representing the Class.

As a result of Objector Lindberg's efforts, the Court ordered exactly what Objector Lindberg's first and primary argument requested: a second distribution instead of mega *cy pres*. Dkt. 382. As a result, the Class will receive that $578,904.59, a direct pecuniary benefit.

Based on this increase in pecuniary benefit for the Class, Objector Lindberg seeks $18,934.80 in attorneys' fees, or a modest 3.27% of the increased benefit to the Class, plus expenses of $672.42, and an incentive award of $1,750. The total award should be paid from either (a) any residual funds remaining after the second distribution or (b) Class Counsel's previously-awarded fees so that the Class is not double-billed for attorneys' work which Class Counsel should have done for them, but which Objector Lindberg once again had to do instead.

Any argument by Class Counsel that the Court would have ordered the second distribution even if no one had requested it begs the question: if sending almost one-third of the Class' funds to a *cy pres* was so obviously unreasonable, why would Class Counsel—as a fiduciary of the Class—make such a request to begin with? The reality is that numerous courts in this Circuit—including this one—have ordered significant *cy pres* payments. It was appropriate for Objector Lindberg to submit briefing and provide an adversarial setting to test the reasonableness of a giant *cy pres* award instead of second distribution.

The Court's order of a second distribution demonstrates that Objector Lindberg was correct that a better deal was to be had for the Class and was available without unraveling the Second Settlement Agreement or a burdensome second notice. Objectors cannot know in advance, when deciding whether to object, how a court would rule without the advantage of the objector's adversarial briefing or whether another class member will object on similar grounds. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002). When an objector becomes involved in a case, the investment of time and resources generally cannot be divided argument by argument or temporally because she must analyze issues at hand holistically, issues often overlap, and one cannot just dip in and out of years-long complex litigation. Class Counsel's fee request which this Court previously granted reflected that indivisibility, as the declarations supporting their lodestar did not even break out which lawyers did what work, let alone how many hours were spent on successful claims and how many on unsuccessful ones, or how many hours were spent on one stage of the litigation or the other.

For these reasons and as further explained herein, the Court should grant this motion.

## STATEMENT OF RELEVANT FACTS

The Court determined that Objector Susan Lindberg was the appropriate objector in this case when it made its order awarding Objector Lindberg attorneys fees, costs, and incentive awards. Dkt. 359 at 1 fn. 1.[1]

---

[1] The Lindberg family's long history with this case was recited in detail in the prior, successful, motion for attorneys fees, costs, and an incentive award related to the significantly improved outcome from the Second Settlement Agreement. *See* Dkt. 348.

Since then, Objector Lindberg and her counsel have actively monitored the progress of the case, out of concern that a proposal to sell out the Class may come yet again from Class Counsel. Miorelli Decl. ¶ 5. As feared, almost exactly one year after the Court recognized Objector Lindberg's valuable work fighting off the unfair First Settlement Agreement, Class Counsel tried to send $578,904.59, almost one-third of the Class' funds, to a *cy pres* instead of the Class.[2] Defendants presented no opposition, and as such, the Court faced the real risk of not having an adversary to test the propriety of Class Counsel's proposal. Dkt. 381.

Objector Lindberg, having kept track of the case through regular discussions with counsel, came before this Court as the lone voice defending the Class' money. As has become *de rigueur*, rather than arguing that that a *cy pres* was in the best interest of the Class, Class Counsel's response was to argue that Objector Lindberg did not even have the right to tell the Court about her concerns. Dkt. 384 at 3.

The Court properly rejected Class Counsel's efforts to muzzle Objector Lindberg and Class Counsel's renewed attempt to hijack the Class' money for proprietary interests. Dkt. 390. Instead, the Court followed Objector Lindberg's request and ordered a second distribution. *Id.*

Undersigned counsel has consistently worked to limit costs and efficiently litigate the case. As set forth in the attached declarations, the Law Office of Sam Miorelli, P.A. has accumulated a lodestar of $18,934.80 with unreimbursed expenses of $672.42. Objector Lindberg does not seek a lodestar multiplier (despite a reasonable basis to argue for one) in an effort to expeditiously bring this case to a close.

## ARGUMENT

**I.    Objector Lindberg is entitled to attorneys' fees for the benefit attributable to her continued participation in the case.**

The second distribution was only possible because the Court rejected a proposal advocated by both Plaintiffs and Defendants: divert about one-third of the Class' money to a *cy pres* recipient. The option of a

---

[2] The Court awarded Objector Lindberg attorneys fees, costs, and an incentive award on June 8, 2018. Dkt. 359. Class Counsel moved to distribute one-third of the Class funds to a *cy pres* 361 days later on June 4, 2019. Dkt. 380.

Case No: 4:10-CV-01811-YGR                                                                                              3
NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND MEMORANDUM IN SUPPORT

second distribution was only advocated by a single voice: Objector Lindberg. Objector Lindberg is proud of the part she played in achieving this important consumer protection victory.

### A. The Court's order for a second distribution followed Objector Lindberg's arguments.

Objector Lindberg opposed the *cy pres* award and explained that there was both (a) sufficient money to make a second distribution feasible and (b) extensive authority rejecting the notion that "a *cy pres* remedy is preferable to further distributions to class members" because "in most circumstances distributions to class members better approximate the goals of the substantive laws than distributions to third parties that were not directly injured by the defendant's conduct." Dkt. 382 at 8-10 *quoting* § 3.07, Principles of the Law of Aggregate Litigation, American Law Institute (2010).

The Court ordered further briefing regarding costs of a second distribution. Dkt. 387. That order adopted Objector Lindberg's characterization of the proposed *cy pres* as "nearly one-third of the total disbursement to class members." *Compare* Dkt. 387 at 1:13 *with* Dkt. 382 at 1:7-8. It also said the Court was "considering the propriety of ordering a second distribution," exactly the relief Objector Lindberg requested. *Compare* Dkt. 387 at 1:15-16 *with* Dkt. 382 at 2:1-3.

After this further briefing, the Court granted the relief Objector Lindberg solely had advocated: a second distribution to the Class. Dkt. 390. The Court expressly stated in its order that it had considered Objector Lindberg's brief in coming to its decision. *Id.* at 1:23-24. As such, Objector Lindberg deserves credit for having advocated for the outcome the Court ordered, which creates a pecuniary benefit to the Class of $578,904.59.

### B. Any argument that the Court would or should have rejected the *cy pres* proposal or ordered a second distribution on its own without the benefit of an adversarial setting is refuted by the Class Counsel's reply opposing a second distribution.

The settling parties may argue that the Court was correct to order a second distribution on the grounds that it did, and as such would have done it on its own, thus denying Objector Lindberg's entitlement to fees. This argument, if made, would be conclusively refuted by Plaintiffs' reply arguing against a second distribution.

Class Counsel replied to Objector Lindberg's ultimately successful opposition briefing with a series of vociferous arguments that the Court should not and in fact *could not* order a second distribution. They first argued that Objector Lindberg was not even entitled to have presented her views to the Court. Dkt. 384. at 3-5. This was effectively a new flavor of the old argument (rejected by the Court in 2018) that Objector Lindberg was not a class member. Second, they claimed that a second distribution from the common fund would somehow require the Second Settlement Agreement to be "ignored or completely rewritten." Dkt. 384 at 6:5-6. That argument was audaciously punctuated with a claim that the second distribution Objector Lindberg sought would "not yield a significant benefit to the class." *Id.* at 7:8-10.

Clearly those arguments were not very well founded, but Class Counsel was not *obligated* to stick to a poorly considered proposal for a large *cy pres* distribution. Class Counsel could have withdrawn the proposal and joined Objector Lindberg in urging a second distribution. Instead, Class Counsel doubled down, got further declarations from their sweetheart *cy pres* recipient, and demanded that the Class receive no more money.[3] Any argument that the Court would have ordered a second distribution it on its own would beg the question: why did Class Counsel present frivolous arguments at the time against a second distribution?

Of course, in the face of this dispute, Defendants did what was economically in their interest: they stayed out of it. *See* Dkt. 381. "One inherent risk [in settlement class actions] is that counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Knisley v. Network Asscociates, Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002)). The Seventh Circuit explained the problem in more colorful detail:

> A trial judge's instinct, in our adversarial system of legal justice, is to approve a settlement, trusting the parties to have negotiated to a just result as an alternative to bearing the risks and costs of litigation. But the law quite rightly requires more than a judicial rubber stamp when the lawsuit that the parties have agreed to settle is a class action. The reason is the built-in conflict of interest in class action suits. The

---

[3] Other than class actions, undersigned counsel is not aware of any other plaintiffs' bar practice area where attorneys regularly demand *less* money for their clients. This case is a study in the practice with now two rejected efforts by Class Counsel: the first settlement agreement and the huge *cy pres* distribution.

> defendant […] is interested only in the bottom line: how much the settlement will cost him. And class counsel […] presumably is interested primarily in the size of the attorneys' fees provided for in the settlement, for those are the only money that class counsel, as distinct from the members of the class, get to keep. The optimal settlement from the joint standpoint of class counsel and defendant […] is therefore a sum of money moderate in amount but weighted in favor of attorneys' fees for class counsel. Ordinarily […] individual members of the class have such a small stake in the outcome of the class action that they have no incentive to monitor the settlement negotiations or challenge the terms agreed upon by class counsel and the defendant.
>
> True, there is always a named plaintiff[…]. But often […] the named plaintiff is the nominee of class counsel, and in any event he is dependent on class counsel's good will to receive the modest compensation ($5,000 in this case) that named plaintiffs typically receive.

*Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). While the procedural posture of the dispute over the proposed *cy pres* distribution was more advanced than the motion for final approval at issue in *Bluetooth* and *Redman*, the problematic lack of anyone protecting the individual members of the class with "a small stake in the outcome of the class action" presented itself here just the same. Without Objector Lindberg, there is a high probability that the Class would not have received these funds.

### C. The second distribution entitles Objector Lindberg to attorneys' fees, costs, and an objector incentive award.

Objector Lindberg achieved, and should be credited with, a total benefit to the class of $578,904.59. Objector Lindberg is thus entitled to a share of the total attorneys' fees awarded in this case because their work realized a substantial pecuniary benefit to the class. *See Rodriguez II,* 688 F.3d at 658-59 (objectors are entitled to attorneys' fees when they confer a substantial benefit on the class); *Rodriguez v. W. Pub'g Co.*, 563 F.3d 948, 963 (9th Cir. 2009) ("*Rodriguez I*") (finding it "clearly erroneous" to deny fees to objectors who successfully objected to incentive awards, thereby augmenting the class's net fund by $325,000); *Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994) (error to deny fees to objector who benefited the class in the form of reduced counsel fees).

As there is the potential that the residual after the second distribution may exceed the fees, costs, and incentive award requested here, Objector Lindberg does not take any position on the relative merits of deducting any amount awarded from such residual versus deducting it from Class Counsel's previously-awarded fees. However, it should not reduce the amount of the second distribution to the Class as the Class should not have to double-pay for legal work Class Counsel should have done on its behalf in the first place.

Class Counsel may argue that Objector Lindberg is not entitled to attorneys' fees because the Court would have ordered a second distribution *sua sponte*, regardless of whether anything was filed. That is not a meritorious reason to deny the requested attorneys' fees. First, an objector cannot know in advance what a court will decide to do with respect to any particular issue. *See Reynolds*, 288 F.3d at 288 ("objectors must decide whether to object without knowing what objections may be moot because they have already occurred to the judge."). When the court denies class counsel's fee request "[i]n the wake of [an] objection," the Ninth Circuit "cannot let stand a ruling that [o]bjectors did nothing that increased the fund or substantially benefitted the class members." *Rodriguez I*, 563 F.3d at 963. Provided that the court had not already been focused on the issue, it is "clearly erroneous" to deny objector fees on the ground that objector's counsel "did not add anything." *Id*. This is especially true in the class action settlement context, where the only ostensibly adverse parties—the defendants—are concerned solely with their bottom-line payment and are indifferent to how the common fund is allocated among the class and the plaintiffs' attorneys and rarely submit adversarial briefing to aid a court's review of a fee request. *See Gutierrez v. Wells Fargo, NA*, No. 07-cv-05923 WHA, 2015 WL 2438274, at *6 (N.D. Cal. May 21, 2015); *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999) ("The contribution [the objector's] attorney made, by providing an adversarial context in which the district court could evaluate the fairness of attorneys' fees, was substantial."). Our judicial system is premised on adversarial presentation; without it, a district court generally is ill-equipped to perform an investigatory function, and the settling parties have no incentive to suggest the court should scrutinize their unanimous proposal. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014).

While this Court may have ordered the second distribution on its own, Objector Lindberg could not have known that in advance. Indeed, there is no shortage of examples of courts in this Circuit, including this one, granting final approval of very large *cy pres* awards. *See, e.g.*, *Frank v. Gaos*, 139 S.Ct. 1041 (2019) (vacating and remanding on standing questions the 9th Circuit's affirmance of this District's Judge Davila approving a class action which awarded $2.125 million to attorneys, $5,000 to three named plaintiffs, more than $5 million to *cy pres* recipients, and zero to class members); *In re Google Buzz Privacy Litig.*, Case No. C 10-00672JW, 2011 WL 7460099 at *3 (N.D. Cal. June 2, 2011) (order from Judge Ware awarding $6.07 million to 14 *cy pres* recipients).

Awarding objectors fees is often a matter of "wrestling with a problem of joint causation" of both objectors' and plaintiffs' counsel. *Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 747 (7th Cir. 2011). "The fact that these efforts were successive rather than simultaneous has no significance. [Class] counsel created an asset—the expected gain from the lawsuits—the value of which they did not realize. The efforts of the other lawyers enabled the full value to be obtained." *Id.* Simply put had Objector Lindberg not intervened in the case and given the Court reasons to reject *cy pres* distribution, there might not have been a second distribution to the Class. As a result, the Class—the harmed individuals—recovered an additional $578,904.59. Because of this "joint causation," Objector Lindberg does not claim entitlement to a full 25% of the $578,904.59. She is entitled to claim half of that amount, but instead of seeking $72,363.07, an amount that could be characterized as an excessive windfall, the request is limited to a far more modest 3.27% on the basis of an un-multiplied lodestar.

Class Counsel also may argue that Objector Lindberg should only recover that portion of fees that are attributable to work on prevailing arguments. First, a full lodestar analysis does not recommend an idea-by-idea, contention-by-contention inquiry, given the success of Objector Lindberg's continued participation on the whole. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results ... the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit…. Litigants in good faith may raise alternative legal grounds for a desired

outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.").

Second, that argument would set an egregious double standard for objectors. There is no evidence Class Counsel reduced their lodestar for time spent researching or advancing specific positions that ultimately were not meritorious. They also sought to recover expenses in full, including for ultimately unsuccessful portions of the litigation like the prior settlement agreement's failed approval efforts. Moreover, Objector Lindberg could not have raised her successful arguments without putting in the time to monitor the case's ongoing litigation over the past year. It would be impossible, for example, to only credit time working on the objection to the *cy pres* award without also crediting the previous year of case monitoring and years before that of active litigation on behalf of the Class.

If the Court were to exclude any time based on an argument-by-argument analysis or based on the extended calendar, it would create perverse incentives. It would mean there are no consequences to Class Counsel just because their attempt to take extra money from the Class was so blatant that it did not take much time for an objector's attorneys to devise a response to that particular defect. In order to realize the promise of the "critically valuable service"[4] that informed good-faith objectors provide, those objectors who do confer material benefits upon the class should be encouraged and compensated.

In short, objection entails risk. *Rodriguez v. W. Publishing Corp.*, 602 Fed. Appx. 385 (9th Cir. 2015) ("*Rodriguez III*") (reversing district court's conclusion that class action objection is a "matter which [has] little risk"). There is no guarantee a court will honor objections and class counsel may still challenge an objector's entitlement to fees even after an objection results in improvement in direct benefit to the class. *See, e.g.*, *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 660 (E.D. Pa. 2015).

An award of 3.27% is facially reasonable and well below the fraction awarded to class counsel. Objector Lindberg limits her request to far less than she would be entitled to avoid any appearance of excess and hopefully bring the matter (and this case) to an expeditious conclusion.

---

[4] *Lane v. Facebook*, 696 F.3d 811, 830 (9th Cir. 2012) (Kleinfeld, J. dissenting), *rehearing en banc den'd*, 709 F.3d 791 (2013), *cert den'd* 134 S. Ct. 8 (2013).

**II.     Undersigned counsel's lodestar is reasonable.**

The lodestar of $18,934.80 reflects a year of efficient litigation. The lodestar is conservative with undersigned counsel's rates following the most-recent U.S. Attorney's Office Attorney's Fees Matrix 2017-2020. Miorelli Decl. ¶ 10. Undersigned counsel's hourly rates are less than the hourly rates charged by all but two of Class Counsel's partners and many of their associate attorneys. *See, e.g.* Dkt 346-1 at 94. Objector Lindberg's attorneys supervised a year of litigation with no obvious potential to re-engage on the basis of client interest and concern that the serious problems of Class Counsel interest mismatch might return again. Miorelli Decl. ¶ 5. They then prepared an objection which opposed the improper *cy pres* distribution, requested a second Class distribution, and also made strong efforts to show the Court that Class Counsel's enthusiasm for a *cy pres* distribution may have been due to a closely-aligned interest with the recipient., all in just 50.9 total hours worked. *See* Miorelli Decl. ¶ 5-9.

Objector Lindberg's legal team has objected in about a dozen cases to-date and, including this case, has caused over $7.7 million in improvements to cases for class members in addition to significant improvements to terms and conditions. Miorelli Decl. ¶ 14. They have never received remuneration related to an objection without such award being approved by a court. *Id.* The amount of work in this case is representative of the number of hours needed in each class action case they work on. *Id.* at ¶ 13.

**III.    The attorneys' fee award should not reduce the Class' second distribution.**

This Court agreed with Objector Lindberg last year that Class Counsel should bear the cost of a successful objector's fees when it awarded fees for work opposing the first settlement agreement. Dkt. 359 at 5:8-10. The same logic and legal argument applies to this fee motion too; the Court should ensure that any award to Objector Lindberg does not reduce the Class' second distribution.

"[T]he 'common benefit' theory is premised on a court's equity power." *United Steelworkers of Am. v. Sadlowski*, 435 U.S. 977, 979 (1978); *accord Rodriguez II*, 688 F.3d at 654. As between class members and class counsel, "equity requires that the loss, which in consequence thereof must fall on one of the two, shall be borne by him by whose fault it was occasioned." *Neslin v. Wells*, 104 U.S. 428, 437 (1882). The objectors' fees thus should be borne by class counsel, who had complete responsibility for proposing an enormous *cy pres* award instead of a second distribution. The class should not have to pay twice for a benefit they should

have received at the outset. It would be inequitable if the class were double billed for Objector Lindberg's success. *See McDonough*, 80 F. Supp. 3d at 662 (debiting objector's fee award from class counsel's award because class benefit was only achieved on the "second try"). Many courts across the nation have also held that objector fees should be paid out of class counsel's award.[5]

It is not punitive when objectors' fees are paid from the same pot awarded to Class Counsel. Rather, doing so recognizes several realities, equities, and best practices of settlement and class representation. The court's opinion in *Great Neck Capital Appreciation Inv. P'ship v. PriceWaterhouseCoopers* provides pertinent discussion of this issue. 212 F.R.D. 400, 416-17 (E.D. Wis. 2002). There, the court recognized its equitable discretion to impose the burden of paying objector fees on the class but correctly declined to do so, based on its recognized fiduciary obligation to safeguard the class funds. *Id.* at 417. Instead, the court awarded the objector fees from "class counsel and the defendants as they may agree but without diminution of the sum awarded to the class." *Id.*; *accord In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 197 (E.D. Pa. 2000) (Objectors' "fees and costs will be taken from class counsel's award to avoid dilution of the settlement fund.").

Awarding fees from class counsel's award is also good public policy. It provides a practical incentive for class counsel to avoid proffering settlements (or in this case, distribution plans) that have a high probability of being objectionable to class members and to the courts. Add to that the reality that small teams like Objector Lindberg's have extremely limited resources themselves, and it is readily apparent why Class Counsel must be encouraged to submit good requests on their own.

---

[5] *E.g.*, *Hendricks v. StarKist Co.*, Case No. 13-cv-00729-HSG, 2016 WL 5462423, at *16 (N.D. Cal. Sept. 29, 2016); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, MDL No. 09-2067, 2014 WL 4446464, at *10 & n.1 (D. Mass. Sept. 8, 2014); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-17 (N.D. Ohio 2010); *Parker v. Time Warner Entm't Co.*, 631 F. Supp. 2d 242, 277 (E.D.N.Y. 2009); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F. Supp. 2d 563, 573 (D.N.J. 2003); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 2 F. Supp. 2d 175, 176 (D. Mass. 1998); *In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F. Supp. 2d 1208, 1215 (D.N.M. 1998); *In re Citigroup Sec. Litig.*, No. 07-cv-9901 (SHS), Dkt. No. 286, Order at 1-2 (S.D.N.Y. Sept. 10, 2013) (same with objector's expenses).

Objector Lindberg recognizes that there is *some* difference between carving out a part of a fee at its moment of award last year and effectively clawing back a small fraction of it today. Objector Lindberg also recognizes that Class Counsel is likely correct that there may still be a residual after the second distribution. As such, and mindful of Objector Lindberg's view that the *cy pres* recipient in this case bears at best a microscopic relationship to the class interests on which the litigation was based, Objector Lindberg would not oppose if the Court found it appropriate to deduct the award sought herein from that residual first and only from Class Counsel to the extent that residual is less than the amount sought.

### IV.     The requested expenses reimbursement is reasonable and may be awarded by the Court as a discretionary cost under California law.

As part of a fee award, counsel "may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008). Learning from last year's fee order by the Court, Objector Lindberg has limited her fee request to items which are discretionary costs pursuant to California Code of Civil Procedure section 1033.5(c).

Despite the hearing being cancelled on the proposed *cy pres* distribution, the flight component of undersigned counsel's pre-booked travel from Florida to California was nonrefundable. California courts have held that travel costs necessary to attend hearings are recoverable pursuant to section 1033.5(c). *Page v. Something Weird Video*, 960 F. Supp. 1438, 1447 (C.D. Cal. 1996). Objector Lindberg seeks $566.00 for that nonrefundable flight expense. Miorelli Dec. ¶ 15. This is the same category of expense which the Court approved for Class Counsel, so it would be equitable to approve it as well for Objector Lindberg.

The Law Office of Sam Miorelli, P.A. also incurred $70.72 in costs for FedEx to overnight deliver courtesy copies of filings to this Court. Miorelli Dec. ¶ 15. The Court approved these expenses for Class Counsel on the basis of *Ladas v. Cal. State Auto. Assn.*, 19 Cal. App. 4th 761, 776 (Cal. Ct. App. 1993) last year and should approve the same for Objector Lindberg.

Each of these costs would normally be paid by Objector Lindberg as part of a contingent-fee arrangement and would normally be paid by any other client of undersigned counsel in a non-contingency matter. *Id.* at ¶ 16. These expenses are approximately one-third of what undersigned counsel normally

budgets for a case such as this one, and that efficiency weighs in favor of approval of the expenses. *Id.* at ¶ 16.

### V. Objector Lindberg is entitled to an incentive award to equal the representative plaintiffs'.

Incentive awards are proper to award to objectors like Mrs. Lindberg who confer a benefit on the class. *In re Apple Inc. Sec. Litig.*, No. 5:06-CV-05208, 2011 WL 1877988, at *5 (N.D. Cal. May 17, 2011). In *Apple*, the court awarded an objector an incentive award when their objection resulted in a proposed $2.5 million donation to a university instead being redirected to the class members as part of the settlement fund. *Id.* The Court gave the objector an incentive award as well as awarding fees that resulted in a $836/hour rate for this improvement to "compensate [the objector] and his counsel for their contributions to this litigation." *Id.*

This Court previously approved $1,750 for Mrs. Lindberg, half as much as the class representatives were awarded. Dkt. 359 at 5:6-7. While that may have been an appropriate approximation of the relative level of involvement in the case as of a year ago, it no longer is, especially when the outcomes are compared. Based on last year's order of the Court, Mrs. Lindberg and the five representative plaintiffs were jointly responsible for the creation of the common fund, from which $1,445,407.52 has been received by Class Members so far. *See* Dkt. 380-2 at 2:22-24. Divided equally among the five and only crediting Mrs. Lindberg half (as the Court did in the final approval order – Dkt. 359), that would mean each of the representative plaintiffs was responsible for about $262,801.37 of the total from the first distribution (and Mrs. Lindberg responsible for $131,400.68).[6] But as the representative plaintiffs' lawyers (Class Counsel) have actively opposed sending any of the $578,904.59 to the Class, the fact that the Class will receive it should be credited only to Mrs. Lindberg as the lone proponent of a second distribution. As such, Mrs. Lindberg is responsible for about $710,305.27[7] of the total distribution to the Class, about 2.7x[8] the

---

[6] $\frac{\$1,445,407.52}{5.5} = \$262,801.37 \; each, \frac{\$262,801.37}{2} = \$131,400.68$ if Mrs. Lindberg is counted as half as much as the representative plaintiffs according to the Court's 2018 order. *See* Dkt. 359.

[7] $\$131,400.68 + \$578,904.59 = \$710,305.27$

[8] $\frac{\$710,305.27}{\$262,801.37} = 2.703$

Case No: 4:10-CV-01811-YGR                                                                                     13
NOTICE OF MOTION, MOTION FOR ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD AND MEMORANDUM IN SUPPORT

performance of the representative plaintiffs. A total $3,500 incentive award for this work is clearly reasonable, and Mrs. Lindberg should be awarded an additional $1,750 to bring her to parity with the other representative plaintiffs.

## CONCLUSION

For the foregoing reasons, Objector Lindberg respectfully asks the Court to award her attorneys $18,934.80 in fees and $672.42 in expenses, and award Objector Lindberg an additional $1,750 incentive award.

Dated: August 27, 2019                              Respectfully submitted,

                                                                 */s/ Sam A. Miorelli*

Grant F. Atkinson (SB# 293760)           Sam A. Miorelli (*pro hac vice*)
**Framework Law Group PC**                **Law Office of Sam Miorelli, P.A.**
1275 E 6th Street                                    4715 N Harbor City Blvd.
Suite 8A                                                  Melbourne, FL 32935
Los Angeles, CA 90021                          Telephone: 352-458-4092
Telephone: (847) 987-7361                   E-Mail: sam.miorelli@gmail.com
E-Mail: grant@frameworklaw.com

*Attorneys for Objector Susan Lindberg*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing motion and attached exhibits using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case.

DATED this 27th day of August, 2019.

                                                                 */s/ Sam A. Miorelli*
                                                                 Sam A. Miorelli